IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON AUTOMATION, INC., a Delaware Corporation, | ) ) ) ) |
| Plaintiff, | ) Civil Action No. 1:06CV00028-MPT |
| v. | ) Demand for Jury Trial |
| TRANSLOGIC CORPORATION, a Delaware Corporation, and | ) ) ) |
| SWISSLOG ITALIA S.P.A., an Italian Corporation, | ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF McKESSON AUTOMATION, INC.'S AMENDED SIXTH
NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)
DIRECTED TO DEFENDANT SWISSLOG ITALIA S.p.A.**

PLEASE TAKE NOTICE that commencing at 10:00 a.m. on February 27, 2007 at the office of Sutherland Asbill and Brennan LLP, Grace Building, 1114 Avenue of the Americas, 40th Floor, New York, New York 10036, or at such other time and place mutually agreed upon by counsel for the parties, Plaintiff McKesson Automation, Inc. ("McKesson") will take the deposition of the witness(es) designated by defendant Swisslog Italia S.p.A. ("Swisslog Italia") to testify on its behalf as the person(s) most competent to testify concerning the matters listed on attached Schedule A pursuant to Federal Rule of Civil Procedure 30(b)(6). The person(s) designated by Swisslog Italia must be prepared to testify as to such matters known or reasonably available to Swisslog Italia.

124402.00601/40167162v.1

**This Amended Sixth Notice of Deposition replaces in its entirety the Seventh, Ninth, Tenth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, and Sixteenth Notices of Deposition served on January 9, 2007 and January 16, 2007, respectively.**

Counsel for Swisslog Italia are requested to provide McKesson's counsel with written notice, at least five (5) business days in advance of the deposition, of the name and employment position of each designee testifying on behalf of Swisslog Italia together with a list of the categories that each designee will provide testimony on.

The deposition will be taken upon oral examination pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure before an official authorized by law to administer oaths and will continue from day to day. Pursuant to Rule 30(b)(2), testimony of the witness may be recorded by stenographic means, sound-and-visual means, or both.

Pursuant to Rule 30(b)(5) of the Federal Rules of Civil Procedure, McKesson further requests that Swisslog Italia produce no later than seven (7) days prior to the deposition or at such other time as may be further agreed to by the parties, the documents and things which respond to the requests set forth in attached Schedule B to the extent such documents and things have not already been produced in this litigation by Swisslog Italia.

Counsel for Translogic and Swisslog Italia S.p.A. are invited to attend and participate. Dated this 9th day of February, 2007.

BLANK ROME LLP

*Dale R. Dubé*
Dale R. Dubé (#2863)
1201 Market Street, Suite 800
Wilmington, DE 19801
Tel: (302) 425-6472
Fax: (302) 425-6464

124402.00601/40167162v.1

Blair M. Jacobs
Robert A. Gutkin
Christina A. Ondrick
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 383-0100
Fax: (202) 637-3593

*Counsel for Plaintiff*
*McKesson Automation, Inc.*

## DEFINITIONS AND INSTRUCTIONS

1. "Translogic" shall mean (a) Translogic Corporation, (b) any of its divisions, departments, and other organizational or operating units, (c) all predecessor or successor companies or corporations, (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control or affiliated, in any manner, with Translogic Corporation or its affiliated companies and (e) each of the present and former officers, directors, employees, agents, attorneys, or other representatives of Translogic Corporation.

2. "Swisslog Italia" shall mean (a) Swisslog Italia S.p.A., (b) any of its divisions, departments, and other organizational or operating units, (c) all predecessor or successor companies or corporations, (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control or affiliated, in any manner, with Swisslog Italia S.p.A. or its affiliated companies and (e) each of the present and former officers, directors, employees, agents, attorneys, or other representatives of Swisslog Italia S.p.A.

3. "Swisslog Group" shall mean (a) Translogic, Swisslog Italia, Swisslog Holding AG, Swisslog Management AG, Swisslog AG, the entities identified on page 36 of Swisslog's 2005 Financial Report, and the entities identified on page 28 of Swisslog's 2005 Annual Report, (b) any of their divisions, departments, and other organizational or operating units, (c) all predecessor or successor companies or corporations, (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control or affiliated, in any manner, with such entities or their affiliated companies,

(e) each of the present and former officers, directors, employees, agents, attorneys, or other representatives of such entities.

4.  "McKesson" means McKesson Automation, Inc. and all partnerships, joint ventures, predecessors and successors and assigns of or involving each of the forgoing, including Automated Healthcare, Inc., and all past or present directors, officers, employees, agents, consultants, independent contractors, representatives, subcontractors and attorneys of such persons or entities.

5.  The term "PillPick System" means any of the Swisslog/Translogic automated drug management and/or storage systems for pharmacies and all versions, components, or prototypes thereof including, but not limited to, BoxStation, AutoBox, Box Picker, PillPicker, AutoPhial, PhialBox, DrugNest, FillBox, PickReturn, PickRing and any other component, product or system used in conjunction with the aforementioned products or systems as part of an automated drug management or storage system. PillPick includes, but is not limited to, the products, systems and components identified on the Swisslog website at, for example, http://www.swisslog.com/internet/hcs/hcs/adms/05.pdf and http://www.swisslog.com/hcs-index/hcs-systems/hcs-pharmacy/hcs-pharmacycomponents.htm. Further, as used herein, PillPick system is meant to include any combination of products, systems or components that can form a PillPick System.

6.  The term "SinglePill Robot" means any robot that is part of the DrugNest that in any manner handles drug packages and includes but is not limited to the robots identified as SinglePill 1, SinglePill 2 or Singlepill robot (see, e.g., S046444 and S057291-92).

7.  "Person" or "persons" means any natural person, any firm, any organization or business entity, whether individual or proprietorship, joint venture, partnership, corporation,

association or otherwise, or any governmental entity or any agent, department, bureau or other legal subdivision thereof.

8. "Document" has the full meaning ascribed to it in Rule 34 of the Federal Rules of Civil Procedure, and includes the original, and every copy which differs in any way from the original, of any written, recorded, or graphic matter in any and all media however produced or reproduced, including papers, films, magnetic tapes or storage devices, ROMs, EPROMs, and all other methods for the expression or retention of information.

9. The words "and," "or" and "any" are intended to be construed as necessary to bring within the scope of these requests for production any information which otherwise might be construed to be outside of the scope of any of them.

10. The words "all" and "each" shall be construed as all and each.

11. The use of the singular form of any word includes the plural and vice versa.

12. As used herein, the word "relate" or the phrase "refer or relate to" and variants thereof are intended to mean referring to, pertaining to, concerning, regarding, having any relationship to, describing, evidencing, or constituting evidence of, in whole or in part, the referenced matter.

13. When referring to a person, "identify," "to identify" or "identification of" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

14. Unless otherwise indicated Categories 2-61 pertain to PillPick Systems sold or offered for sale in the United States.

124402.00601/40167162v.1

## SCHEDULE A

1. The identity of all pharmacy automation products designed, developed, manufactured, tested, installed, sold, offered for sale by Swisslog Italia.

2. The identity of all models, configurations, versions, optional equipment or accessories of the PillPick System.

3. Identification the model number, part number, serial number, or other identifier of each PillPick System and its components sold or offered for sale in the U.S.

4. Identification of all literature, including operator manuals, user manuals, maintenance manuals, software manuals, instructions and specifications for the PillPick System or any of its components.

5. The differences between the PillPick Systems sold or offered for sale in the U.S. and the PillPick Systems sold or offered for sale outside the U.S.

6. All warranties or service plans available with the PillPick Systems sold or offered for sale in the U.S.

7. Swisslog Italia's or any other Swisslog Group entity's involvement in the design, development, testing, sale, offer for sale, marketing, installation, or servicing of any PillPick System designed to be sold or offered for sale in the U.S.

8. Swisslog Italia's or any other Swisslog Group entity's involvement with any third party involved in selling, offering for sale or marketing the PillPick System in the U.S.

9. The identity of all models, configurations and versions of the DrugNest and the differences between such models, configurations and versions.

10. The identity of all components, subassemblies and accessories of the DrugNest.

11. The design, development, testing, structure, function and operation of the DrugNest.

12. The methods through which drug packages are capable of being input or loaded into the DrugNest including, but not limited to, loading from the PillPicker, PickCase, or PickReturn.

13. The methods through which drug packages are capable of being output or unloaded from the DrugNest.

14. The methods through which the DrugNest reorganizes package storage (see, e.g., S057335).

15. The modes of operation of the DrugNest including but not limited to automatic operation, semiautomatic operation and manual operation (see, e.g., S057283, S057296 and S057309).

16. The manner in which drug packages are stored in the DrugNest and whether such packages are stored in a face-to-face arrangement.

17. The design, development, testing, structure, function and operation of the drug packages stored within the DrugNest.

18. The design, development, testing, structure, function and operation of the hardware and software (including the PillPick Manager) that controls or communicates with the DrugNest and its components.

19. The design, development, testing, structure, function and operation of the SinglePill Robot, the frame along which the SinglePill Robot moves, and the motor-driven guide system and its components or other devices that drive the SinglePill Robot.

20. The use and purpose of suction, vacuum devices, or pneumatic cylinders in the DrugNest.

21. The identity of all models, configurations and versions of the PickReturn and the differences between such models, configurations and versions.

22. The design, development, testing, structure, function and operation of the PickReturn and its components (see, e.g., T000205, T000351 and T019261).

23. The design, development, testing, structure, function and operation of the PickCase or PickReturn Panel (see, e.g., S057312 and T000205).

24. How and under what circumstances returned drug packages are discarded or not placed into the DrugNest (see, e.g., T000351).

25. The differences between the design of the PickReturn or PickCase sold or offered for sale in the U.S. and the PickReturn or PickCase sold or offered for sale outside the U.S.

26. The processes by which the PickReturn or PickCase returns packages to the DrugNest.

27. The identity of all models, configurations and versions of the PickRing and the differences between such models, configurations and versions.

28. The identity of all components and subassemblies of the PickRing.

29. The design, development, testing, structure, function and operation of the PickRing and its components (see, e.g., S046746, S046748-49).

30. The design, development, testing, structure, function and operation of the RingRobot (see, e.g., S046747).

31. The design, development, testing, structure, function and operation of the hardware and software (including the PLC, personal computer, PRControl, PRFace, and

Supervisor PC-Console) that controls or communicates with the PickRing and its components (see, e.g., S046752, T012519, T012521).

32. The modes of operation of the PickRing including but not limited to automatic operation, semiautomatic operation and manual operation (see, e.g., S046753).

33. The processes by which a drug package is input into and output from the PickRing.

34. The circumstances under which a scanned drug is sent to a rejects box or discarded.

35. The function and operation of the bag checking cycle.

36. The design, development, testing, structure, function and operation of any drawers, cassettes, carts or containers to which drug packages are dispensed before or after being bound by the RingRobot.

37. The design, development, testing, structure, function and operation of the labeling station (see, e.g., T002910).

38. The identity of the information placed on the label applied at the labeling station.

39. The computer processing and use of the machine readable information placed on the drug packages, drawers, cassettes, carts, containers, or plastic ring.

40. The design, development, testing, structure, function and operation of the FillBox (see, e.g., T000156).

41. The identity of all models, configurations and versions of the PillPicker and the differences between such models, configurations and versions.

42. The identity of all components, subassemblies accessories of the PillPicker.

7

43. The design, development, testing, structure, function and operation of the PillPicker and its components (see, e.g., S045909).

44. The design, development, testing, structure, function and operation of the PickRobot (see, e.g., S045913).

45. The information that the PillPicker places on the drug package, including any bar code information (see, e.g., S045910).

46. The modes of operation of the PillPicker including but not limited to automatic operation, semiautomatic operation and manual operation (see, e.g., S045917-19).

47. The design, development, testing, structure, function and operation of the hardware and software (including the Supervisor PC and PillPick Manager) that controls or communicates with the PillPicker and its components.

48. Interaction between the PillPicker and the DrugNest, including, but not limited to, any information sharing and the transfer of drug packages.

49. The identity, design, development, testing, structure, function and operation of the software and hardware that controls, communicates with, or transmits information to or from the PillPick System and its components.

50. The manner in which information is input into the PillPick System by the operator.

51. The type of information that is input into the PillPick System by the operator.

52. The manner in which information is received from the PillPick System by the operator.

53. The type of information that is received from the PillPick System by the operator.

54. The manner in which information is received and processed by the PillPick System and all of its components.

55. The type of information that is received and processed by the PillPick System and all of its components.

56. The number of PC's in the PillPick System, the software running on each PC, and the purpose of the software.

57. The manner in which the PillPick System obtains, maintains and provides inventory information.

58. The manner in which the PillPick Manager manages and supervises packaging jobs, cart fills, first dose preparation, drug loading, drug unloading, drug package returns, pick jobs, and purging of expired or nonconforming drug packages (see, e.g., S059251).

59. The types of information recorded or stored by the PillPick Manager and the uses of such information.

60. The identity and uses of the drug information recorded and stored in the Drug DataBase of the PillPick Manager (see, e.g., S059251).

61. The identity and function other software and hardware that the PillPick Manager controls or communicates with regardless of whether that hardware or software is part of the PillPick System or part of a hospital's other hardware and software.

62. Identification and description of all business, advertising, and/or marketing strategies and plans created by or on behalf of Swisslog Italia and/or Translogic that refer or relate in any way to the PillPick System.

63. The identity of Swisslog Italia or Translogic's competitors in the market for the PillPick System, including an identification of the products offered by those competitors and the Swisslog Italia or Translogic products with which they compete.

64. Identification and description of any studies or analyses or inquiries done by or on behalf of Swisslog Italia or Translogic that refer to or in any way relate to the actual or potential demand for the PillPick System, including but not limited to any market studies, customer surveys, customer research, and potential customer research concerning any product or feature, whether actually marketed or not, of these products.

65. Any studies, surveys or analysis concerning the actual or potential savings a hospital may realize by using a PillPick System.

66. Your evaluation or perception of the reasons that customers elect to purchase or license the PillPick System instead of competitive products.

67. Your evaluation or perception of the relative importance to customers (or potential customers) of various features and functionality of the PillPick System.

68. Identification of any products or services offered by Swisslog Italia or Translogic that experience increased demand or increased price as a result of Swisslog Italia's or Translogic's sale or license of the PillPick System including a full explanation and description of such products and services, as well as the increased demand or price.

69. Identification of any products or services offered by Swisslog Italia or Translogic that increase the demand for or price of the PillPick System, including a full explanation and description of such products and services, as well as the increased demand or price.

70. Identification of any market factors besides product price, features and functionality that effect the demand for or price of the PillPick System.

71. Any contract, agreement, license arrangement, business relationship or negotiation regarding the sale, lease, marketing or manufacture of the PillPick System.

72. Identification of any person that participated in any contract, agreement, arrangement, business relationship or negotiation relating to the sale, lease, marketing or manufacture of the PillPick System.

73. Sale price, dollar value, profit realized, expenses and costs for the sale or lease of the PillPick System.

74. Your share of the market for medication and supply management systems for automated drug distribution in hospitals in the United States.

75. The identity, rates, and terms of all licenses that you have either granted as a licensor or sublicensor, or obtained as a licensee or sublicensee, relating to the PillPick System.

76. All facts and circumstances relating to any established royalty rate that you claim exists in the industry for the technology embodied in the PillPick System.

77. Identification of your licensing practices and policies with respect to technology used in pharmacy automation products, or any specific features thereof, including but not limited to royalty rates offered or paid for such technology and the commercial or economic factors underlying or relating to such royalty rates, as well as the terms and structure of any licensing agreements.

78. The purpose, nature, and terms of any license arrangements under which you have paid any royalty or lump sum payment to any other party for the right to use any technology that is used in the pharmacy automation products.

79. The establishment and setting of prices for the PillPick System, including, but not limited to, price changes, pricing policies, discounts and allowances, refunds, and any price reductions.

80. Identification of manufacturing costs, including but not limited to fixed and variable costs, indirect and direct labor, material, factory overhead, and general and administrative expenses associated with the manufacture and sale of the PillPick System.

81. Identification of marketing, advertising, selling, promoting, and research and development costs or expenses (fixed and variable) you incurred, are incurring, or expect to incur as a result of the development, lease, use, offer for sale, or sale of the PillPick System.

82. Identification of the general and administrative costs or expenses (fixed and variable) you incurred, are incurring, or expect to incur as a result of the development, lease, use, offer for sale, or sale of the PillPick System.

83. Revenue, profit margins, gross and net profits, unit and dollar sales volume, and/or losses incurred relating to the sale or lease of the PillPick System.

84. Your accounting system(s), including method(s) of allocating overhead to the PillPick System.

85. Any indemnification, or warranty between or amongst Swisslog Italia, Translogic or third parties covering the PillPick System, including any warranty, agreement, or understanding concerning Swisslog Italia and/or Translogic providing indemnification or warranty to its distributors, customers, or suppliers against any claim for infringement of intellectual property covering the PillPick System.

86. Any sales forecasts, sales predictions, sales estimates, sales projections, sales data, usage forecasts, usage predictions, usage estimates, usage projections, usage data and price quotations relating to the PillPick System.

87. The types and kinds of internal reports and financial statements that you created or maintained on a regular basis and that contain figures as to revenues, number of units sold, or leased, or profits (gross, net, incremental or any other kind) from pharmacy automation products.

88. Identification and description of any valuations, prepared by Swisslog Italia, Translogic or by third parties, relating to any patents or technology developed or acquired by Swisslog Italia or Translogic that relate to pharmacy automation products.

## SCHEDULE B

1.  All documents that relate to any matter set forth in Schedule A.

2.  All documents that the witness(es) may or will rely upon to provide information known or reasonably available to Swisslog Italia relating to the matters set forth in Schedule A.

3.  All documents that the witness(es) consulted, reviewed, or referred to in preparing to testify.

124402.00601/40167162v.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of February, 2007, I caused a true and correct copy of the foregoing of PLAINTIFF MCKESSON AUTOMATION INC.'S AMENDED SIXTH NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6) DIRECTED TO DEFENDANT SWISSLOG ITALIA S.P.A. to be served upon the following counsel of record as indicated:

HAND DELIVERY AND E-MAIL

Julia Heaney, Esq.
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899

FIRST CLASS MAIL AND E-MAIL

Lawrence C. Drucker, Esq.
Alfred R. Fabricant, Esq.
Richard LaCava, Esq.
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY 10036

/s/ Dale R. Dubé
Dale R. Dubé

124402.00601/40167162v.1