# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Julia Heaney
302 351 9221
302 425 3004 Fax
jheaney@mnat.com

April 4, 2007

**BY E-FILING and HAND DELIVERY**

The Honorable Mary Pat Thynge
United States Magistrate Judge
United States District Court
844 King Street
Wilmington, DE 19801

    Re: *McKesson Automation, Inc. v Swisslog Italia S.P.A. and TranslogicCorporation,* C.A. No. 06-28 (***)

Dear Judge Thynge:

    On behalf of defendants Translogic Corp. and Swisslog Italia SpA, we are writing to inform the Court of a discovery dispute that, after several attempts, counsel for the parties have been unable to resolve on their own.

    Specifically, Translogic and Swisslog Italia have asked McKesson to produce computer source code for its Automated Pharmacy Station ("APS") product (also known as Robot Rx), which appears to be an embodiment of the inventions disclosed in the two patents in suit, the '110 and '267 patents. The APS product was developed in the late 80s by a company called Automated Healthcare, Inc. ("AHI"), which was formed by the lead named inventor of the '110 and '267 patents in suit – Sean McDonald. In or about 1996, McKesson appears to have acquired AHI together with the rights to the APS product and the patents-in-suit.

    Defendants believe that the APS was at least in development, ready for patenting and possibly being demonstrated or sold as early as 1988, approximately 1 ½ years before the prima facie effective filing date of the '267 and '110 patents, rendering these patents invalid under 35 U.S.C. §102(b).[1] Additionally, the failure to disclose APS's development and related

---

[1] The '267 and '110 patents are both continuations of an earlier application filed on January 24, 1990. Defendants, however, do not concede that the '267 and '110 patents are entitled to the benefit of the January 24, 1990 filing date.

The Honorable Mary Pat Thynge
April 4, 2007
Page 2

activities during prosecution of the '267 and '110 patents may have constituted inequitable conduct before the USPTO, thereby rendering unenforceable the '267 and '110 patents. The requested source code is relevant to both of these defenses and may be the only document that can show the date of development of APS and the detail as to how it worked – issues which are highly relevant to Defendants' §102(b) defense.

McKesson has refused to produce the source code for the APS, despite the fact that this code clearly falls within several of Translogic's first set of document requests to McKesson served on September 8, 2006, including the following:

> 8. All documents that refer or relate to the conception, development, testing and/or reduction to practice of each purported invention claimed in the Patents-in-Suit, including without limitation, laboratory notebooks, invention disclosures, development records, notes, minutes, schematics, diagrams, memoranda, testing records, flowcharts, and **computer code** listings.

> 10. All documents that refer or relate to the first disclosure, first sale or offer to sell and/or first use or public use of any purported invention claimed in the Patents-in-Suit.

> 20. All documents that refer or relate to the design, structure, manufacture, operation, or steps of any of the Defendants' and/or any other person's products that compete in the marketplace with Plaintiff's Products, including without limitation schematics, engineering drawings, product specifications, process specifications, performance specification, manufacturing specifications, manuals, program design documents, flowcharts, and **computer code** listings.

Since a defense under 35 U.S.C. §102(b) requires a comparison of the product sold (or demonstrated) with the claims of the asserted patents, the operation of the APS computer, which depends almost exclusively on the source code, may be relevant to the question of whether the APS embodied any of the claims of the patents in suit. Indeed, claim 1 of the '110 patent recites "a program for directing the picking means to chosen storage area." Claim 1 of the '267 patent recites "means for picking medicine packages . . . in accordance with instructions received from a computer." The specification also states that the patented system depends on "computer controlled instructions" (col. 13, lns. 15-16). The source code may be particularly helpful in determining whether the APS embodies claim elements recited in means-plus-function form. If the Court ultimately construes the corresponding structure of this element to require a "computer" executing certain "instructions," the source code may be helpful to determine whether the APS embodies such structure.

The source code for the APS may also be relevant for other reasons. As extrinsic evidence, the source code may shed light on the understanding of persons of ordinary skill in the art during the relevant time period and, in this regard, is likely to lead to admissible evidence concerning the proper construction of various claim elements. More importantly, source code is typically dated and contains comments by the software developer. This information could help

The Honorable Mary Pat Thynge
April 4, 2007
Page 3

Defendants determine when various versions of the APS existed and could provide highly relevant insights into the inventors' thought processes. This is especially important here because McKesson has produced few documents dated prior to 1996 and has not produced *any* documents from before 1992 relating to sales of the APS or conception and reduction to practice of the inventions taught and disclosed in the '110 and '267 patents. Nor has McKesson produced any documents relating to the early testing and development of the APS. This makes the need for the source code all the more pressing as McKesson has not produced any documents that show what products AHI was developing, demonstrating or offering for sale prior to January 24, 1989. Defendants need the documents soon because depositions of McKesson's designated 30(b)(6) witnesses on these topics as well as inventor Sean McDonald will be taken in April and/or May. If additional witnesses and sources of information are identified at those depositions, it will require additional discovery that will have to be completed by the July 31, 2007 discovery deadline.

      Defendants have made several attempts to obtain the source code without involving the Court. On December 22, 2006, shortly after McKesson made its initial production of documents, Defendants wrote to McKesson and specifically noted McKesson's failure to produce any source code. Counsel exchanged letters several times in January and February but McKesson maintained its refusal to produce any source code. Most recently, on March 26, 2007 during a conference between counsel, Defendants' counsel again requested the source code and cited an article found by Defendants in the Pittsburgh Business Times dated June 13, 1988 – approximately 1 ½ years before the effective filing date of the '267 and '110 patents. That article quotes inventor and then-President of AHI, Sean McDonald, as saying that that he was then "de-bugging" the computer program that runs the APS, that AHI was developing its first prototype and hoped to begin hospital testing in the Fall of 1988. Defendants explained that the source code is directly relevant to the question of whether the APS was an embodiment of the invention later claimed in the patents in suit. McKesson's counsel again refused, stating that the functional specifications and brochures produced by McKesson adequately set forth the functionality of the Robot Rx and APS products and that it is not necessary to provide detail at the source code level. McKesson also refuses to produce on the grounds that the source code is highly sensitive and confidential even though the Protective Order would prevent the disclosure to anyone but trial counsel.

      For these reasons, Translogic and Swisslog Italia request an order compelling McKesson to produce the source code for all versions of the APS and Robot Rx products.

                                  Respectfully,

                                    Julia Heaney

JH:ncf
cc:    Dr. Peter Dalleo, Clerk (By e-filing)
        Dale R. Dubé (By e-mail)
        Blair M. Jacobs (By e-mail)
784097