

Phone:    (302) 425-6467
Fax:      (302) 428-5108
Email:    Dube@BlankRome.com

May 1, 2007

## BY CM/ECF and HAND DELIVERY

The Honorable Mary Pat Thynge
U.S. District Court for the District of Delaware
844 King Street
Wilmington, DE 19801

> Re:    *McKesson Automation, Inc. v. Swisslog Italia S.p.A. et al.*;
> C.A. No. 06-028-MPT

Your Honor:

We write regarding Defendants' and their trial counsel's failure to provide a privilege log identifying any documents they are withholding on the basis of privilege relating to the opinions that Defendants' are relying on as a defense to willful infringement.

We first brought this matter to the Court's attention on March 23, 2007. (D.I. 100). That letter pointed out Defendants refusal to comply with the Scheduling Order, which required Defendants to produce on or before February 28, 2007 "any such opinion [of counsel it is relying on as a defense to willfulness], related documents, and/or privilege log to the extent one exists." (D.I. 87, ¶ 3 d.). At the time, Defendants had only produced the opinions they were relying on. McKesson requested that the Court compel Defendants to produce all documents related to the opinions and a privilege log, if any, because Defendants waived privilege by relying on those opinions. After we filed our letter, Defendants offered to provide the requested documents from Defendants' and Dickstein Shapiro LLP's files (trial counsel and another firm attorney each authored separate opinions that are here relied upon as a defense to McKesson's willfulness allegations) together with privilege logs if McKesson removed the issue from the Court's calendar. McKesson agreed in order to amicably resolve the matter and not waste the Court's resources.

Instead of honoring the parties' agreement and complying with the Scheduling Order, Defendants have once again refused to provide a privilege log identifying **any** documents relating to the opinions being withheld on the basis of privilege. At the same time, the Defendants have indicated that certain documents are being withheld as "pure trial advice" documents. Unfortunately, McKesson cannot assess the accuracy of Defendants' "trial advice"

BLANK ROME LLP
COUNSELORS AT LAW

The Honorable Mary Pat Thynge
May 1, 2007
Page 2

determinations because they have refused to provide any information relating to such documents on a privilege log. Therefore, we are forced to bring this matter to the Court's attention again.

When this issue initially arose and the parties discussed the issue, Defendants agreed that *In re Echostar Communications*, 448 F.3d 1294 (Fed. Cir. 2000) controlled regarding the responsibilities and obligations under these circumstances. Consistent with *Echostar*, the parties agreed that privilege was not waived for "pure trial strategy," any documents containing one hundred percent "pure trial strategy" would appear on a privilege log, and "pure trial strategy" would be redacted from documents containing mixed information (*i.e.*, information for which privilege was waived as well as "pure trial strategy") and appear on a privilege log.

Apparently, Defendants have changed their position and inexplicably now assert, without support, that McKesson has agreed that "pure trial strategy" documents need not appear on a privilege log. McKesson pointed out the error in Defendants' assertion and attempted to resolve this matter without the Court's intervention. Defendants, however, have mysteriously refused to respond to two efforts to discuss this matter, forcing McKesson to seek the Court's assistance in resolving the dispute. *See* Apr. 16, 2007 and Apr. 25, 2007 e-mails from Blair Jacobs to Larry Drucker (attached hereto as Ex. A).

Defendants apparently contend that they need not place "pure trial strategy" documents on a privilege log, and can completely shield these documents from any meaningful form of review. This contention is improper as a matter of law, as it denies McKesson the opportunity to review the basis for defendants' determinations, supplanting this with a request that McKesson "trust us" as a sufficient explanation for why these documents are being withheld. There is no authority supporting such a position, especially since Defendants may have already waived the attorney-client privilege with respect to some of these documents if such documents relate to the same subject matter as the opinions that they are currently relying upon. In fact, courts analyzing *Echostar* in similar situations have required defendants to place "trial strategy" documents like those withheld by Defendants on a privilege log. *See, e.g., Informatica Corp. v. Business Objects Data Integration*, 454 F. Supp. 2d 957, 965 (N.D. Cal. 2006) (analyzing *Echostar* and requiring withheld documents to be placed on privilege log), *aff'd*, 2006 WL 2329460 (N.D. Cal. Aug. 9, 2006); *Genentech, Inc. v. Insmed Corp.*, 442 F. Supp. 2d 838, 844-48 (N.D. Cal. 2006) (analyzing *Echostar* and requiring defendant to produce privilege log to "ensure proper application" of order allowing withholding of trial strategy documents) (attached hereto as Ex. B and C, respectively).

As a point of clarification, McKesson is not requesting that Defendants produce these documents. It is simply requesting, in fairness, that information about these documents be



The Honorable Mary Pat Thynge
May 1, 2007
Page 3


placed on a privilege log. By wholly shielding information about these documents from disclosure, the Defendants are unfairly preventing McKesson and the Court from being able to assess whether the withheld documents are indeed "pure trial strategy," or instead relate to Defendants' opinions of counsel and should be produced. Finally, if there are no documents related to the opinions being withheld, and this is not McKesson's understanding, Defendants simply should confirm this fact in writing.

McKesson respectfully requests that the Court enter an Order requiring Translogic, Swisslog Italia and Dickstein Shapiro LLP to place all documents relating to the opinions of counsel being withheld on a privilege log and provide said privilege log to McKesson no later than May 11, 2007.

Respectfully submitted,

Dale Dube

Dale R. Dube
No. 2863

-   and -

Blair M. Jacobs
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004


DRD:pb
cc:     Clerk of Court (by CM/ECF)
Julia Heaney, Esquire (by CM/ECF and hand delivery)
Lawrence C. Drucker, Esquire (by email and Federal Express)
Alfred R. Fabricant, Esquire (by email and Federal Express)
Richard LaCava, Esquire (by email and Federal Express)
Christina A. Ondrick, Esquire



The Honorable Mary Pat Thynge
May 1, 2007
Page 4

SO ORDERED this _____ day of _____, 2007

_____
Hon. Mary Pat Thynge

# EXHIBIT  A

## Viguie, Mary

**Subject:** FW: McKesson v. Swisslog, et al -- Expert Dates

**From:** Jacobs, Blair
**Sent:** Monday, April 16, 2007 6:01 PM
**To:** Jacobs, Blair; 'Drucker, Lawrence'; Ondrick, Christina; 'LaCava, Richard'; 'Fabricant, Alfred'
**Cc:** 'Lambrianakos, Peter'; 'Forte, Karen'; May, Christopher
**Subject:** RE: McKesson v. Swisslog, et al -- Expert Dates

Larry,

We have not received a privilege log from Dickstein listing any documents related to the same subject matter as the opinions being relied upon by Defendants as defense to willful infringement. As you know, *Echostar* and its progeny require that any withheld documents be provided on a privilege log, even documents you contend relate to trial strategy. While I agreed that pure trial strategy documents could remain protected by privilege, I never agreed to allow blanket withholding without justification. At a minimum, we are entitled to determine the sufficiency of your trial strategy assertion as a basis for withholding.

Please provide such privilege log immediately for Dickstein and update Defendants' privilege logs accordingly. If you do not intend to honor our request by April 20, we will bring this matter to the Magistrate's attention.

Perhaps there has been a miscommunication on the issue. Please feel free to give me a call at your convenience to discuss.

Regards,

Blair

*Blair M. Jacobs*
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., NW
Washington, DC 20004-2415
202.383.0773 direct
202.637.3593 fax
blair.jacobs@sablaw.com

## Viguie, Mary

| | |
|---|---|
| **From:** | Jacobs, Blair |
| **Sent:** | Wednesday, April 25, 2007 11:09 AM |
| **To:** | Jacobs, Blair; 'Drucker, Lawrence'; Ondrick, Christina; 'LaCava, Richard'; 'Fabricant, Alfred' |
| **Cc:** | 'Lambrianakos, Peter'; 'Forte, Karen'; May, Christopher |

**Subject:** RE: McKesson v. Swisslog, et al -- Expert Dates

We have not heard back from you on this issue so we will bring it to the Magistrate's attention.   Give me a call today if you would like to discuss.

Thanks,

Blair

### *Blair M. Jacobs*
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., NW
Washington, DC 20004-2415
202.383.0773 direct
202.637.3593 fax
blair.jacobs@sablaw.com

---

**From:** Jacobs, Blair
**Sent:** Monday, April 16, 2007 6:01 PM
**To:** Jacobs, Blair; 'Drucker, Lawrence'; Ondrick, Christina; 'LaCava, Richard'; 'Fabricant, Alfred'
**Cc:** 'Lambrianakos, Peter'; 'Forte, Karen'; May, Christopher
**Subject:** RE: McKesson v. Swisslog, et al -- Expert Dates

Larry,

We have not received a privilege log from Dickstein listing any documents related to the same subject matter as the opinions being relied upon by Defendants as defense to willful infringement.   As you know, *Echostar* and its progeny require that any withheld documents be provided on a privilege log, even documents you contend relate to trial strategy. While I agreed that pure trial strategy documents could remain protected by privilege, I never agreed to allow blanket withholding without justification.  At a minimum, we are entitled to determine the sufficiency of your trial strategy assertion as a basis for withholding.

Please provide such privilege log immediately for Dickstein and update Defendants' privilege logs accordingly.  If you do not intend to honor our request by April 20, we will bring this matter to the Magistrate's attention.

Perhaps there has been a miscommunication on the issue.  Please feel free to give me a call at your convenience to discuss.

Regards,

Blair

*Blair M. Jacobs*
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Ave., NW
Washington, DC 20004-2415
202.383.0773 direct
202.637.3593 fax
blair.jacobs@sablaw.com

# EXHIBIT  B

# Westlaw.

454 F.Supp.2d 957

454 F.Supp.2d 957
**(Cite as: 454 F.Supp.2d 957)**

## H

Informatica Corp. v. Business Objects Data
Integration, Inc.
N.D.Cal.,2006.

United States District Court,N.D. California.
INFORMATICA CORPORATION, et al., Plaintiffs,
v.
BUSINESS OBJECTS DATA INTEGRATION,
INC., Defendants.
**No. C 02-3378 JSW (JL).**

July 14, 2006.

**Background:** In patent infringement action
alleging willful infringement, plaintiff brought
motion to compel answers to interrogatories and
production of documents.

**Holding:** The District Court, Larson, Chief United
States Magistrate Judge, held that waiver of
attorney-client privilege and attorney work-product
immunity, through assertion of advice of counsel
defense, did not depend on whether defendant's
opinion counsel and trial counsel were from same
law firm, different law firms, or were even the same
person.

Motion granted in part.

Affirmed, 2006 WL 2329460.
West Headnotes
**[1] Courts 106 ☞96(7)**

106 Courts
    106II    Establishment,    Organization,    and
Procedure
        106II(G) Rules of Decision
            106k88 Previous Decisions as Controlling
or as Precedents
                106k96 Decisions of United States
Courts as Authority in Other United States Courts
                    106k96(7) k. Particular Questions
or Subject Matter. Most Cited Cases
Federal Circuit law, rather than the law of the
regional circuit, applies to substantive legal issues
in a patent case.

**[2] Courts 106 ☞96(7)**

106 Courts
    106II    Establishment,    Organization,    and
Procedure
        106II(G) Rules of Decision
            106k88 Previous Decisions as Controlling
or as Precedents
                106k96 Decisions of United States
Courts as Authority in Other United States Courts
                    106k96(7) k. Particular Questions
or Subject Matter. Most Cited Cases
Questions of privilege and discoverability that arise
from assertion of the advice-of-counsel defense, in a
patent    infringement    action    alleging    willful
infringement,    necessarily    involve    issues    of
substantive patent law, for purposes of the rule that
Federal Circuit law, rather than the law of the
regional circuit, applies to substantive legal issues
in a patent case.

**[3] Witnesses 410 ☞198(1)**

410 Witnesses
    410II Competency
        410II(D)    Confidential    Relations    and
Privileged Communications
            410k197 Communications to or Advice by
Attorney or Counsel
                410k198 In General
                    410k198(1) k. In General. Most
Cited Cases
The attorney-client privilege protects disclosure of
communications between a client and his attorney.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

454 F.Supp.2d 957                                                                    Page 2

454 F.Supp.2d 957
**(Cite as: 454 F.Supp.2d 957)**

**[4] Witnesses 410 ☞219(3)**

410 Witnesses
  410II Competency
    410II(D)   Confidential   Relations   and
Privileged Communications
      410k219 Waiver of Privilege
        410k219(3) k. Communications to or
Advice by Attorney or Counsel. Most Cited Cases
Once a party announces that it will rely on advice of
counsel, for example, in response to an assertion of
willful infringement of a patent, the attorney-client
privilege is waived.

**[5] Witnesses 410 ☞219(3)**

410 Witnesses
  410II Competency
    410II(D)   Confidential   Relations   and
Privileged Communications
      410k219 Waiver of Privilege
        410k219(3) k. Communications to or
Advice by Attorney or Counsel. Most Cited Cases
The widely applied standard for determining the
scope of a waiver of attorney-client privilege is that
the waiver applies to all other communications
relating to the same subject matter.

**[6] Federal Civil Procedure 170A ☞1600(3)**

170A Federal Civil Procedure
  170AX Depositions and Discovery
    170AX(E) Discovery and Production of
Documents and Other Tangible Things
      170AX(E)3 Particular Subject Matters
        170Ak1600   Privileged   Matters   in
General
          170Ak1600(3) k. Work Product of
Attorney. Most Cited Cases
In contrast to the attorney-client privilege, the
attorney work-product doctrine, or work-product
immunity as it is also called, can protect documents
and tangible things prepared in anticipation of
litigation that are both non-privileged and relevant.
Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ☞1600(3)**

170A Federal Civil Procedure

  170AX Depositions and Discovery
    170AX(E) Discovery and Production of
Documents and Other Tangible Things
      170AX(E)3 Particular Subject Matters
        170Ak1600   Privileged   Matters   in
General
          170Ak1600(3) k. Work Product of
Attorney. Most Cited Cases

**Witnesses 410 ☞204(1)**

410 Witnesses
  410II Competency
    410II(D)   Confidential   Relations   and
Privileged Communications
      410k197 Communications to or Advice by
Attorney or Counsel
        410k204   Mode   or   Form   of
Communications
          410k204(1) k. In General. Most
Cited Cases
Unlike the attorney-client privilege, which protects
all communication whether written or oral, attorney
work-product immunity protects documents and
tangible things, such as memorandums, letters, and
e-mails. Fed.Rules Civ.Proc.Rule 26(b)(3), 28
U.S.C.A.

**[8] Federal Civil Procedure 170A ☞1600(3)**

170A Federal Civil Procedure
  170AX Depositions and Discovery
    170AX(E) Discovery and Production of
Documents and Other Tangible Things
      170AX(E)3 Particular Subject Matters
        170Ak1600   Privileged   Matters   in
General
          170Ak1600(3) k. Work Product of
Attorney. Most Cited Cases
The attorney work-product doctrine promotes a fair
and efficient adversarial system by protecting the
attorney's   thought   processes   and   legal
recommendations from the prying eyes of his or her
opponent. Fed.Rules Civ.Proc.Rule 26(b)(3), 28
U.S.C.A.

**[9] Federal Civil Procedure 170A ☞1600(5)**

170A Federal Civil Procedure

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

454 F.Supp.2d 957

454 F.Supp.2d 957
**(Cite as: 454 F.Supp.2d 957)**

170AX Depositions and Discovery
170AX(E) Discovery and Production of Documents and Other Tangible Things
170AX(E)3 Particular Subject Matters
170Ak1600 Privileged Matters in General
170Ak1600(5) k. Waiver. Most Cited Cases
A party may discover attorney work product if the other party waives its attorney work-product immunity. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

**[10] Federal Civil Procedure 170A ⬅️1600(5)**

170A Federal Civil Procedure
170AX Depositions and Discovery
170AX(E) Discovery and Production of Documents and Other Tangible Things
170AX(E)3 Particular Subject Matters
170Ak1600 Privileged Matters in General
170Ak1600(5) k. Waiver. Most Cited Cases
Waiver of attorney work-product immunity is not a broad waiver of all work product related to the same subject matter, like the attorney-client privilege; instead, work-product waiver only extends to factual or non-opinion work product concerning the same subject matter as the disclosed work product. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

**[11] Witnesses 410 ⬅️219(3)**

410 Witnesses
410II Competency
410II(D) Confidential Relations and Privileged Communications
410k219 Waiver of Privilege
410k219(3) k. Communications to or Advice by Attorney or Counsel. Most Cited Cases
When a party relies on the advice of counsel as a defense to willful infringement of a patent, the party waives its attorney-client privilege for all communications between the attorney and client, including any documentary communications such as opinion letters and memoranda.

**[12] Patents 291 ⬅️292.3(1)**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k292 Discovery
291k292.3 Production of Documents and Other Matters
291k292.3(1) k. In General. Most Cited Cases
Where there is an allegation of continuing willful infringement after the filing of the patent infringement action, waiver of attorney work-product immunity, which waiver arises from assertion of advice of counsel defense, may extend to post-filing work product, if it is communicated to the client. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

**[13] Patents 291 ⬅️292.3(1)**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k292 Discovery
291k292.3 Production of Documents and Other Matters
291k292.3(1) k. In General. Most Cited Cases

**Witnesses 410 ⬅️219(3)**

410 Witnesses
410II Competency
410II(D) Confidential Relations and Privileged Communications
410k219 Waiver of Privilege
410k219(3) k. Communications to or Advice by Attorney or Counsel. Most Cited Cases
By asserting advice of counsel as defense to charge of willful infringement of patents both before and after the filing of the infringement action, defendant waived attorney-client privilege and attorney work-product immunity for both pre-filing and post-filing pertinent attorney-client communications and work product communicated to defendant on the same subject or that reflected any communication to defendant on the same subject, regardless of whether defendant's opinion counsel

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and trial counsel were from same law firm, different law firms, or were even the same person. Fed.Rules Civ.Proc.Rule 26(b)(3), 28 U.S.C.A.

Albert Lukas Sieber, Fenwick & West LLP, Kenneth B. Wilson, Stefani E. Shanberg, Perkins Coie LLP, San Franciso, CA, Carolyn Chang, Darren E. Donnelly, David Douglas Schumann, J. David Hadden, Lynn H. Pasahow, Fenwick & West LLP, Mountain View, CA, Lynne A. MaherFenwick & West LLP, Palo Alto, CA, for Plaintiff Informatica Corporation.

Theodore T. Herhold, Daniel J. Furniss, Robert D. Tadlock, Townsend and Townsend and Crew LLP, Palo Alto, CA, Ian L. Saffer, Townsend and Townsend and Crew LLP, Denver, CO, for Defendants.

## ORDER GRANTING IN PART MOTION TO COMPEL (Docket # 187)

LARSON, Chief United States Magistrate Judge.

### Summary

Plaintiff Informatica Corporation ("Informatica") moves to compel answers to interrogatories and production of documents which Defendant BODI withholds as protected by the attorney-client privilege and the work product doctrine. The motion is granted in part. This Court finds that BODI waived attorney-client privilege for both pre- and post-filing communications on the subject of the opinion on which it relies for its advice-of-counsel defense and for work product on the same subject which was communicated to BODI, including documents which reference any attorney-client communications on that **\*959** subject. Such waiver applies to opinion counsel and trial counsel alike.

While opinion counsel and trial counsel can be walled off from each other, the immurement is immaterial-what matters, according to the Federal Circuit in *EchoStar*, is the state of mind of BODI relative to infringement. It is immaterial whether BODI's opinion counsel and trial counsel are from the same firm, different firms or are even the same person. What matters is the following:

1. BODI relies on advice of counsel as a defense to Informatica's charge that it willfully infringed Informatica's patents;

2. Therefore, BODI waives any privilege for communications with counsel on the subject of the opinion or advice on which it relies, as well as work product on that subject communicated to BODI or which refers to communications on that subject; and

3. Informatica alleges that BODI continues to infringe Informatica's patents;

4. Therefore, Informatica is entitled to information subject to waiver which BODI received even after Informatica filed its complaint; and

5. The categories of information which BODI must turn over to Informatica include (a) attorney-client communications with any counsel on the subject of the opinion or advice on which BODI relies; (b) work product communicated to BODI on that same subject; (c) work product which reflects any communication on that subject.

### Background

Informatica Corporation ("Informatica") is suing Business Objects Data Integration, Inc. ("BODI", formerly Acta Technology) for patent infringement. All discovery in this case has been referred by the district court (Hon. Jeffrey S. White) as provided by 28 U.S.C. § 636(b) and Civil Local Rule 72. The district court on April 18 approved the parties' stipulation re damages, expert reports and the discovery cut-off. Fact discovery closed June 5, 2006.

BODI contends that disclosures of privileged information and the deposition of opinion counsel should be delayed until after the parties file their motions for summary judgment. Pursuant to the order setting dates, [Docket No. 147], BODI produced its written opinions of counsel on January 31, 2006. Tadlock Decl. ¶ 11. Informatica recently has sought to depose both the attorney who authored the opinions, and also the BODI representative who received the opinion (who

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 5

happens to be BODI's in-house counsel). *Id.* ¶ 12. Such depositions would require further disclosure of attorney-client communications and attorney work product at a time when the parties are preparing expert reports and motions for summary judgment. *Id.* Summary judgment motions were scheduled to be filed by June 16, 2006 and argued on August 4, 2006. [Docket No. 147]. However, Judge White vacated the hearing on summary judgment because, although the parties agreed to try the case on the basis of representative claims, they cannot agree on what those claims are:

Although both parties agree that this Court may utilize a representative claims approach for trial, they disagree over what those representative claims should be. The Court exhorts the parties further meet and confer in person in an effort to resolve this dispute and submit a status report by no later than June 26, 2006. Until this dispute is resolved, the Court cannot proceed with the current schedule set for dispositive motions in this matter.

(Order filed 6/12/2006, at docket # 224)

The parties on June 26 advised the district court that they would be submitting a stipulation as to the representative claims. **\*960** (Status Report at Docket # 225) The district court on July 5 approved the parties' stipulation extending damages expert discovery to August 31 (Docket # 229).

## Discovery Dispute

This Court received the parties' joint letter brief arguing the merits of their positions on the scope of any waiver of the attorney-client privilege and the work product doctrine resulting from BODI's assertion of the advice-of-counsel defense. An additional wrinkle is that one of the attorneys who rendered an opinion on infringement is a member of the same firm which represents BODI in this litigation.

Informatica asks this Court to compel BODI to include all responsive attorney-client communications and work product regarding its non-infringement contentions in response to Interrogatory No. 3, and supplement all discovery

responses to include responsive attorney-client communications and work product. Furthermore, Informatica asks the Court to order the Townsend firm and attorney Philip H. Albert to produce all attorney-client communications and attorney work product regarding infringement or non-infringement of the patents-in-suit in response to the subpoenas issued by Informatica.

In its portion of the letter brief, BODI "respectfully requests that it be allowed full briefing on the merits if the Court were to consider granting Informatica's motion in whole or in part." (Letter brief, Docket # 187, at pages 3 and 4)

The Court was inclined to grant Informatica's motion and ordered the parties to brief the issue of the existence and scope of the waiver of both attorney-client privilege and the work product doctrine, particularly in light of the following authorities: *AKEVA L.L.C. v. Mizuno Corporation,* 243 F.Supp.2d 418 (M.D.N.C.2003); *Novartis Pharmaceuticals Corporation v. EON Labs Manufacturing, Inc.,* 206 F.R.D. 396 (D.Del.2002); *Convolve, Inc. v. Compaq Computer Corp.,* 224 F.R.D. 98 (S.D.N.Y.2004); David Hricik, *How Things Snowball: The Ethical Responsibilities and Liability Risks Arising from Representing a Single Client in Multiple Patent-related Representations,* Georgetown Journal of Legal Ethics, Spring 2005, 18 Geo. J. Legal Ethics 421.

The parties then requested an opportunity also to brief the impact on this case of the decision by the Federal Circuit in the case of *In re EchoStar Communications Corp.* 448 F.3d 1294 (Fed.Cir.2006), which was decided May 1, 2006. The Court granted their request and briefing was submitted. The Court took the matter under submission.

## Argument

BODI argues that this Court should give precedence to the Federal Circuit's decisions and specifically *EchoStar*, which absolved from disclosure any work product not disclosed to the client.

When an alleged patent infringer asserts an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

454 F.Supp.2d 957

454 F.Supp.2d 957
(Cite as: 454 F.Supp.2d 957)

Page 6

advice-of-counsel defense regarding willful infringement, it waives its attorney-client privilege and work-product immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused; waiver includes not only any letters, memorandum, conversation, or the like between the attorney and his or her client, but, when appropriate, any documents referencing a communication between attorney and client.

*Id.* at 1304.

BODI argues that there is a significant difference between the same individual lawyer being both opinion and litigation counsel and those roles being played by different lawyers with the same firm. BODI contends that "[w]here the same individual lawyer does not act as both trial **\*961** and opinion counsel, the proper balance is to not require disclosure of such sensitive communications, which are not relevant to the alleged infringer's state of mind. [Docket No. 198, ¶ . 4-6.]"

BODI urges this Court to "not extend the waiver of attorney-client privilege to BODI's trial counsel, but rather follow the Northern District cases that find the trial counsel's communications are not discoverable. E.g., *Sharper Image Corp. v. Honeywell International Inc.,* 222 F.R.D. 621 at 634-46 (N.D.Cal.2004); *Collaboration Properties, Inc. v. Polycom, Inc.,* 224 F.R.D. 473 at 475-77 (N.D.Cal.2004); *Terra Novo, Inc. v. Golden Gate Products, Inc.,* 2004 WL 2254559 at \*3 (N.D.Cal.2004)."

This Court examined those cases and finds they are factually distinguishable: in *Sharper Image* there was separately retained litigation counsel. In *Collaboration Properties* trial counsel did not provide any pre-litigation advice. In *Terra Novo,* trial and litigation counsel were with separate firms. Consequently, BODI's citation to these cases is not than convincing.

BODI asks this Court to interpret *EchoStar* to hold that attorney work product is not discoverable unless it is communicated to the client or discusses

a communication with a client. *In re EchoStar,* 448 F.3d at 1305. ("counsel's legal opinions and mental impressions that were not communicated ... are ... not within the scope of the waiver ... work product that was not communicated to EchoStar or does not reflect a communication is not within the scope of EchoStar's waiver because it obviously played no part in EchoStar's belief as to infringement of the 389 patent.") *Id.*

The Federal Circuit reasoned that "if a legal opinion or mental impression was never communicated to the client, then it provides little if any assistance to the court in determining whether the accused knew it was infringing, and any relative value is outweighed by the policies supporting the work-product doctrine." *Id.* at 1304. Thus, says BODI, if this Court orders production of any of trial counsel's materials, it should extend only to materials that were communicated to BODI, not uncommunicated work product. BODI asks the Court not to ignore this clear mandate from *EchoStar.*

Informatica argues that BODI's trial counsel's uncommunicated work product is discoverable because Mr. Albert and BODI's trial counsel are from the same law firm. [Docket No. 206 at 7-8.] To the extent that Informatica relies on *Novartis* for this proposition, BODI asks the Court to find that case distinguishable because there the same individual attorney acted as both opinion and trial counsel. *Novartis Pharms. Corp. v. Eon Labs Mfg.,* 206 F.R.D. 392, 395 (D.Del.2002) ("Eon's opinion counsel, Mr. Pontani, has actually entered an appearance in this matter.") BODI points to the appearance by opinion counsel in *Novartis* as distinguishing that case from the case at bar, where opinion counsel has not made an appearance.

Moreover, to the extent *Novartis* is inconsistent with *EchoStar,* BODI urges this Court to rule that the former is no longer good law and deny Informatica's motion to compel production of uncommunicated work product. BODI argues that *EchoStar* directly contradicts this argument. With regard to work product, the Federal Circuit determined that uncommunicated work product " provides little if any assistance" in determining a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendant's state of mind. *In re EchoStar,* 448 F.3d at 1305.

That Mr. Albert and BODI's trial counsel are members of the same firm, argues BODI, has no bearing on whether any given work product document was communicated to BODI, in which case it might *962 affect BODI's state of mind, or uncommunicated, in which case it would not. BODI asks this Court to find, under the rationale of *EchoStar,* that the identity of the lawyer providing the opinion and that lawyer's affiliation, if any, with a law firm, is irrelevant and that the sole relevant inquiry is what the alleged infringer knew or did not know.

Informatica also claims that BODI's trial counsel must produce its communications and work product because Mr. Albert allegedly was not in any way separated from BODI's trial counsel. Mr. Albert has stated under oath that he has never been a member of the Townsend litigation team and that his last communication with trial counsel about the Informatica patents-in-suit was over three years ago, on November 14, 2002. [See Docket No. 199 ¶ 6]. There is no evidence that Mr. Albert communicated with BODI's trial counsel, even though they are members of the same firm as Mr. Albert.

Finally, BODI asks the Court for procedural reasons not to compel any further response to Interrogatory 3, which it contends is improper for reasons that have nothing to do with the work product doctrine and the waiver resulting from the advice-of-counsel defense. BODI contends that any dispute over BODI's response to Interrogatory 3 was resolved during the meet and confer between counsel, and the decision by the court in *EchoStar* does not affect this resolution. Prior to filing this motion, counsel for BODI agreed to supplement its response to Interrogatory 3, but at all times maintained that it would not conduct any product comparisons requested by the interrogatory that had not been previously conducted, and that it would not create work product that did not already exist. [Docket No. 201 ¶¶ 5-6 & Exh. 3.]

Counsel for Informatica admits that this is all that

BODI's counsel agreed to do, [Docket No. 207 ¶ 6], but now contends that this agreement was not a resolution of the dispute, but rather was a unilateral agreement by BODI to provide additional information, which Informatica could then review and either accept or reject. [Id. ¶ 7.] BODI says it did not agree to provide a supplemental response simply so Informatica could review it and then file this motion anyway. Rather, says BODI, the agreement was that BODI's production of the supplemental response would resolve all disputed issues. [Docket No. 201 ¶ 5, 9.]

This Court is not in a position to enforce agreements over which the parties now disagree. It can only apply the law to the facts in this case, and therefore declines to base its decision on any putative agreement between the parties. The legal and factual analysis follows.

## Analysis

The question before this Court is the scope of the waiver of privilege by BODI after it asserted an advice-of-counsel defense.

[1] Federal Circuit law, rather than the law of the regional circuit, applies to substantive legal issues in a patent case.
In this petition, we apply our own law, rather than the law of the regional circuit. This case involves the extent to which a party waives its attorney-client privilege and work-product immunity when it asserts the advice-of-counsel defense in response to a charge of willful patent infringement. "Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law."

*In re EchoStar,* 448 F.3d at 1298.

In the underlying case, TiVo sued EchoStar for infringement of its *963U.S. Patent No. 6,233,389 ( "the 389 patent"). In response to the allegation of willful infringement, EchoStar asserted the defense of reliance on advice of counsel. Prior to filing the action, EchoStar relied on advice of in-house

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

454 F.Supp.2d 957                                                                                    Page 8

454 F.Supp.2d 957
**(Cite as: 454 F.Supp.2d 957)**

counsel. After the action was filed, EchoStar obtained additional legal advice from Merchant & Gould but elected not to rely on it. Presumably to explore further EchoStar's state of mind in determining that it did not infringe the patent, TiVo sought production of documents in the possession of EchoStar and Merchant & Gould.

The district court ultimately found waiver of immunity for all work product of Merchant and Gould, both pre and post-filing of the complaint, whether or not communicated to EchoStar. Echostar petitioned the Federal Circuit for a writ of mandamus with respect to Merchant and Gould documents not communicated to EchoStar. No in-house counsel documents were at issue.

[2] Questions of privilege and discoverability that arise from assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law, *see In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 803-04 (Fed.Cir.2000) (applying Federal Circuit law to question of attorney-client privilege between patent attorney and patentee). *Id.*

[3][4][5] The attorney-client privilege protects disclosure of communications between a client and his attorney. *U.S. v. Zolin,* 491 U.S. 554, 562, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); *Upjohn Co. v. U.S.,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Once a party announces that it will rely on advice of counsel, for example, in response to an assertion of willful infringement, the attorney-client privilege is waived. "The widely applied standard for determining the scope of a waiver of attorney-client privilege is that the waiver applies to all other communications relating to the same subject matter." *Fort James Corp. v. Solo Cup Co.,* 412 F.3d 1340, 1349 (Fed.Cir.2005). Cited in *In re EchoStar,* 448 F.3d at 1298-1299.

[6][7][8] In contrast to the attorney-client privilege, the work-product doctrine, or work-product immunity as it is also called, can protect " documents and tangible things" prepared in anticipation of litigation that are both non-privileged and relevant. Fed.R.Civ.P. 26(b)(3). Unlike the attorney-client privilege, which protects

all communication whether written or oral, work-product immunity protects documents and tangible things, such as memorandums, letters, and e-mails. The work-product immunity promotes a fair and efficient adversarial system by protecting " the attorney's thought processes and legal recommendations" from the prying eyes of his or her opponent. *In re EchoStar,* 448 F.3d at 1301.

[9][10] A party may discover work product if the other party waives its immunity. However, work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege. Instead, work-product waiver only extends to "factual" or "non-opinion" work product concerning the same subject matter as the disclosed work product. *Id.* at 1302 (internal citations omitted).

[11] When a party relies on the advice of counsel as a defense to willful infringement the party waives its attorney-client privilege for all communications between the attorney and client, including any documentary communications such as opinion letters and memoranda. *Id. (citing AKEVA LLC,* 243 F.Supp.2d at 423).

The court in *EchoStar* recognized at least three categories of work product that are potentially relevant to the advice-of-counsel defense: (1) documents that **\*964** embody a communication between the attorney and client concerning the subject matter of the case, such as a traditional opinion letter; (2) documents analyzing the law, facts, trial strategy, and so forth that reflect the attorney's mental impressions but were not given to the client; and (3) documents that discuss a communication between attorney and client concerning the subject matter of the case but are not themselves communications to or from the client. The court concluded that waiver extends to the first and third categories but not to the second. *In re EchoStar,* 448 F.3d at 1303.

The court in *EchoStar* found that the relevant inquiry is not into the attorneys's files, but into the infringer's state of mind:
Work-product waiver extends only so far as to inform the court of the infringer's state of mind.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Counsel's opinion is not important for its legal correctness. It is important to the inquiry whether it is "thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable." It is what the alleged infringer knew or believed, and by contradistinction not what other items counsel may have prepared but did not communicate to the client, that informs the court of an infringer's willfulness.

*In re EchoStar,* 448 F.3d at 1303 (internal citation omitted)

[12] Where there is an allegation of continuing infringement, waiver may extend to post-filing work product as well, if it is communicated to the client.
EchoStar contends that waiver of opinions does not extend to advice and work product given after litigation began. While this may be true when the work product is never communicated to the client, it is not the case when the advice is relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation.

See *AKEVA LLC,* 243 F.Supp.2d at 423 ("[O]nce a party asserts the defense of advice of counsel, this opens to inspection the advice received during the entire course of the alleged infringement.") *In re EchoStar,* 448 F.3d at 1303.

In the case at bar, Informatica alleges that BODI continues to infringe Informatica's patents (Complaint at paragraphs 13, 15, 17, 18, 20, 24, 25, 27, 29 and 31.)

**Conclusion and Order**

This Court, after weighing all the persuasive authority, concludes that the Federal Circuit has the final word in a patent case on the subject of the scope of waiver of attorney-client privilege and the work product protection for discovery relevant to a substantive issue after assertion of the advice-of-counsel defense. The court in *EchoStar* makes it crystal clear that attorney-client communications on the subject of the opinion BODI relies on for its defense are subject to waiver, as

well as documents, including work product, which reference these communications. Similarly, both pre- and post-filing work product is potentially relevant to the alleged infringer's intent where there is an allegation of continuing infringement and are therefore also subject to waiver. However, only work product which has either been communicated to the alleged infringer or refers to communications is relevant to intent and therefore subject to waiver by assertion of the advice-of-counsel defense.

This Court finds that, according to the analysis in *EchoStar,* what is significant is the state of mind of BODI and not the affiliation of BODI's attorneys, and that privilege has been waived with respect to pertinent communications and work product of all counsel in this case. Attorney legal opinions, impressions and trial strategy*965 unrelated to the opinion on which BODI relies may be redacted from documents to be produced to Informatica.
The Federal Circuit in *EchoStar* cautioned that the parties should protect such information.
Still, we must emphasize that such communications may contain work product of the second kind-legal analysis that was not communicated. In those situations, the parties should take special care to redact such information, and if necessary the district court may review such material in camera.
*In re EchoStar,* 448 F.3d at 1304.

While opinion counsel and trial counsel can be walled off from each other, the immurement is immaterial-what matters, according to the decision by the Federal Circuit in *EchoStar,* is the state of mind of BODI.

[13] For all the above reasons, Informatica's motion to compel further responses from BODI is granted.
This Court finds that, by asserting advice of counsel as a defense to a charge of willful infringement of Informatica's patents, BODI waived privilege for both pre-and post-filing pertinent attorney-client communications and work product. Under the analysis in *EchoStar,* it is immaterial whether BODI's opinion counsel and trial counsel are from the same firm, different firms or are even the same person. What matters is that:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

454 F.Supp.2d 957

454 F.Supp.2d 957
**(Cite as: 454 F.Supp.2d 957)**

1. BODI relies on advice of counsel as a defense to Informatica's charge that it willfully infringed Informatica's patents;

2. Therefore, BODI waives privilege for communications with counsel on the subject of the opinion or advice on which it relies as well as work product on that subject communicated to BODI or which refers to communications on that subject;

3. Informatica alleges that BODI continues to infringe Informatica's patents;

4. Therefore Informatica is entitled to information subject to waiver which BODI received even after Informatica filed its complaint;

5. The categories of information which BODI must turn over to Informatica include (a) attorney-client communications with any counsel on the subject of the opinion or advice on which BODI relies; (b) work product communicated to BODI on that same subject; (c) work product which reflects any communication on that subject.

Attorney legal opinions, impressions and trial strategy unrelated to the opinion on which BODI relies may be redacted from documents to be produced to Informatica.

All responsive discovery which is being withheld as privileged for which privilege has been waived as discussed above shall be produced within twenty days of the e-filing of this order. BODI shall at the same time produce a privilege log for all other withheld documents, in compliance with the decision in *In re Grand Jury Investigation,* 974 F.2d 1068, 1070 (9th Cir.1992), *citing Dole v. Milonas,* 889 F.2d 885, 888 n. 3, 890 (9th Cir.1989)
.

IT IS SO ORDERED.

N.D.Cal.,2006.
Informatica Corp. v. Business Objects Data Integration, Inc.
454 F.Supp.2d 957

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy

Slip Copy, 2006 WL 2329460 (N.D.Cal.)
**(Cite as: Slip Copy)**

Page 1

▷
Informatica Corp. v. Business Objects Data
Integration, Inc.
N.D.Cal.,2006.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
INFORMATICA CORPORATION, a Delaware
Corporation, Plaintiff,
v.
BUSINESS OBJECTS DATA INTEGRATION,
INC., formerly known as Acta Technology, Inc., a
Delaware Corporation, Defendants.
andRelated Counterclaims.
**No. C 02-3378 JSW.**

Aug. 9, 2006.

Albert Lukas Sieber, Aparna Rajagopal-Durbin,
Fenwick & West LLP, Kenneth B. Wilson, Stefani
E. Shanberg, Perkins Coie LLP, San Francisco, CA,
Carolyn Chang, Darren E. Donnelly, David Douglas
Schumann, J. David Hadden, Lynn H. Pasahow,
Fenwick & West LLP, Mountain View, CA, Lynne
A. Maher, Fenwick & West LLP, Palo Alto, CA,
for Plaintiff.
Theodore T. Herhold, Daniel J. Furniss, Joseph A.
Greco, Robert D. Tadlock, Townsend and
Townsend and Crew LLP, Palo Alto, CA, Ian L.
Saffer, Townsend and Townsend and Crew LLP,
Denver, CO, Leonard Joseph Augustine, Jr.,
Townsend and Townsend and Crew LLP, San
Francisco, CA, for Defendants.

**ORDER DENYING DEFENDANTS'
OBJECTIONS AND AFFIRMING THE
DISCOVERY ORDER**
JEFFREY S. WHITE, District Judge.
**\*1** Now before the Court is the objection filed by
Defendant Business Objects Data Integration, Inc. ("
BODI"), formerly known as Acta Technology, Inc.,
("ACTA"), to the order issued by Chief Magistrate
Judge James Larson dated July 14, 2006 granting in
part and denying in part a motion filed by Plaintiff

Informatica Corporation ("Informatica") (the "
Discovery Order"). Having carefully reviewed the
parties' papers and considered their arguments and
the relevant legal authority, and good cause
appearing, the Court hereby DENIES Defendants'
objections and AFFIRMS the Discovery Order.

The District Court may modify or set aside any
portion of a magistrate's ruling on nondispositive
pre-trial motions found to be "clearly erroneous or
contrary to law." Fed.R.Civ.P. 72(a); *see also, e.g.,
Grimes v. City and County of San Francisco,* 951
F.2d 236, 241 (9th Cir.1991). A ruling is clearly
erroneous if the reviewing court, after considering
the evidence, is left with the "definite and firm
conviction that a mistake has been committed."
*United States v. U.S. Gypsum Co.,* 333 U.S. 364,
395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

The discovery dispute at issue concerns the scope of
the waiver when a defendant relies on advice of
counsel to defend against allegations of willful
infringement. In November 2000, ACTA hired
attorney Phil Albert with Townsend and Townsend
and Crew LLP ("Townsend") to advise it regarding
several Informatica patents. Mr. Albert provided his
written opinions on June 27, 2002. On July 15,
2002, Informatica filed this instant lawsuit against
ACTA. BODI acquired ACTA on August 26, 2002.
BODI had used Daniel J. Furniss with Townsend as
its patent litigation counsel since 1996. After
purchasing ACTA, BODI asked Mr. Furniss to
represent BODI in the instant lawsuit. Since
communicating his opinions in June 2002, Mr.
Albert has had three conversations on background
issues with trial counsel at Townsend, the last of
which occurred on November 14, 2002. After this
Court issued its claim construction ruling in August
2005, BODI asked Bruce Riter, an attorney who is
not affiliated with Townsend, to provide further
opinions in light of the claim construction order.
BODI represents that it has produced all
communications and work product by Mr. Albert
and Mr. Riter pertaining to their respective

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2329460 (N.D.Cal.)
**(Cite as: Slip Copy)**

opinions, but has refused to produce communications or work product by trial counsel at Townsend.

In the Discovery Order, Judge Larson held that BODI waived attorney-client privilege for both pre- and post-filing communications on the subject of the opinion on which BODI relies for its advice-of-counsel defense and for work product on the same subject which was communicated to BODI, including any documents which reference any attorney-client communications on that subjection. Judge Larson further held that the waiver applied to opinion counsel and trial counsel alike. BODI objects to the Discovery Order, arguing that Judge Larson erred by applying the waiver to its trial counsel.

**\*2** This Court must apply Federal Circuit law to this discovery dispute. *See In re EchoStar Communications Corp.,* 448 F.3d 1294, 1298 (Fed.Cir.2006) (quoting *Advanced Cardiovascular Sys. v. Medtronic, Inc.,* 265 F.3d 1294, 1307 (Fed.Cir.2001) ("Federal Circuit law applies when deciding whether particular written or other materials are discoverable in a patent case, if those materials relate to an issue of substantive patent law. ")). Where a party announces that it will rely on advice of counsel in response to an assertion of willful infringement, it waives the attorney-client privilege. *In re EchoStar,* 448 F.3d at 1299. The dispute here concerns the scope of this waiver.

In *In re EchoStar,* the defendant produced an opinion from in-house counsel, but withheld an opinion from outside counsel on which EchoStar chose not to rely. The Federal Circuit held that " when EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel...." *Id.* at 1399 (citing *Akeva LLC v. Mizuno Corp. .,* 243 F.Supp.2d 418, 423 (M.D.N.C.2003)). The court reasoned that " selective waiver of the privilege may lead to the inequitable result that the waiving party could waive its privilege for favorable advice while asserting its privilege on unfavorable advice ." *Id.* at 1301. To

prevent such abuse, the court held that "when a party defends its action by disclosing an attorney-client communication, it waives the attorney-client privilege as to all such communications regarding the same subject matter." *Id.*

As authority for its holding, the Federal Circuit cited *Akeva,* which held that
because infringement is a continuing activity, the requirement to exercise due care and seek and receive advice is a continuing duty. Therefore, once a party asserts the defense of advice of counsel, this opens to inspection the advice received during the entire course of the alleged infringement. Consequently, the waiver of attorney-client privilege or work product protection covers all points of time, including up through trial. The waiver also is not limited to the advice given by opinion counsel. Since the waiver encompassed the subject matter of advice, that means that all opinions received by the client must be revealed, even those opinions that the client receives from attorneys other than opinion counsel.... The totality of the circumstances test requires that all knowledge gained by the infringer relating to the advice subject matter must be revealed so that the factfinder can make its own determination as to whether the reliance was reasonable.

Akeva, 243 F.Supp.2d at 423. In *Akeva,* the court found that the defendants waived the attorney-client privilege with respect to the issue of infringement, and therefore required the defendants to disclose " all opinions received by the client relating to infringement ..., even if they [came] from defendants' trial attorneys, and even if they pre-date[d] or post-date[d] the advice letter of opinion counsel." *Id.*

**\*3** The holding of *In re EchoStar,* especially when it is considered in light of the *Akeva* case, does not provide any support for BODI's proposed limitation on the scope of the waiver to exclude opinions or advice given by trial counsel on the same subject matter of the opinion given by Mr. Albert. Accordingly, the Court finds that Judge Larson's ruling was not clearly erroneous or contrary to law. Therefore, this Court denies Defendants' objections

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy

Slip Copy, 2006 WL 2329460 (N.D.Cal.)
**(Cite as: Slip Copy)**

and affirms the Discovery Order dated July 14, 2006.

Nevertheless, this Order should not be construed to require the wholesale disclosure of communications pertaining to trial or litigation strategy. As the court explained in *Concolve, Inc. v. Compaq Computer Corp.,* 224 F.R.D. 98, 105 (S.D.N.Y.2004), "trial counsel's advice that undermines the reasonableness of the client's reliance on advice of counsel must be disclosed even if it is communicated in the context of trial preparation. But, at the same time, trial counsel will surely address with the client trial strategy concerning validity, infringement, and enforcement in ways that do not implicate the advice-of-counsel defense." BODI therefore is required to disclose trial counsel's opinions or advice that address the subject matter of the opinion given by Mr. Albert, but may withhold communications that relate to litigation or trial strategy and do not implicate the advice-of-counsel defense. Thus, as Magistrate Judge Larson ordered, "[a]ttorney legal opinions, impressions and trial strategy unrelated to the opinion on which BODI relies may be redacted from documents to be produced to Informatica."

BODI is directed to produce all responsive documents and a privilege log in compliance with the Discovery Order by no later than 9:00 a.m. on Friday, August 11, 2006.

**IT IS SO ORDERED.**

N.D.Cal.,2006.
Informatica Corp. v. Business Objects Data Integration, Inc.
Slip Copy, 2006 WL 2329460 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT  C

**GENENTECH, INC., et al., Plaintiffs,**

v.

**INSMED INCORPORATION,
et al., Defendants.**

**No. C–04–5429 CW (EMC).**

United States District Court,
N.D. California.

Aug. 10, 2006.

**Background:** Patentees sued competitors
for patent infringement and a declaratory
judgment of patent infringement. Paten-
tees filed motion on scope and procedure
of willfulness discovery, and alleged in-
fringers cross-moved to quash or limit
scope of subpoenas.

**Holdings:** The District Court, Chen, Unit-
ed States Magistrate Judge, held that:

(1) alleged infringers relied on the advice
of trial counsel in deciding to launch
the accused product, and

(2) alleged infringers' assertion of advice-
of-counsel defense effected waiver of
attorney-client privilege with respect
to trial counsel only to extent of advice
and work product of trial counsel that
was reasonably central to alleged in-
fringers' decision to launch the accused
product.

Motions granted in part and denied in
part.

**1. Courts �line96(7)**

Federal Circuit law governs the issue
of privilege and discoverability arising
from assertion of the advice-of-counsel de-
fense.

**2. Witnesses ⟝222**

The burden is on the party invoking
the attorney-client privilege to establish
nonwaiver.

**3. Witnesses ⟝219(3)**

Alleged patent infringers relied on the
advice of trial counsel in deciding to launch
the accused product, as would provide a
basis for extending waiver of attorney-
client privilege to trial counsel, given al-
leged infringers' assertion of the advice-of-
counsel defense.

**4. Witnesses ⟝219(3)**

Alleged infringers' assertion of advice-
of-counsel defense in patent infringement
action effected waiver of attorney-client
privilege with respect to trial counsel only
to extent of advice and work product of
trial counsel that was reasonably central to
alleged infringers' decision to launch the
accused product.

**Patents ⟝328(2)**

5,187,151, 6,331,414.   Cited.

———

M. Patricia Thayer, Ethan Glass, Heller
Ehrman LLP, San Francisco, CA, William
G. Gaede, III, McDermott Will & Emery
LLP, Palo Alto, CA, for Plaintiffs.

Heidi Strain, David B. Moyer, George C.
Best, Larry L. Shatzer, Liane M. Peter-
son, Foley & Lardner LLP, Washington,
DC, E. Patrick Ellisen, Greenberg Trau-
rig, LLP, East Palo Alto, CA, for Defen-
dants.

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS'
MOTION ON SCOPE AND PROCE-
DURE OF WILLFULNESS DIS-
COVERY; AND GRANTING IN
PART AND DENYING IN PART
DEFENDANTS' CROSS–MOTION
TO QUASH OR LIMIT SCOPE OF
SUBPOENAS (Docket Nos. 514, 524)**

CHEN, United States Magistrate
Judge.

Plaintiffs have sued Defendants for pat-
ent infringement and a declaratory judg-

ment of patent infringement. On July 17, 2006, Defendants decided that they would assert the advice-of-counsel defense with respect to the claim of willful infringement. Currently pending is Plaintiffs' motion on the scope and procedure of willfulness discovery and Defendants' cross-motion to quash or limit the scope of subpoenas. Having reviewed the parties' briefs and accompanying submissions, and good cause appearing therefor, the Court hereby **GRANTS in PART** and **DENIES in PART** each party's motion.

## I. *FACTUAL & PROCEDURAL BACKGROUND*

On December 23, 2004, Plaintiffs filed suit against Defendants. In their original complaint, Plaintiffs asserted claims for infringement of the '151 patent and for a declaratory judgment of infringement of the '151 and '414 patents. The claim for declaratory relief "was aimed primarily at Insmed's intended future conduct to infringe once it received FDA approval of its iPlex™ product." Mot. at 5.

Approximately a year later, in December 2005, the FDA approved the iPlex™ product. *See id.* Subsequently, in May 2006, Defendants launched the product. *See id.* Approximately a month later, on June 30, 2006, Judge Wilken issued her claim construction order. *See* Docket No. 510. In that same order, Judge Wilken granted Plaintiffs' motion for partial summary judgment, holding that Defendants infringed claims 1, 2, and 9 of the '414 patent and that the '151 patent is not invalidated by the Maack and Sommer abstracts. Per this Court's prior ruling, *see* Docket No. 258, Defendants then had fifteen days to make a decision as to whether they would rely on an opinion of counsel as part of a defense to Plaintiffs' claim of willful infringement. On July 17, 2006,

Defendants decided that they would assert the advice-of-counsel defense.

Accordingly, on the same day, Defendants produced to Plaintiffs documents related to opinions from various law firms, including Foley & Lardner ("Foley") who is also trial counsel in this case. With respect to Foley, three formal opinions were given. First, on October 21, 2002, Foley provided an opinion on invalidity of the '414 patent. *See* Shiang Decl., Ex. 8. Second, on December 2, 2002, Foley provided an opinion on infringement with respect to the '151 patent. *See* Shiang Decl., Ex. 1. Finally, in or about February 2005, Foley provided an update on the infringement opinion. *See id.,* Ex. 2. Beth Burrous was the author of the formal opinions. *See* Burrous Decl. ¶ 4 ("As intellectual property counsel for Insmed I prepared opinion letters for Insmed related to the U.S. Patent Nos. 6,331,414 and 5,187,151 that I understand have been produced in this case."). Brian McCaslin assisted with the preparation of the formal opinions. *See* McCaslin Decl. ¶ 4.

Apparently, even after Judge Wilken's order in which she held that Defendants infringed three claims of the '414 patent, Defendants continued to market the iPlex™ product. *See* Reply at 1–2.

## II. *DISCUSSION*

Currently pending before the Court is Plaintiffs' motion on the scope and procedure of willfulness discovery and Defendants' cross-motion to quash or limit the scope of subpoenas. There are three issues raised in Plaintiffs' motion: (1) whether Defendants' waiver of attorney-client privilege (because of their assertion of the advice-of-counsel defense) should extend to advice given by Foley as trial counsel; (2) whether Plaintiffs should be permitted to take six additional depositions as part of willfulness discovery and re-

open two depositions; and (3) whether the scope of willfulness discovery should be limited to the documents that Defendants produced to Plaintiffs on July 17, 2006. In turn, Defendants' motion raises the question of what discovery should be permitted with respect to Plaintiffs' subpoenas directed to three law firms—namely, Foley, WilmerHale (formerly Hale & Dorr), and Sterne, Kessler, Goldstein & Fox—who provided opinions on the patents at issue.

### A. Advice from Foley

#### 1. EchoStar

[1]    Federal Circuit law governs the issue of privilege and discoverability arising from assertion of the advice-of-counsel defense. See In re EchoStar Comms. Corp., 448 F.3d 1294, 1298 (Fed.Cir.2006) ("[Q]uestions of privilege and discoverability that arise from assertion of the advice-of-counsel defense necessarily involve issues of substantive patent law."). Plaintiffs argue that, because Defendants have asserted the advice-of-counsel defense, Plaintiffs are entitled to all advice given by Foley which would include (1) advice provided as trial counsel, not just opinion counsel, and (2) advice provided after the filing date of the complaint, especially since infringement by Defendants did not occur until after the complaint was filed and Defendants continued to sell the iPlex™ product even after Judge Wilken's order finding infringement. Plaintiffs assert that the above is justified in light of the recent Federal Circuit opinion In re EchoStar.

In response, Defendants claim that they have produced documents that came after the filing of the complaint consisting of communications between opinion counsel and Defendants, see Opp'n at 11 n. 3, so that the only issue here is whether waiver should extend to trial counsel. Defendants argue that EchoStar did not address this specific issue. Defendants further argue that Foley opinion counsel was walled off from the Foley trial team and thus should be treated separately.

[2]    There does not appear to be any dispute that Defendants have, as they assert, produced documents that post-date the complaint to the extent they involve opinion counsel. Thus, as Defendants contend, the only question for the Court is whether the waiver by Defendants, because of their assertion of the advice-of-counsel defense, should reach trial counsel.[1]  The burden is on Defendants to establish nonwaiver. See In re Regents of the Univ. of Cal., 101 F.3d 1386, 1390 n. 2 (Fed.Cir.1996) ("For procedural matters that are not unique to patent issues, we apply the perceived law of the regional circuit."); United States v. Martin, 278 F.3d 988, 999–1000 (9th Cir.2002) (identifying nonwaiver as one element of the attorney-client privilege and stating that "[t]he burden is on the party asserting the privilege to establish all the elements of the privilege"); Weil v. Investment/Indicators, Research & Mgmt., 647 F.2d 18, 25 (9th Cir.1981) ("One of the elements that the asserting party must prove is that it has not waived the privilege.").[2]

---

1. At the hearing, Plaintiffs conceded that the scope of Defendants' waiver with respect to Foley trial counsel should be defined by the subject matter of the advice given by Foley opinion counsel—i.e., infringement and invalidity on the matters which were the subject of advice for which Defendants elected to waive the privilege, not unenforceability.

2. See also Paul R. Rice, Attorney–Client Privilege in the United States § 9:20, at 52–53 (2d ed.1999) (stating that "[t]he prevalent, albeit unstated, practice appears to be to impose the initial burden of establishing the basic elements on the privilege proponent"; that, "[o]nce the proponent does so, the burden of going forward with evidence shifts to the op-

The starting point in resolving this discovery dispute is *EchoStar.* In *EchoStar,* TiVO sued EchoStar for infringement of the '389 patent. *See EchoStar,* 448 F.3d at 1297. "Prior to the filing of the action, EchoStar relied on advice of in-house counsel. After the action was filed, EchoStar obtained additional legal advice from Merchant & Gould but elected not to rely on it." *Id.* After EchoStar asserted the defense of reliance on the advice of counsel, TiVO sought production of, *inter alia,* documents in the possession of Merchant & Gould. *See id.* The Federal Circuit made two rulings with respect to these documents.

First, regarding the attorney-client privilege, the court held that, "when EchoStar chose to rely on the advice of in-house counsel, it waived the attorney-client privilege with regard to any attorney-client communications relating to the same subject matter, including communications with counsel other than in-house counsel, which would include communications with Merchant & Gould." *Id.* at 1299.

Second, regarding the work product privilege, the court held that waiver did not reach attorney work product that was not communicated to the client because "[i]t is what the alleged infringer knew or believed, and by contradistinction not what other items counsel may have prepared but did not communicate to the client, that informs the court of an infringer's willfulness." *Id.* at 1303. In arriving at this conclusion, the court commented that,

"[b]y asserting the advice-of-counsel defense to a charge of willful infringement, the accused infringer and his or her attorney do not give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies." *Id.*

In addition, in discussing the work product privilege, the Federal Circuit addressed the temporal limits to waiver. Specifically, the court rejected such limits, stating that, while it "may be true" that waiver "does not extend to advice and work product given after litigation began . . . when the work product is never communicated to the client, it is not the case when the advice is relevant to ongoing willful infringement, so long as that ongoing infringement is at issue in the litigation." *Id.* at 1303 n. 4.

Plaintiffs argue that, under *EchoStar,* waiver must extend to Foley as trial counsel. Plaintiffs rely in particular on the language in *EchoStar* that waiver applies to "*any* attorney-client communications relating to the same subject matter," *id.* at 1299 (emphasis added), and to advice and work product given *after* litigation has begun. While this language broadly read could support a waiver that reaches trial counsel, as should be clear from the above summary, the Federal Circuit did consider or address the specific issue of whether waiver should extend to trial counsel. That issue apparently was not before the court.[3]

ponent to establish a prima facie case of waiver"; and that, "[i]f the privilege opponent succeeds in making such a showing, the burden of going forward with evidence shifts back to the proponent to rebut the prima facie case by demonstrating that the privilege is still viable").

3. Plaintiffs still insist that the Federal Circuit would extend waiver to trial counsel because, in *EchoStar,* the court cited approvingly a

district court case that found such waiver. *See Akeva LLC v. Mizuno Corp.,* 243 F.Supp.2d 418, 423 (M.D.N.C.2003) ("[A]ll opinions received by the client relating to infringement must be revealed, *even if they come from defendants' trial attorneys,* and even if they pre-date or post-date the advice letter of opinion counsel.") (emphasis added).

The Court is not persuaded by this argument. Simply because the Federal Circuit

In the wake of *EchoStar*, some courts have concluded that waiver should extend to trial counsel, while other courts have disagreed; still others have found waiver but only on a limited basis. In short, courts that have considered the issue of waiver with respect to trial counsel have not arrived at any consistent rulings. *See Affinion Net Patents, Inc. v. Maritz, Inc.*, 440 F.Supp.2d 354, 356, 2006 WL 2096712, at \*1 (D.Del.2006) (finding that defendant waived attorney-client privilege "as to communications with 'litigation counsel,' and any other counsel"); *Ampex Corp. v. Eastman Kodak Co.*, No. 04–1373–KAJ, 2006 WL 1995140, at \*3, 2006 U.S. Dist. LEXIS 48702, at \*9 (D.Del. July 17, 2006) (rejecting argument that waiver should extend to trial counsel as that would "demolish[ ] the practical significance of the attorney-client privilege, a result obviously at odds with other comments in *EchoStar*"); *Beck*, 2006 WL 2037356, at \*5 ("*EchoStar* did not disturb the approach we adopted in [a previous case] which extends the waiver to attorney-client privilege and certain work-product material involving trial counsel."); *Informatica Corp. v. Business Objects Data Integration*, No. C 02–3378 JSW (JL), 2006 WL 2088461, at \*8 (N.D.Cal. July 14, 2006) (finding that "BODI waived privilege for both pre- and post-filing pertinent attorney-client communications and work product" and that "it is immaterial whether BODI's opinion counsel and trial counsel are from the

same firms, different firms or are even the same person"); *Intex Recreation Corp. v. Team Worldwide Corp.*, 439 F.Supp.2d 46, ——, 2006 WL 2023552, at \*6 (D.D.C.2006) (adopting a "middle ground" approach under which "waiver extends only to those trial counsel work product materials that have been communicated to the client and contained conclusions or advice that contradict or cast doubt on the earlier opinions"); *Indiana Mills & Mfg., Inc. v. Dorel Indus., Inc.*, No. 1:04–cv–01102–LJM–WTL, 2006 WL 1749413, at \*7, 2006 U.S. Dist. LEXIS 34023, at \*19 (S.D.Ind. May 26, 2006) ("There is no indication that the *EchoStar* court intended to extend this waiver to communication of trial counsel or to work product of trial counsel."), *withdrawn* 2006 U.S. Dist. LEXIS 47852 (S.D.Ind. July 14, 2006) (withdrawing opinion because court "had been under the impression that Dorel had never sought additional opinions of counsel post-filing").

### 2. *Defendants' Reliance on the Advice of Trial Counsel*

[3] Before addressing the applicable legal standard in analyzing the scope of any waiver as to trial counsel's advice, the Court must first address the threshold question whether Defendants relied on the advice of trial counsel in deciding to launch the accused product. Although there is no

cited *Akeva* in support of certain conclusions does not mean that it wholesale adopted every holding in *Akeva*. *But see Beck Syss., Inc. v. Managesoft Corp.*, No. 05 C 2036, 2006 WL 2037356, at \*5 n. 1 (N.D.Ill. July 14, 2006) (acknowledging that "the fact scenario presented to the *EchoStar* court did not involve production of materials by trial counsel" but concluding that the reasoning in *EchoStar* and the supporting citation to *Akeva* "indicate[ ] that the Federal Circuit would extend this waiver to all attorneys other than those who provided the advice on which the defen-

dant relies, irrespective of whether the other attorneys are trial counsel"). Moreover, arguably, the Federal Circuit did not agree entirely with the *Akeva* district court in certain respects. *Compare EchoStar*, 448 F.3d at 1303 (holding that "work product, which is never communicated to the client, is not discoverable"), *with Akeva*, 243 F.Supp.2d at 424 (finding that there should be a "broad waiver rule requiring full disclosure of documents, even if they were not given to the client," if "opinion counsel is trial counsel").

direct evidence that Defendants relied on the advice of the Foley trial team, there is strong circumstantial evidence that they did based on the timing of the release of the accused product. As noted above, Defendants launched the iPlex™ product in May 2006—*i.e.,* almost a year and a half after the lawsuit was first filed. Given this timing, the views of trial counsel on the strengths and weaknesses of Defendants' positions on infringement and invalidity were likely considered by Defendants before they released the iPlex™ product. Notably, nowhere in their papers and at no point during oral argument did Defendants deny that they relied on the views and advice of Foley trial team on the issues of infringement and invalidity in deciding to launch the accused product. Although Defendants claim that trial counsel had no role in the formulation of advice from opinion counsel, the declarations of Foley trial counsel only establish that the trial team did not have any role in preparing, drafting, or performing an analysis for "*inclusion* in any opinion letters." Revised Shatzer Decl. ¶¶ 5–8 (emphasis added); Best Decl. ¶ 3. The declarations do not state that the trial team never voiced any views about the opinion letters or that the trial team never commented to the client on the likelihood of success on the issues of infringement and invalidity.[4]

Moreover, it is significant that, even though the decision to launch the iPlex™ product was an important one, particularly in light of Plaintiffs' lawsuit against Defendants, Defendants do not appear to have solicited the advice of Foley opinion counsel as to whether the release of the product was advisable. In fact, based on the time entries submitted by Defendants, between the date that Plaintiffs filed suit and the date that Defendants released the accused product, opinion counsel did little or no work as opinion counsel. In early 2005, opinion counsel provided an update for the infringement opinion but, in the months preceding the launch of the iPlex™ product, there do not appear to be any time entries that reflect work by opinion counsel as opinion counsel. *See* Supp. Shatzer Decl., Ex. B. Based on this evidence, it is a fair inference that, prior to the launch, Defendants considered input from trial counsel during this crucial time period.

For the foregoing reasons, the Court finds that Defendants relied on the advice of trial counsel and, because of this reliance, there is a basis for extending waiver to trial counsel given Defendants' assertion of the advice-of-counsel defense. The Court emphasizes that it is not holding here that waiver with respect to trial counsel necessarily requires a finding of reliance on the advice of trial counsel.[5] It need not reach that question since it finds there was in fact such reliance here. *Cf. Akeva,* 243 F.Supp.2d at 419–20 (finding waiver reached trial counsel when defendants admitted that they relied not only on opinion counsel but also on trial counsel).

Furthermore, there are additional reasons supporting a finding that waiver extends to Foley trial counsel. Defendants' decision to hire opinion counsel and trial counsel from the same firm entailed a certain amount of risk. *See Ampex,* 2006 WL 1995140, at *3 n. 4, 2006 U.S. Dist.

---

4. Had trial counsel claimed that it never provided any comments on the likelihood of success, the Court would be hard pressed to find such testimony credible.

5. At the hearing, Plaintiffs repeatedly argued that reliance on trial counsel's advice is not necessary because, in *EchoStar,* the Federal

Circuit held that EchoStar's assertion of the advice-of-counsel defense waived privilege with respect to the advice of Merchant & Gould even though EchoStar elected not to rely on that advice and instead decided to rely on the advice of in-house counsel only.

LEXIS 48702, at *11 n. 4 (noting that the case under consideration did "not involve a party choosing to use an attorney as both opinion counsel and trial counsel"; adding that "[t]hat choice involves an unfortunate blending of roles that is, thankfully, rare"). Defendants contend that there was no risk because pre-*EchoStar* case law in this District immunized trial counsel from waiver. However, in *Sharper Image Corp. v. Honeywell Internat'l, Inc.*, 222 F.R.D. 621 (N.D.Cal.2004), the court actually allowed waiver when a law firm had a dual role as opinion counsel and trial counsel (albeit because that firm was only litigation counsel for a short period and "nothing of real litigation moment" occurred during that time), *id.* at 641–42, and, in *Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473 (N.D.Cal.2004), opinion counsel and trial counsel were not from the same firm. Although Defendants contend Foley opinion counsel was walled off from the trial team and thus should be treated separately, the Court notes that Exhibit 8 of the revised Shatzer declaration as well as the time records of the Foley attorneys suggest that the wall between opinion and trial counsel was not impenetrable. There was at least some overlap and communication between the two.

### 3. *Policy Considerations Regarding Waiver and Scope of Waiver*

[4] Having concluded that Defendants' reliance on the advice of trial counsel is a basis for extending waiver to trial counsel, the question remains whether such a waiver is appropriate in view of policy considerations and, if so, what the scope of that waiver should be. Not surprisingly, Plaintiffs argue that, as a matter of fairness, waiver should extend to trial counsel, *see Akeva*, 243 F.Supp.2d at 423 ("The infringer may not pick and choose between what opinions will be relied upon and which will be discarded."), and that the scope of the

waiver should be as broad as possible, covering all documents and testimony except that directly related to trial strategy, *see id.* at 424 (allowing for redaction of documents that contain trial strategy). Defendants contend that, because trial counsel serves a special role, the functions of which lie at the core of the work product doctrine and attorney-client privilege, waiver should not extend to such counsel, but that, if there is a waiver, it should be as narrowly construed as possible.

In deciding whether waiver with respect to trial counsel is appropriate, the Court must balance two competing policy considerations. First is the consideration that "[t]he overarching goal of waiver . . . is to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice." *EchoStar*, 448 F.3d at 1303. In other words, fairness drives the waiver analysis. To permit a party to shield a nonfavorable opinion of trial counsel would permit the party to pick and choose to disclose only supportive advice from opinion counsel. Moreover, in a patent case, the party against whom waiver is sought makes the voluntary decision to rely on advice of counsel, and the Patent Local Rules of this District afford the party a full and fair opportunity to evaluate the circumstances before making an election on whether or not to rely on the defense. *See* Pat. L.R. 3–8 (providing for willfulness disclosures "50 days after service by the Court of its Claim Construction Ruling"). Since the waiver is entirely voluntary, an argument can be made that the waiving party must assume all the risks in accepting the benefit of its election.

The Court must also consider, however, the well-established policies underlying the attorney-client and work product privileges. As noted by Judge Brazil of this

District, "in patent litigation between competitors, disabling a defendant from having a confidential relationship with its lead trial counsel about matters central to the case would cause considerable harm to the values that underlie the attorney-client privilege and the work product doctrine." *Sharper Image,* 222 F.R.D. at 643; *see also Collaboration Properties,* 224 F.R.D. at 476–77 (discussing *Sharper Image* ); *see also Terra Novo, Inc. v. Golden Gate Prods., Inc.,* No. C–03–2684 MMC EDL, 2004 WL 2254559, at *3, 2004 U.S. Dist. LEXIS 20429, at *7 (N.D.Cal. Oct. 1, 2004) ("After litigation has commenced, the dangers inherent in invading the confidentiality of the attorney-client privilege are magnified."). Notably, even the Federal Circuit in *EchoStar* underscored that, "[b]y asserting the advice-of-counsel defense to a charge of willful infringement, the accused infringer and his or her attorney do not give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies." *EchoStar,* 448 F.3d at 1303.

As indicated above, in the wake of *EchoStar,* courts have struggled with striking the proper balance between the above policy considerations in deciding whether waiver should extend to trial counsel. The same is true with respect to cases that pre-dated *EchoStar.* Like the cases that post-date *EchoStar,* the cases that pre-date *EchoStar* are not uniform; some have found no waiver, others have, while still others have found waiver but only on a limited basis.

In this District, there are at least two pre-*EchoStar* cases that support Defendants' position that waiver should not ex-

tend to trial counsel—*i.e., Sharper Image* and *Collaboration Properties* (although, as noted above, in *Sharper Image,* the court permitted waiver with respect to a law firm that briefly served as trial counsel). *EchoStar* does not clearly invalidate either case since, as stated above, it did not address the specific issue of waiver with respect to trial counsel.

Pre-*EchoStar* cases in which a waiver with respect to trial counsel was found include *Akeva* as well as, *e.g., Convolve, Inc. v. Compaq Computer Corp.,* 224 F.R.D. 98, 105 (S.D.N.Y.2004) (requiring production of "all documents, answers to interrogatories, and deposition testimony concerning communications between Seagate (or its in-house counsel) and any of its attorneys, including trial counsel, with respect to the subject matter of Mr. Sekimura's opinions").

Finally, pre-*EchoStar* cases supporting a limited waiver can be found at *Intex Recreation Corp. v. Metalast, S.A.,* 400 F.Supp.2d 123 (D.D.C.2005); *Beneficial Franchise Co. v. Bank One, N.A.,* 205 F.R.D. 212 (N.D.Ill.2001); *BASF Aktiengesellschaft v. Reilly Indus., Inc.,* 283 F.Supp.2d 1000 (S.D.Ind.2003); and *Micron Separations, Inc. v. Pall Corp.,* 159 F.R.D. 361 (D.Mass.1995). In these cases, the courts advocated a "middle ground" approach to waiver with respect to trial counsel; that is, a waiver would be appropriate to the extent the advice or work product of trial counsel was communicated to the client and "contained conclusions or advice that contradict or cast doubt on the earlier opinions." [5] *BASF,* 283 F.Supp.2d at 1006.

---

6. A case in this District in which a limited waiver was found but which did not employ the middle ground approach is *Terra Novo. See Terra Novo,* 2004 WL 2254559, at, *3, 2004 U.S. Dist. LEXIS 20429, at *8 (acknowledging litigation counsel's claim that "he had

not voiced an opinion on invalidity at [a] meeting" involving litigation counsel, opinion counsel, and client, but concluding that "the assertion of the advice of counsel defense waives any communications between Opinion Counsel and Litigation Counsel").

Taking into account the pre- and post-*EchoStar* cases as well as *EchoStar* itself, the Court concludes that, although *EchoStar* does not expressly overrule those cases that decline to extend waiver to trial counsel, the thrust of the case is that a blanket immunity for trial counsel is not appropriate. The Federal Circuit's rejection of a temporal limit on waiver—*i.e.,* that a waiver can extend to advice and work product given after litigation begins—suggests particular solicitude that must be paid to the policies that favor broad waiver.

Yet the importance of protecting attorney work product and communication between attorney and client in the heat of litigation should not be lightly disregarded. *EchoStar* cautioned against requiring the accused to "give their opponent unfettered discretion to rummage through all of their files and pillage all of their litigation strategies." *EchoStar,* 448 F.3d at 1303. While shielding uncommunicated work product provides some protection, it still exposes critical communication between trial counsel and the client necessary to litigation strategy decisions. The Court thus eschews the extreme approaches of finding no waiver or complete waiver. A more refined balance is warranted.

In this regard, as noted above, some courts have adopted a "middle ground" approach wherein only advice of trial counsel that contradicts or casts doubt on the advice of opinion counsel is subject to disclosure. *See, e.g., Intex,* 439 F.Supp.2d at 52, 2006 WL 2023552, at *6, and cases cited *supra.* While the middle ground approach to waiver is commendable because it expressly acknowledges the competing policy considerations and seeks (in theory) a reasonable balance, the Court declines to adopt that approach because it presents practical problems. For example:

(1) What constitutes sufficient doubt that makes disclosure necessary?

(2) Although trial counsel is an officer of the court, can trial counsel be trusted to make the unilateral decision of what contradicts or casts doubt on the advice of opinion counsel—particularly, when trial counsel is still an advocate and is deciding whether its own advice should be disclosed? *Cf. D.O.T. Connectors v. J.B. Nottingham & Co.,* No. 4:99cv311–WS, 2001 WL 34104928, at *2 n. 3, 2001 U.S. Dist. LEXIS 739, at *8 n. 3 (N.D.Fla. Jan. 22, 2001) ("Some courts have limited … disclosure to opinions of trial counsel which 'cast doubt' on the opinion which is the basis for the defense. This is an unworkable limitation as it requires counsel for defendant to make a subjective judgment as to the probative weight of the second opinion."). Even if trial counsel can be trusted, must trial counsel review each and every single document given to the client or which discusses a communication with the client? And even if, in general, trial counsel can be trusted, there are still likely to be grey areas as to whether certain disclosures should be made, in which case must the court intervene and review each such document in camera even if it is only marginally probative?

(3) How would the middle ground approach apply in the context of depositions of the trial counsel or client? *See Akeva,* 243 F.Supp.2d at 423 n. 6 (pointing out that, in a case favoring the middle ground approach, the "court only dealt with documents and the work product protection issue" while, "[i]n the instant case, the Court has before it the issue of depositions, and that issue only concerns the waiver of attorney-client privilege, not work product protection").

Moreover, practical difficulties aside, what is the utility of permitting withholding of

positive advice? *See Convolve,* 224 F.R.D. at 104–05.

Rather than adopting the middle ground approach based on the favorability of the advice, the Court adopts a middle approach that seeks to preserve in some fashion trial strategy while requiring disclosure of communications that are central and material to Defendants' decision to engage in allegedly infringing activity. Waiver of trial counsel communication with the client should apply to documents and communications that are most akin to that which opinion counsel normally renders— *i.e.,* documents and communications that contain opinions (formal or informal) and advice central and highly material to the ultimate questions of infringement and invalidity (the subject matter of the advice given by Foley opinion counsel).

While this approach would include the most significant opinions and views expressed by trial counsel to Defendants (upon which a reasonable inference of reliance may be drawn), it would exclude lower level documents and communications that are more akin to discussions of trial strategy. For instance, a communication about the likelihood of success on infringement in light of the venue and probably jury pool is of central materiality to the ultimate question of infringement, and should therefore be produced. However, a discussion about the tactics of jury selection, the theme of the opening statement to the jury, etc. should not be disclosed. Likewise, predictions about how the judge will construe key claims and their impact on the outcome of the case should be produced, but discussions about which arguments should be made to the judge should not. The dividing line revolves around the degree of materiality to the client's decision to launch the accused product (and continue its sale). Only that advice and work product of trial counsel that is rea-sonably central to that decision—and which presumably would carry the same kind of weight that advice from opinion counsel normally would—is waived.

In this regard, all other things being equal, any negative opinions or views of trial counsel should be presumed to have a higher degree of materiality since one would expect the client would pay particularly close attention to such negative advice. Nonetheless, the degree of materiality to the ultimate question of invalidity or infringement would still have to be assessed even as to these negative communications. Thus, for instance, a report on a deposition that states a favorable deponent was not as helpful as hoped would likely not be producible, unless the deponent were a key witness testifying on a potentially dispositive matter such that the testimony would likely have a central and material effect on the outcome of the case.

Under this middle ground approach, Plaintiffs are given reasonable access to "opinion-type" communications with trial counsel (including negative assessments) while preventing the opponent from rummaging through trial counsel's litigation files. While this approach requires line-drawing and judgment and carries inevitable administrative burden and potential disputes, the criteria established herein are likely to be easily discernible for the vast majority of documents. Moreover, it is tailored to accommodate both competing policy considerations the Court must balance in this context.

Accordingly, the Court orders Defendants to produce documents consistent with the above analysis by August 21, 2006. In addition, as a means of insuring proper application of this criteria without placing an undue burden on defense counsel, the Court further orders Defendants to provide a privilege log identifying documents communicated between trial counsel

442 FEDERAL SUPPLEMENT, 2d SERIES

and Defendants (or documents that expressly reference such communications) during the months of March, April, and May, 2006, just before and during the launch of iPlex™.

### B. *Six Additional Depositions and Re-Opening of Two Depositions*

Plaintiffs have taken so far nine out of the ten depositions provided for by the Federal Rules and agreed upon by the parties. *See* Mot. at 9. Plaintiffs intend to use the tenth deposition as part of willfulness discovery and ask for permission to take five additional depositions as part of willfulness discovery. Plaintiffs further ask for permission to re-open the depositions of Dr. Geoffrey Allan (the current CEO of Defendant Insmed) and Dr. Andreas Sommer (the former CEO of Defendant Celtrix) to do " 'reasonable follow-up' now that Defendants have waived." *Id.* at 5.

In response, Defendants argue that Plaintiffs do not need six total depositions on willfulness discovery, plus a re-opening of two more depositions. Defendants do not contest Plaintiffs' right to take a tenth deposition but argue that beyond that Plaintiffs should be limited to the depositions of the author of the Foley opinions (Ms. Burrous) and the author of the Hale & Dorr opinions (Hollie Baker) and the deposition of a 30(b)(6) witness(es) on the topic of reliance by Defendants on those opinions.

Neither Plaintiffs nor Defendants' arguments are entirely convincing. As a general matter, Defendants' attempt to circumscribe the number of depositions is not fair to Plaintiffs given that Plaintiffs had no control over how many firms provided opinions to Defendants and how many of Defendants' employees were privy to the opinions. On the other hand, Plaintiffs are asking for more than just a couple of additional depositions, and Plaintiffs cannot expect to depose each and every person that has or may have relevant information.

Taking into account both of these factors and given the number of attorneys and contact persons involved, the Court concludes that there is good cause for Plaintiffs to take four additional depositions past the ten-deposition limit—in other words, Plaintiffs will have a total of five depositions as part of its willfulness discovery. In addition, Plaintiffs shall be permitted to re-depose Dr. Allan and Dr. Sommer since Plaintiffs would have questioned them about the opinions of counsel at the time they first took their depositions if they had been able. The depositions of Dr. Allan and Dr. Sommer shall be limited in scope to the documents produced by Defendants on July 17, 2006, and that which reasonably flows therefrom including the input of these documents on their state of mind. *See* Part II.C, *infra.*

### C. *Scope of Willfulness Discovery*

Defendants argue that Plaintiffs are not entitled to discovery beyond the documents they produced to Plaintiffs on July 17, 2006: "Because Plaintiffs have already had an opportunity to take full discovery relating to willfulness except for the limited issue of opinions of counsel, the Court should not grant Plaintiffs a second bite at the apple in this limited discovery period." Opp'n at 16. Plaintiffs contend that "Defendants are attempting to preclude Plaintiffs from obtaining any discovery as to Defendants' state of mind, seeking instead to limit the questioning to just the advice rendered." Mot. at 10.

Although Plaintiffs were able to conduct discovery into the issue of willfulness, including Defendants' state of mind, prior to Defendants' decision to assert the advice-of-counsel defense, Plaintiffs may take discovery into anything that reasonably flows

from the documents recently produced after assertion of the defense. Plaintiffs should not be rigidly limited to asking about the documents only. Thus, e.g., Plaintiffs would not be barred from asking how "information in combination with the opinions of counsel now disclosed informed Defendants' state of mind." Reply at 11.

### D. *Subpoenas of Law Firms*

Plaintiffs have subpoenaed three law firms: Foley, WilmerHale (presumably, formerly Hale & Dorr), and Sterne, Kessler, Goldstein & Fox. The subpoenas for Foley and WilmerHale were issued by this Court. The subpoena for Sterne was issued by the District Court for the District of Columbia.[7] Each of the three subpoenas contains six document requests.

Defendants argue that, to the extent Defendants have already produced documents to Plaintiffs, "the subpoenas are burdensome and harassing, and should be quashed." Mot. at 21. However, absent a representation that Defendants asked the law firms for the relevant documents and the law firms turned them over to Defendants, it is possible that the law firms have different documents in their possession, custody, or control—even taking into account that the Federal Circuit has said that only work product actually communicated to Defendants is relevant. *See EchoStar*, 448 F.3d at 1305.

Defendants further argue that the subpoenas are overbroad in that they go "much further than the proper scope of willfulness discovery in connection with opinions of counsel." Opp'n at 21. To the extent Defendants mean by this statement that *EchoStar* limits willfulness discovery to information that is actually communicated by counsel to clients, the Court agrees. Consistent with *EchoStar*, only those documents given to Defendants or which, on their face, discuss communications with Defendants, need be produced. *See EchoStar*, 448 F.3d at 1304 (finding waiver "for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused").

Accordingly, the Court shall not quash the subpoenas to the law firms but shall limit their scope as detailed above. In addition, the Court shall allow the law firms to provide a certification under oath that all responsive documents have been produced either by Defendants or the law firms instead of producing duplicate copies already produced herein. The subpoenas shall be complied with by August 21, 2006.

### III. *CONCLUSION*

For the foregoing reasons, Plaintiffs' motion is granted in part and denied in part and Defendants' motion is granted in part and denied in part.

This order disposes of Docket Nos. 514 and 524.

IT IS SO ORDERED.



---

7. Defendants contend that, although the last subpoena was issued by another district court, this Court still "has jurisdiction over [the subpoena] under Rule 26(c)," which allows for protective orders. *See* Opp'n at 20. Plaintiffs have not disagreed with this contention.