IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON AUTOMATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SWISSLOG ITALIA S.P.A. and<br>TRANSLOGIC CORPORATION,<br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. 06-028 (***)
PUBLIC VERSION

ORIGINAL VERSION FILED: October 1, 2007
PUBLIC VERSION FILED: October 9, 2007

### DECLARATION OF BRYAN N. DEMATTEO IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO AMEND THEIR ANSWERS AND COUNTERCLAIMS

I, Bryan N. DeMatteo, declare as follows:

1.    I am associated with the law firm Dickstein Shapiro Morin & Oshinsky LLP, counsel of record for Defendants Swisslog Italia S.p.A and Translogic Corporation (collectively "Defendants"). I make this declaration in support of Defendants' Swisslog Italia's ("Swisslog") and Translogic Corporation's ("Translogic") Motion For Leave To Amend Their Answers And Counterclaims. I have personal knowledge of the facts set forth herein, and if called to testify, could and would certify competently hereto.

2.    On January 13, 2006, McKesson filed a complaint against Defendants alleging that sales of Defendants' system in the United States infringed U.S. Patent No. 5,468,110 ("the '110 patent") and U.S. Patent No. 5,593,267 ("the '267 patent"). Defendants filed their Answers and Counterclaims on March 15, 2006. A First Amended Complaint was filed on July 3, 2006 to name proper parties, and Defendants answered this complaint on July 5, 2006.

3.    In May, 2007, Defendants took the deposition of McKesson's Product Marketing Manager, James Longo. Facts uncovered for the first time at Mr. Longo's deposition evidence a

systematic marketing and sales campaign implemented by McKesson to prevent Defendants from competing with McKesson in the U.S. market for hospital pharmacy automation systems.

4.    Additional facts evidencing McKesson's anti-competitive activities were uncovered during the August 21, 2007 deposition of McKesson's Vice President of Marketing, Eugene Zwolinski.

5.    Much of the documentary evidence of McKesson's anti-competitive activities was also only recently discovered.  In fact, all of the documents produced by McKesson in this case – including those that evidence McKesson's anti-competitive activities – were produced after the December 20, 2006 deadline for amending pleadings set forth in the Fourth Amended Scheduling Order.  Many of the critical documents evidencing McKesson's anti-competitive activities were produced only a few months ago, and some of the most critical documents (such as DeMatteo Decl.; Exhs. H, I) were produced as recently as August 17, 2007.  McKesson also recently produced within the past three weeks approximately 250,000 additional pages of documents (about half of McKesson's total production volume to date).

6.    The significance of these documents was not fully appreciated by Defendants until after they had the opportunity to depose Messrs. Longo, Zwolinski, and McDonald – the only McKesson witnesses to date who have provided testimony on the meaning of these documents and how they relate to McKesson's anti-competitive activities.  After the last of these depositions was completed on August 30, 2007, Defendants understood the full implications of McKesson's activities and how they supported Defendants' new counterclaims.

7.    Immediately thereafter, Defendants researched and confirmed the merits of their counterclaims and informed opposing counsel of their intent to amend the pleadings.  Opposing

counsel then informed Defendants on September 6, 2007 of its refusal to consent to Defendants' proposed amendments. Only then did Defendants make the instant motion.

8.

REDACTED

9.    Opposing counsel has failed to respond to the numerous requests by Defendants' counsel to identify or produce the reassignment, if one exists. Defendants' counsel first asked opposing counsel for the reassignment on August 22, 2007 during the deposition of Philip Keys. Defendants again requested the reassignment in a September 4, 2007 letter and yet again in a September 26, 2007 e-mail.

10.    Attached as Exhibits A and B are proposed First Amended Answers and Counterclaims of Swisslog and Translogic, respectively.

11.    Attached as Exhibits C and D are red-lined versions of the proposed First Amended Answers and Counterclaims of Swisslog and Translogic showing how the proposed pleadings differ from the originals.

12.    Attached as Exhibit E is a true and correct copy of excerpts from the deposition transcript of James Longo, dated May 10-11, 2007.

13.    Attached as Exhibit F is a true and correct copy of Longo Exhibit 12, which was produced by McKesson as a document bearing bates range M0121101 to M0121102.

14.    Attached as Exhibit G is a true and correct copy of excerpts from the deposition transcript of Eugene Zwolinski, dated August 21, 2007.

15.    Attached as Exhibit H is a true and correct copy of Zwolinski Exhibit 7, which was produced by McKesson as a document bearing bates range M0238795 to M0238827.

16.    Attached as Exhibit I is a true and correct copy of Zwolinski Exhibit 8, which was produced by McKesson as a document bearing bates range M0243570 to M0243609.

17.    Attached as Exhibit J is a true and correct copy of Zwolinski Exhibit 4, which was produced by McKesson as a document bearing bates range M0004510 to M0004512.

18.    Attached as Exhibit K is a true and correct copy of Longo Exhibit 7, which was produced by McKesson as a document bearing bates range M0068646 to M0068661.

19.    Attached as Exhibit L is a true and correct copy of Longo Exhibit 9, which was produced by McKesson as a document bearing bates range M0000743 to M00600779.

20.    Attached as Exhibit M is a true and correct copy of a document produced by McKesson and bearing bates designation M0125287.

21.    Attached as Exhibit N is a true and correct copy of a letter dated September 5, 2007 from Defendants' counsel to opposing counsel asking whether Plaintiff would consent to the amended pleadings.

22.    Attached as Exhibit O is a true and correct copy of a letter dated September 6, 2007 from opposing counsel informing Defendants of McKesson's refusal to consent to the amended pleadings.

23.    Attached as Exhibit P is a true and correct copy of excerpts from the deposition transcript of Sean McDonald, dated August 30, 2007.

24.    Attached as Exhibit Q is a true and correct copy of excerpts from the deposition transcript of Philip Keys, dated August 22, 2007.

25.    Attached as Exhibit R is a true and correct copy of an April 5, 2007 letter from opposing counsel enclosing production of documents bearing bates range M0125290-M0146580.

26.    Attached as Exhibit S is a true and correct copy of pertinent portions of Keys Exhibit 24, which was produced by McKesson as a document bearing bates range M0143189-M0143303.

27.    Attached as Exhibit T is a true and correct copy of a September 4, 2007 letter from Defendants to opposing counsel requesting identification and/or production of a reassignment of patent rights to Automated Healthcare Inc. ("AHI") – McKesson's predecessor in interest.

28.    Attached as Exhibit U is a true and correct copy of a September 26, 2007 e-mail from Defendants to opposing counsel requesting identification and/or production of a reassignment of patent rights to AHI.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief. This declaration is executed this 1st day of October, 2007.

*/s/ Bryan N. DeMatteo*
_____
Bryan N. DeMatteo

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on October 9, 2007 I electronically filed the

foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing

to the following:

Dale R. Dubé, Esquire
Blank Rome LLP

Additionally, I hereby certify that true and correct copies of the foregoing were

caused to be served on October 9, 2007 upon the following individuals in the manner indicated

**BY E-MAIL**

Dale R. Dubé, Esquire
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE  19801

Blair M. Jacobs, Esquire
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, DC  20004

*/s/ Julia Heaney (#3052)*
_____
Julia Heaney (#3052)
jheaney@mnat.com

EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

|  |  |
|---|---|
| MCKESSON AUTOMATION, INC., | |
| Plaintiff, | C. A No. 06-028 (KAJ) |
| v. | |
| SWISSLOG ITALIA S.P.A., and TRANSLOGIC CORPORATION, | |
| Defendants. | |

**DEFENDANT TRANSLOGIC CORPORATION'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS**

Defendant Translogic Corporation ("Translogic"), by and through its undersigned counsel, as and for its Answer to Plaintiff's First Amended Complaint (the "Amended Complaint") and for its Counterclaims, admits denies and alleges as follows:

1.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 1 of the Amended Complaint.

2.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 2 of the Amended Complaint.

3.     Denies allegations set forth in paragraph 3 of the Amended Complaint except admits that Translogic is a Delaware Corporation with its principal place of business at 10825 E 47th Avenue, Denver, Colorado.

4.     Denies the allegations set forth in paragraph 4 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations with respect to acts alleged to have been committed by defendant Swisslog Italia S.p.A. ("Swisslog Italia").

5.    Admits that the Amended Complaint refers to Swisslog Italia and Translogic collectively as "Swisslog."

6.    Admits the allegations set forth in paragraph 6 of the Amended Complaint to the extent that plaintiff alleges that this action purports to be one for patent infringement and that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7.    Admits the allegations set forth in paragraph 7 of the Amended Complaint to the extent that plaintiff alleges that venue is proper in this Court over Translogic under 28 U.S.C. §§ 1391(b) and 1400(b) and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to venue being proper with respect to defendant Swisslog Italia.

8.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 8 of the Amended Complaint.

9.    Denies the allegations set forth in paragraph 9 of the Amended Complaint, except admits that Exhibit 1 to the Amended Complaint purports to be a copy of U.S. Patent No. 5,468,110 (the " '110 Patent") and refers to that patent for a true and complete statement of its contents.

10.    Denies the allegations set forth in paragraph 10 of the Amended Complaint, except admits that Exhibit 2 to the Amended Complaint purports to be a copy of U.S. Patent No. 5,593,267 (the " '267 Patent") and refers to that patent for a true and complete statement of its contents.

11.     Denies the allegations contained in paragraph 11 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

12.     Translogic repeats and realleges its previous responses to paragraphs 1 through 11 of the Amended Complaint as if fully set forth at length herein.

13.     Denies the allegations set forth in paragraph 13 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

14.     Denies the allegations contained in paragraph 14 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to defendant Swisslog Italia.

15.     Denies the allegations contained in paragraph 15 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

16.     Denies the allegations contained in paragraph 16 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

17.     Translogic repeats and realleges its previous responses to paragraphs 1 through 16 of the Amended Complaint as if fully set forth at length herein.

18.     Denies the allegations contained in paragraph 18 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

19.     Denies the allegations contained in paragraph 19 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to defendant Swisslog Italia.

20.     Denies the allegations contained in paragraph 20 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

21.     Denies the allegations contained in paragraph 21 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

## FIRST AFFIRMATIVE DEFENSE

22.     Translogic has not infringed, induced infringement or contributed to the infringement of any valid or enforceable claim of the '110 or '267 Patents

## SECOND AFFIRMATIVE DEFENSE

23.     McKesson's claims are barred, in whole or in part, under one or more of the equitable doctrines of laches, waiver, estoppel and unclean hands.

## THIRD AFFIRMATIVE DEFENSE

24.     The '110 and '267 Patents are invalid, *inter alia*, in that they fail to meet one or more of the conditions for patentability set forth in 35 U.S.C. §102.

## FOURTH AFFIRMATIVE DEFENSE

25.     The '110 and '267 Patents are invalid, *inter alia*, pursuant to 35 U.S.C. §103 in that the inventions disclosed would have been obvious to a person of ordinary skill in the art at the time the inventions were made.

### FIFTH AFFIRMATIVE DEFENSE

26.    The '110 and '267 Patents are invalid for failure to comply with the requirements of 35 U.S.C. §112.

### SIXTH AFFIRMATIVE DEFENSE

27.    McKesson's claims are barred, in whole or in part, by reason of patent misuse.

### SEVENTH AFFIRMATIVE DEFENSE

28.    McKesson's claims are barred, in whole or in part, pursuant to 35 U.S.C. §287.

### EIGHTH AFFIRMATIVE DEFENSE

29.    McKesson's claims are barred, in whole or in part, under the doctrine of prosecution history estoppel because proceedings in the Patent and Trademark Office during the prosecution of the '110 and '267 Patents prevent a claim construction for those patents that could result in a finding of infringement.

### NINTH AFFIRMATIVE DEFENSE

30.    McKesson lacks standing to sue because it is not an owner, assignee or licensee of the patents-in-suit.

### OTHER AFFIRMATIVE DEFENSES

31.    Translogic reserves the right to assert all additional affirmative defenses under Fed. R. Civ. P. 8(c), the Patent Laws of the United States and any other legal or equitable defenses that may now exist or in the future be available based on discovery and further factual investigation in this case.

### COUNTERCLAIMS

### JURISDICTION AND VENUE

32.    Jurisdiction and venue over Translogic's counterclaims are proper pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 1391, 2201 and 2202.

## THE PARTIES

33.    Counterclaim plaintiff Translogic Corporation ("Translogic") is a Delaware Corporation with its principal place of business at 10825 E 47th Avenue, Denver, Colorado.

34.    Upon information and belief, Counterclaim Defendant McKesson Automation, Inc. ("McKesson"), is a Pennsylvania Corporation, with a principal place of business at 500 Cranberry Woods Drive, Cranberry Township, PA 16066.

## FACTS COMMON TO ALL COUNTERCLAIMS

### Introduction

35.    McKesson manufactures centralized robotic systems for automating the dispensing of medications in and from hospital pharmacies ("hospital pharmacy automation systems"). McKesson markets and distributes its system to hospitals throughout the United States from its main facilities in Cranberry Township, Pennsylvania

36.    Swisslog Italia manufactures a competing hospital pharmacy automation system. In 2002, Swisslog Italia, through its United States distributor – Translogic (collectively "Defendants") – began selling and offering for sale in the United States Defendants' hospital pharmacy automation system.

37.    On January 13, 2006, McKesson filed a complaint against Defendants alleging that sales of Defendants' system in the United States infringed the '110 patent and the '267 patent. Defendants filed their Answers and Counterclaims on March 15, 2006. A First Amended Complaint was filed on July 3, 2006 to name proper parties, and Defendants answered this complaint on July 5, 2006.

38.    Almost immediately after Defendants began selling their hospital pharmacy automation system in the United States, McKesson implemented a systematic marketing and sales campaign designed to prevent Defendants from gaining a foothold in the United States

6

market. This campaign was pervasive and consisted mostly of conduct that was (and continues to be) in violation of Delaware and United States anti-trust and unfair competition laws.

39.     McKesson's illegal and anti-competitive activities have caused (and continue to cause) Defendants, as well as the market for hospital pharmacy automation systems, great economic harm.   These activities have not only crippled Defendants' ability to compete meaningfully with McKesson in the United States, but have also created artificial barriers to entry that have reduced competition and, in so doing, threaten to keep prices for hospital pharmacy automation systems artificially high.

### Relevant Market and McKesson's Economic Power

40.     McKesson and Defendants manufacture centralized robotic systems for automating the dispensing of medications in and from hospital pharmacies. The relevant market is the market for centralized hospital pharmacy automation systems ("hospital pharmacy automation systems"), which automate the dispensing of medications from a hospital pharmacy.

41.     Hospital pharmacy automation systems are sold by McKesson and Defendants to hospital pharmacies nationwide.   The relevant geographic market for a hospital pharmacy automation systems is the United States national market.

42.     McKesson holds a dominant position in the national market for hospital pharmacy automation systems.   Upon information and belief, in excess of 80% of hospital pharmacy automation systems sold or leased in the United States are sold or leased by McKesson or its dealers and suppliers.

### Facts Giving Rise To Translogic's Claims

43.     McKesson has engaged in a systematic campaign to maintain its monopoly in the U.S. national market for hospital pharmacy automation systems.

44.    McKesson has engaged in predatory pricing activities by selling and offering products to customers at reduced prices in order to prevent the sale of Defendants' products to U.S. customers.  Upon information and belief, on at least one occasion, McKesson's system was offered to a hospital customer for free in the form of a "$0 lease for seven years" in an attempt to block an imminent sale of Defendants' system to that hospital.

45.    Upon information and belief, McKesson provided its sales force with false and misleading information about the capabilities of both its own and Defendants' hospital pharmacy automation systems.  This false and misleading information was then provided to customers by McKesson's sales personnel in order to create a barrier to entry to Defendants and other prospective competitors in the relevant market.

46.    Upon information and belief, this false and misleading information includes, but is not limited to, false and misleading information concerning (i) the financial viability and credit worthiness of Defendants; (ii) the existence of a new hospital pharmacy automation system of McKesson's that never actually existed; (iii) the capacity and throughput of McKesson's hospital pharmacy automation system; (iv) the capacity and throughput of Defendants' hospital pharmacy automation system; (v) the reliability of Defendants' products, (vi) the mechanical complexity of Defendants' hospital pharmacy automation system; (vii) the cost of Defendants' hospital pharmacy automation system and associated equipment; and (viii) maintenance requirements of Defendants' hospital pharmacy automation system.

47.    Upon information and belief, McKesson also entered into valuable monopolistic sole-source agreements to further enhance its monopoly position in the hospital pharmacy automation market.  Upon information and belief, these sole-source agreements contractually

require more than 200 customers to purchase certain equipment from McKesson, and prohibit these customers from purchasing products from McKesson's competitors, including Defendants.

48.    The sole-source agreements entered into by McKesson constitute an unreasonable restraint of trade, and the hundreds of hospitals contractually prohibited from purchasing from McKesson's competitors constitute a substantial share of the United States national market for hospital pharmacy automation systems.

49.    Upon information and belief, McKesson has also purposely refused to enable its products to interface with Defendants' hospital pharmacy automation systems, despite customers' repeated requests for such capability and despite McKesson's almost complete monopoly in the hospital pharmacy automation market.

## Anti-Competitive And Other Injury

50.    McKesson's marketing and sales campaign appears to have been designed and implemented for the sole purpose of keeping competitors, such as Defendants, out of the market for hospital pharmacy automation systems.

51.    This campaign constitutes a significant barrier to entry for all entrants into this market, including Defendants.

52.    McKesson's illegal activities have reduced – if not eliminated – competing products which have resulted in artificially higher prices due to the non-existence of competition.

53.    McKesson's activities have crippled Defendants' ability to compete meaningfully with McKesson in the United States. Indeed, upon information and belief, McKesson's anti-competitive activities have led to the loss of at least one United States sale of Defendants' hospital pharmacy automation system.

**FIRST COUNTERCLAIM**
(Declaratory Judgment of Invalidity)

54.     Translogic repeats and realleges the responses and allegations in paragraphs 1 through 53 above as if fully set forth at length herein.

55.     All of the claims of the '110 and '267 Patents are invalid for failure to meet one or more of the conditions of patentability of inventions set forth in 35 U.S.C. §§101, 102, 103 and/or 112.

56.     By reason of the foregoing, Translogic is entitled to an entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the '110 and '267 Patents invalid.

**SECOND COUNTERCLAIM**
(Declaratory Judgment of Non-Infringement)

57.     Translogic repeats and realleges the responses and allegations in paragraphs 1 through 56 above as if fully set forth at length herein.

58.     Translogic has not infringed nor is infringing any valid or enforceable claim of the '110 or '267 Patents.

59.     By reason of the foregoing, Translogic is entitled to an entry of judgment pursuant to 28 U.S.C. §§2201 and 2202 declaring the '110 and '267 Patents not infringed.

**THIRD COUNTERCLAIM**
(Unfair Competition under Delaware Law)

60.     Translogic repeats and realleges the responses and allegations in paragraphs 1 through 59 above as if fully set forth at length herein.

61.     On information and belief, McKesson has unlawfully and oppressively brought this action against Translogic, alleging infringement of the '110 and '267 Patents by Translogic with the knowledge and belief that these Patents are invalid, unenforceable and/or not infringed by Translogic's products, and with the intent to injure Translogic.

62.     The aforesaid actions of McKesson offend established public policy and are oppressive, unscrupulous and substantially injurious to consumers.

63.     As a direct and proximate result of McKesson's aforesaid actions, Translogic has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law.

64.     These acts constitute unfair competition by McKesson against Translogic.

65.     Translogic has have been substantially damaged, in an amount to be determined, by McKesson's illegal and/or improper activities.

### FOURTH COUNTERCLAIM
(Sherman Act § 2, 15 U.S.C. § 2 – Sham Litigation)

66.     Translogic repeats and realleges the allegations in paragraphs 1 through 65 above as if fully set forth at length herein.

67.     This is a claim for willful, intentional and improper maintenance of a monopoly in a relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

68.     The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

69.     The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

70.     Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

71.     Through the willful and intentional sham assertion of the '110 and '267 Patents, McKesson has intentionally, improperly and illegally sought to maintain that monopoly by barring entry of competitors to the hospital pharmacy automation systems market, a natural consequence of its actions.

72.    Sham assertion in litigation is tested first by an objective standard, applied at the time McKesson filed its Amended Complaint, as to whether the claim is objectively baseless. If the claim is objectively baseless, the second test focuses on whether the baseless claims conceal an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process as an anti-competitive weapon.

73.    A first objectively baseless aspect to McKesson's sham patent infringement suit is that the patents as construed and asserted by McKesson against Translogic are clearly invalid because they directly read on the prior art. A reasonable litigant would not realistically expect success based on this suit.

74.    A second objectively baseless aspect to McKesson's sham patent infringement suit is that because of the literal words of the asserted claims and McKesson's own admissions to the Patent Office during prosecution of the '110 and '267 Patents, the Translogic products accused of infringing cannot objectively infringe the claims. An objective litigant could not conclude that this assertion is reasonably calculated to elicit a favorable anticompetitive outcome without results.

75.    These sham assertions by McKesson constitute intentional, willful and improper efforts by McKesson to maintain its monopoly power in the automated drug systems market, and not as a consequence of a superior product embodying the patents-in-suit. McKesson, without regard to whether its lawsuit has merit, raises these sham assertions with a specific and improper intent to bar Translogic from the automated drug systems market. These baseless assertions attempt to conceal efforts by McKesson to interfere directly with the business relationships of competitors such as Translogic using the judicial process as an anticompetitive weapon.

76.     McKesson's sham assertions of damages on patents that are invalid and not infringed have a chilling effect on competitors such as Translogic as a new entrant to the hospital pharmacy automation systems market.  Because of the small volume of sales by Translogic of products accused of infringement, the cost of defending against McKesson's sham assertions represent a very real barrier to Translogic's continued and future entry into the hospital pharmacy automation systems market.  Upon information and belief, McKesson's actions have lessened competition in the marketplace and have caused prices for these automated drug distribution systems in the United States to remain artificially high.

77.     Translogic has been proximately harmed by McKesson's sham assertions in that it has been forced to incur attorneys fees and costs to defend against McKesson's infringement claims.

78.     The market in the United States for automated drug systems has suffered anti-trust injury as a result of McKesson's actions.

79.     Translogic may be harmed in the future by the chilling effect of McKesson's sham assertions on Translogic's bidding for new business in the hospital pharmacy automation systems market in competition with McKesson.

**FIFTH COUNTERCLAIM**
(Sherman Act § 2, 15 U.S.C. § 2 – Illegal Monopoly in
Hospital Pharmacy Automation Market)

80.     Translogic repeats and realleges each and every allegation set forth in paragraphs 1 through 79 above as if fully set forth at length herein.

81.     The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

13

82.     The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

83.     Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

84.     McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, entering into sole-source agreements that contractually prohibit hundreds of customers from purchasing products from competitors, and refusing to permit compatibility between McKesson's products and those of Defendants.

85.     The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

86.    The foregoing acts and practices have also directly and proximately caused Translogic harm in the marketplace.  Translogic's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

87.    As a result of the foregoing acts, Translogic has been injured in an amount not less than $10,000,000.00;

88.    Unless these activities are enjoined, Translogic will continue to suffer injury for which it has no adequate remedy at law.

## SIXTH COUNTERCLAIM
(Sherman Act § 1, 15 U.S.C. § 1 – Illegal Anti-Competitive Contract in
Hospital Pharmacy Automation Market)

89.    Translogic repeats and realleges each and every allegation set forth in paragraphs 1 through 88 above as if fully set forth at length herein.

90.    The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

91.    The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

92.    Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

93.    McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets.  McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about

the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

94.     McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants.  These hospitals constitute a substantial share of the United States national market for hospital pharmacy automation systems.  The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

95.     The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market.  Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants.  These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market.  If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

96.     The foregoing acts and practices have also directly and proximately caused Translogic harm in the marketplace.  Translogic's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

97.     As a result of the foregoing acts, Translogic has been injured in an amount not less than $10,000,000.00;

98.     Unless these activities are enjoined, Translogic will continue to suffer injury for which it has no adequate remedy at law.

16

## SEVENTH COUNTERCLAIM
(Clayton Act § 3, 15 U.S.C. § 14 – Illegal Anti-Competitive Contract in
Hospital Pharmacy Automation Market)

99.     Translogic repeats and realleges each and every allegation set forth in paragraphs 1 through 98 above as if fully set forth at length herein.

100.     The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

101.     The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

102.     Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

103.     McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

104.     McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants. These hospitals constitute a substantial share of the United States national market for hospital pharmacy automation systems. The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

105.    The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

106.    The foregoing acts and practices have also directly and proximately caused Translogic harm in the marketplace. Translogic's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

107.    As a result of the foregoing acts, Translogic has been injured in an amount not less than $10,000,000.00;

108.    Unless these activities are enjoined, Translogic will continue to suffer injury for which it has no adequate remedy at law.

## EIGHTH COUNTERCLAIM
### (6 Del. C. § 2103 – Illegal Anti-Competitive Contract in Hospital Pharmacy Automation Market)

109.    Translogic repeats and realleges each and every allegation set forth in paragraphs 1 through 108 above as if fully set forth at length herein.

110.    The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

111.    The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

18

112.   Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

113.   McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

114.   McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants. These hospitals constitute a substantial share of the United States national market for hospital pharmacy automation systems. The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

115.   The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

116.   The foregoing acts and practices have also directly and proximately caused Translogic harm in the marketplace.  Translogic's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

117.   As a result of the foregoing acts, Translogic has been injured in an amount not less than $10,000,000.00;

118.   Unless these activities are enjoined, Translogic will continue to suffer injury for which it has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Translogic prays that a judgment be entered:

A.   Dismissing the Amended Complaint herein with prejudice and entering judgment in favor of Translogic thereon;

B.   Declaring that Translogic has not and does not infringe any claims of the '110 and '267 Patents;

C.   Declaring that each and every claim of the '110 and '267 Patents is invalid;

D.   Declaring that McKesson's claims against Translogic are barred, in whole or in part, under one or more of the equitable doctrines of laches, waiver, estoppel and unclean hands;

E.   Declaring that McKesson's claims against Translogic are barred, in whole or in part, by reason of patent misuse;

F.   Declaring that the '110 and '267 Patents are unenforceable against Translogic because of antitrust misuse;

G.   Permanently enjoining and restraining McKesson, its officers, employees, agents and all persons in active concert or participation with McKesson from asserting that Translogic's products and/or business activities constitute an infringement of the '110 and '267 Patents, and from any and all acts giving rise to Translogic's counterclaims;

20

H.   Adjudging this to be an exceptional case and awarding Translogic its reasonable attorney's fees pursuant to 35 U.S.C. § 285 and costs of suit;

I.   Declaring that McKesson is in violation of the antitrust laws;

J.   Permanently enjoining and restraining McKesson, including their officers, agents, servants, employees and attorneys and all those in active concert or participation with McKesson, from engaging in any ant-trust, anti-competitive and/or other conduct that restrains competition in the United States market for hospital pharmacy automation systems;

K.   Awarding Translogic attorneys' fees, enhanced damages and costs as a result of McKesson's anti-trust violations;

L.   Awarding Translogic compensatory damages based on McKesson's anti-trust violations in an amount not less than $10,000,000.00 and no less than treble damages under 15 U.S.C. § 15, the exact amount to be determined at trial;

M.   Awarding Translogic damages incurred as a result of McKesson's unfair competition;

N.   Awarding Translogic punitive and enhanced damages as a result of McKesson's conduct;

O.   Awarding Translogic such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*
_____

Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
   *Attorneys for Defendant*
   *Swisslog Italia S.P.A.*

OF COUNSEL:

Alfred R. Fabricant
Lawrence C. Drucker
Richard LaCava
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY  10036
(212) 277-6500

October 1, 2007

1250619

EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

MCKESSON AUTOMATION, INC.,

             Plaintiff,

           v.

SWISSLOG ITALIA S.P.A., and
TRANSLOGIC CORPORATION,

             Defendants.

C. A. No. 06-028 (KAJ)

## DEFENDANT SWISSLOG ITALIA S.P.A.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS

Defendant Swisslog Italia S.p.A. ("Swisslog Italia"), by and through its undersigned counsel, as and for its Answer to Plaintiff's First Amended Complaint (the "Amended Complaint") and for its Counterclaims, admits denies and alleges as follows:

1.      Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 1 of the Amended Complaint.

2.      Denies allegations set forth in paragraph 2 of the Amended Complaint except admits that Swisslog Italia is an entity organized under the laws of Italy, with its principal place of business at Via Taruffi 30/38, 41053 Maranello MO, Italy.

3.      Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 3 of the Amended Complaint.

4.      Denies the allegations set forth in paragraph 4 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the

allegations with respect to acts alleged to have been committed by defendant Translogic Corporation ("Translogic").

5.    Admits that the Amended Complaint refers to Swisslog Italia and Translogic collectively as "Swisslog."

6.    Admits the allegations set forth in paragraph 6 of the Amended Complaint to the extent that plaintiff alleges that this action purports to be one for patent infringement and that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7.    Admits the allegations set forth in paragraph 7 of the Amended Complaint to the extent that plaintiff alleges that venue is proper in this Court over Swisslog Italia under 28 U.S.C. §§ 1391(d) and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to venue being proper with respect to defendant Translogic.

8.    Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 8 of the Amended Complaint.

9.    Denies the allegations set forth in paragraph 9 of the Amended Complaint, except admits that Exhibit 1 to the Amended Complaint purports to be a copy of U.S. Patent No. 5,468,110 (the " '110 Patent") and refers to that patent for a true and complete statement of its contents.

10.    Denies the allegations set forth in paragraph 10 of the Amended Complaint, except admits that Exhibit 2 to the Amended Complaint purports to be a copy of U.S. Patent No. 5,593,267 (the " '267 Patent") and refers to that patent for a true and complete statement of its contents.

11.    Denies the allegations contained in paragraph 11 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

12.    Swisslog Italia repeats and realleges its previous responses to paragraphs 1 through 11 of the Amended Complaint as if fully set forth at length herein.

13.    Denies the allegations set forth in paragraph 13 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

14.    Denies the allegations contained in paragraph 14 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to defendant Translogic.

15.    Denies the allegations contained in paragraph 15 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

16.    Denies the allegations contained in paragraph 16 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

17.    Swisslog Italia repeats and realleges its previous responses to paragraphs 1 through 16 of the Amended Complaint as if fully set forth at length herein.

18.    Denies the allegations contained in paragraph 18 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

3

19.    Denies the allegations contained in paragraph 19 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to defendant Translogic.

20.    Denies the allegations contained in paragraph 20 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

21.    Denies the allegations contained in paragraph 21 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

## FIRST AFFIRMATIVE DEFENSE

22.    Swisslog Italia has not infringed, induced infringement or contributed to the infringement of any valid or enforceable claim of the '110 or '267 Patents

## SECOND AFFIRMATIVE DEFENSE

23.    McKesson's claims are barred, in whole or in part, under one or more of the equitable doctrines of laches, waiver, estoppel and unclean hands.

## THIRD AFFIRMATIVE DEFENSE

24.    The '110 and '267 Patents are invalid, *inter alia*, in that they fail to meet one or more of the conditions for patentability set forth in 35 U.S.C. §102.

## FOURTH AFFIRMATIVE DEFENSE

25.    The '110 and '267 Patents are invalid, *inter alia*, pursuant to 35 U.S.C. §103 in that the inventions disclosed would have been obvious to a person of ordinary skill in the art at the time the inventions were made.

## FIFTH AFFIRMATIVE DEFENSE

26.    The '110 and '267 Patents are invalid for failure to comply with the requirements of 35 U.S.C. §112.

## SIXTH AFFIRMATIVE DEFENSE

27.    McKesson's claims are barred, in whole or in part, by reason of patent misuse.

## SEVENTH AFFIRMATIVE DEFENSE

28.    McKesson's claims are barred, in whole or in part, pursuant to 35 U.S.C. §287.

## EIGHTH AFFIRMATIVE DEFENSE

29.    McKesson's claims are barred, in whole or in part, under the doctrine of prosecution history estoppel because proceedings in the Patent and Trademark Office during the prosecution of the '110 and '267 Patents prevent a claim construction for those patents that could result in a finding of infringement.

## NINTH AFFIRMATIVE DEFENSE

30.    McKesson lacks standing to sue because it is not an owner, assignee or licensee of the patents-in-suit.

## OTHER AFFIRMATIVE DEFENSES

31.    Swisslog Italia reserves the right to assert all additional affirmative defenses under Fed. R. Civ. P. 8(c), the Patent Laws of the United States and any other legal or equitable defenses that may now exist or in the future be available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS

## JURISDICTION AND VENUE

32.    Jurisdiction and venue over Swisslog Italia's counterclaims are proper pursuant to 28 U.S.C. §§ 1331, 1338, 1391, 2201 and 2202.

## THE PARTIES

33.    Counterclaim Plaintiff Swisslog Italia S.p.A. ("Swisslog Italia") is an entity organized under the laws of Italy, with its principal place of business at Via Taruffi 30/38, 41053 Maranello MO, Italy.

34.    Upon information and belief, Counterclaim Defendant McKesson Automation, Inc. ("McKesson"), is a Pennsylvania Corporation, with a principal place of business at 500 Cranberry Woods Drive, Cranberry Township, PA 16066.

## FACTS COMMON TO ALL COUNTERCLAIMS

### Introduction

35.    McKesson manufactures centralized robotic systems for automating the dispensing of medications in and from hospital pharmacies ("hospital pharmacy automation systems"). McKesson markets and distributes its system to hospitals throughout the United States from its main facilities in Cranberry Township, Pennsylvania.

36.    Swisslog Italia manufactures a competing hospital pharmacy automation system. In 2002, Swisslog Italia, through its United States distributor – Translogic (collectively "Defendants") – began selling and offering for sale in the United States Defendants' hospital pharmacy automation system.

37.    On January 13, 2006, McKesson filed a complaint against Defendants alleging that sales of Defendants' system in the United States infringed the '110 patent and the '267 patent. Defendants filed their Answers and Counterclaims on March 15, 2006.  A First Amended Complaint was filed on July 3, 2006 to name proper parties, and Defendants answered this complaint on July 5, 2006.

38.    Almost immediately after Defendants began selling their hospital pharmacy automation system in the United States, McKesson implemented  a systematic marketing and

sales campaign designed to prevent Defendants from gaining a foothold in the United States market. This campaign was pervasive and consisted mostly of conduct that was (and continues to be) in violation of Delaware and United States anti-trust and unfair competition laws.

39.    McKesson's illegal and anti-competitive activities have caused (and continue to cause) Defendants, as well as the market for hospital pharmacy automation systems, great economic harm.   These activities have not only crippled Defendants' ability to compete meaningfully with McKesson in the United States, but have also created artificial barriers to entry that have reduced competition and, in so doing, threaten to keep prices for hospital pharmacy automation systems artificially high.

**Relevant Market and McKesson's Economic Power**

40.    McKesson and Defendants manufacture centralized robotic systems for automating the dispensing of medications in and from hospital pharmacies. The relevant market is the market for centralized hospital pharmacy automation systems ("hospital pharmacy automation systems"), which automate the dispensing of medications from a hospital pharmacy.

41.    Hospital pharmacy automation systems are sold by McKesson and Defendants to hospital pharmacies nationwide.   The relevant geographic market for a hospital pharmacy automation systems is the United States national market.

42.    McKesson holds a dominant position in the national market for hospital pharmacy automation systems.   Upon information and belief, in excess of 80% of hospital pharmacy automation systems sold or leased in the United States are sold or leased by McKesson or its dealers and suppliers.

**Facts Giving Rise To Swisslog Italia's Claims**

43.    McKesson has engaged in a systematic campaign to maintain its monopoly in the U.S. national market for hospital pharmacy automation systems.

44.    McKesson has engaged in predatory pricing activities by selling and offering products to customers at reduced prices in order to prevent the sale of Defendants' products to U.S. customers.  Upon information and belief, on at least one occasion, McKesson's system was offered to a hospital customer for free in the form of a "$0 lease for seven years" in an attempt to block an imminent sale of Defendants' system to that hospital.

45.    Upon information and belief, McKesson provided its sales force with false and misleading information about the capabilities of both its own and Defendants' hospital pharmacy automation systems.  This false and misleading information was then provided to customers by McKesson's sales personnel in order to create a barrier to entry to Defendants and other prospective competitors in the relevant market.

46.    Upon information and belief, this false and misleading information includes, but is not limited to, false and misleading information concerning (i) the financial viability and credit worthiness of Defendants; (ii) the existence of a new hospital pharmacy automation system of McKesson's that never actually existed; (iii) the capacity and throughput of McKesson's hospital pharmacy automation system; (iv) the capacity and throughput of Defendants' hospital pharmacy automation system; (v) the reliability of Defendants' products, (vi) the mechanical complexity of Defendants' hospital pharmacy automation system; (vii) the cost of Defendants' hospital pharmacy automation system and associated equipment; and (viii) maintenance requirements of Defendants' hospital pharmacy automation system.

47.    Upon information and belief, McKesson also entered into valuable monopolistic sole-source agreements to further enhance its monopoly position in the hospital pharmacy automation market.  Upon information and belief, these sole-source agreements contractually

require more than 200 customers to purchase certain equipment from McKesson, and prohibit these customers from purchasing products from McKesson's competitors, including Defendants.

48.    The sole-source agreements entered into by McKesson constitute an unreasonable restraint of trade, and the hundreds of hospitals contractually prohibited from purchasing from McKesson's competitors constitute a substantial share of the United States national market for hospital pharmacy automation systems.

49.    Upon information and belief, McKesson has also purposely refused to enable its products to interface with Defendants' hospital pharmacy automation systems, despite customers' repeated requests for such capability and despite McKesson's almost complete monopoly in the hospital pharmacy automation market.

**Anti-Competitive And Other Injury**

50.    McKesson's marketing and sales campaign appears to have been designed and implemented for the sole purpose of keeping competitors, such as Defendants, out of the market for hospital pharmacy automation systems.

51.    This campaign constitutes a significant barrier to entry for all entrants into this market, including Defendants.

52.    McKesson's illegal activities have reduced – if not eliminated – competing products which have resulted in artificially higher prices due to the non-existence of competition.

53.    McKesson's activities have crippled Defendants' ability to compete meaningfully with McKesson in the United States. Indeed, upon information and belief, McKesson's anti-competitive activities have led to the loss of at least one United States sale of Defendants' hospital pharmacy automation system.

## FIRST COUNTERCLAIM
(Declaratory Judgment of Invalidity)

54.     Swisslog Italia repeats and realleges the responses and allegations in paragraphs 1 through 53 above as if fully set forth at length herein.

55.     All of the claims of the '110 and '267 Patents are invalid for failure to meet one or more of the conditions of patentability of inventions set forth in 35 U.S.C. §§101, 102, 103 and/or 112.

56.     By reason of the foregoing, Swisslog Italia is entitled to an entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the '110 and '267 Patents invalid.

## SECOND COUNTERCLAIM
(Declaratory Judgment of Non-Infringement)

57.     Swisslog Italia repeats and realleges the responses and allegations in paragraphs 1 through 56 above as if fully set forth at length herein.

58.     Swisslog Italia has not infringed nor is infringing any valid or enforceable claim of the '110 or '267 Patents.

59.     By reason of the foregoing, Swisslog Italia is entitled to an entry of judgment pursuant to 28 U.S.C. §§2201 and 2202 declaring the '110 and '267 Patents not infringed.

## THIRD COUNTERCLAIM
(Unfair Competition under Delaware Law)

60.     Swisslog Italia repeats and realleges the responses and allegations in paragraphs 1 through 59 above as if fully set forth at length herein.

61.     On information and belief, McKesson has unlawfully and oppressively brought this action against Swisslog Italia, alleging infringement of the '110 and '267 Patents by Swisslog Italia with the knowledge and belief that these Patents are invalid, unenforceable and/or not infringed by Swisslog Italia's products, and with the intent to injure Swisslog Italia.

62.    The aforesaid actions of McKesson offend established public policy and are oppressive, unscrupulous and substantially injurious to consumers.

63.    As a direct and proximate result of McKesson's aforesaid actions, Swisslog Italia has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law.

64.    These acts constitute unfair competition by McKesson against Swisslog Italia.

65.    Swisslog Italia has have been substantially damaged, in an amount to be determined, by McKesson's illegal and/or improper activities.

### FOURTH COUNTERCLAIM
(Sherman Act § 2, 15 U.S.C. § 2 – Sham Litigation)

66.    Swisslog Italia repeats and realleges the allegations in paragraphs 1 through 65 above as if fully set forth at length herein.

67.    This is a claim for willful, intentional and improper maintenance of a monopoly in a relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

68.    The relevant market for Swisslog Italia's antitrust claim is the market for hospital pharmacy automation systems.

69.    The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

70.    Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

71.    Through the willful and intentional sham assertion of the '110 and '267 Patents, McKesson has intentionally, improperly and illegally sought to maintain that monopoly by barring entry of competitors to the hospital pharmacy automation systems market, a natural consequence of its actions.

72.     Sham assertion in litigation is tested first by an objective standard, applied at the time McKesson filed its Amended Complaint, as to whether the claim is objectively baseless. If the claim is objectively baseless, the second test focuses on whether the baseless claims conceal an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process as an anti-competitive weapon.

73.     A first objectively baseless aspect to McKesson's sham patent infringement suit is that the patents as construed and asserted by McKesson against Swisslog Italia are clearly invalid because they directly read on the prior art. A reasonable litigant would not realistically expect success based on this suit.

74.     A second objectively baseless aspect to McKesson's sham patent infringement suit is that because of the literal words of the asserted claims and McKesson's own admissions to the Patent Office during prosecution of the '110 and '267 Patents, the Swisslog Italia products accused of infringing cannot objectively infringe the claims. An objective litigant could not conclude that this assertion is reasonably calculated to elicit a favorable anticompetitive outcome without results.

75.     These sham assertions by McKesson constitute intentional, willful and improper efforts by McKesson to maintain its monopoly power in the automated drug systems market, and not as a consequence of a superior product embodying the patents-in-suit. McKesson, without regard to whether its lawsuit has merit, raises these sham assertions with a specific and improper intent to bar Swisslog Italia from the automated drug systems market. These baseless assertions attempt to conceal efforts by McKesson to interfere directly with the business relationships of competitors such as Swisslog Italia using the judicial process as an anticompetitive weapon.

76.     McKesson's sham assertions of damages on patents that are invalid and not infringed have a chilling effect on competitors such as Swisslog Italia as a new entrant to the hospital pharmacy automation systems market.    Because of the small volume of sales by Swisslog Italia of products accused of infringement, the cost of defending against McKesson's sham assertions represent a very real barrier to Swisslog Italia's continued and future entry into the hospital pharmacy automation systems market.    Upon information and belief, McKesson's actions have lessened competition in the marketplace and have caused prices for these automated drug distribution systems in the United States to remain artificially high.

77.     Swisslog Italia has been proximately harmed by McKesson's sham assertions in that it has been forced to incur attorneys fees and costs to defend against McKesson's infringement claims.

78.     The market in the United States for automated drug systems has suffered anti-trust injury as a result of McKesson's actions.

79.     Swisslog Italia may be harmed in the future by the chilling effect of McKesson's sham assertions on Swisslog Italia's bidding for new business in the hospital pharmacy automation systems market in competition with McKesson.

### FIFTH COUNTERCLAIM
(Sherman Act § 2, 15 U.S.C. § 2 – Illegal Monopoly in
Hospital Pharmacy Automation Market)

80.     Swisslog Italia repeats and realleges each and every allegation set forth in paragraphs 1 through 79 above as if fully set forth at length herein.

81.     The relevant market for Swisslog Italia's antitrust claim is the market for hospital pharmacy automation systems.

13

82.     The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

83.     Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

84.     McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, entering into sole-source agreements that contractually prohibit hundreds of customers from purchasing products from competitors, and refusing to permit compatibility between McKesson's products and those of Defendants.

85.     The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

86.    The foregoing acts and practices have also directly and proximately caused Swisslog Italia harm in the marketplace. Swisslog Italia's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

87.    As a result of the foregoing acts, Swisslog Italia has been injured in an amount not less than $10,000,000.00;

88.    Unless these activities are enjoined, Swisslog Italia will continue to suffer injury for which it has no adequate remedy at law.

### SIXTH COUNTERCLAIM
(Sherman Act § 1, 15 U.S.C. § 1 – Illegal Anti-Competitive Contract in Hospital Pharmacy Automation Market)

89.    Swisslog Italia repeats and realleges each and every allegation set forth in paragraphs 1 through 88 above as if fully set forth at length herein.

90.    The relevant market for Swisslog Italia's antitrust claim is the market for hospital pharmacy automation systems.

91.    The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

92.    Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

93.    McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about

15

the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

94.    McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants. These hospitals constitute a substantial share of the United States national market for hospital pharmacy automation systems. The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

95.    The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

96.    The foregoing acts and practices have also directly and proximately caused Swisslog Italia harm in the marketplace. Swisslog Italia's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

97.    As a result of the foregoing acts, Swisslog Italia has been injured in an amount not less than $10,000,000.00;

98.    Unless these activities are enjoined, Swisslog Italia will continue to suffer injury for which it has no adequate remedy at law.

## SEVENTH COUNTERCLAIM
(Clayton Act § 3, 15 U.S.C. § 14 – Illegal Anti-Competitive Contract in
Hospital Pharmacy Automation Market)

99.    Swisslog Italia repeats and realleges each and every allegation set forth in
paragraphs 1 through 98 above as if fully set forth at length herein.

100.    The relevant market for Swisslog Italia's antitrust claim is the market for hospital
pharmacy automation systems.

101.    The geographic market for these systems is the United States because, *inter alia*,
such systems made by McKesson are used or sold throughout the United States.

102.    Upon information and belief, McKesson possesses monopoly power in the
relevant product and geographic markets, as shown by their market share in excess of 80%.

103.    McKesson has willfully and wrongfully maintained and abused its monopoly
power through anti-competitive and exclusionary behavior directed at Defendants and other
competitors, including anti-competitive behavior designed to exclude all competitors in the
relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is
not limited to, predatory pricing, providing false and misleading information to customers about
the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing
to permit compatibility between McKesson's products and those of Defendants.

104.    McKesson's anti-competitive and exclusionary behavior also included entering
into monopolistic sole-source agreements that contractually prohibit hundreds of potential
customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including
Defendants. These hospitals constitute a substantial share of the United States national market
for hospital pharmacy automation systems. The sole source agreements, therefore, constitute and
unreasonable restraint on trade and competition.

105.    The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market.    Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants.    These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market.    If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

106.    The foregoing acts and practices have also directly and proximately caused Swisslog Italia harm in the marketplace.    Swisslog Italia's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

107.    As a result of the foregoing acts, Swisslog Italia has been injured in an amount not less than $10,000,000.00;

108.    Unless these activities are enjoined, Swisslog Italia will continue to suffer injury for which it has no adequate remedy at law.

**EIGHTH COUNTERCLAIM**
(6 Del. C. § 2103 – Illegal Anti-Competitive Contract in
Hospital Pharmacy Automation Market)

109.    Swisslog Italia repeats and realleges each and every allegation set forth in paragraphs 1 through 108 above as if fully set forth at length herein.

110.    The relevant market for Swisslog Italia's antitrust claim is the market for hospital pharmacy automation systems.

111.    The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

18

112.    Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

113.    McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

114.    McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants. These hospitals constitute a substantial share of the United States national market for hospital pharmacy automation systems. The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

115.    The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

116.    The foregoing acts and practices have also directly and proximately caused Swisslog Italia harm in the marketplace.  Swisslog Italia's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

117.    As a result of the foregoing acts, Swisslog Italia has been injured in an amount not less than $10,000,000.00;

118.    Unless these activities are enjoined, Swisslog Italia will continue to suffer injury for which it has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Swisslog Italia prays that a judgment be entered:

A.    Dismissing the Amended Complaint herein with prejudice and entering judgment in favor of Swisslog Italia thereon;

B.    Declaring that Swisslog Italia has not and does not infringe any claims of the '110 and '267 Patents;

C.    Declaring that each and every claim of the '110 and '267 Patents is invalid;

D.    Declaring that McKesson's claims against Swisslog Italia are barred, in whole or in part, under one or more of the equitable doctrines of laches, waiver, estoppel and unclean hands;

E.    Declaring that McKesson's claims against Swisslog Italia are barred, in whole or in part, by reason of patent misuse;

F.    Declaring that the '110 and '267 Patents are unenforceable against Swisslog Italia because of antitrust misuse;

G.    Permanently enjoining and restraining McKesson, its officers, employees, agents and all persons in active concert or participation with McKesson from asserting that Swisslog

20

Italia's products and/or business activities constitute an infringement of the '110 and '267 Patents, and from any and all acts giving rise to Swisslog Italia's counterclaims;

H.   Adjudging this to be an exceptional case and awarding Swisslog Italia its reasonable attorney's fees pursuant to 35 U.S.C. § 285 and costs of suit;

I.   Declaring that McKesson is in violation of the antitrust laws;

J.   Permanently enjoining and restraining McKesson, including their officers, agents, servants, employees and attorneys and all those in active concert or participation with McKesson, from engaging in any ant-trust, anti-competitive and/or other conduct that restrains competition in the United States market for hospital pharmacy automation systems;

K.   Awarding Swisslog Italia attorneys' fees, enhanced damages and costs as a result of McKesson's anti-trust violations;

L.   Awarding Swisslog Italia compensatory damages based on McKesson's anti-trust violations in an amount not less than $10,000,000.00 and no less than treble damages under 15 U.S.C. § 15, the exact amount to be determined at trial;

M.   Awarding Swisslog Italia damages incurred as a result of McKesson's unfair competition;

N.   Awarding Swisslog Italia punitive and enhanced damages as a result of McKesson's conduct;

O.   Awarding Swisslog Italia such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

_____

Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
   *Attorneys for Defendant*
   *Swisslog Italia S.P.A.*

OF COUNSEL:

Alfred R. Fabricant
Lawrence C. Drucker
Richard LaCava
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY  10036
(212) 277-6500

October 1, 2007

1250616

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MCKESSON AUTOMATION, INC.,

Plaintiff,

v.

SWISSLOG HOLDING AG, ITALIA S.P.A.,
and
SWISSLOG MANAGEMENT AG,
TRANSLOGIC CORPORATION, and
SWISSLOG NORTH AMERICA,,

Defendants.

C. A. No. 06-028 (KAJ)

**DEFENDANT TRANSLOGIC CORPORATION'S FIRST AMENDED ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS**

Defendant Translogic Corporation ("Translogic"), by and through its undersigned

counsel, as and for its Answer to Plaintiff's First Amended Complaint (the "Amended

Complaint") and for its Counterclaims, admits, denies and alleges as follows:

1.      Denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations set forth in paragraph 1, and therefore denies them, except admits on

information and belief, that plaintiff is a Pennsylvania corporation with a principal place of

business in Cranberry Township, PA 1 of the Amended Complaint.

2.      Denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations set forth in paragraph 2 of the Amended Complaint.

3.    Denies allegations set forth in paragraph 3 of the Amended Complaint except admits that Translogic is a Delaware Corporation with its principal place of business at 10825 E 47th Avenue, Denver, Colorado.

Denies the allegations set forth in paragraph 4 of the Amended Complaint, except that Translogic is withoutdenies knowledge or information sufficient to form a belief as to the truth or 5. falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia S.p.A. ("Swisslog Italia").

4.    6. Admits that the Amended Complaint refers to Swisslog Italia and Translogic collectively as "Swisslog."

5.    7. Admits the allegations set forth in paragraph 6 of the Amended Complaint to the extent that plaintiff alleges that this action purports to be one for patent infringement and that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.    8. Admits the allegations set forth in paragraph 7 of the Amended Complaint to the extent that plaintiff alleges that venue is proper in this Court over Translogic under 28 U.S.C. §§ 1391(b) and 1400(b) and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to venue being proper with respect to defendant Swisslog Italia.

7.    9. Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 8 of the Amended Complaint.

8.    10. Denies the allegations set forth in paragraph 9 of the Amended Complaint, except admits that Exhibit 1 to the Amended Complaint purports to be a copy of U.S. Patent No. 5,468,110 (the " '110 Patent") and refers to that patent for a true and complete statement of its contents.

9.     11. Denies the allegations set forth in paragraph 10 of the Amended Complaint, except admits that Exhibit 2 to the Amended Complaint purports to be a copy of U.S. Patent No. 5,593,267 (the " '267 Patent") and refers to that patent for a true and complete statement of its contents.

10.     12.————————————————————————————————————————

Denies the allegations contained in paragraph 11 of the Amended Complaint, except ~~that~~ ~~Translogic is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

11.    ~~13.~~ Translogic repeats and realleges its previous responses to paragraphs 1 through 11 of the Amended Complaint as if fully set forth at length herein.

12.    ~~14.~~ Denies the allegations set forth in paragraph 13 of the Amended Complaint, except ~~that Translogic is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

13.    ~~15.~~ Denies the allegations contained in paragraph 14 of the Amended Complaint, except ~~that Translogic is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to defendant Swisslog Italia.

14.    ~~16.~~ Denies the allegations contained in paragraph 15 of the Amended Complaint, except ~~that Translogic is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

15.    ~~17.~~ Denies the allegations contained in paragraph 16 of the Amended Complaint, except ~~that Translogic is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

16.    ~~18.~~ Translogic repeats and realleges its previous responses to paragraphs 1 through 16 of the Amended Complaint as if fully set forth at length herein.

17. ~~19.~~ Denies the allegations contained in paragraph 18 of the Amended Complaint, except ~~that Translogic is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

18. ~~20.~~ Denies the allegations contained in paragraph 19 of the Amended Complaint, except ~~that Translogic is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to defendant Swisslog Italia.

19. ~~21.~~ Denies the allegations contained in paragraph 20 of the Amended Complaint, except ~~that Translogic is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

20. ~~22.~~ Denies the allegations contained in paragraph 21 of the Amended Complaint, except ~~that Translogic is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

**FIRST AFFIRMATIVE DEFENSE**

21. ~~23.~~ Translogic has not infringed, induced infringement or contributed to the infringement of any valid or enforceable claim of the '110 or '267 Patents

**SECOND AFFIRMATIVE DEFENSE**

22. ~~24.~~ McKesson's claims are barred, in whole or in part, under one or more of the equitable doctrines of laches, waiver, estoppel and unclean hands.

**THIRD AFFIRMATIVE DEFENSE**

23. 25. The '110 and '267 Patents are invalid, *inter alia*, in that they fail to meet one or more of the conditions for patentability set forth in 35 U.S.C. §102.

**FOURTH AFFIRMATIVE DEFENSE**

24. 26. The '110 and '267 Patents are invalid, *inter alia*, pursuant to 35 U.S.C. §103 in that the inventions disclosed would have been obvious to a person of ordinary skill in the art at the time the inventions were made.

**FIFTH AFFIRMATIVE DEFENSE**

25. 27. The '110 and '267 Patents are invalid for failure to comply with the requirements of 35 U.S.C. §112.

**SIXTH AFFIRMATIVE DEFENSE**

26. 28. McKesson's claims are barred, in whole or in part, by reason of patent misuse.

**SEVENTH AFFIRMATIVE DEFENSE**

27. 29. McKesson's claims are barred, in whole or in part, pursuant to 35 U.S.C. §287.

**EIGHTH AFFIRMATIVE DEFENSE**

28. 30. McKesson's claims are barred, in whole or in part, under the doctrine of prosecution history estoppel because proceedings in the Patent and Trademark Office during the prosecution of the '110 and '267 Patents prevent a claim construction for those patents that could result in a finding of infringement.

## <u>NINTH AFFIRMATIVE DEFENSE</u>

<u>29.    McKesson lacks standing to sue because it is not an owner, assignee or licensee of the patents-in-suit.</u>

### OTHER AFFIRMATIVE DEFENSES

30.    Translogic reserves the right to assert all additional affirmative defenses under Fed. R. Civ. P. 8(c), the Patent Laws of the United States and any other legal or equitable defenses that may now exist or in the future be available based on discovery and further factual investigation in this case.

### COUNTERCLAIMS

### JURISDICTION AND VENUE

31.    Jurisdiction and venue over Translogic's counterclaims are proper pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 1391, 2201 and 2202.

### THE PARTIES

32.    Counterclaim ~~Plaintiff~~plaintiff Translogic Corporation ("Translogic") is a Delaware Corporation with its principal place of business at 10825 E 47th Avenue, Denver, Colorado.

33.    Upon information and belief, Counterclaim Defendant McKesson Automation, Inc. ("McKesson"), is a Pennsylvania Corporation, with a principal place of business at 500 Cranberry Woods Drive, Cranberry Township, PA 16066.

### FACTS COMMON TO ALL COUNTERCLAIMS

### Introduction

34.  McKesson manufactures centralized robotic systems for automating the dispensing of medications in and from hospital pharmacies ("hospital pharmacy automation systems"). McKesson markets and distributes its system to hospitals throughout the United States from its main facilities in Cranberry Township, Pennsylvania

35.  Swisslog Italia manufactures a competing hospital pharmacy automation system. In 2002, Swisslog Italia, through its United States distributor – Translogic (collectively "Defendants") – began selling and offering for sale in the United States Defendants' hospital pharmacy automation system.

36.  On January 13, 2006, McKesson filed a complaint against Defendants alleging that sales of Defendants' system in the United States infringed the '110 patent and the '267 patent. Defendants filed their Answers and Counterclaims on March 15, 2006. A First Amended Complaint was filed on July 3, 2006 to name proper parties, and Defendants answered this complaint on July 5, 2006.

37.  Almost immediately after Defendants began selling their hospital pharmacy automation system in the United States, McKesson implemented a systematic marketing and sales campaign designed to prevent Defendants from gaining a foothold in the United States market. This campaign was pervasive and consisted mostly of conduct that was (and continues to be) in violation of Delaware and United States anti-trust and unfair competition laws.

38.  McKesson's illegal and anti-competitive activities have caused (and continue to cause) Defendants, as well as the market for hospital pharmacy automation systems, great economic harm.  These activities have not only crippled Defendants' ability to compete

meaningfully with McKesson in the United States, but have also created artificial barriers to entry that have reduced competition and, in so doing, threaten to keep prices for hospital pharmacy automation systems artificially high.

### Relevant Market and McKesson's Economic Power

39.    McKesson and Defendants manufacture centralized robotic systems for automating the dispensing of medications in and from hospital pharmacies. The relevant market is the market for centralized hospital pharmacy automation systems ("hospital pharmacy automation systems"), which automate the dispensing of medications from a hospital pharmacy.

40.    Hospital pharmacy automation systems are sold by McKesson and Defendants to hospital pharmacies nationwide.  The relevant geographic market for a hospital pharmacy automation systems is the United States national market.

41.    McKesson holds a dominant position in the national market for hospital pharmacy automation systems.  Upon information and belief, in excess of 80% of hospital pharmacy automation systems sold or leased in the United States are sold or leased by McKesson or its dealers and suppliers.

### Facts Giving Rise To Translogic's Claims

42.    McKesson has engaged in a systematic campaign to maintain its monopoly in the U.S. national market for hospital pharmacy automation systems.

43.    McKesson has engaged in predatory pricing activities by selling and offering products to customers at reduced prices in order to prevent the sale of Defendants' products to U.S. customers.  Upon information and belief, on at least one occasion, McKesson's system was offered to a hospital customer for free in the form of a "$0 lease for seven years" in an attempt to block an imminent sale of Defendants' system to that hospital.

44.     Upon information and belief, McKesson provided its sales force with false and misleading information about the capabilities of both its own and Defendants' hospital pharmacy automation systems.  This false and misleading information was then provided to customers by McKesson's sales personnel in order to create a barrier to entry to Defendants and other prospective competitors in the relevant market.

45.     Upon information and belief, this false and misleading information includes, but is not limited to, false and misleading information concerning (i) the financial viability and credit worthiness of Defendants; (ii) the existence of a new hospital pharmacy automation system of McKesson's that never actually existed; (iii) the capacity and throughput of McKesson's hospital pharmacy automation system; (iv) the capacity and throughput of Defendants' hospital pharmacy automation system; (v) the reliability of Defendants' products, (vi) the mechanical complexity of Defendants' hospital pharmacy automation system; (vii) the cost of Defendants' hospital pharmacy automation system and associated equipment; and (viii) maintenance requirements of Defendants' hospital pharmacy automation system.

46.     Upon information and belief, McKesson also entered into valuable monopolistic sole-source agreements to further enhance its monopoly position in the hospital pharmacy automation market.  Upon information and belief, these sole-source agreements contractually require more than 200 customers to purchase certain equipment from McKesson, and prohibit these customers from purchasing products from McKesson's competitors, including Defendants.

47.     The sole-source agreements entered into by McKesson constitute an unreasonable restraint of trade, and the hundreds of hospitals contractually prohibited from purchasing from McKesson's competitors constitute a substantial share of the United States national market for hospital pharmacy automation systems.

48.     Upon information and belief, McKesson has also purposely refused to enable its products to interface with Defendants' hospital pharmacy automation systems, despite customers' repeated requests for such capability and despite McKesson's almost complete monopoly in the hospital pharmacy automation market.

### Anti-Competitive And Other Injury

49.     McKesson's marketing and sales campaign appears to have been designed and implemented for the sole purpose of keeping competitors, such as Defendants, out of the market for hospital pharmacy automation systems.

50.     This campaign constitutes a significant barrier to entry for all entrants into this market, including Defendants.

51.     McKesson's illegal activities have reduced – if not eliminated – competing products which have resulted in artificially higher prices due to the non-existence of competition.

52.     McKesson's activities have crippled Defendants' ability to compete meaningfully with McKesson in the United States. Indeed, upon information and belief, McKesson's anti-competitive activities have led to the loss of at least one United States sale of Defendants' hospital pharmacy automation system.

### FIRST COUNTERCLAIM

(Declaratory Judgment of Invalidity)

53.     35. Translogic repeats and realleges the responses and allegations in paragraphs 1 through 33 53 above as if fully set forth at length herein.

54.     36. All of the claims of the '110 and '267 Patents are invalid for failure to meet one or more of the conditions of patentability of inventions set forth in 35 U.S.C. §§101, 102, 103 and/or 112.

55. 37. By reason of the foregoing, Translogic is entitled to an entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the '110 and '267 Patents invalid.

## SECOND COUNTERCLAIM

(Declaratory Judgment of Non-Infringement)

56. 38. Translogic repeats and realleges the responses and allegations in paragraphs 1 through 36 56 above as if fully set forth at length herein.

57. 39. Translogic has not infringed nor is infringing any valid or enforceable claim of the '110 or '267 Patents.

58. 40. By reason of the foregoing, Translogic is entitled to an entry of judgment pursuant to 28 U.S.C. §§2201 and 2202 declaring the '110 and '267 Patents not infringed.

## THIRD COUNTERCLAIM

(Unfair Competition under Delaware Law)

59. 41. Translogic repeats and realleges the responses and allegations in paragraphs 1 through 39 59 above as if fully set forth at length herein.

60. 42. On information and belief, McKesson has unlawfully and oppressively brought this action against Translogic, alleging infringement of the '110 and '267 Patents by Translogic with the knowledge and belief that these Patents are invalid, unenforceable and/or not infringed by Translogic's products, and with the intent to injure Translogic.

61. 43. The aforesaid actions of McKesson offend established public policy and are oppressive, unscrupulous and substantially injurious to consumers.

62. 44. As a direct and proximate result of McKesson's aforesaid actions, Translogic has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law.

63.   45. These acts constitute unfair competition by McKesson against Translogic.

64.   46. Translogic has have been substantially damaged, in an amount to be determined, by McKesson's illegal and/or improper activities.

**FOURTH COUNTERCLAIM**
(~~McKesson's Violation of the Antitrust Laws~~)
(Sherman Act § 2, 15 U.S.C. § 2 – Sham Litigation)

65.    ~~47.~~ Translogic repeats and realleges the allegations in paragraphs 1 through ~~45~~65 above as if fully set forth at length herein.

66.    ~~48.~~ This is a claim for willful, intentional and improper maintenance of a monopoly in a relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

67.    ~~49.~~ The relevant market for Translogic's antitrust claim is the market for ~~medication and supply management systems for automated drug distribution in hospitals in the United States ("automated drug systems")~~hospital pharmacy automation systems.

68.    ~~50.~~ The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

69.    ~~51. On~~Upon information and belief, McKesson ~~has a~~possesses monopoly power in the relevant product and geographic markets ~~for these systems~~, as shown by their market share in excess of 80%.

70.    ~~52.~~ Through the willful and intentional sham assertion of the '110 and '267 Patents, McKesson has intentionally, improperly and illegally sought to maintain that monopoly by barring entry of competitors to the ~~automated drug~~hospital pharmacy automation systems market, a natural consequence of its actions.

71.    ~~53.~~ Sham assertion in litigation is tested first by an objective standard, applied at the time McKesson filed its Amended Complaint, as to whether the claim is objectively baseless. If the claim is objectively baseless, the second test focuses on whether the baseless claims conceal an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process as an anti-competitive weapon.

72.    54. A first objectively baseless aspect to McKesson's sham patent infringement suit is that the patents as construed and asserted by McKesson against Translogic are clearly invalid because they directly read on the prior art. A reasonable litigant would not realistically expect success based on this suit.

73.    55. A second objectively baseless aspect to McKesson's sham patent infringement suit is that because of the literal words of the asserted claims and McKesson's own admissions to the Patent Office during prosecution of the '110 and '267 Patents, the Translogic products accused of infringing cannot objectively infringe the claims. An objective litigant could not conclude that this assertion is reasonably calculated to elicit a favorable anticompetitive outcome without results.

74.    56. These sham assertions by McKesson constitute intentional, willful and improper efforts by McKesson to maintain its monopoly power in the automated drug systems market, and not as a consequence of a superior product embodying the patents-in-suit. McKesson, without regard to whether its lawsuit has merit, raises these sham assertions with a specific and improper intent to bar Translogic from the automated drug systems market. These baseless assertions attempt to conceal efforts by McKesson to interfere directly with the business relationships of competitors such as Translogic using the judicial process as an anticompetitive weapon.

75.    57. McKesson's sham assertions of damages on patents that are invalid and not infringed have a chilling effect on competitors such as Translogic as a new entrant to the automated drughospital pharmacy automation systems market. Because of the small volume of sales by Translogic of products accused of infringement, the cost of defending against McKesson's sham assertions represent a very real barrier to Translogic's continued and future

entry into the ~~automated drug~~hospital pharmacy automation systems market.  Upon information and belief, McKesson's actions have lessened competition in the marketplace and have caused prices for these automated drug distribution systems in the United States to remain artificially high.

76.    ~~58.~~ Translogic has been proximately harmed by McKesson's sham assertions in that it has been forced to incur attorneys fees and costs to defend against McKesson's infringement claims.

77.    ~~59.~~ The market in the United States for automated drug systems has suffered ~~antitrust~~anti-trust injury as a result of McKesson's actions.

78.    ~~60.~~ Translogic may be harmed in the future by the chilling effect of McKesson's sham assertions on Translogic's bidding for new business in the ~~automated drug~~hospital pharmacy automation systems market in competition with McKesson.

### FIFTH COUNTERCLAIM
#### (Sherman Act § 2, 15 U.S.C. § 2 – Illegal Monopoly in Hospital Pharmacy Automation Market)

79.    Translogic repeats and realleges each and every allegation set forth in paragraphs 1 through 79 above as if fully set forth at length herein.

80.    The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

81.    The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

82.    Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

83.   McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, entering into sole-source agreements that contractually prohibit hundreds of customers from purchasing products from competitors, and refusing to permit compatibility between McKesson's products and those of Defendants.

84.   The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

85.   The foregoing acts and practices have also directly and proximately caused Translogic harm in the marketplace. Translogic's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

86.   As a result of the foregoing acts, Translogic has been injured in an amount not less than $10,000,000.00;

87. Unless these activities are enjoined, Translogic will continue to suffer injury for which it has no adequate remedy at law.

**SIXTH COUNTERCLAIM**
**(Sherman Act § 1, 15 U.S.C. § 1 – Illegal Anti-Competitive Contract in**
**Hospital Pharmacy Automation Market)**

88. Translogic repeats and realleges each and every allegation set forth in paragraphs 1 through 88 above as if fully set forth at length herein.

89. The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

90. The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

91. Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

92. McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

93. McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants. These hospitals constitute a substantial share of the United States national market

for hospital pharmacy automation systems. The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

94.  The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

95.  The foregoing acts and practices have also directly and proximately caused Translogic harm in the marketplace. Translogic's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

96.  As a result of the foregoing acts, Translogic has been injured in an amount not less than $10,000,000.00;

97.  Unless these activities are enjoined, Translogic will continue to suffer injury for which it has no adequate remedy at law.

**SEVENTH COUNTERCLAIM**
(Clayton Act § 3, 15 U.S.C. § 14 – Illegal Anti-Competitive Contract in Hospital Pharmacy Automation Market)

98.  Translogic repeats and realleges each and every allegation set forth in paragraphs 1 through 98 above as if fully set forth at length herein.

99.  The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

100.  The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

101.  Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

102.  McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

103.  McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants. These hospitals constitute a substantial share of the United States national market for hospital pharmacy automation systems. The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

104.  The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been,

McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

105.    The foregoing acts and practices have also directly and proximately caused Translogic harm in the marketplace. Translogic's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

106.    As a result of the foregoing acts, Translogic has been injured in an amount not less than $10,000,000.00;

107.    Unless these activities are enjoined, Translogic will continue to suffer injury for which it has no adequate remedy at law.

### EIGHTH COUNTERCLAIM
(6 Del. C. § 2103 – Illegal Anti-Competitive Contract in
Hospital Pharmacy Automation Market)

108.    Translogic repeats and realleges each and every allegation set forth in paragraphs 1 through 108 above as if fully set forth at length herein.

109.    The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

110.    The geographic market for these systems is the United States because, *inter alia,* such systems made by McKesson are used or sold throughout the United States.

111.    Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

112.    McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is

not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

113.    McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants.  These hospitals constitute a substantial share of the United States national market for hospital pharmacy automation systems.  The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

114.    The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market.  Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants.  These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market.  If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

115.    The foregoing acts and practices have also directly and proximately caused Translogic harm in the marketplace.  Translogic's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

116.    As a result of the foregoing acts, Translogic has been injured in an amount not less than $10,000,000.00;

117.   Unless these activities are enjoined, Translogic will continue to suffer injury for which it has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Translogic prays that a judgment be entered:

A.   Dismissing the Amended Complaint herein with prejudice and entering judgment in favor of Translogic thereon;

B.   Declaring that Translogic has not and does not infringe any claims of the '110 and '267 Patents;

C.   Declaring that each and every claim of the '110 and '267 Patents areis invalid;

D.   Declaring that McKesson's claims against Translogic are barred, in whole or in part, under one or more of the equitable doctrines of laches, waiver, estoppel and unclean hands;

E.   Declaring that McKesson's claims against Translogic are barred, in whole or in part, by reason of patent misuse;

F.   Declaring that the '110 and '267 Patents are unenforceable against Translogic because of antitrust misuse;

G.   F. Permanently enjoining and restraining McKesson, its officers, employees, agents and all persons in active concert or participation with McKesson from asserting that Translogic's products and/or business activities constitute an infringement of the '110 and '267 Patents, and from any and all acts giving rise to Translogic's counterclaims;

H.   Adjudging this to be an exceptional case and awarding Translogic its reasonable attorney's fees pursuant to 35 U.S.C. § 285 and costs of suit;

I.   G. Declaring that McKesson is in violation of the antitrust laws;

H. ~~Declaring that the '110 and '267 Patents are unenforceable against Translogic because of antitrust misuse;~~

I. ~~Awarding Translogic treble damages for the harm proximately caused by McKesson's sham assertions;~~

J. <u>Permanently enjoining and restraining McKesson, including their officers, agents, servants, employees and attorneys and all those in active concert or participation with McKesson, from engaging in any ant-trust, anti-competitive and/or other conduct that restrains competition in the United States market for hospital pharmacy automation systems;</u>

K. <u>Awarding Translogic attorneys' fees, enhanced damages and costs as a result of McKesson's anti-trust violations;</u>

L. <u>Awarding Translogic compensatory damages based on McKesson's anti-trust violations in an amount not less than $10,000,000.00 and no less than treble damages under 15 U.S.C. § 15, the exact amount to be determined at trial;</u>

M. <s>J.</s> Awarding Translogic damages incurred as a result of McKesson's unfair competition;

N. <s>K.</s> Awarding Translogic punitive <u>and enhanced</u> damages as a result of McKesson's conduct;

~~L. Adjudging this to be an exceptional case and awarding Translogic its reasonable attorney's fees pursuant to 35 U.S.C. § 285 and costs of suit; and~~

O. <s>M.</s> Awarding Translogic such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com
*Attorneys for Defendant*
~~*Translogic Corporation*~~*Swisslog Italia S.P.A.*

OF COUNSEL:

Alfred R. Fabricant
Lawrence C. Drucker
Richard LaCava
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY  10036
(212) ~~277.6500~~277-6500

~~July 5, 2006~~
October 1, 2007
527464

### ~~CERTIFICATE OF SERVICE~~

~~I, the undersigned, hereby certify that on July 5, 2006 I electronically filed the foregoing~~

~~with the Clerk of the Court using CM/ECF which will send notification of such filing to the~~

~~following:~~

~~Neal C. Belgam, Esquire~~
~~Dale R. Dubé, Esquire~~
~~Blank Rome LLP~~
~~Chase Manhattan Centre~~
~~1201 Market Street, Suite 800~~
~~Wilmington, DE  19801~~

and I, the undersigned, also hereby certify that on July 5, 2006 I sent by Federal Express, the above-stated document to:

Blair M. Jacobs, Esquire
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, DC  20004


/s/ Julia Heaney
Julia Heaney (#3052)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
jheaney@mnat.com

1250619

EXHIBIT D

~~IN THE~~ UNITED STATES DISTRICT COURT
~~FOR THE~~ DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ~~McKESSON AUTOMATION, INC.,~~ | ) | |
| | ) | |
| ~~Plaintiff,~~ | ) | ~~C.A. No. 06-028 (KAJ)~~ |
| | ) | |
| ~~v.~~ | ) | |
| | ) | |
| ~~SWISSLOG ITALIA S.P.A., and~~ | ) | |
| ~~TRANSLOGIC CORPORATION,~~ | ) | |
| | ) | |
| ~~Defendants.~~ | ) | |

McKESSON AUTOMATION, INC.,

      Plaintiff,           C. A. No. 06-028 (KAJ)

      v.

SWISSLOG ITALIA S.P.A., and
TRANSLOGIC CORPORATION,

      Defendants.

**DEFENDANT SWISSLOG ITALIA S.P.A.'S FIRST AMENDED ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS**

Defendant Swisslog Italia S.p.A. ("Swisslog Italia"), by and through its undersigned counsel, as and for its Answer to Plaintiff's First Amended Complaint (the "Amended Complaint") and for its Counterclaims, admits~~,~~ denies and alleges as follows:

1.      Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph ~~1, and therefore denies them, except admits on information and belief, that plaintiff is a Pennsylvania corporation with a principal place of business in Cranberry Township, PA~~ 1 of the Amended Complaint.

2.      Denies allegations set forth in paragraph 2 of the Amended Complaint except admits that Swisslog Italia is an entity organized under the laws of Italy, with its principal place of business at Via Taruffi 30/38, 41053 Maranello MO, Italy.

3.      Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 3 of the Amended Complaint.

Denies the allegations set forth in paragraph 4 of the Amended Complaint, except ~~that Swisslog Italia is without~~denies knowledge or information sufficient to form a belief as to the truth ~~5.~~ or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic Corporation ("Translogic").

4.      ~~6.~~Admits that the Amended Complaint refers to Swisslog Italia and Translogic collectively as "Swisslog."

5.      ~~7.~~Admits the allegations set forth in paragraph 6 of the Amended Complaint to the extent that plaintiff alleges that this action purports to be one for patent infringement and that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

6.      ~~8.~~Admits the allegations set forth in paragraph 7 of the Amended Complaint to the extent that plaintiff alleges that venue is proper in this Court over Swisslog Italia under 28 U.S.C. §§ 1391(d) and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to venue being proper with respect to defendant Translogic.

7.      ~~9.~~Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 8 of the Amended Complaint.

8.    ~~10.~~    Denies the allegations set forth in paragraph 9 of the Amended Complaint, except admits that Exhibit 1 to the Amended Complaint purports to be a copy of U.S. Patent No. 5,468,110 (the " '110 Patent") and refers to that patent for a true and complete statement of its contents.

9.    ~~11.~~    Denies the allegations set forth in paragraph 10 of the Amended Complaint, except admits that Exhibit 2 to the Amended Complaint purports to be a copy of U.S. Patent No. 5,593,267 (the " '267 Patent") and refers to that patent for a true and complete statement of its contents.

10.    ~~12.~~    Denies the allegations contained in paragraph 11 of the Amended Complaint, except ~~that Swisslog Italia is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

11.    ~~13.~~    Swisslog Italia repeats and realleges its previous responses to paragraphs 1 through 11 of the Amended Complaint as if fully set forth at length herein.

12.    ~~14.~~    Denies the allegations set forth in paragraph 13 of the Amended Complaint, except ~~that Swisslog Italia is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

13.    ~~15.~~    Denies the allegations contained in paragraph 14 of the Amended Complaint, except ~~that Swisslog Italia is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to defendant Translogic.

14.    ~~16.~~ ——Denies the allegations contained in paragraph 15 of the Amended Complaint, except ~~that Swisslog Italia is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

15.    ~~17.~~ ——Denies the allegations contained in paragraph 16 of the Amended Complaint, except ~~that Swisslog Italia is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

16.    ~~18.~~ ——Swisslog Italia repeats and realleges its previous responses to paragraphs 1 through 16 of the Amended Complaint as if fully set forth at length herein.

~~17.~~    ~~19.~~ ——————————————————————————————————

Denies the allegations contained in paragraph 18 of the Amended Complaint, except ~~that~~ ~~Swisslog Italia is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

18. ~~20.~~——Denies the allegations contained in paragraph 19 of the Amended Complaint, except ~~that Swisslog Italia is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to defendant Translogic.

19. ~~21.~~——Denies the allegations contained in paragraph 20 of the Amended Complaint, except ~~that Swisslog Italia is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

20. ~~22.~~——Denies the allegations contained in paragraph 21 of the Amended Complaint, except ~~that Swisslog Italia is without~~denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Translogic.

### FIRST AFFIRMATIVE DEFENSE

21. ~~23.~~——Swisslog Italia has not infringed, induced infringement or contributed to the infringement of any valid or enforceable claim of the '110 or '267 Patents

### SECOND AFFIRMATIVE DEFENSE

22. ~~24.~~——McKesson's claims are barred, in whole or in part, under one or more of the equitable doctrines of laches, waiver, estoppel and unclean hands.

### THIRD AFFIRMATIVE DEFENSE

23.     ~~25.~~——The '110 and '267 Patents are invalid, *inter alia*, in that they fail to meet one or more of the conditions for patentability set forth in 35 U.S.C. §102.

### FOURTH AFFIRMATIVE DEFENSE

24.     ~~26.~~——The '110 and '267 Patents are invalid, *inter alia*, pursuant to 35 U.S.C. §103 in that the inventions disclosed would have been obvious to a person of ordinary skill in the art at the time the inventions were made.

### FIFTH AFFIRMATIVE DEFENSE

25.     ~~27.~~——The '110 and '267 Patents are invalid for failure to comply with the requirements of 35 U.S.C. §112.

### SIXTH AFFIRMATIVE DEFENSE

26.     ~~28.~~——McKesson's claims are barred, in whole or in part, by reason of patent misuse.

### SEVENTH AFFIRMATIVE DEFENSE

27.     ~~29.~~——McKesson's claims are barred, in whole or in part, pursuant to 35 U.S.C. §287.

### EIGHTH AFFIRMATIVE DEFENSE

28.     ~~30.~~——McKesson's claims are barred, in whole or in part, under the doctrine of prosecution history estoppel because proceedings in the Patent and Trademark Office during the prosecution of the '110 and '267 Patents prevent a claim construction for those patents that could result in a finding of infringement.

## NINTH AFFIRMATIVE DEFENSE

29.    McKesson lacks standing to sue because it is not an owner, assignee or licensee of the patents-in-suit.

## OTHER AFFIRMATIVE DEFENSES

30.    Swisslog Italia reserves the right to assert all additional affirmative defenses under Fed. R. Civ. P. 8(c), the Patent Laws of the United States and any other legal or equitable defenses that may now exist or in the future be available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS

### JURISDICTION AND VENUE

31.    Jurisdiction and venue over Swisslog Italia's counterclaims are proper pursuant to 28 U.S.C. §§ 1331, 1338, 1391, 2201 and 2202.

### THE PARTIES

32.    Counterclaim Plaintiff Swisslog Italia S.p.A. ("Swisslog Italia") is an entity organized under the laws of Italy, with its principal place of business at Via Taruffi 30/38, 41053 Maranello MO, Italy.

33.    Upon information and belief, Counterclaim Defendant McKesson Automation, Inc. ("McKesson"), is a Pennsylvania Corporation, with a principal place of business at 500 Cranberry Woods Drive, Cranberry Township, PA 16066.

### FACTS COMMON TO ALL COUNTERCLAIMS

#### Introduction

34.    McKesson manufactures centralized robotic systems for automating the dispensing of medications in and from hospital pharmacies ("hospital pharmacy automation systems"). McKesson markets and distributes its system to hospitals throughout the United States from its main facilities in Cranberry Township, Pennsylvania.

35.    Swisslog Italia manufactures a competing hospital pharmacy automation system. In 2002, Swisslog Italia, through its United States distributor – Translogic (collectively "Defendants") – began selling and offering for sale in the United States Defendants' hospital pharmacy automation system.

36.    On January 13, 2006, McKesson filed a complaint against Defendants alleging that sales of Defendants' system in the United States infringed the '110 patent and the '267 patent. Defendants filed their Answers and Counterclaims on March 15, 2006. A First Amended Complaint was filed on July 3, 2006 to name proper parties, and Defendants answered this complaint on July 5, 2006.

37.    Almost immediately after Defendants began selling their hospital pharmacy automation system in the United States, McKesson implemented a systematic marketing and sales campaign designed to prevent Defendants from gaining a foothold in the United States market. This campaign was pervasive and consisted mostly of conduct that was (and continues to be) in violation of Delaware and United States anti-trust and unfair competition laws.

38.    McKesson's illegal and anti-competitive activities have caused (and continue to cause) Defendants, as well as the market for hospital pharmacy automation systems, great economic harm. These activities have not only crippled Defendants' ability to compete meaningfully with McKesson in the United States, but have also created artificial barriers to entry that have reduced competition and, in so doing, threaten to keep prices for hospital pharmacy automation systems artificially high.

**Relevant Market and McKesson's Economic Power**

39.    McKesson and Defendants manufacture centralized robotic systems for automating the dispensing of medications in and from hospital pharmacies. The relevant market

is the market for centralized hospital pharmacy automation systems ("hospital pharmacy automation systems"), which automate the dispensing of medications from a hospital pharmacy.

40.     Hospital pharmacy automation systems are sold by McKesson and Defendants to hospital pharmacies nationwide.  The relevant geographic market for a hospital pharmacy automation systems is the United States national market.

41.     McKesson holds a dominant position in the national market for hospital pharmacy automation systems.  Upon information and belief, in excess of 80% of hospital pharmacy automation systems sold or leased in the United States are sold or leased by McKesson or its dealers and suppliers.

**Facts Giving Rise To Swisslog Italia's Claims**

42.     McKesson has engaged in a systematic campaign to maintain its monopoly in the U.S. national market for hospital pharmacy automation systems.

43.     McKesson has engaged in predatory pricing activities by selling and offering products to customers at reduced prices in order to prevent the sale of Defendants' products to U.S. customers.  Upon information and belief, on at least one occasion, McKesson's system was offered to a hospital customer for free in the form of a "$0 lease for seven years" in an attempt to block an imminent sale of Defendants' system to that hospital.

44.     Upon information and belief, McKesson provided its sales force with false and misleading information about the capabilities of both its own and Defendants' hospital pharmacy automation systems.  This false and misleading information was then provided to customers by McKesson's sales personnel in order to create a barrier to entry to Defendants and other prospective competitors in the relevant market.

45.    Upon information and belief, this false and misleading information includes, but is not limited to, false and misleading information concerning (i) the financial viability and credit worthiness of Defendants; (ii) the existence of a new hospital pharmacy automation system of McKesson's that never actually existed; (iii) the capacity and throughput of McKesson's hospital pharmacy automation system; (iv) the capacity and throughput of Defendants' hospital pharmacy automation system; (v) the reliability of Defendants' products, (vi) the mechanical complexity of Defendants' hospital pharmacy automation system; (vii) the cost of Defendants' hospital pharmacy automation system and associated equipment; and (viii) maintenance requirements of Defendants' hospital pharmacy automation system.

46.    Upon information and belief, McKesson also entered into valuable monopolistic sole-source agreements to further enhance its monopoly position in the hospital pharmacy automation market.    Upon information and belief, these sole-source agreements contractually require more than 200 customers to purchase certain equipment from McKesson, and prohibit these customers from purchasing products from McKesson's competitors, including Defendants.

47.    The sole-source agreements entered into by McKesson constitute an unreasonable restraint of trade, and the hundreds of hospitals contractually prohibited from purchasing from McKesson's competitors constitute a substantial share of the United States national market for hospital pharmacy automation systems.

48.    Upon information and belief, McKesson has also purposely refused to enable its products to interface with Defendants' hospital pharmacy automation systems, despite customers' repeated requests for such capability and despite McKesson's almost complete monopoly in the hospital pharmacy automation market.

**Anti-Competitive And Other Injury**

11

49.    McKesson's marketing and sales campaign appears to have been designed and implemented for the sole purpose of keeping competitors, such as Defendants, out of the market for hospital pharmacy automation systems.

50.    This campaign constitutes a significant barrier to entry for all entrants into this market, including Defendants.

51.    McKesson's illegal activities have reduced – if not eliminated – competing products which have resulted in artificially higher prices due to the non-existence of competition.

52.    McKesson's activities have crippled Defendants' ability to compete meaningfully with McKesson in the United States. Indeed, upon information and belief, McKesson's anti-competitive activities have led to the loss of at least one United States sale of Defendants' hospital pharmacy automation system.

## FIRST COUNTERCLAIM
### (Declaratory Judgment of Invalidity)

53.    ~~35.~~    Swisslog Italia repeats and realleges the responses and allegations in paragraphs 1 through ~~33~~53 above as if fully set forth at length herein.

54.    ~~36.~~    All of the claims of the '110 and '267 Patents are invalid for failure to meet one or more of the conditions of patentability of inventions set forth in 35 U.S.C. §§101, 102, 103 and/or 112.

55.    ~~37.~~    By reason of the foregoing, Swisslog Italia is entitled to an entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the '110 and '267 Patents invalid.

## SECOND COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement)

56. ~~38.~~ Swisslog Italia repeats and realleges the responses and allegations in paragraphs 1 through ~~36~~56 above as if fully set forth at length herein.

57. ~~39.~~ Swisslog Italia has not infringed nor is infringing any valid or enforceable claim of the '110 or '267 Patents.

58. ~~40.~~ By reason of the foregoing, Swisslog Italia is entitled to an entry of judgment pursuant to 28 U.S.C. §§2201 and 2202 declaring the '110 and '267 Patents not infringed.

### THIRD COUNTERCLAIM
(Unfair Competition under Delaware Law)

59. Swisslog Italia repeats and realleges the responses and allegations in paragraphs 1 through 59 above as if fully set forth at length herein.

60. On information and belief, McKesson has unlawfully and oppressively brought this action against Swisslog Italia, alleging infringement of the '110 and '267 Patents by Swisslog Italia with the knowledge and belief that these Patents are invalid, unenforceable and/or not infringed by Swisslog Italia's products, and with the intent to injure Swisslog Italia.

61. The aforesaid actions of McKesson offend established public policy and are oppressive, unscrupulous and substantially injurious to consumers.

62. As a direct and proximate result of McKesson's aforesaid actions, Swisslog Italia has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law.

63. These acts constitute unfair competition by McKesson against Swisslog Italia.

64. Swisslog Italia has have been substantially damaged, in an amount to be determined, by McKesson's illegal and/or improper activities.

### FOURTH COUNTERCLAIM
(Sherman Act § 2, 15 U.S.C. § 2 – Sham Litigation)

65.    Swisslog Italia repeats and realleges the allegations in paragraphs 1 through 65 above as if fully set forth at length herein.

66.    This is a claim for willful, intentional and improper maintenance of a monopoly in a relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

67.    The relevant market for Swisslog Italia's antitrust claim is the market for hospital pharmacy automation systems.

68.    The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

69.    Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

70.    Through the willful and intentional sham assertion of the '110 and '267 Patents, McKesson has intentionally, improperly and illegally sought to maintain that monopoly by barring entry of competitors to the hospital pharmacy automation systems market, a natural consequence of its actions.

71.    Sham assertion in litigation is tested first by an objective standard, applied at the time McKesson filed its Amended Complaint, as to whether the claim is objectively baseless. If the claim is objectively baseless, the second test focuses on whether the baseless claims conceal an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process as an anti-competitive weapon.

72.    A first objectively baseless aspect to McKesson's sham patent infringement suit is that the patents as construed and asserted by McKesson against Swisslog Italia are clearly invalid

because they directly read on the prior art. A reasonable litigant would not realistically expect success based on this suit.

73.    A second objectively baseless aspect to McKesson's sham patent infringement suit is that because of the literal words of the asserted claims and McKesson's own admissions to the Patent Office during prosecution of the '110 and '267 Patents, the Swisslog Italia products accused of infringing cannot objectively infringe the claims. An objective litigant could not conclude that this assertion is reasonably calculated to elicit a favorable anticompetitive outcome without results.

74.    These sham assertions by McKesson constitute intentional, willful and improper efforts by McKesson to maintain its monopoly power in the automated drug systems market, and not as a consequence of a superior product embodying the patents-in-suit. McKesson, without regard to whether its lawsuit has merit, raises these sham assertions with a specific and improper intent to bar Swisslog Italia from the automated drug systems market. These baseless assertions attempt to conceal efforts by McKesson to interfere directly with the business relationships of competitors such as Swisslog Italia using the judicial process as an anticompetitive weapon.

75.    McKesson's sham assertions of damages on patents that are invalid and not infringed have a chilling effect on competitors such as Swisslog Italia as a new entrant to the hospital pharmacy automation systems market. Because of the small volume of sales by Swisslog Italia of products accused of infringement, the cost of defending against McKesson's sham assertions represent a very real barrier to Swisslog Italia's continued and future entry into the hospital pharmacy automation systems market. Upon information and belief, McKesson's actions have lessened competition in the marketplace and have caused prices for these automated drug distribution systems in the United States to remain artificially high.

76.   Swisslog Italia has been proximately harmed by McKesson's sham assertions in that it has been forced to incur attorneys fees and costs to defend against McKesson's infringement claims.

77.   The market in the United States for automated drug systems has suffered anti-trust injury as a result of McKesson's actions.

78.   Swisslog Italia may be harmed in the future by the chilling effect of McKesson's sham assertions on Swisslog Italia's bidding for new business in the hospital pharmacy automation systems market in competition with McKesson.

**FIFTH COUNTERCLAIM**
(Sherman Act § 2, 15 U.S.C. § 2 – Illegal Monopoly in
Hospital Pharmacy Automation Market)

79.   Swisslog Italia repeats and realleges each and every allegation set forth in paragraphs 1 through 79 above as if fully set forth at length herein.

80.   The relevant market for Swisslog Italia's antitrust claim is the market for hospital pharmacy automation systems.

81.   The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

82.   Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

83.   McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about

the capabilities and weaknesses of McKesson's products and those of Defendants, entering into sole-source agreements that contractually prohibit hundreds of customers from purchasing products from competitors, and refusing to permit compatibility between McKesson's products and those of Defendants.

84.    The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

85.    The foregoing acts and practices have also directly and proximately caused Swisslog Italia harm in the marketplace. Swisslog Italia's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

86.    As a result of the foregoing acts, Swisslog Italia has been injured in an amount not less than $10,000,000.00;

87.    Unless these activities are enjoined, Swisslog Italia will continue to suffer injury for which it has no adequate remedy at law.

## SIXTH COUNTERCLAIM
### (Sherman Act § 1, 15 U.S.C. § 1 – Illegal Anti-Competitive Contract in Hospital Pharmacy Automation Market)

88.    Swisslog Italia repeats and realleges each and every allegation set forth in paragraphs 1 through 88 above as if fully set forth at length herein.

89.     The relevant market for Swisslog Italia's antitrust claim is the market for hospital pharmacy automation systems.

90.     The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

91.     Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

92.     McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

93.     McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants. These hospitals constitute a substantial share of the United States national market for hospital pharmacy automation systems. The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

94.     The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated –

competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

95.     The foregoing acts and practices have also directly and proximately caused Swisslog Italia harm in the marketplace. Swisslog Italia's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

96.     As a result of the foregoing acts, Swisslog Italia has been injured in an amount not less than $10,000,000.00;

97.     Unless these activities are enjoined, Swisslog Italia will continue to suffer injury for which it has no adequate remedy at law.

**SEVENTH COUNTERCLAIM**
(Clayton Act § 3, 15 U.S.C. § 14 – Illegal Anti-Competitive Contract in
Hospital Pharmacy Automation Market)

98.     Swisslog Italia repeats and realleges each and every allegation set forth in paragraphs 1 through 98 above as if fully set forth at length herein.

99.     The relevant market for Swisslog Italia's antitrust claim is the market for hospital pharmacy automation systems.

100.    The geographic market for these systems is the United States because, *inter alia,* such systems made by McKesson are used or sold throughout the United States.

101.    Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

102.    McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other

competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

103.    McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants. These hospitals constitute a substantial share of the United States national market for hospital pharmacy automation systems. The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

104.    The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

105.    The foregoing acts and practices have also directly and proximately caused Swisslog Italia harm in the marketplace. Swisslog Italia's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

106.   As a result of the foregoing acts, Swisslog Italia has been injured in an amount not less than $10,000,000.00;

107.   Unless these activities are enjoined, Swisslog Italia will continue to suffer injury for which it has no adequate remedy at law.

**EIGHTH COUNTERCLAIM**
(6 Del. C. § 2103 – Illegal Anti-Competitive Contract in
Hospital Pharmacy Automation Market)

108.   Swisslog Italia repeats and realleges each and every allegation set forth in paragraphs 1 through 108 above as if fully set forth at length herein.

109.   The relevant market for Swisslog Italia's antitrust claim is the market for hospital pharmacy automation systems.

110.   The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

111.   Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

112.   McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

113.   McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential

customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants. These hospitals constitute a substantial share of the United States national market for hospital pharmacy automation systems. The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

114.    The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

115.    The foregoing acts and practices have also directly and proximately caused Swisslog Italia harm in the marketplace. Swisslog Italia's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

116.    As a result of the foregoing acts, Swisslog Italia has been injured in an amount not less than $10,000,000.00;

117.    Unless these activities are enjoined, Swisslog Italia will continue to suffer injury for which it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Swisslog Italia prays that a judgment be entered:

A.  Dismissing the Amended Complaint herein with prejudice and entering judgment in favor of Swisslog Italia thereon;

A.  B.-Declaring that Swisslog Italia has not and does not infringe any claims of the '110 and '267 Patents;

B.  C.-Declaring that each and every claim of the '110 and '267 Patents areis invalid;

C.  D.-Declaring that McKesson's claims against Swisslog Italia are barred, in whole or in part, under one or more of the equitable doctrines of laches, waiver, estoppel and unclean hands;

D.  E.-Declaring that McKesson's claims against Swisslog Italia are barred, in whole or in part, by reason of patent misuse;

E.  Declaring that the '110 and '267 Patents are unenforceable against Swisslog Italia because of antitrust misuse;

F.  F.-Permanently enjoining and restraining McKesson, its officers, employees, agents and all persons in active concert or participation with McKesson from asserting that Swisslog Italia's products and/or business activities constitute an infringement of the '110 and '267 Patents, and from any and all acts giving rise to Swisslog Italia's counterclaims;

G.  G.-Adjudging this to be an exceptional case and awarding Swisslog Italia its reasonable attorney's fees pursuant to 35 U.S.C. § 285 and costs of suit; and

H.  Declaring that McKesson is in violation of the antitrust laws;

I.    Permanently enjoining and restraining McKesson, including their officers, agents, servants, employees and attorneys and all those in active concert or participation with McKesson, from engaging in any ant-trust, anti-competitive and/or other conduct that restrains competition in the United States market for hospital pharmacy automation systems;

J.    Awarding Swisslog Italia attorneys' fees, enhanced damages and costs as a result of McKesson's anti-trust violations;

K.    Awarding Swisslog Italia compensatory damages based on McKesson's anti-trust violations in an amount not less than $10,000,000.00 and no less than treble damages under 15 U.S.C. § 15, the exact amount to be determined at trial;

L.    Awarding Swisslog Italia damages incurred as a result of McKesson's unfair competition;

M.    Awarding Swisslog Italia punitive and enhanced damages as a result of McKesson's conduct;

N.    H. Awarding Swisslog Italia such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*

_____

Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Defendant*
  *Swisslog Italia S.P.A.*


OF COUNSEL:

Alfred R. Fabricant
Lawrence C. Drucker
Richard LaCava
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 277-6500

~~July 5, 2006~~
October 1, 2007
~~527463~~

### ~~CERTIFICATE OF SERVICE~~ 1250616

~~I, the undersigned, hereby certify that on July 5, 2006 I electronically filed the foregoing~~

~~with the Clerk of the Court using CM/ECF which will send notification of such filing to the~~

~~following:~~

~~Neal C. Belgam, Esquire~~
~~Dale R. Dubé, Esquire~~
~~Blank Rome LLP~~
~~Chase Manhattan Centre~~
~~1201 Market Street, Suite 800~~
~~Wilmington, DE 19801~~

and I, the undersigned, also hereby certify that on July 5, 2006 I sent by Federal Express, the

above stated document to:

> Blair M. Jacobs, Esquire
> Sutherland Asbill & Brennan LLP
> 1275 Pennsylvania Avenue, NW
> Washington, DC 20004


> /s/ Julia Heaney
> Julia Heaney (#3052)
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> jheaney@mnat.com

EXHIBIT E

# CONFIDENTIAL EXHIBIT

EXHIBIT F

CONFIDENTIAL EXHIBIT

EXHIBIT G

CONFIDENTIAL EXHIBIT

EXHIBIT H

CONFIDENTIAL EXHIBIT

EXHIBIT I

CONFIDENTIAL EXHIBIT

EXHIBIT J

CONFIDENTIAL EXHIBIT

EXHIBIT K

CONFIDENTIAL EXHIBIT

EXHIBIT L

# CONFIDENTIAL EXHIBIT

EXHIBIT M

CONFIDENTIAL EXHIBIT

EXHIBIT N

**DICKSTEIN**SHAPIRO LLP

1177 Avenue of the Americas | New York, NY 10036-2714
TEL (212) 277-6500 | FAX (212) 277-6501 | dicksteinshapiro.com

September 5, 2007

**VIA FIRST CLASS MAIL AND E-MAIL**

Blair M. Jacobs, Esq.
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue NW
Washington, DC 20004-2415

Re:    *McKesson Automation Inc. v. Swisslog Italia and Translogic Corp.*

Dear Blair,

Defendants intend to amend their Answers and Counterclaims to add the following: (1) an unfair competition counterclaim under the Lanham Act based on false and misleading statements made by McKesson employees concerning the capabilities of the Robot-RX, as well as of Swisslog's Drugnest system; (2) an unfair competition counterclaim under Delaware law based on false and misleading statements made by McKesson employees concerning the capabilities of the Robot-RX and Swisslog's Drugnest systems; and (3) anti-trust violations under both the Sherman and Clayton Acts based on McKesson's anti-competitive behavior, such as entering into sole-source agreements, refusing to permit the interfacing between McKesson and Swisslog products, and offering the Robot-RX to customers for prices below cost in order to block sales of Defendants' Drugnest system.  We do not believe that our new counterclaims will require any additional discovery not already planned. Please let us know whether you will consent to our amended pleadings.

Sincerely,

Bryan N. DeMatteo
(212) 277-6616
dematteob@dicksteinshapiro.com

cc:    Christopher L. May, Esq. (via e-mail)
       Katherine Lahnstein, Esq. (via e-mail)
       Julia Heany, Esq. (via e-mail)
       Alfred R. Fabricant, Esq. (via e-mail)
       Lawrence C. Drucker, Esq. (via e-mail)
       Richard LaCava, Esq. (via e-mail)

EXHIBIT O



**Sutherland**
∎ **Asbill &** ∎
**Brennan** LLP
ATTORNEYS AT LAW

1275 Pennsylvania Avenue, NW
Washington, DC 20004-2415
202.383.0100
fax 202.637.3593
www.sablaw.com

CHRISTOPHER L MAY
DIRECT LINE: 202.383.0255
E-mail: christopher.may@sablaw.com

September 6, 2007

VIA EMAIL

Bryan DeMatteo, Esq.
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY 10036-2714

        Re:    *McKesson Automation Inc. v. Swisslog Italia S.p.A et al.,*
               CA No. 06-028 (MPT)

Dear Bryan:

        This is in response to your letter of September 5, 2007, requesting that McKesson agree to permit Swisslog to amend its complaint.

        As I presume you are aware, the Third Amended Scheduling Order, which the parties agreed to on July 12, 2007, stipulated to a deadline for amendment of the pleadings of December 20, 2006 – over eight months ago. Further, your letter sites "misleading statements by McKesson employees" and "anti-competitive behavior, such as entering into sole-source agreements, refusing to permit the interfacing between McKesson and Swisslog products, and offering the Robot Rx to customers for prices below cost" as the basis for your claims. Even assuming these accusations were true, <u>and</u> that they rose to the level of an antitrust violation (neither of which is true), Swisslog has known the facts and circumstances on which it could base these charges since well before the filing of the Third Amended Complaint. As such, McKesson will oppose any attempt by Swisslog to amend its complaint to include unfair competition and/or antitrust counterclaims.

        Finally, we would note that extensive deposition testimony by, e.g., Messrs. Hinnen, Youtz and Kegley shows that Swisslog has itself engaged in many of the practices Swisslog now complains constitute unfair competition and/or antitrust violations. Depositions of several witnesses have revealed that these are common business tactics in the industry. To the extent that Swisslog seeks to amend its claims based on allegations that McKesson has engaged in such conduct, and the judge permits Swisslog to do so, McKesson will be forced to consider filing a

WO 792067.1

Bryan DeMatteo, Esq.
September 6, 2007
Page 2

similar amended Complaint against Swisslog, potentially including discussion of Mr. Beeson's improper activities.

      Please contact me at the number listed above should you have any questions concerning this letter.

                      Sincerely,

                      *Chris May*

                      Christopher L. May

CLM/rdw

cc:   Richard LaCava, Esq. (via E-mail)
       Larry Drucker, Esq. (via E-mail)
       Alfred R. Fabricant, Esq. (via E-mail)
       Blair Jacobs, Esq. (via E-mail)
       Christina Ondrick, Esq. (via E-mail)
       Katherine Lahnstein, Esq. (via E-mail)

EXHIBIT P

CONFIDENTIAL EXHIBIT

EXHIBIT Q

# CONFIDENTIAL EXHIBIT

EXHIBIT R



## Sutherland
## Asbill &
## Brennan LLP
### ATTORNEYS AT LAW

1275 Pennsylvania Avenue, NW
Washington, DC 20004-2415
202.383.0100
fax 202.637.3593
www.sablaw.com

Katherine R. Lahnstein
DIRECT LINE: 202.383.0929
Internet: Katherine.lahnstein@sablaw.com

April 5, 2007

VIA HAND DELIVERY AND EMAIL
Richard LaCava, Esq.
c/o Pam Prater
DICKSTEIN SHAPIRO LLP
1825 Eye Street NW
Washington, District of Columbia 20006-5403

Re:     *McKesson v. Swisslog Italia et al.*

Dear Rich:

Please find enclosed a DVD containing McKesson's production documents bearing bates numbers M0125290-M0146580. Also enclosed are the load files for these production documents.

If you have any questions or comments, please do not hesitate to contact our office.

Sincerely,

*(signature)*

Katherine R. Lahnstein

Enclosure

EXHIBIT S

CONFIDENTIAL EXHIBIT

EXHIBIT T

CONFIDENTIAL EXHIBIT

EXHIBIT U

CONFIDENTIAL EXHIBIT