IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON AUTOMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 06-028 (***) |
| v. | ) | |
| | ) | |
| SWISSLOG ITALIA S.P.A. and | ) | |
| TRANSLOGIC CORPORATION, | ) | PUBLIC VERSION |
| Defendants. | ) | OCTOBER 12, 2007 |
| | ) | |

**DECLARATION OF BRYAN N. DEMATTEO IN SUPPORT OF
DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS**

I, Bryan N. DeMatteo, declare as follows:

1.      I am associated with the law firm Dickstein Shapiro LLP, counsel of record for Defendants Swisslog Italia S.p.A and Translogic Corporation (collectively "Defendants").  I make this declaration in support of Defendants' Swisslog Italia's ("Swisslog") and Translogic Corporation's ("Translogic") Rule 12(b)(1) Motion to Dismiss.  I have personal knowledge of the facts set forth herein, and if called to testify, could and would certify competently hereto.

2.      On January 13, 2006, McKesson filed a complaint against Defendants alleging that sales of Defendants' system in the United States infringed U.S. Patent No. 5,468,110 ("the '110 patent") and U.S. Patent No. 5,593,267 ("the '267 patent"). Defendants filed their Answers and Counterclaims on March 15, 2006. A First Amended Complaint was filed on July 3, 2006 to name proper parties, and Defendants answered this complaint on July 5, 2006.

REDACTED

4.     Attached as Exhibit A is a true and correct copy of excerpts from the deposition transcript of Sean McDonald, dated August 30, 2007.

5.     Attached as Exhibit B is a true and correct copy of pertinent portions of Keys Deposition Exhibit 24, which was produced by McKesson as a document bearing bates range M0143189-M0143303.

6.     Attached as Exhibit C is a true and correct copy of excerpts from the deposition transcript of Philip Keys, dated August 22, 2007.

7.     Attached as Exhibit D is a true and correct copy of a September 4, 2007 letter from Defendants to opposing counsel requesting identification and/or production of a reassignment of patent rights to Automated Healthcare Inc. ("AHI")    McKesson's predecessor in interest.

8.     Attached as Exhibit E is a true and correct copy of a September 26, 2007 e-mail from Defendants to opposing counsel requesting identification and/or production of a reassignment of patent rights to AHI.

9.     Attached as Exhibit F is a true and correct copy of a September 26, 2007 e-mail from opposing counsel.

10.     Attached as Exhibit G is a true and correct copy of excerpts from the deposition transcript of Philip Spano, dated August 23, 2007.

11.    Attached as Exhibit H is a true and correct copy of Defendants' 30(b)(6) notice and associated topics (Spano Deposition Exhibit 6).

12.    Attached as Exhibit I is a true and correct copy of an April 20, 2007 e-mail providing McKesson's designees for Defendants' 30(b)(6) topics (Spano Deposition Exhibit 7).

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.  This declaration is executed this 3rd day of October, 2007.

*/s/ Bryan N. DeMatteo*

_____

Bryan N. DeMatteo

1253280

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on October 12, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Dale R. Dubé, Esquire
Blank Rome LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on October 12, 2007 upon the following individuals in the manner indicated

**BY E-MAIL**

Dale R. Dubé, Esquire
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE 19801

Blair M. Jacobs, Esquire
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004


*/s/ Julia Heaney (#3052)*
_____
Julia Heaney (#3052)
jheaney@mnat.com

EXHIBIT A

CONFIDENTIAL EXHIBIT

EXHIBIT B

CONFIDENTIAL EXHIBIT

EXHIBIT C

CONFIDENTIAL EXHIBIT

# EXHIBIT D

CONFIDENTIAL EXHIBIT

# EXHIBIT E

CONFIDENTIAL EXHIBIT

EXHIBIT F

CONFIDENTIAL EXHIBIT

EXHIBIT G

CONFIDENTIAL EXHIBIT

EXHIBIT H

DEPOSITION
EXHIBIT
Spano 6
8/23/07

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MCKESSON AUTOMATION, INC.,          )
                                    )
              Plaintiff,            )
                                    )
      v.                            )    C.A. No. 06-028 (KAJ)
                                    )
SWISSLOG ITALIA S.P.A. and          )
TRANSLOGIC CORPORATION              )
                                    )
              Defendants.           )

**DEFENDANTS' NOTICE OF DEPOSITION
PURSUANT TO FED. R. CIV. P. 30(b)(6)**

TO:    Blair M. Jacobs, Esq.              Dale R. Dube, Esq.
       SUTHERLAND ASBILL &               BLANK ROME LLP
       BRENNAN LLP                       Chase Manhattan Centre
       1275 Pennsylvania Avenue, NW      1201 Market Street, Suite 800
       Washington, DC 20004-2415         Wilmington, DE 19801

**PLEASE TAKE NOTICE** that pursuant Rule 30(b)(6) of the Federal Rules of

Civil Procedure, Defendants, Swisslog Italia, S.p.A. and Translogic Corporation, by their

attorneys, Dickstein Shapiro LLP, will take the deposition upon oral examination of Plaintiff,

McKesson Automation, Inc., by one or more officers, directors, managingag ents, or other

persons with knowledge of the topics set forth in the attached Schedule A, commencing on

Tuesday, January 16, 2007, at 9:00 a.m., and continuing until completed, at the offices of

Dickstein Shapiro LLP, 1177 Avenue of the Americas, New York, New York 10036.

The Definitions set forth in Defendant Translogic Corporation's First Request for

the Production of Documents and Things are incorporated herein by reference.

The deposition(s) will be taken by oral examination before a notary public or

other person authorized by law and pursuant to the Federal Rules of Civil Procedure to

administer oaths, and will be recorded by videographic and/or stenographic means.

You are invited to attend and participate.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney (#3052)*

Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Defendants Swisslog Italia, S.p.A. and
  Translogic Corporation*

OF COUNSEL:

Alfred R. Fabricant
Lawrence C. Drucker
Richard LaCava
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 277.6500

November 29, 2006
547343

2

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on November 29,2006  I electronically filed

the foregoing with the Clerk of the Court using CM/ECF which will send notification of such

filing to the following:

Dale R. Dubé, Esquire
Blank Rome LLP

Additionally,I  hereby certify that true and correct copies of the foregoing were

caused to be served on November 29, 2006 upon the following individuals in the manner

indicated

**BY HAND AND E-MAIL**

Dale R. Dubé, Esquire
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE  19801

**BY E-MAIL**

Blair M. Jacobs, Esquire
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, DC  20004

*/s/ Julia Heaney (#3052)*
Julia Heaney (#3052)
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
jheaney@mnat.com

## SCHEDULE A

1.    The location, organization, indexing and storage of Plaintiff's documents;

2.    The files that were searched by Plaintiff to locate information and documents responsive to Defendants' First Request for the Production of Documents;

3.    Plaintiff's past and present policies for the retention and destruction of documents;

4.    Types of data processing and storage devices used by Plaintiff in the course of business;

5.    Plaintiff's network architecture and usage policies;

6.    Number, types, and locations of Plaintiff's computers (including desktops, laptops, PDA's, cell phones, etc.) currently in use or in use at any time since the applications for the patents-in-suit were filed;

7.    Brands and versions of software used on Plaintiff's computer systems;

8.    Plaintiff's file naming and saving conventions;

9.    Identities of the persons responsible for the ongoing operation, maintenance, expansion, backup, and upkeep of Plaintiff's computer systems, and how frequently these activities occur (according to policy and actual practice);

10.    Policies and practices for usage of home computers for Plaintiff's business purposes;

11.    Any modification of use of computers since commencement of this litigation;

12.    Utility programs used to permanently "wipe files" from Plaintiff's computers and the dates when those programs have been used since the commencement of this litigation;

13.    Upgrades to Plaintiff's computer hardware since the applications for the patents-in-suit were filed;

14.    Upgrades to Plaintiff's computer software since the applications for the patents-in-suit were filed;

15.    Plaintiff's electronic records management policies and procedures;

16.    Steps taken to preserve Plaintiff's electronic data;

17.    Deletion of any of Plaintiff's documents since the lawsuit commenced;

18.    Instructions about preservation of Plaintiff's electronic documents due to this lawsuit;

19.    Backup software programs used by Plaintiff;

20.    Any modification to Plaintiff's backup procedures used since this lawsuit commenced;

21.    Plaintiff's disaster recovery plans in place currently and since the applications for the patents-in-suit were filed;

22.    Plaintiff's backup tape or archival disk naming/labeling conventions;

23.    Location of Plaintiff's backup tapes or other backup media;

24.    Method and schedule used if Plaintiff's files are ever deleted from its computer systems;

25.    Locations, if any, where files are "archived" off of Plaintiff's computer systems;

26.    Any data that was restored to Plaintiff's computer systems from backup tapes since the applications for the patents-in-suit were filed, the dates of the restorations, and the reasons why the data was restored;

27.    Plaintiff's policy regarding the purging of individual directories when an employee leaves Plaintiff's employ;

28.    Plaintiff's policy regarding reassigning workstations to incoming employees;

29.    Plaintiff's policy regarding disposal, recycling, and sale of computer hardware;

30.    Plaintiff's procedure for handling used disks or drives before destruction or sale;

31.    Plaintiff's policy and procedure for use of outside contractors to upgrade either hardware or software for system maintenance;

32.    Types of databases and database software used by Plaintiff, and the fields of information stored and used in Plaintiff's databases and database software;

33.    Identities of persons responsible for database design, database maintenance, report design and database backup;

34.    Identities of persons who enter information into, and access information from, Plaintiff's databases, and the manner in which data is entered and accessed;

35.    Identification of standard reports prepared for Plaintiff on a routine basis;

36.    Incidents and dates on which Plaintiff's database files have been re-indexed, purged, repaired or archived;

37.    Protocols for using passwords or encrypted files on Plaintiff's computer systems, including the identities of persons who manage this process;

38.    Plaintiff's policies for changing or revoking passwords and access codes when an employee leaves Plaintiff's employ;

39.    Methods for those outside Plaintiff to access Plaintiff's computer systems;

40.    Identities of persons responsible for administering Plaintiff's e-mail systems;

41.    Identities of all e-mail systems used by Plaintiff, the location of e-mail servers and users' e-mail files, and the manner in which users can access e-mail remotely;

42.    Plaintiff's protocol for routinely changing e-mail passwords;

43.    Plaintiff's policy for purging e-mails;

44.    Identification of all of Plaintiff's e-mail systems used since the applications for the patents-in-suit were filed;

3

45. Plaintiff's e-mail retention policies and practices;

46. Plaintiff's restoration of any mailboxes from backup tapes since the applications for the patents-in-suit were filed, including the identities of all mailboxes restored, and the resources required to perform the restorations;

47. Plaintiff's special active e-mail retention settings;

48. Incidents and dates on which Plaintiff's e-mail databases have been re-indexed, purged, repaired or archived;

49. Protocols for using passwords or encrypted files on Plaintiff's e-mail systems, including the identities of persons who manage this process;

50. Plaintiff's policies for changing or revoking passwords and access codes for Plaintiff's e-mail systems when an employee leaves Plaintiff's employ;

51. Methods for those outside Plaintiff to access Plaintiff's e-mail systems;

52. Plaintiff's production of electronic documents in other litigation or legal proceedings, including the identification of the documents produced and their format;

53. The organizational and corporate structure of Plaintiff, including information concerning the persons responsible for the sales, marketing, conception, research, design, development, manufacture, and distribution of Plaintiff's automated storage systems and related components thereof;

54. The validity or invalidity of the patents-in-suit;

55. The conception and reduction to practice of the inventions claimed in the patents-in-suit, including without limitation, the circumstances under which each such invention was conceived and reduced to practice, the identities of all persons involved, the dates of each such conception and reduction to practice, any technical difficulties encountered in reducing the

4

claimed inventions to practice, and all documents relating to each such conception and/or reduction to practice, including without limitation, inventors' notebooks;

56.    The prosecution of the patents-in-suit and of patent applications (international or otherwise) filed anywhere in the world corresponding to the patents-in-suit, including without limitation, all facts relating to the prosecution, the identities of all persons involved, all prior art known to the inventors and/or the persons involved in the prosecution, and all documents relating to such prosecution;

57.    For each of the patents-in-suit, sales, offers for sale, public uses, and public disclosures by Plaintiff, Plaintiff's licensees or others before the filing date of the patents-in-suit of any product incorporating any invention claimed in the patents-in-suit, including the dates of such activity, all facts relating to those activities, the identities of all persons involved, and all documents relating to such activity;

58.    Exhibitions, displays, demonstrations, or discussions of Plaintiff's automated storage systems at trade shows, meetings or exhibitions, including but not limited to the times and places of any exhibition, display, demonstration or discussion with representatives of hospitals;

59.    The design, development, manufacture, and operation of Plaintiff's automated storage systems, including but limited to finished products, prototypes and demonstration units, that include at least one claimed invention of the patents-in-suit, including any such products manufactured by others for Plaintiff, the dates of such design, development, manufacture, and operation, the identities of all persons involved, and all documents relating to such design, development, manufacture, and operation;

60.    For each automated storage system sold by Plaintiff or its licensees, the efforts of Plaintiff and/or its licensees to mark the product with the patent numbers of the patents-in-suit,

including without limitation, the time period during which such marked products were sold, and all documents relating to such marking;

61.    The terms of license agreements and covenants not-to-sue (collectively "agreements") under any of the patents-in-suit, and under any automated storage systems not covered by the patents-in-suit, including without limitation the royalty rates of such agreements, the revenue received by Plaintiff or the royalty paid by Plaintiff under such agreements, provisions requiring the licensee of such agreements to mark the patent number(s) of the patents-in-suit on automated storage systems, whether the agreements were exclusive or nonexclusive, and any applicable geographic and market restrictions;

62.    Negotiations for license agreements and covenants not-to-sue under any of the patents-in-suit, and negotiations for agreements relating to automated storage systems, including communications and correspondence in connection with such negotiations;

63.    Plaintiff's policies and practices for licensing patents and other intellectual property, including without limitation, licenses for the right to make, use or sell any products incorporating inventions of the patents-in-suit, and whether any licenses have been granted under conditions to preserve exclusivity as to some aspect of the technology covered by the patents-in-suit;

64.    The portion of the profit or selling price of automated storage systems that is customarily paid to Plaintiff in consideration for the right to manufacture, use or sell automated storage systems incorporating any invention claimed in the patents-in-suit, or products that compete with products that incorporate at least one claimed invention of the patents-in-suit;

65.    Identities of all individuals who negotiated and evaluated licenses relating to the patents-in-suit;

66. Plaintiff's policies and practices regarding enforcing its patents against its competitors;

67. All efforts by or on behalf of Plaintiff to enforce the patents-in-suit, including without limitation all investigations of, and lawsuits regarding, automated storage systems alleged by Plaintiff to infringe the patents-in-suit;

68. Any evaluation or information gathered or considered by Plaintiff in deciding whether to accuse Defendants' products of infringement;

69. Defendants' products which Plaintiff asserts infringe the patents-in-suit;

70. Any evaluation or information gathered or considered by Plaintiff in deciding whether to accuse Defendants of willful infringement;

71. All litigations or threatened litigations relating to the patents-in-suit, including, without limitation, opinions of counsel, consent decrees, injunctions and settlement agreements, and any other forms of compensation received by Plaintiff in connection with any such litigations;

72. All litigations regarding automated storage systems in which Plaintiff was or is currently a plaintiff or defendant;

73. Any alleged infringers of any of the patents-in-suit, including without limitation, any settlement agreements and any other forms of compensation received by Plaintiff in connection with any of the patents-in-suit;

74. The acquisition of the patents-in-suit by Plaintiff;

75. The acquisition of Automated Healthcare, Inc. by Plaintiff;

76. Plaintiff's decision to sue Defendants, including, without limitation, all due diligence performed by Plaintiff or its counsel prior to commencing litigation against Defendants, and any analyses concerning Defendants' infringement of the patents-in-suit;

77.    Plaintiff's testing, analysis and/or evaluation of any of Defendants' products, including but not limited to the facts, written notations and oral communications regarding any visits by Plaintiff to view any PillPick system;

78.    Any comparisons made between the patents-in-suit and any of Defendants' products;

79.    The earliest known use, sale or license, or offer for sale or license of any automated storage system by Plaintiff;

80.    The ownership of each of the patents-in-suit;

81.    The inventory and pricing of all of Plaintiff's automated storage systems;

82.    Plaintiff's competitors or any other third party selling automated storage systems in the United States;

83.    Business, strategic, financial or marketing plans, forecasts, analyses or reports relating to any automated storage systems sold by Plaintiff, and automated storage systems that compete with those sold by Plaintiff;

84.    Plaintiff's revenues, gross profits, net profits and incremental/marginal profits, by product and quarter, from sales of automated storages ystems, and from sales of automated storage systems sold by Plaintiff's competitors;

85.    Plaintiff's share of any market for automated storage systems, by product and quarter;

86.    The portion of Plaintiff's profits that are attributable to the patented inventions themselves as opposed to those profits attributable to features of Plaintiff's automated storage systems products unrelated to the patented inventions;

8

87. Plaintiff's policies, customs, business objectives and procedures relating to the manner in which it competes in any market for automated storage systems, including but not limited to the market for RobotRx;

88. Plaintiff's refusal or threatened refusal to deal with customers or potential customers who purchase automated storage systems from Defendants or others;

89. Plaintiff's efforts to curtail Defendants' ability to compete in any market for automated storage systems;

90. Communications, whether written or oral, between Plaintiff and any other party concerning or referring to any of the Defendants;

91. Plaintiff's pricing strategies, evaluations of competitors' prices, and determination of prices to charge for automated storage systems;

92. The advertisement, marketing and promotion of Plaintiff's Products;

93. Plaintiff's damages claims;

94. Plaintiff's profits, losses and sales of automated storage systems over the past eight years, and how those profits, loses and sales are reported to anyparent company of Plaintiff;

95. The commercial success, if any, of the inventions claimed in the patents-in-suit, and the nexus between the commercial success and the merits of the inventions;

96. Market demand for products embodying the inventions claimed in the patents-in-suit;

97. Absence of acceptable non-infringing substitutes or alternatives to a product covered by the patents-in-suit;

98. Any attempts by others to design or build an automated storage system with the features of the inventions claimed in the patents-in-suit;

9

99.    Any statements by anyone other than Plaintiff regarding whether an automated storage system disclosed in the patents-in-suit could be invented and/or reduced to practice;

100.    Any long-felt need for the automated storage system disclosed in the patents-in-suit;

101.    The differences between Plaintiff's products embodying the inventions claimed in the patents-in-suit and Plaintiff's automated storage systems that do not embody the patented inventions;

102.    The utility and advantages of the patented inventions over the old modes or devices, if any, that had been used for achieving similar results;

103.    The time, costs and efforts expended on researching, designing, developing and testing of each of the patented features of Plaintiff's automated storage systems, including but not limited to RobotRx;

104.    Plaintiff's manufacturing and marketing capabilities;

105.    The royalty rates in the automated storage systems industry or for similar or related technologies;

106.    The effect of sales or licenses of the technology covered by the patents-in-suit on the sales of other products or technology sold or licensed by Plaintiff;

107.    Plaintiff's damages theories, including, without limitation, its calculations of damages related to those theories;

108.    To the extent not covered by the above, all facts supporting the allegations of paragraphs 8-21 of the Amended Complaint;

109.    Identification of all persons with knowledge of the facts sought by this deposition notice; and

110.    Identification of all documents relating to the facts sought by this deposition notice.

EXHIBIT I

**Forte, Karen**

DEPOSITION
EXHIBIT
SPANO 7
8/23/07

| | |
|---|---|
| **From:** | Jacobs, Blair [Blair.Jacobs@sablaw.com] |
| **Sent:** | Friday, April 20, 2007 5:40 PM |
| **To:** | Jacobs, Blair; Drucker, Lawrence; Ondrick, Christina; LaCava, Richard; Fabricant, Alfred |
| **Cc:** | Lambrianakos, Peter; Forte, Karen; May, Christopher |
| **Subject:** | McKesson v. Swisslog, et al -- Deposition planning -- McKesson Rule 30B6 witnesses |

Larry, as promised, here is a breakdown of witnesses who will cover Rule 30b6 categories on behalf of McKesson.

**AL WURST - Categories 4-34 and 36-52**

**MANOJ WANGU - Categories 35, 53, 55, 57, 59, 79, 81, 97-104**

**JIM LONGO - Categories 58, 60, 81-83, 85, 87-92, 95-96, 104, 106**

**NEIL EBNER – Category 1-3, 64, 84, 86 and 94**

**PHIL SPANO – Categories 56, 61-63, 65-67, 71-74, 80 and 105**

**MIKAEL OHMAN (in Atlanta) – Category 75**

We would like to talk with you further regarding certain categories. For example, categories 54, 68-70 and 76-78 seek testimony regarding wholly privileged activities/invalidity positions, etc. We can certainly provide you with some non-privileged factual information in interrogatory responses but it does not seem practical to put a witness up for what would largely be a series of privilege objections. I am happy to discuss this with you further and I'm sure we can work something out. Categories 93 and 107 seek all of McKesson's damages theories. Again, much of this information is work product. To the extent you seek testimony on damages theories I suggest that we handle that through expert witnesses. Finally, Categories 108-110 are catch-all categories -- we cannot present a witness on these categories but expect that this information can be gathered from the corporate witnesses presented on the individual topics.

With regard to scheduling, I need to get you a date for Mr. Spano's deposition and we will do so shortly. As I mentioned on the phone yesterday, we are preparing to produce some additional documents next week that may have some impact on Sean McDonald. As a result, I suggest that we proceed with a half day deposition on May 3 (1:00 - 5:00) and we will find a full day later in the month for additional testimony.

Please get me the Defendants' rule 30b6 witness list and scheduling information (e.g. Swank, Patrician and any other Rule 30B6 witnesses) ASAP. Also, please confirm that the Righini, Mattei and Italian opinion counsel depos will proceed during the week of June 25-29, as you have previously mentioned.

Thanks much, and have a good weekend.

Blair

CIRCULAR 230 DISCLOSURE:   To comply with Treasury
Department regulations, we inform you that, unless
otherwise expressly indicated, any tax advice contained in
this communication (including any attachments) is not
intended or written to be used, and cannot be used, for the
purpose of (i)avoiding penalties that may be imposed under
the Internal Revenue Code or any other applicable tax law,
or (ii) promoting, marketing or recommending to another
party any transaction, arrangement, or other matter.

The information contained in this message from Sutherland
Asbill & Brennan LLP and any attachments are confidential
and intended only for the named recipient(s). If you have
received this message in error, you are prohibited from
copying, distributing or using the information. Please
contact the sender immediately by return email and delete
the original message.

8/16/2007