IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MCKESSON AUTOMATION, INC.<br>a Delaware Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) ) | Civ. Action No. 1:06CV00028-MPT |
| v. | ) ) ) | |
| TRANSLOGIC CORPORATION<br>a Delaware Corporation, and | ) ) ) | |
| SWISSLOG ITALIA S.P.A.<br>an Italian Corporation, | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF MCKESSON AUTOMATION, INC.'S
OPPOSITION TO DEFENDANTS' MOTION FOR
LEAVE TO AMEND THEIR ANSWERS AND COUNTERCLAIMS**

Dated:  October 25, 2007

Dale R. Dubé (#2863)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Tel: (302) 425-6472
Fax: (302) 425-6464

Blair M. Jacobs
Robert A. Gutkin
Christina A. Ondrick
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 383-0100
Fax: (202) 637-3593

*Counsel for Plaintif
McKesson Automation, Inc.f*

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS .....................................................................................3

III. STATEMENT OF LAW..........................................................................................5

    A. FED. R. CIV. P. 15 ......................................................................................5

    B. FED. R. CIV. P. 16 ......................................................................................7

IV. SWISSLOG HAS NOT SHOWN GOOD CAUSE TO AMEND
    THEIR ANSWER AND COUNTERCLAIMS ......................................................8

    A. SWISSLOG HAS UNDULY DELAYED FILING FOR
       LEAVE TO AMEND TO ADD THE NEW ANTITRUST
       COUNTERCLAIM CONTENTIONS.........................................................8

    B. SWISSLOG'S PROPOSED AMENDMENTS WOULD
       UNDULY PREJUDICE MCKESSON.........................................................9

    C. EVEN IF SWISSLOG HAD NOT UNDULY DELAYED,
       AND  MCKESSON WERE NOT UNDULY PREJUDICED,
       DEFENDANTS' PROPOSED AMENDMENT WOULD
       BE FUTILE..............................................................................................10

    D. DEFENDANTS HAVE UNDULY DELAYED FILING FOR
       LEAVE TO AMEND TO ADD THE NEW INEQUITABLE
       CONDUCT CONTENTIONS ..................................................................13

    E. SWISSLOG HAS UNDULY DELAYED FILING FOR
       LEAVE TO AMEND TO ADD THE NEW LACK OF
       STANDING AFFIRMATIVE DEFENSE.................................................16

V.  CONCLUSION....................................................................................................17

# TABLE OF AUTHORITIES

## Cases

*Abbott Lab. v. Brennan,*
952 F.2d 1346 (Fed.Cir.1991)............................................................................................. 12

*Advocat v. Nexus Indus., Inc.,*
497 F. Supp. 328 (D. Del. 1980)............................................................................................ 7

*Amquip v. Admiral Ins. Co.,*
231 F.R.D. 197 (E.D. Pa. 2005)........................................................................................... 15

*Conley v. Gibson,*
355 U.S. 41 (1957)................................................................................................................. 9

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,*
365 U.S. 127, 81 S. Ct. 523, 5 L.Ed.2d 464 (1961)............................................................ 11

*Forman v. Davis,*
371 U.S. 178; 83 S. Ct. 227 (1962)....................................................................................... 5

*Glass Equipment Development Inc. v. Besten, Inc.,*
174 F.3d 1337 (Fed.Cir.1999)............................................................................................. 11

*Glassman v. Computervision Corp.,*
90 F.3d 617 (1st Cir. 1996)................................................................................................... 7

*Harrison Beverage Co. v. Dribeck Importers, Inc.,*
133 F.R.D. 463 (D.N.J. 1990)............................................................................................... 8

*Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.,*
663 F.2d 419 (3d Cir. 1981).......................................................................................... 6, 9, 16

*In re Bristol-Myers Squibb Sec. Litig.,*
228 F.R.D. 221 (D.N.J. 2005)............................................................................................... 6

*In Re Burlington Coat Factory Securities Litigation,*
114 F.3d 1410 (3d Cir. 1997)................................................................................................ 7

***In re Independent Service Organizations Antitrust Litigation,***
203 F.3d 1322 (Fed. Cir. 2000)........................................................................................... 12

*Inline Connection Corp. v. AOL Time Warner Inc.,*
237 F.R.D. 361 (D. Del. 2006) ........................................................................................ 6, 14

*Intergraph Corp. v. Intel Corp.,*
195 F.3d 1346 (Fed.Cir.1999)............................................................................................. 12

*Keene v. Sears Roebuck & Co., Inc.,*
2007 WL 77324 (D.N.J. Jan. 8, 2007) .................................................................................. 5

*Koplove v. Ford Motor Co.,*
795 F.2d 15 (3d Cir. 1986).................................................................................................... 8

*Long v. Wilson,*
393 F.3d 390 (3d Cir. 2004).................................................................................................. 7

*Lorenz v. CSX Corp.,*
1 F.3d 1406 (3d Cir. 1993).................................................................................................... 6

*McLaughlin v. Diamond State Port Corp.,*
Civ. A. No. 03-617 (GMS), 2004 WL 2958664 (D. Del. Dec. 21, 2004) ................................ 15

*Nobelpharma AB v. Implant Innovations,*
141 F.3d 1059 (Fed. Cir. 1998), 46 USPQ2d at 1104) ........................................................ 11

*Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,*
   324 U.S. 806 (1945) .................................................................................................................. 12
*Reynolds v. Borough of Avalon,*
   799 F. Supp. 442 (D.N.J. 1992) ................................................................................................. 5
*Simpson v. United Oil Co. of California,*
   377 U.S. 13 (1964) .................................................................................................................... 12
*United States v. United Shoe Mach. Co.,*
   247 U.S. 32 (1918) .................................................................................................................... 12
*Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,*
   382 U.S. 172, 86 S. Ct. 347, 15 L.Ed.2d 247 (1965) ................................................................ 11

## Other Authorities
3 Moore's Federal Practice ¶ 15.08[4] (2d ed. 1993) ...................................................................... 7

## Rules
Fed. R. Civ. P. 12(b)(6) ..................................................................................................................... 7
Fed. R. Civ. P. 15 ............................................................................................................................. 5
Fed. R. Civ. P. 15(a) ........................................................................................................................ 7
Fed. R. Civ. P. 16 ......................................................................................................................... 7, 8
Fed. R. Civ. P. 16(a) ........................................................................................................................ 5
Fed. R. Civ. P. 16(b) ........................................................................................................................ 7

## I.    **INTRODUCTION**

Courts have discretion to deny motions to amend in instances of undue delay, bad faith, undue prejudice to the opposing party and futility. Here, each of the three categories of new allegations proposed by Defendants Swisslog Italia and Translogic (collectively hereafter "Swisslog") suffer from the same malady – undue delay resulting in potentially extreme prejudice to McKesson. Further, two of the three proposed new categories of allegations would also be futile, as they do not state a claim upon which relief can be granted. As a result, justice dictates that at this late stage in discovery, with only a few weeks of fact discovery remaining, that Swisslog's motion be denied.

Swisslog's brief in support of the motion to amend offers a deceptively partial explanation of the factual and procedural record. Once the full record is laid out, however, Swisslog's bases for granting its leave to amend fall flat. First, Swisslog claims in its initial papers that the information on which it bases its new counterclaims "were brought to Defendant's attention *after* the December 20, 2006 deadline to amend the pleadings had passed...." Defendants Swisslog Italia S.p.A.'s and Translogic Corporation's Revised Motion for Leave to Amend Their Answers and Counterclaims (hereafter "Defendants' Motion), p. 2 (emphasis in original). This is inaccurate. A review of Swisslog's supporting papers indicates that Swisslog bases its counterclaims on a few documents and some questions asked about those documents in subsequent depositions. The last of the documents upon which Swisslog relies was produced six months ago. There is simply no reason why Swisslog could not have moved to amend after receiving and reviewing the documents, and Swisslog has put forth no reasonable explanation for its extensive delay, particularly given the few weeks of fact discovery remaining. Instead, this motion closely resembles an improper attempt to introduce entirely new allegations

into a case after the close of fact discovery, when McKesson's ability to defend against such allegations will be severely constrained. Indeed, Swisslog's statement that it will need no additional discovery strongly suggests that it knew of (and obtained the evidence it feels necessary to prove) these claims during the discovery period.

Swisslog also claims that "McKesson will suffer little or no prejudice if Defendant's motion is granted, since most if not all of these facts have long been known to McKesson." Defendants' Motion, p. 2. Again, this is incorrect. While Swisslog may believe that no additional discovery is necessary, McKesson's ability to defend itself would be greatly prejudiced if Swisslog is permitted to amend its claims at this late date. Swisslog has not merely amended its counterclaims and affirmative defenses; it has also set forth an entirely new series of factual allegations in support of those new claims, including a re-definition of the relevant market for its antitrust claims and an introduction of an entirely new legal claim (unenforceability) into the case. The time for filing new notices of deposition has already passed, and most of Swisslog's employees have already been deposed. Expert reports are due in approximately six weeks. Fact discovery is scheduled to close in less than three weeks and will likely be closed by the time this motion is resolved. Swisslog's contention that this will not cause prejudice is belied by the additional discovery that would be required by McKesson to respond to these new claims, which would be impossible in the short time remaining.

Swisslog moved to amend shortly after learning that a settlement hearing would be conducted on November 20, 2007, thus raising the specter of inserting additional allegations in order to gain leverage in settlement discussions. Whether or not that is the case, it is clear that Swisslog has failed to provide satisfactory explanation for its undue delay in filing this motion to amend.

2

## II.    STATEMENT OF FACTS

On January 13, 2006, McKesson brought this case, alleging infringement by Swisslog of

U.S. Patent Nos. 5,468,110 and 5,593,267.  On June 20, 2006 McKesson amended its initial

Complaint.  Swisslog filed its answer and counterclaims on July 5, 2006.  On October 26, 2006,

the parties agreed to, and the Court approved, a First Amended Scheduling Order.  Declaration of

Christopher L. May (hereafter "May Decl."), Ex. A.  The First Amended Scheduling Order

established a date of December 20, 2006 as the final date to amend or supplement the pleadings.

*Id.*, p. 2.

On December 22, 2006, McKesson produced a CD containing documents M0000001-

0062803_A.  December 22, 2006 Letter from Christina Ondrick to Richard LaCava, May Decl.,

Ex. B.  Among these documents was Bates Nos. M0004510-0004512, which Swisslog cites as

Ex. J of the DeMatteo Declaration.  Over the period of January 2-26, 2007, McKesson produced

an additional approximately 60,000 pages of documents in two tranches.  *See* January 2, 2007

Letter from Christina Ondrick to Richard LaCava (May Decl., Ex. C); January 10, 2007 Letter

from Mary Viguie to Richard LaCava (May Decl., Ex. D); January 26, 2007 Letter from

Christina Ondrick to Richard LaCava (May Decl., Ex. E).  Among these documents were Bates

Nos. M0121101-0121102, M0068646-0068661, and M0099743-0099779, which Swisslog cites

as Exs. F, K and L of the DeMatteo Declaration.  On February 1, 2007, after receiving these

documents, Swisslog agreed to a Second Amended Scheduling Order, which preserved the

December 20, 2006 deadline to amend from the First Amended Scheduling Order.  May Decl.,

Ex. F.

The deposition of James Longo took place on May 10, 2007.  During this deposition,

Swisslog's counsel introduced as evidence Exs. F, J, K and L of the DeMatteo Declaration,

demonstrating that Swisslog was aware of these documents at least as of the date of the deposition. Again, all of these documents had been provided to Swisslog by February 2007. Swisslog's counsel also questioned Mr. Longo extensively about these documents – over forty pages of testimony are devoted to these four exhibits. *See* Longo Dep. Tr. 142:18-145:22, 148:20-166:16, 196:18-202:15, 205:15-221:3 (May Decl., Ex. G).

The parties submitted a Third Amended Scheduling Order on July 3, 2007, which was approved on July 12. May Decl., Ex. H. In the Third Amended Scheduling Order, Swisslog again ratified the December 20, 2006, two months <u>after</u> taking Mr. Longo's deposition. *Id.*, p. 1. The Third Amended Scheduling Order also established September 28, 2007 as the last day of fact discovery. *Id.*, p. 3.

The deposition of Eugene Zwolinski took place on August 31, 2007. During this deposition, Swisslog's counsel introduced as evidence Bates Nos. Exs. H and I of the DeMatteo Declaration. However, much of the information in these documents had been produced in other documents months earlier. For example, much of the information contained in Ex. H of the DeMatteo Declaration is also contained in Ex. J of the DeMatteo Declaration, which was produced in December 2006. Similarly, much of the information relating to Swisslog in Ex. I of the DeMatteo Declaration was contained in other documents. *See, e.g.*, M0004604-0004607 (May Decl., Ex. I); M0004665-0004666 (May Decl., Ex. J). Moreover, many of the questions posed to Mr. Zwolinski were similar to questions earlier posed to Mr. Longo.

On September 5, 2007, nine months after production of many of the documents containing the information on which Swisslog bases its proposed amended answers and counterclaims, four months after the deposition of Mr. Longo, two months after the entry of the Third Amended Scheduling Order confirmed the Dec. 20, 2006 deadline to amend, four weeks

4

prior to the close of fact discovery, and less than a week before the deadline to notice

depositions, Swisslog requested that McKesson agree to permit it to amend its answer and

counterclaims to recite antitrust and unfair counterclaims. DeMatteo Decl., Ex. N. McKesson

took the position that the time for amending had long since passed and that McKesson and the

Court would be prejudiced by further discovery resulting from these new claims. After a meet

and confer, Swisslog filed its motion.

## III.    STATEMENT OF LAW

In order for Swisslog's motion to amend to succeed, Swisslog must demonstrate it has

satisfied the requirements of both Fed. R. Civ. P. 15, which covers amendments, and Fed. R. Civ.

P. 16(a), which covers modifications to the scheduling order. *Reynolds v. Borough of Avalon*,

799 F. Supp. 442, 458 (D.N.J. 1992).

### A.    FED. R. CIV. P. 15

The United States Supreme Court has explained that when a party has already made one

amendment as a matter of course, courts have discretion as to whether an amendment should be

denied, and that courts should grant leave to amend a complaint only when justice requires.

*Forman v. Davis*, 371 U.S. 178, 182; 83 S. Ct. 227 (1962). Specifically, the court stated that

"undue delay, bad faith or dilatory motive on the part of the movant, …undue prejudice to the

opposing party by virtue of allowance of the amendment, [and] futility of amendment" are all

reasons to deny a 15(a) motion. *Id.*

When delay becomes undue, placing an "unwarranted burden on the court," a court may

deny a motion to amend. *Id.* The question of undue delay requires that the court focus on the

party's reasons for failing to amend their complaint earlier. *Id; Keene v. Sears Roebuck & Co.,

Inc.*, 2007 WL 77324 at *5 (D.N.J. Jan. 8, 2007) (holding that "[t]he analysis of undue delay and

bad faith require that the Court focus on the [party's] motives for not amending the complaint earlier.").[1]  If examining those reasons reveals idleness or bad faith on the part of the moving party, the court may deny the motion due to undue delay.  *See, e.g. In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221 (D.N.J. 2005) (denying a motion for leave to amend when the moving party offered no explanation for the failure to include claims in past amended complaints).  While there is no agreed upon period of delay that is considered burdensome to a court, courts have denied motions for leave to amend a complaint when the parties have had ample time to discover and add new claims.  In *Bristol-Myers Squibb*, the court denied a motion for leave to amend when the motion came one year after the close of a wide ranging and lengthy discovery period, and when the non-moving party "would have to examine each new claim and conduct discovery to fairly defend themselves against these new allegations."  *Bristol-Myers Squibb*, 228 F.R.D at 227.  In *Inline Connection Corp. v. AOL Time Warner Inc.*, 237 F.R.D. 361 (D. Del. 2006), the court denied a party leave to amend its answer when the party waited two years from the date that the discovery relevant to the proposed amendment was received.

Further, a motion to amend should be denied, *without* requiring an opposing party to demonstrate prejudice, when the amendment is grounded on "bad faith or dilatory motive, truly undue or unexplained delay...."  *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981).  Undue delay which is not satisfactorily explained is tantamount to bad faith.  *Inline Connection Corp.*, 237 F.R.D. at 369.

In determining whether an amendment should be permitted, courts must also consider the burden that the amendment places on the non-moving party.  *See, e.g., Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (holding that "prejudice to the non-moving party is the

---

[1] A copy of this case is attached to the May Declaration as Ex. K.

touchstone for the denial of an amendment."). An amendment is prejudicial to the non-moving party if it would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the [non-movant] from bringing a timely action in another jurisdiction." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (*citing Advocat v. Nexus Indus., Inc.*, 497 F. Supp. 328, 331 (D. Del. 1980)).

Finally, amendment should not be permitted where it would be "futile" – in other words, the party's counterclaims, as amended, would fail to state a claim upon which relief could be granted. *In Re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1324 (3d Cir. 1997) (citing 3 Moore's Federal Practice ¶ 15.08[4], at 15-80 (2d ed. 1993)). In assessing futility, the court applies the same standard of legal sufficiency as applies under Fed. R. Civ. P. 12(b)(6). *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996).

## B.    FED. R. CIV. P. 16

Rule 16(b) requires the moving party to show "good cause" for modifying the scheduling order in order to permit the proposed amendment. One case has succinctly laid out the Third Circuit's view on Rule 16(b) motions filed in relation to a proposed amendment under Rule 15(a):

"An overlay upon [the scheme of deciding a Rule 15(a) motion], however, arises from the requirements of scheduling orders and adherence to their deadlines. Rule 16(b), added in 1983, requires the entry of scheduling orders governing among other things, motions to amend pleadings or to join new parties, the close of discovery, and the filing of motions. Those deadlines can only be extended for "good cause" pursuant to Rule 16(b). The attempted injection of new issues on the eve of trial, as in this case, necessarily implicates the scheduling orders entered in this case, to the extent that further discovery would be required, further dispositive motion practice would occur, and the Joint Final Pre-Trial Order would have to be amended to accommodate new developments.

124402.00601/40171848v.1

> To argue that there should be a liberal policy of freely permitting amendments is to ignore, in an old case such as this one, the purposes of case management and the scheduling orders which "are at the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986). The 1983 amendments to the Federal Rules of Civil Procedure were enacted specifically to require "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." Fed. R. Civ. P. 16, Advisory Committee's Note on 1983 amendment. The modification of a scheduling order deadline requires "a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.*, note on Subdivision (b). **The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired.**

*Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 469 (D.N.J. 1990) (emphasis added).

## IV.    SWISSLOG HAS NOT SHOWN GOOD CAUSE TO AMEND THEIR ANSWER AND COUNTERCLAIMS

Swisslog seeks to add six antitrust/unfair competition counterclaims, an inequitable conduct counterclaim, and inequitable conduct and lack of standing affirmative defenses. The Court should deny Swisslog's motion to add each of these, as explained below.

### A.    SWISSLOG HAS UNDULY DELAYED FILING FOR LEAVE TO AMEND TO ADD THE NEW ANTITRUST COUNTERCLAIM CONTENTIONS

Swisslog's own papers demonstrate that they have had almost all of the information on which its new allegations are based since May of this year – two months prior to their (third) agreement to keep December 20, 2006 as the cutoff date for amendments. For example, Swisslog points to a document representing that McKesson has "no significant competitor" in support of its claims. This document was produced to Swisslog in January 2007, over nine months ago. May Decl., Ex. D. Similarly, Swisslog points to testimony from the deposition of Mr. Longo. Defendant's Motion, p. 5. This deposition took place on May 10, 2007 – two

months prior to the entry of the Third Amended Scheduling Order and almost five months prior to Swisslog's request that McKesson permit it to amend its answer. *Id.*, p. 1.

Swisslog has weakly proffered the Zwolinski deposition as its justification for their failure to diligently pursue all of their legal claims before this Court. An examination of the relevant Zwolinski testimony demonstrates that Mr. Zwolinski's testimony is largely repetitive of that already in the documents and testimony of Mr. Longo. *Cf., e.g.*, Zwolinski Dep. Tr. 68:1-72:7 with Longo Dep. Tr. 204:5-205:14, Zwolinski Dep. Tr. 72:8-81:7 with Longo Dep. Tr. 205:15-221: 3 (May Decl., Ex. L). In any event, even if Mr. Zwolinski's deposition had uncovered new information, Swisslog did not need to wait until after his deposition to seek to amend. The Federal Rules require only that a party be able to state a claim for which there can be relief, not that it have all available evidence. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Swisslog could have moved to amend after receiving production of relevant documents in this case. Alternatively, it could have moved to amend after the Longo deposition. This would have provided the parties ample time to conduct additional discovery into the allegations. There was simply no reason to wait until the close of discovery to amend, and Swisslog's failure to seek timely leave to do so, notwithstanding repeated opportunities, constitutes undue delay warranting denial of this motion, even without a showing of prejudice. *Heyl & Patterson*, 663 F.2d at 425.

## B.    SWISSLOG'S PROPOSED AMENDMENTS WOULD UNDULY PREJUDICE MCKESSON

As explained above, Swisslog's motion to amend with regard to the antitrust counterclaims should be denied without requiring a showing of prejudice. However, ample prejudice also exists to warrant denial of Swisslog's motion. Swisslog's proposed amendments do not simply add counterclaims based on previously alleged facts. Instead, they allege several new facts that form the basis of Swisslog's new claims. *See* DeMatteo Decl., Ex. C, ¶¶ 34-53.

9

Further, Swisslog has injected allegations concerning a new, "hospital pharmacy automation systems" market. DeMatteo Decl., Ex. A, ¶ 40. Such a change creates additional testimony concerning whether Swisslog's definition of the market is accurate, and the market shares, relative ease of entry, and industry practices. Swisslog has also alleged that it has suffered $10,000,000 in damages, though it provides absolutely no support for this astronomical projection.

McKesson would be severely prejudiced in its ability to rebut such charges given the scheduling order in place. All discovery is required by the Fourth Amended Scheduling Order to end on November 9, 2007. In that time, McKesson would need additional discovery from Swisslog's management, among others, concerning their understanding of the relevant market, their understanding of industry practices, and Swisslog's own behavior in the relevant market to rebut Swisslog's allegations. Discovery relating to Swisslog's damages claim would also be required. Swisslog's proposed antitrust counterclaims would also require at least one additional expert witness on topics unrelated to the existing patent claims. Thus, if Swisslog's motion to amend is granted, McKesson would be faced with virtually no opportunity to develop the facts necessary to rebut the entirely new line of antitrust claims raised by Swisslog's motion to amend.

## C.   EVEN IF SWISSLOG HAD NOT UNDULY DELAYED, AND MCKESSON WERE NOT UNDULY PREJUDICED, DEFENDANTS' PROPOSED AMENDMENT WOULD BE FUTILE

Even if Swisslog had not been dilatory in filing its motion to amend, and McKesson would not be unduly prejudiced by Swisslog's amendments, the Court should still refuse to grant Swisslog leave to amend because its proposed counterclaims could not withstand a motion to dismiss. The Federal Circuit has been very clear that only certain types of conduct constitute anticompetitive behavior in a patent case. As the Federal Circuit has observed a patent owner

10

who brings suit to enforce the statutory right to exclude others from making, using, or selling the claimed invention is **exempt from the antitrust laws**, even though such a suit may have an anticompetitive effect, unless the infringement defendant proves one of two conditions. *Glass Equipment Development Inc. v. Besten, Inc.,* 174 F.3d 1337, 1343 (Fed.Cir.1999) (citing *Nobelpharma AB v. Implant Innovations,* 141 F.3d 1059, 1068, 46 USPQ2d at 1104). First, he may prove that the asserted patent was obtained through knowing and willful fraud within the meaning of *Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 177, 86 S. Ct. 347, 15 L.Ed.2d 247 (1965). *See Glass Equip. Dev.,* 174 F.3d at 1343. Second, a defendant may demonstrate that the infringement suit was a mere sham to cover what is actually no more than an attempt to interfere directly with the business relationships of a competitor. *See id.* (citing *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 144, 81 S. Ct. 523, 5 L.Ed.2d 464 (1961)). Here, Swisslog's newly proposed counterclaims are pure antitrust claims that allege the type of competitive business activities that McKesson, as patent-holder in an exclusive market, is lawfully permitted to perform.

Swisslog's newly proposed counterclaims allege that McKesson possesses monopolistic power and has engaged in exclusionary conduct against Swisslog and other competitor through entering into sole sourcing agreements, predatory pricing and various other exclusionary tactics. *See* DeMatteo Declaration, Ex. A, ¶¶ 34-52, 79-117. Even if Swisslog's contentions were true, which they are not, none of the proposed facts or counterclaims state a claim for relief because each contention is fully consistent with an intellectual property owners' right to exclude competitors from infringing its valid patent rights.

It is axiomatic that McKesson's exercise of its patent rights cannot constitute an antitrust violation. "The patent laws which give a 17-year monopoly on 'making, using, or selling the

11

invention' are *in pari materia* with the antitrust laws and modify them *pro tanto.*" *Simpson v. United Oil Co. of California,* 377 U.S. 13, 24 (1964). *See also Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 816 (1945) ("[A] patent is an exception to the general rule against monopolies and to the right to access to a free and open market."); *United States v. United Shoe Mach. Co.,* 247 U.S. 32, 57 (1918) (stating that patentee's decision "to exclude others from the use of the invention ... is not an offense against the Anti-Trust Act").

While intellectual property rights do not confer a privilege to violate the antitrust laws, *see Intergraph Corp. v. Intel Corp.,* 195 F.3d 1346, 1362 (Fed.Cir.1999), "it is also correct that the antitrust laws do not negate the patentee's right to exclude others from patent property." *Id.* (citation omitted)(emphasis supplied). As a result, "the commercial advantage gained by new technology and its statutory protection by patent do not convert the possessor thereof into a prohibited monopolist." *Abbott Lab. v. Brennan,* 952 F.2d 1346, 1354 (Fed.Cir.1991).

Swisslog's newly proposed fifth through eighth counterclaims fail to raise *Walker Process* claims or sham litigation contentions. In the absence of any indication of illegal tying, specific fraud in the Patent and Trademark Office, or sham litigation, the law is clear that McKesson may enforce its statutory right to exclude others from making, using, or selling the claimed invention free from liability under the antitrust laws. Because McKesson clearly had the right under the patent laws to lawfully exclude Swisslog from making, using or offering to sell the infringing PillPick system, it could not, even assuming the facts in the light most favorable to Swisslog, have violated any antitrust laws in doing so. *See In re Independent Service Organizations Antitrust Litigation,* 203 F.3d 1322, 1327 (Fed. Cir. 2000). The Court should thus deny Swisslog's motion to amend to add additional antitrust counterclaims as futile.

**D.    DEFENDANTS HAVE UNDULY DELAYED FILING FOR
LEAVE TO AMEND TO ADD THE NEW INEQUITABLE
CONDUCT CONTENTIONS**

Swisslog's proposed amendment regarding inequitable conduct goes far beyond a request

for mere supplementation. Swisslog is not requesting leave to supplement previously pled

inequitable conduct allegations; instead, it is attempting, at the eleventh hour, to inject a

distinctly new inequitable conduct theory to the case. Swisslog cannot show that reasonable

diligence was exercised in seeking this extension.

Swisslog received the documents relating to their newly minted inequitable conduct

allegations on or about May of 2006 and April of 2007. It received copies of the prosecution

histories, which fully indicate what documents were or were not disclosed to the Patent Office

during prosecution for each of the patents-in-suit, on or about May of 2006. Plaintiff McKesson

Automation's Initial Disclosure Statement (May Decl., Ex. M), p.6. Thus, as of April of 2007,

Swisslog had all the information necessary to plead with the necessary particularity their

inequitable conduct allegations concerning non-disclosure of documents allegedly relating to

"prior art demonstrations, sales and offers for sale of AHI's hospital pharmacy systems."

Swisslog's decision to wait until now, with less than three weeks remaining in discovery and

approximately nine months after the cut-off for amending pleadings, constitutes undue delay.

Swisslog points to the deposition testimony of inventor Sean McDonald in attempting to

justify the delay. Defendants' Motion, p. 15. This excuse rings hollow. First, Swisslog argues

that Mr. McDonald "testified that he never disclosed to the Patent Office material information

regarding prior art sales and demonstrations of AHI's hospital pharmacy automation system."

*Id.*, n.12. However, Mr. McDonald's deposition testimony was not needed to ascertain whether

the information at issue was disclosed to the Patent Office – Swisslog possessed this information

13

through the prosecution history documents on or before May of 2006. Second, Swisslog argues that Mr. McDonald's deposition was intentionally delayed by McKesson. *Id.*, pp. 15-16. This not only mischaracterizes the events as they transpired during the scheduling of his deposition (as Swisslog cancelled the McDonald deposition on at least one occasion), but it fails to acknowledge that Mr. McDonald is a third party witness not under McKesson's control. Additionally, Swisslog has failed to point to a single piece of information or evidence supplied by the McDonald deposition that did not exist in the documents already in their possession. Indeed, Mr. McDonald made clear during his deposition to clarify that there were absolutely no early demonstrations or offers for sale. *See, e.g.*, McDonald Dep. Tr. 111:22-112:12 (May Decl., Ex. N). It is hard to see how his testimony provided any new basis to contend that inequitable conduct occurred – if anything, Mr. McDonald's testimony made clear that absolutely no material information was withheld from the Patent Office.

Finally, Swisslog noticed the depositions of the other three inventors listed on the patents-in-suit, Ellen Hertz, James Smith and Gregory Toto, when they noticed the McDonald deposition. The notices for each of these three inventors stood pending for several months and were eventually withdrawn by Swisslog. Had Swisslog truly needed inventor testimony to plead the non-disclosure defense, they could have obtained it from one of the four inventors shortly after receiving the documents they contend were improperly withheld from the Patent Office. Instead, Swisslog delayed, causing great prejudice to McKesson if the proposed amendment is now permitted.

"A party is unduly prejudiced if amendment would cause surprise, result in additional discovery, or add cost in the preparation to defend against new facts or theories." *Inline Connection Corp.*, 237 F.R.D. at 370 (quoting *Amquip v. Admiral Ins. Co.*, 231 F.R.D. 197, 199

(E.D. Pa. 2005). Applying this test to the circumstances here results in a prejudicial trifecta.
McKesson would undoubtedly be surprised, as the time for amendments in this case expired nine
months ago, and because Swisslog never raised the possibility of an inequitable conduct defense,
McKesson has not planned to defend against such a claim. *See McLaughlin v. Diamond State
Port Corp.,* Civ. A. No. 03-617 (GMS), 2004 WL 2958664, *4 (D. Del. Dec. 21, 2004)[2] ("The
purpose of a scheduling order is to provide concrete deadlines on which the parties can rely in
planning their respective litigation strategies. If the court were to permit the parties to ignore
these deadlines, unfair surprise would abound.").

Beyond this, Swisslog's delay would result in additional discovery, resulting in additional
costs and attorneys' fees. Had Swisslog moved to amend in May of 2007, after receiving the
documents required to raise its non-disclosure allegations, the parties could have taken the
depositions of the prosecuting outside attorneys, counsel for Automated Healthcare, and the
other three inventors during the ordinary course of discovery. Each of these individuals likely
possesses knowledge relevant to these issues, yet none have been deposed. Beyond this,
McKesson would be required to seek deposition testimony of individuals with knowledge of the
experimental nature of the incidents at issue. This would undoubtedly result in significant
additional discovery and increased fees.[3]

There is simply no just reason to further delay the proceedings in this matter to allow
additional discovery. Swisslog possessed the prosecution history documents in May of 2006 and
received the great majority of documents relating to demonstrations, sales and offers for sale of

---

[2] A copy of this case is attached to the May Declaration as Ex. O.

[3] Yet again, these new charges would also require an additional expert witness to address
disclosure requirements at the Patent Office and the standard of care in producing documents
during prosecution of patent applications.

15

AHI's automation systems in April of 2007. Swisslog's tactical decision to wait until the very end of fact discovery to move to add brand new inequitable conduct claims has resulted in undue delay that would unfairly prejudice McKesson.

## E.   SWISSLOG HAS UNDULY DELAYED FILING FOR LEAVE TO AMEND TO ADD THE NEW LACK OF STANDING AFFIRMATIVE DEFENSE

Swisslog offers no explanation in the opening papers as to why they could not have amended the Answer to add their affirmative defense to allege lack of standing shortly after receiving production of the documents relating to the assignment. All of the documents relating to the assignment of rights in the patents-in-suit were produced to Swisslog in April of 2007. May Decl., Exs. P, Q. It is thus clear that Swisslog has failed to provide a satisfactory explanation for the long delay in filing the motion to amend and the motion should thus be denied. *See Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the Virgin Islands*, 663 F.2d at 425 (3d Cir. 1981) (motion for amendment should be denied when amendment is grounded on "bad faith or dilatory motive, truly undue or explained delay....").

Beyond this, Swisslog's proposed amendment would be futile. If Swisslog is correct on the standing issue, the Court will grant the pending Rule 12(b)(1) motion and the case will be dismissed. If McKesson is correct, the Court will find that the assignment was extinguished when the loan was repaid and McKesson possesses standing to sue. In either event, the issue will be fully resolved through the pending motion to dismiss and it would be an unnecessary exercise in futility to grant Swisslog's motion to amend with regard to this affirmative defense.

## V.    **CONCLUSION**

For the reasons stated above, McKesson requests that the Court deny Swisslog Italia and

Translogic's motion for leave to amend.

Dated:  October 25, 2007                BLANK ROME LLP

_Dale R. Dubé_

Dale R. Dubé (#2863)
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE 19801
Tel: (302) 425-6472
Fax: (302) 425-6464

Blair M. Jacobs
Robert A. Gutkin
Christina A. Ondrick
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 383-0100
Fax: (202) 637-3593

*Counsel for Plaintiff*
McKesson Automation, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of October, 2007, I served by hand delivery and electronic filing PLAINTIFF MCKESSON AUTOMATION, INC.'S OPPOSITION TO DEFENDANTS' MOTION FOR LEAVE TO AMEND THEIR ANSWERS AND COUNTERCLAIMS, using CM/ECF which will send notification of such filing to the following:

> Julia Heaney, Esquire
> MORRIS, NICHOLS ARSHT & TUNNELL
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899

I also certify that, on this 25th day of October, 2007, I served the aforementioned document, by e-mail and Federal Express, upon the following participants:

> Lawrence C. Drucker, Esquire
> Alfred R. Fabricant, Esquire
> Richard LaCava, Esquire
> Bryan N. DeMattio, Esquire
> DICKSTEIN SHAPIRO LLP
> 1177 Avenue of the Americas
> New York, NY 10036

Dale R. Dubé

Dale R. Dubé

# TAB 1

# UNREPORTED CASE

Westlaw.

Slip Copy

Slip Copy, 2007 WL 77324 (D.N.J.)
**(Cite as: Slip Copy)**

**H**

Keene v. Sears Roebuck & Co., Inc.
D.N.J.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. New Jersey.
Willard KEENE, Plaintiff,
v.
SEARS ROEBUCK & CO., INC., et al.,
Defendants.
**Civil Action No. 05-828(AET).**

Jan. 8, 2007.

Gregory S. Schaer, Freehold, NJ, for Plaintiff.
Robert James Toy, Rosemarie D. Mercury, Post &
Schell, PC, Philadelphia, PA, for Defendants.

HUGHES, U.S.M.J.
\*1 This matter is before the Court upon the Motion
of Plaintiff Willard Keene ("Plaintiff") for Leave to
File an Amended Complaint. Defendants Sears
Roebuck & Co., Inc. and Somiya Bhatnagar ("
Defendants") oppose the motion. Plaintiff's
complaint initially alleged violations of the New
Jersey Law Against Discrimination ("NJLAD"), age
discrimination, intentional infliction of emotional
distress, breach of contract, and breach of implied
covenant of good faith and fair dealing. Plaintiff
amended his complaint in March 2005 to include
discrimination based on handicap. Plaintiff's present
motion to amend his complaint to include race
and/or national origin discrimination comes after
Defendants' summary judgment motion has been
heard and decided and a final pretrial order has
been entered. The Court reviewed the written
submissions of the parties and conducted oral
argument on January 3, 2007. For the reasons that
follow, Plaintiff's Motion to Amend/Correct
Complaint is denied.

**I. *BACKGROUND AND PROCEDURAL***

*HISTORY*

*A. Factual Background*

Plaintiff was hired by Sears, Roebuck & Company (
"Sears") as a Sales Associate at a store in Ocean
Township, New Jersey on July 16, 1991 and served
as an employee of Sears for twelve (12) years. (Pl.'s
Ltr. Br. at 5). During his employment, Plaintiff had
no disciplinary action taken against him for any
reason. *Id.* In 1999, when Plaintiff was 59 years old,
he was transferred to the "Brand Central"
Department, "one of the most lucrative placements
for a Sales Associate."*Id.* at 6, 14.Following his
transfer, Plaintiff continued his employment without
any disciplinary problems. *Id.* at 7.

Around the time of Plaintiff's transfer, Sears
changed its business practices by increasing its
emphasis on customer satisfaction and giving sales
associates authority to implement the changes. *Id.*
As part of this new emphasis on customer
enthusiasm, Sears gave sales associates more
autonomy in their decisions without requiring them
to first obtain management approval before
adjusting the price of merchandise. *Id.* at 10.For
example, sales associates were permitted to extend
a discount of up to 10% to customers for various
reasons without first obtaining management
approval. *Id.* at 11.Sears included this new
philosophy in the company's written policies. *Id.*

In October 2002, Somiya Bhatnagar, a 29 year old
male "of foreign descent," [FN1] was hired as Store
Manager in the Ocean Township Sears store where
Plaintiff was employed. *Id.* at 14.Plaintiff contends
that Mr. Bhatnagar treated him with hostility,
frequently ignored him or failed to acknowledge
him, and deliberately failed to speak to Plaintiff by
name. *Id.* As an example, Plaintiff alleged that, in
one instance, Mr. Bhatnagar directed that a refund
be "credited to Mr. Keene's account even though
Mr. Keene was not the original associate who rang

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the transaction" which resulted in a reduction of Plaintiff's revenue figures used to calculate payment and commissions. *Id.*

> FN1. This description of Mr. Bhatnagar was gratuitously included in the original Complaint. (Pl.'s Compl. at ¶ 9; *see also* Pl.'s First Am. Compl. at ¶ 9). In Plaintiff's proposed Second Amended Complaint, he described Mr. Bhatnagar as a man of "Indian/Asian descent." *(See* Pl.'s Second Am. Compl. at ¶ 9).

**\*2** During the week of December 9, 2002, Plaintiff extended discounts to eight (8) customers within a two day period. *Id.* at 14-15.Some of the discounts extended by Plaintiff during this week were the result of a sale that was scheduled for Saturday of the same week. *Id.* at 16.The discounted prices paid by these customers during the week were no less than the price the customers would have paid if the merchandise had been purchased during the sale on Saturday. *Id.* at 17.

On December 14, 2002, Plaintiff was brought into the office in the presence of Mr. Bhatnagar and told that he had improperly extended discounts to customers during the week of December 9, 2002. *Id.* at 18.During this meeting, Plaintiff was instructed to provide a written statement which required his date of birth and all of the facts and circumstances regarding the discounts Plaintiff extended. *Id.* Plaintiff claims that during this meeting, Mr. Bhatnagar treated Plaintiff with hostility by refusing to address Plaintiff by name and instructing the Asset Production Manager not to provide Plaintiff with a copy of his own statement. *Id.* Following the meeting, Plaintiff was "directed to leave the store and that he was suspended until further notice."*Id.*

On December 16, 2002, Plaintiff was called into the store to discuss with Mr. Bhatnagar the status of his employment. *Id.* at 19.Plaintiff contends that Mr. Bhatnagar was hostile and demeaning during this meeting by demanding that Plaintiff immediately " sit down" and by talking to Plaintiff through Angela Velardi, a witness. *Id.* Mr. Bhatnagar then told Plaintiff that he was being terminated for violating

Company policy. *Id.* Plaintiff contends that Mr. Bhatnagar refused to explain what policy Plaintiff had violated and told Plaintiff that there were no avenues of appeal. *Id.* Plaintiff claims that he never received any termination letter or other document explaining the basis for his termination. *Id.* at 20.Internal corporate documentation of Sears indicates that Plaintiff retired and makes no mention of his being terminated.*Id.*

Also on December 16, 2002, Mohammad Moinuddin, a 43 year old male, was hired to fill Plaintiff's position in the Brand Central Department. *Id.* Plaintiff states that Mr. Moinuddin is also of Indian/Asian descent.[FN2]*Id.* Plaintiff further contends that Mr. Moinuddin extended a 25% discount to Mr. Bhatnagar's cousin. *Id.* at 27.Plaintiff further claims that Mr. Bhatnagar himself extended unauthorized discounts to his cousin and his cousin's relative, which were not viewed as violations of company policy by Sears, in direct contrast to Defendants' treatment of Plaintiff. *Id.* at 26.

> FN2. Plaintiff's original Complaint and First Amended Complaint do not mention Mr. Moinuddin by name, but state that " [a]fter plaintiff's termination, he was replaced with individuals who were younger and did not suffer from medical disabilities."(Pl.'s Compl. at ¶ 14; Pl.'s First Am. Compl. at ¶ 14). Plaintiff's proposed Second Amended Complaint states that "[o]n or about the day that Mr. Keene was terminated by Mr. Bhatnagar, a younger individual, who, like Mr. Bhatnagar, was of Indian/Asian descent, was hired and was specifically assigned to a position in the Brand Central Department where Mr. Keene had worked[;] ... That individual, Mohammad Moinuddin, was a newly hired employee and was 43 years of age, substantially younger than Mr. Keene. "(Pl.'s Second Am. Compl. at ¶ 14).

### *B. Procedural History*

On December 9, 2004, Plaintiff filed a Complaint

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 77324 (D.N.J.)
**(Cite as: Slip Copy)**

against Defendants in the Monmouth County New Jersey Superior Court alleging (1) violations of the New Jersey Law Against Discrimination ("NJLAD" ), including age discrimination, (2) intentional infliction of emotional distress, (3) breach of contract, and (4) breach of implied covenant of good faith and fair dealing. *(See* Pl.'s Compl.). Paragraph nine (9) of Plaintiff's initial Complaint made reference to Mr. Bhatnagar's national origin although the specific nature of his national origin was not known to Plaintiff at that time. (Pl.'s Reply Ltr. Br. at 2). Defendant Sears, Roebuck and Co. removed the case to federal court on February 14, 2005. (*See*Dkt. no. 05-828, entry no. 1).

\*3 Plaintiff filed a First Amended Complaint on March 21, 2005 to include discrimination based on Plaintiff's handicap. (*See*Dkt. no. 05-828, entry no. 8). Defendants filed an answer and affirmative defenses on April 4, 2005, and filed an amended answer to the First Amended Complaint on February 23, 2006. *(See* Dkt. no. 05-828, entry no. 9, 16). This Court entered an Order setting discovery deadlines on March 21, 2006 which required Defendants to file summary judgment motions no later than June 9, 2006. *(See* Dkt. no. 05-828, entry no. 17).

Defendants filed a motion for summary judgment on June 9, 2006 which was granted in part and denied in part on August 2, 2006. (*See*Dkt. no. 05-828, entry no. 18, 31). Specifically, Defendants' summary judgment motion was granted as to counts 4-6 of Plaintiff's amended complaint (violation of NJLAD for handicap and perceived handicap and intentional infliction of emotional distress), denied as to counts 1-3 (violation of NJLAD for age discrimination, failing to take appropriate remedial action and failure to train, supervise and discipline, and wrongful termination), and denied without prejudice as to counts 7-8 (breach of contract and breach of implied covenant of good faith and fair dealing).*(See* Dkt. no. 05-828, entry no. 31). During oral argument on the summary judgment motion on July 31, 2006, Judge Cooper noted, without objection or comment from Plaintiff's counsel, that there was no claim for national origin or race discrimination in Plaintiff's complaint. (Defs.' Opp. Mem. at 5).

The present motion arose, not out of the pleadings themselves, but rather in an evidentiary context. A Final Pretrial Conference was held on October 6, 2006, and a Final Joint Pretrial Order was filed on November 6, 2006. *(See* Dkt. no. 05-828, entry no. 36). Defendants allege that the first time Plaintiff's counsel raised the issue of amending the First Amended Complaint was in his third draft of the proposed Pretrial Order. (Defs.' Opp. Mem. at 5). Specifically, Plaintiff states that it "was only during the final revisions to the Final Pretrial Order that defendants raised an objection by seeking to include a provision in the Order providing that they intended to object to any evidence at trial relating to referencing Mr. Bhatnagar's national origin or race." (Pl.'s Reply Ltr. Br. at 3). Plaintiff further states that it was at the this time "that it first became apparent that an amendment of the Complaint might be necessary in order to preserve plaintiff's ability to introduce such evidence."*Id.* at 3-4.

Plaintiff filed the present motion to amend on November 10, 2006. *(See* Dkt. no. 05-828, entry no. 37) and oral argument was heard on January 3, 2007. In his Proposed Second Amended Complaint Plaintiff seeks to change the reference to Mr. Bhatnagar's national origin in paragraph 9 of the original and first amended complaints from "of foreign descent" to "of Indian/Asian descent." *(See* Pl.'s Compl. at ¶ 9; Pl.'s Second Am. Compl. at ¶ 9). Plaintiff further proposes to alter paragraph 14 of the original and first amended complaints from referencing only Plaintiff's replacement with younger individuals without disabilities to the following:
\*4 On or about the day that Mr. Keene was terminated by Mr. Bhatnagar, a younger individual, who, like Mr. Bhatnagar, was of Indian/Asian descent, was hired and was specifically assigned to a position in the Brand Central Department where Mr. Keene had worked. That individual, Mohammad Moinuddin, was a newly hired employee and was 43 years of age, substantially younger than Mr. Keene.

*(See* Pl.'s Compl. at ¶ 14; Pl.'s Second Am. Compl. at ¶ 14). Plaintiff seeks to change Count I from a purely age discrimination violation of the NJLAD to one that includes race and/or national origin.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 77324 (D.N.J.)
(Cite as: Slip Copy)

Plaintiff asserts that the proposed amendment is appropriate under Federal Rule of Civil Procedure 15(a)'s liberal standard. (Pl .'s Ltr. Br. at 28-29). Plaintiff further asserts that his proposed amendment would not be untimely, unduly prejudicial to Defendants, or futile. *Id.* at 31, 34-35.Plaintiff also argues that the amendment is appropriate pursuant to Federal Rule of Civil Procedure 15(c) because it relates back to the date of the original pleading. *Id.* at 33.Defendants argue in opposition that Plaintiff's counsel is acting in bad faith in seeking to amend the First Amended Complaint. (Defs.' Opp. Mem. at 5). In addition, Defendants contend that Plaintiff has failed to show good cause for amending the scheduling order pursuant to Rule 16(b).*Id.* at 7. Defendants further contend that Plaintiff's motion should fail under Rule 15(a) because the proposed amendment would be untimely, prejudicial, and futile. *Id.* at 10-14.

## II. *DISCUSSION*

Plaintiff contends that leave to amend should be freely given pursuant to Federal Rule of Civil Procedure 15(a). (Pl.'s Ltr. Br. at 28-29). Plaintiff further contends that the amendment is not untimely and would not create undue prejudice to Defendants because it is based on the same facts and evidence that have already been addressed by the parties previously in this litigation.*Id.* at 34-35.Plaintiff further contends that his proposed amendment would not be futile because the same evidence which shows pretext on the part of Defendants provides a basis for establishing racial discrimination. *Id.* at 31.Plaintiff argues that the racial discrimination claim relates back to the date of the original pleading and is therefore appropriate. *Id.* at 33.Plaintiff specifically argues that Defendants' alleged racial discrimination arises out of the conduct, transactions, and occurrences set forth in the original pleading. *Id.*

Defendants argue, in opposition, that Plaintiff has failed to show good cause for his delay in amending the complaint to include national origin and racial discrimination as required under Federal Rule of Civil Procedure 16(b). (Defs.' Opp. Mem. at 7). Defendants further argue that Plaintiff's motion

should be denied even under the more liberal standard of Rule 15(a).*Id.* at 10.

Specifically, Defendants contend that Plaintiff's motion to amend is (1) in bad faith because he seeks to "highlight Mr. Bhatnagar's place of birth to the jurors," (2) untimely because it was filed two years after the complaint was filed, after discovery has ended, and following decision on a summary judgment motion, (3) prejudicial because it would require further investigation and discovery, and (4) futile because Plaintiff's claims of racial discrimination are based on speculation with no evidence that a similarly situated individual was treated more favorably than Plaintiff. *Id.* at 11-14.

**\*5** Plaintiff replies that issues relating to national origin and race "were raised in the original Complaint as well as during the course of discovery. "(Pl.'s Reply Ltr. Br. at 2). Plaintiff argues that it was only during the final revisions of the Final Pretrial Order that Defendants raised an objection regarding Plaintiff's mention of Mr. Bhatnagar's and Mr. Moinuddin's race and/or national origin. *Id.* at 3. Plaintiff further argues that the passage of time alone does not, without more, constitute undue delay. *Id.* at 11.Plaintiff also refutes that the amendment would cause Defendants prejudice because Defendants have access to all relevant documents pertaining to the individuals at issue. *Id .* Plaintiff argues that the facts and evidence of record are sufficient to establish a *prima facie* case of race or national origin discrimination. *Id.* at 21.

### A. *Federal Rule of Civil Procedure 15(a)*

Federal Rule of Civil Procedure 15 provides that leave to amend a Complaint "shall be freely given when justice so requires."FED. R. CIV. P. 15(a). The decision whether to grant or deny a motion for leave to amend "rests within the sound discretion of the district court."*Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644, 654 (3d Cir.1998). See *Foman v. Davis,* 371 U.S. 178, 182 (1962). The Court can deny a motion to amend if (1) there has been undue delay, bad faith, or dilatory motive, (2) if the amendment would be futile, or (3) if there would be prejudice to the other party. *Hill v. City of*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Scranton,* 411 F.3d 118, 134 (3d Cir.2005);
*Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d
289, 292 (3d Cir.1988).

### 1. Undue Delay, Bad Faith, or Dilatory Motive

The Third Circuit has held that "[t]he passage of
time, without more, does not require that a motion
to amend a complaint be denied; however, at some
point, the delay will become 'undue,' placing an
unwarranted burden on the court, or will become '
prejudicial,' placing an unfair burden on the
opposing party."*Adams v. Gould Inc.,* 739 F.2d
858, 868 (3d Cir.1984) (citing *Chitimacha Tribe of
Louisiana v. Harry L. Laws Co.,* 690 F.2d 1157,
1163 (5th Cir.1982)). The analysis of undue delay
and bad faith require that the Court focus on the
plaintiff's motives for not amending the complaint
earlier. *Id.* at 868.

In the present case, Plaintiff filed his motion to
amend on November 10, 2006, following the ruling
on Defendants' summary judgment motion on
August 2, 2006 and the entry of the Final Joint
Pretrial Order on November 6, 2006. However, as
explained in *Adams,* the timing of Plaintiff's motion,
alone, is not a basis for finding undue delay or bad
faith on the part of Plaintiff. Defendants submit that
Plaintiff had notice of his failure to plead race or
national origin discrimination on July 31, 2006,
during oral argument before Judge Cooper on
Defendants' summary judgment motion. Defendants
argue that only after they objected to any reference
to Mr. Bhatnagar's national origin at trial did
Plaintiff seek to add a claim for race or national
origin discrimination in order to reference Mr.
Bhatnagar's national origin and the national origin
of other sales associates or customers before the
jury. *(See* Defs.' Opp. Mem. at 7). Therefore,
Defendants claim that Plaintiff's intent is to
improperly influence the jury with reference to Mr.
Bhatnagar's race and national origin.

*6 Despite Defendants' assertions that Plaintiff's
behavior and timing reach the level of undue delay
and bad faith, the Court finds no evidence to
indicate Plaintiff's primary purpose in amending his
complaint at this time is to improperly reference the

national origin of Mr. Bhatnagar and other
associates or customers in front of the jury. Plaintiff
referenced Mr. Bhatnagar's race and national origin
as early as the initial complaint. Although Plaintiff
was put on notice by Judge Cooper during oral
argument on Defendants' summary judgment motion
that his complaint did not contain the claim of race
and/or national origin discrimination, he had
numerous opportunities to amend his pleadings to
include this cause of action. However, timing alone
is not sufficient for a finding of undue delay.
Therefore, the Court finds no undue delay or bad
faith on the part of Plaintiff in filing this motion to
amend.

### 2. Prejudice

The Third Circuit Court of Appeals regards the
potential of prejudice to the nonmoving party as the
"touchstone for the denial of the amendment"
pursuant to Federal Rule of Civil Procedure 15(a).
*Lorenz v. CSX Corp.,* 1 F.3d 1406, 1414 (3d
Cir.1993) (quoting *Cronell & Co., Inc. v.
Occupational Safety and Health Review Comm'n,*
573 F.2d 820, 823 (3d Cir.1978)). The nonmoving
party has the burden of showing unfair disadvantage
or deprivation will result if the amendment is
allowed. *In re Bristol-Myers Squibb Sec. Litig.,*
228, F.R.D. 221, 228 (D.N.J.2005). A finding of
prejudice involves a "serious impairment of the
nonmovant's ability to present its case," whereas
undue prejudice is found when the nonmoving party
shows it "would be disadvantaged or deprived of
the opportunity to present facts or evidence that it
would have offered."*Id.* (citing *Harrison Beverage
Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 468
(D.N.J.1990)).

In *Bristol-Myers,* at the time of the motion to
amend, discovery had closed with the parties having
engaged in "wide-ranging fact discovery."
*Bristol-Myers,* 228, F.R.D. at 223. The Court found
that "allowing Plaintiff to amend the Complaint at
this point 'deprives [the Defendants] of fair notice,
possibly discovery, and the opportunity for motion
practice....' " *Id.* at 229 (citing *Wilson v. Muckala,*
303 F.3d 1207 at 1215-16 (2002)). The Court based
this finding, in part, on the fact that "Defendants

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

would have to examine each new claim and conduct discovery to fairly defend themselves against these new allegations." *Id.*

In analyzing prejudice, the Court must focus on the effect on the defendants.*Adams,* 739 F.2d at 868. In *Adams,* Defendants asserted that they would be prejudiced if Plaintiffs were allowed to amend their complaint because of additional counsel fees and the need for finality in litigation. *Id.* at 869.The Third Circuit held that Defendants would not be prejudiced by Plaintiffs' proposed amendment in part because further extensive discovery would not be necessary. *Id.* However, in *Berger v. Edgewater Steel Co.,* 911 F.2d 911 (3d Cir.1990), the Third Circuit upheld a district court's decision to deny plaintiff's motion to amend because the addition of a discrimination claim was a broader claim than violation of ERISA and would require extensive discovery. 911 F.2d at 924.

*7 In the present matter, Plaintiff's claim of race or national origin discrimination is based largely on the same facts as the claims in the original and first amended complaints. However, discovery has been conducted based on Plaintiff's claims of age discrimination, not on a claim of race or national origin discrimination. Unlike the Defendants in *Adams,* Defendants in the present matter would seek more than counsel fees if Plaintiff's motion were granted. Instead, similar to *Berger,* Defendants would require significant additional discovery.

Plaintiff argues that no additional discovery would be necessary because the "facts and evidence are the same that plaintiff relies upon in support of his age discrimination claim."*(See* Pl.'s Ltr. Br. at 35). However, during oral argument, Defendants' counsel stated that if Plaintiff's motion were granted, Defendants' would require additional discovery, including the deposition testimony of Mr. Moinuddin and further research into how Mr. Moinuddin was classified racially by Sears and who specifically classified him as such. The Court finds, similar to *Bristol-Myers,* that if Plaintiff were allowed to amend his complaint at this late stage in the litigation, not only would significant additional discovery be required as in *Berger,* but also Defendants would be disadvantaged by losing the

opportunity for dispositive motion practice based on Plaintiff's additional claim. Therefore, the Court finds undue prejudice to Defendants if Plaintiff were permitted to amend his complaint to include a claim of race and/or national origin discrimination.

### 3. Futility

" 'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."*In re Burlington Coat Factory Securities Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997) ; *see also Onyiuke v. New Jersey State Supreme Court,* 435 F.Supp.2d 394, 403 (D.N.J.2006) ("An amendment is considered futile 'if the amendment will not cure [any] deficiency in the original complaint or if the amended complaint cannot withstand a motion to dismiss.' "). Therefore, the same standard for legal sufficiency applies in determining futility and in evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).*Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir.2000) ("In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."); *see also Lesser v. City of Cape May,* 110 F.Supp.2d 303, 331 (D.N.J.2000).

In analyzing whether a complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), "a court must reasonably read the complaint and decide whether the plaintiff has pled a cognizable cause of action entitling it to relief."*Onyiuke,* 435 F.Supp.2d at 404. For the purposes of this analysis, a court " accepts as true all of the well-pleaded factual allegations within the complaint and any reasonable inferences drawn therefrom."*Id.* If the proposed amendment is not clearly futile, then denial of the motion to amend is improper. *Harrison Beverage Co. v. Dribeck Importers, Inc.,* 133 F.R.D. 463, 468 (D.N.J.1990).

*8 In the present matter, Plaintiff alleges that Mr. Bhatnagar, a man of Indian descent, fired Plaintiff, a Caucasian male, in order to hire another sales associate of Indian/Asian descent. However, Plaintiff can point to no deposition transcript or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2007 WL 77324 (D.N.J.)
**(Cite as: Slip Copy)**

factual certification in dispositive motion practice that supports an inference of racial discrimination. Plaintiff's counsel conceded at oral argument that he is not presently aware of Mr. Moinuddin's precise national origin, yet he is basing his race and discrimination claim on the racial connection between Mr. Bhatnagar and Mr. Moinuddin. It appears to the Court that Plaintiff's claim of race and/or national origin discrimination is based on mere speculation.

"The McDonnell Douglas framework, as modified by the Supreme Court of New Jersey, requires a plaintiff to satisfy [the following] four elements by a preponderance of the evidence to establish a *prima facie* case of age discrimination": (1) Plaintiff must show that he belongs to a protected class; (2) Plaintiff must demonstrate he was qualified for the position in question; (3) Plaintiff must show that he was terminated despite his adequate qualifications; and (4) Plaintiff must demonstrate that the " employer sought others to perform the same work after he was terminated from his position."*Wright v. L-3 Communications Corp .,* 227 F.Supp.2d 293, 298 (D.N.J.2002). In contrast, the final element in a *prima facie* case of race or national origin discrimination requires Plaintiff to prove that " employees not in the protected class were treated more favorably."*Stokes v. Accounts Receivable Management, Inc.,* No. 05-00437, 2006 WESTLAW 3228025 * 3 (D.N.J. Nov. 2, 2006).

Plaintiff in the present case has made no claim in the proposed Second Amended Complaint that employees outside the protected class were treated more favorably than Plaintiff and provides the Court no factual or evidentiary basis for a finding of race or national origin discrimination. Plaintiff's proposed amendment to paragraph 14 of his First Amended Complaint provides only that Plaintiff was replaced by Mohammad Moinuddin who "was 43 years of age, substantially younger than Mr. Keene."*(See* Pl.'s Second Am. Compl. at ¶ 14). Other than the basic fact of Mr. Bhatnagar's and Mr. Moinuddin's ethnicity, of which Plaintiff is unsure for Mr. Moinuddin, Plaintiff's claim of discrimination based on race or national origin invites pure speculation. Therefore, based on a Rule 12(b)(6) standard, which demands the Court accept

Plaintiff's allegations as true and view them in a light most favorable to Plaintiff, the Court finds that Plaintiff's motion to amend his complaint to include race and/or national origin discrimination would be futile. The Court notes, however, that it is not ruling on the admissibility of the connection between Mr. Bhatnagar and Plaintiff's replacement at trial.

### *B. Federal Rule of Civil Procedure 16(b)*

Federal Rule of Civil Procedure 16(b) provides that once a scheduling order has been entered by the Court, it "shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge."[FN3]FED.R.CIV.P. 16(b).

> FN3.Federal Rule of Civil Procedure 16(e) provides that "[t]he order following a final pretrial conference shall be modified only to prevent manifest injustice." FED.R.CIV.P. 16(e). In the present matter, a Final Pretrial Conference was held on October 6, 2006, and a Final Joint Pretrial Order was entered on November 6, 2006. However, because the Court finds that Plaintiff failed to show good cause under Rule 16(b), it will not reach the issue of manifest injustice under Rule 16(e).

**\*9** Courts "must consider F.R.Civ.P 16(b)'s requirements that scheduling orders only be modified for 'good cause' in conjunction with Rule 15(a)'s directive that leave to amend a complaint be 'freely given.' " *Reynolds v. Borough of Avalon,* 799 F.Supp. 442, 450 (D.N.J.1992).

Defendants argue that Plaintiff offers no good cause as to why he did not seek to amend his complaint, which was filed two years ago, to include race or national origin discrimination previously, especially following Judge Cooper's statements regarding the lack of this claim during oral argument on July 31, 2006. Plaintiff contends that Defendants were aware of the race issue prior to this motion because Plaintiff made reference to Mr. Bhatnagar's national origin in his initial Complaint. *(See* Pl.'s Reply Ltr.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                 Page 8

Slip Copy, 2007 WL 77324 (D.N.J.)
**(Cite as: Slip Copy)**

Br. at 2). Plaintiff further argues that issues relating
to race and national origin were raised in discovery
and included in the Statement of Material Facts
submitted in connection with Defendants' Motion
for Summary Judgment. *Id.*

During final revisions to the Final Pretrial Order,
Defendants raised an objection to any evidence at
trial relating to Mr. Bhatnagar's national origin. *Id.*
at 3. Plaintiff argues that it was at this point that he
sought to amend the Complaint to "preserve
plaintiff's ability to introduce such evidence."*Id.* at
3-4.Plaintiff's counsel submitted a letter to the Court
in advance of the Final Pretrial Conference to make
the Court aware of the race/national origin issue to
be discussed at the conference. Although the Court's
initial inclination was to deny Plaintiff's application
without prejudice, the Court instructed Plaintiff to
raise the issue by formal motion if he wanted to
pursue it further. Plaintiff subsequently filed the
present motion to amend his complaint.

On March 21, 2005, Plaintiff filed a motion and
was permitted to amend his complaint to include
discrimination based on handicap. The Pretrial
Scheduling Order, entered on May 17, 2005,
directed that fact discovery would end by
November 30, 2005. Plaintiff was put on notice of
his failure to plead race and/or national origin
discrimination on July 31, 2006, during oral
argument before Judge Cooper. However, Plaintiff
did not file the present motion to amend the
complaint to include this count until November 10,
2006. Plaintiff has provided no satisfactory
explanation for his delay in seeking to include the
race and/or national origin discrimination claim.
Therefore, the Court finds, as an alternative basis
for denying the Motion, that Plaintiff has not shown
good cause to modify the Court's scheduling order
and amend his complaint.

### III. *CONCLUSION*

For the reasons expressed here, the Court finds no
undue delay or bad faith on the part of Plaintiff in
seeking to amend his Complaint pursuant to Federal
Rule of Civil Procedure 15(a). However, the Court
finds undue prejudice to Defendants if Plaintiff's

motion is granted, in part, because of the need for
significant additional discovery. The Court further
finds that Plaintiff's claim of race and/or national
origin discrimination would be futile under a Rule
12(b)(6) standard. The Court further finds, in
considering Federal Rule of Civil Procedure 16(b)
in conjunction with Rule 15(a), that Plaintiff has
failed to show good cause for modifying the Court's
May 17, 2005 scheduling order. Therefore,
Plaintiff's Motion to Amend/Correct Complaint is
denied.

**\*10** An appropriate Order accompanies this
Memorandum Opinion.

D.N.J.,2007.
Keene v. Sears Roebuck & Co., Inc.
Slip Copy, 2007 WL 77324 (D.N.J.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

# UNREPORTED CASE

# Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 2958664 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**

McLaughlin v. Diamons State Port Corp.
D.Del.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Dannette G. MCLAUGHLIN, Plaintiff,
v.
DIAMOND STATE PORT CORP., Defendant.
**No. C.A.03-617(GMS).**

Dec. 21, 2004.

Laurence V. Cronin, Smith, Katzenstein, & Furlow, Wilmington, DE, for Plaintiff.
Donald E. Reid, Jason A. Cincilla, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Defendants.

SLEET, J.

## I. INTRODUCTION

\*1 Presently before the court is plaintiff Dannette McLaughlin's Motion For Leave To File Her Amended Complaint. (D.I.34.) In McLaughlin's original complaint, filed July 1, 2003, she alleged one count of unlawful gender discrimination in violation of Title VII of the Civil Rights Act of 1964, *as amended,*42 U.S.C. § 2000e*et seq.* ("Title VII"), and one count of unequal pay in violation of the Equal Pay Act, 29 U.S.C. § 206 (1998). (D.I.1.) She now seeks to amend by adding a retaliation claim under Title VII, and an equal protection claim under 42 U.S.C. § 1983 (2003). (D.I.34.) Because McLaughlin has unduly delayed her request to amend, and because of the undue prejudice to the defendant that would result from an amendment, McLaughlin's motion will be denied.

## II. JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. §

1331 (1993).

## III. BACKGROUND

As of the time the complaint was filed, McLaughlin had been a part-time employee of Diamond State Port Corp. ("Diamond State") for six years. (D.I. 1 ¶ 12-13.) From September 2000 through May 2002, McLaughlin applied for various full-time positions with Diamond State. (Id.¶ 18.)However, she was unsuccessful in her bid to become full time and each position for which she applied was eventually filled by a man. (Id.¶ 20.)Although Diamond State proffered nondiscriminatory reasons for not hiring McLaughlin (id.¶¶ 21, 26), she has reason to believe gender discrimination to be the true reason (id.¶¶ 21-42). As a result, McLaughlin filed a Charge of Discrimination with the Equal Employment Opportunity Commission (" the EEOC") on May 28, 2002. (D.I. 34 Ex. A.) On April 3, 2003, the EEOC issued McLaughlin a right-to-sue letter.(Id.Ex. B.) She then proceeded to file suit against Diamond State and the International Longshoreman's Assoc. on July 1, 2003.[FN1](D.I.1.) A scheduling conference was held on February 25, 2004 during which the court set the deadline for amendments to the pleadings to be April 30, 2004. The discovery deadline was set at August 31, 2004, and the deadline for case-dispositive motions was set at September 14, 2004. (D.I.17.)

> FN1. International Longshoreman's Assoc. was dismissed as a defendant and only Diamond State remains. (Order of the Court, January 16, 2004.)

On July 29, 2004, McLaughlin signed a second EEOC Charge of Discrimination in which she alleges Diamond State retaliated against her for filing the first discrimination charge by passing her over for promotion. (D.I. 39 Ex. C.) The second charge is based on McLaughlin's assertion that

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 2958664 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Diamond State supervisor William Stansberry told James Woolford, who told Malik Davidum, who told McLaughlin, that "because [she] put this suit out, that [she'll] never get a job."(McLaughlin Dep. at 165:16-166:6, D.I. 39 Ex. D.) McLaughlin was issued another right-to-sue letter on September 20. (D.I. 34 Ex. D.) In the meantime, on August 30 plaintiff's counsel informed counsel for Diamond State of McLaughlin's intention to amend the complaint to add the retaliation and § 1983 claims:
Please be advised that plaintiff has filed a new EEOC charge alleging retaliation. As soon as we receive the right to sue, we will be filing a Motion to Amend the Complaint. In addition, as discovery has revealed the Port to be a "state actor," we will also be adding a claim under 42 U.S.C. § 1983. I wanted you to be aware of these issues before our Conference with Judge Sleet currently scheduled for September 1, 2004 at 9:00 a.m.
**\*2** I am on trial this week and will be difficult to reach. Please leave me a message if you have any questions and I will try to return your call before September 1, 2004. Thank you.

(August 30, 2004 Letter from Plaintiff's Attorney to Defendant's Attorney, D.I. 34 Ex. 2.)

Diamond State replied the same day:
I received your letter of today in which you noted that McLaughlin intends to move to amend her complaint to add a claim or [sic] retaliation and a section 1983 claim. You closed your letter by asking that I call if I have any questions. I will do so now. I am writing as well in the event that you are carrying a Blackberry. The schedule entered by the court provides that the time to amend pleadings expired over 4 months ago. Obviously we will oppose any effort on the of [sic] McLaughlin to amend her pleadings to add additional, baseless claims. In all events, if you intend to raise this issue with the Court in any substantive manner at the September 1 teleconference, please send me a detailed email identifying what exactly you intend to present so that I can be prepared to respond.

(August 30, 2004 Email from Defendant's Attorney to Plaintiff's Attorney, D.I. 41 Ex. C.)

The teleconference referenced in the above correspondence actually took place on September 3, and resulted in a revised scheduling order. In particular, the court acceded to the parties' requests to move the discovery deadline to October 1 and the deadline for case-dispositive motions to October 18. (D.I.26.) No mention of McLaughlin's desire to amend her complaint was made to the court by either party.

Pursuant to the amended scheduling order, McLaughlin was deposed on September 28. At her deposition, counsel for Diamond State requested a copy of the second EEOC Charge. (D.I. 41 at 8-9.) It was provided on October 8, along with an offer to make McLaughlin available for another deposition. (Id.Ex. A.) According to McLaughlin, Diamond State declined to re-depose her. (Id. at 9.) McLaughlin filed the present motion on October 14 (D.I.34), and Diamond State filed a motion for summary judgment as to the claims in the original complaint on October 18 (D.I.36.)

A pre-trial conference in this case is scheduled for January 5, 2005, and trial is scheduled for January 24, 2005.

## IV. DISCUSSION

Bearing in mind that leave to amend a pleading is to "be freely given," Fed.R.Civ.P. 15(a), it is within the discretion of the court to deny leave where a party will be substantially or unduly prejudiced, or where the court finds "bad faith or dilatory motives, truly undue or unexplained delay, repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment,"*Lorenz v. CSX Corp.,* 1 F.3d 1406, 1413-14 (3d Cir.1993).

As to McLaughlin's § 1983 claim, the court is truly at a loss as to how it escaped counsel for McLaughlin that Diamond State is a state actor. Diamond State correctly points out that McLaughlin should have been alerted to this fact by the reference to Del.Code Ann., tit. 29, § 8735(a) (2003), in Diamond State's answer, filed on July 15, 2003 (D.I. 4 ¶ 3).Section 8735(a) states:
**\*3** There shall be established within the Department of State a body corporate and politic, with corporate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 2958664 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

succession, constituting a public instrumentality of the State, and created for the purpose of exercising essential governmental functions which is to be known as the "Diamond State Port Corporation."

Thus, McLaughlin should have discovered Diamond State's status as a state actor as soon as counsel read the answer and did even cursory research as to its substance. Either this research did not happen, or counsel did not realize the potential for a § 1983 claim. Moreover, the court finds it difficult to believe McLaughlin worked for Diamond State for six years without knowing it is an arm of the State of Delaware. It is noteworthy that McLaughlin's submissions are conspicuously vague in outlining the reasons for this oversight. The only concrete explanation for delay the court can discern from the briefs is that McLaughlin " delayed raising the § 1983[sic] until the retaliation claim had perfected in order to avoid a multiplicity of amendment motions."(D.I. 41 at 10.) Yet McLaughlin did not sign her second EEOC complaint until July 29, 2004, which was over one year after she was put on notice of Diamond State's status as a state actor. The court doubts counsel really thought it was proper to sit idly on its § 1983 claim for over a year (allowing the deadline for amendments to pass) in anticipation of a retaliation claim. Therefore, the court accords very little weight to McLaughlin's justification for the extraordinary delay in seeking to add the § 1983 claim.

As to the retaliation claim, the court is sympathetic to the plight of the employee who is retaliated against by her employer after the deadline for amendments to the pleadings has passed. Indeed, had McLaughlin's counsel raised the amendment issue at the September 3 teleconference, the court would have given it serious consideration (especially since the whole purpose of the teleconference was to amend the scheduling order). Instead, counsel chose to be inconsiderate of the court's time and burden it with lengthy, eleventh-hour briefing on an issue that could have been disposed at the teleconference with relative ease. Furthermore, counsel offers no excuse for this failure other than to say the defendant requested the

issue not be brought up at the teleconference. Based on the defendant's email of August 30, Diamond State merely requested details of the proposed amendment in order to properly prepare his response for the teleconference. Certainly, this was not an unreasonable request. Counsel for McLaughlin argues that such a request was, in fact, unreasonable because counsel for the defendant knew counsel for the plaintiff was on trial and would be unable to respond to a request for details. (D.I. 41 at 9.) In other words, McLaughlin's counsel sprung notification of amendment on Diamond State on the eve of the teleconference, and then condemns Diamond State for not accommodating counsel's busy trial schedule. It goes without saying that McLaughlin's position is untenable. Even further undermining her argument is the fact that the teleconference was actually delayed by two days (from September 1 to September 3), giving McLaughlin ample opportunity to fulfill Diamond State's request for details.

\*4 McLaughlin also argues that delay was necessary because she needed to receive a right-to-sue letter before seeking to amend. (Id. at 8.) However, McLaughlin fails to account for the fact that she could have sought leave to amend *before* the end of discovery. She received her right-to-sue letter on September 20, which was eight days before her own deposition and ten days before the end of discovery. Knowing of the impending deadlines, McLaughlin should have been fully prepared to file her motion to amend immediately upon receiving the letter. Instead she delayed until October 14, just two business days before the deadline for case-dispositive motions.

Another explanation is offered in a footnote:
Plaintiff notes as well that much of the evidence of retaliation was not developed until very recently, after defendant first withheld and then provide [sic] documents and required that plaintiff return to depose a witness about issues on which Defendant prohibited discovery in prior depositions. See, Markow deposition (Affidavit of Laurence V. Cronin ("Cronin Aff.") at Ex. B). Indeed, it was not until Stansbury's deposition in September that defendant finally acknowledged that there had been promotions subsequent to the EEOC charge being

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 2958664 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

filed, having failed to provide any documentation regarding those promotions and assured counsel that there was none. See Stansbury deposition (Cronin Aff. at Ex. D).

(D.I. 41 at 1 n. 2.) This explanation is inadequate for two reasons. First and foremost, McLaughlin obviously had enough information to file a charge with the EEOC in July 2004. Thus, it was not a discovery problem that prevented her from seeking to amend her complaint. Second, the above footnote asks the court to draw inferences from three deposition transcripts with no pinpoint cites. The two Markow depositions total 220 pages and the Stansbury deposition is 137 pages. Counsel once again shows its disregard for the court's time by asking it to sift through 357 pages of testimony to find evidence of dilatory tactics. It is counsel's responsibility to point the court to relevant evidence. Consequently, the court does not accept McLaughlin's explanation for the delay in seeking to add her retaliation claim.

Another consideration in deciding whether to permit an amendment is prejudice to the defendant. Although Diamond State does not explicitly argue this point, the court finds implicit prejudice. The purpose of a scheduling order is to provide concrete deadlines on which the parties can rely in planning their respective litigation strategies. If the court were to permit parties to ignore these deadlines, unfair surprise would abound.

In this case, briefing on McLaughlin's motion was completed on November 1. Even if the court would have decided the motion that day, Diamond State would have required time to file another answer. Additionally, it is quite likely that more discovery would have been necessary.[FN2] With the schedule now so compressed, it is likely that the filing of dispositive motions would have been precluded by the court or the time for trial postponed. Clearly, the loss to the defendant of the opportunity to achieve summary disposition of the matter or the delay resulting from an accommodation of the plaintiff's request to amend would be prejudicial to Diamond State.

FN2. McLaughlin disagrees that more discovery would be necessary. She is clearly mistaken. For instance, her main piece of retaliation evidence is at least double hearsay. Although Stansbury's statement may be non-hearsay as an admission of a party opponent, Fed.R.Evid. 801(d)(2), the statement would only become admissible if Woolford testified, or if there were an applicable exception for Woolford's recital of Stansbury's statement to Davidum and for Davidum's recital of Woolford's statement to McLaughlin. Thus, it seems most likely that Woolford would need to be deposed.

## V. CONCLUSION

**\*5** Since McLaughlin does not adequately explain the prolonged delay in filing her motion to amend, and since permitting such an amendment would impose undue prejudice on Diamond State, the court will deny her motion.

IT IS HEREBY ORDERED that:

The plaintiff's Motion For Leave To File Her Amended Complaint (D .I. 34) be DENIED.

D.Del.,2004.
McLaughlin v. Diamons State Port Corp.
Not Reported in F.Supp.2d, 2004 WL 2958664 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.