IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON AUTOMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-028 (***) |
| | ) | PUBLIC VERSION |
| SWISSLOG ITALIA S.P.A. and | ) | |
| TRANSLOGIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS SWISSLOG ITALIA S.P.A'S AND
TRANSLOGIC CORPORATION'S REPLY BRIEF
IN FURTHER SUPPORT OF THEIR REVISED MOTION
FOR LEAVE TO AMEND THEIR ANSWERS AND COUNTERCLAIMS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Julia Heaney (#3052)
Maria Granovsky (#4709)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
    *Attorneys for Defendants Swisslog Italia, S.p.A. and
    Translogic Corporation*

OF COUNSEL:

Alfred R. Fabricant
Lawrence C. Drucker
Richard LaCava
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 277.6500

ORIGINAL VERSION FILED: November 9, 2007
PUBLIC VERSION FILED: November 14, 2007

i.

# TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ................................................................................. 1

ARGUMENT ...................................................................................................... 4

I.    DEFENDANTS' PROPOSED ADDITIONAL ANTITRUST
      CLAIMS ARE PROPERLY ASSERTED AT THIS TIME ............................................ 4

      A.    There Was No Undue Delay ................................................................. 4

      B.    There Is No Prejudice to McKesson ..................................................... 5

      C.    The Additional Antitrust Claims Would Not Be Futile .......................... 7

II.   DEFENDANTS SHOULD BE PERMITTED TO ASSERT THE
      DEFENSE OF INEQUITABLE CONDUCT ................................................. 10

III.  DEFENDANTS SHOULD BE PERMITTED TO ASSERT THE
      DEFENSE OF LACK OF STANDING .......................................................... 13

CONCLUSION ................................................................................................... 14

## **TABLE OF AUTHORITIES**

**CASES**

*Abbott Labs. v. Brennan,*
   952 F.2d 1346, 1353 (Fed. Cir. 1992) ................................................. 9

*Am. Booksellers Ass'n v. Barnes & Noble, Inc.,*
   135 F. Supp. 2d 1031 (N.D. Cal. 2001) ............................................... 7

*Bailey v. Allgas, Inc.,*
   284 F.3d 1237 (11th Cir. 2002) ........................................................... 6

*Brown v. Phila. Hous. Auth.,*
   350 F.3d 338 (3d Cir. 2003) .............................................................. 14

*Butcher & Singer, Inc. v. Kellam,*
   105 F.R.D. 450 (D. Del. 1984) ............................................................ 5

*California Motor Transport Co. v. Trucking Unlimited,*
   404 U.S. 508 (1972) ......................................................................... 7-8

*Centerforce Tech., Inc. v. Austin Logistics Inc.,*
   2000 U.S. Dist. LEXIS 6924, at *19 (D. Del. 2000) ..................... 4, 12

*Continental Ore Co. v. Union Carbide & Carbon Corp.,*
   370 U.S. 690 (1962) ............................................................................ 8

*E. Railroad Presidents Conference v. Noerr Motor Freight,*
   365 U.S. 127, 135-136 (1961) ............................................................. 7

*Enzo Life Sciences, Inc. v. Digene Corp.,*
   270 F. Supp. 2d 484 (D. Del. 2003) .............................................. 11-12

*F.C. Russell Co. v. Consumers Insulation Co.,*
   226, F.2d 373 (3d Cir. 1955) .............................................................. 9

*Ford Motor Co. v. U.S.,*
   405 U.S. 562 (1972) ............................................................................ 9

*Glass Equip. Dev., Inc. v. Besten, Inc.,*
   174 F.3d 1337, 1340 (Fed. Cir. 1999) ................................................. 9

*Heyl & Patterson Int'l, Inc. v. F. D. Housing, Inc.,*
   663 F.2d 419 (3d Cir. 1981) ............................................................... 5

*In re Terazosin Hydrochloride Antitrust Litg.,*
   164 F. Supp. 2d 1340 (S.D. Fla. 2000) ............................................... 8

*Int'l Motor Contest Ass'n v. Staley*,
   434 F. Supp. 2d 650 (N.D. Iowa 2006)..................................................................8

*Johnson v. Trueblood*,
   629 F.2d 287 (3d Cir. 1980)..............................................................................4

*Nobelpharma AB v. Implant Innovations, Inc.*,
   141 F.3d 1059, 1068 (Fed. Cir. 1998) ...............................................................9

*Outboard Marine Corp. v. Pezetel*,
   535 F. Supp. 248 (D. Del. 1982) .......................................................................5

*Pegasus Dev. Corp. v. Directv, Inc.*,
   2002 U.S. Dist. LEXIS 6825 (D. Del. 2002) ....................................................12

*Peter v. Union Oil Co.*,
   328 F. Supp. 998 (C.D. Cal. 1971)....................................................................9

*Procter & Gamble Co. v. Nabisco Brands, Inc.*,
   125 F.R.D. 405 (D. Del. 1987)...........................................................................13

*Purdue Pharma LP v. Endo Pharmaceuticals Inc.*,
   438 F.3d 1123 (Fed. Cir. 2006)........................................................................11

*SCM Corp. v. Xerox Corp.*,
   645 F.2d 1195 (2d Cir. 1981)...........................................................................9

*U.S. v. Grinnell Corp.*,
   384 U.S. 563 (1966)..........................................................................................5

*United Mine Workers of Am. v. Pennington*,
   381 U.S. 657, 670 (1965)..................................................................................7

*Walker Process Equip., Inc. v. Food Machinery & Chemical Corp.*,
   382 U.S. 172 (1965).....................................................................................2, 7-8

## STATUTES AND OTHER AUTHORITIES

6 Del. C. § 2103 ........................................................................................................1

35 U.S.C. § 271(d)....................................................................................................9

Fed. R. Civ. P. 12(b)(h)(3) .....................................................................................14

Fed. R. Civ. P. 15(b)...............................................................................................4

Rule 11 ..................................................................................................................1, 4

Rule 12(b)(1) ..........................................................................................................14

## SUMMARY OF ARGUMENT

McKesson's arguments against permitting defendants Translogic Corporation ("Translogic") and Swisslog Italia S.p.A ("Swisslog") (collectively "Defendants") to amend their Answer and Counterclaims boil down to claims of undue delay and prejudice, neither of which are credible.   The proposed amendments – which consist of additional antitrust claims and defenses of inequitable conduct and lack of standing to sue[1] – add  nothing that is not already known to McKesson or that can come as a surprise to McKesson.   The amendments do not substantially change the nature of the case or require additional discovery.   Defendants simply seek to conform their pleadings to the proof adduced in discovery.

McKesson accuses Defendants of undue delay in seeking leave to amend. This is not the case at all. Defendants simply waited until they were certain they had a good faith basis to assert the additional claims as required by Rule 11.  McKesson argues that Defendants should have amended their counterclaims as soon as McKesson produced emails in early 2007 indicating anti-competitive behavior on McKesson's part.   Not only would this have been irresponsible on Defendants' part, but McKesson produced many additional documents within the past few months that were needed to support the claim, in addition to deposition testimony of McKesson witnesses James Longo and Eugene Zwolinski which shed further light on McKesson's anticompetitive activities.   Indeed, had Defendants asserted the additional claims

---

[1]     Defendants' initial Answer and Counterclaims contain antitrust counterclaims under § 2of the Sherman Act. The proposed amendment seeks to add further allegations under §2 as well as claims under §1 of the Sherman Act, § 3 of the Clayton Act and 6 Del. C. § 2103 based on Plaintiff's anti-competitive behavior which Defendants learned of through discovery.

early this year as McKesson suggests, McKesson would have undoubtedly opposed on the grounds that the claims were insufficiently supported and premature.

McKesson's contention that it will suffer prejudice if Defendants are permitted to add these claims rings hollow. The documents supporting the additional allegations of anticompetitive conduct are McKesson's own; the deposition testimony is from McKesson's own senior executives. It is difficult to believe that McKesson now argues that it is somehow prejudiced or surprised by this or that it requires additional discovery. The remaining elements of these claims, *i.e.* monopoly power, relevant market and antitrust injury, are not new as they were elements of Defendants' original antitrust counterclaim and, in any event, will be addressed during expert discovery which has yet to begin.

McKesson argues that Defendants should not be permitted to assert the additional antitrust claims because the proposed claims could not survive a motion to dismiss. McKesson actually contends that the anti-competitive conduct alleged by Defendants, such as McKesson's sole source agreements and predatory pricing through $0 leases, does not state a claim for relief because it is consistent with a patent owner's rights. [Opp. Br. at 11].[2] However, Defendants' claims are not based on McKesson's act of bringing the instant lawsuit but rather are based on McKesson's actions in the marketplace. Defendants' antitrust claims, therefore, do not require allegations of *Walker Process* fraud, illegal tying, or sham litigation as McKesson suggests.

The proposed addition of a defense of inequitable conduct is also not one that Defendants could have made sooner or which will cause any prejudice to McKesson if added at

---

[2]     All such references are to McKesson's Opposition to Defendants' Motion for Leave to Amend Their Answers and Counterclaims dated October 25, 2007.

this time.   The facts supporting this defense were not, as McKesson blithely asserts, fully available from the prosecution histories which, on their own, give no indication of information that was *not* disclosed to the PTO,  much less whether that information was known to the patentees or withheld by them from the PTO with intent to deceive.  Evidence of intent was not uncovered until the August 30, 2007 deposition of inventor Sean McDonald, whose deposition was delayed – not by Defendants – but by repeated cancellations by Mr. McDonald himself and/or McKesson.  There is no need for McKesson to conduct additional discovery because Defendants' allegations are not based on conduct of the prosecuting attorneys or of any inventor other than Mr. McDonald.  McKesson also does not require discovery into the prior art demonstrations and sales on which the defense is based since the only two fact witnesses with this information are Phillip Keys and Sean McDonald, both of whom McKesson has represented at deposition and who are presumably available to McKesson at will.

McKesson opposes Defendants' proposed lack of standing defense due to undue delay, arguing that "all of the documents relating to the assignment of rights in the patents-in-suit were produced to Swisslog in April 2007."  [Opp. Br. at 16].  That is simply not true.

REDACTED

McKesson's counsel never responded to these requests, even as recently as late September, 2007.  There was simply no undue delay by Defendants in asserting this defense.  Moreover, the addition of this defense is not futile.  In the event the Court denies Defendants' pending motion to dismiss, Defendants will be able to submit the issue to a jury.

4

## ARGUMENT

I.    DEFENDANTS' PROPOSED ADDITIONAL ANTITRUST CLAIMS ARE PROPERLY ASSERTED AT THIS TIME

A.    There Was No Undue Delay

McKesson's suggestion that the antitrust claims should have been asserted in January, 2007 ignores Rule 11's good faith requirement for asserting claims.  [Opp. Br. at 8-9]. The few fragmented e-mails and stray documents produced by McKesson in early 2007 told only a portion of the story and simply did not – in and of themselves – provide Defendants with a good faith basis under Rule 11 for asserting the antitrust claims.  The full story was not evident until other documents were produced (many as recently as a few months ago) and only after

REDACTED

Even assuming, *arguendo*, the additional antitrust claims could have been asserted after the deposition of Mr. Longo in May, 2007, this is still not sufficient reason to deny leave to amend.  "Delay in and of itself will not serve as a basis for denying a motion to amend." *Centerforce Tech., Inc. v. Austin Logistics Inc.*, 2000 U.S. Dist. LEXIS 6924, at *19 (D. Del. 2000); *see also Johnson v. Trueblood*, 629 F.2d 287, 294 (3d Cir. 1980) ("Mere delay, in and of itself, is not grounds for denial of a motion to amend under Fed. R. Civ. P. 15(b).").  The few

---

3    McKesson's suggestion that Defendants did not require the testimony of Mr. Zwolinski to assert antitrust claims is simply incorrect.  [Opp. Br. at 9].
REDACTED

months that elapsed between Mr. Longo's deposition and counsel's September 5, 2007 letter

informing McKesson of the proposed additional antitrust claims (*See* DeMatteo Decl. Exh. N) is

far less than the period of delay in numerous cases where the Court has granted leave to amend.

*See, e.g., Outboard Marine Corp. v. Pezetel*, 535 F. Supp. 248, 250 (D. Del. 1982) (permitting

amendment of complaint *five years* after filing); *Butcher & Singer, Inc. v. Kellam*, 105 F.R.D.

450, 451-452 (D. Del. 1984)  (allowing party to amend seven months after the close of discovery

and based on facts revealed in a deposition taken nine months prior).   Indeed, in *Heyl &

Patterson Int'l, Inc. v. F. D. Housing, Inc.*, 663 F.2d 419, 425 (3d Cir. 1981) – cited by

McKesson – the Court *allowed* the plaintiff to amend the complaint during trial and some three

years after the complaint was filed.

                B.      <u>There Is No Prejudice to McKesson</u>

                McKesson's contention that the antitrust counterclaims would require extensive

additional discovery is misleading and completely without merit. [Opp. Br. at 2, 10].  Antitrust

allegations require proof of (1) possession of monopoly power in the relevant market, (2) willful

acquisition or maintenance of that power, and (3) antitrust injury from interference with the

freedom to compete. *U.S. v. Grinnell Corp.*, 384 U.S. 563 (1966).  Defendants' allegations of the

first two of these factors are based solely on conduct of McKesson employees and on

McKesson's own documents.  There is absolutely no need for McKesson to conduct discovery

regarding these activities.  Even so, "monopoly power," the definition of the "relevant market"

and "antitrust injury" have long been issues in the case by virtue of Translogic's Fourth

counterclaim, which was in its original answer filed May 15, 2006.  That counterclaim, for

violation of §2 of the Sherman Act, is based on sham litigation and requires the same proof of

antitrust injury and monopoly power in the same relevant market as the proposed additional antitrust claims.[4]   The new antitrust claims, therefore, will not require McKesson to conduct any additional fact discovery.

It is revealing that, despite decrying the need for additional discovery and the burdens that would impose, McKesson barely mentions what discovery it would need on the amended antitrust counterclaims.  McKesson states only that it requires "additional discovery from Swisslog's management . . . concerning their understanding of the relevant market, their understanding of industry practices, and Swisslog's own behavior in the relevant market." [Opp. Br. at 10].  Not only has McKesson already deposed both Translogic's and Swisslog Italia's senior management, but the conduct and understanding of these witnesses is irrelevant to *McKesson's* anticompetitive conduct, antitrust injury, the relevant market or McKesson's dominance within that market.[5]   These facts are developed almost exclusively through expert

---

[4]    McKesson's assertion that Defendants' new pleadings "redefine" the definition of the relevant market exalts form over substance. [Opp. Br. at 2].  Defendants merely streamlined the antitrust allegations to more accurately describe the relevant market in light of deposition testimony provided by McKesson's witnesses.  In any event, the definition of the relevant market is almost exclusively the subject of expert reports and expert discovery.  Expert reports have not yet been exchanged, nor have the parties begun expert discovery.

[5]                                         REDACTED

discovery, which has yet to begin in this case. *See, e.g., Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1246 (11th Cir. 2002) ("Construction of the relevant market and a showing of monopoly power must be based on expert testimony."); *Am. Booksellers Ass'n v. Barnes & Noble, Inc.*, 135 F. Supp. 2d 1031, 1042 (N.D. Cal. 2001) ("only expert testimony can demonstrate that any injury to plaintiffs was caused by defendants' unlawful conduct, and not because of lawful competition.").[6]   McKesson's purported need for additional discovery is no basis on which to deny Defendants leave to amend.

C.    The Additional Antitrust Claims Would Not Be Futile

McKesson contends that the proposed amendment would be futile because the Defendants' antitrust claims require allegations of *Walker Process* fraud, illegal tying or sham litigation which they do not contain.  [Opp. Br. at 10-12].  This argument misstates the applicable antitrust law and should be rejected.   The cases cited by McKesson relate to the *Noerr-Pennington* Doctrine – a line of Supreme Court cases that extend antitrust immunity to a narrow class of activities, including the act of bringing a patent infringement suit, even if the suit has anticompetitive effect, unless (i) the lawsuit is a sham – *i.e.*, an objectively baseless attempt to interfere with the business of a competitor; or (ii) the patent being enforced was obtained through

---

REDACTED

---

[6]     No expert reports have been exchanged and no depositions of experts have been conducted by either party.  The Fourth Stipulated Scheduling Order sets a date of January 11, 2008 for the close of expert discovery – a date which the parties are currently negotiating to extend even further out in time.

fraud. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 611-12 (1972);

*Walker Process Equip., Inc. v. Food Machinery & Chemical Corp.,* 382 U.S. 172, 177 (1965).[7]

> *Noerr-Pennington* immunity, however, applies *only* to activities that seek governmental assistance, *e.g.,* the act of bringing a patent lawsuit, and *not* to "private commercial activity, no element of which involved seeking to procure the passage or enforcement of laws." *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 707 (1962). Federal district courts interpreting the doctrine have similarly held:

> > The Noerr-Pennington doctrine does not . . . bar . . . claims . . . in which the filing of the lawsuit, or other action in petitioning the government, is not identified as the inequitable or wrongful conduct.

*Int'l Motor Contest Ass'n v. Staley*, 434 F. Supp. 2d 650, 663 (N.D. Iowa 2006); *see also In re Terazosin Hydrochloride Antitrust Litg.*, 164 F. Supp. 2d 1340, 1353 (S.D. Fla. 2000) ("*Noerr-Pennington* immunity does not apply to restraints adopted by private entities.").

> Since Defendants' new antitrust claims are based exclusively on private, commercial activities conducted by McKesson in the marketplace, *i.e.,* predatory pricing, entering into exclusionary sole-source contracts, making false statements about the capabilities of its products, and refusing to permit compatibility between McKesson's systems and those of competitors, *Noerr-Pennington* immunity does not apply. Defendants, therefore, need not allege

---

[7]    The *Noerr-Pennington* Doctrine is based on two Supreme Court cases. In the first, *E. Railroad Presidents Conference v. Noerr Motor Freight*, the Supreme Court held that "no violation of the [Sherman] Act can be predicated upon mere attempts to influence the passage or enforcement of laws." 365 U.S. 127, 135-136 (1961). A few years later, the Supreme Court in *United Mine Workers of Am. v. Pennington* extended antitrust immunity to activities intended to influence public officials. 381 U.S. 657, 670 (1965). In 1972, the Supreme Court extended the *Noerr-Pennington* immunity to activities in which governmental assistance was sought through the courts. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 611-12 (1972).

sham litigation, illegal tying or *Walker Process* fraud in support of these new claims.  The cases cited by McKesson that apply *Noerr-Pennington* are inapposite, as the antitrust assertions in those cases were based on assertions that the litigation itself was a sham, not on commercial activities conducted in the marketplace such as those asserted by Defendants in this case.[8]

McKesson's assertion that its anticompetitive activities are somehow consistent with its patent rights is also contrary to law.  [Opp. Br. at 11].  A patent does not confer upon its owner an unfettered license to violate the antitrust laws. *See, e.g., Ford Motor Co. v. U.S.*, 405 U.S. 562, 576 n.11 (1972).  A patent owner may engage only in limited action that is expressly permitted by the patent laws – *e.g.,* deciding whether and to whom to license the patent, setting licensing terms, etc. – and, if need be, may seek to enforce the patent in a court of law.  *See* 35 U.S.C. § 271(d); *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1204 (2d Cir. 1981) (recognizing as legal only "conduct [that] is expressly permitted by the patent laws").  The patent owner may not engage in predatory pricing tactics, enter into exclusionary agreements contractually prohibiting customers from purchasing competitors' products (including products not covered by the patents-in-suit), and make false statements in the marketplace about the capabilities of its products and those of competitors. *See, e.g., F.C. Russell Co. v. Consumers Insulation Co.*, 226, F.2d 373, 376 (3d Cir. 1955) ("A patentee's right does not extend to the use of the patent to purge the market of competing non-patented goods except, of course, through the process of fair

---

[8]     In *Glass Equip. Dev., Inc. v. Besten, Inc.*, the antitrust claims were based on allegations that the "lawsuit [itself] was part of an attempt to monopolize the market . . . ." 174 F.3d 1337, 1340 (Fed. Cir. 1999).  In *Nobelpharma AB v. Implant Innovations, Inc.*, the Federal Circuit's holding applied only to "antitrust claims premised on the bringing of a patent infringement suit." 141 F.3d 1059, 1068 (Fed. Cir. 1998). In *Abbott Labs. v. Brennan*, the antitrust claims were based on allegations that interference actions filed with the United States Patent Office were a sham and constituted an unlawful attempt to monopolize trade. 952 F.2d 1346, 1353 (Fed. Cir. 1992).

competition."); *see also Peter v. Union Oil Co.*, 328 F. Supp. 998, 1005 (C.D. Cal. 1971) ("the patent monopoly does not permit or justify retail price fixing or maintenance."). These are precisely the types of activities Defendants complain of in the proposed amended counterclaims – activities that are neither sanctioned nor condoned by the patent laws.

In any event, McKesson has failed to establish ownership of the patents-in-suit[9] and has refused to even take a position on whether its products are covered by these patents.[10] There is, thus, no basis for McKesson to assert that the alleged anticompetitive activities – which include McKesson's pricing and sales of its own products – relate to products covered by the patents-in-suit, much less its right to exclude others from infringing these patents. Defendants' additional antitrust allegations are, therefore, adequately plead and are not futile.

II.     DEFENDANTS SHOULD BE PERMITTED TO ASSERT THE
        DEFENSE OF INEQUITABLE CONDUCT

McKesson contends that inequitable conduct was plead untimely because Defendants should have been able to determine from the prosecution histories alone whether that defense existed. [Opp. Br. at 13]. This is ludicrous. While the prosecution histories reveal what materials were disclosed to the PTO during prosecution, Defendants had no way of knowing what if any material information was *not* before the examiner until conducting discovery.

---

[9]     *See* Defendants Motion to Dismiss filed on October 3, 2007. [D.I. 165]. The full right and title to the patents-in-suit was assigned in 1990 to the Pittsburgh Seed Fund and Dr. Stephen Heilman.

[10]    Swisslog's Interrogatory Nos. 4 through 6 ask McKesson to "(e) separately for each claim of the Patents-in-Suit, state whether [its products] are embodiments of the Patents-in-Suit." McKesson's responses were incomplete and evasive and failed to include the requested statement. [*See* DeMatteo Rep. Decl. Exh. HH].

Moreover, a finding of inequitable conduct requires that the information not disclosed be done so with intent to deceive, something not evident from the prosecution histories.[11]

REDACTED

Mr. McDonald's testimony, which was delayed substantially by his repeated cancellations of the deposition – supports allegations of intent to deceive, which were not apparent solely from the documents produced in this case and certainly not from the prosecution histories alone.[12]

---

[11]    Inequitable conduct requires more than mere withholding of material information from the patent office. The defense requires that the information withheld be known to persons having a duty of candor to the Patent Office (*e.g.,* inventors) and be withheld from the Patent Office with an intent to deceive. *See, e.g., Purdue Pharma LP v. Endo Pharmaceuticals Inc.*, 438 F.3d 1123, 1128 (Fed. Cir. 2006).

[12]    McKesson's suggestion that the delay in Mr. McDonald's deposition was caused by Defendants' is disingenuous. [Opp. Br. at 14]. Although Mr. McDonald was scheduled to be deposed as far back as May 2, 2007, McKesson's counsel canceled and rescheduled the deposition no less than *three* times thereafter. To the extent any delay was caused, it was attributable to McKesson.

Inequitable conduct must be plead with particularity and, as such, Defendants could not have asserted the defense prior to conducting Mr. McDonald's deposition. *See Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F. Supp. 2d 484, 487 (D. Del. 2003) ("Rule 9(b) applies to inequitable conduct claims in patent cases."). In *Enzo Life Sciences*, the defendant moved to amend its Answer to include a counterclaim of inequitable conduct seven months after the deadline to amend pleadings. *Enzo Life Sciences, Inc.*, 270 F. Supp. 2d at 486. Like McKesson, the plaintiff in that case argued that the motion was untimely and that the defense would inject a new theory into the case. *Id.* at 487. The Court granted the motion to amend, holding that:

> Although [plaintiff] contends that the facts underlying the inequitable conduct allegations were available . . . in the public prosecution history . . . the Court concludes that since the *Rule 9(b)* 'pleading with particularity' requirement is implicated with regard to an inequitable conduct claim, [defendant] was prudent and possibly required to confirm the factual allegations through discovery.

*Id.* at 489 (*emphasis in original*). The Court also held that the motion was timely filed, in part because – as in this case – the inventors were not made available for deposition until late in discovery. *Id.*

The purported prejudice alleged by McKesson – *i.e.*, delay, increased costs and attorneys' fees, and the need for additional depositions (Opp. Br. at 14-15) – are not the kinds of issues that justify denying Defendants' motion. *See Pegasus Dev. Corp. v. Directv, Inc.*, 2002 U.S. Dist. LEXIS 6825, at *7 (D. Del. 2002) ("Prejudice does not result merely from a party's having to incur additional counsel fees; nor does it result from a delay in the movement of a case."); *Centerforce Tech., Inc.*, 2000 U.S. Dist. LEXIS, at *19 (D. Del. 2000) (". . . the Court does not believe [the] need for additional discovery creates 'undue prejudice.'"). Regardless, McKesson's purported need to depose the remaining inventors and the prosecuting attorneys is

dubious, as Defendants' inequitable conduct defense is not premised on the conduct of these individuals. [Opp. Br. at 15].   McKesson also does not require testimony from "individuals with knowledge of the experimental nature of the incidents at issue," since the individuals having knowledge of the relevant prior art sales and demonstrations – Sean McDonald and Phillip Keys – have already been deposed on this very subject. [*Id.*].   As both of these individuals were represented at their depositions by McKesson's attorneys, it appears that they are cooperating with McKesson and there is no genuine need for such testimony.[13]

In any event, additional discovery into inequitable conduct, if required at all, would not delay the completion of this case, since no dates for a claim construction hearing, a hearing on dispositive motions or trial have yet been set.  *See, e.g., Procter & Gamble Co. v. Nabisco Brands, Inc.*, 125 F.R.D. 405, 410 (D. Del. 1987) ("the Court has difficulty in determining what undue prejudice could result . . . Discovery cut-offs have been made and extended several times previously [and] no trial date has been fixed."). Accordingly, leave to amend to assert the defense of inequitable conduct should be granted.

III.    DEFENDANTS SHOULD BE PERMITTED TO ASSERT THE
         DEFENSE OF LACK OF STANDING

REDACTED

---

[13]

REDACTED

REDACTED

Defenses such as lack of standing that are based on lack of subject matter jurisdiction may be raised at any time during litigation, even after the pending Rule 12(b)(1) motion is decided. *See* Fed. R. Civ. P. 12(b)(h)(3); *Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 346 (3d Cir. 2003) ("it is well-settled that a party can never waive lack of subject matter jurisdiction."). McKesson does not claim that it will suffer any prejudice if Defendants are permitted to add this defense and has obtained permission from the Court to take the depositions of two of the investors involved in the loan transaction in 1990. Should the Court determine that it cannot decide the issues raised by Defendants' 12(b)(1) motion to dismiss, the requested amendment should be permitted so as to allow Defendants to bring this question before a jury.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant leave for Defendants to file their First Amended Answers and Counterclaims.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney (#3052)*

_____

Julia Heaney (#3052)
Maria Granovsky (#4709)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jheaney@mnat.com
 *Attorneys for Defendants Swisslog Italia,*
 *S.p.A. and   Translogic Corporation*

OF COUNSEL:

Alfred R. Fabricant
Lawrence C. Drucker
Richard LaCava
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY  10036
(212) 277.6500

November 9, 2007

1309833

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on November 14, 2007 I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Dale R. Dubé, Esquire
Blank Rome LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on November 14, 2007 upon the following individuals in the manner indicated

**<u>BY E-MAIL</u>**

Dale R. Dubé, Esquire
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE  19801

Blair M. Jacobs, Esquire
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, DC  20004

*/s/ Julia Heaney (#3052)*

_____
Julia Heaney (#3052)
jheaney@mnat.com