IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MCKESSON AUTOMATION, INC.<br>a Delaware Corporation, | ) ) ) |  |
| Plaintiff, | ) ) | Civ. Action No. 1:06CV00028-MPT |
| v. | ) ) |  |
| TRANSLOGIC CORPORATION<br>a Delaware Corporation, and | ) ) ) ) | PUBLIC VERSION |
| SWISSLOG ITALIA S.P.A.<br>an Italian Corporation, | ) ) |  |
| Defendants. | ) ) ) |  |

**PLAINTIFF MCKESSON AUTOMATION, INC.'S
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Dale R. Dubé (#2863)
BLANK ROME LLP
1201 N. Market Street
Suite 800
Wilmington, DE 19801
(302) 425-6400
dube@blankrome.com

Blair M. Jacobs
Robert A. Gutkin
Christina A. Ondrick
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 383-0100

Dated 1/25/08                    *Counsel for Plaintiff McKesson Automation, Inc.*

## TABLE OF AUTHORITIES

**Cases**

*Applied Co. v. United States,*
    144 F.3d 1470 (Fed. Cir. 1998)................................................................................................. 18

*Bonczek v. Pascoe Equip. Co.,*
    450 A.2d 75 (Pa. Sup. Ct. 1982)................................................................................... 9, 12, 14

*Citizens Nat'l Bank of Tipton v. Indianapolis Auto Auction,*
    592 N.E.2d 1256 (Ind. App. Ct. 1992).................................................................................... 17

*In re D & K Aviation, Inc.,*
    349 B.R. 169 (Bankr. S.D. Ohio 2006)................................................................................... 17

*In re Navigation Tech. Corp.,*
    880 F.2d 1491 (1st Cir. 1989)................................................................................................. 16

*In re Spaniak,*
    221 B.R. 732 (Bankr. W.D. Mich. 1998)................................................................................ 17

*In re Tyson Metal Prods , Inc.,*
    117 B.R. 181 (Bankr. W.D. Pa. 1990)...................................................................... 7, 9, 15, 16

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.,*
    248 F.3d 1333 (Fed. Cir. 2001).................................................................................................. 7

*Interbusiness Bank v. First Nat'l Bank of Mifflintown,*
    318 F. Supp. 2d 230 (M.D. Pa. 2004)................................................................................ 9, 17

*Kulick v. Pocono Downs Racing Ass'n,*
    816 F.2d 895 (3d Cir. 1987)....................................................................................................... 7

*Lyon v. Ty-Wood Corp.,*
    239 A.2d 819 (Pa. Super. Ct. 1968)........................................................................................... 9

*Major's Furniture Mart, Inc. v. Castle Credit Corp., Inc.,*
    449 F. Supp. 538 (E.D. Pa. 1978)...................................................................................... 17, 18

*MidSouth Rail Corp. v. Citizens Bank & Trust Co., Inc.,*
    697 So.2d 451 (Miss. 1997).................................................................................... 14, 16, 17

*Minco, Inc. v. Combustion Eng'g, Inc.,*
    95 F.3d 1109 (Fed. Cir. 1996)............................................................................................. 7, 8

*PE Corp. v. Affymetrix, Inc.,*
    2001 WL 1180280 (D. Del. September 27, 2001).................................................................... 7

*Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.,*
    198 F.3d 415 (3d Cir. 1999)................................................................................................ 8, 10

*UD Technology Corp. v. Phenomenex, Inc.,*
    2007 WL 28295 (D. Del January 04, 2007)............................................................................. 7

**Statutes**

13 Pa. Const. Stat. Ann. § 9203(b) ........................................................................................... 8
13 Pa. Const. Stat. Ann. § 9203(b)(3)(iv). .............................................................................. 8
13 PA. CONST. STAT. ANN.§ 9102(a) ........................................................................................ 8
13 PA. CONST. STAT. ANN.§ 9203 ............................................................................................. 9
35 U.S.C. § 261 ......................................................................................................................... 19
35 U.S.C. § 281 .......................................................................................................................... 7

## TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................................1

II.     STATEMENT OF FACTS ............................................................................................2

III.    STATEMENT OF LAW...............................................................................................6

        A.      Standing ............................................................................................................6

        B.      Under Pennsylvania Law, The Loan Documents Must Be
                Construed As A Whole And The Intent Of The Parties Controls................7

IV.     MCKESSON OWNS THE PATENTS-IN-SUIT AND HAS STANDING
        TO BRING THIS CASE...............................................................................................9

# REDACTED

.

V.      CONCLUSION ............................................................................................................19

**I.    INTRODUCTION**

# REDACTED

# REDACTED

## II. STATEMENT OF FACTS

Plaintiff McKesson was founded in 1987 under the name AHI. Like many start-up technology companies, AHI desperately needed funds to keep the company running and to develop its first product. As such, its founding members sought out investors and/or loans.

# REDACTED

# REDACTED

# REDACTED

**REDACTED**

# REDACTED

On October 3, 2007, Swisslog filed its motion to dismiss, arguing that the inability of the parties to produce a reassignment left McKesson without standing to bring this case.

## III.    STATEMENT OF LAW

### A.    Standing

Article III of the Constitution requires a party invoking federal jurisdiction to establish that: 1) it has suffered an injury-in-fact that is concrete and actual or imminent; 2) the injury is causally related to the actions of the defendant; and 3) the harm is redressable by a favorable

decision. *PE Corp. v. Affymetrix, Inc.,* 2001 WL 1180280, \*3 (D. Del. September 27, 2001)[2] (citing *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.,* 248 F.3d 1333, 1346 (Fed. Cir. 2001)). Standing in a patent infringement case stems from the Patent Act, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (1994).

"A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of a plaintiff's complaint." *UD Technology Corp. v. Phenomenex, Inc.,* 2007 WL 28295, \*2 (D. Del. January 04, 2007).[3] Here, Defendants attack the factual underpinnings of McKesson's Complaint. "When reviewing a factual attack . . . the court is free to weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction and to satisfy itself as to the existence of its power to hear the case." *Id.* While a plaintiff bears the burden to prove that jurisdiction exists, the burden is "relatively light, since dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy.'" *Id.* (citing *Kulick v. Pocono Downs Racing Ass'n,* 816 F.2d 895, 899 (3d Cir. 1987)).

## B.  Under Pennsylvania Law, The Loan Documents Must Be Construed As A Whole And The Intent Of The Parties Controls

Because the Promissory Notes, Assignment and Stock Purchase Agreement designate the law of Pennsylvania in their choice of law provisions, that state's contract and commercial law governs the Court's interpretation of the transaction. *In re Tyson Metal Prods., Inc.,* 117 B.R. 181, 184 (Bankr. W.D. Pa. 1990); *Minco, Inc. v. Combustion Eng'g, Inc.,* 95 F.3d 1109, 1117

---

[2] A copy of this case is attached to the Lahnstein Declaration as Ex. M.

[3] A copy of this case is attached to the Lahnstein Decl. as Ex. N.

7

(Fed. Cir. 1996) (applying state contract law to determine extent of rights transferred under assignment agreement). Under Pennsylvania law, when a single transaction is comprised of multiple writings, these individual writings should be construed together as a whole, even if such writings were executed at different times by different signatories. *Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999). Here, the Term Sheet, Promissory Notes, Assignment and Stock Purchase Agreement collectively make up the loan transaction in which the debt was created, secured and repaid. The agreements reflect a secured transaction and, thus, are governed by Article 9 of the Pennsylvania Commercial Code.

Article 9 defines a "security agreement" as one "which creates or provides for a security interest." 13 PA. CONST. STAT. ANN.§ 9102(a). A security interest is "an interest in personal property or fixtures which secures payment or performance of an obligation."[4] *Id.* § 9201. The formal requirements of a security interest enforceable against the debtor and third parties are: (1) that value has been given; (2) that the debtor has rights in the collateral; and (3) one of four enumerated conditions is met. *Id.* § 9203(b). The condition applicable here is the requirement that the debtor have an authenticated security agreement providing a description of the collateral. *Id.* § 9203(b)(3)(iv).

With regards to the purpose and application of Article 9, one court has explained that:

*Article 9 of the U.C.C., first enacted in Pennsylvania in 1953, overhauled the formalistic common law secured transactions regime, installing a simplified and functional set of terms and procedures* for creating and enforcing secured interests in property. In return for the extension of credit or other financing arrangements, the "secured party" is entitled to take a "security interest" in the "collateral" of the "debtor." *The precise form of the transaction is relatively immaterial.* So long as the exchange includes the provision of credit and the release of an interest in property as security for the debt, Article 9 generally applies.

---

[4] Intellectual property, including patents, may be transferred as collateral to secure loans. *Id.* § 9102 cmt. 5(d).

8

*Interbusiness Bank v. First Nat'l Bank of Mifflintown*, 318 F. Supp. 2d 230, 236-37 (M.D. Pa. 2004) (emphasis added) (internal citations omitted).

Pennsylvania courts have long held labels alone do not determine whether a transaction is a security agreement or an assignment; instead, the intent of the parties governs. *See, e.g., Bonczek v. Pascoe Equip. Co.*, 450 A.2d 75, 79 (Pa. Sup. Ct. 1982). Courts therefore "must examine the business activities, the objectives, and the relationship of the parties to ascertain this intent and on that basis determine whether the transactions in question legally constitute an absolute assignment or a security interest." *In re Tyson Metal Prods., Inc.*, 117 B.R. at 184 (quoting *Lyon v. Ty-Wood Corp.*, 239 A.2d 819, 821 (Pa. Super. Ct. 1968)). The Commercial Code was not intended to displace "the deeply rooted doctrine that a bill of sale, although absolute in form, may be shown in fact to have been given as a security." 13 PA. CONST. STAT. ANN.§ 9203, cmt. 5. It remains a basic principal that a debtor may show parol evidence that a transfer, seemingly absolute, was in fact for security only. *Id.*

# REDACTED

## IV.   MCKESSON OWNS THE PATENTS-IN-SUIT AND HAS STANDING TO BRING THIS CASE

McKesson's rights to the patents-in-suit, and therefore its right to maintain this action, are not so insubstantial, implausible or otherwise completely devoid of merit as to preclude an actual case in controversy.

# REDACTED

9

# REDACTED

REDACTED

**REDACTED**

# REDACTED

AHI/McKesson retained complete responsibility for prosecuting the Patent Application and its progeny at all times. It made all prosecution decisions and payments to the United States Patent Office ("USPTO"). AHI, not the Investors, was responsible for the development, marketing, selling and implementing the technology disclosed in the Patent Application.

# REDACTED

REDACTED          *See, e.g., Bonczek* 450 A.2d at 79 (provisions of Pa. Comm. Code

Article 9 "make it clear that the determination of whether a security interest exists initially

depends upon the intent of the parties to the transaction.")

# **REDACTED**

## C.    Legal Precedent Supports The Conclusion That AHI's Assignment Was A Security Interest, Not An Absolute Assignment

The Mississippi Supreme Court examined a case factually similar to this case. In

*MidSouth Rail Corp. v. Citizens Bank & Trust Co., Inc.*, 697 So.2d 451, 455-457 (Miss. 1997),

the question arose as to whether a bankrupt party's contract with the defendant was an

assignment of property or a security interest. The contract included the following two

provisions:

> I. Assignment: In consideration of sums loaned or to be loaned, Borrower assigns, transfers and conveys to Lender, subject to the terms of this Assignment, **all Borrower's rights, title, and interest,** including any extensions or renewals thereof, of Borrower's lease of certain real property owned by MidSouth Rail Corporation (Lessor).
>
> \*       \*       \*
>
> III. Assignment as security: This Assignment is made **solely as to security** for the repayment of the Note or notes made at the execution hereof or any renewals or extensions thereof, and shall remain in full force and effect as long as such indebtedness remains unpaid. Upon repayment in full of such indebtedness, Lender shall convey all rights hereunder back to Borrower.

*Id.* (emphasis in original). The court determined that the contract provided the defendant a security interest, not ownership rights. The evidence presented by the parties demonstrated that the parties' conduct REDACTED was inconsistent with a complete assignment of the collateral property. The creditor did not take over the business use of the property and the debtor never acted as if it had conveyed its complete interest in the property. *Id.* Thus, the court concluded that "the actions of the parties involved clearly indicates that the intent of the agreement was to create a collateral assignment for security purposes only, despite the broadness of the language used." *Id.* at 457.

**REDACTED** . No formal reassignment was required in *Midsouth Rail,*

Similarly, the *In re Tyson Metal Prods.*, 117 B.R. 181 (Bankr. W.D. Pa. 1990) court concluded that parties' conduct signaled that the contract, which was ambiguous as to whether a transaction was an assignment or a security agreement, was "intended to grant a security interest in collateral." *Id.* at 186. The court looked to parole evidence, such as "the business activities, the objectives and the relationship of the parties *as well as* the [contract and the property]" in reaching this conclusion. *Id.* (emphasis added).

The court first described the contract language: "[a]s security for the due and punctual payment and performance of the Debt in accordance with the terms thereof, Borrower hereby grants to and creates in favor of Bank a security interest in the Collateral." *Id.* at 183. The "collateral" in *Tysons Metal*, similar to the collateral here, was defined as "all Borrower's present and future right, title and interest in and to [certain property]." *Id.* The court noted that an assignment should be found only where there was an obvious present intent to make a complete assignment and evidence of divesture of custody and control of the property and found that no

such intent existed under the circumstances. *Id.* at 185. Important in this decision was fact that the debtor had maintained physical possession of the property and the note-holder never reported the property to the appropriate government entity. *Id.* The court found that regardless of the title given the instrument or the labels used to describe it, the evidence, taken together as a whole, lacked the "indicia that the debtor intended to absolutely assign" the property in question. *Id.*

# REDACTED

*Mid South Rail*, 697 So. 2d at 455-457; *In re Tyson Metal Prods.*, 181 B.R. at 184-186; *see also In re Navigation Tech. Corp.*, 880 F.2d 1491, 1493 (1st Cir. 1989) (affirming district court's conclusion that use of "secure" in the assignment agreement and testimony that the assignment was made to obtain a loan indicated a secured loan transaction).

Moreover, the conduct of the parties here, just as in *MidSouth Rail* and *In re Tyson Metal Products*, overwhelmingly indicates that the parties intended a

# REDACTED

# REDACTED

*MidSouth Rail Corp.*, 697 So.2d at 456 (finding that a security agreement had been created despite the phrase "Upon repayment in full of such indebtedness, Lender shall convey all rights hereunder back to Borrower.").

# REDACTED

## D.   PSF and Dr. Heilman's Security Interest In The Patent Application Was Automatically Extinguished Upon Repayment Of The Promissory Note

Pennsylvania law is clear that once an underlying obligation is satisfied, any security interest created by that obligation is automatically extinguished. *Major's Furniture Mart, Inc. v. Castle Credit Corp., Inc.*, 449 F. Supp. 538, 544 (E.D. Pa. 1978); *Interbusiness Bank*, 318 F. Supp. 2d at 245.[6]  "It is a fundamental commercial principle that satisfaction of an underlying debt extinguishes the corresponding security interest." *In re D & K Aviation, Inc.*, 349 B.R. 169, 175 (Bankr. S.D. Ohio 2006) (citing to Article 9 of Ohio Commercial Code). Courts applying Pennsylvania law have similarly concluded that "satisfaction of the underlying debt obligation extinguishes the [assignee]'s security interest." *Interbusiness Bank*, 318 F. Supp. 2d at 245

---

[6] *See also In re Spaniak*, 221 B.R. 732, 735 (Bankr. W.D. Mich. 1998) ("the common law rule [is] that a lien does not exist apart from the obligation or debt that it secures"); *Citizens Nat'l Bank of Tipton v. Indianapolis Auto Auction*, 592 N.E.2d 1256, 1258 (Ind. App. Ct. 1992) (applying identical Indiana Article 9 definition of security interest: "[a] security interest has no existence independent of the obligation whose payment or performance it secures [and] the satisfaction of the underlying obligation extinguishes the security interest")

17

(citations omitted); *see also Major's Furniture Mart, Inc. v. Castle Credit Corp., Inc.*, 449 F. Supp. 538, 544 (E.D Pa. 1978).

Defendants' standing argument thus not only places form over substance, but it is also contradicted by the facts and law relating to the transaction.

# REDACTED

Federal Circuit precedent refutes any attempt by Defendants to argue that the

REDACTED In *Applied Co. v.*

*United States*, 144 F.3d 1470, 1476 (Fed. Cir. 1998), a debtor assigned government contract proceeds to a bank as collateral for a loan. The loan proceeds satisfied the debt. After repayment, the debtor attempted to enforce a no setoff provision in the agreement. The Federal Circuit held that the debtor had no rights to enforce the no setoff provision, reasoning that payment of the debt released the assignment and "**mooted the attendant terms of that assignment,** including the no setoff clause." *Id.* at 1477. (emphasis added). The debtor could not enforce the terms of an assignment that had already been released through repayment. *Id.*

# REDACTED

# **REDACTED**

**E.**               REDACTED                     **McKesson Holds Title**
**To the Patents-In-Suit**

Even if the Court were to conclude that        REDACTED

McKesson is the owner of the patents-in-suit under 35 U.S.C. § 261. Section 261 provides that

"[a]n assignment, grant or conveyance shall be void as against any subsequent purchaser or

mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and

Trademark Office within three months from its date or prior to the date of such subsequent

purchase or mortgage."            REDACTED

McKesson was never made aware that any contention that the Investors owned the patents.

### REDACTED

As such, McKesson was not on notice of any "assignment, grant or

conveyance" and Section 261 renders any assignment void.

## V.   **CONCLUSION**

For the reasons stated herein, McKesson respectfully request that Swisslog's motion to

dismiss pursuant to Rule 12(b)(1) be denied.

Respectfully submitted,

BLANK ROME LLP

*Dale R. Dubé*

Dale R. Dubé (#2863)
1201 N. Market Street
Suite 800
Wilmington, DE 19801
(302) 425-6400
dube@blankrome.com

Blair M. Jacobs
Robert A. Gutkin
Christina A. Ondrick
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 383-0100

*Counsel for Plaintiff McKesson Automation, Inc*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of February, 2008, I served by hand delivery and electronic filing the Public Version of PLAINTIFF MCKESSON AUTOMATION, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, using CM/ECF which will send notification of such filing to the following:

> Julia Heaney, Esquire
> MORRIS, NICHOLS ARSHT & TUNNELL
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899

I also certify that, on this 1st day of February, 2008, I served the aforementioned document, by e-mail and First Class Mail, upon the following participants:

> Lawrence C. Drucker, Esquire
> Alfred R. Fabricant, Esquire
> Richard LaCava, Esquire
> Bryan N. DeMattio, Esquire
> DICKSTEIN SHAPIRO LLP
> 1177 Avenue of the Americas
> New York, NY 10036

> /s/ Dale R. Dubé
> Dale R. Dubé