UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON AUTOMATION, INC. a Delaware Corporation, Plaintiff, v. TRANSLOGIC CORPORATION a Delaware Corporation, and SWISSLOG ITALIA S.P.A. an Italian Corporation, Defendants. | Civ. Action No. 1:06CV00028-MPT PUBLIC VERSION |

**DECLARATION OF KATHERINE R. LAHNSTEIN-BERTOCCI**

I, KATHERINE R. LAHNSTEIN-BERTOCCI, hereby declare, affirm and state the following:

1. I am an attorney with the law firm of Sutherland Asbill & Brennan LLP in Washington DC at 1275 Pennsylvania Ave NW.

2. I am submitting this declaration in support of Plaintiff's Opposition to Defendants' Motion to Dismiss.

3. The facts set forth below are known to me personally and I have first-hand knowledge of them.

4. Attached hereto this Declaration as Exhibit A is a true and correct copy of the REDACTED (M0475803 - M0475816).

5. Attached hereto this Declaration as Exhibit B is a true and correct copy of the REDACTED (M0474909 - M0474910).

6. Attached hereto this Declaration as Exhibit C is a true and correct copy of the PSF REDACTED (M047912 -- M0474912).

7. Attached hereto this Declaration as Exhibit D is a true and correct copy of the REDACTED (M0474911)

8. Attached hereto this Declaration as Exhibit E is a true and correct copy of the REDACTED (M0143293 -- M014294)

9. Attached hereto this Declaration as Exhibit F is a true and correct copy of the REDACTED (M0143189 -- M0143303)

10. Attached hereto this Declaration as Exhibit G is a true and correct copy of the REDACTED (M0474908 -- M0474912)

11. Attached hereto this Declaration as Exhibit H is a true and correct copy of the REDACTED

12. Attached hereto this Declaration as Exhibit I is a true and correct copy of the **REDACTED**

13. Attached hereto this Declaration as Exhibit J is a true and correct copy of the **REDACTED** (M0144871 -- M0144881).

14. Attached hereto this Declaration as Exhibit K is a true and correct copy of the **REDACTED** (M0139925 - M0140039)

15. Attached hereto this Declaration as Exhibit L is a true and correct copy of the **REDACTED** (M0138454- M0138455)

16. Attached hereto this Declaration as Exhibit M is a true and correct copy of the *PE Corp. v. Affymetrix, Inc.*, 2001 WL 1180280, (D. Del. September 27, 2001)

17. Attached hereto this Declaration as Exhibit N is a true and correct copy of the *UD Technology Corp. v. Phenomenex, Inc.*, 2007 WL 28295, (D. Del. January 04, 2007)

18. Attached hereto this Declaration as Exhibit O is a true and correct copy of the **REDACTED** (M0474927)

19. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

January 25, 2008

Katherine R. Lahnstein-Bertocci, Esq.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of February, 2008, I served by hand delivery and electronic filing the Public Version of the DECLARATION OF KATHERINE R. LAHNSTEIN-BERTOCCI, using CM/ECF which will send notification of such filing to the following:

Julia Heaney, Esquire
MORRIS, NICHOLS ARSHT & TUNNELL
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899

I also certify that, on this 1st day of February, 2008, I served the aforementioned document, by e-mail and First Class Mail, upon the following participants:

Lawrence C. Drucker, Esquire
Alfred R. Fabricant, Esquire
Richard LaCava, Esquire
Bryan N. DeMattio, Esquire
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY 10036

Dale R. Dubé
_______________________
Dale R. Dubé

# EXHIBITS A – L

# REDACTED IN THEIR ENTIRETY

# EXHIBIT M

PE Corp. v. Affymetrix, Inc.
D.Del.,2001.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
PE CORPORATION and Competitive Technologies, Inc., Plaintiffs,
v.
AFFYMETRIX, INC., Defendant and Third-Party Plaintiff,
v.
PERSEPTIVE BIOSYSTEMS, INC., Third-Party Defendant.
**No. Civ.A. 00-629-SLR.**

Sept. 27, 2001.

Steven J. Balick, and Steven T. Margolin, of Ashby & Geddes, Wilmington, Delaware, David A. Kalow, John J. Santalone, Philip A. Byler, and William D. Schmidt, of Kalow & Springut LLP, New York, New York, for Plaintiffs and Third-Party Defendant, of counsel.
Thomas P. Preston, of Reed Smith LLP, Wilmington, Delaware, Ronald J. Schultz, Cole M. Fauver, and Nicholas S. Boebel, of Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, Minnesota. Robert J. Koch, of Fulbright & Jaworski, Washington, D.C., for Defendant, of counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 Plaintiffs PE Corporation ("PE") [FN1] and Competitive Technologies, Inc. ("Competitive Technologies") filed this action on July 5, 2000 against defendant Affymetrix, Inc. ("Affymetrix") alleging infringement of United States Patent Nos. 4,458,066; 4,500,707; 5,132,418; 5,153,319 and 4,973,679. Currently before the court are defendant's motion to dismiss for lack of subject matter jurisdiction (D.I.20) and plaintiffs' motion to amend the complaint. (D.I.29) For the following reasons, the court shall grant both motions.

FN1. Although PE apparently has changed its corporate name, the court will refer to it as PE, consistent with the briefing on its motion.

II. BACKGROUND

In 1981, University Patents, Inc., now Competitive Technologies, granted a license to the patents in suit to Applied Biosystems, Inc. ("ABI"), which was later acquired by PE Corporation (N.Y.) ("PE(N.Y.)"). In 1988, the parties amended the agreement to grant ABI, now PE(N.Y.), "a worldwide, exclusive (even as to UPI [now Competitive Technologies] ), unrestricted and fully paid-up license" to the patents in suit, including the right to grant sublicences.[FN2] Significantly, the agreement of amendment also granted ABI (now PE(N.Y.)) the

FN2. This exclusive license was subject to a nonexclusive license granted to Beckman Instruments, Inc.

sole right and responsibility to file, refile, prosecute, extend, maintain, defend and prosecute interferences

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and/or appeals for the Licensed Patents in various Patent Offices throughout the world....

As of June 30, 1988 and thereafter, ABI shall have the sole right and responsibility to bring or defend patent infringement and patent validity suits and otherwise defend the Licensed Patents against third parties in suits thereupon, and shall be solely responsible for all costs and expenses therefor incurred after June 30, 1988, including, but not limited to, attorney's fees and expenses, court costs, expert fees and other trial expenses and any assessments of damages for claims or counterclaims related to the Licensed Patents.

(D.I.34, Ex. 1-D)

In July 2000, PE and Competitive Technologies filed this action against Affymetrix. On January 30, 2001, Affymetrix filed a motion to dismiss, alleging that neither PE nor Competitive Technologies has standing to sue. On January 25, 2001, prior to filing the motion to dismiss, Affymetrix instituted a declaratory judgment action over the patents in suit in the Southern District of New York.

On February 9, 2001, plaintiffs requested Affymetrix's permission to substitute PE(N.Y.) for PE as plaintiff in this action.[FN3] Affymetrix did not agree to plaintiffs' request. Consequently, on February 16, 2001, plaintiffs filed a cross-motion to amend the complaint to add PE(N.Y.) as a plaintiff.

FN3. PE(N.Y.) is a wholly-owned subsidiary of PE.

III. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

A. Standard of Review

Federal Rule of Civil Procedure 15(a) allows courts to freely permit amendments to complaints as justice requires.[FN4] Courts commonly permit amendments where clerical mistakes are involved and the errors were made in good faith. Courts are also encouraged to grant pretrial amendments so that parties may fully present the issues. *SeeMoore's Federal Practice,* § 15.14[1]. An amended complaint that contains an additional or substituted party will only relate back to the original complaint's filing date if it satisfies the requirements of Federal Rule of Civil Procedure 15(c)(3).[FN5]

FN4. Rule 15(a) provides, in pertinent part:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

FN5. Rule 15(c)(3) provides, in pertinent part:

An amendment of a pleading relates back to the date of the original pleading when ... the amendment changes the party or the naming of the party against whom a claim is asserted if [the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading] and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment

(A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and

(B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

B. Discussion

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*2 Plaintiffs argue that they should be permitted to amend the complaint because their error was made in good faith. Specifically, plaintiffs claim that the numerous and confusing mergers and name changes of PE and PE(N.Y.) led to designating the wrong party as a plaintiff. (D.I.30, Ex. A) The court finds no evidence to suggest that plaintiffs' failure to designate PE(N.Y.) as a plaintiff in this litigation was anything but a clerical error. Therefore, based on the record presented, plaintiffs' motion to amend the complaint to add PE(N.Y.) as a plaintiff is granted.

The next issue is whether the amended complaint relates back to the original complaint's filing date of July 5, 2000, or maintains the filing date of the motion to amend, February 16, 2001. Plaintiffs rely on *Calgon Corp. v. Nalco Chem.*, 726 F.Supp. 983 (D.Del.1989) and *Schering Corp v. Amgen, Inc.*, 969 F.Supp. 258 (D.Del.1997) to support their position that the amended complaint should relate back to the original filing date. *Schering* and *Calgon* are inapposite, however, because they involve licensees who possessed some, but not all, substantial rights in the patents at issue and who failed to join the patent owners. The present case concerns the addition of the party possessing all substantial rights to the patent. Therefore, to determine whether the amended complaint relates back to July 2000, the court must resolve the issues raised by defendant's motion to dismiss, that is, whether the original plaintiffs had standing to sue in the first instance.

## IV. DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A. Standard of Review

Standing in a patent infringement case is derived from the Patent Act, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent."35 U.S.C. § 281. The term "patentee" includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee."35 U.S.C. § 100(d)."The question of standing to sue is a jurisdictional one."*Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1551 (Fed.Cir.1995). Standing is a "threshold issue in every federal case, determining the power of the court to entertain the suit."*Warth v. Seldin*, 422 U.S. 490, 498 (1975). Federal courts are under an independent obligation to examine their own jurisdiction, and standing "is perhaps the most important of [the jurisdictional] doctrines."*FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

It is well settled that standing cannot be "inferred argumentatively from averments in the pleadings,"*Grace v. Am. Cent. Ins. Co.*, 109 U.S. 278, 284 (1883), but rather "must affirmatively appear in the record."*Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884). Additionally, the party who seeks the exercise of jurisdiction in its favor has the burden of clearly alleging facts demonstrating that it is a proper party to invoke judicial resolution of the dispute. *Id.* In the present case, the court must determine whether there is affirmative evidence in the record indicating that PE and Competitive Technologies have standing to sue Affymetrix for patent infringement.

### B. Discussion

*3 Article III of the Constitution requires a party invoking federal jurisdiction to establish that: 1) it has suffered an injury-in-fact that is concrete and actual or imminent; 2) the injury is causally related to the actions of the defendant; and 3) the harm is redressable by a favorable decision. *SeeIntellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1346 (Fed.Cir.2001) (*citingLujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Standing doctrine embraces not only this "three-prong Article III standing test," but also "judicially self-imposed limits, known as prudential limits, on the exercise of jurisdiction."*Id.* at 1348.Thus, "[a]s a prudential principle, an exclusive licensee having fewer than all substantial patent rights possesses standing under the Patent Act as long as it sues in the name of, and jointly with, the patent owner and meets the *Lujan* requirements."*Id.*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Upon reviewing the record, the court finds that PE lacked constitutional standing to sue Affymetrix because it had no proprietary interest in the patents in suit. The question remains whether Competitive Technologies had constitutional standing, having transferred substantial rights in the patents to PE(N.Y.).

As recognized by the Federal Circuit in *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1131 (Fed.Cir.1995), "[t]he right to sue for infringement is ordinarily an incident of legal title to the patent."Consequently, the issue generally framed for the courts is whether a licensee has obtained sufficient rights in the patent to be entitled to seek relief from infringement without joining the patent owner. If that were the issue presented by the parties in the present case, the answer would be self-evident: PE(N.Y.) has obtained sufficient rights in the patent to bring an infringement suit in its own name. Indeed, the license of record specifically grants to PE(N.Y.) "a worldwide, exclusive (even as to [Competitive Technologies] ), unrestricted and fully paid-up license" and the "sole right and responsibility to bring or defend patent infringement and patent validity suits and otherwise defend the Licensed Patents against third parties in suits thereupon...." (D.I. 34, Ex. 1-D at 4) (emphasis added) Thus, Competitive Technologies, as patent owner, cannot maintain suit in its own name and is not a necessary party to this litigation.

The court recognizes that, because Competitive Technologies retains legal title to the patents in suit and receives royalties from Beckman Instruments, Inc., under most circumstances one would conclude that Competitive Technologies retains sufficient proprietary interests in the patents to participate in the infringement action. Nevertheless, the parties at bar entered into an agreement whereby Competitive Technologies gave up the right to participate in lawsuits to protect the patents in suit. Given these circumstances, the court finds it illogical to essentially determine the proper forum for this litigation based on the fact that the patent owner filed suit in Delaware first, when the patent owner did not have the right to file suit at all.

V. CONCLUSION

*4 For the reasons stated, although plaintiffs' motion to amend the complaint is granted, the court finds that the amended complaint does not relate back to July 2000. Therefore, the New York action is the first-filed action and, under the reasoning of *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir.1941), defendant's motion to dismiss is granted

ORDER

At Wilmington, this 27th day of September, 2001, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that plaintiffs' motion to amend the complaint (D.I.29) is granted, but the amended complaint does not relate back to the filing date of the original complaint. Thus, defendant's motion to dismiss for lack of subject matter jurisdiction (D.I.20) is granted.

D.Del.,2001.
PE Corp. v. Affymetrix, Inc.
Not Reported in F.Supp.2d, 2001 WL 1180280 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works

# EXHIBIT N

UD Technology Corp. v. Phenomenex, Inc.
D.Del.,2007.
Only the Westlaw citation is currently available.

United States District Court,D. Delaware.
UD TECHNOLOGY CORPORATION, Plaintiff,
v.
PHENOMENEX, INC., Defendant.
**C.A. No. 05-842-GMS.**

Jan. 4, 2007.

Michael P. Kelly, McCarter & English, LLP, Wilmington, DE, for Plaintiff.
John W. Shaw, Young, Conaway, Stargatt & Taylor, Chad Michael Shandler, Richards, Layton & Finger, Wilmington, DE, for Defendant.

*MEMORANDUM*

GREGORY M. SLEET, United States District Judge.

**I. INTRODUCTION**

*1 The plaintiff, UD Technology Corporation ("UDTC"), filed the above captioned suit, against Defendants Phenomenex, Inc. ("Phenomenex") and Research Corporation Technologies ("RCT"), alleging patent infringement, breach of contract, violation of the covenant of good faith and fair dealing, misappropriation of trade secrets, violation of the Uniform Deceptive Trade Practices Act, unjust enrichment, and conversion. On July 21, 2006, UDTC filed a stipulation of dismissal, dismissing RCT from the case, with prejudice. (D.I.37.) Presently before the court is Phenomenex's motion to dismiss UDTC's complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1), and UDTC's motion to amend its complaint. For the reasons set forth below, the court will (1) grant-in-part and deny-in-part Phenomenex's motion to dismiss and (2) grant-in-part and deny-in-part UDTC's motion to amend.

**II. BACKGROUND**

In March of 1990, the University of Delaware (the "University") entered into a contract with RCT for "Disclosure, Evaluation and Commercialization of Inventions" (the "DECI"). (D.I.26, Ex. A.) In the DECI contract, the University granted RCT certain rights to market and promote the University's proprietary technologies. *Id.*

In or around 1991, Drs. Mary Wirth and Hafeez O. Fatunmbi were working in the Department of Chemistry and Biochemistry at the University on the study of surface chemistries relating to substrates such as silica beads used in chromatographic processes. (D.I.1, Compl.¶¶ 12, 14.) This work culminated in an application for a patent. (D.I.1, Compl.¶¶ 14-15.) On June 17, 1992, RCT filed U.S. Patent Application No. 900,215 (the "Application") to protect Drs. Wirth and Fatunmbi's research. *Id.*

In August 1992, RCT and Phenomenex entered into the "Materials Treatment Agreement," which allowed

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Phenomenex to submit certain materials for treatment according to the technology in the Application, and an opportunity to use the treated materials for noncommercial research purposes. (D.I.26, Ex. B.) According to the Materials Treatment Agreement, Drs. Wirth and Fatunmbi (the "Inventors") had assigned the Application to RCT. *Id.*

In March 1993, RCT and Phenomenex entered into the "Evaluation License Agreement," in which RCT granted Phenomenex a license to make and use products, and to practice processes, using the technology in the Application, for evaluation of the "invention" described in the Application. (D.I.26, Ex. C.)

During RCT's ownership of the Application and claimed technology, U.S. Patent No. 5,599,625 ("the '625 patent"), entitled "Products Having Multiple-Substituted Polysiloxane Monolayer," issued to Drs. Wirth and Fatunmbi (the "Inventors"), on February 4, 1997. (D.I.1, Compl.¶ 27.) On August 10, 2001, RCT assigned to the University its "entire right, title and interest" in the ' 625 patent. (D.I.26, Ex. E.) This assignment was pursuant to an "Agreement to Assign" between RCT and the University, effective July 24, 2001. *Id.*

*2 Plaintiff UDTC owns and manages intellectual property developed through the University's scientific research and doctorate programs. (D.I.1, Compl.¶ 1.)

## III. STANDARDS OF REVIEW

### A. Rule 12(b)(1) Standard

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of a plaintiff's complaint. A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction can take two forms: it can attack the complaint on its face (facial attack), or it can attack the existence of subject matter jurisdiction in fact (factual attack). *Mortensen v. First Federal Savings and Loan*, 549 F.2d 884, 891 (3d Cir.1977). When reviewing a facial attack, the court must consider the allegations of the complaint as true, making all reasonable inferences in the plaintiff's favor. *Id.*

When reviewing a factual attack, however, the court is free to weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction and to satisfy itself as to the existence of its power to hear the case. *Mortensen*, 549 F.2d at 891. Therefore, no presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating the merits of jurisdictional claims for itself. *Id.* The plaintiff bears the burden to prove that jurisdiction does in fact exist. *Id.* However, the plaintiff's burden is relatively light, since "dismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as to not involve a federal controversy.' " *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir.1987)(*quoting Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)).

### B. Rule 12(b)(6) Standard

In ruling on a motion to dismiss for failure to state a claim, the factual allegations of the complaint must be accepted as true. *See Graves v. Lowery*, 117 F.3d 723, 726 (3d Cir.1997); *Nami v.. Fauver*, 82 F.3d 63, 65 (3d Cir.1996). Moreover, a court must view all reasonable inferences that may be drawn from the complaint in the light most favorable to the non-moving party. *See Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir.1991). A court should dismiss a complaint "only if it is clear that no relief could be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

granted under any set of facts that could be proved consistent with the allegations."*See* Graves, 117 F.3d at 726;*Nami*, 82 F.3d at 65 (both *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

**C. Motion to Amend Standard**

Leave to amend a pleading should be "freely given when justice so requires."Fed.R.Civ.P. 15(a). The court has discretion to deny leave to amend when there exists undue delay, bad faith, dilatory motive or undue prejudice to the opposing party, or when the amendment would be futile. *See* *Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir.1997).

**IV. DISCUSSION**

*3 "When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot."*In Re Corestates Trust Fee Litig.*, 837 F.Supp. 104, 105 (E.D.Pa.1993), *aff'd*39 F.3d 61 (3d Cir.1994). Therefore, the court will first turn its attention to the 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

**A. Patent Infringement (Count I)**

UDTC first contends that Phenomenex has infringed and continues to infringe one or more claims of the '625 patent by its offer of sale and sale of certain Phenomenex products, including products marketed under the name Jupiter. (D.I.1, Compl.¶ 28.) Phenomenex argues that UDTC lacks standing to assert a claim for patent infringement arising prior to 2001 because UDTC does not allege that UDTC was transferred the right to sue for past infringement, and its right to sue for post-2001 patent infringement is insufficiently pled.

Standing to sue for infringement has traditionally been confined to those with an ownership interest in the patent at the time of the infringement.*Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed.Cir.1991) ( "The general rule is that one seeking to recover money damages for infringement of a United States patent (an action 'at law') must have held the legal title to the patent during the time of the infringement."). Where a plaintiff, who is not the inventor, seeks to sue for infringement, both past and present, the plaintiff must have obtained an assignment of the patent, coupled with an assignment of a right of action for past infringements. *Id.* The latter assignment must be express, and cannot be inferred from an assignment of the patent itself. *Id.* *(citing* *Moore v. Marsh*, 74 U.S. (7 Wall.) 515, 522 (1868)). Applying these principles to the facts alleged in UDTC's complaint and the contracts available for the court's review, the court concludes that UDTC does not demonstrate standing to sue for any period of infringement of the ' 625 patent.

UDTC's complaint alleges two assignments from the University to UDTC (D.I.1, Compl.¶ 8), but does not identify any time frame or relate such assignments chronologically with an alleged assignment from RCT to the University on July 24, 2001 (D.I.1, Compl.¶ 30). UDTC cites to RCT's Answer to UDTC's original complaint as support for its claim that RCT assigned its rights to the '625 patent and all related contractual interests to the University. (D.I. 26 at 11, Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss.) UDTC not only argues that RCT admits UDTC's allegation of a complete transfer of rights, but UDTC also points out that RCT asserts no rights under the '625 patent in this action. *Id.* Nevertheless, RCT's Answer to UDTC's complaint bears no weight or relevance as to the propriety and sufficiency of UDTC's complaint against Phenomenex.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*4 Even if RCT's Answer was arguably relevant to the issue of the sufficiency of UDTC's complaint, the substance of the cited portion of RCT's Answer does not help UDTC. Indeed, it does nothing more than admit the averments of paragraph 30 of the Complaint. Paragraph 30 alleges that, pursuant to a July 24, 2001 Agreement to Assign, RCT assigned all of its right, title, and interest in and to the '625 Patent and the inventions described therein to the University on August 10, 2001. This "admission" does not address the issue of whether UDTC has the right to sue for past infringement. Likewise, it offers no insight into the question of when or by what instrument UDTC was assigned all of the University's "past, present and/or future right, title and interest in and to the technology and any agreements, causes of action and/or third party beneficiary rights associated with the '625 Patent to UDTC."(D.I .1, Compl.¶ 8.)

*1. Right to Sue for Past Infringement, Prior to August 10, 2001*

In its opposition brief, UDTC cites to *Minco, Inc. v. Combustion Engineering, Inc.*[FN2] for the proposition that "the intent of the parties control."(D.I. 26 at 12, Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss.) This assertion, however, misconstrues the holding in *Minco.*The Federal Circuit did indeed affirm the trial court's decision that the plaintiff could recover damages for infringement occurring before the date of the assignment to the plaintiff, but the Federal Circuit did so by analyzing whether *"the assignment agreement manifests an intent"* to transfer the right to sue for prior infringement. *Minco,* 95 F.3d at 1117 (emphasis added). In other words, in *Minco,* the Court of Appeals found clear intent from the words of the assignment itself. *Id.* ("The express reference to past infringement in the MAC assignment expanded the scope of the term 'right, title, and interest' to encompass the right to sue for prior infringement.").

FN2. 95 F.3d 1109, 117 (Fed.Cir.1996).

*Chisum* has aptly summarized a long line of Supreme Court and Federal Circuit cases as holding that if ownership of the patent is transferred, the transferor retains the right to sue for pre-transfer infringements unless that right is expressly relinquished in the transfer. CHISUM § 21.03[2][g][I]. In spite of this well-settled federal law, UDTC urges the court to apply Delaware and Arizona state law regarding the interpretation of contract language to "fix the scope and breadth of [the] assignment ."(D.I. 26 at 12.) Determining whether the right to sue for prior infringement has been transferred turns on the proper construction of the assignment agreements, which is a matter of state contract law. *Minco,* 95 F.3d at 1117. The Delaware and Arizona cases to which UDTC directs the court's attention, however, concern contracts with ambiguous terms. None of these cases permit resort to extrinsic evidence for unambiguous contract language, as in the case here. Further, the court has not found any Arizona or Delaware case law that sanctions the contract interpretation UDTC asks the court to adopt under the facts of this case.

*5 Moreover, the agreements that the court has in its possession and to which the court must confine its analysis, in the absence of any other evidence from UDTC, do not manifest any intent to confer a right to sue for past infringement. In the absence of an express provision to sue for past damages, as is the case here, the court cannot confer standing on UDTC to pursue damages for alleged patent infringement that occurred before it was assigned the ' 625 patent.

Additionally, UDTC directs the court's attention to the litigation conduct of RCT as a reason to infer a provision not expressed in the assignment. Specifically, UDTC suggests that because RCT did not file a cross-claim, counter-claim, or otherwise assert an affirmative defense, the totality of circumstances indicates that RCT conveyed to the University any rights it had to sue for past infringement. (D.I. 26 at 13.) Simply put, the conduct of third-party RCT in litigation is not evidence from which the court can now conclude that UDTC was assigned a right to sue for past infringement.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The court therefore rejects UDTC's contention that it has sufficiently alleged a right to sue for past infringement. Moreover, the court is left wondering whether UDTC indeed possesses the right to sue for patent infringement alleged to have occurred during any period.

*2. Right to Sue for Infringement After August 10, 2001 Assignment*

The court notes that UDTC does not even attach as an exhibit to its complaint, responsive briefs, or amended complaint, the instrument that purportedly conferred to UDTC the rights to bring this lawsuit. The party asserting the existence of subject matter jurisdiction bears the burden of proof when contesting a Rule 12(b)(1) motion. *See, e.g.* *Mortensen,* 549 F.2d at 891 n. 16 (3d Cir.1977). Here, UDTC states that "[a]t such time as it becomes necessary (because it is not now in the context of a motion to dismiss), UDTC will adequately evidence the assignment from the University to UDTC."(D.I. 26 at 9.) Unfortunately, for UDTC, as the saying goes, there is no time like the present. More specifically, the necessary time was immediately after subject matter jurisdiction was challenged, i.e. when UDTC filed its opposition to Phenomenex's motion to dismiss. *See* *Cedars-Sinai Medical Center v. Watkins,* 11 F.3d 1573, 1584 (Fed.Cir.1993) ("Once challenged, allegations alone are insufficient to meet the complainant's burden [to support its contention regarding the court's jurisdiction].").

In Phenomenex's Opening Brief in Support of its Motion to Dismiss, Phenomenex states that "UDTC's claims are insufficient as pled and must be dismissed, insofar as UDTC has failed to state claims upon which relief can be granted and improperly alleged subject matter jurisdiction for its claim of patent infringement."(D.I. 23 at 1, Def.'s Br. ISO Mot. to Dismiss.) In apparent deference to UDTC's conclusory allegation that the University assigned its rights in the '625 patent to UDTC, Phenomenex appears to retreat from its initial argument as to UDTC's lack of standing to pursue post-2001 patent infringement. *See* Def.'s Reply Br. ISO Mot. to Dismiss (D.I. 32 at 2). The court will not, however, cover Phenomenex's withdrawal. *See* *Mennen Co. v. Atlantic Mt. Ins. Co.,* 147 F.3d 287 (3d Cir.1998) ("A party may not confer or defeat jurisdiction by mere pleading. Subject matter jurisdiction depends upon facts, and ***when any question arises as to the existence of jurisdiction, a federal court is obligated to make an independent determination of those facts.")***.

*6 Phenomenex has raised a colorable question as to whether this court has jurisdiction to hear UDTC's pre-2001 patent infringement claims. The court agrees with Phenomenex that UDTC cannot pursue its claim for past infringement of the '625 patent before this forum. Fulfilling its obligation to make an independent determination, the court also finds proof of subject-matter jurisdiction lacking for UDTC's post-2001 patent infringement claims. The court will, however, give UDTC another opportunity to demonstrate that it has the right to pursue post-2001 infringement claims, as set forth in the accompanying order.

**B. Contract Claims (Counts II-V)**[FN3]

FN3. Counts IX-X were also contract-related counts against RCT. Since RCT has been dismissed from this action, the court will not address counts IX-X, as they are moot.

*1. Breach of Contract*

UDTC alleges that Phenomenex has breached the Materials Agreement between RCT and Phenomenex and the Evaluation License Agreement between the same parties. Neither UDTC or the University of Delaware contend they were parties to either contract. Phenomenex argues that UDTC has not pled facts sufficient to confer standing to assert claims for breaches of the Materials Treatment and Evaluation License Agreements. The court agrees.

A fundamental principle of contract law provides that only those entities that are parties to a contract or conferred rights to or under a contract have standing to enforce it. *See Insituform of North America, Inc. v. Chandler*, 534 A.2d 257 (Del. Ch.1987) ("Analysis of the standing issue begins with recognition of the general rule that strangers to a contract ordinarily acquire no rights under it unless it is the intention of the promisee to confer a benefit upon such third party.").*See generally* 2 *Williston on Contracts* § 356 (1959); 4 *Corbin on Contracts* §§ 772, 774 (1951). The developed law has characterized persons who, while not being parties to a contract, nonetheless benefit from its performance in one of three ways: as donee beneficiaries, as creditor beneficiaries, or as incidental beneficiaries. Restatement of Contracts § 133 (1932); *see generally Restatement of Contracts (Second)* § 302 (1979). Where a contract only incidentally or remotely benefits a third party, but is not expressly made for the benefit of the party, that party cannot recover thereon. *Fobes v. Blue Cross and Blue Shield of Arizona, Inc.*, 861 P.2d 692, 696 (Ariz.Ct.App.1993); *see also German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230 (1912) ("Before a stranger can avail himself of the exceptional privilege of suing for a breach of an agreement to which he is not a party, he must, at least, show that it was intended for his direct benefit.").

As a threshold matter, the court finds the factual allegations in the complaint facially deficient. *See*Fed.R.Civ.P. 8(a) and 9(f).Rule 8(a) requires a claimant to set forth (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim ***showing that the pleader is entitled to relief,*** and (3) a demand for judgment for the relief the pleader seeks. Rule 9(f) states: "For the purpose of testing the sufficiency of a pleading, ***averments of time and place are material*** and shall be considered like all other averments of material matter."[FN4]

> FN4."Whether or not statements in a pleading of time and place are required is determined by the substantive nature of the suit ... A specific statement of time has been required in numerous types of cases. For example, in pleading claims based on a written contract or promissory note, it usually is necessary to allege the time it was signed ... because this helps identify the document that is the subject matter of the dispute."5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1309 (2d ed.1995).

*7 Notably, UDTC's complaint fails to specifically allege that it possesses rights to enforce the Materials Treatment and Evaluation License Agreements. The closest averment the court can find within the complaint is the conclusory allegation of paragraph 8, which alleges two unidentified assignments from the University to UDTC. (D.I.1, Compl.¶ 8.) As noted above, however, neither the University nor UDTC are parties to the agreements UDTC is attempting to enforce. Additionally, the alleged assignments of paragraph 8 of the complaint provide no temporal context. That is, the averment does not identify either contract by name or time frame, nor does it relate either assignment contextually and chronologically with an alleged assignment from RCT to the University on August 10, 2001. *See* Compl. ¶ 30. (D.I.1.) Moreover, the alleged assignment from RCT to the University averred in paragraph 30, does not confer an assignment of contractual rights, only prospective ownership rights to the ' 625 patent. *Id.*

In response to Phenomenex's challenge to UDTC's standing, UDTC states that it has alleged "rights to pursue its claims as (i) a party (either as a principal to its agent RCT or directly), (ii) as a disclosed and intended third party beneficiary thereto, and (iii) as previously stated, via total assignment of rights. (D.I.1-Compl.¶¶ 7-8)." (D.I. 26 at 13-14). First, the only contracts the court has in its possession clearly show that UDTC was not a party. Phenomenex correctly points out that UDTC did not plead agency and cannot defeat a motion to dismiss by now advancing the theory that RCT, originally a defendant in this action, was an agent for UDTC.

Second, UDTC did not plead that it was an intended third party beneficiary and the Materials Treatment and Evaluation License Agreements don't disclose it as such.[FN5]Furthermore, the Evaluation License Agreement contains the following language: *"No Third-Party Beneficiaries.*None of the provisions of this Agreement shall be for the benefit of, or enforceable by, any third party."While not as explicit as the Evaluation License Agreement, the Materials Treatment Agreement contains no mention of UDTC and only passively refers to the University of Delaware in further identifying the Inventors of what has become the '625 patent. *See* D.I. 26, Ex. B ("Drs. M.J. Wirth and H.O. Fatunmbi ("INVENTORS") of the University of Delaware have invented a Multiple-Substituted

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Polysiloxane Monolayer ('INVENTION') as described in U.S. Patent Application No. 900,215, filed 06/17/92 ('APPLICATION')."). This passing reference gives no indication that the University was an intended third party beneficiary. Furthermore, the Materials Treatment Agreement itself states that the Inventors assigned the technology at issue to RCT.

FN5. The court need not engage the purely academic exercise of determining whether, under Arizona or Delaware law, UDTC qualifies as an intended third party beneficiary as it fails to plead third-party beneficiary status.

Finally, UDTC offers no support for its allegation that RCT assigned any contractual rights to the University. Given Phenomenex's subject-matter jurisdictional challenge, UDTC must first establish that RCT assigned both agreements to the University, before it can rely on an alleged assignment of those rights from the University to UDTC. Instead, UDTC alleged that RCT retained contractual rights to "police and monitor all third party use of the Licensed Technology."(D.I.1, Compl.¶ 34.) This allegation formed part of the basis for UDTC's now-dismissed suit against RCT. At the time of the complaint, UDTC claimed that RCT was still responsible for monitoring the Licensed Technology. (D.I.1, Compl.¶ 33) ("Pursuant to the Marketing Agreement, RCT was ***and is*** responsible for monitoring the Licensed Technology...."). These allegations, which find support in the Marketing Agreement, the July 2001 Agreement to Assign, and the accompanying August 2001 Deed of Assignment, contradict UDTC's argument that it can pursue its contract claims pursuant to "total assignment" of rights. For these reasons, UDTC's breach of contract claims must be dismissed.

*2. Breach of the Covenant of Good Faith & Fair Dealing*

*8 The court agrees with Phenomenex's contention that UDTC does not have standing to pursue an alleged breach of the covenant of good faith and fair dealing,. *See* Leal v. Allstate Ins. Co., 17 P.3d 95, 99 (Ariz.Ct.App.2000) ( "Courts imply a covenant of good faith and fair dealing in every contract. The duty to act in good faith arises by virtue of a contractual relationship. Thus, a third-party claimant, a stranger to the contract, cannot sue the insurer for tortious breach of the duty of good faith."); *Superior Vision Servs. v. Reliastar Life Ins. Co.*, 2006 Del. Ch. LEXIS 160 (Del. Ch., Aug. 25, 2006, Decided) ("[I]mposing an obligation on a contracting party through the covenant of good faith and fair dealing is a cautious enterprise and instances should be rare."). The court can find no grounds upon which to impose a duty of good faith and fair dealing flowing from Phenomenex to UDTC. In the absence of any evidence demonstrating an assignment of contractual rights to UDTC,[FN6] the court concludes that UDTC's contract-related claims must be dismissed.

FN6. The court acknowledges that Phenomenex has set forth additional grounds for the dismissal of UDTC's contract claims, however, the court has concluded that UDTC lacks standing and therefore, the court will not reach the merits of Phenomenex's additional arguments.

*3. Misappropriation of Trade Secrets*

In Counts IV and V of its complaint, UDTC alleges that Phenomenex willfully misappropriated the University's trade secrets, in violation of Ariz.Rev.Stat. Sec. 44 and 6 Del. C. Sec.2001. According to paragraphs 60 and 68 of its complaint, UDTC predicates its claims of trade secret misappropriation on an agreement between Phenomenex and RCT that allegedly required Phenomenex to keep the University's secrets. (D.I.1, Compl.¶¶ 60, 68.) Where the duty to keep a divulged trade secret arises from a contract, it follows that only those parties to the contract have standing to pursue a claim of trade secret misappropriation based on a breach of that contract. For the reasons previously stated, the court concludes that UDTC does not have standing to pursue contract-based claims against Phenomenex. Therefore, UDTC's trade secret misappropriation claim must be dismissed.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**C. Claims for Violation of the Uniform Deceptive Trade Practices, Unjust Enrichment, and Conversion (Count VI-VIII)**

In Count VI of its complaint, UDTC alleges that Phenomenex engaged in conduct designed "to deceive the public to whom Phenomenex markets such that it represents expertise, experience and product design ***that are the result of secret misappropriation of the Licensed Technology and the '625 Patent.***"(D.I.1, Compl.¶ 73) (Emphasis added). In Count VII, UDTC alleges that Phenomenex benefited from "Phenomenex's unauthorized use of the Licensed Technology and '625 Patent."(D.I.1, Compl.¶ 79.) UDTC's allegations of trade secret misappropriation preempt its claims of deceptive trade practices and unjust enrichment. This is so because the latter claims are based expressly upon the alleged misappropriation of trade secrets. The misappropriation is alleged to stem from Phenomenex's alleged use of and benefit from the University's confidential information. *See On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH,* 386 F.3d 1122, 1146 (Fed.Cir.2004); *Ethypharm S.A. v. Bentley Pharm., Inc.,* 388 F.Supp.2d 426, 433 (D.Del.2005) (granting motion to dismiss fraud and unjust enrichment claims as preempted). Since no additional facts, independent of those alleged in support of its trade secret misappropriation claim, have been averred to support these claims, UDTC's deceptive trade practice and unjust enrichment claims are therefore dismissed, as preempted.

*9 The eighth count of the complaint alleges conversion. (D.I.1, Compl.¶ 82.) The extent to which UDTC's conversion action is predicated only on the same facts upon which it bases its deceptive trade practice and unjust enrichment claims, the conversion claim is clearly preempted. *Ethypharm,* 388 F.Supp.2d at 433.

It is conceivable that UDTC also presents a claim for conversion of tangible property in addition to its claim of conversion of intellectual property. In its complaint, UDTC refers to "other property" (D.I.1, Compl.¶ 82) ("Phenomenex, by exercising control and dominion over the Licensed Technologies and the '625 Patent and *other property* in an unauthorized manner, systematically and secretly deprived UDTC of its interest in its intellectual property.") (emphasis added). UDTC later defines Licensed Technology to include "other technology, including any trade secrets and/or know how associated therewith, that is encompassed by any of the Marketing Agreement, the Materials Agreement and the Evaluation Agreement, including Licensed products and Licensed Processes as defined in those Agreements."(D.I.1, Compl. ¶ 35.) In its opposition brief, however, UDTC resolves any ambiguity in its conversion claim by stating what it believes to be the elements of its conversion claim: "(i) UDTC has a ***property interest in the confidential information, trade secrets and patents;*** (ii) that UDTC had right to prevent others from using such information, trade secrets and patents; and (iii) that UDTC has sustained damages. *See Facciolo Constr. Co. v. Bank of Del.,* 514 A.2d 413 (Del.1986); *Goodrich v. E.F. Hutton Group, Inc.,* 542 A.2d 1200, 1203 (Del. Ch.1988)." (D.I. 26 at 32.) Aside from the fact that UDTC cites the *Facciolo* and *Goodrich* cases, which involve tangible property and do not discuss the interplay between conversion and claims concerning intellectual property, UDTC's listing of the necessary elements of its conversion claim makes no mention of tangible property. Where UDTC makes no claim of conversion of tangible property, the court sees no obligation to preserve this otherwise potentially viable, albeit narrow, subset of its conversion claim.

For at least these reasons, Count VIII of UDTC's complaint for conversion must be dismissed.

**D. Claims for Relief (Count XI-XII)**

In Counts XI and XII of its complaint, UDTC does not state a claim for relief, but rather incorporates the allegations of its previous ten claims, and requests additional remedies. In Count XI, UDTC demands that "Phenomenex provide to it an accounting of all past, present and future uses of the Licensed Technology and the '625 Patent and account for all revenues, benefits or otherwise accrued from such use."(D.I. 1, Compl. at 24.) In Count XII, UDTC asks the court to impose a constructive trust for the benefit of UDTC "in an amount to be determined at the time of trial."(D.I. 1, Compl. at 26.) As these counts do not allege any different claims for which

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

relief can be granted, other than claims previously alleged, the court will treat these counts as an additional prayer for relief. Counts XI and XII are therefore dismissed.

**E. Motion to Amend**

*10 Recognizing that motions to amend shall be granted freely, the court views this motion differently than the typical motion to amend. First, in its terse motion, UDTC states that the reasons for its motion are "in the interest of judicial economy" in light of the fact that the "dismissal [of RCT] made extraneous certain allegations of the Complaint."(D.I. 38, Pl.'s Mot. to Amend at 1.) In its reply brief, UDTC states that its motion to amend the complaint was an effort "to simplify the pleadings for the Court."(D.I. 43, Pl.'s Reply Br. at 1.) The court finds these stated reasons curious in light of UDTC's letter of July 21, 2006 (D.I.39), and the actual proposed amendments to the complaint, which also attempt to bolster the standing deficiencies.[FN7] UDTC's July 21st letter states that the motion to amend and presumably, the proposed amendments, "reflect[s] that UDTC no longer seeks to prosecute such claims [against RCT]."*Id.* While UDTC's proposed amendments do eliminate Counts IX-X against RCT, they also remove contextual background necessary for the standing analysis of the remaining counts, found in paragraphs 16-17 and 33-34 of the original complaint.

FN7. The court is also in receipt of UDTC's May 15, 2006 letter (D.I .36), in which UDTC makes reference to a "Clarification" that would be presented to the court, rendering moot RCT's Motion to Dismiss. According to UDTC, the "Clarification" would be a stipulation that would restate prior assignments and "for the avoidance of any further doubt, assign any such right, title and interest as RCT still may have to UDTC)." To date, the court has not received the aforementioned "Clarification." Even if the court was in receipt of such a "Clarification," the court is not inclined to accept assignments that post-date the civil action upon which the lawsuit relies. "As a general matter, parties should possess rights before seeking to have them vindicated in court. Allowing a subsequent assignment to automatically cure a standing defect would unjustifiably expand the number of people who are statutorily authorized to sue. Parties could justify the premature initiation of an action by averring to the court that their standing through assignment is imminent. Permitting non-owners and licensees the right to sue, so long as they eventually obtain the rights they seek to have redressed, would enmesh the judiciary in abstract disputes, risk multiple litigation, and provide incentives for parties to obtain assignments in order to expand their arsenal and the scope of litigation. Inevitably, delay and expense would be the order of the day."*Gaia Technologies, Inc. v. Reconversion Technologies, Inc.,* 93 F.3d 774, 780 (Fed.Cir.1996), *as amended on rehearing,* 104 F.3d 1296 (Fed.Cir.1996).

Further, UDTC's proposed amendments add substance to the complaint, which would only serve to bolster arguments made in its Opposition to Phenomenex's Motion to Dismiss. For example, UDTC seeks to change paragraph 7 of the original complaint to add that RCT acted "on behalf of" the University instead of "agreed with the" University to market intellectual property. This change would appear to lend support to the later-argued, but not alternatively pled, position that RCT acted as an agent for the University. UDTC also seeks to add a new paragraph asserting that "At all times relevant, University was the owner of the intellectual property at issue herein, including the right to sue for past, present and future infringement, and to pursue contract damages pursuant to the contracts identified herein, between RCT and Phenomenex."(D.I.38, Ex. B.)

Even if the court were to allow these substantive amendments, the amendments would be futile, in that Phenomenex has asserted factual challenges to subject matter jurisdiction and UDTC's standing. UDTC's proposed additions are nothing more than conclusory and bald assertions, which the court is not obliged to credit. *See United States v. Vespe,* 868 F.2d 1328, 1340 (3d Cir.1989) (stating conclusory statements need not be credited).

Insofar as UDTC's amended complaint seeks to make substantive changes that either remove necessary context or add further conclusory allegations regarding ownership or standing, and such amendments do not change the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

outcome of Phenomenex's motion to dismiss, those amendments are denied. The court will permit UDTC to amend its complaint to remove Counts IX-X.

***ORDER***

IT IS HEREBY ORDERED that:

1. Phenomenex's Motion to Dismiss (D.I.22) is GRANTED IN PART and DENIED IN PART.

*11 (a) UDTC's claim for patent infringement alleged to have occurred prior to August 10, 2001, is dismissed.

(b) UDTC's claim for patent infringement alleged to have occurred after August 10, 2001, is conditionally dismissed. The court will grant UDTC leave to provide a more definite statement, including evidence of an assignment from the University of Delaware to UDTC for alleged patent infringement occurring after August 10, 2001, within 30 days of this Order.

(c) Counts II-XII are dismissed.

2. UDTC's Motion to Amend (D.I.38) is GRANTED IN PART and DENIED IN PART.

D.Del.,2007.
UD Technology Corp. v. Phenomenex, Inc.
Slip Copy, 2007 WL 28295 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT O

# REDACTED IN ITS ENTIRETY