IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON AUTOMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-028 (SLR/LPS) |
| | ) | |
| SWISSLOG ITALIA S.P.A. and | ) | PUBLIC VERSION |
| TRANSLOGIC CORPORATION, | ) | February 20, 2008 |
| | ) | ORIGINAL VERSION |
| Defendants. | ) | February 15, 2008 |

**REPLY DECLARATION OF BRYAN N. DEMATTEO
IN FURTHER SUPPORT OF DEFENDANTS' RULE 12(B)(1) MOTION TO DISMISS**

I, Bryan N. DeMatteo, declare as follows:

1.     I am associated with the law firm Dickstein Shapiro LLP, counsel of record for Defendants Swisslog Italia S.p.A and Translogic Corporation (collectively "Defendants").  I make this reply declaration in further support of Defendants' Swisslog Italia's ("Swisslog") and Translogic Corporation's ("Translogic") Rule 12(b)(1) Motion to Dismiss.  I have personal knowledge of the facts set forth herein, and if called to testify, could and would certify competently hereto.

2.     Attached as Exhibit J is a true and correct copy of excerpts from the deposition transcript of Frank Demmler, dated January 17, 2008.

3.     Attached as Exhibit K is a true and correct copy of excerpts from the deposition transcript of Marlin Stephen Heilman, dated January 17, 2008.

4.     Attached as Exhibit L are true and correct copies of unsigned affidavits provided by McKesson to Messrs. Demmler and Heilman, both of which were produced by McKesson as documents bearing bates range M0480865-M0480867 and M0480935-M0480937, respectively.

293484

5.     Attached as Exhibit M is a true and correct copy of a March 8, 1996 letter from David A. Nelson, which was produced by McKesson as a document bearing bates range M0168077-M0168083.

6.     Attached as Exhibit N is a true and correct copy of Demmler Exhibit 1, which was produced by McKesson as a document bearing bates range M0474908-M0474913.

7.     Attached as Exhibit O is a true and correct copy of an October 12, 2007 letter from opposing counsel.

8.     Attached as Exhibit P is a true and correct copy of excerpts from the deposition transcript of Sean McDonald, dated August 30, 2007.

9.     Attached as Exhibit Q is a true and correct copy of pertinent portions of a due diligence folder produced by McKesson as a document bearing bates range M0143186-M0143797.

10.     Attached as Exhibit R is a true and correct copy of a June 27, 1990 term sheet produced by Dr. Heilman as a document bearing bates range SH000426-SH000440.

11.     Attached as Exhibit S is a true and correct copy of a June 27, 1990 letter with attachments from Frank Demmler, which was produced by McKesson as a document bearing bates range M0474917-M047919.

12.     Attached as Exhibit T is a true and correct copy of a Due Diligence Checklist, which was produced by McKesson as a document bearing bates range M0143153-M0143170.

13.     Attached as Exhibit U is a true and correct copy of a July 19, 1990 legal bill, which was produced by McKesson as a document bearing bates range M0477006-M0477013.

293484

14.     Attached as Exhibit V are true and correct copies of cancelled promissory notes, which were produced by McKesson as a document bearing bates range M0144871-M0144881.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.  This declaration is executed this 15th day of February, 2008.

Bryan N. DeMatteo

3

277712

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on February 20, 2008 I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Dale R. Dubé, Esquire
Blank Rome LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on February 20, 2008 upon the following individuals in the manner indicated

**BY E-MAIL**

Dale R. Dubé, Esquire
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE 19801

Blair M. Jacobs, Esquire
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004

*/s/ Julia Heaney (#3052)*
_____
Julia Heaney (#3052)
jheaney@mnat.com

# EXHIBIT J

## FULLY REDACTED

# EXHIBIT K

## FULLY REDACTED

# EXHIBIT L

## FULLY REDACTED

# EXHIBIT M

## FULLY REDACTED

# EXHIBIT N

## FULLY REDACTED

# EXHIBIT O



**Sutherland
Asbill &
Brennan** LLP

ATTORNEYS AT LAW

1275 Pennsylvania Avenue, NW
Washington, DC 20004-2415
202.383.0100
fax 202.637.3593
www.sablaw.com

Katherine R. Lahnstein
DIRECT LINE: 202.383.0929
Internet: katherine.lahnstein@sablaw.com

October 12, 2007

<u>VIA EMAIL</u>
Bryan DeMatteo, Esq.
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York NY 10036-2174

    Re:    *McKesson Automation Inc. v. Swisslog Italia S.p.A et al.,*
        CA No. 06-028 (MPT)

Dear Bryan:

    As you are aware, our office has been diligently pursuing documents, statements and all forms of evidence regarding the loans made to AHI in 1990.

    Based on your request at recent depositions, our office has, for the second time, manually reviewed all of the boxes of old documents we received from off-site storage facilities. During this search it became apparent that one box of documents previously thought to be entirely duplicative of other documents that had been produced, in fact held documents pertaining to the AHI loans. We are producing to you, today, the complete contents of this box. You will see that is largely duplicative of materials we have already provided.

    We regret this oversight and we would be willing to agree to limited additional discovery from the third parties with knowledge of the loan transactions, if you so choose.

    For your convenience, I am attaching copies of those documents that are most relevant to the above loans. The documents clearly show (1) that the loans from Heilman and PSF were paid in full on December 27, 1990, (2) that the shares issued in the Series A Stock Purchase Agreement contemplated stock as recompense for the "investment" (aka loan) by the investors and (3) that the interest on those loans was paid by check to the investors on the day of closing. Any collateral or security for the loans was thus extinguished upon repayment of the loans. We note, that AHI also used the relevant technology as collateral or security for a subsequent loan from a company called Partech, Inc. in 1994.

    In view of the foregoing, there simply is no good faith basis for your continuing to maintain that the collateral or security that was provided for repayment of the 1990 loans, was not extinguished upon repayment of those loans. The collateral or security served no other

WO 808530.2

Atlanta    ■    Austin    ■    Houston    ■    New York    ■    Tallahassee    ■    Washington, DC

Bryan DeMatteo, Esq.
10/12/2007
Page 2


purpose. Therefore, we ask that Defendants withdraw the motion to dismiss. Please let us know if you will do so by close of business Tuesday, October 16, 2007.

Sincerely,

Katherine R. Lahnstein, Esq.

cc:     Julia Heany, Esq. (via e-mail)
        Alfred R. Fabricant, Esq. (via e-mail)
        Lawrence C. Drucker, Esq. (via e-mail)
        Richard LaCava, Esq. (via e-mail)
        Blair M. Jacobs, Esq. (via e-mail)
        Christopher L. May, Esq. (via e-mail)

WO 808530.2

# EXHIBIT P

## FULLY REDACTED

# EXHIBIT Q

## FULLY REDACTED

EXHIBIT R

Wednesday, June 27, 1990

<u>AUTOMATED HEALTHCARE, INC.</u>
Proposed Purchase Agreement for
Series A, Eight Percent (8%) Cumulative Convertible Preferred Stock
(This is an intent to invest and is not a promise or contract to invest;
nor is this term sheet intended to be a complete statement of the
final terms of the transaction)

$1,200,000 total financing provided by the Investors (Pittsburgh Seed Fund
and at least one private investor with relevant experience and at least one
other venture capital firm).

Purchase is 1,200 shares of Series A Eight Percent (8%) Cumulative
Convertible Preferred Stock ("Preferred Stock"). This equates to a conversion
price per common share of $1,000.

*[Actual shares and share price will be adjusted to correspond with the
company's capital structure.]*

The financing is in three stages - $250,000 on September 30, 1990, $250,000 on
December 31, 1990, and $700,000 on April 30, 1991 upon successful
accomplishment of certain milestones (described later). A thirty day grace
period will be permitted.

The Company will establish three option pools. The first is an incentive
option pool of 200 shares for Sean McDonald and Philip Keys, the
performance objectives of which will be proposed by these individuals and
approved by the Board of Directors ("Board"). Tentative objectives which will
be refined and approved are included as Attachment 1. The second is an
option pool of 200 shares intended for current and future management and
will be granted by the Board. The third is an incentive option pool of 300
shares, the distribution of which will be tied to 1993 performance as described
in Attachment 2 and will require Board approval.

The result of this transaction is reflected on Attachment 3.

If needed, a stock split should be given consideration to make sure the
number of shares is adequate for a company at this stage.

This proposal will expire June 29, 1990.

Upon achieving agreement to this term sheet, The Pittsburgh Seed Fund and
perhaps other investors are willing to provide bridge financing of $150,000
on demand note basis. Compensation on this demand note will include simple
annual interest of 12% plus warrants to purchase shares of common stock, the
number of which will accrue at the rate of those shares equivalent to 1% per
month of the outstanding loan. In this example, 1% of $100,000 is $1,000
which would be one share per month. The conversion price will be the same
as the conversion price of the Preferred Stock. The note will be secured by
the technology rights associated with the patent application.

SH000426

Automated Healthcare Inc.                          Wednesday, June 27, 1990

1.    TARGET CLOSING DATE:

      First closing is expected before September 30, 1990.


2.    PROPOSED COMMITMENT:

      $1,200,000


3.    THREE STAGE FUNDING:

      FIRST CLOSING: $250,000

      Use of proceeds:  The Investors' bridge loans of $150,000 and accrued interest
      will be paid at closing.  The balance will be employed to fund the
      implementation of the the test site at Presbyterian Hospital and secure its
      approval for "live" implementation.

      Conditions:  At the option of the Investors without expiration date, but is
      required upon accomplishment of the following milestones by September 30,
      1990:

            •     The prototype is up and running in Salk Hall using a sample of
                  parsed information from the pharmacy (excludes the restocking
                  function);

            •     Presbyterian Hospital provides written confirmation that it
                  continues to support the program;

            •     A mutually acceptable private investor(s) has agreed to
                  participate in the financing; and

            •     Another, mutually acceptable venture capital firm has agreed to
                  participate in the financing.

      Anticipated closing date:  September 30, 1990.

      SECOND CLOSING: $250,000

      Use of proceeds:  Implementation of the alpha test site within Presbyterian
      Hospital.

      Conditions:  At the option of the Investors without expiration date, but is required
      upon accomplishment of the following milestones by December 31, 1990:

            •     Conduct accuracy studies;

            •     Demonstrate to Presbyterian Hospital personnel in the
                  pharmacy and administration areas;

            •     Demonstrate to beta site pharmacy directors;

                                  -2-

SH000427

Automated Healthcare Inc.                    Wednesday, June 27, 1990

- Obtain agreement to install alpha site in "live" environment in which the system is being used to fill patients' prescriptions; and

- Addition of management talent as agreed to by the Principal Shareholders and the Investors.

Anticipated closing date:  December 31, 1990.

THIRD CLOSING: $700,000.

Use of Proceeds:  Continue Presbyterian Hospital installation and secure first outside contract.

Conditions:  At the option of the Investors without expiration date, but is required upon accomplishment of the following milestones by April 30, 1991:

- Convert substantially all nursing units at alpha site to the system;

- Demonstrate to beta site administrators;

- Obtain first beta site agreement by a hospital on terms and conditions acceptable to the Principal Shareholders and the Investors and currently expected to be a purchase contingent upon the system's performance during a six month trial period; and

- Addition of management talent as agreed to by the Principal Shareholders and the Investors.

Anticipated closing date:  April 30, 1991.

All milestones are subject to a 30 day grace period.


4.     FORM OF INVESTMENT:  Series A, Eight Per Cent (8%) Cumulative Convertible Preferred Stock

Dividend Provisions:  A cumulative dividend on the Preferred Stock will accrue at a rate of 8% per share per annum.  Such dividend will be payable only (a) if, as and when determined by the Board, (b) upon the liquidation or winding up of the Company, or (c) upon redemption of the Preferred Stock. No dividends will be paid on the Common so long as the Preferred Stock is outstanding.

Liquidation Preference:  In the event of any liquidation, sale, or winding up of the Company, the holders of Preferred Stock shall have a liquidation preference of the price paid per share plus accrued but unpaid dividends. The amount thus owed being the "Investors' Liquidation Amount."

The Principal Shareholders shall have a second liquidation preference in the amount of $150,000 plus accrued interest of 8% per annum.  The amount thus owed being the "Principal Shareholders' Liquidation Amount."

-3-

SH000428

Automated Healthcare Inc.                              Wednesday, June 27, 1990

For all cash received up to $6 million for the transactions contemplated by this section, any assets remaining after distribution of the Investors' and the Principal Shareholders' Liquidation Amounts will be distributed prorata to the holders of common stock and Preferred Stock on an as if converted basis. For all cash received beyond $10 million for the transactions contemplated by this section, the cumulative distributions will be on a prorata basis to the holders of common stock and Preferred Stock on an as if converted basis. For cash received between $6 million and $10 million, linear adjustments will be made to the incremental distributions such that cumulative distributions at $10 million will be on a prorata basis. An example of how this might be applied is illustrated in Attachment 4. For the purposes of this section, merger, consolidation, sale of substantially all of the Company's assets or other corporate reorganization shall constitute a liquidation.

Redemption: The holders of the Preferred Stock may elect, at their option by a two-thirds majority vote of their shares, to have the Company redeem:

- one-third of their shares beginning September 1, 1994 at two times the prevailing Investors' Liquidation Amount; and

- two-thirds of their shares beginning September 1, 1995 at two times the prevailing Investors' Liquidation Amount.

The Company shall have the option to pay the redemption price 50% in cash and 50% by a Company Note with a term of two years providing for interest at a designated "prime" rate to accrue and be payable annually. Ninety (90) days prior notice shall be required.

Default: Default occurs if the Company does not redeem the Preferred Stock when requested to do so by the Investors. 60 days right to cure. In the case of default, the Investors may call a special meeting of shareholders and may nominate (by a majority vote of their shares) a majority of members of the Board. The Principal Shareholders agree to vote their shares for these nominees.

Call: The Company may elect during the twelve month period from September 1, 1995 to September 30, 1996, to redeem up to 100 shares (minimum increments of 25 shares) of the Investors' Preferred Stock (8.33% of the Preferred Stock purchased by this agreement) at a price of $6,000 per share (six times the price paid for it). Ninety (90) days prior notice shall be required of such an election and the purchase price shall be payable in cash.

Voting: Voting rights as if the preferred stock is converted into common. (Reflected in Articles of Incorporation.)

Veto Rights: Holders of the Preferred Stock voting as a class, with a majority vote binding all holders, have the right to approve any and all changes which:

-4-

SH000429

Automated Healthcare Inc.                    Wednesday, June 27, 1990

      a.    Alter or change the rights preferences or privileges of the Preferred Stock materially or adversely, or

      b.    Increase the authorized number of shares of Common or Preferred Stock, or

      c.    Create any new class of shares having preference over or being on a parity with the Preferred Stock, or

Any change which results in an action to merge, consolidate, sell assets, or acquire stock or assets of another entity or declare dividends will be decided by a majority of the Board.

<u>Automatic Conversion</u>:  Automatic Conversion of the Preferred Stock into Common Stock is required at the applicable conversion rate in the event of the closing of a public offering of the Company's shares at a per share public offering price not less than four (4) times the initial share price of the Preferred Stock, and with the aggregate sales price of the public offering being not less than $10,000,000.

<u>Conversion</u>:  The holders of Preferred Stock shall have the right to convert the Preferred Stock, at the option of the holder, at any time into shares of Common Stock of the Company.  Each share of Preferred Stock shall initially be convertible into one share of Common Stock.

5.     STOCK OR REGISTRATION RIGHTS:

<u>Anti-dilution</u>:  Preferred Stock price per share adjusted proportionately for stock splits and stock dividends.

The conversion price of the Preferred Stock shall be subject to adjustment to prevent dilution in the event that the Company issues additional shares (other than Management Option shares) at a purchase price less than the applicable conversion price.  The conversion price will be adjusted to the lowest new issue price at which additional shares may be sold (other than Management Option shares).  (This is full-ratchet anti-dilution protection.)

Any material financing of $150,000 or more will be covered by this protection.

This protection applies to future financings and does not apply to the stages of the financing contemplated by this term sheet.

Future financings which only include the current Investors cannot prompt this protection.

<u>Preemptive Rights</u>:  Investors and Principal Shareholders (See Section 7) (acting independently) may purchase their prorata share of future sales of securities.  The right terminates at an initial public offering.

-5-

SH000430

Automated Healthcare Inc.                                    Wednesday, June 27, 1990

Demand Registration: The holders of Preferred Stock, by a majority vote of their shares, may call for one demand registration. The Company pays the cost to register these shares.

"Piggy-Back" Registration Rights: The Holders of Preferred Stock may include their shares (prorata) in the first two public offerings by the Company. The Company will pay the cost to register these shares. Such rights will also be extended to Management and the Principal Shareholders, if and to the extent that the underwriters believe that any such piggy-back request by Management will not jeopardize the success of the offering.

7.    PRINCIPAL SHAREHOLDERS:

For the purposes of this transaction, Sean McDonald, Philip Keys, and Robert McDonald will be considered Principal Shareholders.


8.    REPRESENTATIONS, WARRANTIES, AND CLOSING CONDITIONS

Typical things to be included as exhibits:

-    Balance sheet as of not more than 60 days prior to the estimated closing date. Most recent internal financial statements.

-    List of each Company payable and note over $5,000. Payment terms for each. Special note should be made of those financial obligations which are contemplated by Management to be paid immediately from the proceeds of this investment.

-    List and details of all Company agreements, contracts and contingencies now and updated to closing.

-    Employment and/or confidentiality and non-compete agreements for Sean McDonald, Philip Keys, and Robert McDonald. Form acceptable to Investors: all employment contracts are terminable at will; 2-year non-compete nationally (with the scope reasonably defined to the anticipated activities of Automated Healthcare, Inc.); and six-month severance provisions from September 1, 1990 through September 30, 1991, reducing one-half month per month thereafter until March 1, 1992 after which time the severance will be three months.

-    Articles of incorporation and by-laws (likely will require amendment and form prepared by Investors' counsel).

-    List of all stockholders, price and time of purchase.

-    Shareholder Agreement(s): general form attached. Term of this Agreement is until the Company goes public or is substantially sold to a third party.

Paragraphs that represent the Company has revealed pending litigation or material events; corporation is in good standing; hasn't knowingly misled us

-6-

SH000431

Automated Healthcare Inc.                          Wednesday, June 27, 1990

in the business plan; clear title to technology, patents and other assets; other
items of a similar nature as reflected in the final agreement.

9.    COVENANTS:

   Board:   Five-person board: two selected by the Principal Shareholders; two
   selected by the Investors; and one mutually agreeable to the Company and
   Investors.   Agreement to vote shares for this method of selection of Board
   members in the future.   Principal Shareholders who are not Board members
   and any investor of more than $150,000 which is not a Board member shall
   have observer status at all Board meetings.   Eimei Onaga, President of
   Universal Technology, Inc., will have observer rights through September 30,
   1991.

   Compensation:   Board will establish a Compensation Committee which is
   composed of outside directors:   recommend management compensation,
   Company benefit plans, and general option plan, as an example, for approval
   by the Board.

   Board Meetings:   Monthly Board meetings until Company is consistently above
   cash break-even.

   Consent:   Investors' consent required (by majority of shares) for Company
   stock sales or option plans; sales of significant assets over $25,000 for first
   three years and $100,000 thereafter; mergers; material changes in the nature
   of the business of Company.   Board approval required for significant
   distribution, licensing or other agreements or contracts; or new
   indebtedness.

   Reports Provided to Investors:   Annual budget and plan with monthly
   projections which has been approved by the Board.   Monthly P&L and
   comparison to budget, progress report, and status of cash spending and bank
   balances due within 20 days at the end of each month.   Audited year-end
   financials within 90 days of year-end.

   Key Man Insurance:   Company will carry, at a minimum, $1,000,000 key man
   insurance on Sean McDonald and Phil Keys.

   Proprietary and Non-Compete Agreements:   Principals and directors,
   employees, and consultants will be subject to non-disclosure and employee
   secrecy and non-compete agreements, as appropriate, with Company:
   agreement not-to-compete for two years if a key employee leaves Company.
   Form of agreements to be acceptable to PSF.

   Legal Expenses:   Company will bear its own legal expenses and pay legal fees
   and miscellaneous expenses associated with the due diligence of the Investors
   (as a group, not individual costs each may incur) associated with finalizing
   this agreement and implementing it.

   Other standard covenants will be listed in the legal work.

-7-

SH000432



Automated   Healthcare   Inc.                              Wednesday, June 27, 1990

10.   AGREEMENT ON EMPLOYEE COMPENSATION AND FRINGES (not part of legal work):

    Management   Compensation:

    Salaries:   Sean McDonald, Phil Keys, and Carl Borntraeger will each receive salaries of $62,000 per year and will be eligible for and annual bonus not to exceed 25% of the base salary upon achievement of milestones agreed to by the Compensation Committee.

    Company-Paid   Fringes:   Hospitalization and health care insurance.



SH000433

Wednesday, June 27, 1990

SHAREHOLDERS AGREEMENT
Stock  Transfer  and  Restriction  Agreement
Applies  to  all  Shareholders

GENERAL PROVISIONS:

1.    Term  of  Agreement:

This agreement is in force until the Company goes public or is sold to another
Company.

2.    Stock  Restrictions:

Except for gifts to spouse or children or transfer pertaining to the estate of a
deceased shareholder, other transfers, use stock as collateral, etc. are
restricted until the date the Company goes public, or is sold.

Investors may sell or transfer shares among themselves.  Shares must be
offered prorata to other Investors, but after 10 days may be sold to any
Investor.  Principal Shareholders to have similar rights with respect to their
shares and transfer among them.

3.    Right of First Refusal for Company to Buy a Shareholder's Stock:

Other than share transactions among the Investors and Principal
Shareholders, as previously discussed, if a shareholder wishes to sell or if a
shareholder has a bona fide offer from a third party, the Company, first, and
the Investors and Principal Shareholders, second, have a right of first
refusal.

a.    The Company has an option to meet the price and terms and purchase
any portion of shares.    30 days to exercise the option.

b.    The Investors and Principal Shareholders have an option to purchase
remaining shares, and those shareholders exercising this right may
buy an amount equal to their prorata ownership at the price of the
bona fide offer.    30 days to exercise the option.

c.    Shares not purchased by the Company, the Investors, or Principal
Shareholders may be sold to the third party making the bona fide offer.

4.    Right of Company to Repurchase Shares Exercised under the Company's Stock
Option Plan by an Ex-Employee:

The Company's Stock Option Agreement with an employee should state that an
employee who holds options must exercise his (or her) option within 90 days
after he leaves for any reason.

Under this Shareholders Agreement or Stock Transfer and Restriction
Agreement, the Company has the right to repurchase all shares from the ex-
employee (other than Principal Shareholder) within 90 days of his exercise

SH000434

Automated Healthcare Inc.                     Wednesday, June 27, 1990

of the option/purchase of shares.   The price paid for these shares will be the
last price paid per share in an outside transaction.

5.   Any proposed new purchaser of a shareholder's stock must agree to be bound
     by this Shareholders Agreement.


## SPECIFIC SHAREHOLDER AGREEMENT WITH PRINCIPAL SHAREHOLDERS

1.   Co-Sale Rights of the Investors:  For any sale of stock by the Principal
     Shareholders (excluding Robert McDonald) within the first four years and
     except for the first $50,000 of sales by each thereafter, the Investors have a
     prorata co-sale right to any third party.

2.   Unlocking Provision:  If the Company or its shareholders receive a bona fide
     offer for its/their shares or assets, and the Investors (by a vote of the
     majority of their shares) and any two of the Principal Shareholders agree to a
     sale, then the other individual Principal Shareholder must sell his stock to
     complete the transaction.

3.   Agreement on Voting Rights:  1) For Directors (see Item 9 of Proposed
     Purchase Agreement) and 2) For Directors if the Company defaults on
     Redemption (see Item 4 of Proposed Purchase Agreement).

-2-

SH000435

Attachment 1

1992 Performance Objectives

Sean McDonald and Philip Keys will each be awarded options for 100 shares of common stock in the event that the Company meets the following milestones not later than January 31, 1992:

( 1 )   Alpha site is up and operating satisfactorily
( 2 )   Two beta sites have been signed and installed
( 3 )   Purchase orders for two additional systems have been received

SH000436

Attachment 2

1993 Performance Objectives

Sean McDonald and Philip Keys (and perhaps others) will be entitled to cumulative awards of options for up to 300 shares of common stock in the event that the Company achieves the following profitability (before taxes and interest) milestones (as verified by the annual audited financial statements) for the period ending December 31, 1993:

( 1 )   No options will be granted below $3.5 million profits

( 2 )   Options for 300 share will be granted if profits meet or exceed $6 million

( 3 )   Between $4.5 million and $6.0 million the options will be awarded on a linear basis for the proportion of the range achieved above the minimum, i.e., at profits of $4.75 million, since that's 50% of the range, 150 options will be awarded.

SH000437

Attachment 3

AUTOMATED HEALTHCARE

| | Common Stock | Preferred Series A | Post-financing, Pre-option | | Options on Common Stock | Post-financing, Post-management & 1992 Options | | Options on Common Stock | Fully Diluted | |
|---|---|---|---|---|---|---|---|---|---|---|
| Founders | 600 | | 600 | 33.33% | | 600 | 27.27% | | 600 | 24.00% |
| 1992 Performance Option Pool | | | | | 200 | 200 | 9.09% | | 200 | 8.00% |
| 1993 Performance Option Pool | | | | | | | | 300 | 300 | 12.00% |
| Future Management Pool | | | | | 200 | | | | 200 | 8.00% |
| TOTAL | 600 | | 600 | 33.33% | 400 | 1,000 | 45.45% | 300 | 1,300 | 52.00% |
| Investors | | 1,200 | 1,200 | 66.67% | | 1,200 | 54.55% | | 1,200 | 48.00% |
| TOTAL | | 1,200 | 1,200 | 66.67% | | 1200 | 54.55% | | 1,200 | 48.00% |
| COMPANY TOTAL | 600 | 1,200 | 1,800 | 100.00% | 400 | 2,200 | 100.00% | 300 | 2,500 | 100.00% |

| | Preferred Series A | Post-financing, Post-management |
|---|---|---|
| Price per share | $1,000 | $1,000 |
| Investment amount | $1,200,000 | $1,200,000 |
| Pre-financing value | $600,000 | $1,000,000 |
| Post-financing value | $1,800,000 | $2,200,000 |
| Management/Founders' Value | $600,000 | $1,000,000 |

SH000438

Attachment 4 - Liquidation Formula

| Assumed Capital Structure | | | Assume transaction at end of year 3 Liquidation value |
|---|---|---|---|
| PSF | 1,200 | 60.00% | $1,488 |
| Founders | 800 | 40.00% | $186 |
| Total | 2,000 | 100.00% | |

| Cumulative Cash In | PSF | Founders | If Pro Rata PSF | Founders |
|---|---|---|---|---|
| $500 | $500 | $0 | $300 | $200 |
| $1,000 | $1,000 | $0 | $600 | $400 |
| $1,500 | $1,488 | $12 | $900 | $600 |
| $2,000 | $1,684 | $316 | $1,200 | $800 |
| $2,500 | $1,984 | $516 | $1,500 | $1,000 |
| $3,000 | $2,284 | $716 | $1,800 | $1,200 |
| $3,500 | $2,584 | $916 | $2,100 | $1,400 |
| $4,000 | $2,884 | $1,116 | $2,400 | $1,600 |
| $4,500 | $3,184 | $1,316 | $2,700 | $1,800 |
| $5,000 | $3,484 | $1,516 | $3,000 | $2,000 |
| $5,500 | $3,784 | $1,716 | $3,300 | $2,200 |
| $6,000 | $4,084 | $1,916 | $3,600 | $2,400 |
| $6,500 | $4,323 | $2,177 | $3,900 | $2,600 |
| $7,000 | $4,563 | $2,437 | $4,200 | $2,800 |
| $7,500 | $4,802 | $2,698 | $4,500 | $3,000 |
| $8,000 | $5,042 | $2,958 | $4,800 | $3,200 |
| $8,500 | $5,281 | $3,219 | $5,100 | $3,400 |
| $9,000 | $5,521 | $3,479 | $5,400 | $3,600 |
| $9,500 | $5,760 | $3,740 | $5,700 | $3,800 |
| $10,000 | $6,000 | $4,000 | $6,000 | $4,000 |

## BASIC PARAMETERS

Prorata positions determined on fully diluted basis, including options earned.
PSF receives full liquidation preference until $6 million of cash has been received.
After $10 million of cash has been received, cumulative distributions will be
    maintained on a prorata basis.
Between $6 and $10 million of cash received, founders will receive greater than
    their prorata share on a linear adjustment basis such that the
    differential is eliminated at $10 million of cash received.

SH000439

SH000440

# EXHIBIT S

## FULLY REDACTED

# EXHIBIT T

## FULLY REDACTED

# EXHIBIT U

## FULLY REDACTED

# EXHIBIT V

## FULLY REDACTED