**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| McKESSON AUTOMATION, INC., a Delaware corporation, ) ) ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 06-028-SLR |
| ) | |
| TRANSLOGIC CORPORATION, a Delaware corporation, and ) ) ) | |
| SWISSLOG ITALIA S.P.A., an Italian corporation, ) ) ) ) | |
| Defendants. ) ) | |

**PLAINTIFF McKESSON AUTOMATION, INC.'S
MOTION AND MEMORANDUM PURSUANT TO LOCAL
RULE 7.1.2 (C) IN SUPPORT OF REQUEST FOR LEAVE TO
FILE A SUR-REPLY IN THE FORM ATTACHED**

Pursuant to Local Rule 7.1.2. (c) McKesson hereby submits the following administrative

motion for an order granting McKesson leave to file a sur-reply to Swisslog's reply in support of

its motion to dismiss. D.I. 239. The proposed sur-reply is attached hereto as Exhibit A.

**SWISSLOG IMPROPERLY RAISES NEW ISSUES IN ITS REPLY BRIEF
WHILE NOT AFFORDING McKESSON AN OPPORTUNITY TO RESPOND**

It is well settled that new argument cannot be made for the first time in a reply brief. *In

re Student Finance Corp.*, Civ. A. 03-507-JJF, 2004 WL 609329, at *3 (D. Del. March 23,

2004) ("Rule 7.1.3 of the Local Rules for the District of Delaware ('Local Rule 7.1.3') provides

that '[t]he party filing the opening brief shall not reserve material for the reply brief which

should have been included in a full and fair opening brief.' D. Del. L.R. 7.1.3(c)(2).") (quoting

*Rockwell Tech., LLC v. Spectra-Physics Lasers, Inc.*, No. Civ.A.00-589 GMS, 2002 WL 531555

(D. Del. March 26, 2002). Untimely arguments should be disregarded by the Court. *Id.* (rejecting newly raised reply brief argument). If the Court chooses to consider Swisslog's new arguments, McKesson is entitled to respond by way of full briefing on each of these issues. *See id.* (Without full briefing, "[t]he practice of reserving arguments for reply briefs 'amounts to impermissible sandbagging'.")

Here, Swisslog's opening brief contains no jurisdiction argument. D.I. 165. Indeed, the whole premise of Swisslog's opening brief is that the ownership issue is ripe for this Court's consideration. In its reply, however, Swisslog argues for the first time – in two unsupported sentences – that the Court lacks jurisdiction to decide the very same ownership issue initially raised. D.I. 239, p. 3. Swisslog could have raised this argument in its opening brief but chose not to do so. Instead, Swisslog now raises this issue after apparently appreciating the strength of McKesson's evidence of ownership. McKesson should be permitted to address this newly minted argument.

<div align="center">

**CONCLUSION**

</div>

For the reasons stated herein, McKesson respectfully requests that this Court grant McKesson leave to file the accompanying sur-reply.

Respectfully submitted,

BLANK ROME LLP

Dated: February 22, 2008

Dale R. Dubé (#2863)
1201 N. Market Street
Suite 800
Wilmington, DE 19801
Tel: (302) 425-6400
dube@blankrome.com

- and -

Blair M. Jacobs
Robert A. Gutkin
Christina A. Ondrick
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 383-0100

*Counsel for Plaintiff McKesson Automation, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of February, 2008, I served by hand delivery and electronic filing PLAINTIFF McKESSON AUTOMATION, INC.'S MOTION AND MEMORANDUM PURSUANT TO LOCAL RULE 7.1.2 (C) IN SUPPORT OF REQUEST FOR LEAVE TO FILE A SUR-REPLY IN THE FORM ATTACHED, using CM/ECF, which will send notification of such filing to the following:

> Julia Heaney, Esquire
> MORRIS, NICHOLS ARSHT & TUNNELL
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899

I also certify that, on this 22nd day of February, 2008, I served the aforementioned document, by email and First Class Mail to the following participants:

> Lawrence C. Drucker, Esquire
> Alfred R. Fabricant, Esquire
> Richard LaCava, Esquire
> Bryan N. DeMattio, Esquire
> DICKSTEIN SHAPIRO LLP
> 1177 Avenue of the Americas
> New York, NY 10036

_Dale R. Dubé_

Dale R. Dubé

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| McKESSON AUTOMATION, INC.,<br>a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>TRANSLOGIC CORPORATION,<br>a Delaware corporation, and<br><br>SWISSLOG ITALIA S.P.A.,<br>an Italian corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 06-028-SLR<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF McKESSON AUTOMATION, INC.'S SUR-REPLY BRIEF RE: D.I. 165

Apparently recognizing the flaws in its motion to dismiss for lack of standing, Swisslog

argues for the first time in its reply that this Court does not have jurisdiction to decide the very

ownership issue initially raised. D.I. 165 and 239, p. 3. Swisslog's entire opening brief relies on

the proposition that this Court is the proper forum to decide ownership. Swisslog changes its

position in the reply, arguing that the Court has jurisdiction to decide ownership but only if the

Court agrees with Swisslog's ownership argument. If the Court agrees with McKesson's factual

account and finds that McKesson owns the patents, Swisslog argues that the Court has no

jurisdiction to make the ownership determination. This is nonsensical because the same facts

apply regardless of the ultimate ownership resolution.

Swisslog offers no legal support for its two sentence jurisdiction argument. The central

issue before the Court is whether the loan transaction and its surrounding circumstances created

an automatically extinguishing security interest thus establishing McKesson's patent ownership.

Ownership is a legal issue that this Court, like others before it, can decide without need to join the investors to resolve any factual disputes. *See, e.g., Kahn v. General Motors,* 77 F.3d 457, 459 (Fed.Cir.1996); *Rowe Intern. Corp. v. Ecast, Inc.*, 500 F.Supp.2d 885, 888 (N.D. Ill. 2007).

For example, in *SKW Americas v. Euclid Chemical Co.*, 231 F.Supp.2d 624, 626 (N.D. Ohio 2002), the accused infringer relied on an agreement between the Plaintiff and a non-party (the original patent owner) to dispute patent ownership. The district court determined that that plaintiff had standing to bring suit by evaluating the respective rights under the agreement without bringing the original patent owner into the suit or dismissing the suit in favor of a separate action on the terms of the agreement, as Swisslog's reply brief now suggests must be done here. *See also Cordis v. Medtronic*, 194 F. Supp. 2d 323, 340 (D. Del. 2002) (rev'd on other grounds) (determining standing exists by interpreting a license agreement without requiring the licensor to be a party to the litigation). Moreover, a Pennsylvania court would not have jurisdiction to hear any such matter because there is no current case or controversy between McKesson and the investors.

Thus, this Court has jurisdiction to decide patent ownership. Indeed, the Court has routinely enforced the intent of the parties in past decisions. *See LP Matthew v. Bath & Body Works*, 458 F. Supp. 2d 211, 214 (D. Del. 2006) (enforcing the intent of the parties and finding patent ownership when the standing argument was based on an ineffective assignment); *Cordis*, 194 F. Supp. 2d at 340 ("The fact that the licensor may not have given its 'express written consent' at the time of each corporate transformation is of no moment, where the parties' course of conduct over the years has been consistent with the licensor's knowledge and approval of the series of assignments."); *Ajinomoto v. ADM Co.*, Civ. A. No 95-218-SLR, 1998 WL 151411, at *30-31 (Mar. 13, 1998) (determining chain of title complete and therefore standing exists even

though no formal assignment from inventors to government employer because Soviet law provided that the government, not the inventors, owned the invention).

Swisslog also raises certain factual inaccuracies for the first time in its reply. McKesson provides the following response to clarify the record.

- Swisslog, not McKesson, initially noticed the investor depositions. Swisslog mysteriously withdrew its notices, thus requiring McKesson to serve notices.

- The investors refusal to sign McKesson's declarations does not create an ownership dispute. Mr. Demmler also refused to sign a draft declaration prepared by Swisslog seeking affirmative representations that the investors would consider selling or licensing the patents. Indeed, even when asked explicit questions at their depositions, the investors never stated that they believe they hold rights to the patents.

- Swisslog's assertion that the loan repayment evidence is not credible and suggestion that McKesson or its attorneys tampered with the documents constitutes nothing more than an unfounded *ad hominem* attack. As Swisslog well knows, the loan repayment documents were located in a collection of over a thousand pages of documents previously believed to be wholly duplicative of documents already produced. McKesson and its attorneys did not alter these documents or place the handwritten "cancel" notation on the documents. The handwritten notation was placed on the promissory notes by AHI or its attorney, as evidenced by the express written instruction of the investor's attorney in a letter dated January 13, 1991 returning the notes to AHI. Swisslog resorts to speculative attacks because the overwhelming evidence confirms McKesson's ownership of the patents-in-suit.

3

## CONCLUSION

For the reasons stated herein, McKesson respectfully requests this Court deny Swisslog's

motion to dismiss.

<div style="margin-left:40%">

Respectfully submitted,

BLANK ROME LLP

</div>

Dated:  February 22, 2008

<div style="margin-left:40%">

_____

Dale R. Dubé (#2863)
1201 N. Market Street
Suite 800
Wilmington, DE 19801
Tel: (302) 425-6400
dube@blankrome.com

- and -

Blair M. Jacobs
Robert A. Gutkin
Christina A. Ondrick
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:  (202) 383-0100

*Counsel for Plaintiff McKesson Automation, Inc.*

</div>

124402.00601/40173558v.1

# UNREPORTED CASES

**1**

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**

In re Student Finance Corp.
D.Del.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
In re: STUDENT FINANCE CORPORATION,
Debtor.
STUDENT FINANCE CORPORATION, Plaintiff,
v.
ROYAL INDEMNITY CO., Defendant.
No. 02-11620, Civ.A. 03-507 JJF, 02-6803 LK.

March 23, 2004.

L. Jason Cornell, of Fox Rothschild LLP, Wilmington, Delaware, Hal Baume, of Fox Rothschild LLP, Lawrenceville, New Jersey, David A. Gradwohl, Andrew W. Bonekemper, and Anthony P. De-Michele, of Fox Rothschild LLP, Lansdale, Pennsylvania, for Plaintiff/Debtor Student Finance Corporation, of counsel.
Lawrence C. Ashby, Philip Trainer, Jr., and Gregory A. Taylor, of Ashby & Geddes, Wilmington, Delaware, Michael H. Barr, Peter D. Wolfson, and Kenneth J. Pfaehler, of Sonnenschein Nath & Rosenthal, New York, New York, Alan S. Gilbert, of Sonnenchein Nath & Rosenthal, Chicago, Illinois, for Defendant Royal Indemnity Company, of counsel.

*OPINION*

FARNAN, J.
**\*1** Presently before the Court is Defendant Royal Indemnity Company's ("Royal") Motion To Dismiss. (D.I.6.) [FN1] For the reasons set forth below, the Court will grant in part and deny in part Royal's Motion.

> FN1. The docket item numbers referenced herein are the docket items in the adversary proceeding *Student Finance Corporation v. Royal Indemnity Co.,* Adversary Proceeding Number 02-06803 LK.

BACKGROUND

This is an adversary proceeding arising from the Chapter 11 bankruptcy filing *In re Student Finance Corporation.* The parties to this adversary proceeding stipulated to the withdrawal of the reference to the bankruptcy court, which was granted by Chief Judge Robinson. The instant action was subsequently assigned to this Court.

Student Finance Corporation ("SFC") engages in the origination and purchasing of student loans, primarily for truck driving school students.[FN2] SFC, along with its affiliates, obtained funds to purchase and originate student loans from warehouse lines of credit provided by the Wilmington Trust Co. and PNC Bank. Once SFC exhausted these warehouse lines of credit, SFC and its affiliates packaged loans it purchased or originated into portfolios and sold them on the secondary market (the "securitizations") to financial institutions or insurance companies. To continue selling its portfolios on the secondary market, SFC required credit risk insurance which it obtained from AIG. In 1999, AIG discontinued this line of insurance. Thereafter, SFC obtained credit risk insurance from Royal.

> FN2. As the instant motion is a motion to dismiss, the Court has taken the facts from SFC's Complaint.

Royal continued to provide SFC with credit risk insurance for its securitizations through November of 2001. In December of 2001, SFC alleges that Royal verbally agreed to issue it one more credit risk insurance policy. In February of 2002, Royal was told by its parent company to discontinue issuing credit risk insurance. Royal subsequently announced that it was exiting the credit risk insurance business; however, SFC alleges that Royal assured it that Royal would issue one last policy. SFC alleges that Royal later stated that it would only consider doing so if SFC executed two promissory notes (the "Notes") whereby SFC

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

agreed to borrow approximately twelve million dollars from Royal that would be used to make forbearance payments to Wells Fargo, who was the trustee of the securitizations. All the proceeds of the Notes went directly to Wells Fargo.

SFC alleges that after it complied with Royal's request Royal never issued SFC the credit risk insurance policy as promised. SFC alleges that, in reliance on Royal's promises, it continued to approve and fund student loans. In its Complaint (D.I.1), SFC asserts six claims against Royal. This is Royal's Motion to Dismiss Counts I and II pursuant to Rule 9(b) and Counts I-VI pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STANDARDS OF REVIEW

### I. Rule 9(b)

Rule 9(b) requires a party alleging fraud or mistake to plead with particularity the circumstances constituting its claims. Fed.R.Civ.P. 9(b). The intent behind Rule 9(b) is to give defendants notice of the claims against them and to reduce the number of frivolous actions. *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1418 (3d Cir.1997).Rule 9(b) d oes not require the recitation of "every material detail of the fraud such as date, location and time[; however,] plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud." ' *In re Rockefeller Ctr. Prop., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir.2002) (quoting *In re Nice Sys .,* 135 F.Supp.2d 551, 557 (D.N.J.2001)).

### II. Rule 12(b)(6)

**\*2** A motion to dismiss tests the legal sufficiency of the complaint.*Conley v. Gibson,* 355 U.S. 41, 45-56 (1957). In reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts "must accept as true the factual allegations in the [c]omplaint and all reas-

onable inferences that can be drawn therefrom."*Langford v. City of Atlantic City,* 235 F.3d 845, 847 (3d Cir.2000). A court will grant a motion to dismiss only when it appears that a plaintiff could prove no set of facts that would entitle him or her to relief. *Id.*

## DISCUSSION

### I. Whether SFC Has Pled With Particularity Fraud And Negligent Misrepresentation

Royal contends that Counts I, negligent misrepresentation, and II, fraud, of SFC's Complaint should be dismissed because SFC has failed to plead these claims with particularity as required by Rule 9(b). Royal contends that SFC's Complaint does not identify the speaker of the alleged misrepresentations nor, with one exception, to whom the false statements were made. Royal also contends that SFC asserts only generalized and conclusory descriptions of misrepresentations made by Royal. SFC responds that the Rule 9(b) standard is generous in the Third Circuit and that its allegations of fraud and negligent misrepresentation satisfy Rule 9(b)'s requirements. In addition, SFC requests, in the event the Court agrees with Royal, that it be granted leave to amend its Complaint.

After reviewing the Complaint in light of the Rule 9(b) standards recited above, the Court concludes that SFC has failed to satisfy the pleading requirements of Rule 9(b). Nowhere in its Complaint does SFC identify the speaker of Royal's alleged misrepresentations. This is a failure to satisfy the particularity requirements of Rule 9(b).*SeeKlein v. Gen. Nutrition Co., Inc.,* 186 F.3d 338, 345 (3d Cir.1999) (stating that Rule 9(b)"requires, at a minimum, that the plaintiff identify the speaker of the fraudulent statements .") Although SFC contends that, according to *Brown v. SAP America, Inc.,* 1999 WL 803888 (D.Del. Sept. 13, 1999), a plaintiff need not identify the speaker of the alleged misrepresentation to satisfy Rule 9(b)'s require-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

ments, to the extent *Brown's* holding conflicts with *Klein v. General Nutrition Co., Inc.,* the Court declines to extend *Brown* to the facts in this case. *See also F.D.I.C. v. Bathgate,* 27 F.3d 850, 876 (3d Cir.1994) (holding that a failure to identify the speaker of alleged misrepresentations amounted to a failure to satisfy Rule 9(b)); *Liafail, Inc. v. Learning 2000, Inc.,* 2002 WL 31667861, at *4 (D.Del. Nov. 25, 2002).

The Court also concludes that SFC's allegations of material omissions fail to satisfy Rule 9(b)'s pleading requirements. SFC bases, in part, its fraud and negligent misrepresentation claims on material omissions by Royal, yet never identifies what facts withheld by Royal induced SFC to act. Moreover, although courts cannot expect plaintiffs to have access to information sufficient to satisfy a detailed application of Rule 9(b) in all cases, in the instant case, SFC does not contend that information it needs to satisfy Rule 9(b)'s particularity requirements is exclusively within Royal's control. *See F.D.I.C.,* 27 F.3d at 876. Therefore, SFC has given the Court no reason to relax "the normally rigorous particularity rule" based upon lack of knowledge or control. *Burlington,* 114 F.3d at 1418. Accordingly, to the extent Counts I and II of SFC's Complaint are based on material omissions by Royal, the Court concludes that SFC has failed to satisfy Rule 9(b).[FN3]

> FN3. Royal also contends that *Brug v. The Enstar Group, Inc.,* 755 F.Supp. 1247 (D.Del.1991), and *Brown v. The Buschman Co.,* 2002 WL 389139 (D.Del.2002), compel the Court to dismiss Counts I and II of SFC's Complaint for failure to adequately plead scienter. Because the Court concludes that *Brug* and *Brown* are distinguishable from the facts in this case, the Court disagrees. The plaintiffs in *Brug* and *Brown* made only general averments, without any supporting facts, of intent or scienter. *Brug,* 755 F.Supp. at 1254-55; *Brown,* 2002 WL 389139, at *8.

Therefore, the *Brug* and *Brown* courts concluded that they had no choice but to dismiss the plaintiffs' claims. In this case, however, SFC has identified facts by which the Court infers intent. In paragraphs 31 and 33 of its Complaint (D.I.1), SFC alleges that Royal indicated that it would extend additional credit risk insurance following its announcement that it was leaving the credit risk insurance business if SFC would agree to borrow money from Royal to be used in making forbearance payments to Wells Fargo. SFC alleges that it complied with Royal's condition, but that Royal never extended additional credit risk insurance. The Court concludes that these facts are sufficient by which to infer intent or scienter.

*3 In sum, the Court concludes that Counts I and II of SFC's Complaint fail to satisfy the pleading requirements of Rule 9(b).[FN4]

> FN4. In its reply brief (D.I.18), Royal contends for the first time that all of SFC's claims are based on allegations of fraud, and therefore, if the Court finds that SFC has failed to properly plead Counts I and II, then all of SFC's claims must be dismissed. Without addressing the merits of Royal's arguments, the Court concludes that Royal is not entitled to dismissal of the remaining claims of SFC's Complaint on Rule 9(b) grounds.

Rule 7.1.3 of the Local Rules for the District of Delaware ("Local Rule 7.1.3") provides that "[t]he party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief."D. Del. L.R. 7.1.3(c)(2). The practice of reserving arguments for reply briefs "amounts to impermissible 'sandbagging.' " *Rockwell Tech., LLC v. Spectra-Physics Lasers, Inc.,* 2002 WL 531555 (D.Del. March 26, 2002) (quoting *Jordan v. Bellinger,* 2000 U.S. Dist. LEXIS 19233, *18 (D. Del. April 28,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

2000)). By waiting until its reply brief to assert that all of SFC's claims should be dismissed pursuant to Rule 9(b), Royal has violated Local Rule 7.1.3. Accordingly, the Court rejects Royal's attempt to dismiss SFC's remaining claims under Rule 9(b).

## II. Whether Counts I-VI State A Claim Upon Which Relief May Be Granted

### A. *Counts I And II, Negligent Misrepresentation And Fraud*

Under Delaware law, to state a claim of common law fraud a plaintiff must plead: 1) a false representation made by the defendant, usually one of fact; 2) the defendant's knowledge or belief that the statement was false; 3) an intent to induce the plaintiff to act; 4) the plaintiff's justifiable reliance upon the representation; and 5) damage to the plaintiff as a result. *Stephenson v. Capano Dev., Inc.,* 462 A.2d 1069, 1074 (Del.1983). The only difference between an action for fraud and negligent misrepresentation is that, with a claim of negligent misrepresentation, the plaintiff need not plead that the defendant knew or believed that his or her statement was false or that he or she proceeded in a reckless disregard for the truth. *Id.* By its Motion, Royal seeks to dismiss Counts I and II for failure to plead elements 1, 4, and 5.

### 1. *Statement Of A Material Fact*

Royal contends that SFC has not adequately pled the existence of a material fact because the statements SFC alleges were false or negligent concern future undertakings. (D.I. 7 at 8.) SFC responds that the Court should not be persuaded by Royal's arguments because a claim for fraud may be based upon statements of future results.

Under Delaware law, "[o]pinions and statements as to probable future results are not generally fraudulent even though they relate to material matters."*Esso Standard Oil Co. v. Cunningham,* 114 A.2d 380, 383 (Del. Ch.1955); *Craft v. Bariglio,* 1984 WL 8207, at *8 (Del. Ch. March 1, 1984).

Applying this principle and the Rule 12(b)(6) standard of review to the allegations in SFC's Complaint, the Court concludes that it would be premature to dismiss Counts I and II for failure to plead a material fact.

In its Complaint, SFC alleges that after Royal made a public announcement that it was leaving the credit risk insurance business, "Royal continued to represent to SFC that one more policy *would* be issued to SFC." (D.I. 1 at ¶ 31) (emphasis added). Further, SFC alleges that Royal contacted SFC's CEO and "told him that Royal would consider providing credit risk insurance for another securitization if SFC agreed to borrow money from Royal to be used to make 'forbearance payments' to Wells Fargo."*Id.* at ¶ 33. Taken as true, SFC's assertions constitute more than mere "[o]pinions and statements as to probable future results."*SeeEsso Standard,* 114 A.2d at 383. Thus, the Court concludes that the combined effect on SFC of Royal's statements of intent to issue a new policy suffice, for the purposes of this Motion, to plead the existence of misstatements or negligent misrepresentations made to induce SFC to borrow money from Royal.

### 2. *Justifiable Reliance*

*4 Royal contends that SFC has not pled justifiable reliance because, in the circumstances of this case, a reasonable person would not have relied upon a verbal commitment that Royal would issue an additional credit risk insurance policy. In response, SFC contends that its reliance upon Royal's misrepresentations was justifiable because, unlike the precedent relied upon by Royal, in this case there was no written agreement between the parties that made Royal's oral assurances unworthy of SFC's reliance.

Delaware courts follow the Restatement's definition of justifiable reliance. *SeeLock v. Schreppler,* 426 A.2d 856, 863 (Del.Super.1981), *superceded by statute in part on other grounds as stated in,Amato & Stella Assoc. v. Florida North Inv .,*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

*Ltd.,* 678 F.Supp. 445, 448 (D.Del.1988). In order to plead justifiable reliance based on a statement of intention, a plaintiff must allege facts demonstrating that "the intention is material and the recipient has reason to believe that it will be carried out."Restatement (Second) of Torts § 544 (1977). Applying these standards to SFC's Complaint, the Court concludes that SFC has adequately pled justifiable reliance in order to survive dismissal.

Royal directs the Court to *Debakey Corp. v. Raytheon Service Co .,* 2000 WL 1273317 (Del. Ch. Aug. 25, 2000), for support of its contention that SFC failed to adequately plead justifiable reliance.FN5In *Debakey,* the plaintiff sued for fraudulent inducement because of an oral promise by defendants that they would provide funding in excess of $2 million to the parties' joint venture. 2000 WL 1273317, at *22. A subsequent written contract, however, stated that the defendants had the right to unilaterally decide not to extend funding once the $2 million limit was reached. *Id.* Once the $2 million limit was reached, the defendants declined to extend the plaintiffs additional funding. *Id.*

> FN5. Royal does not contest that the statements at issue are material.

Following a bench trial, the *Debakey* court concluded that the written contract precluded the plaintiff from establishing justifiable reliance. *Id.* The court reasoned that reliance on the defendants' prior oral representations that they would provide funding in excess of $2 million when a subsequent express contract "unambiguously" permitted the defendants to terminate the joint venture "once the $2 million funding limit was reached" was unreasonable. *Id.*

The Court concludes that *Debakey* is both factually and procedurally distinguishable from the instant case. Here, unlike *Debakey,* there is no express contract that would make SFC's reliance on Royal's oral representations unjustifiable. Further, the *Debakey* court reached its conclusions after a

bench trial and post-trial briefing, clearly not subject to the liberal 12(b)(6) standard of review. When reviewing SFC's Complaint under the correct standard of review, the Court concludes that SFC has adequately pled justifiable reliance. As noted above, SFC alleges that Royal made two statements to it indicating Royal's intent to issue a new credit risk insurance policy. (D.I. 1 at ¶ 31, 33.) Further, SFC alleges that Royal made these two representations following Royal's public announcement that it was exiting the credit risk insurance business (D.I. 1 at ¶ 29), thereby justifying SFC's belief that Royal would issue one more policy despite its announcement.

**\*5** Based on these allegations, the Court cannot conclude that SFC could prove no set of facts establishing justifiable reliance. *SeeLangford,* 235 F.3d at 47. Accordingly, the Court will deny Royal's Motion to Dismiss Counts I and II for failure to plead justifiable reliance.

### 3. *Damages*

The Court is not persuaded by Royal's contention that SFC has failed to plead damages as a result of Royal's allegedly fraudulent and negligent misrepresentations. In paragraph 36, SFC alleges that it borrowed over $12 million from Royal "that provided no benefit to SFC." (D.I.1.) Further, in paragraph 45, SFC alleges that based on Royal's misrepresentations, Royal continued to receive pecuniary benefits that it was not entitled to from SFC's business. *Id.* Based on these allegations, the Court concludes that SFC has pled damages that are a consequence of Royal's alleged misrepresentations and false statements.

### 4. *Duty To Speak*

Royal also contends that SFC has failed to state a claim of fraud or negligent misrepresentation because, to the extent SFC bases Counts I and II on material omissions by Royal, SFC has not alleged that Royal had a duty to speak. In Delaware, a duty

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to speak may arise from circumstances other than a fiduciary or confidential relationship. *SeeMatthews Office Designs, Inc. v. Taub Inv.,* 647 A.2d 382 (Del.1993) (relying on the Restatement (Second) of Torts § 551(2) (1976) for the circumstances in which a duty to speak may arise). In relevant part, the Restatement (Second) of Torts § 551 provides that a party to a business transaction has a duty to exercise reasonable care to disclose: 1) information known due to the existence of a confidential or fiduciary relationship; 2) information that if undisclosed will cause its partial statements of facts to be misleading; or 3) facts basic to the transaction "if he knows that the other is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade or other objective circumstances, would reasonably expect a disclosure of those facts."*Id.;see alsoMentis v. Delaware Am. Life Ins. Co.,* 1 999 WL 744430 (Del.Super. July 28, 1999) (holding that a duty to speak may arise from a preexisting relationship between the parties or from a partial disclosure of facts that requires further disclosure to prevent a misleading impression) (citations omitted).

Royal moves to dismiss Counts I and II only on the basis that SFC has not alleged the existence of a confidential or fiduciary relationship between the parties. Therefore, the Court will deny Royal's Motion because Royal has not established, under all the circumstances articulated by Section 551 of the Restatement (Second) of Torts, that SFC has failed to plead facts sufficient to establish a duty to speak.

### B. *Count III, Breach Of The Duty Of Good Faith And Fair Dealing*

Royal contends that Count III of SFC's Complaint, breach of the duty of good faith and fair dealing, should be dismissed because there was no contract by which a covenant of good faith and fair dealing may be implied. In response, SFC contends that it has alleged facts sufficient to support its breach of the duty of good faith and fair dealing

claim because the case Royal relies upon implied a covenant of good faith and fair dealing before the execution of any written contract. Further, SFC contends that part of its good faith and fair dealing claim involves actions that took place after the Notes were executed.

*6 Delaware courts recognize an implied covenant in contracts requiring the parties to act with good faith toward the other party with respect to their contract. *Katz v. Oak Indus. Inc.,* 508 A.2d 873, 880 (Del. Ch.1986) (citing Restatement (Second) of Contracts, § 205 (1981)). A party must "act reasonably to fulfill the intent of the parties to the agreement."*Gloucester Holding Corp. v. U.S. Tape & Sticky Prod., LLC,* 832 A.2d 116, 128 (Del. Ch.2003) (quoting *Kelly v. McKesson HBOC, Inc.,* 2002 WL 88939 at *10 (Del.Super.Jan. 16, 2002)). Applying these principles to the allegations in SFC's Complaint, the Court will grant Royal's Motion to Dismiss SFC's claim for breach of the duty of good faith and fair dealing.

SFC contends that it has sufficiently alleged a claim for breach of the duty of good faith and fair dealing because it alleged in its Complaint that "at the time the parties negotiated the Notes, SFC reasonably expected Royal to issue the new policy based on Royal's misrepresentations and omissions."(D.1. 14 at 21.) SFC alleges that its reasonable expectations are based upon Royal's representations to SFC's CEO that Royal would consider providing additional credit risk insurance for another securitization if SFC executed the Notes that Royal would use to make forbearance payments to Wells Fargo. (D.I. 1 at ¶ 33.) SFC further alleges that it executed the Notes requested by Royal, but that Royal never fulfilled its promise to issue a new credit risk insurance policy.*Id.* at ¶ 59-60.

The Court concludes that SFC's allegations are complaints about Royal's bad faith in bargaining or negotiation, and therefore, do not fall within the scope of the duty of good faith and fair dealing in contracts. *See*Restatement (Second) of Contracts § 205 comment (c) (1981)."The duty of good faith is

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

... not imposed on parties until they have reached agreement and does not bind them during their earlier negotiations."E. Allen Farnsworth, 2 *Farnsworth on Contracts* § 7.17 (2d ed.2001). SFC's allegations involve contract invalidating claims dealing with fraudulent inducement or fraud, not breach of the duty of good faith and fair dealing. Accordingly, the Court will grant Royal's Motion to Dismiss Count III of SFC's Complaint for failure to state a claim upon which relief may be granted on grounds of breach of the duty of good faith and fair dealing.

### C. *Count IV. Unjust Enrichment*

Royal contends that Count IV, unjust enrichment, should be dismissed because payment of the loan proceeds was carried out as contemplated by the parties. Further, Royal contends that because unjust enrichment is a quasi-contract claim, it is not available when, as here, an express contract covers the same subject matter. SFC responds that it has sufficiently pled an action for unjust enrichment because actions for unjust enrichment are permitted when the validity of a contract is challenged, as in the instant case.

*7 "Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *Total Care Physicians, P.A. v. O'Hara,* 798 A.2d 1043, 1056 (Del.Super.2001) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.,* 539 A.2d 1060, 1062 (Del.1988)). " 'The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." ' *Id.* (quoting *Jackson Nat'l Life Ins. Co. v. Kennedy,* 741 A.2d 377, 393 (Del. Ch.1993). Applying these principles to the facts alleged in SFC's Complaint, the Court concludes that SFC has adequately alleged facts in support of its unjust enrichment claim to survive Royal's Motion to Dismiss.

The Court is not persuaded by Royal's contention that SFC may not maintain a claim for unjust enrichment because the parties executed documents, i.e. the Notes, providing for payment to Wells Fargo. Although the Court agrees with the general contract principle cited by Royal, in this case, SFC alleges that the Notes should be rescinded because of fraudulent statements and omissions made by Royal. Therefore, accepting SFC's factual allegations, the Court concludes that SFC's unjust enrichment claim must survive the instant motion because if the Notes are rescinded due to fraudulent conduct or omissions, there is no valid contract that would preclude SFC's unjust enrichment theory.

Further, the Court rejects Royal's assertion that SFC has failed to allege that Royal received any unjust retention of a benefit. Royal contends that because the parties specifically contemplated that the proceeds from the Notes would be paid to Wells Fargo, SFC cannot now complain of any unfairness that may have resulted from that agreement. SFC is not, however, merely complaining that Wells Fargo received the benefit of the proceeds of the Notes; instead, SFC asserts that Royal was unjustly enriched because Royal induced SFC to act by making promises Royal never intended to keep. Accordingly, the Court will deny Royal's Motion to Dismiss Count IV.

### D. *Counts V. Rescission, and VI, Declaratory Judgment*

Royal contends that Counts V, rescission, and VI, declaratory judgment, should be dismissed because these claims are based upon previous paragraphs in the Complaint that are defective for reasons it stated with respect to Counts I-IV. The Court disagrees.

Delaware law recognizes fraudulent inducement as one means by which a party may rescind an agreement. *Norton v. Poplos,* 443 A.2d 1, 4

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                Page 8
Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

(Del.1982). The elements of fraudulent inducement are 1) a false statement or misrepresentation; 2) that the defendant knew was false or made with reckless indifference to the truth; 3) the statement induced the plaintiff to enter the agreement; 4) the plaintiff's reliance was reasonable; and 5) the plaintiff was injured as a result. *Lord v. Souder,* 748 A.2d 393, 402 (Del.2000) (citing *Stephenson,* 462 A.2d at 1074.

**\*8** The Court concludes that SFC has alleged facts sufficient to support its claim for rescission due to fraudulent inducement. In its Complaint, SFC alleges that Royal knew that representations and omissions it made to SFC were false, that it acted reasonably in reliance on these representations, and that it was injured. (D.I. 1 at ¶ 30-36.) These allegations support a claim for rescission due to fraudulent inducement.[FN6]

> FN6. As noted above, the Court has concluded that SFC's Complaint, for the purposes of the Rule 12(b)(6) Motion, alleges a material fact, justifiable reliance, and the damages elements of an action for fraud.

The Court also concludes that SFC has alleged facts sufficient to support its declaratory judgment claim. Count VI of SFC's Complaint asserts that SFC is entitled to a declaratory judgment that the Notes are null and void because it was fraudulently induced into their execution. As the Court has concluded, SFC has alleged facts adequate to support a claim for fraudulent inducement, and therefore, the Court will deny Royal's Motion to Dismiss Count VI of SFC's Complaint.

## CONCLUSION

For the reasons discussed, the Court concludes that Counts I and II of SFC's Complaint do not satisfy Rule 9(b)'s pleading requirements, and therefore, must be dismissed. Further, the Court concludes that Count III of SFC's Complaint must be dismissed pursuant to Rule 12(b)(6). The Court also concludes that Counts I, II, and IV-VI state a claim

for which relief may be granted.

An Order consistent with this Opinion will be entered.

## *ORDER*

At Wilmington, this 23rd day of March, 2004, for the reasons discussed in the Opinion issued this date;

NOW THEREFORE, IT IS HEREBY ORDERED that:

1) Royal Indemnity Co.'s ("Royal") Motion to Dismiss (D.I.6) Counts I and II of Student Finance Corporation's ("SFC") Complaint pursuant to Rule 9(b) is *GRANTED;*

2) Royal's Motion to Dismiss (D.I.6), pursuant to Rule 12(b)(6), with respect to:

a) Count III of SFC's Complaint is *GRANTED;*

b) Counts I, II, IV-VI of SFC's Complaint is *DENIED.*

3) SFC shall file an Amended Complaint within twenty (20) days of this Order.

D.Del.,2004.
In re Student Finance Corp.
Not Reported in F.Supp.2d, 2004 WL 609329 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**2**

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 531555 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

▷
Rockwell Technologies, LLC. v. Spectra-Physics
Lasers, Inc.
D.Del.,2002.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
ROCKWELL TECHNOLOGIES, LLC, Plaintiff,
v.
SPECTRA-PHYSICS LASERS, INC. and Opto
Power Corporation, Defendants.
No. Civ.A.00-589 GMS.

March 26, 2002.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 The plaintiff, Rockwell Technologies, LLC
("Rockwell") filed the above-captioned action
against Spectra-Physics Lasers, Inc. ("Spectra") and
Opto Power Corporation ("Opto") on June 16,
2000. In its complaint, Rockwell alleges that Spec-
tra and Opto are infringing U.S. Patent No.
4,368,098 ("the '098 patent").

Presently before the court is Rockwell's motion
for partial summary judgment. In this motion,
Rockwell asks the court to find that the '098 patent
is not invalid due to alleged inequitable conduct
that occurred in the prosecution of the patent ap-
plication. For the reasons that follow, the court will
grant this motion in part and deny it in part.

II. STANDARD OF REVIEW

The court may grant summary judgment "if the
pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits,
if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to

judgment as a matter of law."Fed.R.Civ.P. 56(c);
*see also Boyle v. County of Allegheny,
Pennsylvania,* 139 F.3d 386, 392 (3d Cir.1998).
Thus, the court may grant summary judgment only
if the moving party shows that there are no genuine
issues of material fact that would permit a reason-
able jury to find for the non-moving party. *See
Boyle,* 139 F.3d at 392. A fact is material if it might
affect the outcome of the suit.*Id.* (citing *Anderson
v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248
(1986)). An issue is genuine if a reasonable jury
could possibly find in favor of the non-moving
party with regard to that issue. *Id.* In deciding the
motion, the court must construe all facts and infer-
ences in the light most favorable to the non-moving
party. *Id.; see also Assaf v. Fields,* 178 F.3d 170,
173-174 (3d Cir.1999).

With these standards in mind, the court will de-
scribe the facts and procedural history that led to
the motion presently before the court.

III. BACKGROUND

A. Prosecution of the '098 Patent

The patent-in-suit relates to a process for form-
ing "an epitaxial film of group III-V semiconductor
disposed on a single crystal substrate."Dr. Harold
Manasevit ("Manasevit") developed the process de-
scribed in the '098 patent. On February 13, 1968,
Rockwell filed a patent application with the United
States Patent and Trademark Office ("PTO"). As
the application contained both process and product
claims, the PTO required that Rockwell choose one
to proceed with first. Rockwell elected to give pre-
cedence to the product claims.

In 1978, Rockwell retained the law firm of
Staas and Halsey to prosecute the Manasevit patent
application with respect to the process claims. Jack
Staas ("Staas") was the Staas and Halsey attorney
primarily responsible for this prosecution. On April
7, 1978, Rockwell filed a divisional application

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2
Not Reported in F.Supp.2d, 2002 WL 531555 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

seeking a patent for the process claims. This applic-
ation issued as the '098 patent on January 11, 1983.
It expired on January 11, 2000.

B. Alleged Prior Art

*2 In 1957, Thomas R. Scott obtained patents
from Japan (the "Japanese Scott patent") and the
United Kingdom (the "UK Scott patent"). Spectra
and Opto allege that the UK Scott patent came to
the attention of Rockwell's in-house patent attor-
neys while Rockwell was prosecuting the Mana-
sevit process patent application in Great Britain. In
response to that application, the UK Patent Office
identified the UK Scott patent and five other prior
art references. The UK Patent Office directed
Rockwell's attention to those references.

Rockwell's UK patent counsel informed Rock-
well's in-house patent counsel Robert Rogers
("Rogers") of the UK Scott patent and the five oth-
er references on September 29, 1972. In response to
the UK patent counsel's request on how to respond
to that information, Rockwell employee Martin E.
Gerry prepared detailed instructions for amending
Rockwell's claims to avoid the cited references. The
UK patent counsel subsequently informed Rogers
that it was removing from the application the ori-
ginal prior art cited in the application because the
UK Scott patent and the other references consti-
tuted "the closest prior art."

Rockwell also applied for a Japanese patent on
Manasevit's invention. On that application, Rock-
well listed Frederick Hamann ("Hamann") as its
representative. Hamann supervised Rockwell's in-
house patent department from 1970 to 1995. As in
the prosecution of the UK patent application,
Scott's work was cited against the Japanese patent
application.

On June 18, 1974, the Japanese patent office is-
sued a rejection against the pending claims in
Rockwell's Japanese patent application .FN1 Rock-
well's Japanese patent counsel sent the rejection to

Hamann on July 6, 1974, along with a discussion of
the Japanese Scott patent. The Japanese counsel
also sent Hamann a copy of this patent. Rockwell's
in-house patent counsel G. Donald Weber
("Weber") responded by asking for an English ab-
stract of the Japanese Scott patent. The Japanese
patent counsel complied on August 8, 1974. Weber
subsequently sent them instructions on how to
amend Rockwell's Japanese claims in light of the
Scott patent.

> FN1. Spectra and Opto allege that the
> claims in Rockwell's Japanese patent ap-
> plication were substantively the same as
> the claims in the '098 patent.

C. Procedural History

On August 30, 1993, Rockwell brought an ac-
tion against the United States in the United States
Court of Federal Claims. In May 1995, Rockwell
initiated an action against Spectra in the Northern
District of California. Spectra then intervened in the
Court of Federal Claims action as a third-party de-
fendant. The Northern District of California stayed
its action pending a resolution of that action.

In 1998, the United States and Rockwell
settled. This settlement deprived the Claims Court
of jurisdiction over the dispute between Rockwell
and Spectra. Thus, on January 13, 1999, the North-
ern District of California court lifted its stay and re-
opened the matter. On July 24, 2001, the court
denied Rockwell's motion for partial summary
judgment on the issue of inequitable conduct.

Rockwell brought the present infringement ac-
tion on June 16, 2000.

IV. DISCUSSION

*3 Spectra and Opto assert that the inventor,
Dr. Harold M. Manasevit, and Rockwell's attorney
Jack Staas were guilty of inequitable conduct by
failing to disclose material references to the
PTO.FN2

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN2. Spectra and Opto deny basing their inequitable conduct claims on the Rule 132 Declaration that Manasevit filed with the PTO (the "Manasevit Declaration") Further, in their opposition papers, Spectra and Opto state that they do not oppose the portion of Rockwell's summary judgment motion directed to the Manasevit Declaration. Likewise, they deny alleging that Rockwell itself, as a corporate entity, could be liable for inequitable conduct. Accordingly, it is undisputed that only Manasevit's and counsel for Rockwell's conduct is at issue.

As an initial matter, Rockwell argues for the first time in its reply brief that Spectra and Opto failed to plead inequitable conduct with particularity in their answer to the complaint and have thus waived their right to assert this affirmative defense. However, Rockwell's tactic of reserving new arguments for its reply brief amounts to impermissible "sandbagging." *See Jordan v. Bellinger,* 2000 U.S. Dist. LEXIS 19233, *18 (D. Del. April 28, 2000) (declining to address new arguments reserved for the reply brief); *see also* D. DEL. L.R. 7.1.3(c)(2) (1995). Accordingly, the court declines to address Rockwell's arguments on this issue and will turn instead to the substantive merits of the motion.

Patent applicants and their legal representatives have a duty to prosecute applications with candor, good faith, and honesty. *See Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 (Fed.Cir.1995). Breach of this duty can lead to a finding that the applicant engaged in inequitable conduct before the PTO. *See Life Tech., Inc. v. Clontech Lab., Inc.,* 224 F.3d 1320, 1324 (Fed.Cir.2000). The effect of such inequitable conduct is to render the affected patent unenforceable. *See id.*

In order to prove inequitable conduct, the defendants bear the burden of providing clear and convincing evidence that: (1) omitted or false information was material; (2) the applicant had knowledge of the existence and material nature of the in-

formation; and (3) the applicant intended to deceive the PTO. *See Molins,* 48 F.3d at 1178. "Materiality and intent to deceive are distinct factual inquiries, and each must be shown by clear and convincing evidence."*Life Tech,* 224 F.3d at 1324. Information is considered material "when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent."*Molins,* 48 F.3d at 1179. The court may infer intent from the facts and circumstances surrounding the applicant's overall conduct. *See Merck & Co. v. Danbury Pharmacal, Inc.,* 873 F.2d 1418, 1422 (Fed.Cir.1989). However, in making its inferences, the court must be aware that "[a]lthough the intent element of fraud or inequitable conduct may be proven by a showing of acts the natural consequence of which were presumably intended by the actor, this requires the fact finders to evaluate all the facts and circumstances in each case. Such an evaluation is rarely enabled in summary proceedings."*KangaROOS U.S.A., Inc. v. Caldor, Inc.,* 778 F.2d 1571, 1577 (Fed.Cir.1985) (citation omitted).

In its moving papers, Rockwell declines to address the materiality of the Scott references. The Scott patents, however, were cited by foreign patent offices against Manasevit's process. This raises at least an inference that the references are material. *See Molins,* 48 F.3d at 1180. Further, Rockwell amended the claims in its foreign patents to overcome the Scott references. Accordingly the court finds that there is a triable issue of fact with regard to the materiality of the Scott patents.

**\*4** The court likewise concludes that granting summary judgment on the issue of intent would be improvident. Rockwell submits that Manasevit and Staas have each stated that they were unaware of the Scott patents. The Federal Circuit has stated, however, that "[f]ailure to cite to the PTO a material reference cited elsewhere in the world justifies a strong inference that the withholding was intentional."*Molins,* 48 F.3d at 1182. Moreover, the court

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

expresses concern over Rockwell's argument that the named inventor of the '098 patent, who is also the named inventor of the British and Japanese patents that were amended in light of the Scott patents, was not aware of the Scott patents.

When faced with a similar motion for summary judgment based on inequitable conduct with regard to these parties, the District Court for the Northern District of California explicitly reserved judgment on whether the actions of Staas and his fellow Rockwell attorneys were inequitable.[FN3] *See Rockwell v. SDL, Inc.,* No. C-95-1729, at 12, n. 11 (N.D.Cal. July 24, 2000). That court further expressed a concern identical to that which the court has in the present case arising from Manasevit's failure to disclose the Scott patents to the PTO.

> FN3. Based on the California court's denial of summary judgment on a similar issue, Spectra and Opto argue that Rockwell is now collaterally estopped from further litigating this issue. The court must disagree because a determination that there remain genuine issues of material fact is not a "final decision." *See Johnson v. Jones,* 515 U.S. 304, 313 (1995); *see also Whitford v. Boglino,* 63 F.3d 527, 530 (7th Cir.1995) (stating that the denial of summary judgment is not a final judgment, but rather an interlocutory order in the *res judicata* context.)

While mindful of the heavy burden the defendants bear, the court is persuaded that there remain substantial questions regarding Manasevit's and Staas's knowledge and intent that are better left to trial. *See Baker Oil Tools, Inc. v. Geo Vann, Inc.,* 828 F.2d 1558, 1566 (Fed.Cir.1988) (noting that, "[i]f the facts of materiality or intent are reasonably disputed the issue is not amenable to summary disposition.")

Finally, Rockwell requests leave to file a further motion for summary judgment on inequitable conduct. Rockwell contends that this is appropriate

because it was waiting for Spectra's and Opto's expert reports assessing the materiality of additional prior art references that were allegedly not disclosed to the PTO. However, as Spectra and Opto argue, the references at issue are articles that Manasevit himself wrote. Manasevit's and Rockwell's own experts were surely capable of assessing the materiality of Manasevit's work. Accordingly, the court declines to grant Rockwell additional time to file a motion that could have been filed with the instant motion for summary judgment.

V. CONCLUSION

The parties do not dispute that the corporate entity Rockwell is not being accused of inequitable conduct. Nor do they dispute that the charges of inequitable conduct are not based on the Manasevit Declaration. Thus, the court will grant Rockwell's motion with regard to these issues. However, there remain genuine issues of material fact with regard to the remaining inequitable conduct allegations.

For these reasons, IT IS HEREBY ORDERED that:
    1. Rockwell's motion for partial summary judgment (D.I.149) is GRANTED in part and DENIED in part.
    2. Rockwell's request to file a further motion for summary judgment on inequitable conduct (D.I.149) is DENIED.

D.Del.,2002.
Rockwell Technologies, LLC. v. Spectra-Physics Lasers, Inc.
Not Reported in F.Supp.2d, 2002 WL 531555 (D.Del.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| McKESSON AUTOMATION, INC., a Delaware corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) C.A. No. 06-028-SLR |
| TRANSLOGIC CORPORATION, a Delaware corporation, and | ) ) ) |
| SWISSLOG ITALIA S.P.A., an Italian corporation, | ) ) ) |
| Defendants. | ) ) ) |

## [PROPOSED] ORDER

McKesson's Motion and Memorandum pursuant to Local Rule 7.1.2 (c) in Support of

Request for Leave to File a Sur-Reply is hereby Granted. McKesson must file its Sur-Reply

within five (5) days of this Order.

SO ORDERED, this ____ day of _____, 2008.

_____

United States District Court Judge

124402.00601/40173558v.1