IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON AUTOMATION, INC., | ) | |
| | ) | PUBLIC VERSION |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-028 (SLR/LPS) |
| | ) | |
| SWISSLOG ITALIA S.P.A. and | ) | Confidential Version Filed: February 29, 2008 |
| TRANSLOGIC CORPORATION, | ) | Public Version Filed: May 20, 2008 |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS SWISSLOG ITALIA S.P.A'S AND TRANSLOGIC CORPORATION'S CITATION OF SUBSEQUENT AUTHORITY PURSUANT TO LOCAL RULE 7.1.2 AND OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUR-REPLY**

Defendants Translogic Corporation ("Translogic") and Swisslog Italia S.p.A. ("Swisslog") (collectively, "Defendants") submit the following in opposition to McKesson Automation, Inc.'s ("McKesson") motion for leave to file a sur-reply in further opposition to Defendants' Motion to Dismiss (D.I. 239). In the alternative, if McKesson is permitted to file a sur-reply, Defendants respectfully request leave to file the responsive brief attached as Exhibit A to this motion. In addition, Defendants submit argument concerning a pertinent Federal Circuit case that issued subsequent to Defendants' reply brief.

Defendants did not, as McKesson asserts, improperly raise new issues in the reply brief and deprive McKesson of an opportunity to respond. The issue addressed in Defendants' reply brief was the same as in the opening brief:  REDACTED
REDACTED

REDACTED    Nor did Defendants argue in their opening brief that the issue of ownership was ripe for disposition by this Court and then argue on reply that the Court does not have jurisdiction. Defendants have never asserted that this Court should decide the ownership of the

rights to the patents-in-suit. Defendants' argument for dismissal was and still is simply that McKesson has not made the requisite showing that it is the sole owner of the patents-in-suit and cannot maintain this action.

To the extent any new issues were addressed, it was only to respond to McKesson's opposition which relied upon purportedly newly discovered documents, produced to Defendants for the first time *after* the motion was filed, as well as the depositions of the investors taken by McKesson *after* the close of discovery and *after* the motion was filed. McKesson should not now be permitted to benefit from its own failure to produce those documents on a timely basis and decision to take the investors' depositions after the close of discovery as a means to secure for itself the last word on Defendants' motion. Moreover, all of the issues about which McKesson now complains it was deprived of an opportunity to respond should have been foreseen by McKesson at the time it filed its opposition. Thus, McKesson is not entitled to a sur-reply. *See Millett v. Truelink, Inc.*, 2006 US Dist. LEXIS 63875 (D. Del. 2006) (motion to file sur-reply denied where plaintiff had ample opportunity to brief choice of law issues in its opposition to motion to dismiss).

REDACTED

REDACTED

In the event McKesson is permitted to file a sur-reply, Defendants respectfully request leave to file the brief annexed hereto as Exhibit A. *See Acierno v. Phillip Cloutier et al.*,

1993 U.S. Dist. LEXIS 8447 (D. Del. 1993); *Hartford Fire Ins. Co. v. Pettinaro Construction Co., Inc.*, 1993 U.S. Dist. LEXIS 2224 (D. Del. 1993).

## CITATION OF SUBSEQUENT AUTHORITY

The Federal Circuit's recent decision in *DDB Tech. L.L.C. v. MLB Advanced Media L.P*, 2008 U.S. App. LEXIS 3086 (Fed. Cir. Feb. 13, 2008), bears directly on the issues of Defendants' Motion to Dismiss. In *DDB Tech. L.L.C.*, the Federal Circuit made clear that patent assignment clauses in contracts are ***not*** governed by state law, but rather are construed solely with respect to Federal law in accordance with "the contractual language." *Id*. at 12.
REDACTED


REDACTED   Moreover, the Federal Circuit held in *DDB Tech* that language in a contract obligating a future grant of patent rights ***does not*** vest legal title to the patents in the promisee/assignee. *Id*. at 13.[1]   REDACTED
REDACTED


## CONCLUSION

For the foregoing reasons, McKesson's motion for leave to file a sur-reply should be denied in all respects.

---

[1]   REDACTED

OF COUNSEL:

Alfred R. Fabricant
Lawrence C. Drucker
Richard LaCava
Bryan N. DeMatteo
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 277-6500

Dated: February 29, 2008

1721133

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ *Julia Heaney* (#3052)

_____
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Defendants Swisslog Italia, S.p.A. and*
  *Translogic Corporation*

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on May 20, 2008 I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

    Dale R. Dubé, Esquire
    Blank Rome LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on May 20, 2008 upon the following individuals in the manner indicated

### BY E-MAIL

| | |
|---|---|
| Dale R. Dubé, Esquire<br>Blank Rome LLP<br>Chase Manhattan Centre<br>1201 Market Street, Suite 800<br>Wilmington, DE  19801 | Blair M. Jacobs, Esquire<br>Sutherland Asbill & Brennan LLP<br>1275 Pennsylvania Avenue, NW<br>Washington, DC  20004 |

*/s/ Julia Heaney*

Julia Heaney (#3052)
jheaney@mnat.com

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON AUTOMATION, INC., ) | PUBLIC VERSION |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 06-028 (SLR/LPS) |
| ) | |
| SWISSLOG ITALIA S.P.A. and ) | Confidential Version Filed: February 29, 2008 |
| TRANSLOGIC CORPORATION, ) | Public Version Filed: May 20, 2008 |
| ) | |
| Defendants. ) | |

**DEFENDANTS SWISSLOG ITALIA S.P.A'S AND TRANSLOGIC CORPORATION'S [PROPOSED] BRIEF IN RESPONSE PLAINTIFF'S SUR-REPLY**

Defendants Translogic Corporation ("Translogic") and Swisslog Italia S.p.A. ("Swisslog") (collectively, "Defendants") submit the following in response to McKesson Automation, Inc.'s ("McKesson") sur-reply and in further support of Defendants' motion to dismiss (D.I. 239).

McKesson's sur-reply asserts that Defendants initially took the position that this Court is the proper forum to determine the ownership of the patents-in-suit but on reply argued that the Court lacks jurisdiction to decide that issue. This is misleading and incorrect. The main point of Defendants' motion has been and still is that McKesson has not met its burden of proving that it is the sole owner of the patents-in-suit. Absent such proof, the case must be dismissed. If and when ownership of the patents is resolved, the prevailing party – either the investors or McKesson, not both – may have standing to assert patent infringement against Defendants or others. McKesson, not Defendants, are asking this Court for what is essentially an adjudication that it owns the patents-in-suit to the exclusion of the investors who are not before this Court and who will be deprived of an opportunity to defend their rights. This is not the proper forum in which to resolve that issue.

REDACTED

REDACTED        As noted above, this is not the issue raised by Defendants' motion, but even if it were, this is clearly not a legal issue; it is a question of disputed fact that this Court should not and cannot resolve in the absence of the investors. McKesson's position is belied by its reliance on numerous documents (produced after the motion was made)     REDACTED
REDACTED

REDACTED        The answers to these questions turn not only on the documents but on an evaluation of the intent of the parties, witness credibility, and authenticity of handwritten notations on documents, which were never produced during discovery prior to the filing of the motion to dismiss by Swisslog, purportedly showing repayment of the note. McKesson also would have this Court examine the parties' course of conduct in subsequent transactions through the 1990's. McKesson itself recognized the importance of the investors' presence when it represented to this Court that it would be unable to oppose the motion without first taking their depositions. There are undeniably disputed questions of *fact* that this Court should not and cannot resolve without having the investors before it to defend their interests.

The cases cited by McKesson for the proposition that this Court can resolve this purported legal issue without the investors do not compel a different result. *Kahn v. General Motors Corp.*, 77 F.3d 457 (Fed. Cir. 1996), involved a series of transactions including

assignments of rights to a patent application from two corporations back to the inventor. The assignor corporations went out of business and the patent issued to the inventor. The defendant questioned the assignments and contended that the two defunct corporations owned the patent. Upon those facts, the Court was able to find that the plaintiff/inventor had demonstrated that he possessed all rights to the patent without any concern for the possibility of subsequent suits from the two defunct corporations that no longer existed. Here, the investors *do* exist and there is a very real possibility that they or their assignees may initiate a patent suit against Defendants in the future, thereby subjecting them to multiple damages and inconsistent results.

In *Rowe Int'l Corp. v. Ecast, Inc.*, 500 F. Supp.2d 887 (N.D. Ill. 2007), defendants challenged plaintiff's standing to sue based on two assignments of patent rights to the plaintiff. There was no dispute as to the meaning of the first assignment, only its legal effect, *i.e.* whether the rights conveyed gave plaintiff the right to assert patent infringement without joining the assignor.

REDACTED

REDACTED

The remaining cases cited by McKesson in their sur-reply address challenges to the plaintiff's ownership of rights to the patents, but the similarity to this case ends there. For

example, *Ajinomoto Co. Inc. v. Archer-Daniels-Midland Co.*, 1996 US Dist. LEXIS 15988 (D. Del. 1996), and *Ajinomoto Co. Inc. v. Archer-Daniels-Midland Co.,* 1998 US Dist. LEXIS 3833 (D. Del. 1998), addressed only whether the patents-in-suit were invalid or unenforceable due to inequitable conduct based on questions as to the authenticity of signatures on an assignment of the underlying patent application. This Court found simply that neither fraud nor intent to deceive had been proven by clear and convincing evidence and that the patent was not invalid. No such issue has been raised here. Moreover, in *Ajinomoto*, there was no question as to the rights of absentee parties or whether the absence of any parties would expose the Defendants to multiple suits.

In *LP Mathews LLC v. Bath & Body Works, Inc.* (D. Del., October 2006) (unpublished), the defendant merely challenged the apparently mistaken use of the word "Company" rather than "Corporation" in the assignor's name on the assignment document. There was no dispute that the assignment had been executed as in the instant case. More importantly, in that case, the assignors executed affidavits expressly disavowing any purported interest in the patent-in-suit and agreed not to initiate any other suit to enforce the patent against the defendants.                       REDACTED
                    REDACTED

In *SKW Americas v. Euclid Chemical Co.*, 231 F. Supp.2d 624 (N.D. Ohio 2002), Defendants challenged the timing of an assignment of the patents-in-suit, arguing that plaintiff's original proof that the assignment had been made prior to commencement of the action was flawed. After the defendant challenged each of the documents purportedly showing that plaintiff possessed legal title to the patent-in-suit, the plaintiff produced an agreement between it and the former patent owner that definitively assigned to plaintiff all of that entity's patent rights,

4

REDACTED

In *Cordis Corp. v. Medtronic AVE, Inc. et al.*, 194 F. Supp.2d 323 (D. Del. 2002), defendants challenged the standing to sue of an exclusive licensee of the patents-in-suit based on the purported failure to obtain the express consent of the licensor prior to each of several successive assignments. *Cordis* is markedly different from the present case because there was no issue as to whether an assignment had been made. In addition, in an earlier decision, the Court in *Cordis* required the original patent owner to be joined as a party pursuant to Rule 19 to avoid the possibility of concurrent litigation by the licensee and licensor. *See Cordis Corp. v. Advanced Cardiovascular Systems, Inc.*, (order dated February 6, 1998, D.I. 162) (annexed as Exhibit B).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted in all respects.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney (#3052)*
_____

OF COUNSEL:

Alfred R. Fabricant
Lawrence C. Drucker
Richard LaCava
Bryan N. DeMatteo
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 277-6500

Dated: February 29, 2008
1721143

Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Defendants Swisslog Italia, S.p.A. and Translogic Corporation*

# EXHIBIT B

162

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CORDIS CORPORATION,                )
                                   )
         Plaintiff,                )
                                   )
    v.                             ) Civil Action No. 97-550-SLR
                                   )
ADVANCED CARDIOVASCULAR            )
SYSTEMS, INC.; GUIDANT             )
CORPORATION; ARTERIAL              )
VASCULAR ENGINEERING, INC.;        )
BOSTON SCIENTIFIC CORPORATION;     )
and SCIMED LIFE SYSTEMS, INC.,     )
                                   )
         Defendants.               )

O R D E R

At Wilmington this 6th day of February, 1998, having reviewed the papers submitted in connection with Advanced Cardiovascular Systems, Inc.'s motion to dismiss for lack of standing (D.I. 60) and having heard oral argument on the same;

IT IS ORDERED that said motion is granted in part and denied in part for the reasons that follow:

1. Section 281 of Title 35 of the United States Code provides that a civil action for patent infringement may be brought by "a patentee." The word "patentee" is defined by statute to "include[] not only the patentee to whom the patent

was issued but also the successors in title to the patentee." 35 U.S.C. § 100(d). The United States Court of Appeals for the Federal Circuit has recognized several principles in this regard:

> The right to sue for infringement is ordinarily an incident of legal title to the patent. A licensee may obtain sufficient rights in the patent to be entitled to seek relief from infringement, but to do so, it ordinarily must join the patent owner. And a bare licensee, who has no right to exclude others from making, using, or selling the licensed products, has no legally recognized interest that entitles it to bring or join an infringement action. . . .

Abbott Laboratories v. Diamedix Corp., 47 F.3d 1128, 1131 (Fed. Cir. 1995).

2. Plaintiff in the case at bar relies on a license agreement dated August 27, 1986 between Ethicon, Inc. (as licensee) and Expandable Grafts Partnership (as licensor) as its basis for bringing suit. The relevant portions of the agreement include the following:

> 3.01    LICENSOR hereby grants to ETHICON a worldwide exclusive license under the Patent Rights and Know-How, with the right to sub-license, to make, have made, use, and sell Devices for the term of this Agreement. This grant is subject to (a) the reservation in the United States Government, acting through the Veterans Administration, of a worldwide non-exclusive, irrevocable, royalty free license in the invention that is the subject of the said U.S. patent

2

application Serial No. 796,009, with power to grant licenses for all United States Government purposes, and (b) an agreement between Julio C. Palmaz, M.D., one A. Stewart Windeler, DDS, Ph.D., and the University of Texas System whereby the University of Texas reserves a royalty-free, non-exclusive license to use the invention that is the subject of the said United States patent application Serial No. 796,009, and whereby the University of Texas System shall receive six per cent (6%) of any monies received by Drs. Palmaz or Windeler from the commercialization of said invention. . . .

. . .

    6.01    ETHICON shall have the right, but not the obligation, to bring and prosecute litigation to enforce the Patent Rights. Such right includes the right to settle such litigation, provided that if any such settlement would include ETHICON'S agreement to the invalidity or unenforceability of any claim within the Patent Rights, LICENSOR shall either approve such settlement, which approval will not unreasonably be withheld, or LICENSOR shall go forward with the litigation and assume responsibility therefor and all costs thereof. Otherwise (i.e., unless LICENSOR assumes responsibility for the litigation and all costs therefor), ETHICON shall bear the costs of such enforcement. If ETHICON declines to enforce the Patent Rights, LICENSOR shall have the right to do so at LICENSOR'S expense, in which case LICENSOR shall retain any monetary settlement resulting from such enforcement proceedings.

. . .

        8.01    ETHICON shall have the right, upon written notice to LICENSOR, to assign this Agreement to an Affiliate of ETHICON. However, such assignment shall not release ETHICON from the duties and obligations hereunder, including, but not limited to, the payments required under Paragraphs 4.01 and 4.02 hereof, and any such assignee shall be bound by all of the terms and conditions hereof and all of the duties and obligations hereunder.

        8.02    Except as expressly provided for by this ARTICLE VIII, this Agreement shall not be assignable by either party without the express written consent of the other party, which consent will not unreasonably be withheld.

(D.I. 81, Ex. M)

3. Two issues arise from a review of the license agreement: a) does plaintiff have legal title to the patent pursuant to paragraph 8.02, given the number of corporate transactions evidenced in the record; and b) does the language of paragraph 6.01 preclude the threat of concurrent litigation by plaintiff and the patent owner?

4. Having traced the "chain of title" through the record, the court is satisfied that the license agreement had been assigned to plaintiff at the time the complaint at bar was filed. The fact that the licensor may not have given its "express written consent" at the time of each corporate

transformation is of no moment, where the parties' course of conduct over the years has been consistent with the licensor's knowledge and approval of the series of assignments. See generally Vaupel Textilmaschinen v. Meccanica Euro Italia, 944 F.2d 870, 874 (Fed. Cir. 1991) (a license agreement should be construed to carry out the intention of the parties).

     5. The court finds, however, that paragraph 6.01 does not explicitly forbid concurrent litigation by the licensee and licensor. Given the convoluted chain of title evidenced of record, the court concludes that joinder of the patent owner pursuant to Fed. R. Civ. P. 19 is appropriate.

     6. The court understands that plaintiff will be filing pleadings consistent with the above finding.

                                                      /s/ Sue L. Robinson
                                         United States District Judge