# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Julia Heaney
302 351 9221
302 425 3004 Fax
jheaney@mnat.com

May 21, 2008

The Honorable Leonard P. Stark  **BY E-FILING**
United States District Court for the District of
   Delaware
844 N. King Street
Wilmington, DE 19801

Re:   *McKesson Automation, Inc. v. Swisslog Italia S.P.A. et al.,*
       C.A. No. 06-28 (SLR-LPS)

Dear Magistrate Judge Stark:

      Pursuant to Your Order (D.I. 299), Defendants submit this letter requesting that the Court order McKesson to withdraw untimely and unjustified allegations of infringement of five additional claims – claims 14-17 of U.S. Patent No. 5,468,110 ("the '110 patent") and claim 2 of U.S. Patent No. 5,593,267 ("the '267 patent") (collectively "the patents-in-suit") not included in McKesson's final infringement contentions.

      Plaintiff's preliminary infringement contentions, which were served on December 22, 2006, alleged that Defendants' Pillpick system infringed claims 1-8 and 10-22 of the '110 patent and claims 1-5 and 7-11 of the '267 patent. On January 31, 2008, Plaintiff served supplemental infringement contentions, in which it withdrew claims 14-20 of the '110 patent and claims 2 and 10 of the '267 patent. Defendants thereafter served second and third revised prior art and invalidity statements on March 5, 2008 and March 31, 2008, respectively, removing the withdrawn claims from its allegations of invalidity. In the identification of terms requiring construction exchanged on March 19, 2008, neither party identified terms of the withdrawn claims. The parties exchanged initial expert reports on March 31, 2008. Neither report referred to or analyzed in any way the claims withdrawn by McKesson.

      Without consulting Defendants, without leave of the Court, and in contradiction to the Sixth Amended Scheduling Order, on May 2, 2008 – more than a month after initial expert reports were served – McKesson served revised infringement contentions and a supplemental expert report of Plaintiff's technical expert, Dr. Wayne J. Book, asserting new allegations of infringement of claims 14-17 of the '110 patent and claim 2 of the '267 patent. Defendants objected to McKesson's attempt to assert new claims of infringement and, in a letter dated May 5, 2008, requested that McKesson withdraw them. McKesson refused.

      There is absolutely no justification for McKesson's assertion of new claims at this late hour. Fact discovery has long since ended, and the new claims at issue are directed to

features of the Pillpick system that were described in hundreds of documents already produced by Defendants and testified to by Defendants' witnesses.

In a letter dated May 7, 2008 and e-mail dated May 9, 2008, Plaintiff stated that the new claims of infringement were justified by information purportedly disclosed for the first time in the expert report of Defendants' damages expert, Dr. Jeffrey A. Stec, relating to a "Fillbox" product offered by Defendants as an add-on to the Pillpick system. In particular, Plaintiff contended that the Fillbox is described in Dr. Stec's report as an alternative to the PickRing (another add-on product to the Pillpick system), which allegedly contradicts testimony provided by Mr. Maurizio Davolio, Swisslog's former general manager, that the Fillbox is used with the Pickring. The record in this case establishes that Plaintiff's justification for its newly asserted claims is simply not credible.

Testimony provided by Defendants' witnesses and numerous documents produced by Defendants in this case made clear long before the damages reports were exchanged that the Fillbox may be used in conjunction with a Pickring product *or* interfaced directly to the Pillpick system alone. Mr. Davolio's testimony that the Fillbox is used with the Pickring is, therefore, entirely consistent with Dr. Stec's report, the documents produced in this case, and testimony provided by other witnesses. Indeed, in June, 2007, McKesson deposed Andy Youtz, Translogic's Product Manager on this very topic:

> Q. This chart also identifies the fill box as an alternate to the PickRing. How is the fill box an alternate to the PickRing?
>
> A. It's a different method for dispensing.
>
> Q. Can you explain how it's different?
>
> A. It's dispensing loose doses into cassette modules.

McKesson also questioned Ben Hinnen, Translogic's Director of Automated Drug Management Systems about this.

> The Fillbox basically opens a drawer and ***the individual unit doses, loose unit doses***, are loaded into the drawer via a conveyor. [1]
> . . .

Furthermore, Dr. Stec's discussion of the Fillbox was based solely on a publicly available brochure, which was not only freely accessible by McKesson from Swisslog's website, but was also produced to McKesson during discovery in various forms. Dr. Stec's damages

---

[1] The Fillbox is not used with the Pickring product when individual and loose unit-doses are loaded into patient drawers. When the Fillbox is used with the Pickring product, bundled unit doses are dispensed together on a ring, which the Fillbox then places into patient drawers.

report adds nothing new or different from what the record already discloses and, therefore, provides no justification for McKesson's new allegations of infringement.

McKesson also contends that a Pillpick system was recently offered with a Fillbox add-on to Heartland hospital, and that this offer for sale justified its new claims of infringement. This purported justification is also baseless. It is no secret – and Defendants made no attempt to hide the fact – that the Pillpick system is offered for sale with various add-on products, such as the Pickring and Fillbox products. Both Mr. Davolio and Mr. Youtz testified that the Fillbox product is an option available and offered to customers of the Pillpick system. The purported additional offer to Heartland Hospital of a Fillbox is of no consequence and provides no justification whatsoever for McKesson's new claims of infringement.

McKesson's attempt to assert new claims of infringement is highly prejudicial to Defendants. McKesson seeks to assert new claims of infringement *after* the discovery cutoff date, *after* final infringement contentions have been served; *after* terms requiring construction have been identified by the parties, and *after* the parties' initial expert reports have been exchanged. These 11th hour claims appear to be a thinly veiled attempt by McKesson to circumvent the arguments and prior art asserted by Defendants' technical expert, Dr. McCarthy, in his initial report. To allow McKesson to do this would greatly prejudice Defendants by permitting McKesson – with full knowledge of the contents of Dr. McCarthy's report – to cherry pick new claims of infringement specifically to circumvent Defendants' invalidity arguments disclosed in the report.

The new claims would also result in significant delays and require modification of virtually every date in the Scheduling Order. Defendants will need additional time to update their interrogatory responses, revise their invalidity contentions and determine whether there are now additional terms that require claim construction. Defendants' expert will need additional time to respond to McKesson's new allegations of infringement, to review new art and, if need be, to draft a supplemental report regarding invalidity of these additional claims. Plaintiff's expert, in turn, will undoubtedly require even more time to serve a supplemental rebuttal report to address these new allegations of invalidity. This further discovery and new reports will delay the completion of expert discovery as well as the briefing schedule for claim construction and summary judgment that the parties agreed would follow the completion of expert discovery. Moving these dates back will interfere with Judge Robinson's time to decide claim construction and summary judgment which will, in turn, require the Court to reschedule the trial date.

It is also worth noting that the parties had been working for weeks *after* initial expert reports were served to set revised dates for a stipulated Seventh Amended Scheduling Order. If Defendants had known of McKesson's intent to assert new claims after the deadlines were set, they would not have agreed to this schedule and would have sought immediate relief from the Court. At a minimum, McKesson should have made its intentions known during the April 17, 2008 teleconference with Judge Robinson to permit the Court to consider these issues in setting dates.

For these reasons, we request that the Court order McKesson to withdraw the untimely and newly asserted claims of infringement and amended expert report.

Respectfully,

*Julia Heaney*

Julia Heaney

JH:ncf

cc: Dr. Peter Dalleo, Clerk (By hand delivery)
     Dale R. Dubé (By e-mail)
     Blair M. Jacobs (By e-mail)