# Morris, Nichols, Arsht & Tunnell llp

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Julia Heaney
302 351 9221
302 425 3004 Fax
jheaney@mnat.com

May 27, 2008

The Honorable Leonard P. Stark                              **BY E-FILING**
United States District Court
   for the District of Delaware
844 N. King Street
Wilmington, DE  19801

      Re:   *McKesson Automation, Inc. v. Swisslog Italia S.P.A. et al.,*
            C.A. No. 06-28 (SLR-LPS)

Dear Magistrate Judge Stark:

      Defendants Translogic Corp. and Swisslog Italia S.p.A. ("Defendants") submit this letter in response to the letter submitted to Your Honor by Plaintiff McKesson Automation, Inc. ("McKesson") on May 22, 2008 letter to the Court and in accordance with Your Honor's direction at the May 23, 2008 teleconference.

      McKesson's letter cites several Pennsylvania cases that it contends justify considering the promissory notes and other documents together with the June 1990 assignment document which was unambiguous on its face. The cases cited by Plaintiff are inapposite and do not change the fundamental principle of Pennsylvania contract law that a contract, unambiguous on its face, is to be interpreted solely in accordance with the natural meaning of its terms and without reference to extrinsic documents. *See, e.g., Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 96 (3d Cir. 2001) ("a contract that is unambiguous on its face must be interpreted according to the natural meaning of its terms, unless the contract contains a latent ambiguity.").

      In each of the cases cited by Plaintiff, the Court looked to other writings to cure an ambiguity in the contract or because the contract itself referenced the other writings. For example, in *Huegel v. Mifflin Construction Co.*, 796 A.2d 350 (Pa. Super. Ct. 2002), the contract being construed by the Court made "several references" to an earlier writing, which the Court held justified reading the documents together. *Id.* at 356. Likewise, in *Von Lange v. Morrison-Knudsen Co., Inc.*, 460 F. Supp. 643 (M.D. Penn. 1978), the contract "specifically referred to and was made contingent upon the execution of the [earlier agreement]." *Id.* at 647. In *Neville v. Scott*, 127 A.2d 755 (Pa. Super. Ct. 1956), the case relied on in *Huegel*, the Court looked to an

earlier writing because the contract was incomplete and ambiguous. *Id.* at 757. According to the Court in *Neville*:

> The later agreement . . . expressly refers to the fact that a dwelling was being erected on the lot to be reconveyed. Consequently, reference must be had to the earlier contract to determine the plans, specifications and materials contemplated. In no other way can the intention of the parties as to the particular kind and quality of the dwelling be determined. Without the information supplied by the earlier contract, the later agreement is incomplete.

*Id.*

There is no such cross-reference or ambiguity here. The assignment document is clear on its face, does not refer to any other document or transaction, and unambiguously assigned to the Pittsburgh Seed Fund and Dr. Stephen Heilman (collectively "the Investors") all right and interest in the patents-in-suit. Since the assignment document is unambiguous, it should be construed in accordance with its plain language and without reference to other documents.

McKesson's attempt to have this Court consider evidence outside of the assignment itself fails for another reason. McKesson asks this Court to consider the affidavit of Mr. McDonald – the former president of AHI and McKesson – and other parol evidence to determine the intent of the parties, yet it argues that the Investors' presence and testimony is not necessary to determine such intent. McKesson cannot have it both ways. If this Court considers evidence outside of the assignment document itself, the Investors must be present to settle the ownership question and to avoid significant prejudice to the Defendants (*e.g.*, inconsistent results, incomplete relief, and duplicative litigation) of a decision of this issue in their absence.

In *Applied Companies v. U.S.*, 144 F.3d 1470 (Fed. Cir. 1998), a case cited by McKesson in its opposition to the motion and addressed by Your Honor during the May 20 hearing, both parties to the assignment at issue (*i.e.*, Applied Companies and the United States) were parties to the litigation. There was, thus, no issue of indispensable parties and no danger of inconsistent results and severe prejudice to third parties. There was also no dispute in *Applied Companies* as to whether the underlying debt had been repaid. Here, not only are there genuine issues of fact as to whether the loan was fully repaid and whether a security interest was intended, but the Investors are not before this Court. To resolve the ownership question in their absence would directly affect their rights and subject Defendants to the very real potential of duplicative lawsuits, inconsistent results, and incomplete relief. These are precisely the types of prejudice that Rule 19 was intended to avoid.

The ownership issue now before the Court is the direct result of McKesson's and AHI's failure to seek reassignment of the patents-in-suit, as the investment documents expressly required, before initiating this suit against Defendants and of McKesson's efforts to obtain affidavits from the Investors disclaiming any interest in the patents. Defendants should not now be forced to suffer the severe prejudices and uncertainty attendant to this failure if this case were

The Honorable Leonard P. Stark
May 27, 2008
Page 3

permitted to continue in the Investors' absence. Only after McKesson cures the defects in its patent ownership should McKesson be free to maintain this action.

Respectfully,

*Julia Heaney*

Julia Heaney

JH:ncf
cc:    Dr. Peter Dalleo, Clerk (By hand delivery)
       Dale R. Dubé (By e-mail)
       Blair M. Jacobs (By e-mail)
2342777