IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| McKesson Automation, Inc., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civ. No. 06-28-SLR-LPS |
| | : |
| Swisslogic Holding AG, et al., | : |
| | : |
| Defendants. | : |

**REPORT AND RECOMMENDATION REGARDING**
**DEFENDANTS' RULE 12(b)(1) MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(1), defendants Swisslog Italia S.p.A. and Translogic Corporation (collectively, the "Defendants") have filed a Motion to Dismiss (the "Motion") the First Amended Complaint of plaintiff McKesson Automation, Inc. ("Plaintiff" or "McKesson") on the ground that Plaintiff lacks standing to sue. (Docket Item ["D.I."] 165) I have considered the parties' extensive pleadings and arguments in connection with this jurisdictional challenge and, for the reasons that follow, I recommend that Defendants' Motion be granted.

**BACKGROUND**[1]

McKesson's predecessor, Automated Healthcare, Inc. ("AHI"), was founded in 1987 by Sean McDonald and Philip Keys. McDonald is the former president of AHI and the named inventor of the patents-in-suit. In need of funds for product development, AHI's founders sought out investors and entered into a series of agreements with Pittsburgh Seed Fund ("PSF"), a

---

[1]All of the statements contained in this Background section are undisputed.

venture capital group, as well as private investor Dr. Stephen Heilman (collectively, the "Investors") to provide short-term operating capital.

In June and November 1990, PSF and Dr. Heilman provided AHI with loans totaling $200,000.00 in exchange for three (3) promissory notes. Specifically, on June 29, 1990, AHI executed a note for a $42,857.14 loan from Dr. Heilman (the "Heilman Note"), and another note for a $107,142.86 loan from PSF ("PSF June Note"). PSF subsequently loaned AHI another $50,000.00 on November 14, 1990, which was evidenced by a third note ("PSF November Note"). Each note provided that: (i) it "will be secured by an Assignment of Application for Patent for the technology rights associated with the patent application of January 24, 1990 entitled 'A System for Filling Orders,' with serial number 07/469,217" (hereinafter, "the '217 Application"), i.e., the parent application to the two patents-in-suit (the '110 and '267 patents); and (ii) "[a]ssignment [of the '217 Application] will be made back to the Company [i.e., AHI] upon full satisfaction of the obligations under this note." Pursuant to the notes, AHI was required to pay the Investors 12% annual interest, eventually repay the $200,000 loan principal, and issue warrants to the Investors so they could purchase shares of AHI common stock.

Also on June 29, 1990, in exchange for consideration of $1.00, AHI executed an Assignment of Invention (the "Assignment") by which AHI "hereby sells, assigns and transfers" to Dr. Heilman "[a 26.8%] interest . . . including all rights to claim priority, in and to any and all improvements which are disclosed in the invention [i.e. the '217 Application] and hereby assigns and transfers" to PSF the remaining "[71.4%] interest . . . including all rights to claim priority, in and to any and all improvements which are disclosed in the invention . . . including the right to claim priority and, in and to, all Letters Patent to be obtained for said invention . . . or any

2

continuation, division, renewal, or substitute thereof, and as to letters patent any reissue or reexamination thereof."

In 1996, McKesson acquired AHI, including whatever rights AHI had in the '217 Application and any patents relating to it.

On January 13, 2006, McKesson filed the instant patent infringement lawsuit against Defendants. (D.I. 1) McKesson filed a first amended complaint (the "Complaint") on July 3, 2006. (D.I. 47). On October 3, 2007, Defendants filed their Motion to Dismiss the Complaint, arguing that McKesson lacks standing to sue for patent infringement because it has failed to meet its burden to show that it owns 100% of the rights in the patents-in-suit, due to uncertainties surrounding the 1990 AHI notes transactions.[2]

## LEGAL STANDARDS

Rule 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, including where the plaintiff lacks standing to bring its claim. *See Samsung Elecs. Co. v. ON Semiconductor Corp.*, 2008 WL 900979, at *3 (D. Del. Apr. 3, 2008). Motions brought under Rule 12(b)(1) may present either facial or factual challenges to a court's subject matter jurisdiction.

> In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this regard, the Court must accept all factual allegations in the

---

[2]This case was originally assigned to the Honorable Kent A. Jordan. Upon Judge Jordan's elevation to the Third Circuit Court of Appeals in December 2006, it was reassigned to the "judicial vacancy" and referred for pretrial management to Magistrate Judge Mary Pat Thynge. (D.I. 69) On February 1, 2008, the case was reassigned to Judge Sue L. Robinson and then, on February 11, 2008, referred to me. (D.I. 238, 250) I held oral argument on all pending motions on May 20, 2008. (D.I. 308)

> Complaint as true, and the Court may only consider the complaint and documents referenced in or attached to the complaint. Gould Electronics, Inc. v. U.S., 220 F.3d 169, 176 (3d Cir. 2000). [In contrast, however,] [i]n reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint. Mortensen v. First Fed. Sav. & Loan, 549 F.2d 884, 891 (3d Cir. 1997). Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. Gotha v. United States, 115 F.3d 176, 179, 36 V.I. 392 (3d Cir. 1997).

*Id.*

Here, because the Motion attacks the factual basis for jurisdiction, the Court is not required to accept plaintiff's averments of standing as true, but is instead "free to weigh evidence outside the pleadings to resolve factual issues bearing on jurisdiction and to satisfy itself as to the existence of its power to hear the case." *UD Technology Corp. v. Phenomenex, Inc.*, 2007 WL 28295, at *2 (D. Del. Jan. 4, 2007). In fact, "[f]ederal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines. Standing is a threshold question in every federal case, determining the power of the court to entertain the suit." *Pfizer, Inc. v. Elan Pharmaceutical Research Corp.*, 812 F. Supp. 1352, 1356 (D. Del. 1993) (internal quotation marks and citations omitted).

"Once the Court's jurisdiction is challenged, the plaintiff bears the burden of proving that jurisdiction exists." *Samsung*, 2008 WL 900979, at *3. In assessing whether a plaintiff has met its burden, the Court must be mindful that "standing cannot be inferred argumentatively from averments in the pleadings . . . but rather must affirmatively appear in the record." *PFW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotation marks and citations omitted), *overruled on other grounds by City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004).

With respect to standing in a patent infringement case, "[o]nly the entity or entities that own or control all substantial rights in a patent can enforce rights controlled by that patent, lest an accused infringer be subjected to multiple suits and duplicate liability." *IpVenture, Inc. v. Prostar Computer, Inc.*, 503 F.3d 1324, 1325 (Fed. Cir. 2007). "Thus all entities with an independent right to enforce the patent are indispensable or necessary parties to an infringement suit," as courts must be assured that "all interested parties are before the court and that their interests are considered." *Id.* The party bringing the action bears the burden of establishing that it has standing and has had standing at all times since commencement of the case. *See Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005); *see also Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) ("[I]n order to assert standing for patent infringement, the plaintiff must demonstrate that it held enforceable title to the patent at the inception of the lawsuit.") (emphasis omitted).

If the plaintiff lacks standing to sue, the case must be dismissed under 28 U.S.C. §1338(a) for lack of subject matter jurisdiction. *See Fieldturf, Inc. v. Southwest Rec. Indus., Inc.*, 357 F.3d 1266, 1268 (Fed. Cir. 2004); *see also Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*, 402 F.3d 1198, 1203 (Fed. Cir. 2005) ("In the area of patent infringement . . . if the original plaintiff lacked . . . initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing."). Ordinarily, dismissal for lack of standing is without prejudice. *See H.R. Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1385 (Fed. Cir. 2002).

## DISCUSSION

Here, I focus on the Heilman Note. The parties strenuously dispute whether the loan transaction involving the Heilman Note created a security interest, in which case the temporary assignment of rights in the '217 Application to Dr. Heilman may have been automatically extinguished upon repayment of the note; or whether, instead, the separately-executed Assignment constituted an outright assignment to Dr. Heilman of a percentage of the patent rights which, absent proof of reassignment back from Dr. Heilman, might continue today, regardless of whether the Heilman Note was ever repaid.[3] I need not decide this issue because, under either theory, McKesson must first show that the Heilman Note was repaid. The record before me does not establish this foundational fact.

McKesson points to several pieces of evidence that it believes prove that the Heilman Note was repaid in December 1990 – and, therefore, AHI possessed and sold 100% of the relevant patent rights to McKesson in 1996. On close examination, however, McKesson's evidence is equivocal at best.

First, McKesson cites an affidavit of Sean McDonald, former president of AHI. McDonald declares that "AHI timely and fully repaid the loans," including the loan evidenced by the Heilman Note. (D.I. 222, ¶ 24) McDonald, however, provides no supporting detail, such as date or method of payment, to back his assertion. This lack of specificity is important because the other party to the transaction, Dr. Heilman, has no recollection of whether the Heilman Note was ever repaid. Dr. Heilman testified at his deposition:

---

[3]There is no evidence that Dr. Heilman ever executed a reassignment back to AHI. McKesson's argument is that no formal reassignment was necessary.

> Q: Do you have any independent recollection of whether, in fact, this amount, 42,857 and 14 hundredths dollars was provided to you in some form at a closing on or about December 27, 1990?
>
> A: No.

(D.I. 223 Ex. H at 17)

More uncertainty is created by a letter McKesson emphasized during oral argument. The letter, dated January 3, 1991, is from David I. Cohen, whom McKesson insists was the attorney for both Investors, PSF and Dr. Heilman, in connection with the AHI transactions. *See* Transcript of Hearing, D.I. 308, at 59. McKesson further asserts that Cohen's letter confirms all three notes – the Heilman Note as well as the PSF June Note and PSF November Note – were repaid. (D.I. 308 at 47, 59-60, 63, 69) But the letter does not support McKesson's contentions.

The entire text of Cohen's letter is reproduced below:

> Enclosed please find the original Promissory Notes payable to the Pittsburgh Seed Fund. One Note dated November 14, 1990 is in the principal amount of $50,000.00. The other Note dated June 29, 1990 is in the principal amount of $107,142.86.
>
> These Notes were satisfied at the closing of the financing held last Thursday and you are authorized to mark the Notes cancelled and paid in full.

(D.I. 240 Ex. N at M0474908) As is immediately apparent, Cohen's letter only addresses the two PSF Notes. It does not even mention the Heilman Note; it certainly neither states nor suggests that the Heilman Note was repaid.

Cohen's letter also indicates, below the signature line, that it contains "Enclosures." Because McKesson located a copy of Cohen's letter to which all three notes were attached, it follows, according to McKesson, that all three notes were among the enclosures Cohen sent with his letter. (D.I. 308 at 60) This is not persuasive. As has already been seen, in the text of his

letter Cohen wrote "[e]nclosed please find the original Promissory Notes <u>payable to the Pittsburgh Seed Fund</u>" (emphasis added), at least strongly suggesting that the "Enclosures" were – and only were – the two PSF notes. Furthermore, as Defendants point out, the copies of the PSF notes McKesson produced with Cohen's letter are marked "CANCELLED" and "Paid In Full 12/27/90;" likewise the copy of the Heilman Note McKesson produced with Cohen's letter is marked "VOID" and "Paid 12/27/90." (D.I. 308 at 85; D.I. 240 Ex. N at M0474909-13) Cohen's letter authorized AHI to "mark the [PSF] Notes cancelled and paid in full," which strongly suggests that Cohen enclosed (as his letter states) the originals – i.e., clean, unmarked originals – and not the marked copies in the record before me. There is simply an absence of evidence as to where the copy of the Heilman Note marked "Paid 12/27/90" came from, when it was so marked, by whom, why, and with what authority.[4] In the context of all that is before me, I find that the unexplained existence of the marked copy of the Heilman Note is not enough to "affirmatively" establish repayment and, thereby, McKesson's standing. *See PFW/PBS*, 493 U.S. at 231.

This conclusion is bolstered by the lack of evidence that Cohen was even representing Dr. Heilman at the time of these transactions. Notwithstanding McKesson's assertion that Cohen was the attorney for all of the investors, when asked at his deposition whether Cohen had served as his attorney, Dr. Heilman replied, "I don't recall who the counsel was." (D.I. 223 Ex. H at 12)

It is true, as McKesson emphasizes, that at no point between January 1991 and the

---

[4] *See* D.I. 308 at 29 (Defendants' counsel explaining: "[T]he witnesses were unable to identify or remember or recollect any of the handwriting on these exhibits. . . . There is no evidence before the court as to who placed the handwriting designations on these documents, so we don't know.").

initiation of this litigation did anyone act as if he believed any portion of the patent rights were owned or controlled by Dr. Heilman. In particular, Dr. Heilman, who sat on AHI's board of directors from the time of his investment until the sale of AHI to McKesson in 1996, never asserted ownership of the patent rights; nor did he take any steps to prevent AHI from representing to McKesson that AHI owned 100% of the patent rights. However, as the record exists before me today, Dr. Heilman is refusing to disclaim his potential interest in the patent rights and, as already noted, does not recall if the Heilman Note was repaid. While it is entirely possible that the Heilman Note was repaid, it is also possible that it was not and that, instead, Dr. Heilman forgot about it or decided to forgive repayment but never formally did so (among other possibilities). Given the equivocal nature of the evidence McKesson has put before me, I do not believe that Dr. Heilman's pre-litigation conduct satisfies McKesson's burden to show the Heilman Note was repaid.

    Thus, upon weighing the evidence before me and fulfilling my obligation to make an independent determination as to whether this Court has jurisdiction to hear McKesson's infringement claim, I am not persuaded that the loan from Dr. Heilman to AHI was repaid and the Heilman Note satisfied. I therefore find that McKesson has failed to meet its burden to prove that, at the inception of this lawsuit, it was the sole owner of, and controlled all substantial rights in, the patents-in-suit. Plaintiff's standing to bring the instant suit does not affirmatively appear from the materials in the record before the Court. Therefore, I agree with Defendants that the action must be dismissed without prejudice for lack of subject matter jurisdiction.

## RECOMMENDED DISPOSITION

For the reasons set forth above I recommend that Defendants' Motion be GRANTED and that McKesson's action be dismissed without prejudice.[5]

Dated: May 30, 2008
Wilmington, Delaware

_____
The Honorable Leonard P. Stark
UNITED STATES MAGISTRATE JUDGE

---

[5] I further recommend dismissal of Defendants' Motion to Dismiss McKesson's Willfulness Allegations (D.I. 224) and Plaintiff's Motion for Leave to File a Second Amended Complaint (D.I. 272) as moot. I will address Defendants' Revised Motion for Leave to Amend their Answers and Counterclaims (D.I. 172) at a later date.