IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON AUTOMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-028 (SLR-LPS) |
| | ) | |
| SWISSLOG ITALIA S.P.A. and | ) | |
| TRANSLOGIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT TRANSLOGIC CORPORATION'S FIRST AMENDED ANSWER TO
PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIMS**

Defendant Translogic Corporation ("Translogic"), by and through its undersigned counsel, as and for its Answer to Plaintiff's First Amended Complaint (the "Amended Complaint") and for its Counterclaims, admits denies and alleges as follows:

1.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 1 of the Amended Complaint.

2.     Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 2 of the Amended Complaint.

3.     Denies allegations set forth in paragraph 3 of the Amended Complaint except admits that Translogic is a Delaware Corporation with its principal place of business at 10825 E 47th Avenue, Denver, Colorado.

4.     Denies the allegations set forth in paragraph 4 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia S.p.A. ("Swisslog Italia").

5.      Admits that the Amended Complaint refers to Swisslog Italia and Translogic collectively as "Swisslog."

6.      Admits the allegations set forth in paragraph 6 of the Amended Complaint to the extent that plaintiff alleges that this action purports to be one for patent infringement and that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7.      Admits the allegations set forth in paragraph 7 of the Amended Complaint to the extent that plaintiff alleges that venue is proper in this Court over Translogic under 28 U.S.C. §§ 1391(b) and 1400(b) and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to venue being proper with respect to defendant Swisslog Italia.

8.      Denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 8 of the Amended Complaint.

9.      Denies the allegations set forth in paragraph 9 of the Amended Complaint, except admits that Exhibit 1 to the Amended Complaint purports to be a copy of U.S. Patent No. 5,468,110 (the " '110 Patent") and refers to that patent for a true and complete statement of its contents.

10.      Denies the allegations set forth in paragraph 10 of the Amended Complaint, except admits that Exhibit 2 to the Amended Complaint purports to be a copy of U.S. Patent No. 5,593,267 (the " '267 Patent") and refers to that patent for a true and complete statement of its contents.

11.      Denies the allegations contained in paragraph 11 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

12.     Translogic repeats and realleges its previous responses to paragraphs 1 through 11 of the Amended Complaint as if fully set forth at length herein.

13.     Denies the allegations set forth in paragraph 13 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

14.     Denies the allegations contained in paragraph 14 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to defendant Swisslog Italia.

15.     Denies the allegations contained in paragraph 15 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

16.     Denies the allegations contained in paragraph 16 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

17.     Translogic repeats and realleges its previous responses to paragraphs 1 through 16 of the Amended Complaint as if fully set forth at length herein.

18.     Denies the allegations contained in paragraph 18 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

19.     Denies the allegations contained in paragraph 19 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to defendant Swisslog Italia.

20.     Denies the allegations contained in paragraph 20 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

21.     Denies the allegations contained in paragraph 21 of the Amended Complaint, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations with respect to acts alleged to have been committed by defendant Swisslog Italia.

### FIRST AFFIRMATIVE DEFENSE

22.     Translogic has not infringed, induced infringement or contributed to the infringement of any valid or enforceable claim of the '110 or '267 Patents.

### SECOND AFFIRMATIVE DEFENSE

23.     McKesson's claims are barred, in whole or in part, under one or more of the equitable doctrines of laches, waiver, estoppel and unclean hands.

### THIRD AFFIRMATIVE DEFENSE

24.     The '110 and '267 Patents are invalid, *inter alia*, in that they fail to meet one or more of the conditions for patentability set forth in 35 U.S.C. §102.

### FOURTH AFFIRMATIVE DEFENSE

25.     The '110 and '267 Patents are invalid, *inter alia*, pursuant to 35 U.S.C. §103 in that the inventions disclosed would have been obvious to a person of ordinary skill in the art at the time the inventions were made.

### FIFTH AFFIRMATIVE DEFENSE

26.     The '110 and '267 Patents are invalid for failure to comply with the requirements of 35 U.S.C. §112.

## SIXTH AFFIRMATIVE DEFENSE

27.    McKesson's claims are barred, in whole or in part, by reason of patent misuse.

## SEVENTH AFFIRMATIVE DEFENSE

28.    McKesson's claims are barred, in whole or in part, pursuant to 35 U.S.C. §287.

## EIGHTH AFFIRMATIVE DEFENSE

29.    McKesson's claims are barred, in whole or in part, under the doctrine of prosecution history estoppel because proceedings in the Patent and Trademark Office during the prosecution of the '110 and '267 Patents prevent a claim construction for those patents that could result in a finding of infringement.

## NINTH AFFIRMATIVE DEFENSE

30.    McKesson lacks standing to sue because it is not an owner, assignee or licensee of the '110 and/or '267 patents.

## TENTH AFFIRMATIVE DEFENSE

31.    Translogic incorporates by reference herein the allegations set forth in its Third Counterclaim below.  McKesson's claims are bared, in whole or in part, under the doctrine of inequitable conduct based on the intentional withholding of highly material information during the prosecution of the '110 and '267 patents (collectively "the patents-in-suit") by named inventors of these patents, as well as others involved in the prosecution of these patents.  Such information includes, *inter alia*, prior art sales, offers for sale, demonstrations and printed publications more than one year before the purported priority date (*i.e.,* January 24, 1990) of the patents-in-suit.  Upon information and belief, these prior art sales, offers for sale, demonstrations and printed publications were material to patentability and were intentionally withheld from the United States Patent and Trademark Office ("the Patent Office") during prosecution of the

patents-in-suit.

## OTHER AFFIRMATIVE DEFENSES

32.     Translogic reserves the right to assert all additional affirmative defenses under Fed. R. Civ. P. 8(c), the Patent Laws of the United States and any other legal or equitable defenses that may now exist or in the future be available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS

## JURISDICTION AND VENUE

33.     Jurisdiction and venue over Translogic's counterclaims are proper pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 1391, 2201 and 2202.

## THE PARTIES

34.     Counterclaim plaintiff Translogic Corporation ("Translogic") is a Delaware Corporation with its principal place of business at 10825 E 47th Avenue, Denver, Colorado.

35.     Upon information and belief, Counterclaim Defendant McKesson Automation, Inc. ("McKesson"), is a Pennsylvania Corporation, with a principal place of business at 500 Cranberry Woods Drive, Cranberry Township, PA 16066.

## FACTS COMMON TO ALL COUNTERCLAIMS

### Introduction

36.     McKesson manufactures centralized robotic systems for automating the dispensing of medications in and from hospital pharmacies ("hospital pharmacy automation systems"). McKesson markets and distributes its system to hospitals throughout the United States from its main facilities in Cranberry Township, Pennsylvania

37.     Swisslog Italia manufactures a competing hospital pharmacy automation system. In 2002, Swisslog Italia, through its United States distributor – Translogic (collectively

"Defendants") – began selling and offering for sale in the United States Defendants' hospital pharmacy automation system.

38.     On January 13, 2006, McKesson filed a complaint against Defendants alleging that sales of Defendants' system in the United States infringed the '110 patent and the '267 patent. Defendants filed their Answers and Counterclaims on March 15, 2006.  A First Amended Complaint was filed on July 3, 2006 to name proper parties, and Defendants answered this complaint on July 5, 2006.

39.     Almost immediately after Defendants began selling their hospital pharmacy automation system in the United States, McKesson implemented  a systematic marketing and sales campaign designed to prevent Defendants from gaining a foothold in the United States market. This campaign was pervasive and consisted mostly of conduct that was (and continues to be) in violation of Delaware and United States anti-trust and unfair competition laws.

40.     McKesson's illegal and anti-competitive activities have caused (and continue to cause) Defendants, as well as the market for hospital pharmacy automation systems, great economic harm.   These activities have not only crippled Defendants' ability to compete meaningfully with McKesson in the United States, but have also created artificial barriers to entry that have reduced competition and, in so doing, threaten to keep prices for hospital pharmacy automation systems artificially high.

### Relevant Market and McKesson's Economic Power

41.     McKesson and Defendants manufacture centralized robotic systems for automating the dispensing of medications in and from hospital pharmacies. The relevant market is the market for centralized hospital pharmacy automation systems ("hospital pharmacy automation systems"), which automate the dispensing of medications from a hospital pharmacy.

42.     Hospital pharmacy automation systems are sold by McKesson and Defendants to hospital pharmacies nationwide.   The relevant geographic market for a hospital pharmacy automation systems is the United States national market.

43.     McKesson holds a dominant position in the national market for hospital pharmacy automation systems.   Upon information and belief, in excess of 80% of hospital pharmacy automation systems sold or leased in the United States are sold or leased by McKesson or its dealers and suppliers.

### Facts Giving Rise To Translogic's Claims

44.     McKesson has engaged in a systematic campaign to maintain its monopoly in the U.S. national market for hospital pharmacy automation systems.

45.     McKesson has engaged in predatory pricing activities by selling and offering products to customers at reduced prices in order to prevent the sale of Defendants' products to U.S. customers.  Upon information and belief, on at least one occasion, McKesson's system was offered to a hospital customer for free in the form of a "$0 lease for seven years" in an attempt to block an imminent sale of Defendants' system to that hospital.

46.     Upon information and belief, McKesson provided its sales force with false and misleading information about the capabilities of both its own and Defendants' hospital pharmacy automation systems.  This false and misleading information was then provided to customers by McKesson's sales personnel in order to create a barrier to entry to Defendants and other prospective competitors in the relevant market.

47.     Upon information and belief, this false and misleading information includes, but is not limited to, false and misleading information concerning (i) the financial viability and credit worthiness of Defendants; (ii) the existence of a new hospital pharmacy automation system of McKesson's that never actually existed; (iii) the capacity and throughput of McKesson's hospital

pharmacy automation system; (iv) the capacity and throughput of Defendants' hospital pharmacy automation system; (v) the reliability of Defendants' products, (vi) the mechanical complexity of Defendants' hospital pharmacy automation system; (vii) the cost of Defendants' hospital pharmacy automation system and associated equipment; and (viii) maintenance requirements of Defendants' hospital pharmacy automation system.

48.    Upon information and belief, McKesson also entered into valuable monopolistic sole-source agreements to further enhance its monopoly position in the hospital pharmacy automation market.  Upon information and belief, these sole-source agreements contractually require more than 200 customers to purchase certain equipment from McKesson, and prohibit these customers from purchasing products from McKesson's competitors, including Defendants.

49.    The sole-source agreements entered into by McKesson constitute an unreasonable restraint of trade, and the hundreds of hospitals contractually prohibited from purchasing from McKesson's competitors constitute a substantial share of the United States national market for hospital pharmacy automation systems.

50.    Upon information and belief, McKesson has also purposely refused to enable its products to interface with Defendants' hospital pharmacy automation systems, despite customers' repeated requests for such capability and despite McKesson's almost complete monopoly in the hospital pharmacy automation market.

### Anti-Competitive And Other Injury

51.    McKesson's marketing and sales campaign appears to have been designed and implemented for the sole purpose of keeping competitors, such as Defendants, out of the market for hospital pharmacy automation systems.

52.    This campaign constitutes a significant barrier to entry for all entrants into this market, including Defendants.

53.    McKesson's illegal activities have reduced – if not eliminated – competing products which have resulted in artificially higher prices due to the non-existence of competition.

54.    McKesson's activities have crippled Defendants' ability to compete meaningfully with McKesson in the United States. Indeed, upon information and belief, McKesson's anti-competitive activities have led to the loss of at least one United States sale of Defendants' hospital pharmacy automation system.

## FIRST COUNTERCLAIM
### (Declaratory Judgment of Invalidity)

55.    Translogic repeats and realleges the responses and allegations in paragraphs 1 through 54 above as if fully set forth at length herein.

56.    All of the claims of the '110 and '267 Patents are invalid for failure to meet one or more of the conditions of patentability of inventions set forth in 35 U.S.C. §§101, 102, 103 and/or 112.

57.    By reason of the foregoing, Translogic is entitled to an entry of judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring the '110 and '267 Patents invalid.

## SECOND COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement)

58.    Translogic repeats and realleges the responses and allegations in paragraphs 1 through 57 above as if fully set forth at length herein.

59.    Translogic has not infringed nor is infringing any valid or enforceable claim of the '110 or '267 Patents.

60.    By reason of the foregoing, Translogic is entitled to an entry of judgment pursuant to 28 U.S.C. §§2201 and 2202 declaring the '110 and '267 Patents not infringed.

## THIRD COUNTERCLAIM
### (Unenforceability Due To Inequitable Conduct)

61.     Translogic repeats and realleges the responses and allegations in paragraphs 1 through 60 above as if fully set forth at length herein.

62.     The '110 and '267 patents were procured through inequitable conduct.  Upon information and belief, the named inventors of the '110 and '267 patents and/or persons having a duty of candor in connection with the prosecution of these patents withheld material prior art sales and demonstrations of embodiments of the '110 and '267 patents from the Patent Office with an intent to deceive.

63.     The '110 and '267 patents are directed to hospital pharmacy automation systems and were originally assigned to AHI, which was acquired by McKesson in 1996.  Each of these patents claims priority to U.S. Patent App. No. 469,217, filed on January 24, 1990.

64.     AHI – McKesson's predecessor in interest and original assignee of the patents-in-suit – developed hospital pharmacy automation systems embodying one or more claims of the patents-in-suit.

65.     Upon information and belief, Sean McDonald (founder and former President and CEO of AHI and a named inventor of the '110 and '267 patents) and Philip Keys (co-founder and former Vice President of Marketing of AHI) publicly demonstrated AHI's hospital pharmacy automation systems in the United States before January 24, 1989.  On at least one occasion, for example, such a system was demonstrated in Pennsylvania by Messrs. McDonald and Keys to the pharmacy staff at Presbyterian Hospital, faculty of the University of Pittsburgh School of Pharmacy and members of the Management Services department at Presbyterian Hospital. A prototype of such a system was also kept at Casey Industrial Park, Pennsylvania, and publicly demonstrated to third parties on numerous occasions before January 24, 1989.

66.     Upon information and belief, written business plans describing AHI's hospital pharmacy automation systems were made publicly available by Messrs. McDonald and Keys to third parties without confidentiality agreements before January 24, 1989.  Upon information and belief, AHI's business plans were routinely distributed to potential investors in an effort to help raise money for AHI's initial business dealings.   These written business plans describe the functionality of hospital pharmacy automation systems being developed by AHI at the time.

67.     Employees of AHI, including Messrs. McDonald and Keys, sold and/or offered hospital pharmacy automation systems for sale in the United States before January 24, 1989 to at least Presbyterian Hospital and/or the University of Pittsburgh at a reduced prices in consideration for their participation as alpha demonstration sites.   As alpha demonstration sites, Presbyterian Hospital and/or the University of Pittsburgh would, *inter alia*, showcase AHI's hospital pharmacy automation systems to other potential buyers of AHI's systems. [Keys 4, at M0188753-754].

68.     Upon information and belief, the hospital pharmacy automation systems described in AHI's public business plans, demonstrated, sold and offered for sale by AHI in the United States before January 24, 1989 were embodiments of the patents-in-suit and performed substantially all of the functionality of AHI's commercial Automated Pharmacy Station ("APS"), which is also an embodiment of the patents-in-suit.  The public business plans, demonstrations, sales and offers for sale constitute 35 U.S.C. § 102(b) prior art against the patents-in-suit, were not cumulative of other prior art made available to the Patent Office and were highly material to patentability of the '110 and '267 patents.

69.     Although Mr. McDonald signed a declaration during prosecution of the patents-in-suit acknowledging his duty to disclose material information to the Patent Office, upon

information and belief, at no point during the prosecution of the patents-in-suit did Mr. McDonald or anyone else involved with the prosecution of the patents-in-suit disclose to the Patent Office the prior art business plans, demonstrations, sales and offers for sale of AHI's hospital pharmacy automation systems. Upon information and belief, the failure to disclose this information was intentional and was made with an intent to deceive the Patent Office in violation of the duty of good faith and candor.

70.    Based on at least the foregoing, the '110 and '267 patents were procured through inequitable conduct and with an intent to deceive the Patent Office. Translogic is, therefore, entitled to an entry of judgment pursuant to 28 U.S.C. §§ 2201, 2202 declaring the '110 and '267 patents to be unenforceable.

### FOURTH COUNTERCLAIM
(Unfair Competition under Delaware Law)

71.    Translogic repeats and realleges the responses and allegations in paragraphs 1 through 70 above as if fully set forth at length herein.

72.    On information and belief, McKesson has unlawfully and oppressively brought this action against Translogic, alleging infringement of the '110 and '267 Patents by Translogic with the knowledge and belief that these Patents are invalid, unenforceable and/or not infringed by Translogic's products, and with the intent to injure Translogic.

73.    The aforesaid actions of McKesson offend established public policy and are oppressive, unscrupulous and substantially injurious to consumers.

74.    As a direct and proximate result of McKesson's aforesaid actions, Translogic has suffered and will continue to suffer irreparable harm for which it has no adequate remedy at law.

75.    These acts constitute unfair competition by McKesson against Translogic.

76.    Translogic has have been substantially damaged, in an amount to be determined, by McKesson's illegal and/or improper activities.

### FIFTH COUNTERCLAIM
(Sherman Act § 2, 15 U.S.C. § 2 – Sham Litigation)

77.    Translogic repeats and realleges the allegations in paragraphs 1 through 76 above as if fully set forth at length herein.

78.    This is a claim for willful, intentional and improper maintenance of a monopoly in a relevant market in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

79.    The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

80.    The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

81.    Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

82.    Through the willful and intentional sham assertion of the '110 and '267 Patents, McKesson has intentionally, improperly and illegally sought to maintain that monopoly by barring entry of competitors to the hospital pharmacy automation systems market, a natural consequence of its actions.

83.    Sham assertion in litigation is tested first by an objective standard, applied at the time McKesson filed its Amended Complaint, as to whether the claim is objectively baseless.  If the claim is objectively baseless, the second test focuses on whether the baseless claims conceal an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process as an anti-competitive weapon.

84.     A first objectively baseless aspect to McKesson's sham patent infringement suit is that the patents as construed and asserted by McKesson against Translogic are clearly invalid because they directly read on the prior art.  A reasonable litigant would not realistically expect success based on this suit.

85.     A second objectively baseless aspect to McKesson's sham patent infringement suit is that because of the literal words of the asserted claims and McKesson's own admissions to the Patent Office during prosecution of the '110 and '267 Patents, the Translogic products accused of infringing cannot objectively infringe the claims.   An objective litigant could not conclude that this assertion is reasonably calculated to elicit a favorable anticompetitive outcome without results.

86.     These sham assertions by McKesson constitute intentional, willful and improper efforts by McKesson to maintain its monopoly power in the automated drug systems market, and not as a consequence of a superior product embodying the patents-in-suit.  McKesson, without regard to whether its lawsuit has merit, raises these sham assertions with a specific and improper intent to bar Translogic from the automated drug systems market.  These baseless assertions attempt to conceal efforts by McKesson to interfere directly with the business relationships of competitors such as Translogic using the judicial process as an anticompetitive weapon.

87.     McKesson's sham assertions of damages on patents that are invalid and not infringed have a chilling effect on competitors such as Translogic as a new entrant to the hospital pharmacy automation systems market.  Because of the small volume of sales by Translogic of products accused of infringement, the cost of defending against McKesson's sham assertions represent a very real barrier to Translogic's continued and future entry into the hospital pharmacy automation systems market.  Upon information and belief, McKesson's actions have

lessened competition in the marketplace and have caused prices for these automated drug distribution systems in the United States to remain artificially high.

88.    Translogic has been proximately harmed by McKesson's sham assertions in that it has been forced to incur attorneys fees and costs to defend against McKesson's infringement claims.

89.    The market in the United States for automated drug systems has suffered anti-trust injury as a result of McKesson's actions.

90.    Translogic may be harmed in the future by the chilling effect of McKesson's sham assertions on Translogic's bidding for new business in the hospital pharmacy automation systems market in competition with McKesson.

### SIXTH COUNTERCLAIM
(Sherman Act § 2, 15 U.S.C. § 2 – Illegal Monopoly in
Hospital Pharmacy Automation Market)

91.    Translogic repeats and realleges each and every allegation set forth in paragraphs 1 through 90 above as if fully set forth at length herein.

92.    The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

93.    The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

94.    Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

95.    McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the

relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, entering into sole-source agreements that contractually prohibit hundreds of customers from purchasing products from competitors, and refusing to permit compatibility between McKesson's products and those of Defendants.

96.    The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

97.    The foregoing acts and practices have also directly and proximately caused Translogic harm in the marketplace. Translogic's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

98.    As a result of the foregoing acts, Translogic has been injured in an amount not less than $10,000,000.00;

99.    Unless these activities are enjoined, Translogic will continue to suffer injury for which it has no adequate remedy at law.

### SEVENTH COUNTERCLAIM
(Sherman Act § 1, 15 U.S.C. § 1 – Illegal Anti-Competitive Contract in
Hospital Pharmacy Automation Market)

100.    Translogic repeats and realleges each and every allegation set forth in paragraphs 1 through 99 above as if fully set forth at length herein.

101.    The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

102.    The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

103.    Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

104.    McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets.  McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

105.    McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants.  These hospitals constitute a substantial share of the United States national market for hospital pharmacy automation systems.  The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

106.    The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant

market.  Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants.  These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market.  If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

107.    The foregoing acts and practices have also directly and proximately caused Translogic harm in the marketplace.  Translogic's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

108.    As a result of the foregoing acts, Translogic has been injured in an amount not less than $10,000,000.00;

109.    Unless these activities are enjoined, Translogic will continue to suffer injury for which it has no adequate remedy at law.

### EIGHTH COUNTERCLAIM
(Clayton Act § 3, 15 U.S.C. § 14 – Illegal Anti-Competitive Contract in
Hospital Pharmacy Automation Market)

110.    Translogic repeats and realleges each and every allegation set forth in paragraphs 1 through 109 above as if fully set forth at length herein.

111.    The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

112.    The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

113.    Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

114.   McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets. McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

115.   McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants. These hospitals constitute a substantial share of the United States national market for hospital pharmacy automation systems. The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

116.   The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market. Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants. These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market. If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

117.    The foregoing acts and practices have also directly and proximately caused Translogic harm in the marketplace.  Translogic's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

118.    As a result of the foregoing acts, Translogic has been injured in an amount not less than $10,000,000.00;

119.    Unless these activities are enjoined, Translogic will continue to suffer injury for which it has no adequate remedy at law.

### NINTH COUNTERCLAIM
(6 Del. C. § 2103 – Illegal Anti-Competitive Contract in
Hospital Pharmacy Automation Market)

120.    Translogic repeats and realleges each and every allegation set forth in paragraphs 1 through 119 above as if fully set forth at length herein.

121.    The relevant market for Translogic's antitrust claim is the market for hospital pharmacy automation systems.

122.    The geographic market for these systems is the United States because, *inter alia*, such systems made by McKesson are used or sold throughout the United States.

123.    Upon information and belief, McKesson possesses monopoly power in the relevant product and geographic markets, as shown by their market share in excess of 80%.

124.    McKesson has willfully and wrongfully maintained and abused its monopoly power through anti-competitive and exclusionary behavior directed at Defendants and other competitors, including anti-competitive behavior designed to exclude all competitors in the relevant product and geographic markets.  McKesson's anti-competitive behavior includes, but is not limited to, predatory pricing, providing false and misleading information to customers about

the capabilities and weaknesses of McKesson's products and those of Defendants, and refusing to permit compatibility between McKesson's products and those of Defendants.

125.    McKesson's anti-competitive and exclusionary behavior also included entering into monopolistic sole-source agreements that contractually prohibit hundreds of potential customers, *i.e.* hospitals, from purchasing products from McKesson's competitors, including Defendants.  These hospitals constitute a substantial share of the United States national market for hospital pharmacy automation systems.  The sole source agreements, therefore, constitute and unreasonable restraint on trade and competition.

126.    The foregoing acts and practices have directly and proximately caused injury to the relevant market as a whole by harming consumers and reducing competition in the relevant market.  Among other things, McKesson's acts constitute a significant barrier to entry for all entrants into this market, including Defendants.  These acts have reduced – if not eliminated – competing products and have resulted in artificially high prices for products sold into the relevant market.  If McKesson is allowed to continue violating the anti-trust laws, as they have been, McKesson's acts will continue to harm the relevant market and reduce competition, all of which will adversely impact prices, and thus consumers, in the relevant market.

127.    The foregoing acts and practices have also directly and proximately caused Translogic harm in the marketplace.  Translogic's injury is of the type the antitrust laws are intended to prevent and thus constitute antitrust injury.

128.    As a result of the foregoing acts, Translogic has been injured in an amount not less than $10,000,000.00;

129.    Unless these activities are enjoined, Translogic will continue to suffer injury for which it has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Translogic prays that a judgment be entered:

A.   Dismissing the Amended Complaint herein with prejudice and entering judgment in favor of Translogic thereon;

B.   Declaring that Translogic has not and does not infringe any claims of the '110 and '267 Patents;

C.   Declaring that each and every claim of the '110 and '267 patents is invalid;

D.   Declaring that each and every claim of the '110 and '267 patents is unenforceable due to inequitable conduct;

E.   Declaring that McKesson's claims against Translogic are barred, in whole or in part, under one or more of the equitable doctrines of laches, waiver, estoppel and unclean hands;

F.   Declaring that McKesson's claims against Translogic are barred, in whole or in part, by reason of patent misuse;

G.   Declaring that the '110 and '267 Patents are unenforceable against Translogic because of antitrust misuse;

H.   Permanently enjoining and restraining McKesson, its officers, employees, agents and all persons in active concert or participation with McKesson from asserting that Translogic's products and/or business activities constitute an infringement of the '110 and '267 Patents, and from any and all acts giving rise to Translogic's counterclaims;

I.   Adjudging this to be an exceptional case and awarding Translogic its reasonable attorney's fees pursuant to 35 U.S.C. § 285 and costs of suit;

J.   Declaring that McKesson is in violation of the antitrust laws;

K.   Permanently enjoining and restraining McKesson, including their officers, agents, servants, employees and attorneys and all those in active concert or participation with

McKesson, from engaging in any ant-trust, anti-competitive and/or other conduct that restrains competition in the United States market for hospital pharmacy automation systems;

  L. Awarding Translogic attorneys' fees, enhanced damages and costs as a result of McKesson's anti-trust violations;

  M. Awarding Translogic compensatory damages based on McKesson's anti-trust violations in an amount not less than $10,000,000.00 and no less than treble damages under 15 U.S.C. § 15, the exact amount to be determined at trial;

  N. Awarding Translogic damages incurred as a result of McKesson's unfair competition;

  O. Awarding Translogic punitive and enhanced damages as a result of McKesson's conduct;

  P. Awarding Translogic such other and further relief as the Court may deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney (#3052)*

---

Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jheaney@mnat.com
 *Attorneys for Defendant*
 *Translogic Corporation*

OF COUNSEL:

Alfred R. Fabricant
Lawrence C. Drucker
Richard LaCava
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 277-6500

June 13, 2008
1255688

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on June 13, 2008 I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

Dale R. Dubé, Esquire
Blank Rome LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on June 13, 2008 upon the following individuals in the manner indicated

**BY E-MAIL**

Dale R. Dubé, Esquire
Blank Rome LLP
Chase Manhattan Centre
1201 Market Street, Suite 800
Wilmington, DE 19801

Blair M. Jacobs, Esquire
Sutherland Asbill & Brennan LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004

*/s/ Julia Heaney (#3052)*
_____
Julia Heaney (#3052)
jheaney@mnat.com