IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MCKESSON AUTOMATION, INC.<br>a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>TRANSLOGIC CORPORATION<br>a Delaware Corporation, and<br><br>SWISSLOG ITALIA S.P.A.<br>an Italian Corporation,<br><br>Defendants. | Civil Action No. 06-028 (MPT) |

**PLAINTIFF MCKESSON AUTOMATION'S
TWELFTH NOTICE OF DEPOSITION PURSUANT TO
FED. R. CIV. P. 30(B)(6) DIRECTED TO DEFENDANT SWISSLOG**

Please take notice that on July 22, 2008 beginning at 10:00 A.M., at the offices of Sutherland Asbill & Brennan, Grace Building, 1114 Avenue of the Americas, 40th Floor, New York, New York, 10036, or such other time and place as may be agreed to by counsel, Plaintiff McKesson Automation Inc. ("McKesson") will take the deposition of the witness(es) designated by Swisslog Italia S.p.A. ("Swisslog") to testify on its behalf as the persons most competent to testify on the topics listed in Schedule A pursuant to Fed. R. Civ. P. 30(b)(6). The person(s) designated by Swisslog must be prepared to testify as to such matters known or reasonably available to Swisslog.

Counsel for Swisslog are requested to provide to McKesson's counsel in writing, at least five (5) business days in advance of the deposition, the name and employment position of each

designee testifying on behalf of Swisslog together with a list of the categories on which each designee will provide testimony.

The deposition will take place upon oral examination pursuant to Rules 26 and 30 of the Federal Rules of Civil Procedure before an official authorized by law to administer oaths, and shall continue from day to day until completed. Pursuant to Rule 30(b)(2), testimony of the witness may be recorded by stenographic means, sound-and-visual means, or both.

Pursuant to Rule 30(b)(5) of the Federal Rules of Civil Procedure, McKesson requests that no later than seven (7) days prior to the deposition or at such other time as may be agreed to by the parties, Swisslog produce the documents and things that respond to the requests set forth in Schedule B, to the extent such documents and things have not already been produced in this litigation by Swisslog.

Counsel for Translogic and Swisslog Italia are invited to attend and cross-examine.

DATED: June 30, 2008

/s/ Dale R. Dubé
Dale R. Dubé (#2863)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Tel: (302) 425-6472
Fax: (302) 425-6464

Blair M. Jacobs
Robert A. Gutkin
Christina A. Ondrick
Christopher L. May
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 383-0100
Fax: (202) 637-3593

*Counsel for Plaintiff*
*McKesson Automation, Inc.*

## DEFINITIONS AND INSTRUCTIONS

1. "Translogic" shall mean (a) Translogic Corporation, (b) any of its divisions, departments, and other organizational or operating units, (c) all predecessor or successor companies or corporations, (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control or affiliated, in any manner, with Translogic Corporation or its affiliated companies and (e) each of the present and former officers, directors, employees, agents, attorneys, or other representatives of Translogic Corporation.

2. "Swisslog" shall mean (a) Swisslog Italia S.p.A., (b) any of its divisions, departments, and other organizational or operating units, (c) all predecessor or successor companies or corporations, (d) all companies, corporations, partnerships, associations, or other business entities which are or have been under common ownership or control or affiliated, in any manner, with Swisslog Italia S.p.A. or its affiliated companies and (e) each of the present and former officers, directors, employees, agents, attorneys, or other representatives of Swisslog Italia S.p.A.

3. "McKesson" means McKesson Automation, Inc. and all partnerships, joint ventures, predecessors and successors and assigns of or involving each of the forgoing, including Automated Healthcare, Inc., and all past or present directors, officers, employees, agents, consultants, independent contractors, representatives, subcontractors and attorneys of such persons or entities.

4. The term "hospital pharmacy automation system" means (i) any of the Swisslog/Translogic automated drug management and/or storage systems for pharmacies and all versions, components, or prototypes thereof including, but not limited to, BoxStation, AutoBox,

Box Picker, PillPicker, AutoPhial, PhialBox, DrugNest, FillBox, PickReturn, PickRing and any other component, product or system used in conjunction with the aforementioned products or systems as part of an automated drug management or storage system and (ii) McKesson's Robot-Rx® automated drug management and storage system for pharmacies. PillPick includes, but is not limited to, the products, systems and components identified on the Swisslog website at, for example, http://www.swisslog.com/internet/hcs/hcs/adms/05.pdf and http://www.swisslog.com/hcs-index/hcs-systems/hcs-pharmacy/hcs-pharmacycomponents.htm. Further, as used herein, PillPick System is meant to include any combination of products, systems or components that can form a PillPick System.

5. "Automated drug management and/or storage system" means automated storage and retrieval systems, which are automated robotic systems for sorting, storing and retrieving items.

6. "Person" or "persons" means any natural person, any firm, any organization or business entity, whether individual or proprietorship, joint venture, partnership, corporation, association or otherwise, or any governmental entity or any agent, department, bureau or other legal subdivision thereof.

7. "Document" has the full meaning ascribed to it in Rule 34 of the Federal Rules of Civil Procedure, and includes the original, and every copy which differs in any way from the original, of any written, recorded, or graphic matter in any and all media however produced or reproduced, including papers, films, magnetic tapes or storage devices, ROMs, EPROMs, and all other methods for the expression or retention of information.

8. The words "and," "or" and "any" are intended to be construed as necessary to bring within the scope of these requests for production any information which otherwise might be construed to be outside of the scope of any of them.

9. The words "all" and "each" shall be construed as all and each.

10. The use of the singular form of any word includes the plural and vice versa.

11. As used herein, the word "relate" or the phrase "refer or relate to" and variants thereof are intended to mean referring to, pertaining to, concerning, regarding, having any relationship to, describing, evidencing, or constituting evidence of, in whole or in part, the referenced matter.

12. When referring to a person, "identify," "to identify" or "identification of" means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

## SCHEDULE A

1. All facts known by Swisslog supporting Swisslog's assertion in ¶ 39 of the First Amended Answer that "McKesson implemented a systematic marketing and sales campaign designed to prevent Defendants from gaining a foothold in the United States market."

2. All facts known by Swisslog supporting Swisslog's assertion in ¶ 45 of the First Amended Answer that "McKesson has engaged in predatory pricing activities by selling and offering products to customers at reduced prices in order to prevent the sale of Defendants' products to U.S. customers."

3. All facts known by Swisslog supporting Swisslog's assertion in ¶¶ 46-47 of the First Amended Answer that "McKesson provided its sales force with false and misleading information about the capabilities of both its own and Defendants' hospital pharmacy automation systems," including but not limited to information concerning "(i) the financial viability and credit worthiness of Defendants; (ii) the existence of a new hospital pharmacy automation system of McKesson's that never actually existed; (iii) the capacity and throughput of McKesson's hospital pharmacy automation system; (iv) the capacity and throughput of Defendants' hospital pharmacy automation system; (v) the reliability of Defendants' products; (vi) the mechanical complexity of Defendants' hospital pharmacy automation system; (vii) the cost of Defendants' hospital pharmacy automation system and associated equipment; and (viii) maintenance requirements of Defendants' hospital pharmacy automation system."

4. All facts known to Swisslog supporting Swisslog's assertion in ¶ 50 of the First Amended Answer that "McKesson has also purposely refused to enable its products to interface with Defendants' hospital pharmacy automation systems, despite customers' repeated requests

for such capability and despite McKesson's almost complete monopoly in the hospital pharmacy automation market."

5. All facts known to Swisslog supporting Swisslog's assertion in ¶ 54 of the First Amended Answer that "upon information and belief, McKesson's anticompetitive activities have led to the loss of at least one United States sale of Defendants' hospital pharmacy automation system."

6. All facts known by Swisslog supporting Swisslog's assertion in ¶ 87 of the First Amended Answer that "the cost of defending against McKesson's sham assertions represent a very real barrier to Swisslog's continued and future entry into the hospital pharmacy automation market."

7. All facts known to Swisslog supporting Swisslog's assertion in ¶ 87 of the First Amended Answer that "McKesson's actions have lessened competition in the marketplace and have caused prices for these automated drug distribution systems in the United States to remain artificially high."

8. All facts known to Swisslog supporting Swisslog's assertion in ¶ 95 of the First Amended Answer that McKesson has "provid[ed] false and misleading information to customers about the capabilities and weaknesses of McKesson's products and those of Defendants."

9. All facts known to Swisslog supporting Swisslog's assertion in ¶ 95 of the First Amended Answer that McKesson has "enter[ed] into sole-source agreements that contractually prohibit hundreds of customers from purchasing products from competitors."

10. All facts relating to Swisslog's offering of sole-source agreements to its customers, and the identities of any customers to whom Swisslog offered sole-source agreements.

11.   All facts relating to any sole-source agreements between Swisslog and its customers.

12.   All facts concerning McKesson communicated by Swisslog employees to customers or potential customers of hospital pharmacy automation systems, including but not limited to facts concerning McKesson's hospital pharmacy automation systems.

13.   All facts concerning McKesson communicated by Swisslog to Swisslog employees, including but not limited to facts concerning McKesson's hospital pharmacy automation systems.

14.   All facts related to the interfacing of Defendant's hospital pharmacy automation system with third party products.

15.   All facts known to Swisslog supporting Swisslog's assertion in ¶ 96 that consumers have been harmed by McKesson's actions.

16.   All facts known to Swisslog supporting Swisslog's assertion in ¶ 106 that "McKesson's acts constitute a significant barrier to entry for all entrants into the [hospital pharmacy automation] market."

17.   All facts known to Swisslog concerning any routine sales practices in the hospital pharmacy automation industry.

18.   Attempts by Swisslog to enter into sole source or multi-source agreements with group purchasing organizations in the United States.

19.   Attempts by Swisslog to sell or offer to sell the PillPick System to hospitals that are members of group purchasing organizations in the United States.

124402.00601/40175506v.1

20. All facts known to Swisslog regarding attempts by Cardinal Health to enter into sole source or multi-source agreements with group purchasing organizations for the PillPick System.

21. All facts known to Swisslog regarding attempts by Cardinal Health to sell or offer to sell the PillPick System to hospitals that are members of group purchasing organizations in the United States.

22. All facts relating to Swisslog's inequitable conduct counterclaim.

## **SCHEDULE B**

1.      All documents that relate to any matter set forth in Schedule A.

2.      All documents that the witness(es) may or will rely upon to provide information known or reasonably available to Swisslog relating to the matters set forth in Schedule A.

3.      All documents that the witness(es) consulted, reviewed or referred to in preparing to testify.

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of June, 2008, I served by hand delivery and electronic filing PLAINTIFF MCKESSON AUTOMATION'S TWELFTH NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(B)(6) DIRECTED TO DEFENDANT SWISSLOG, using CM/ECF, which will send notification of such filing to the following:

> Julia Heaney, Esquire
> MORRIS, NICHOLS ARSHT & TUNNELL
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899

I also certify that, on this 30th day of June, 2008, I served the aforementioned document, by Facsimile and First Class Mail to the following participants:

> Lawrence C. Drucker, Esquire
> Alfred R. Fabricant, Esquire
> Richard LaCava, Esquire
> Bryan N. DeMattio, Esquire
> DICKSTEIN SHAPIRO LLP
> 1177 Avenue of the Americas
> New York, NY 10036

*Dale R. Dubé*
Dale R. Dubé  (I.D. No. 2863)

124402.00601/40175506v.1