IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MCKESSON AUTOMATION, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-028 (SLR/LPS) |
| | ) | |
| SWISSLOG ITALIA S.P.A. and | ) | |
| TRANSLOGIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

### FIRST REVISED JOINT CLAIM CONSTRUCTION STATEMENT

Pursuant to Magistrate Judge Stark's Order in this case, dated June 5, 2008, Plaintiff and Defendants submit the following list of agreed upon and disputed claim terms or phrases appearing in the asserted claims of U.S. Patent Nos. 5,468,110 ("the '110 patent), and the 5,593,267 ("the '267 patent").  The parties agree that all claim terms not identified herein are not in dispute and, therefore, do not require construction. By proposing constructions for claim terms, agreeing with Plaintiff on constructions of claim terms, and/or accepting constructions of claim terms proposed by Plaintiff, Defendants do not waive and reserve all rights with respect to any invalidity contention outlined in Defendants' Fourth Revised Prior Art and Invalidity Statement, except that Defendants agree not to base any invalidity contention under 35 U.S.C. section 112 on the language of a construction of a claim term that was previously proposed by Plaintiff and accepted herein by Defendants.

The parties filed their Joint Claim Construction Statement previously on June 16, 2008.  Defendants believe that the recent Federal Circuit case of *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co. Ltd.*, 521 F.3d 1351 (Fed. Cir. April, 2008), attached hereto as Exhibit A, necessitated the filing of the instant Revised Joint Claim Construction Statement, which Plaintiff

does not oppose.  Defendants believe *O2 Micro* requires a Court to construe a disputed term even if the Court believes that the term should be given its plain and ordinary meaning.  For this reason, the parties have revised their constructions herein to provide the plain and ordinary meaning construction of terms that are in dispute and which were identified previously by at least one party as not requiring construction.

| | |
|---|---|
| BLANK ROME LLP | MORRIS, NICHOLS ARSHT & TUNNELL LLP |
| */s/ Dale R. Dubé (#2863)* | */s/ Julia Heaney (#3052)* |
| Dale R. Dubé (#2863) | Julia Heaney (#3052) |
| 1201 N. Market Street | 1201 N. Market Street |
| Suite 800 | P.O. Box 1347 |
| Wilmington, DE 19801 | Wilmington, DE 19801 |
| (302) 425-6400 | (302) 351-9221 |
| dube@blankrome.com | jheaney@mnat.com |
| | |
| Blair M. Jacobs | Alfred Fabricant |
| Robert A. Gutkin | Lawrence Drucker |
| Christina A. Ondrick | Richard LaCava |
| SUTHERLAND ASBILL & BRENNAN LLP | Bryan DeMatteo |
| 1275 Pennsylvania Ave., N.W. | DICKSTEIN SHAPIRO LLP |
| Washington, DC 20004 | 1177 Avenue of the Americas |
| | New York, NY 10036 |
| *Attorneys for Plaintiff McKesson Automation, Inc.* | *Attorneys for Defendants Swisslog Italia S.p.A. and Translogic Corporation* |

July 31, 2008
2431650

**U.S. PATENT NO 5,468,110**

| CLAIM TERM | CLAIM | AGREED UPON CONSTRUCTION |
|---|---|---|
| package holding means | 1, 8 | The disclosed function is the holding of packages. The corresponding structures are the rods, brackets, shelves and dividers as disclosed at positions 30, 25, 29 and 31 of, e.g., FIG. 3-6, and col. 5, lines 10-19 and 25-40. |
| means for moving the automated picking means to selected storage locations | 1 | The disclosed function is moving the automated picking means to the selected storage locations. The corresponding structure is a vehicle that travels over a track, and is driven by a drive system including a motor, as disclosed at col. 5, line 49 – col. 6, line 2 and Fig. 6. |
| means for moving the picking means over the track | 22 | The disclosed function is moving the picking means over the track. The corresponding structure is the drive system including a motor disclosed at col. 5, line 52-55 and FIG. 6. |

| CLAIM TERM | CLAIM | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION |
|---|---|---|---|
| x,y coordinate/ x,y coordinate location | 1 | one or more points that designates the position of a package where the picking means selects, grabs and replaces packages.[1] | plain and ordinary meaning – *i.e.*, a location identifier, in which X designates a position of the location along an X-Axis and Y designates a position of the location along a Y-Axis. |

---

[1] During the meet and confer on June 12-13, 2008 regarding the Joint Claim Construction Statement, Plaintiff informed Defendants of its intention to remove two instances of the term "in a plane" from its construction of "x,y coordinate" and "x,y coordinate location." Defendants object to Plaintiff's change in construction of these terms at this juncture and after initial and rebuttal reports of the parties' technical experts have been served. Defendants have informed Plaintiff that they would also object to any attempt by Plaintiff to serve revised technical reports addressing these new constructions.

| CLAIM TERM | CLAIM | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION |
|---|---|---|---|
| picking means/automated picking means | 1 | The disclosed function is to hold packages and to select and place packages in the storage area locations. The corresponding structure is a device that includes a housing, a gripper, an extension rod and a storing rod as disclosed at col. 7, lines 57-64 and Fig. 7. | Function: "to hold packages, to select packages from the storage area locations and place packages in the storage area locations in accordance with computer controlled instructions"<br><br>Corresponding Structure: picking means 38 |
| package reader associated with the picking means | 1 | a device that provides the identity of a package to the computer directing the picking means | a package reader attached to the picking means |

## U.S. PATENT NO 5,593,267

| CLAIM TERM | CLAIM | AGREED UPON CONSTRUCTION |
|---|---|---|
| means for moving the column with respect to the row | 3 | The disclosed function is the moving of the column with respect to the row. The corresponding structure is the drive system including a motor, as disclosed at col. 5, line 52 – col. 6, line 5 and FIG. 6. |
| means for storing a plurality of medicine packages/means for storing packages | 4, 7 | The disclosed function is the storing of a plurality of medicine packages. The corresponding structure is a storage rod as disclosed at col. 8, lines 18-23 and Figs. 7-11. |
| identifying means | 4 | The disclosed function is the identification of a package. The corresponding structure is the bar code reader as disclosed at col. 5, line 66 – col. 6, line 18. |
| means for producing a suction | 7 | The disclosed function is the production of a suction. The corresponding structure is the vacuum generator as disclosed at col. 7, line 48 – col. 8, line 7 and FIG. 11. |
| means for sensing when a package is properly positioned | 7 | The disclosed function is the sensing of a package. The corresponding structure is the vacuum sensor as disclosed at col. 7, line 48 – col. 8, line 18 and FIG. 11. |

| CLAIM TERM | CLAIM | PLAINTIFF'S PROPOSED CONSTRUCTION | DEFENDANTS' PROPOSED CONSTRUCTION |
|---|---|---|---|
| x, y coordinate location/x and y coordinate | 1, 7 | one or more points that designates the position of a package where the picking means selects, grabs and replaces packages.[2] | plain and ordinary meaning – *i.e.*, a location identifier, in which X designates a position of the location along an X-Axis and Y designates a position of the location along a Y-Axis. |
| means for picking medicine packages from the support rods | 1 | The disclosed function is the picking of medicine packages from the support rods. The corresponding structure is a device that includes a housing, a gripper, an extension rod, and a storing rod as disclosed at col. 7, lines 57-64 and Fig. 7. | Function: "picking medicine packages from the support rods in accordance with instructions received from a computer"<br><br>Corresponding Structure: Picking means 38 |
| means for obtaining a medicine package/obtaining means | 4 | The disclosed function is the obtaining of a medicine package. The corresponding structure is a device including a suction head, vacuum generator and an extension rod as disclosed at col. 7, line 60 – col. 8, line 33 and FIGS. 7 and 11. | Function: "obtaining a medicine package"<br><br>Corresponding Structure: obtaining means 50 |
| picking means for picking packages from the support rods in accordance with instructions received from a computer | 7 | 112 ¶6 construction not required. Plain and ordinary meaning – *i.e.*, a device having a housing, means for storing packages, means for producing a suction, a suction rod, and a means for sensing. | Function: "picking packages from the support rods in accordance with instructions received from a computer"<br><br>Corresponding Structure: picking means 38. |

---

[2]    During the meet and confer on June 12-13, 2008 regarding the Joint Claim Construction Statement, Plaintiff informed Defendants of its intention to remove two instances of the term "in a plane" from its construction of "x,y coordinate location" and "x and y coordinate." Defendants object to Plaintiff's change in construction of these terms at this juncture and after initial and rebuttal reports of the parties' technical experts have been served. Defendants have informed Plaintiff that they would also object to any attempt by Plaintiff to serve revised technical reports addressing these new constructions.

# EXHIBIT A



521 F.3d 1351                                                                                                    Page 1
521 F.3d 1351, 86 U.S.P.Q.2d 1304
**521 F.3d 1351**

O2 Micro Intern. Ltd. v. Beyond Innovation
Technology Co., Ltd.
C.A.Fed. (Tex.),2008.

United States Court of Appeals,Federal Circuit.
O2 MICRO INTERNATIONAL LIMITED, Plaintiff-
Appellee,
v.
BEYOND INNOVATION TECHNOLOGY CO.,
LTD., Defendant-Appellant,
andFSP Group and SPI Electronic Co., Ltd.,
Defendants-Appellants,
andLien Chang Electronic Enterprise Co., Ltd.,
Defendant-Appellant.
**Nos. 2007-1302, 2007-1303, 2007-1304.**

April 3, 2008.
Rehearing and Rehearing En Banc Denied June 11,
2008.

**Background:** Owner of patents relating to inverter
controllers, which convert low voltage direct current
(DC) into higher voltage alternating current (AC),
brought infringement action against competitors. The
United States District Court for the Eastern District
of Texas, T. John Ward, J., 2007 WL 869576, inter
alia granted patent owner a permanent injunction.
Competitors appealed.

**Holdings:** The Court of Appeals, Prost, Circuit
Judge, held that:
(1) competitors did not waive on appeal any
objection to claim construction determined at
Markman hearing;
(2) arguments regarding the meaning and legal
significance of "only if" limitation were improperly
submitted to the jury; and
(3) prosecution history estoppel barred patent owner
from relying on the doctrine of equivalents.

Vacated and remanded.

West Headnotes

**[1] Patents 291 ☞314(1)**

291 Patents

291XII Infringement
291XII(C) Suits in Equity
291k314 Hearing
291k314(1) k. In General. Most Cited
Cases
Alleged patent infringers did not have to renew their
objections to claim construction order, which
followed from a Markman hearing, by reasserting
their objections when jury instructions were given,
and therefore alleged infringers did not waive any
objection to construction; parties' positions were fully
litigated during Markman hearing, the alleged
infringers' position was previously made clear to the
district court, and the district court did not clearly
indicate that it was open to changing its claim
construction.

**[2] Patents 291 ☞324.1**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k324 Appeal
291k324.1 k. In General. Most Cited
Cases
Alleged patent infringers did not waive objections to
claim construction on appeal, in patent owner's
infringement action, even though alleged infringers
employed different arguments in support of their
claim construction on appeal; infringers proposed
same claim construction on appeal as was presented
to the district court, and the new arguments simply
incorporated an understanding of the parties' dispute
that had developed through the course of litigation.

**[3] Patents 291 ☞324.1**

291 Patents
291XII Infringement
291XII(C) Suits in Equity
291k324 Appeal
291k324.1 k. In General. Most Cited
Cases
While a waiver to a patent's claim construction may
occur if a party raises a new issue on appeal, waiver
will not necessarily occur if a party simply presented
new or additional arguments in support of the scope

521 F.3d 1351
521 F.3d 1351, 86 U.S.P.Q.2d 1304
**521 F.3d 1351**

Page 2

of its claim construction.

**[4] Patents 291 🗝️314(5)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k314 Hearing
                291k314(5) k. Questions of Law or Fact. Most Cited Cases
Arguments regarding the meaning and legal significance of "only if" limitation in patent relating to inverter controllers, which convert low voltage direct current (DC) into higher voltage alternating current (AC), were improperly submitted to the jury in patent owner's infringement action; while the parties agreed that "only if" had a common meaning, they then proceeded to dispute the scope of that claim term with each party providing an argument identifying the alleged circumstances when the requirement specified by the claim term had to be satisfied, and therefore the "ordinary" meaning of the term did not resolve the parties' dispute, and claim construction required the court to determine what claim scope was appropriate.

**[5] Patents 291 🗝️157(1)**

291 Patents
    291IX Construction and Operation of Letters Patent
        291IX(A) In General
            291k157 General Rules of Construction
                291k157(1) k. In General. Most Cited Cases

**Patents 291 🗝️314(5)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k314 Hearing
                291k314(5) k. Questions of Law or Fact. Most Cited Cases
Purpose of patent claim construction is to determine the meaning and scope of the patent claims asserted to be infringed; when the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.

**[6] Patents 291 🗝️161**

291 Patents
    291IX Construction and Operation of Letters Patent
        291IX(A) In General
            291k161 k. State of the Art. Most Cited Cases
Words of a patent claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention.

**[7] Patents 291 🗝️157(1)**

291 Patents
    291IX Construction and Operation of Letters Patent
        291IX(A) In General
            291k157 General Rules of Construction
                291k157(1) k. In General. Most Cited Cases
A determination that a patent claim term needs no construction or has the plain and ordinary meaning may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute.

**[8] Patents 291 🗝️165(3)**

291 Patents
    291IX Construction and Operation of Letters Patent
        291IX(B) Limitation of Claims
            291k165 Operation and Effect of Claims in General
                291k165(3) k. Construction of Language of Claims in General. Most Cited Cases
District courts are not required to construe every limitation present in a patent's asserted claims; rather, claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.

**[9] Patents 291 🗝️168(2.1)**

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

521 F.3d 1351                                                                                                    Page 3
521 F.3d 1351, 86 U.S.P.Q.2d 1304
**521 F.3d 1351**

291 Patents
   291IX  Construction and Operation of Letters Patent
      291IX(B) Limitation of Claims
         291k168 Proceedings in Patent Office in General
            291k168(2) Rejection and Amendment of Claims
               291k168(2.1) k. In General. Most Cited Cases

**Patents 291 ☞237**

291 Patents
   291XII Infringement
      291XII(A) What Constitutes Infringement
         291k233 Patents for Machines or Manufactures
            291k237 k. Substitution of Equivalents. Most Cited Cases
Doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes; however, when a patent claim is narrowed during prosecution, prosecution history estoppel may limit application of the doctrine of equivalents.

**[10] Patents 291 ☞324.5**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k324 Appeal
            291k324.5 k. Scope and Extent of Review in General. Most Cited Cases
An appellate court reviews issues relating to the application of patent prosecution history estoppel de novo.

**[11] Patents 291 ☞168(3)**

291 Patents
   291IX Construction and Operation of Letters Patent
      291IX(B) Limitation of Claims
         291k168 Proceedings in Patent Office in General
            291k168(3) k. Rejection and Amendment of Claims of Particular Patents. Most

Cited Cases
Feedback circuit equivalent, alleged by owner of patent relating to inverter controllers converting low voltage direct current (DC) into higher voltage alternating current (AC), that, during non-steady state operations, may have been operational even though claim language was not satisfied, was not tangential to reason for narrowing amendment made during prosecution history requiring that feedback control loop circuit control the conduction state of switches only if said feedback signal was above a predetermined threshold, and therefore patent owner failed to rebut *Festo* presumption that owner surrendered all territory between the original claim limitation and the amended claim limitation, as required to prevent prosecution history estoppel from barring patent owner from relying on the doctrine of equivalents.

**[12] Patents 291 ☞312(1.6)**

291 Patents
   291XII Infringement
      291XII(C) Suits in Equity
         291k312 Evidence
            291k312(1) Presumptions and Burden of Proof
               291k312(1.6) k. Laches and Estoppel. Most Cited Cases
The inquiry into whether a patentee can rebut the *Festo* presumption, that patentee surrendered all territory between the original claim limitation and the amended claim limitation following narrowing amendment made during prosecution history for a substantial reason relating to patentability, under the "tangential" criterion focuses on the patentee's objectively apparent reason for the narrowing amendment; in order to maintain the public notice function of a patent, that reason should be discernible from the prosecution history record.

**[13] Patents 291 ☞168(2.1)**

291 Patents
   291IX Construction and Operation of Letters Patent
      291IX(B) Limitation of Claims
         291k168 Proceedings in Patent Office in General
            291k168(2) Rejection and Amendment of Claims

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

521 F.3d 1351                                                                                    Page 4
521 F.3d 1351, 86 U.S.P.Q.2d 1304
**521 F.3d 1351**

291k168(2.1) k. In General. Most Cited Cases
If the patentee fails to rebut the *Festo* presumption, that patentee surrendered all territory between the original claim limitation and the amended claim limitation following narrowing amendment made during prosecution history for a substantial reason relating to patentability, then prosecution history estoppel bars the patentee from relying on the doctrine of equivalents for the accused element.

**[14] Patents 291 ☞168(2.1)**

291 Patents
    291IX Construction and Operation of Letters Patent
        291IX(B) Limitation of Claims
        291k168 Proceedings in Patent Office in General
            291k168(2) Rejection and Amendment of Claims
            291k168(2.1) k. In General. Most Cited Cases
Prosecution history estoppel for patents is a flexible doctrine, not a rigid one.

**Patents 291 ☞328(2)**

291 Patents
    291XIII Decisions on the Validity, Construction, and Infringement of Particular Patents
        291k328 Patents Enumerated
        291k328(2) k. Original Utility. Most Cited Cases
6,259,615, 6,396,722, 6,804,129. Construed.

**\*1353** James Pooley, Morrison & Foerster LLP, of Palo Alto, CA, argued for plaintiff-appellee. With him on the brief was Bryan Wilson. Of counsel on the brief was Richard S.J. Hung, of San Francisco, CA. Of counsel were Duane H. Mathiowetz, Howrey LLP, of San Francisco, CA; and Richard C. Lin and Henry C. Su, of East Palo Alto, CA.
Stanley Young, Heller Ehrman LLP, of Menlo Park, CA, argued for defendant-**\*1354** appellant Beyond Innovation Technology Co., Ltd. With him on the brief was Sarah R. Houghland. Of counsel on the brief were Johnny Cheng-Teh Chiu, of Washington, DC; E. Joshua Rosenkranz, of New York, NY; and Ethan C. Glass, of San Francisco, CA.
Gregory W. Carr, Carr LLP, of Dallas, TX, for

defendants-appellants FSP Group and SPI Electronic Co., Ltd. With him on the brief was Theodore F. Shields.
Mao-Sen Yieh, Law Offices of Mao-Sen Yieh, of Houston, TX, for defendant-appellant Lien Chang Electronic Enterprise Co., Ltd.

Before LOURIE, Circuit Judge, CLEVENGER, Senior Circuit Judge, and PROST, Circuit Judge.

PROST, Circuit Judge.
Defendants-Appellants Beyond Innovation Technology Company Limited ("BiTEK"), SPI Electronic Company Limited and FSP Group (collectively, "SPI/FSP"), and Lien Chang Electronic Enterprise Company Limited ("Lien Chang") appeal a final judgment by the United States District Court for the Eastern District of Texas. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-CV-32, 2007 WL 869576 (E.D.Tex. Mar. 21, 2007). A jury found that Defendants-Appellants willfully induced the infringement of claims 1, 15, 35, and 39 of U.S. Patent No. 6,259,615 ("the '615 patent"), claims 12 and 16 of U.S. Patent No. 6,396,722 ("the '722 patent"), and claims 13, 16, and 17 of U.S. Patent No. 6,804,129 ("the '129 patent"), all of which are owned by Plaintiff-Appellee O2 Micro International Ltd. ("O2 Micro"). The district court entered a final judgment and permanent injunction. For the reasons explained below, we vacate and remand for further proceedings.

## I. BACKGROUND

### A. Patents-in-Suit

The patents-in-suit [FN1] are directed to DC-to-AC converter circuits, which convert low voltage direct current ("DC") into higher voltage alternating current ("AC"). Also called inverter controllers, these circuits may be used to control the amount of power delivered to cold cathode fluorescent lamps ("CCFLs") that are used to backlight the screens of laptop computers and televisions. When powered by a battery or other DC power source, a CCFL uses a DC-to-AC converter circuit because CCFLs are designed to run on AC power. The patents-in-suit describe a converter circuit that employs a feedback control loop to control the amount of power delivered from the DC power source (the "drive") to the CCFL (the "load").

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

521 F.3d 1351
521 F.3d 1351, 86 U.S.P.Q.2d 1304
**521 F.3d 1351**

Page 5

FN1. The patents-in-suit are related-the '129 patent is a continuation of a continuation of the '722 patent, which is a continuation of the '615 patent-and share a common specification. For simplicity, we refer to the disclosure of the '615 patent and omit the parallel citations to the '722 patent and the '129 patent.

As shown in Figure 2 of the '615 patent, the converter circuit includes a number of switches (80) placed

between the drive (12) and the load (20). Drive circuitry (50) associated with each switch determines when and how long a given switch will be turned on ("ON time"). If a pair of switches along a conduction path are ON simultaneously, the circuit will deliver more power to the load. Thus, by adjusting the overlap between switches' ON times, the circuit can precisely control the amount of power delivered to the load.

*1355



'615 patent's Figure 2

The converter circuit uses a feedback control loop (40) to affect the switches' ON times. To the feedback control loop, the converter circuit provides a feedback signal (FB) indicative of the total current (and, thus, power) at the load and a reference voltage (REF) indicative of the desired load conditions (for example, the desired total current at the load). An error amplifier (32) compares the feedback signal (FB) and the reference voltage (REF) to produce a comparison signal (CMP). During normal operation, the drive circuitry (50) receives the comparison signal (94) and may use it to adjust the switches' ON times, thereby regulating the power to the load.

To protect the circuitry from damage during an open-circuit condition (such as when a CCFL breaks or becomes disconnected), the feedback signal (FB) may also be compared to a reference value (not shown in Figure 2) at the current sense comparator (42). This reference value preferably reflects the minimum or maximum current permitted by the system. Thus, when the value of the feedback signal (FB) is within a permitted range (i.e., during normal operation), the current sense comparator (42) allows the comparison signal (CMP) to flow through switch 38; however, when the value of the feedback signal is outside that range (e.g., during an open circuit or short circuit condition), the current sense comparator substitutes a minimum voltage (Vmin) for the comparison signal (CMP) at switch 38. In the latter case, the minimum voltage minimizes the overlap of the switches' ON times, reducing the power to a safer

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

521 F.3d 1351

521 F.3d 1351, 86 U.S.P.Q.2d 1304

**521 F.3d 1351**

Page 6

level while avoiding shutdown if the lamp remains operable.

During prosecution of the application, the examiner rejected the '615 patent under 35 U.S.C. § 103 as unpatentable over a combination of U.S. Patent No. 5,384,516 to Kawabata ("Kawabata") and U.S. Patent No. 6,011,360 to Gradzki ("Gradzki").   *1356 The examiner observed that the feedback loop described in the originally filed claims was obvious, stating that "Gradzki et al. teaches the utilization of the technique for a feedback loop circuit between the load and the drive circuitry supplying a feedback signal indicative of power being supplied to the load." J.A. 7638. The examiner found that, like the application's pending claims, Gradzki discloses an inverter controller that regulates lamp power irrespective of the level of the feedback signal.

In response to the examiner's rejection, O2 Micro added a limitation to each of the independent claims. Specifically, O2 Micro amended Claim 1 of the ' 615 patent to require that the feedback control loop circuit control the conduction state of the switches "only if said feedback signal is above a predetermined threshold" (the " 'only if' limitation"). O2 Micro provided little explanation for the amendment, stating that "[i]n contrast to [the prior art], Applicant's invention of independent claim 1 requires, *inter alia*, a DC/AC converter circuit that includes a feedback control loop circuit ... adapted to generate a second pulse signal ...*only if said feedback signal is above a predetermined threshold.*" J.A. 7626. After receiving this amendment, the examiner issued a notice of allowance.

Claim 1 of the '615 patent is representative of the asserted claims for the issues presented by this appeal. As issued, it requires, in relevant part, a DC/AC converter circuit comprising:

   a feedback control loop circuit receiving a feedback signal indicative of power being supplied to said load, and adapted to generate a second signal pulse signal for controlling the conduction state of said second plurality of switches only if said feedback signal is above a predetermined threshold;

'615 patent col. 10 l.67-col. 11 l.5.

## B. Accused Devices

BiTEK manufactures and sells inverter controllers. SPI/FSP and Lien Chang manufacture and sell inverter modules incorporating BiTEK's inverter controllers. O2 Micro alleged that four of BiTEK's products (BIT3105, BIT3106, BIT3107 and BIT3193) infringe one or more of the patents-in-suit. The parties concede that, for the purposes of this litigation, the first three products (BIT3105, BIT3106, and BIT3107) are the same, and the fourth (BIT3193) differs from the others in only one material respect.

BiTEK's inverter controllers have feedback control loops. The controllers are capable of shutting off the feedback signal's control over power when a feedback signal falls below a predetermined threshold. The parties dispute whether this feature satisfies the "only if" limitation recited by the asserted claims, which requires "a feedback control loop circuit ... adapted to generate a second signal pulse signal for controlling ... [the] switches *only if* said feedback signal is above a predetermined threshold."(emphasis added).

BiTEK submits that its inverter controllers do not satisfy this limitation in two circumstances because, during those circumstances, the feedback signal in BiTEK's switch continues to control the power delivered to the load even though the feedback signal falls below the predetermined threshold. The first circumstance is when an unlit lamp lights up (called "start-up" or "ignition"). BiTEK asserts that, during the ignition period, the feedback signal is below the predetermined threshold, but the feedback circuit still controls power delivered to the load, in violation of the claims' requirements. This   *1357 first circumstance applies to all four products. The second circumstance applies only to the BIT3193 product, which implements a 32-microsecond delay. During this delay period, the feedback circuit is designed to continue to rely on the feedback signal to control the power for 32 microseconds after the feedback signal falls below the predetermined threshold. Such a delay was purposely created to ensure that the feedback signal would not cease to control the power to the load because of a temporary fall below the threshold.

On appeal, BiTEK relies exclusively on these two circumstances to avoid infringement under the claim,

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

asserting that the "only if" limitation is therefore not satisfied. O2 Micro, on the other hand, asserts that this limitation is satisfied by the accused devices. First, O2 Micro argues that the claims do not apply in the two circumstances identified by BiTEK. Second, O2 Micro disputes BiTEK's allegations regarding the operation of its devices during those circumstances and, consequently, asserts that, even if the claims apply, the accused devices still infringe.

### C. District Court Proceedings

In January 2004, O2 Micro filed suit against BiTEK, SPI/FSP, and Lien Chang in the United States District Court for the Eastern District of Texas. O2 Micro alleges that BiTEK's inverter controllers infringe several claims of the ' 615 patent, the '722 patent, and the '129 patent. While Defendants-Appellants are foreign entities that operate abroad, Defendants-Appellants' inverter controllers and modules are used in monitors sold in the United States.

The district court held a *Markman* hearing in August 2005. The parties agreed, for the most part, that a previously issued claim construction order (from a different case pending before the same court) controlled in this case.  *See O2 Micro Int'l Ltd. v. Sumida Corp.,* 2:03-CV-07 (E.D.Tex. Mar. 8, 2005) (claim construction order construing claim language in the same patents). However, the parties presented a handful of additional terms for the court to construe. The claim term "only if" (one of the additional terms disputed by the parties) is the only term whose construction was appealed to this court.

At the *Markman* hearing, Defendants-Appellants argued that the district court should construe the claim term "only if," but disagreed regarding what specific meaning should be ascribed to it. Defendants-Appellants BiTEK and Lien Chen asserted that "only if" should mean "exclusively or solely in the event that," while defendant SPI/FSP asserted that it should mean "never except when." In spite of the differences in word choice, Defendants-Appellants seemed to agree that these constructions are substantially identical in meaning. O2 Micro, on the other hand, maintained that no construction was necessary because the claim term "only if" consists of "two simple, plain English words." During the hearing, the district court astutely summarized the

dispute as concerning whether or not "there can be an exception" to the "only if" language. However, in its *Markman* order, the district court ruled that this term "needs no construction" because it "has a well-understood definition, capable of application by both the jury and this court in considering the evidence submitted in support of an infringement or invalidity case." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* No. 2:04-CV-32 (E.D.Tex. Aug. 26, 2005).

During pre-trial proceedings, BiTEK filed a motion in limine seeking to prevent O2 Micro from alleging infringement under the doctrine of equivalents as to the "only if" limitation, asserting that prosecution\*1358 history estoppel barred that theory. The district court originally granted this motion, instructing O2 Micro to first approach the bench before "offering any evidence relating to infringement of the 'only if' limitation under the doctrine of equivalents." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* No. 2:04-CV-32 (E.D.Tex. May 2, 2006). However, after considering supplemental briefing, the district court changed course, ruling that O2 Micro was allowed to argue that the "only if" limitation is infringed under the doctrine of equivalents. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* No. 2:04-CV-32 (E.D.Tex. May 8, 2006). Without any analysis, the district court's opinion simply stated, "The court ... is persuaded by O2's argument that the amendment bears only a tangential relationship to the equivalent at issue." *Id.* (also citing *Insituform Techs., Inc. v. CAT Contracting, Inc.,* 385 F.3d 1360, 1370 (Fed.Cir.2004)).

At trial, the "only if" limitation was a key issue disputed by the parties. O2 Micro presented evidence that the accused devices satisfied the "only if" limitation both literally and under the doctrine of equivalents. Defendants-Appellants presented evidence to the contrary. Moreover, both parties presented arguments regarding whether or not the "only if" claim language allows exceptions.

After trial, the parties submitted proposed verdict forms that asked separate questions regarding literal infringement and infringement under the doctrine of equivalents. The district court generated a jury form containing general questions regarding "infringement" and included jury instructions

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

521 F.3d 1351
521 F.3d 1351, 86 U.S.P.Q.2d 1304
**521 F.3d 1351**

explaining that a claim limitation may be satisfied either literally or under the doctrine of equivalents. After deliberations, the jury found that each Defendant-Appellant had induced infringement of each asserted claim of each patent. The jury also found that Lien Chang contributorily infringed and all three Defendants-Appellants willfully infringed. Defendants-Appellants timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

As noted above, the district court provided a general verdict form that asked the jury whether each defendant "infringe[d]" each of the asserted claims. The corresponding jury instructions explained that infringement may be found either literally or under the doctrine of equivalents. On appeal, Defendants-Appellants allege error in both theories of infringement liability. First, Defendants-Appellants contend that the district court's failure to construe the claim term "only if" was legal error that infected the literal infringement inquiry. Second, Defendants-Appellants assert that the jury should not have been permitted to find infringement under the doctrine of equivalents. We address each of these arguments in turn.

### A. Claim Construction

With respect to literal infringement, the parties dispute whether the district court's failure to construe the claim term "only if" was legal error. As a threshold matter, however, O2 Micro argues that Defendants-Appellants waived any challenge to the construction of "only if" by: (1) failing to object to the jury instructions as lacking a construction of that claim term and (2) offering a different construction of the claim term on appeal than was presented to the district court. Before addressing the claim construction issue on the merits, we turn to these waiver arguments.

[1] First, O2 Micro contends that Defendants-Appellants have waived any challenge to the construction of "only if" because Defendants-Appellants failed to *1359 object to the jury instructions as lacking a construction of that term. O2 Micro acknowledges that Defendants-Appellants presented these arguments during the *Markman*

hearing and that the district court issued a claim construction order months before trial. O2 Micro asserts, however, that a party waives its objections to a claim construction by not objecting to the jury instructions containing (or, in this case, lacking) that construction.

In response, Defendants-Appellants argue that the purpose of a *Markman* hearing *is* to determine the meaning of claim terms. A claim construction order always dictates how the court will instruct the jury regarding a claim's scope. Because these issues were fully litigated and decided at the *Markman* stage of the litigation, Defendants-Appellants assert that no objection to the jury instruction was required to preserve error. We agree.

"When the claim construction is resolved pre-trial, and the patentee presented the same position in the *Markman* proceeding as is now pressed, a further objection to the district court's pre-trial ruling may indeed have been not only futile but unnecessary." *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 381 F.3d 1371, 1381 (Fed.Cir.2004) (under Seventh Circuit law). The same holds true in the Fifth Circuit. *Taita Chem. Co. v. Westlake Styrene, LP*, 351 F.3d 663, 667 (5th Cir.2003) (stating that there is no need to object where a litigant "had previously filed sufficient objections"); *Rizzo v. Children's World Learning Ctrs., Inc.*, 213 F.3d 209, 223 (5th Cir.2000) ( "Failure to object [to a proposed jury instruction] may be disregarded if the party's position has previously been made clear to the court and it is plain that a further objection would have been unavailing."); *Bender v. Brumley*, 1 F.3d 271, 277 (5th Cir.1993) (finding "oral on-the-record objections to the jury charge" were not required to preserve objection where appellant "had earlier filed written objections to the proffered jury instructions"). The district court in this case, as in *Cardiac Pacemakers*, rendered a claim construction order following a *Markman* hearing during which the parties' positions were fully litigated. Because Defendants-Appellants' position was previously made clear to the district court and the district court did not clearly indicate that it was open to changing its claim construction, Defendants-Appellants need not have renewed their objections by reasserting them when jury instructions were given.

[2] Second, O2 Micro also asserts that Defendants-

Appellants have waived their proposed claim constructions of "only if" by asserting a new construction on appeal. Contending that Defendants-Appellants' current construction is that "only if" allows for "no exceptions," O2 Micro notes that the word "exception" was never used in Defendants-Appellants' claim construction briefs. Defendants-Appellants respond by re-affirming the construction proposed to the district court-namely, "only if" means "solely or exclusively in the event that." Defendants-Appellants argue that, while the arguments advanced in support of their construction may have changed, the construction itself remains the same. Defendants-Appellants note that these new arguments simply recognize that the effect of their proposed construction is to prohibit exceptions to the "only if" limitation.

[3] We agree with Defendants-Appellants that no waiver has occurred. While "a waiver may occur if a party raises a new issue on appeal .... [a] waiver will not necessarily occur ... if a party simply presented new or additional arguments in support of 'the scope of its claim construction....' "*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1370-71 (Fed.Cir.2002) (citation omitted). Defendants-Appellants*1360 propose the same construction on appeal as was presented to the district court. While Defendants-Appellants employ different arguments in support, these new arguments simply incorporate an understanding of the parties' dispute that has developed through the course of litigation. At the claim construction hearing, the district court astutely recognized that the dispute "boils down to whether [the court] believe[s] there can be an exception." Thus, we conclude Defendants-Appellants have not waived these arguments.

[4] Accordingly, we turn to the merits of Defendants-Appellants' appeal of the district court's failure to construe the claim term "only if." On appeal, Defendants-Appellants argue that the district court's failure to construe the claim term "only if" was error because the parties disputed whether or not this claim language allows for exceptions. Defendants-Appellants assert that, because this presents an issue of claim construction, it is a question of law that must be decided by the court. In Defendants-Appellants' view, by failing to provide a construction of this term, the district court effectively submitted a legal question to the jury. Defendants-Appellants also

argue that the district court erred by allowing the jury to reach a verdict based upon an erroneous legal conclusion-namely, that "only if" allows exceptions.

O2 Micro counters that the claim term "only if" does not need to be construed because the parties agree that the term is a "common term" with a "common meaning." O2 Micro notes that this court has repeatedly held that a district court is not obligated to construe terms with ordinary meanings,<u>FN2</u> lest trial courts be inundated with requests to parse the meaning of every word in the asserted claims.

> FN2.*E.g.*, *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed.Cir.2001) (finding no error in non-construction of "melting"); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1380 (Fed.Cir.2001) (finding no error in court's refusal to construe "irrigating" and "frictional heat").

[5] The purpose of claim construction is to "determin[e] the meaning and scope of the patent claims asserted to be infringed." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd*517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute. *See id.* at 979 (holding that claim construction is a matter of law).

[6] Words of a claim are generally given their ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed.Cir.2005) (en banc). "In some cases, the ordinary meaning of claim language ... may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314. However, in many cases, the meaning of a claim term as understood by persons of skill in the art is not readily apparent. *Id.*

In this case, the parties dispute whether or not the "only if" limitation allows for exceptions. O2 Micro

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

521 F.3d 1351                                                                                     Page 10
521 F.3d 1351, 86 U.S.P.Q.2d 1304
**521 F.3d 1351**

asserts that the claims would be understood by one of ordinary skill in the art to only apply to "the steady state operation of the switching circuit." Defendants-Appellants disagree and submit that the claims apply at all times-not just to steady state operation-with no exceptions. There are two circumstances*1361 in which Defendants-Appellants assert that the "only if" limitation is not satisfied: (1) the pre-ignition, start-up phase, and (2) a 32-microsecond delay. Accordingly, Defendants-Appellants seek a construction that specifies that "only if" has no exceptions and is not limited to "steady state operation."

During the claim construction hearing, the district court acknowledged that this dispute over the scope of the asserted claims "boils down to whether I believe there can be an exception." However, the district court declined to construe this term, stating:

> The term "only if" needs no construction aside from the construction previously adopted by the court for the phrases in which the term appears. It is true, as defendants argue, that *Elekta Instrument, S.A. v. O.U.R. Scientific International, Inc.,* 214 F.3d 1302 (Fed.Cir.2000), applies the ordinary meaning of "only" (being solely; exclusively) to a claim term and evaluates the evidence in that light. Nothing in *Elekta Instrument,* however, requires the court to construe claim terms that have a well-understood meaning. "Only if" has a well-understood definition, capable of application by both the jury and this court in considering the evidence submitted in support of an infringement or invalidity case.

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,* No. 2:04-CV-32, slip op. at 2 (E.D.Tex. Aug. 26, 2005). We find this decision to be in error because, while *Elekta Instrument* may not require the court to construe this claim term, we find that *Markman* does.

The parties presented a dispute to the district court regarding the scope of the asserted claims-What do the patents mean when they say that the feedback signal controls power "only if said feedback signal is above a predetermined threshold"? O2 Micro contends that this "only if" limitation only applies during "steady state operation," while Defendants-Appellants contend that the "only if" limitation applies at all times without exception. This dispute

over the scope of the asserted claims is a question of law. In deciding that " 'only if' needs no construction" because the term has a "well-understood definition," the district court failed to resolve the parties' dispute because the parties disputed not the *meaning* of the words themselves, but the *scope* that should be encompassed by this claim language.

[7] A determination that a claim term "needs no construction" or has the "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute. In this case, for example, the parties agreed that "only if" has a common meaning, but then proceeded to dispute the scope of that claim term, each party providing an argument identifying the alleged circumstances when the requirement specified by the claim term must be satisfied (e.g., at all times or during steady state operation). In this case, the "ordinary" meaning of a term does not resolve the parties' dispute, and claim construction requires the court to determine what claim scope is appropriate in the context of the patents-in-suit. This court has construed other "ordinary" words for these and other related reasons. *See, e.g., Nystrom v. TREX Co.,* 424 F.3d 1136, 1143 (Fed.Cir.2005) (construing "board" in light of intrinsic record); *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.,* 375 F.3d 1341, 1350 (Fed.Cir.2004) (construing "golden brown" even though colors "are commonly used terms with well-accepted plain definitions that rarely need construction"), *rev'd on other *1362 grounds,* 546 U.S. 394, 126 S.Ct. 980, 163 L.Ed.2d 974 (2006); *Toro Co. v. White Consol. Indus., Inc.,* 199 F.3d 1295, 1299 (Fed.Cir.1999) (construing "cover," "included," "attachment," and "removable").

When the district court failed to adjudicate the parties' dispute regarding the proper scope of "only if," the parties presented their arguments to the jury. By failing to construe this term, the district court left the jury free to consider these arguments. O2 Micro presented expert testimony to support its argument that the claim limitation "only if" applies only during certain periods of operation-"normal operation"-and that this claim limitation "has nothing to do with start-up." O2 Micro also brought the inventor of the patents-in-suit to testify regarding the meaning of "only if":

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

Q: What did the additional language, "only if said feedback signal is above a predetermined threshold," pertain to?

A: Actually, in my opinion, specification did not change. "Only if," between my patent lawyer and examiner, they added in to try to clarify, make the entire invention more easier to understand. I think that's what it is. To me, there's no change to my original invention's intent.

....

Q: So if the only time it makes any sense to use feedback to control power to a lamp is after it's lit, after this threshold is reached, what did you give up, if anything, by adding the "only if" language to the claims?

A: I don't think I gave up anything. I think it just make it clear that you and I can understand.

Only when the lamp is lit ... we control power at that time.

J.A. 6550-51. Likewise, Defendants-Appellants argued to the jury that "only if" does not allow for exceptions. For the reasons stated, the parties' arguments regarding the meaning and legal significance of the "only if" limitation were improperly submitted to the jury.[FN3]

> FN3. We note, in passing, that the parties' claim construction arguments are fraught with problems. First, an inventor's self-serving statements are rarely relevant to the proper construction of a claim term. *Bell & Howell Document Mgmt. Prods. v. Altek Sys.,* 132 F.3d 701, 706 (Fed.Cir.1997). Second, the parties' claim construction arguments appear to contain no support from the intrinsic record. *See Phillips,* 415 F.3d at 1314-19 (emphasizing the importance of the intrinsic record in claim construction). These deficiencies support the rationale underlying the rule that the court, and not the jury, should resolve claim construction disputes. *See Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 388-89, 116

S.Ct. 1384, 134 L.Ed.2d 577 (1996) (explaining why judges "are the better suited to find the acquired meaning of patent terms").

[8] We, however, recognize that district courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims. *See, e.g., Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.,* 249 F.3d 1341, 1349 (Fed.Cir.2001) (deciding that disputed issue was the proper application of a claim term to an accused process rather the scope of the term); *U.S. Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed.Cir.1997) (Claim construction "is not an obligatory exercise in redundancy."). Rather, "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." *U.S. Surgical,* 103 F.3d at 1568. When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it. Because we determine that *1363 the district court is in the best position to determine the proper construction of this claim term in the first instance, we remand for further proceedings consistent with this opinion.[FN4]

> FN4. O2 Micro also argues that, if the failure to construe "only if" was error, it was not prejudicial error because O2 Micro presented evidence sufficient to prove literal infringement under the construction proposed by Defendants-Appellants. Defendants-Appellants, on the other hand, contend that a construction of "only if" would certainly have changed the result. We do not find the infringement evidence to be clearly in favor of either party, and cannot conclude that the lack of a construction did not result in harm.

### B. Doctrine of Equivalents

[9][10] We turn now to Defendants-Appellants' arguments with respect to the doctrine of equivalents.[FN5] "The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.

changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 733, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002).* However, when a patent claim is narrowed during prosecution, prosecution history estoppel may limit application of the doctrine of equivalents. *Int'l Rectifier Corp. v. IXYS Corp., 515 F.3d 1353, 1358 (Fed.Cir.2008).* "[W]e review issues relating to the application of prosecution history estoppel *de novo.*" *Conoco, Inc. v. Energy & Envtl. Int'l, L.C., 460 F.3d 1349, 1357 (Fed.Cir.2006).*

> FN5. O2 Micro asserts that the jury verdict, which found "infringement," should not be vacated unless we find error in *both* theories of liability (i.e., literal infringement and infringement under the doctrine of equivalents). Under O2 Micro's theory, the jury verdict must be upheld if the jury could have found infringement under either theory because Defendants-Appellants failed to object to the district court's use of a general verdict form. Because we find error in both literal infringement and infringement under the doctrine of equivalents, we need not decide this issue.

On appeal, Defendants-Appellants argue that the district court erred in allowing the jury to find infringement under the doctrine of equivalents. Defendants-Appellants contend that, because the claim term "only if" was added during prosecution to overcome a prior art rejection, the *Festo* presumption should apply. According to Defendants-Appellants, because O2 Micro has failed to rebut this presumption, it should not have been allowed to argue that the accused devices infringe under the doctrine of equivalents. Accordingly, Defendants-Appellants find error in the jury instruction allowing for infringement under the doctrine of equivalents and O2 Micro's arguments at trial alleging infringement on this basis.

O2 Micro agrees that the addition of "only if" constituted a narrowing amendment made for a substantial reason relating to patentability. However, O2 Micro appears to offer two alternate theories for why *Festo* should not apply. At the district court, O2 Micro attempted to rebut the *Festo* presumption by arguing that the alleged equivalent is merely tangential to this amendment. On appeal, O2 Micro

supplements this argument, asserting that the doctrine of equivalents should presumptively be available for *other* claim terms (namely, "feedback signal" and "adjustment") because these terms were not added by amendment.

We agree with Defendants-Appellants that prosecution history estoppel prevents application of the doctrine of equivalents for the "only if" limitation. The parties agree that the "only if" limitation was added to the claims by a "narrowing amendment ... made for a substantial reason relating to patentability." *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 344 F.3d 1359, 1367 (Fed.Cir.2003)* (en banc). Thus, the *Festo* presumption applies*1364 to this limitation, and, in order to avail itself of the doctrine of equivalents, O2 Micro must rebut the "presumption that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation." *Id.; accord Festo, 535 U.S. at 740, 122 S.Ct. 1831* ("[T]he patentee should bear the burden of showing that the amendment does not surrender the particular equivalent in question."). The Supreme Court provided three vehicles [FN6] through which a plaintiff may do so. *Festo, 344 F.3d at 1368.* Neither party has argued either that the equivalent was unforeseeable or that there was "some other reason" why the patentee could not have described the alleged equivalent. *See id.* Accordingly, we turn directly to the issue of whether the rationale behind the narrowing amendment was merely tangential (i.e., peripheral, or not directly relevant) to the alleged equivalent. *See id.*

> FN6. The three vehicles are: "(1) 'the alleged equivalent would have been unforeseeable at the time ... the narrowing amendment' was made; (2) 'the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent' at issue; and (3) 'there was "some other reason" suggesting that the patentee could not reasonably have been expected to have described the alleged equivalent.' *"Honeywell Int'l Inc. v. Hamilton Sundstrand Corp., 370 F.3d 1131, 1140 (Fed.Cir.2004)* (quoting *Festo, 344 F.3d at 1368).*

[11][12][13] "[T]he inquiry into whether a patentee

can rebut the *Festo* presumption under the 'tangential' criterion focuses on the patentee's *objectively apparent* reason for the narrowing amendment." *Id.* at 1369 (emphasis added). In order to maintain the public notice function of a patent, "that reason should be discernible from the prosecution history record." *Id.*; *see id.* at 1371-72 (holding that amendment was not tangential to accused equivalent because the prosecution history reveals no reason for the amendment); *Biagro W. Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1306 (Fed.Cir.2005) ("[W]hether the patentee has overcome the presumption on this ground is determined by the court on the basis of the public record."). "[I]f the patentee fails to rebut the *Festo* presumption, then prosecution history estoppel bars the patentee from relying on the doctrine of equivalents for the accused element." *Festo,* 344 F.3d at 1367.

In ruling that the doctrine of equivalents was available with respect to the "only if" limitation, the district court simply stated that it was "persuaded by O2's argument that the amendment bears only a tangential relationship to the equivalent at issue." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-CV-32 (E.D.Tex. May 8, 2006). Without the benefit of the district court's explanation of its rationale, we examine the prosecution history and parties' arguments to the district court.

During prosecution, the examiner rejected the '615 patent as obvious in light of Gradzki. Gradzki discloses an inverter controller that regulates lamp power irrespective of the level of the feedback signal. In response to the examiner's rejection, O2 Micro added the "only if" language to the independent claims, amending claim 1 of the '615 patent, for example, to require that the feedback control loop circuit controls the conduction state of the switches "only if said feedback signal is above a predetermined threshold." O2 Micro provided little explanation for the amendment, merely stating:

> [T]he Examiner looks to Gradzki et al. as disclosing a feedback technique to generate a feedback signal indicative of power being supplied to the load. Significantly, however, Gradzki et al. discloses a feedback system, maintains [sic] the voltage at the CRECT pin equal to the voltage at the DIN pin, thereby **\*1365** regulating lamp power

(Gradzki et al., column 4, lines 64-67).

> In contrast to [the prior art], Applicant's invention of independent claim 1 requires, *inter alia,* a DC/AC converter circuit that includes a feedback control loop circuit between the load and the drive circuitry receiving a feedback signal indicative of power supplied to the load and adapted to generate a second pulse signal for controlling the conduction state of a second plurality of switches *only if said feedback signal is above a predetermined threshold.* Applicant's invention of independent claim 18 has been similarly amended.

J.A. 7626.

[14] To begin, O2 Micro correctly notes that prosecution history estoppel is a "flexible" doctrine, not a "rigid" one. *See Festo,* 535 U.S. at 738, 122 S.Ct. 1831. O2 Micro then asserts that "the 'only if' language distinguished Gradzki by claiming a feedback system responsive to the feedback signal's *being above or below a predetermined threshold,*" which is tangential to whether or not the feedback signal is used during "ignition of the lamp" and other non-steady state operations. Essentially, O2 Micro argues that exceptions to the "only if" limitation (e.g., during non-steady state operations) are merely tangential to the limitation itself. We find this argument to be without merit. The "objectively apparent" reason for the patentee's amendment was to require the feedback circuit to be operational "only if said feedback signal is above a predetermined threshold," as the claim language clearly states. No other reason is provided or suggested by the prosecution history. The equivalent alleged by O2 Micro is a feedback circuit that, during non-steady state operations, may be operational even though the claim language is *not* satisfied (i.e., the feedback signal is not above the predetermined threshold). This equivalent is simply not tangential to the reason for the amendment. Thus, it was error for the district court to allow the jury to consider infringement under the doctrine of equivalents.

On appeal, O2 Micro supplements its argument supporting the doctrine of equivalents instruction by asserting that the instruction was proper because the jury could have found that *other* claim terms were infringed by the doctrine of equivalents. Noting that

521 F.3d 1351
521 F.3d 1351, 86 U.S.P.Q.2d 1304
**521 F.3d 1351**

Page 14

the terms "feedback signal" and "adjustment" were present in the originally filed claims, O2 Micro argues that its expert's equivalents analysis focused on *these* terms, not the "only if" claim language. O2 Micro also alleges that the doctrine of equivalents instruction would not be error so long as the jury could have found *any* limitation to be met by equivalents.

The record, however, does not support this argument. The district court's equivalents ruling focused on "only if," not "feedback signal" or "adjustment." Defendants-Appellants original motion in limine sought to prevent O2 Micro from arguing equivalents to "only if." The district court's decisions recognize that this was the claim term at issue for the purposes of these discussions. At trial, O2 Micro asked its expert, Dr. Rhyne: "[D]o the 'only if' limitations also infringe under the doctrine of equivalents?" J.A. 6328. In response, Dr. Rhyne explained why the reaction of the circuit was "essentially the same as it would be even if the feedback were not present." *Id.*

O2 Micro points to no portion of the record where it argued that the accused devices satisfied the "feedback signal" or "adjustment" limitations under the doctrine of equivalents. In O2 Micro's brief, it asserts that only three pages of trial testimony directly addressed the issue of equivalents; however, in these pages, O2 Micro's expert opines that the asserted **\*1366** equivalents are insubstantially different from the "only if" limitation, with no discussion regarding either "feedback signal" or "adjustment." While O2 Micro points to two additional excerpts of the trial transcript, the generalized testimony regarding "virtually insignificant" current flow is insufficient to establish that either the "feedback signal" or "adjustment" limitations were infringed under the doctrine of equivalents. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)* ("[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole."); *Tex. Instruments, Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1567 (Fed.Cir.1996)* ("Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice [to prove infringement under the doctrine of equivalents].").

Accordingly, we agree with Defendants-Appellants that the district court erred in allowing the jury to find infringement under the doctrine of equivalents. Because we vacate the jury verdict, the remaining issues raised by Defendants-Appellants (which are premised on that jury verdict) are rendered moot.

### III. CONCLUSION

For the above reasons, we vacate the jury verdict, the final judgment of infringement, and the permanent injunction, and we remand to the district court for further proceedings consistent with this opinion.

### COSTS

Each party shall bear its own costs.

*VACATED AND REMANDED.*

C.A.Fed. (Tex.),2008.
O2 Micro Intern. Ltd. v. Beyond Innovation Technology Co., Ltd.
521 F.3d 1351, 86 U.S.P.Q.2d 1304

END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. U.S. Govt. Works.