## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MCKESSON AUTOMATION, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-028 SLR/LPS |
| | ) | |
| SWISSLOG ITALIA S.p.A. and | ) | |
| TRANSLOGIC CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### REVISED ATTACHMENTS TO McKESSON AUTOMATION, INC.'S
### OPENING CLAIM CONSTRUCTION BRIEF [D.I. 351]

Plaintiff McKesson Automation, Inc. hereby submits revised Exhibit E – part 1 (M0125295 – M0125390); Exhibit E – part 2 (MA000056 – MA000156); Exhibit E – part 3 (MA000157 - MA000274); and Exhibit I (MA000275 – MA000448) as attachments to McKesson's Opening Claim Construction Brief. The Exhibits were revised to add the Bates production numbers that correlate to citations contained in the Opening Brief, to facilitate identification.

Respectfully submitted,

*Dale R. Dubé*

Dale R. Dubé (I.D. No. 2863)
BLANK ROME LLP
1201 N. Market Street
Suite 800
Wilmington, DE 19801
(302) 425-6400
dube@blankrome.com

Blair M. Jacobs
Robert A. Gutkin
Christina A. Ondrick
Christopher L. May
Charles J. Hawkins
SUTHERLAND ASBILL & BRENNAN LLP
1275 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 383-0100
Fax: (202) 637-3593

*Counsel for Plaintiff McKesson Automation, Inc.*

DATED:  September 4, 2008

124402.00601/40176404v.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September, 2008, I served by email and electronic filing the REVISED ATTACHMENTS TO McKESSON AUTOMATION, INC.'S OPENING CLAIM CONSTRUCTION BRIEF using CM/ECF, which will send notification of such filing to the following:

>Julia Heaney, Esquire
>MORRIS, NICHOLS ARSHT & TUNNELL
>1201 N. Market Street
>P.O. Box 1347
>Wilmington, DE 19899

I also certify that, on this 4th day of September, 2008, I served the aforementioned document, by CM/ECF and Federal Express to the following participants:

>Lawrence C. Drucker, Esquire
>Alfred R. Fabricant, Esquire
>Richard LaCava, Esquire
>Bryan N. DeMatteo, Esquire
>DICKSTEIN SHAPIRO LLP
>1177 Avenue of the Americas
>New York, NY 10036

Dale R. Dubé  (I.D. No. 2863)

124402.00601/40176404v.1

# Exhibit E
# Part 1


ABANDONED

| SERIAL NUMBER (Series 1987) | 07/469217 | PATENT DATE | | PATENT NUMBER | |
|---|---|---|---|---|---|

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 07/469,217 | 01/24/90 | 364 | 478 | 236 | TRAMMELL |

SEAN C. MC DONALD, PITTSBURGH, PA; ELLEN J. HERTZ, PITTSBURGH, PA;
JAMES A. SMITH, ALLISON PARK, PA; GREGORY TOTO, PITTSBURGH, PA.

**CONTINUING DATA*********************
VERIFIED

**FOREIGN/PCT APPLICATIONS***********
VERIFIED

FOREIGN FILING LICENSE GRANTED 02/22/90      ***** SMALL ENTITY *****

| Foreign priority claimed ☐ yes ☐ no | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|
| 35 USC 119 conditions met ☐ yes ☐ no | | PA | 14 | 23 | 6 | 239.00 | 1797003 |
| Verified and Acknowledged _Examiner's initials_ | | | | | | | |

ADDRESS
ANSEL M. SCHWARTZ  ~~from J. Alstadt~~
ALDER, COHEN AND GRIGSBY  Buchanan Ingersoll, P.C.
625 LIBERTY AVE.  56th Floor, 600 Grant Street
PITTSBURGH PA 15222  15219

TITLE  SYSTEM FOR FILLING ORDERS  Selecting and Delivering Packages from Holding area to Fill orders

U.S. DEPT. of COMM.–Pat. & TM Office — PTO-436L (rev. 10-78)

PARTS OF APPLICATION
FILED SEPARATELY

| NOTICE OF ALLOWANCE MAILED | PREPARED FOR ISSUE 1-31-92 | | CLAIMS ALLOWED | |
|---|---|---|---|---|
| Jan. 23, 92 | Jim Trammell / Assistant Examiner | Docket Clerk | Total Claims 13 | Print Claim 1 |
| **ISSUE FEE** | JERRY SMITH | | **DRAWING** | |
| Amount Due | Date Paid | SUPERVISORY PATENT EXAMINER ART UNIT 236 Primary Examiner | Sheets Drwg. 14 | Figs. Drwg. 14 | Print Fig. 1 and 5 |
| $565.00 | | | | |
| | | **ISSUE CLASSIFICATION** | | |
| | Label Area | Class 364 | Subclass 478 | ISSUE BATCH NUMBER W 52 |
| | | WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only. | | |

Form PTO-436

M0125295

07/469217

APPROVED FOR LICENSE

FEB 02 9 016

INITIALS

| Entered or Counted | CONTENTS | Received or Mailed |
|---|---|---|
| | 1. Application    14 pto    papers. | |
| | 2. Napoletan 3 mos. | 0/10/91 |
| | 3. X time 3 mo Change of Address | 11-4-91 |
| | 4. Amdt A | 11-4-91 |
| | 5. Pur. Apol. | A3721-22 |
| | 6. Rev & P/A | 11-4-91 |
| | 7. Notice of Acceptance | 1-30-91 |
| | 8. ABANDONED | OCT 22 1992 |
| | 9. Request for Access | 1/24/06 |
| | 10. Request for Access | 12-4-06 |
| | 11. | |
| | 12. | |
| | 13. | |
| | 14. | |
| | 15. | |
| | 16. | |
| | 17. | |
| | 18. | |
| | 19. | |
| | 20. | |
| | 21. | |
| | 22. | |
| | 23. | |
| | 4. | |
| | 25. | |
| | 26. | |
| | 27. | |
| | 28. | |
| | 29. | |
| | 30. | |
| | 31. | |
| | 32. | |

M0125296

STAPLE    AREA

☆ U.S. GOVERNMENT PRINTING OFFICE 1998-275-917

| PATENT NUMBER | ORIGINAL CLASSIFICATION | |
|---|---|---|
| | CLASS | SUBCLASS |
| | 364 | 478 |

| APPLICATION SERIAL NUMBER | CROSS REFERENCE(S) | |
|---|---|---|
| 07/464217 | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) |
| APPLICANT'S NAME (PLEASE PRINT) | 364 | 413 62 |
| Sean C. McDonald etc. | 414 | 273 |
| IF REISSUE, ORIGINAL PATENT NUMBER | | |

| INTERNATIONAL CLASSIFICATION (INT. CL.) 5 | | | |
|---|---|---|---|
| B 6 5 G | 1 | 00 | |
| G 0 6 F | 15 | 46 | |

| GROUP ART UNIT | ASSISTANT EXAMINER (PLEASE STAMP OR PRINT FULL NAME) |
|---|---|
| 2306 | Jim Trammell |
| | PRIMARY EXAMINER (PLEASE STAMP OR PRINT FULL NAME) |
| | Jerry Smith |

PTO 270
(10-84)

ISSUE CLASSIFICATION SLIP

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

M0125297

Staple Issue Slip Here

# INDEX OF CLAIMS

SYMBOLS
- ....... Rejected
- ....... Allowed
- (Through numeral) Cancelled
- ....... Restricted
- N ....... Non-elected
- I ....... Interference
- A ....... Appeal
- O ....... Objected

| Claim | | Date | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Final | Original | | | | | | | |
| | 1 | | | | | | | |
| | 2 | | | | | | | |
| | 3 | | | | | | | |
| | 4 | | | | | | | |
| | 5 | | | | | | | |
| 1 | 6 | | | | | | | |
| 3 | 7 | | | | | | | |
| 4 | 8 | | | | | | | |
| 5 | 9 | | | | | | | |
| 6 | 10 | | | | | | | |
| | 11 | | | | | | | |
| 7 | 12 | | | | | | | |
| 8 | 13 | | | | | | | |
| 9 | 14 | | | | | | | |
| 10 | 15 | | | | | | | |
| 11 | 16 | | | | | | | |
| 12 | 17 | | | | | | | |
| | 18 | | | | | | | |
| | 19 | | | | | | | |
| | 20 | | | | | | | |
| | 21 | | | | | | | |
| | 22 | | | | | | | |
| | 23 | | | | | | | |
| | 24 | | | | | | | |
| | 25 | | | | | | | |
| | 26 | | | | | | | |
| | 27 | | | | | | | |
| | 28 | | | | | | | |
| | 29 | | | | | | | |
| | 30 | | | | | | | |
| | 31 | | | | | | | |
| | 32 | | | | | | | |
| | 33 | | | | | | | |
| | 34 | | | | | | | |
| | 35 | | | | | | | |
| | 36 | | | | | | | |
| | 37 | | | | | | | |
| | 38 | | | | | | | |
| | 39 | | | | | | | |
| | 40 | | | | | | | |
| | 41 | | | | | | | |
| | 42 | | | | | | | |
| | 43 | | | | | | | |
| | 44 | | | | | | | |
| | 45 | | | | | | | |
| | 46 | | | | | | | |
| | 47 | | | | | | | |
| | 48 | | | | | | | |
| | 49 | | | | | | | |
| | 50 | | | | | | | |

| Claim | | Date | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Final | Original | | | | | | | |
| | 51 | | | | | | | |
| | 52 | | | | | | | |
| | 53 | | | | | | | |
| | 54 | | | | | | | |
| | 55 | | | | | | | |
| | 56 | | | | | | | |
| | 57 | | | | | | | |
| | 58 | | | | | | | |
| | 59 | | | | | | | |
| | 60 | | | | | | | |
| | 61 | | | | | | | |
| | 62 | | | | | | | |
| | 63 | | | | | | | |
| | 64 | | | | | | | |
| | 65 | | | | | | | |
| | 66 | | | | | | | |
| | 67 | | | | | | | |
| | 68 | | | | | | | |
| | 69 | | | | | | | |
| | 70 | | | | | | | |
| | 71 | | | | | | | |
| | 72 | | | | | | | |
| | 73 | | | | | | | |
| | 74 | | | | | | | |
| | 75 | | | | | | | |
| | 76 | | | | | | | |
| | 77 | | | | | | | |
| | 78 | | | | | | | |
| | 79 | | | | | | | |
| | 80 | | | | | | | |
| | 81 | | | | | | | |
| | 82 | | | | | | | |
| | 83 | | | | | | | |
| | 84 | | | | | | | |
| | 85 | | | | | | | |
| | 86 | | | | | | | |
| | 87 | | | | | | | |
| | 88 | | | | | | | |
| | 89 | | | | | | | |
| | 90 | | | | | | | |
| | 91 | | | | | | | |
| | 92 | | | | | | | |
| | 93 | | | | | | | |
| | 94 | | | | | | | |
| | 95 | | | | | | | |
| | 96 | | | | | | | |
| | 97 | | | | | | | |
| | 98 | | | | | | | |
| | 99 | | | | | | | |
| | 100 | | | | | | | |

M0125298

## SEARCHED

| Class | Sub. | Date | Exmr. |
|---|---|---|---|
| 364 | 478 | 4/11/91 | JMT |
|  | 479 |  |  |
|  | 413.01 |  |  |
|  | 413.02 |  |  |
| 235 | 385 |  |  |
| 221 | 451 |  |  |
|  | 7 |  |  |
|  | 15 |  |  |
| Search update |  | 1/14/02 | JMT |
| 414 | 788 | 1/14/02 | JMT |
|  | 789 |  |  |
|  | 790 |  |  |
|  | 799 |  |  |
|  | 266 |  |  |
|  | 261 |  |  |
|  | 273 |  |  |
|  | 253 |  |  |
|  | 235 |  |  |
|  | 234 |  |  |
|  | 240 |  |  |

## INTERFERENCE SEARCHED

| Class | Sub. | Date | Exmr. |
|---|---|---|---|
| As shown above |  | 1/14/02 | JMT |

## SEARCH NOTES

|  | Date | Exmr. |
|---|---|---|
| APS terms: | 4/12/91 | JMT |
| medin? |  |  |
| medic? |  |  |
| Drug # |  |  |
| Bar code? |  |  |
| order# |  |  |
| Package |  |  |
| Prescription |  |  |
| pill |  |  |
| computer |  |  |
| CPU |  |  |
| microprocessor |  |  |
| processor |  |  |
| ADS update terms: | 1/14/02 | JMT |
| Package |  |  |
| vial |  |  |
| computer |  |  |
| CPU |  |  |
| microprocessor |  |  |
| processor |  |  |
| controller |  |  |
| Automatic Storage retrieval |  |  |

M0125299

₪/469217

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
<u>FEE RECORD SHEET</u>

060  01/30/90  07469217                    1 201      265.00 CK

BN30118  02/07/90  07469217        01-0693  030  201        26.00CR

PTO-1556
(5/87)

M0125300

U/469217



PATENT

Docket No. 1797.003

Commissioner of Patents and Trademarks
Washington, D.C. 20231

NEW APPLICATION TRANSMITTAL

Transmitted herewith for filing is the patent application of

Inventor(s):   Sean C. McDonald, Ellen J. Hertz, James A. Smith,
Gregory Toto

*WARNING: Patent must be applied for in the name(s) of all of the actual inventor(s). 37 CFR 1.41(a) and 1.53(b).*

For (title):  A SYSTEM FOR FILLING ORDERS

## 1. Type of Application

This new application is for a(n) *(check one applicable item below)*:

- [X] Original
- [ ] Design
- [ ] Plant

*WARNING:  Do not use this transmittal for a completion in the U.S. of an International Application under 35 U.S.C. 371(c)(4) unless the International Application is being filed as a divisional, continuation or continuation-in-part application.*

*NOTE:  If one of the following 3 items apply then complete and attach ADDED PAGES FOR NEW APPLICATION TRANSMITTAL WHERE BENEFIT OF A PRIOR U.S. APPLICATION CLAIMED.*

- [ ] Divisional
- [ ] Continuation
- [ ] Continuation-in-part (CIP)

### CERTIFICATION UNDER 37 CFR 1.10

I hereby certify that this New Application Transmittal and the documents referred to as enclosed therein are being deposited with the United States Postal Service on this date __January 24, 1990__ in an envelope as "Express Mail Post Office to Addressee" Mailing Label Number __MB137703082__ addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

__Tracey L. Milka__
(Type or print name of person mailing paper)

(Signature of person mailing paper)

*NOTE:   Each paper or fee referred to as enclosed herein has the number of the "Express Mail" mailing label placed thereon prior to mailing. 37 CFR 1.10(b).*

(Application Transmittal [4-1]—page 1 of 7)

M0125301

2. **Benefit of Prior U.S. Application(s) (35 USC 120)**

   NOTE: *If the new application being transmitted is a divisional, continuation or a continuation-in-part of a parent case, or where the parent case is an International Application which designated the U.S., then check the following item and complete and attach ADDED PAGES FOR NEW APPLICATION TRANSMITTAL WHERE BENEFIT OF PRIOR U.S. APPLICATION(S) CLAIMED.*

   ☐ The new application being transmitted claims the benefit of prior U.S. application(s) and enclosed are ADDED PAGES FOR NEW APPLICATION TRANSMITTAL WHERE BENEFIT OF PRIOR U.S. APPLICATION(S) CLAIMED.

3. **Papers Enclosed Which Are Required For Filing Date Under 37 CFR 1.53(b) (Regular) or 37 CFR 1.153 (Design) Application**

   _14_ Pages of specification

   _8_ Pages of claims

   _1_ Pages of Abstract

   _14_ Sheets of drawing

   ☐ formal

   ☒ informal

   WARNING: *DO NOT submit original drawings. A high quality copy of the drawings should be supplied when filing a patent application. The drawings that are submitted to the Office must be on strong, white, smooth, and non-shiny paper and meet the standards according to § 1.84. If corrections to the drawings are necessary, they should be made to the original drawing and a high-quality copy of the corrected original drawing then submitted to the Office. Only one copy is required or desired. Comments on proposed new 37 CFR 1.84. Notice of March 9, 1988 (1090 O.G. 57-62).*

   NOTE: *"Identifying indicia such as the serial number, group and unit, title of the invention, attorney's docket number, inventor's name, number of sheets, etc., not to exceed 2¾ inches (7.0 cm.) in width may be placed in a centered location between the side edges within three fourths inch (19.1 mm.) of the top edge. Either this marking technique on the front of the drawing or the placement, although not preferred, of this information and the title of the invention on the back of the drawings is acceptable." Proposed 37 CFR 1.84(t). Notice of March 9, 1988 (1090 O.G. 57-62).*

4. **Additional papers enclosed**

   ☐ Preliminary Amendment

   ☐ Information Disclosure Statement

   ☐ Form PTO-1449

   ☐ Citations

   ☐ Declaration of Biological Deposit

   ☐ Authorization of Attorney(s) to Accept and Follow Instructions from Representative

   ☐ Special Comments

   ☐ Other

(Application Transmittal [4-1]—page 2 of 7)

M0125302

5. **Declaration or oath**

[X] Enclosed

executed by *(check all applicable boxes)*

[X] inventor(s).

[ ] legal representative of inventor(s). 37 CFR 1.42 or 1.43

[ ] joint inventor or person showing a proprietary interest on behalf of inventor who refused to sign or cannot be reached.

[ ] this is the petition required by 37 CFR 1.47 and the statement required by 37 CFR 1.47 is also attached. *See item 13 below for fee.*

[ ] Not Enclosed.

*WARNING: Where the filing is a completion in the U.S. of an International Application but where a declaration is not available or where the completion of the U.S. application contains subject matter in addition to the International Application the application may be treated as a continuation or continuation-in-part, as the case may be, utilizing ADDED PAGE FOR NEW APPLICATION TRANSMITTAL WHERE BENEFIT OF PRIOR U.S. APPLICATION CLAIMED.*

[ ] Application is made by a person authorized under 37 CFR 1.41(c) on behalf of all the above named inventor(s). The declaration or oath, along with the surcharge required by 37 CFR 1.16(e) can be filed subsequently.

*Note: It is important that all the correct inventor(s) are named for filing under 37 CFR 1.41(c) and 1.53(b).*

[ ] Showing that the filing is authorized. *(Not required unless called into question. 37 CFR 1.41(d).*

6. **Inventorship Statement**

*WARNING: If the named inventors are each not the inventors of all the claims an explanation, including the ownership of the various claims at the time the last claimed invention was made, should be submitted.*

The inventorship for all the claims in this application are:

[X] The same

**or**

[ ] Are not the same. An explanation, including the ownership of the various claims at the time the last claimed invention was made,

[ ] is submitted.

[ ] will be submitted.

7. **Language**

*NOTE: An application including a signed oath or declaration may be filed in a language other than English. A verified English translation of the non-English language application and the processing fee of $30.00 required by 37 CFR 1.17(k) is required to be filed with the application or within such time as may be set by the Office. 37 CFR 1.52(d).*

*NOTE: A non-English oath or declaration in the form provided or approved by the PTO need not be translated. 37 CFR 1.69(b).*

[X] English

[ ] non-English

[ ] the attached translation is a verified translation. 37 CFR 1.52(d).

(Application Transmittal [4-1]—page 3 of 7)

M0125303

8. Assignment

    ☒ An assignment of the invention to   <u>Automated Healthcare, Inc.</u>

       ☑ is attached.
       ☐ will follow.

9. Certified Copy

Certified copy(ies) of application(s)

| (country) | (appln. no.) | (filed) |
|---|---|---|
| (country) | (appln. no.) | (filed) |
| (country) | (appln. no.) | (filed) |

from which priority is claimed

    ☐ is(are) attached.
    ☐ will follow.

*Note:* The foreign application forming the basis for the claim for priority must be referred to in the oath or declaration, 37 CFR 1.55(a) and 1.63.

*NOTE:* This item is for any foreign priority for which the application being filed directly relates. If any parent U.S. application or International Application from which this application claims benefit under 35 U.S.C. 120 is itself entitled to priority from a prior foreign application then complete item 18 on the ADDED PAGES FOR NEW APPLICATION TRANSMITTAL WHERE BENEFIT OF PRIOR U.S. APPLICATION(S) CLAIMED.

10. Fee Calculation (37 CFR 1.16)

  A. ☑ Regular application

| | CLAIMS AS FILED | | | |
|---|---|---|---|---|
| | Number filed | Number Extra | Rate | Basic Fee $370.00 |
| Total Claims | 23 −20= | 3 | X $ 12.00 | 36.00 |
| Independent Claims (37 CFR 1.16(b)) | 6 −3= | 3 | X $ 36.00 | 108.00 |
| Multiple dependent claim(s), if any (37 CFR 1.16(d)) | | | $120.00 | |

    ☐ Amendment cancelling extra claims enclosed.
    ☐ Amendment deleting multiple dependencies enclosed.
    ☐ Fee for extra claims is not being paid at this time.

*NOTE:* If the fees for extra claims are not paid on filing they must be paid or the claims cancelled by amendment, prior to the expiration of the time period set for response by the Patent and Trademark Office in any notice of fee deficiency. 37 CFR 1.16(d).

                Filing Fee Calculation      $   <u>514.00</u>

M0125304

B. ☐ Design application
($150.00—37 CFR 1.16(f))

    Filing Fee Calculation      $ _____

C. ☐ Plant application
($250.00—37 CFR 1.16(g))

    Filing fee calculation      $ _____

11. **Small Entity Statement(s)**

    ☒ Verified Statement(s) that this is a filing by a small entity under 37 CFR 1.9 and 1.27 is(are) attached.

    Filing Fee Calculation (50% of A, B or C above)      $ _257.00_

NOTE: *Any excess of the full fee paid will be refunded if a verified statement and a refund request are filed within 2 months of the date of timely payment of a full fee. 37 CFR 1.28(a).*

12. **Request for International-Type Search (37 CFR 1.104(d))** *(complete, if applicable)*

    ☐ Please prepare an international-type search report for this application at the time when national examination on the merits takes place.

13. **Fee Payment Being Made At This Time**

    ☐ Not Enclosed

        ☐ No filing fee is to be paid at this time. (*This and the surcharge required by 37 CFR 1.16(e) can be paid subsequently.*)

    ☒ Enclosed

        ☒ basic filing fee      $ _257.00_

        ☒ recording assignment
($8.00; 37 CFR 1.21(h))      $ _8.00_

        ☐ petition fee for filing by other than all the inventors or person on behalf of the inventor where inventor refused to sign or cannot be reached. ($120.00; 37 CFR 1.47 and 1.17(h))      $ _____

        ☐ for processing an application with a specification in a non-English language. ($30.00; 37 CFR 1.52(d) and 1.17(k))      $ _____

        ☐ processing and retention fee ($120.00; 37 CFR 1.53(d) and 1.21(l))

        ☐ fee for international-type search report ($30.00; 37 CFR 1.21(e)).      $ _____

NOTE: *37 CFR 1.21(l) establishes a fee for processing and retaining any application which is abandoned for failing to complete the application pursuant to 37 CFR 1.53(d) and this, as well as the changes to 37 CFR 1.53 and 1.78, indicate that in order to obtain the benefit of a prior U.S. application, either the basic filing fee must be paid or the processing and retention fee of § 1.21(l) must be paid within 1 year from notification under § 53(d).*

    **Total fees enclosed**      $ _265.00_

(Application Transmittal [4-1]—page 5 of 7)

M0125305

14. **Method of Payment of Fees**

☒ Check in the amount of $ __265.00__ (CK. #164)
_____8.00__ (CK. #165)

☐ Charge Account No. _____ in the amount of $_____. A duplicate of this transmittal is attached.

*NOTE: Fees should be itemized in such a manner that it is clear for which purpose the fees are paid. 37 CFR 1.22(b).*

15. **Authorization to Charge Additional Fees**

*WARNING: If no fees are to be paid on filing the following items should not be completed.*

*WARNING: Accurately count claims, especially multiple dependent claims, to avoid unexpected high charges, if extra claim charges are authorized.*

☒ The Commissioner is hereby authorized to charge the following additional fees by this paper and during the entire pendency of this application to Account No. __01-0693__ :

☒ 37 CFR 1.16(a), (f) or (g) (filing fees)

☒ 37 CFR 1.16(b), (c) and (d) (presentation of extra claims)

*NOTE: Because additional fees for excess or multiple dependent claims not paid on filing or on later presentation must only be paid or these claims cancelled by amendment prior to the expiration of the time period set for response by the PTO in any notice of fee deficiency (37 CFR 1.16(d)), it might be best not to authorize the PTO to charge additional claim fees, except possibly when dealing with amendments after final action.*

☐ 37 CFR 1.16(e) (surcharge for filing the basic filing fee and/or declaration on a date later than the filing date of the application)

☐ 37 CFR 1.17 (application processing fees)

*WARNING: While 37 CFR 1.17(a), (b), (c) and (d) deal with extensions of time under § 1.136(a) this authorization should be made only with the knowledge that "Submission of the appropriate extension fee under 37 C.F.R. 1.136(a) is to no avail unless a request or petition for extension is filed." (Emphasis added). Notice of November 5, 1985 (1060 O.G. 27).*

☐ 37 CFR 1.18 (issue fee at or before mailing of Notice of Allowance, pursuant to 37 CFR 1.311(b))

*NOTE: Where an authorization to charge the issue fee to a deposit account has been filed before the mailing of a Notice of Allowance, the issue fee will be automatically charged to the deposit account at the time of mailing the notice of allowance. 37 CFR 1.311(b).*

*NOTE: 37 CFR 1.28(b) requires "Notification of any change in loss of entitlement to small entity status must be filed in the application . . . prior to paying, or at the time of paying, . . . issue fee". From the wording of 37 CFR 1.28(b): (a) notification of change of status must be made even if the fee is paid as "other than a small entity" and (b) no notification is required if the change is to another small entity.*

16. **Instructions As To Overpayment**

☒ credit Account No. __01-0693__

☐ refund

Reg. No. 30,587

Tel. No. (412) 394-4900

SIGNATURE OF ATTORNEY

__Ansel M. Schwartz, Esquire__
Type or print name of attorney

__Alder, Cohen & Grigsby, P.C.__
P.O. Address __2900 CNG Tower__
__625 Liberty Avenue__
__Pittsburgh, PA   15222__

(Application Transmittal [4-1]—page 6 of 7)

M0125306

☐ **Incorporation by reference of added pages**

*Check the following item if the application in this transmittal claims the ben-efit of prior U.S. application(s) (including an international application enter-ing the U.S. stage as a continuation, divisional or C-I-P application) and complete and attach the ADDED PAGES FOR NEW APPLICATION TRANSMITTAL WHERE BENEFIT OF PRIOR U.S. APPLICATION(S) CLAIMED*

☐ Plus Added Pages For New Application Transmittal Where Benefit Of Prior U.S. Application(s) Claimed

Number of pages added ——————————

☐ Plus Added Pages For Papers Referred To In Item 4 Above

Number of pages added ——————————

☒ **Statement Where No Further Pages Added**

*(If no further pages form a part of this Transmittal then end this Transmittal with this page and check the following item)*

☒ This transmittal ends with this page.

(Application Transmittal [4-1]—page 7 of 7)

M0125307

265.∞ – 201    A

07/469217

A SYSTEM FOR FILLING ORDERS

FIELD OF THE INVENTION

The present invention relates to filling orders. More specifically, the present invention relates to the automated filling of prescription and automated restocking of medicines used for filling the orders.

BACKGROUND OF THE INVENTION

Currently, in large hospital environments, doctors visit patients in nursing units and write out medication orders for each patient. A patient is typically placed on a certain medication treatment which requires multiple doses of medication over a period of a day. Some medications are administrated at certain times of the day and possibly at intervals of several hours. Patients may also request certain medications on an elective basis for disorders such as headaches. These requests are included in the doctor's order that is sent from the nursing unit to the central pharmacy of the hospital.

Once an order is received by the pharmacy, it is checked by registered pharmacists and input into the pharmacy information system. These orders reflect not only orders that are added to a particular patient's treatment but changes in the medication treatment. The pharmacy information system combines this information with the patient's existing medication schedule and develops a patient medication profile. A fill list is generated from that profile. The fill list is a list of all the medications that must be distributed to all patients for the day. This information is sent to the pharmacy printer where a hard copy is generated.

At this point, the drugs for a particular patient are hand picked by either a pharmacist or a pharmacy technician and placed in the particular patient's designated box. A registered pharmacist must then check the accuracy of the patient order before it leaves the pharmacy. Individual patient boxes are then loaded into a large cassette and delivered to the nursing unit.

Approximately 30% of the drugs dispensed each day are returned to the pharmacy unused. Since each drug is individually packaged, the drugs must be returned to the pharmacy stock. Patients are then credited for unused medication. This

1

M0125308

1  return and crediting process is a very time consuming task and requires significant
2  amount of pharmacy man power.
3      Currently, this is a very time consuming, man power intensive task. In a typical
4  large pharmacy up to 35 pharmacists and pharmacy technicians are responsible for all
5  aspects of the unit dose dispensing task. Because this process is done manually a
6  certain amount of error exists. Studies have estimate that a half percent error rate is
7  typical in a large hospital. Since a hospital may dispense over 6000 doses each day,
8  this error rate leads to a significant number of missed or incorrect doses.
9      Several companies have tried to automate this process through various
10  approaches to the problem. Meditrol, utilizes a vending machine approach to dispense
11  the unit dose medications. Each nursing unit must have it's own stock of prescription
12  drugs. Nurses key in a patient ID and the drugs for that patient are then dispensed
13  from the vending machine. This system is very expensive due to the necessity of
14  purchasing a system for each nursing unit. Also, restocking each machine is a very
15  time consuming task. Implementation of the system requires a complete modification of
16  the current drug dispensing process which many hospitals are reticent to undertake.
17  The system claims no labor saving advantages from it's implementation.   This system
18  is covered under patent number 3,917,045 titled "Drug Dispensing Apparatus" and
19  dated Nov. 11, 1975.
20      Baxter Travenol uses a dispensing system from Samsung, a Korean company,
21  which dispenses bulk solids into a package which is dispensed to the pharmacist. This
22  system only dispenses the 200 most frequently used solids. A typical hospital
23  formulary can contain over 1500 different medications, many in liquid, syringe or bottle
24  form. These medications must be manually picked by the pharmacy.
25      Neither system allows the dispensed medications to be automatically returned
26  to the storage area.
27      In the preferred embodiment of the invention described herein, the Automated
28  Pharmacy Station™, or APS™, is able to dispense all dosage forms currently
29  contained in a hospital pharmacy. Medicines are automatically dispensed by the
30  system per a patient order and placed in medication boxes for the pharmacist's check.
31  Each drug is individually barcoded so that the accuracy of the dispensing process can
32  be automatically checked by the system. Once drugs are returned to the pharmacy the
33  system automatically returns the drugs to it's inventory and credits the patient's
34  account for the drugs dispensed.  The hospital will recognize significant labor savings
35  as well as savings based on improved accuracy in the dispensing function and better
36  tracking of inventory and expired medications.

2

M0125309

1
2                                SUMMARY OF THE INVENTION
3
4        The present invention pertains to a system for filling orders, such as
5    prescriptions for patients.  The system comprises means for holding packages. Each
6    package has the same type of contents being held in a predetermined location by the
7    holding means. Each package has an identity which defines the contents therein. The
8    holding means has a plurality of predetermined locations corresponding to a plurality
9    of different types of contents. Additionally, the system is comprised of means for
10   supplying packages to the holding means. Also, there is a means for picking a
11   package from the holding means that is identified in the order for the purpose of filling
12   the order, or from the supplying means for the purpose of restocking the holding
13   means. The picking means is in communication with the holding means and the
14   supplying means.
15
16       In the preferred embodiment, the contents of each package is a single dose of
17   medicine.
18
19

3

## BRIEF DESCRIPTION OF THE DRAWINGS

In the accompanying drawings, the preferred embodiments of the invention and preferred methods of practicing the invention are illustrated in which :

Figure 1 is a schematic representation of a system for filling orders.

Figure 2 is a side view of a package.

Figure 3 is a perspective view of a schematic representation of a storage structure.

Figure 4a is a perspective view of a schematic representation of an end of arm tooling.

Figure 4b is a side cutaway representation of an end of arm tooling.

Figure 4c is a schematic representation of the mounting means for an end of arm tooling.

Figure 5 is a schematic representation of a side view of a support structure 28 with the tooling structure.

Figure 6a is a perspective view of a schematic representation of a rod connected to a back rod support bar.

Figure 6b is a schematic representation of a side view of a first rod and a second rod in a support structure.

Figure 7 is a schematic representation of an overhead view of an alternative system for filling an order.

Figure 8 is a flowchart of the filling process.

Figure 9 is a flowchart of the check process.

Figure 10 is a flowchart of the return process of medicines packages from a nursing unit.

Figure 11 is a flowchart of the restocking process.

4

1
2
3    DESCRIPTION OF THE PREFERRED EMBODIMENT
4
5    Referring now to the drawings wherein like reference numerals refer to similar or
6    identical parts throughout the several views, and more specifically to Figure 1 thereof,
7    there is shown a schematic representation of a system 10 for filling orders, such as
8    prescriptions for patients.  The system 10 is comprised of means 12 for holding
9    packages.  Each package has the same type of contents, such as a same type of
10   medicine and preferably a single dosage of the medicine.  Each package having the
11   same medicine is held at a predetermined location by the holding means 12.  Each
12   package 14 has an identity 16, preferably a bar code, which defines the contents, and
13   preferably the dosage of and expiration date of the medicine contained therein, as
14   shown in Figure 2.  Figure 2 is a schematic representation of a package 14.
15
16   For instance, in a preferred embodiment the package 14 could have A equal 3.50
17   inches, B equal 1.0 inches, C equal 3.0 inches and D equal 0.1875 inches.
18   Alternatively, the package 14 can have A equal 5 inches, B equal 1.25 inches, C equal
19   5.0 inches and D equal 0.1875 inches.  The holding means 12 has a plurality of
20   predetermined locations 18 corresponding to a plurality of different types of contents,
21   such as medicines, as shown in Figure 3.  Figure 3 is a schematic representation of a
22   perspective view of the holding means 12.
23
24   An individual dose of medicine can be manually fed into an automated packaging
25   system 98, as shown in Figure 1, which automatically seals the package and prints a
26   barcode label directly on the package. In a preferred embodiment there is utilized the
27   H-100™ packaging system as manufactured by Automated Packaging Systems of
28   Twinsburg, Ohio. With the addition of the Accu-Print™ 100 Programmable In-Line
29   Direct Transfer Imprinter, also manufactured by Automated Packaging Systems, a
30   barcode label can be printed directly on the medicine package.
31
32   The system 10 is also comprised of means 20, such as a restock rack, for supplying
33   packages 14 to the holding means 12, as shown in Figure 1.  There is also means 22
34   for picking a package 14 from the holding means 12 that is identified in the order, such
35   as a prescription, for the purpose of filling that prescription, or from the supplying

5

M0125312

1   means 20 for the purpose of restocking the holding means 12.  The picking means 22
2   is in communication with the holding means 12 and the supplying means 20.
3
4   The system 10 is also comprised of means 43, such as a pneumatic actuator, for
5   allowing the system 10 to position the picking means 38, in front of either holding
6   means 12, as shown in Figure 4. In the preferred embodiment, the picking means 38,
7   is mounted on a support rod 41 attached to the Y dimension of the tooling support
8   structure 44. A conceptual drawing of this device is described in Figure 8. This
9   structure 41, has means 45, for pneumatically flipping the picking means 38,
10  approximately 180·, such that the face of the gripper 38, is parallel to the X dimension.
11  This is activated in order to retrieve medicines as described below from either side of
12  the holding means 12.
13
14  The picking means 22 can include a computer 24, or local area network of computers,
15  having a database.  The database has the order, such as a prescription, to be filled,
16  and a record of the predetermined locations 18 of, for instance each different medicine
17  in the holding means 12.  The computer 24 guides the picking means 22 based on
18  information contained in the database such that the picking means 22 picks a
19  medicine package 14 according to the prescription to be filled.  The picking means 22
20  can also include means, such as a bar code reader 26 as shown in Figure 4a, for
21  determining the identity 16 of a medicine package 14 in the supplying means 20 and
22  providing its identity 16 to the computer 24.  The computer 24 guides the picking
23  means 22 such that the holding means 12 is restocked with the identified medicine
24  package 14 from the supplying means 20 according to the medicine in the medicine
25  package 14 and its predetermined location 18 in the holding means 12 that is known
26  by the computer 24.
27
28  The holding means 12 can include a structure 28 as shown in Figure 3.  The holding
29  means 12 can also include support rods 30 held by the structure 28.  The rods 30 hold
30  the medicine packages 14, as shown in Figure 6a.  Each rod 30 is associated with a
31  given medicine and holds medicine packages 14 with only the same medicine.
32
33  The structure 28 can include a plurality of back rod supports 32 from which the rods 30
34  extend.  The back rod supports 32 snap into place in the structure 28, as is well known
35  in the art.  The structure 28 with rod supports 32 forms an X,Y coordinate system with
36  each rod 30 and medicine packages 14 therein having a unique X,Y coordinate.  The

M0125313

1   picking means 22 is disposed adjacent to the structure 28, as shown in Figure 1, such
2   that a given medicine package 14 on an associated rod 30 can be picked by the
3   picking means 22 to fill a patient's prescription; or a given medicine package 14 in the
4   supplying means 20 can be picked by the picking means 22 to restock an associated
5   rod 30.
6
7   The system 10 can include a conveyor 34 in communication with the picking means
8   22. The system can also include patient prescription boxes 36 which are moved by
9   the conveyor 34 to the picking means 22 such that the picking means 22 provides the
10  medicine packages 14 that are picked to fill a given prescription to an associated box
11  36.
12
13  The picking means 22 can include at least one end of arm tooling 38, as shown in
14  Figures 4a and 4b, that picks the medicine packages 14. Figure 4a is a perspective
15  view of a schematic representation of the end of arm tooling 38. Figure 4b is a
16  simplified side view of the end of arm tooling. The picking means 22 also can include
17  a tooling support structure 40, as shown in Figure 5. The tooling support structure has
18  at least one column 44 to support the tooling 38 and at least one row 42 to support the
19  column 44 such that the tooling 38 in a housing 49 thereof moves along the column 44
20  under the power of a drive motor 47 to pick a given medicine package 14 hanging
21  from a corresponding support rod 30; or restock a given medicine package 14 on a
22  corresponding support rod 30. The picking means 22 can also include means 46 for
23  moving the column 44 with respect to the row 42. The moving means 46 is controlled
24  by the computer 24.
25
26  The end of arm tooling 38 is preferably comprised of a housing 49, as shown in Figure
27  4a. The tooling 38 is also comprised of means for storing medicine packages 14, such
28  as a storing rod 48, attached to the housing 49. The tooling 38 is also comprised of
29  means 50 for obtaining a medicine package 14. The obtaining means 50 is slidingly
30  attached to the housing 49 such that it can move in a Z direction, which is
31  perpendicular to the X,Y directions, to pick a medicine package 14 from a support rod
32  30 in the support structure 28 to which the housing 49 is adjacent and with which it is
33  aligned. The identifying means, for example, the bar code reader 26, is mounted on
34  the end of arm tooling 38 such that it can identify a package 14 to be picked by the
35  obtaining means 50.
36

7

M0125314

1   The obtaining means 50 preferably includes means for producing a suction, such as
2   an air line 55 controlled by a vacuum valve 54. The obtaining means 50 also
3   preferably includes an extension rod 52 in fluidic communication with a pneumatic
4   cylinder 53, as shown in Figure 4b. The extension rod 52 is slidingly attached with
5   respect to the Y and Z directions to the housing 49. A suction is maintained through
6   the air lines 55 when the vacuum valve 54 is activated. The obtaining means 50 also
7   can include a suction head 56 connected to the extension rod 52 through which a
8   medicine package 14 is picked with suction. The obtaining means 50, preferably also
9   includes means 58 for sensing when a package 14 is properly positioned on the
10  suction head 56 for example by detecting air flow therethrough. The suction head 56
11  is then moved to the storing means, such as the storing rod 48, to deposit the package
12  14 thereon. Preferably, the storing means is a storing rod 48 which extends from the
13  housing 49 such that the suction head 56 and the extension rod 52 can deposit a
14  package 14 thereon.
15
16  The extension rod 52 can move in the Y and Z directions to place a picked package 14
17  on the storing rod 48 under the action of vacuum valves and cylinders 51 and 53. The
18  vacuum valve 57 activates cylinder 51 to move both the cylinder 53 and the extension
19  rod 52 in the Y direction. The vacuum valve 59 activates cylinder 53 to move the
20  extension rod in the Z direction. The vacuum valve 54 provides suction to the air lines
21  55 and suction head 56 sufficient to pick a package 14 from a rod 30 of the support
22  structure 28 and then hold it to the suction head 56. The suction head 56 preferably
23  has two faces 60 and 61 through which suction can be drawn. One face 60 is capable
24  of picking a package 14 off of a rod 30 of the support structure 28 and the other face 61
25  is capable of picking a package 14 off of a storing rod 48. Preferably, the two faces 60
26  and 61 are parallel to each other and are parallel to the X axis. Each package 14
27  preferably has a face 62 and the packages 14 are held by the storing rod 48 and the
28  rods 30 of the support structure 28 such that the face 62 of each package is parallel to
29  the X axis. The outside face 60 is utilized when a package 14 is being removed from a
30  rod 30, and the inside face 61 is utilized when a package 14 is being removed from
31  the storing rod 48.
32
33  In an alternative embodiment, the rods 30 extend from the double rod support bar 64
34  in sets of two as shown in Figure 6b. A first rod 65 and a second rod 66 of each set
35  point essentially in the Z direction, but approximately 180 degrees apart from each
36  other. The picking means 22 includes a first end of arm tooling 67 and a second end

8

M0125315

1   of arm tooling 68 that picks the medicine packages 14; and a first tooling support
2   structure 70 and a second tooling support structure 72 as shown in Figure 7.  Each
3   tooling support structure has at least one column 44 and at least one row 42 to support
4   the column 44 such that the first and the second tooling moves along the respective
5   column 44 and the respective column 44 moves along the respective row 42 of the first
6   and second tooling support structure, respectfully, to pick a given medicine package
7   14 from a corresponding support rod 30, or restock a support rod 30 with an
8   associated medicine package 14.

10   In the operation of the preferred embodiment, doctors visit patients in nursing units and
11   write out medication orders for each patient.  A patient is typically placed on a certain
12   medication treatment which requires multiple doses of medication over a period of a
13   day.  Some medications are administrated at certain times of the day and possibly at
14   intervals of several hours.  Patients may also request certain medications on an
15   elective basis for disorders such as headaches.  These requests are included in the
16   doctor's order that is sent from the nursing unit to the central pharmacy of the hospital.
17   Once an order is received by the pharmacy, it is checked by registered pharmacists
18   and input into the pharmacy information system.  These orders reflect not only orders
19   that are added to a particular patient's treatment but changes in the medication
20   treatment.  The pharmacy information system combines this information with the
21   patient's existing medication schedule and develops a patient medication profile.  A fill
22   list is generated from that profile.  The fill list is a list of all the medications that must be
23   distributed to all patients for the day.  This information is sent to the pharmacy printer
24   where a hard copy is generated.

26   Means for communication between the pharmacy information system and the
27   Automated Pharmacy Station™ (APS™) exists by either tapping the serial data print
28   stream of the pharmacy information system or by a direct bi-directional communication
29   link.  The relevant information concerning the patient including drug type, dosage and
30   frequency is placed in the database of the APS™, see Figure 8.  The database of the
31   APS™ contains information about which drugs are to be dispensed that day to the
32   patient and all drugs that have been dispensed in the past to the patient.  Information
33   from the pharmacy information system is received on an ongoing basis throughout the
34   day.  New information can be entered into the APS™ at any time.  In addition to the fill
35   list, new orders and patient admittance, discharge and transfer information are
36   received and stored.  A specific prescription for a patient is filled as described in Figure

M0125316

8. Figure 8 is a flow chart with respect to the processing of a patient prescription. The patient box 36 is placed on the conveyor 34. When the turn comes for the patient box 36 to be filled, it has been shuttled into a position on the conveyor 34 such that the end of arm tooling 38 can communicate with the box 36 by way of the tooling structure 40 as shown in Figure 1. A stationary bar code reader 90 reads the bar code on the patient box 36. The patient identification number is then parsed from the bar code input. This causes the fill list for that particular patient to be retrieved from the APS™ database. The fill list is converted to data consisting of locations and number of picks. The data is then downloaded in order for the computer 24 to control the end of arm tooling 38 such that it knows what packages 14 to obtain and place in the patient box 36.

The specific medicine package 14 is picked by the column 44 moving along the row 42 until the column 44 has the same X coordinate as the medicine package 14 it desires to obtain. The end of arm tooling 38 then moves along the column 44 to the Y coordinate of the medicine package to be picked. It is also turned to the proper holding means 12 (either the first holding means 12a or the second holding means 12b) which has the desired package 14. These actions may also be performed simultaneously by the system. The tooling support structure utilized is a Hauser*TM* HLE linear drive.

When the end of arm tooling 38 is properly positioned, the suction rod 52 extends in the Z direction by pneumatic cylinder 53 such that the outside suction face 60 contacts the package face 62. The barcode reader 26 reads the identity 16 on the medicine package 14 in order to confirm that it is the proper medicine package to be picked with respect to the patient's prescription. The vacuum valve 54 activates a suction through the air lines 55 such that a suction drawn through the suction face 60 grabs the medicine package 14. When the contact is proper between the suction face 60 and the medicine package 14, the sensing means 58 sends a signal to the valve 59 causing the extension rod 52 to retract from the rod 30 of the support structure 28, pulling the medicine package 14 with it. Once the medicine package 14 is clear of the rod 30, the extension rod 52 positions the medicine package 14 that it has obtained, upon the storing rod 48.

Once the medicine package 14 is on the storing rod 48, the vacuum valve 54 terminates the suction and the medicine package is released from the suction face 60.

10

M0125317

1   The vacuum valve 57 then activates the cylinder 51 such that the extension rod 52
2   (and cylinder 53) are moved in the Y direction so the bottom of the suction head 56 is
3   above the package 14 on the storing rod 48. The extension rod is then moved forward
4   in the Z direction and downward in the Y direction by the respective valves and
5   cylinders to clear the package and position the suction head 56 for the next pick. The
6   computer 24 then notes that the medicine package 14 with the appropriate medicine
7   has been picked. The process is repeated for all the medicine identified in the
8   patient's prescription until all of the medicine packages 14 needed have been picked.
9
10  The end of arm tooling then positions itself with respect to the row 42 and column 44
11  such that it is over the patient box 36.  The end of arm tooling then positions the
12  outside suction face 60 behind the medicine packages on the storing rod 48 that have
13  been collected and strokes forward in the Z direction so that all packages 14 are
14  pushed off the storing rod 48 into the patient box 36.
15
16  More specifically, vacuum valve 57 activates the cylinder 51 to retract in the positive Y
17  direction such that the bottom of the suction head 56 is above the tops of the packages
18  14 on the storing rod 28. Then vacuum valve 59 activates cylinder 53 to retract the
19  extension rod 52 in the negative Z direction such that the outer suction face 60 is
20  behind all of the medicine packages 14 on the storing rod 48. Vacuum valve 57 is
21  then activated such that the suction head 56 is dropped back down in the negative Y
22  direction to be behind the packages 14.  Finally, vacuum valve 59 is activated such
23  that the extension rod 52 is extended in the positive Z direction and the front suction
24  face 60 pushes all packages 14 off the storing rod 48 into the patient box 36.
25
26  In the event that the wrong medicine package 14 was scanned and is picked, or the
27  medicine has expired, then the end of arm tooling 30 is moved to an empty portion of
28  the return area, where the medicine package 14 can be disposed. A pharmacy
29  technician will then manually sort the drugs on this rack, removing expired drugs and
30  placing the others in the return rack in order that they might be returned to their correct
31  location in the system. The process is then repeated for the next drug on the
32  prescription list that has not yet been obtained.
33
34  After a patient's prescription is filled and the patient box 36 has all the medicine
35  packages called for in the prescription, a conveyor belt 34 moves the patient box 36 to
36  a check station 80. An operator uses the check station bar code reader 82 to scan the

11

M0125318

bar code label on the filled patient box 36, see Figure 9. The patient identification
number is taken from the inputted bar code and the prescription of the patient is
displayed on the check station screen 84 of the check station console 86 connected to
the computer or network of computers 24. The operator then scans individual medicine
package bar codes in the patient box 36. The identity of the medicine packages 14 in
the patient box 36 are automatically checked for correctness with respect to the patient
list on the station screen 84. If the medicine packages 14 in the box 36 are correct,
then the patient box is allowed to continue on towards the ultimate destination and the
next filled patient box 36 is then checked. If the medicine packages 14 in the patient
box 36 are not correct, then it is determined whether the error, whatever that may be,
can be corrected. If it can, then the record on the check station screen 84 is corrected
and the procedure for verifying correctness is then repeated. If the problem cannot be
corrected, then the patient box 36 is dumped and the computer is notified that the
patient's prescription has not yet been filled.

With respect to the return process, see Figure 10, the patient box 36 is first removed
from a cassette returned from a nursing unit. An operator uses the return station
barcode scanner 91 on the return station 92 to scan the bar code on the patient box
36. The nursing unit number and the patient identification number is then parsed from
the inputted bar code of the patient box 36. The APS™ database is then accessed
and the patient dispensing record is retrieved. On the return screen 94, there is
displayed for a particular patient at the operator console 96, a list of the medicines
ordered and dispensed to the patient. The operator of the return station 92 then scans
the identity 16 of the medicine in the patient's box 36 with the return station bar code
scanner 91. The medicine packages 14 that are found thereon are verified as being
dispensed to the patients. The expiration date of the medicine in the medicine
package 14 is then determined. If the expiration date of a medicine in the medicine
package 14 has passed, then the medicine package 14 is discarded. If the expiration
date has not passed then the returned medicine package 14 is placed in the return
rack 20. If there is more medicine to be returned, the process is then repeated. If there
is no more medicine in the patient box 36 to return, then the return station console 96
is checked to verify the correctness of the medicine returned. If the screen is correct,
then the return record is accepted and the APS™ database is updated. If the screen
94 is incorrect, then the screen is corrected to correspond to the returned medicine
packages 14 and the patient box 36.

12

1  The APS™ data base is then accessed in order to retrieve the patient numbers and
2  locations transferred or admitted to the nursing unit.  If a new patient has been
3  transferred into that particular hospital bed, the system generates a barcode
4  containing his/her patient identification number. This label is placed on the patient box
5  to reflect the present patient in that hospital bed.
6
7  If there are more patient boxes 36 in the cassette, then the bar code on the next patient
8  box 36 is scanned and the return process continues as described above.  This process
9  is repeated for each cassette returned from the patient floor.
10
11  When medicine packages 14 are to be restocked to the structure 28, see Figure 11,
12  the return rack is placed in a predetermined position alongside the structure 28.  By
13  being placed in a predetermined position, the rods X and Y coordinates are known to
14  the computer 24.  The end of arm tooling 38 is then positioned for a given rod in the
15  return rack.  The bar code reader 26 on the end of arm tooling 38 then scans the
16  identity 16 of the medicine package 14 that is about to be picked by the end of arm
17  tooling 38.  The process of picking the medicine packages 14 onto the storing rod 48
18  of the end of arm tooling 38 is the same as identified above with respect to the process
19  of obtaining medicine packages 14 from the support structure 28.  The only difference
20  is that the order of the medicine packages 14 and their identity as they are picked is
21  saved in the computer 24.  When the storing rod 48 is then moved to the support
22  structure 28, in order to restock rods 30 therein, the computer knows the identity of the
23  respective medicine package 14 on the storing rod 48 which is about to be placed
24  back onto the corresponding rod 30 of support structure 28.
25
26  The placement of the package 14 from the storing rod 48 to the storage rod 30 of the
27  support structure 28 occurs in the following manner.  The extension rod 52 is retracted
28  in the negative Z direction such that the inside suction face 61 is in contact with the
29  medicine package 14.  The sensing means 58 determines whether proper contact is
30  made. Then the  extension rod 52 is moved a predetermined distance in the positive Z
31  direction to place the medicine package over a rod 30 of support structure 28.
32  Vacuum valve 54 is then deactivated to stop suction, allowing the medicine package
33  14 on the suction face 61 to drop away therefrom.  The extension rod 52 then moves in
34  the negative Z direction towards the medicine packages 14 on the storing rod 48 again
35  to repeat the process.  While it moves back to obtain another medicine package 14,
36  the sensor 58 trips when contact is made.  The process can be repeated until there are

13

1  no more medicine packages 14 on the storing rod 48. The computer 24 knows when
2  to stop returning packages since it knew how many packages were placed on the
3  storing rod 48 to begin with.
4
5  The restocking of the support structure 28 can be carried out during the evening when
6  the medicine is not being gathered by the end of arm tooling 38.  Alternatively,
7  restocking can be carried out simultaneously with picking if the system 10 has a pair of
8  rods as shown in Figure 6b, a first end of arm tooling 67, second end of arm tooling 68
9  and a first tooling structure 70 and a second tooling structure 72 is utilized, as shown
10  in Figure 7.  While, for instance, the first end of arm tooling 67 is picking medicine
11  packages 14 to fill a patient's prescription, the second end of arm tooling 68 can be
12  restocking the second side of the storage area 12.
13
14  Although the invention has been described in detail in the foregoing embodiments for
15  the purpose of illustration, it is to be understood that such detail is solely for that
16  purpose and that variations can be made therein by those skilled in the art without
17  departing from the spirit and scope of the invention except as it may be described by
18  the following claims.

14

M0125321

<u>WHAT IS CLAIMED IS</u>:

1.    A system for filling orders comprising:

means for holding packages, each package having the same type of contents being held at a predetermined location by the holding means, said holding means having a plurality of predetermined locations corresponding to a plurality of different types of contents;

means for supplying packages to the holding means; and

means for picking a package from the holding means that is identified in the order, or from the supplying means for the purpose of restocking the holding means, said picking means in communication with the holding means and supplying means.

2.    A system for filling prescriptions for patients comprising:

means for holding packages, each medicine package having an identity which defines the medicine therein, each package that has the same medicine being held at a predetermined location by the holding means, said holding means having a plurality of predetermined locations corresponding to a plurality of different medicines;

means for supplying medicine packages to the holding means; and

means for picking a medicine package from the holding means that is identified in a patient's prescription in order to fill the prescription, or from the supplying means in order to restock the holding means, said picking means in communication with holding means and the supplying means.

-15-

M0125322

3.   A system for filling prescriptions for patients comprising:

means for holding medicine packages, each package having a single dosage of medicine, each medicine package having an identity which defines the dosage and medicine therein, each package that has the same medicine being held at a predetermined location by the holding means, said holding means having a plurality of predetermined locations corresponding to a plurality of different medicines;

means for supplying medicine packages to the holding means;

means for picking a medicine package from the holding means that is identified in a patient's prescription in order to fill the prescription, or from the supplying means in order to restock the holding means, said picking means in communication with the holding means and the supplying means.

4.   A system as described in Claim 3 wherein the picking means includes a computer having a database, said database having a prescription to be filled, and the predetermined locations of each different medicine in the holding means, said computer guiding said picking means with said database such that the picking means picks a medicine package according to the prescription to be filled.

5.   A system as described in Claim 4 wherein said picking means includes means for determining the identity of a medicine package in the supplying means and providing its identity to the computer, said computer guiding said picking means such that the holding means is restocked with the identified medicine package from the supplying means according to

-16-

M0125323

the medicine in the medicine package and its predetermined location in the holding means that is known by the computer.

6. A system as described in Claim 5 wherein the holding means includes a structure and support rods held by the structure, said rods holding the medicine packages, each rod associated with a given medicine and holding medicine packages with only the same medicine.

7. A system as described in Claim 6 wherein the holding means includes a plurality of back rod supports from which the rods extend, said structure with back rod supports form an X,Y coordinate system with each rod and medicine packages therein having a unique X and Y coordinate, said picking means disposed adjacent said structure such that a given medicine package on an associated rod can be picked by the picking means to fill a patient's prescription; or a given medicine package in the supplying means can be picked by the picking means to restock an associated rod.

8. A system as described in Claim 7 including a conveyer in communication with the picking means; and patient prescription boxes which are moved by the conveyer to the picking means such that the picking means provides the medicine packages it has picked to fill a given prescription to an associated box.

9. A system as described in Claim 8 wherein the picking means includes at least one end of arm tooling that picks the medicine packages; and a tooling support structure having at least one column to support the tooling and at least one row to support the column such that the tooling moves along the column as the column moves along the row to pick a given medicine package hanging from a corresponding support rod, or restock a given medicine package on a corresponding support rod; and means

-17-

for moving the column with respect to the row, said moving means controlled by the computer.

5
~~10.~~   A system as described in Claim ~~8~~ 4 wherein the tooling is comprised of:

a housing;

means for storing medicine packages attached to the housing;

means for obtaining a medicine package, said obtaining means slidingly attached to the housing such that it can move in a Z direction, which is perpendicular to the X and Y direction, to pick a medicine package from a support rod in the support structure when the housing is adjacent to and aligned with a support rod, and can move in the Z direction to place a picked package on the storing means; and

wherein the identifying means is part of the end of arm tooling such that it can identify a package to be picked by the obtaining means, each of said packages having an identity disposed on them which can be read by the identifying means.

6
~~11.~~   A system as described in Claim ~~10~~ 5 wherein the identity on each package is a bar code, and the identifying means includes a bar code reader disposed on the obtaining means.

7
~~12.~~   A system as described in Claim ~~11~~ 6 wherein the obtaining means includes means for producing a suction; a suction rod in fluidic connection with the suction producing means, said suction rod slidingly attached with respect to the Y and Z directions to the housing and maintaining a suction therethrough when the suction producing means is activated;

-18-

M0125325

a suction head connected to the suction rod through which a medicine package is picked with suction; and means for sensing when a package is properly positioned on the suction head such that the suction rod is then moved to the storing means and deposits the package thereon.

13. A system as described in Claim 12 wherein the storing means is a storing rod which extends from the housing such that the suction head and the suction rod can deposit a package thereon.

14. A system as described in Claim 13 wherein the tooling includes valves and pneumatic cylinders for moving the suction rod in the Y and Z direction; and a vacuum pump for providing suction to the suction rod and suction head sufficient to pick a package from a rod of the support structure and then hold it to the suction head.

15. A system as described in Claim 14 wherein the suction head has two faces through which a suction can be drawn, each face capable of picking a package.

16. A system as described in Claim 15 wherein the two faces are parallel to each other and are parallel to the x-axis, and wherein each package has a face and the packages are held by the storing rod and the rods of the support structure such that the face of each package is parallel to the x-axis.

17. A system as described in Claim 3 wherein the rods extend from the back rod supports in sets of two, with a first rod and a second rod of each set pointing essentially in a Z direction, which is perpendicular to the X and Y directions, but approximately 180° apart from each other, and wherein the picking means includes a first and a second end of arm tooling that picks

-19-

M0125326

the medicine packages; and a first and a second tooling support structure, each tooling support structure having at least one column and at least one row to support the column, such that the first and the second tooling moves along the respective column and the respective column moves along the respective row of the first and second tooling support structure, respectively, to pick a given medicine package from a corresponding support rod, or restock a support rod with an associated medicine package.

18.    A system as described in Claim 1 wherein each package has an identity which defines the contents therein.

19.    A system for filling orders comprising:

means for holding packages, each package having the same type of contents being held at a predetermined location by the holding means, each package having an identity which defines the contents therein, said holding means having a plurality of predetermined locations corresponding to a plurality of different type of contents; and

means for picking a package from the holding means that is identified in the order, said picking means in communication with the holding means.

20.    A system for filling orders comprising:

first means for holding packages, and second means for holding packages, each package having the same type of contents being held at a predetermined location by the first and second holding means, said first and second holding means having a plurality of predetermined locations corresponding to a plurality of different types of contents; and

-20-

M0125327

means for picking a package from the first or second holding means that is identified in the order, said picking means disposed between and in communication with the first and second holding means.

21.  A system as described in Claim 20 wherein each holding means includes a structure; and support rods held by the structure, said rods holding the packages, each rod associated with a given package.

22.  A system as described in Claim 21 wherein the picking means includes at least one end of arm tooling that picks the packages; and a tooling support structure having at least one column to support the tooling and at least one row to support the column such that the tooling moves along the column as the column moves along the row to pick a given package hanging from a corresponding support rod, said end of arm tooling able to turn on the column to pick packages on either the first or second holding means; and

means for moving the column with respect to the row, said moving means controlled by a computer and in communication therewith.

23.  An end of arm tooling comprising:

a housing;

means for storing packages attached to the housing;

means for obtaining a package, said obtaining means slidingly attached to the housing such that it can move to pick a package from a support rod in a support structure when the housing is adjacent to and aligned with a support rod, and then move to place a picked package on the storing means; and

-21-

M0125328

means for identifying a package to be obtained by the obtaining means, said identifying means connected to the housing.

-22-

M0125329

*469,217*

ABSTRACT OF THE DISCLOSURE

A SYSTEM FOR FILLING ORDERS

A system for filling orders, such as prescriptions for patients, comprising a device for holding packages. Each package has the same type of contents being held in a predetermined location by the holding device. Each package has an identity which defines the contents therein. The holding device has a plurality of predetermined locations corresponding to a plurality of different types of contents. Additionally, the system is comprised of a device for supplying packages to the holding device. Also, there is a device for picking a package from the holding device that is identified in the order for the purpose of filling the order, or from the supplying device for the purpose of restocking the holding device. The picking device is in communication with the holding device and supplying device. In a preferred embodiment, the contents of each package is a single dosage of medicine.

M0125330

PATENT

Attorney's Docket No. __1797.003__

Applicant or Patentee: __Sean C. McDonald, et al.__

Serial or Patent No.: 0 / _____

Filed or Issued: _____

For: __A SYSTEM FOR FILLING ORDERS__

### VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS (37 CFR 1.9(f) and 1.27(c))—SMALL BUSINESS CONCERN

I hereby declare that I am

☐ the owner of the small business concern identified below:

☒ an official of the small business concern empowered to act on behalf of the concern identified below:

NAME OF CONCERN __Automated Healthcare, Inc.__

ADDRESS OF CONCERN __Suite 211, 3920 Old William Penn Highway,__
__Pittsburgh, PA 15235__

I hereby declare that the above identified small business concern qualifies as a small business concern as defined in 13 CFR 121.3-18, and reproduced in 37 CFR 1.9(d), for purposes of paying reduced fees under Section 41(a) and (b) of Title 35, United States Code, in that the number of employees of the concern, including those of its affiliates, does not exceed 500 persons. For purposes of this statement, (1) the number of employees of the business concern is the average over the previous fiscal year of the concern of the persons employed on a full-time, part-time or temporary basis during each of the pay periods of the fiscal year, and (2) concerns are affiliates of each other when either, directly or indirectly, one concern controls or has the power to control the other, or a third-party or parties controls or has the power to control both.

I hereby declare that rights under contract or law have been conveyed, to and remain with the small business concern identified above with regard to the invention, entitled

__A SYSTEM FOR FILLING ORDERS__

by inventor(s) __Sean C. McDonald, Ellen J. Hertz, James A. Smith__
__Gregory Toto__

described in

☒ the specification filed herewith.

☐ application serial no. 0 / _____, filed _____.

☐ patent no. _____, issued _____.

If the rights held by the above identified small business concern are not exclusive, each individual, concern or organization having rights to the invention is listed below* and no rights to the invention are held by any person, other than the inventor, who could not qualify as a small business concern under 37 CFR 1.9(d) or by any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

*NOTE: Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27).

(Small Entity–Small Business [7-4]—page 1 of 2)

M0125331

NAME _____

ADDRESS _____

☐ INDIVIDUAL    ☐ SMALL BUSINESS CONCERN    ☐ NONPROFIT ORGANIZATION

NAME _____

ADDRESS _____

☐ INDIVIDUAL    ☐ SMALL BUSINESS CONCERN    ☐ NONPROFIT ORGANIZATION

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small business entity is no longer appropriate. (37 CFR 1.28(b)).

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

NAME OF PERSON SIGNING ___Sean C. McDonald_____

TITLE OF PERSON OTHER THAN OWNER ___President_____

ADDRESS OF PERSON SIGNING ___Automated Healthcare, Inc._____

___Suite 211, 3920 Old William Penn Highway, Pittsburgh, PA 15235___

SIGNATURE

*Sean M. Donald*    Date  1/17/90

M0125332

Page 1 of 2

# Declaration and Power of Attorney For Patent Application
## English Language Declaration

As a below named inventor, I hereby declare that

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor (if only one name is listed below) or an original, first and joint inventor (if plural names are listed below) of the subject matter which is claimed and for which a patent is sought on the invention entitled

**A SYSTEM FOR FILLING ORDERS**

the specification of which

(check one)

☒ is attached hereto.

☐ was filed on _____ as

Application Serial No. 0 /

and was amended on _____
(if applicable)

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by any amendment referred to above.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, §1.56(a).

I hereby claim foreign priority benefits under Title 35, United States Code, §119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

Prior Foreign Application(s)                                                    Priority Claimed

| (Number) | (Country) | (Day/Month/Year Filed) | ☐ Yes | ☐ No |
| (Number) | (Country) | (Day/Month/Year Filed) | ☐ Yes | ☐ No |
| (Number) | (Country) | (Day/Month/Year Filed) | ☐ Yes | ☐ No |

I hereby claim the benefit under Title 35, United States Code, §120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, §112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, §1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing date of this application

Form PTO-FB-110 (8-83)                              Patent and Trademark Office-U.S. DEPARTMENT OF COMMERCE

(Declaration and Power of Attorney—English Language [1-12]—page 1 of 2)

M0125333

Page 2 of 2

___9_/_____  _____  _____
(Application Serial No )        (Filing Date)            (Status)
                                                  (patented, pending, abandoned)

___0_/_____  _____  _____
(Application Serial No )        (Filing Date)            (Status)
                                                  (patented, pending, abandoned)

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true, and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon

POWER OF ATTORNEY As a named inventor, I hereby appoint the following attorney(s) and/or agent(s) to prosecute this application and transact all business in the Patent and Trademark Office connected therewith (list name and registration number)

Andrew J. Cornelius, Reg. No. 29,142; Ansel M.
Schwartz, Reg. No. 30,587

Send Correspondence to:

Ansel M. Schwartz, Esquire          412/394-4987

Direct Telephone Calls to (name and telephone number)

Full name of sole or first inventor
Sean C. McDonald                                    1/17/90
                                                    Date
Inventor's signature
   [signature: Sean McDonald]
Residence
582 East End Avenue, Pittsburgh, PA  15221    USA
Citizenship
United States
Post Office Address
582 East End Avenue, Pittsburgh, PA  15221    USA

Full name of second joint inventor, if any
Ellen J. Hertz                                      1/17/90
                                                    Date
Second inventor's signature
   [signature: Ellen Hertz]
Residence
5446 Wilkins Avenue, Pittsburgh, PA  15217    USA
Citizenship
United States
Post Office Address
5446 Wilkins Avenue, Pittsburgh, PA  15217    USA

(Supply similar information and signature for third and subsequent joint inventors.)

Form PTO-FB-110 (8-83)          Patent and Trademark Office-U.S. DEPARTMENT OF COMMERCE

(Declaration and Power of Attorney—English Language [1-12]—page 2 of 2)

M0125334

ADDED PAGE TO COMBINED DECLARATION AND POWER OF ATTORNEY
FOR SIGNATURE BY THIRD AND SUBSEQUENT INVENTORS

Full name of third joint inventor, if any _James A. Smith_____

Inventor's signature _____ 1/17/90

Date _____ Country of Citizenship _United States_____

Residence _3909 Ash Drive, Allison Park, PA  15101_____

Post Office Address _3909 Ash Drive, Allison Park, PA  15101_____

Full name of fourth joint inventor, if any _Gregory Toto_____

Inventor's signature _____ 1/17/90

Date _____ Country of Citizenship _United States_____

Residence _110 Inglewood Drive, Pittsburgh, PA  15228_____

Post Office Address _110 Inglewood Drive, Pittsburgh, PA  15228_____

Full name of fifth joint inventor, if any _____

Inventor's signature _____

Date _____ Country of Citizenship _____

Residence _____

Post Office Address _____

(Added Page to Combined Declaration and Power of Attorney for Signature by Third and
Subsequent Inventors [1-2])

M0125335



07/469217

Figure 1

M0125336

07/469217



Figure 2

M0125337

07469217



Figure 3

07/469217



Figure 4a

07/469217



Figure 4b

80 PSI
air line

M0125340

07/469217



Figure 4c

07/469217



Figure 5

M0125342

07/469217



Figure 6A

07/469217



Figure 6B

07/469217



Figure 7

M0125345

PROCESS A PATIENT ORDER 



Figure 8

M0125346

DETAILED CHECK STATION                    17/469217



Figure 9

M0125347



DETAILED RETURN STATION

07/469217

Figure 10

M0125348

DETAILED RETURN DRUGS TO BIN          07/469217



Figure 11

M0125349

Print Of Drawing
As Original Filed

07/469217



Figure 1

M0125350



07/469217



Figure 2

M0125351

Print Of Drawing
As Original Filed

07/469217



Figure 3

M0125352

Print Of Drawing
As Original Filed

07/469217



Figure 4a





Print .Of Drawing
As Original Filed

07/469217



Figure 4c





Figure 5

M0125356



07/469217



Figure 6A

M0125357

Print Of Drawing
As Original Filed

07/469217



Figure 6B

M0125358



Figure 7

M0125359

Print Of Drawing
As Original Filed

07/469217

PROCESS A PATIENT ORDER



Figure 8

M0125360

Print Of Drawing
As Original Filed

## DETAILED CHECK STATION

07/469217



Figure 9

M0125361

Print Of Drawing
As Original Filed

07/469217

STATION



Figure 10

M0125362

Print Of Drawing
As Original Filed

07/469217

DETAILED RETURN DRUGS TO BIN



Figure 11

M0125363



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/469,217 | 01/24/90 | MC DONALD | S     1797003 |

EXAMINER

TRAMMELL, J

ANSEL M. SCHWARTZ
ALDER, COHEN AND GRIGSBY
625 LIBERTY AVE.,
PITTSBURGH, PA  15222

| ART UNIT | PAPER NUMBER |
|---|---|
| 236 | 2 |

DATE MAILED:     05/10/91

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☒ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), __0__ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☒ Notice of References Cited by Examiner, PTO-892.
2. ☒ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☒ Claims __1-23__ are pending in the application.

    Of the above, claims _____ are withdrawn from consideration.

2. ☐ Claims _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☒ Claims __1-5 and 18-20 and 23__ are rejected.

5. ☒ Claims __6-17 and 21-22__ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
    are ☐ acceptable; ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the
    examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 8-85)

M0125364

Serial No. 469,217                          -2-

1)   The title of the invention is not descriptive.   A new title
is required that is clearly indicative of the invention to which
the claims are directed.

2)   The drawings are objected to because the blank boxes in Figs
1-7 must be provided with description labels (Rule 1.83(a)).
Correction is required.

       Applicant is required to submit a proposed drawing
correction in response to this Office action.   However,
correction of the noted defect can be deferred until the
application is allowed by the examiner.

3)   The following is a quotation of the appropriate paragraphs
of 35 U.S.C. § 102 that form the basis for the rejections under
this section made in this Office action:

       A person shall be entitled to a patent unless --

       (b) the invention was patented or described in a printed
       publication in this or a foreign country or in public use or
       on sale in this country, more than one year prior to the
       date of application for patent in the United States.

       Claims 1-5, 18-19 and 20 are rejected under 35 U.S.C.
§ 102(b) as being anticipated by Modery et al. (4766547).

       As per claims 1-5 and 18-19, any conventional
automatic storage and retrieval system with diverse application
comprises:  means for holding container, (or packages) each
container having the same type of contents being held   at a
predetermined location by the holding means, said holding means
having a plurality of predetermined locations corresponding to a
plurality of different types of contents; me.ans for supplying

M0125365

Serial No. 469,217                              -3-

containers to the holding means; and means for picking a container
from the holding means that is identified in a order, or from the
supplying means for the purpose of restocking the holding means,
said picking means in communication with the holding means and
supplying means, a computer having a database having a order to
be filled; said computer guiding said picking means with said
database such that the picking means picks a container according
to the order to be filled and the picking means including means
for determining the identity of a container and restocking the
identified container according to its contains and its
predetermined location in the holding means.  For example Modery
et al. shows this kind of automatic storage and retrieval system
that meets all the claimed features, see Fig 1.  The intended use
for filling medicine prescriptions with a conventional automatic
storage and retrieval system is held not to distinguish from
prior art.

        As per claim 20, Modery meets these claimed features, see
Fig 1 item 20.

4)    Claims 2-5 are rejected under 35 U.S.C. § 103 as being
unpatentable over Modery et al. (47665471).

        As per claims 2-5, Modery shows a conventional
automatic storage and retrieval system as applied in the 102
rejection.

        Modery et al. does not expressly state that this type of

M0125366

Serial No. 469,217                    -4-

conventional automatic storage and retrieval system can be use
for packing of medicine.

Because of the well known diverse application of
conventional automatic storage and retrieval systems it would
have been obvious to a person of ordinary skill in the art at the
time of the invention to utilize just a system for fillings
prescriptions for patients, thus obtaining all the features in
claims 2-5.

5)    The following is a quotation of the appropriate paragraphs
of 35 U.S.C. § 102 that form the basis for the rejections under
this section made in this Office action:

A person shall be entitled to a patent unless --

(b) the invention was patented or described in a printed
publication in this or a foreign country or in public use or
on sale in this country, more than one year prior to the
date of application for patent in the United States.

Claim 23 is rejected under 35 U.S.C. § 102(b) as being
anticipated by Chucta (4669047).

As per claim 23, Chucta shows:  A housing; means for storing
packages or containers attached to the housing; means for
obtaining a package, said obtaining means sidlingly attached to
the housing such that it can move to pick a package from a
support rod in a support structure when the housing is adjacent
to and aligned with a support rod, and then move to place  a
picked package on the storing means; and means for identifying a
package to be obtained by the obtaining means, said identifying
means connected to the housing, see Fig. 7.

M0125367

Serial No. 469,217                              -5-


6)    Claims 6-17 and 21-22 are objected to as being dependent
upon a rejected base claim, but would be allowable if rewritten
in independent form including all of the limitations of the base
claim and any intervening claims.

7)    The prior art made of record and not relied upon is
considered pertinent to applicant's disclosure.

        Any inquiry concerning this communication or earlier
communications from the examiner should be directed to Jim
Trammell whose telephone number is (703) 1066.

        Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 0754.




                                        *Jerry Smith*
                                        JERRY SMITH
                                        SUPERVISORY PATENT EXAMINER
                                        ART UNIT 236

TRAMMELL:mrt
May 01, 1991

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP—APART AND DISCARD CARBON

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/469217 | GROUP ART UNIT 236 | ATTACHMENT TO PAPER NUMBER 2 |
|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S) Sean C. Mc Donald et al. | | |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| A | | 4 7 9 2 2 7 0 | 12/20/88 | Toshida | 364 | 478 | |
| B | | 4 7 8 6 2 2 7 | 11/22/88 | Henderson | 364 | 478 | |
| C | | 4 7 3 5 3 6 2 | 3/22/88 | Haraguchi | 364 | 479 | |
| D | | 4 8 4 7 7 6 4 | 7/11/89 | Halvorsen | 364 | 479 | |
| E | | 4 8 9 6 0 2 4 | 1/23/90 | Morello et al. | 235 | 361 | 10/19/87 |
| F | | 4 7 6 6 5 4 7 | 8/23/88 | Modery et al. | 364 | 478 | |
| G | | 4 6 6 9 0 4 7 | 5/26/87 | Chucta | 364 | 478 | |
| H | | | | | | | |
| I | | | | | | | |
| J | | | | | | | |
| K | | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG. | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| L | | | | | | | | | |
| M | | | | | | | | | |
| N | | | | | | | | | |
| O | | | | | | | | | |
| P | | | | | | | | | |
| Q | | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| R | |
|---|---|
| S | |
| T | |
| U | |

| EXAMINER Jim Trammel | DATE 4/17/91 | |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

M0125369

PTO - 94B
(Rev. 6-82)

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

ATTACHMENT TO
PAPER NUMBER 2

S.N. 469217

GROUP 236

## NOTICE OF PATENT DRAWINGS OBJECTION

Drawing Corrections and/or new drawings may only be
submitted in the manner set forth in the attached letter,
"Information on How to Effect Drawing Changes" PTO-1474.

A. ☑ The drawings, filed on ___1/24/90___ , are objected to as informal for reason(s)
checked below:

1. ☐ Lines Pale.

2. ☐ Paper Poor.

3. ☐ Numerals Poor.

4. ☐ Lines Rough and Blurred.

5. ☐ Shade Lines Required.

6. ☐ Figures Must be Numbered.

7. ☐ Heading Space Required.

8. ☐ Figures Must Not be Connected.

9. ☐ Criss-Cross Hatching Objectionable.

10. ☐ Double-Line Hatching Objectionable.

11. ☐ Parts in Section Must Be Hatched.

12. ☑ Solid Black Objectionable.
    *Figs 1, 3, 4A, 5 - 7*

13. ☐ Figure Legends Placed Incorrectly.

14. ☐ Mounted Photographs.

15. ☐ Extraneous Matter Objectionable.
    [37 CFR 1.84 (1)]

16. ☑ Paper Undersized; either 8½" x 14",
    or 21.0 cm. x 29.7 cm. required.
    *(Figs 1-11)*

17. ☑ Proper A4 Margins Required:
    ☐ TOP 2.5 cm.    ☐ RIGHT 1.5 cm.
    ☐ LEFT 2.5 cm.   ☐ BOTTOM 1.0 cm.

18. ☑ Other:
    - *Fig legends small; must be larger (Figs 1-11)*
    - *Halftone stipplings dig (Figs 1, 3, 4A, 5 6B 7)*
    - *characters small; must be at least 1/8" tall (Figs 1-11)*

B. ☑ The drawings, submitted on ___1/24/90___ , are so informal they cannot be
corrected. New drawings are required. Submission of the new drawings MUST be
made in accordance with the attached letter.

M0125370

36⁺.00 217 G.P 236

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of: Bryan McDonald et al.          Group No.: 236

Serial No.: 07/469,217          Examiner: J. Trammell          # 3

Filed: SYSTEM FOR FILLING ORDERS

For:

Commissioner of Patents and Trademarks          NOV 1 3 1991
Washington, D.C. 20231          Group 236

### PETITION AND FEE FOR EXTENSION OF TIME (37 CFR 1.136(a))

1.  This is a petition for an extension of time for a total period of ___three___ months
    (check and complete the applicable item below)

    (X) to respond to the Office Letter mailed on ___May 10, 1991___
    ( ) for _____
            (indicate matter being extended)

2.  A response in connection with the matter for which this extension is requested:

    (X) is filed herewith.
    ( ) has been filed.

3.  Applicant is

    (X) a small entity -- verified statement:

        ( ) attached.
        (X) already filed.

    ( ) other than a small entity.

4.  Calculation of extension fee

    | Total months requested | Fee for other than small entity | Fee for small entity |
    |---|---|---|
    | ( ) one month | $ 100.00 | $ 50.00 |
    | ( ) two months | $ 300.00 | $ 150.00 |
    | (X) three months | $ 730.00 | $ 365.00 |
    | ( ) four months | $ 1150.00 | $ 575.00 |
    | | Fee $ | |

### CERTIFICATE OF MAILING (37 CRF 1.8a)

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

070 AA 11/13/91 07469217

Angie Beyer 730.00 CK

Date: ___November 1, 1991___          _Angie Beyer_
                                      (Signature of person mailing paper)

(Petition and Fee for Extension of Time (37 CFR 1.136(a)) |11-2|—page 1 of 2)

(check and complete the next item, if applicable)

( )    An extension for _____ has already been secured and the fee paid
therefore of $_____ is deducted from the total fee due for the
total months of extension now requested.

Extension fee due with this request $_____

5.  Fee Payment

( X )    Attached is a check in the sum of $ 365.00 _____
( )    Charge fee to Account No. 02-4553 and for any additional extension
fee required or credit for any excess fee paid.  A duplicate of this
petition is attached.

Reg. No.: 29,362

Tel. No.: 412-562-1632

_Lynn J. Alstadt_

Lynn J. Alstadt
Buchanan Ingersoll Professional Corporation
56th Floor, 600 Grant Street
Pittsburgh, Pennsylvania   15219

(Petition and Fee for Extension of Time (37 CFR 1.136(a)[11-2]--page 2 of 2)

M0125372

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Group Art Unit 236 | : | PATENT APPLICATION |
| Examiner J. Trammell | : | |
| In re application of | : | |
| SEAN McDONALD et al. | : | SYSTEM FOR FILLING ORDERS |
| Serial No. 07/469,217 | : | |
| Filed January 24, 1990 | : | |

A M E N D M E N T

Pittsburgh, Pennsylvania 15219

November 1, 1991

Hon. Commissioner of Patents and Trademarks

Washington, D.C.   20231

Sir:

Change the title of this application from "A System for Filling Orders" to -- System for Selecting and Delivering Packages from a Holding Area to Fill Orders --.

Cancel claims 1 to 5, 18 to 21 and 23.

Amend the claims as follows:

6. (Amended)  A system [as described in claim 5] for selecting and delivering packages from a holding means or supply means to fill orders comprising:

M0125373

a.  [wherein the] holding means [includes a structure; and] comprised of a frame having a plurality of support rods [held by the structure, said rods] for holding [the] medicine packages, each rod associated with a given medicine and holding medicine packages with only the same medicine[.];

b.  means for supplying medicine packages to the support rods;

c.  means for picking medicine packages from the support rods in accordance with instructions received from a computer, said picking means being able to access the holding means and the supply means;

d.  a computer having a database containing the locations of all packages in the holding means able to receive orders for packages and able to direct the means for picking packages.

In claim 7, line 2, change "structure" to -- holding means --.

In claim 22, line 1, change "claim 21" to -- claim 6 --.

- 2 -

M0125374

<u>REMARKS</u>

This is in response to the Office Action dated May 10, 1991. A Power of Attorney and Request for Extension of Time are filed herewith. Applicants understand that previous counsel has submitted the appropriate request and fees for a two month extension of time. For that reason, only the third month extension fee is submitted by check. Should the fee not have been received for the first two months or should additional fees be due, the Examiner is authorized to charge those fees to Deposit Account No. 02-4553.

In the Office Action the Examiner objected to the title and the drawings, rejected claims 1 to 5, 18 to 20 and 23 and objected to the remaining claims. By this amendment applicants have provided a more specific title, cancelled the rejected claims and claim 21 and have rewritten the objectionable claims. Applicants respectfully request that a response to the drawing objection be deferred until claims have been allowed.

Claim 6 has been written in independent form. The Examiner stated that claim 6 would be allowable if rewritten. Claims 7 thru 17 and 22 depend from allowable claim 6 and are, therefore, allowable. Since all pending claims are allowable,

- 3 -

M0125375

reconsideration of the claims and issuance of a Notice of Allowance are respectfully requested.

Respectfully submitted,

BUCHANAN INGERSOLL, P.C.

By _Lynn J. Alstadt_
Lynn J. Alstadt
Registration No. 29,362

Attorneys for Applicants

(412) 562-1632

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: The Commissioner of Patents and Trademarks, Washington, D.C. 20231 on 11-1-91

_Angie Geyer_
Signature

_November 1, 1991_
Date of Signature

- 4 -

M0125376

FORM PTO-1083

In re application of: Sean McDonald et al.

Case Docket No.: 910517

Serial No.: 07/469,217

Filed: January 24, 1990

For: SYSTEM FOR FILLING ORDERS

THE COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, DC 20231

Sir:

Transmitted herewith is an amendment in the above-identified application.

[X] Small entity status of this application under 37 CFR 1.9 and 1.27 has been established by a verified statement previously submitted.

[ ] A verified statement to establish small entity status under 37 CFR 1.9 and 1.27 is enclosed.

[X] No additional fee is required.

The fee has been calculated as shown below:

| | (Col. 1) CLAIMS REMAINING AFTER AMENDMENT | | (Col. 2) HIGHEST NO. PREVIOUSLY PAID FOR | PRESENT EXTRA | SMALL ENTITY | | | OTHER THAN A SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | ADDIT. RATE | ADDIT. FEE | OR | RATE | FEE |
| Total | 10 | MINUS | 23 | -- | x 10 = | $ | OR | x 20 = | $ |
| Indep. | 1 | MINUS | 6 | -- | x 30 = | $ | OR | x 60 = | $ |
| FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | + 100 = | $ | OR | + 200 = | $ |
| | | | | | TOTAL ADDIT. FEE | $ -- | OR | TOTAL | $ |

* If entry in Col. 1 is less than entry in Col. 2, write "0" in Col. 3.
** If the "Highest No. Previously Paid For" IN THIS SPACE is less than 20, write "20" in this space.
*** If the "Highest No. Previously Paid For" IN THIS SPACE is less than 3, write "3" in this space.

[ ] Please charge by Deposit Account No. 02-4553 the amount of $ _____.
A duplicate copy of this sheet is attached.

[ ] A check in the amount of $ _____ is attached.

[X] The Commissioner is hereby authorized to charge payment of the following fees associated with this communication or credit any overpayment to Deposit Account No. 02-4553. A duplicate copy of this sheet is attached.

    [X] Any filing fees required under 37 CFR 1.16 for the presentation of extra claims.

    [ ] Any patent application processing fees under 37 CFR 1.17.

Respectfully submitted,

(412) 562-163 2

LJA/bem

Registration No.
BUCHANAN INGERSOLL PROFESSIONAL CORPORATION

M0125377





**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/469,217 | 01/24/90 | MC DONALD | S    1797003 |

EXAMINER

TRAMMELL, J

ANSEL M. SCHWARTZ
ALDER, COHEN AND GRIGSBY
625 LIBERTY AVE.,
PITTSBURGH, PA  15222

| ART UNIT | PAPER NUMBER |
|---|---|
| 2306 | 5 |

DATE MAILED:  01/23/92

### NOTICE OF ALLOWABILITY

PART I.

1. ☒ This communication is responsive to _Amendment A Filed 11/4/91_

2. ☒ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☒ The allowed claims are _6-17 and 20-22, (claims 1 to 5, 18 and 23 have been cancelled)_

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [ ] been received. [ ] not been received. [ ] been filed in parent application Serial No. _____ filed on _____.

6. ☐ Note the attached Examiner's Amendment.

7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☒ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

PART II.

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☒ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

   a. ☒ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. _2_. CORRECTION IS REQUIRED.

   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED. _Paper No. 2 Proc 2_

   c. ☒ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

   d. ☒ Formal drawings are now REQUIRED.

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachments:
☒ Examiner's Amendment
_ Examiner Interview Summary Record, PTOL- 413
_ Reasons for Allowance
☒ Notice of References Cited, PTO-892
_ Information Disclosure Citation, PTO-1449

_ Notice of Informal Application, PTO-152
_ Notice re Patent Drawings, PTO-948
_ Listing of Bonded Draftsmen
_ Other

_Jerry Smith_
JERRY SMITH
SUPERVISORY PATENT EXAMINER
ART UNIT 236

PTOL-37 (REV. 4-89) *

USCOMM-DC 89-3789

M0125378

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP—APART AND DISCARD CARBON

1 of 2

| FORM PTO-892 (REV. 3-78) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 07/469217 | GROUP ART UNIT 2306 | ATTACHMENT TO PAPER NUMBER | 5 |
|---|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S) Sean C. McDonald et al. | | | |

## U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| * | A | 5 0 4 7 9 4 8 | 9 10 91 | Turner | 364 | 477 | 4 25 88 |
| * | B | 3 8 7 8 0 4 5 | 11 4 75 | Williams et al. | 221 | 15 | |
| * | C | 5 0 3 6 4 6 2 | 7 30 91 | Kaufman et al. | 364 | 479 | 9 27 86 |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

## FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | | | | | | | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

## OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| R | | |
| S | | |
| T | | |
| U | | |

| EXAMINER Jim Trammell | DATE 1 14 92 | |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

M0125379



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

LYNN J. ALSTADT
BUCHANAN INGERSOLL, P.C.
56TH FLR., 600 GRANT ST.
PITTSBURGH, PA  15219

*Corrected*

**NOTICE OF ALLOWANCE
AND ISSUE FEE DUE**

☐ Note attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/469,217 | 01/24/90 | 013 | TRAMMELL, J | 2306 | 01/23/92 |

| First Named Applicant | MC DONALD, | SEAN C. |
|---|---|---|

TITLE OF INVENTION    SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A HOLDING AREA TO
FILL ORDERS (AS AMENDED)

| | ATT'YS DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 2 | 1797003 | 364-478.000 | W52 | UTILITY | YES | $565.00 | 04/23/92 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.**

*THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS
APPLICATION SHALL BE REGARDED AS ABANDONED.  THIS STATUTORY PERIOD CANNOT BE EXTENDED.*

**HOW TO RESPOND TO THIS NOTICE:**

I. Review the SMALL ENTITY Status shown above.

If the SMALL ENTITY is shown as YES, verify your
current SMALL ENTITY status:

A. If the Status is changed, pay twice the amount of the
FEE DUE shown above and notify the Patent and
Trademark Office of the change in status, or

B. If the Status is the same, pay the FEE DUE shown
above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with,
payment of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
Even if the ISSUE FEE has already been paid by a charge to deposit account, Part B should be completed and returned.
If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number.
Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

*IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees.*

**PATENT AND TRADEMARK OFFICE COPY**

M0125380





.TED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

ANSEL M. SCHWARTZ
ALDER, COHEN AND GRIGSBY
625 LIBERTY AVE.,
PITTSBURGH, PA 15222

**NOTICE OF ALLOWANCE
AND ISSUE FEE DUE**

[ ] Note attached communication from the Examiner
[ ] This notice is issued in view of applicants communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 07/469,217 | 01/24/90 | 013 | TRAMMELL, J | 2306 | 01/23/92 |

First Named Applicant: MC DONALD,    SEAN C.

TITLE OF INVENTION: SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A HOLDING AREA TO FILL ORDERS (AS AMENDED)

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 2 | 1797003 | 364-478.000 | W52 | UTILITY | YES | $565.00 | 04/23/92 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. PROSECUTION ON THE MERITS IS CLOSED.**

**THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

*HOW TO RESPOND TO THIS NOTICE:*

I. Review the SMALL ENTITY Status shown above.

If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

A. If the Status is changed, pay twice the amount of the FEE DUE shown above and notify the Patent and Trademark Office of the change in status, or

B. If the Status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with, payment of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE. Even if the ISSUE FEE has already been paid by a charge to deposit account, Part B should be completed and returned. If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number. Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

*IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees.*

**PATENT AND TRADEMARK OFFICE COPY**

M0125381

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Group Art Unit | : | PATENT APPLICATION |
| Examiner J. Trammell | : | |
| In re application of | : | |
| SEAN McDONALD et al. | : | SYSTEM FOR FILLING ORDERS |
| Serial No. 07/469,217 | : | |
| Filed January 24, 1990 | : | |

POWER OF ATTORNEY

      Automated Healthcare, Inc., assignee of the above-identified application, hereby appoints Lynn J. Alstadt, Registration No. 29,362; George P. Baier, Registration No. 26,717; Paul A. Beck, Registration, No. 22,289; Michael L. Dever, Registration No. 32,216; Gordon R. Harris, Registration No. 15,384; George Raynovich, Jr., Registration No. 19,829 and Alvin E. Ring, Registration No. 18,697, of the firm of Buchanan Ingersoll, P.C., whose post office address is 56th Floor, 600 Grant Street, Pittsburgh, Pennsylvania 15219, our attorneys in the above-identified application with full power of substitution and revocation, to amend or otherwise act relative to it as they may deem advisable, to transact all business in the Patent and Trademark Office in connection therewith and generally to do all matters and things needful in the premises, as fully and to all intents and purposes as the undersigned could do.

M0125382

All powers of attorney previously given are hereby revoked.

Please address all future correspondence to:

Lynn J. Alstadt
BUCHANAN INGERSOLL, P.C.
56th Floor
600 Grant Street
Pittsburgh, Pennsylvania  15219
412-462-1632

Signed this ___31___ day of __October__, 1991

AUTOMATED HEALTHCARE, INC.

By _____

___President_____
                              Title

M0125383



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Group Art Unit 236                    :        PATENT APPLICATION

Examiner J. Trammell                  :

In re application of                  :

SEAN McDONALD et al.                  :        SYSTEM FOR FILLING ORDERS

Serial No. 07/469,217                 :

Filed January 24, 1990                :

NEW POWER OF ATTORNEY AND
NEW CORRESPONDENCE ADDRESS

Pittsburgh, Pennsylvania 15219

November 1, 1991

Hon. Commissioner of Patents and Trademarks

   Washington, D.C.  20231

Sir:

   Enclosed is a new Power of Attorney including revocation

of the old Power.

   Please address all future correspondence and telephone

calls in the above-entitled application to:

   Lynn J. Alstadt
   Buchanan Ingersoll, P.C.
   56th Floor
   600 Grant Street
   Pittsburgh, Pennsylvania  15219
   412-562-1632

Respectfully submitted,

BUCHANAN INGERSOLL, P.C.

By _____
   Lynn J. Alstadt
   Registration 29,362
   Attorneys for Applicants

I hereby certify that this correspondence is being depos-
ited with the United States Postal Service as first
class mail in an envelope addressed to: Commissioner
of Patents and Trademarks, Washington, D.C. 20231.
on 11-1-91

(412) 562-1632

M0125384



**U.S. DEPARTMENT OF COMMERCE**
Patent and Trademark Office

Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

J. Trammell: art unit 236

469,217        1/24/90                          Paper No. _____7_____
S. McDonald, et al

Ansel M. Schwartz                      **MAILED**
Alder, Cohen & Grigshy
625 Liberty Ave.                       JAN 30 1992
Pittsburgh, PA  15222
                                       **GROUP 230**

This is in response to the communication re the Power of Attorney filed _____11/4/91_____

                                        assignee.

1. ☒ The power of attorney to you in this application has been revoked by the ~~applicant.~~

2. ☐ In view of the notice in this application of the death of _____
    his power of attorney is terminated.

3. ☒ The power of attorney to you in this application has been accepted by the Commissioner of Patents, & Trademarks.

4. ☐ The assignee in this application has intervened and appointed an attorney of his own selection.  Further correspondence will be held
    with said attorney. (Rule 36, Rules of Practice.)

5. ☐ The revocation of the power of attorney to _____ has been
    entered and said attorney has been notified.  Further correspondence will be addressed to you.

                                        assignee

6. ☐ On _____, the applicant appointed _____
    as additional attorney in this application.  Further correspondence will continue to be addressed to you as specified
    in the new power of attorney.

                                        assignee

7. ☐ On _____, the applicant appointed _____
    as additional attorney in this application.  Further correspondence will be addressed to said attorney.  MPEP 403.02

8. ☐ The associate power of attorney to you in this application has been revoked by the attorney of record.

    Lynn J. Alstadt, et al

    Lynn J. Alstadt
    BUCHANAN INGERSOL, P. C.          _signature_
    56th Flr.,600 Grant St.          The Director, Operation
    Pittsburgh, PA.  15219

                    **RETAIN THIS COPY IN THE APPLICATION FILE**              Copy A

FORM PTOL-305 (REV. 9/90)



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/469,217 | 01/24/90 | MC DONALD | S | 1797003 |

LYNN J. ALSTADT
BUCHANAN INGERSOLL, P.C.,
56TH FLR., 600 GRANT ST.
PITTSBURGH, PA  15219

| | EXAMINER |
|---|---|
| | TRAMMELL, J |
| ART UNIT | PAPER NUMBER |
| 2306 | 8 |

DATE MAILED:   10/22/92

## NOTICE OF ABANDONMENT

This application is abandoned in view of:

1. ☐ Applicant's failure to respond to the Office letter, mailed _____ .

2. ☐ Applicant's letter of express abandonment which is in compliance with 37 C.F.R. 1.138.

3. ☐ Applicant's failure to timely file the response received _____ within the period set in the Office letter.

4. ☒ Applicant's failure to pay the required issue fee within the statutory period of 3 months from the mailing date of _7-23-92_ of the Notice of Allowance.

   ☐ The issue fee was received on _____ .

   ☐ The issue fee has not been received in Allowed Files Branch as of _____ .

   In accordance with 35 U.S.C. 151, and under the provisions of 37 C.F.R. 1.316(b), applicant(s) may petition the Commissioner to accept the delayed payment of the issue fee if the delay in payment was unavoidable. The petition must be accompanied by the issue fee, unless it has been previously submitted, in the amount specified by 37 C.F.R. 1.17 (l), and a verified showing as to the causes of the delay.

   If applicant(s) never received the Notice of Allowance, a petition for a new Notice of Allowance and withdrawal of the holding of abandonment may be appropriate in view of Delgar Inc. v. Schuyler, 172 U.S.P.Q. 513.

5. ☐ Applicant's failure to timely correct the drawings and/or submit new or substitute formal drawings by _____ as required in the last Office action.
   ☐ The corrected and/or substitute drawings were received on _____ .

6. ☐ The reason(s) below.

DIRECT ANY INQUIRIES TO :
PUBLISHING DIVISION
MARCIA CAMPBELL
(703) 305-8190
    OR
PRISCILLA FULLER
(703) 305-8203

PTO-1432 (REV. 5-83)

M0125386

US005468110A

*10*

# United States Patent [19]

## McDonald et al.

[11] Patent Number: **5,468,110**

[45] Date of Patent: **Nov. 21, 1995**

[54] **AUTOMATED SYSTEM FOR SELECTING PACKAGES FROM A STORAGE AREA**

[75] Inventors: **Sean C. McDonald**, Pittsburgh, Pa.; **Ellen J. Hertz**, Clemmons, N.C.; **James A. Smith**, Allison Park, Pa.; **Gregory Toto**, Santa Cruz, Calif.

[73] Assignee: **Automated Healthcare, Inc.**, Pittsburgh, Pa.

[21] Appl. No.: **295,495**

[22] Filed: **Aug. 25, 1994**

### Related U.S. Application Data

[63] Continuation of Ser. No. 871,832, Apr. 21, 1992, abandoned, which is a continuation-in-part of Ser. No. 469,217, Jan. 24, 1990, abandoned.

[51] Int. Cl.⁶ .......................................... **B65G 1/04**

[52] U.S. Cl. .................. 414/273; 364/478; 414/280; 414/268; 414/281; 414/285

[58] Field of Search .......................... 235/385, 351; 414/266, 267, 268, 269, 270, 273, 274, 277, 280, 281, 282, 331, 285; 221/3, 9, 15; 364/478, 413.02, 479

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,802,580 | 4/1974 | Castaldi | 414/280 X |
| 3,986,612 | 10/1976 | Kamm et al. | 209/111.7 |
| 4,546,901 | 10/1985 | Buttarazzi | 414/280 X |
| 4,651,863 | 3/1987 | Reuter et al. | 414/280 X |
| 4,669,047 | 5/1987 | Chucta | 414/331 X |
| 4,667,390 | 7/1987 | Bonneton et al. | 414/282 |
| 4,786,325 | 11/1988 | Henderson | 414/273 X |
| 4,789,295 | 12/1988 | Boucher, Jr. et al. | 414/280 X |
| 4,792,270 | 12/1988 | Yoshida | 414/273 |
| 4,812,629 | 3/1989 | O'Neil et al. | 414/274 X |
| 4,820,109 | 4/1989 | Witt | 414/282 |
| 4,896,024 | 1/1990 | Morello et al. | 414/274 X |
| 5,129,777 | 7/1992 | Pahjonen et al. | 414/280 |

#### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2596209 | 10/1987 | France . | |
| 304 | 1/1979 | WIPO . | 414/273 |
| 85/00332 | 8/1984 | WIPO . | |

Primary Examiner—Frank E. Werner
Attorney, Agent, or Firm—Buchanan Ingersoll; Lynn J. Alstadt

[57] **ABSTRACT**

A system for filling orders, such as prescriptions for patients, comprising a device for holding packages. Each package has the same type of contents being held in a predetermined location by the holding device. Each package has an identity which defines the contents therein. The holding device has a plurality of predetermined locations corresponding to a plurality of different types of contents. Additionally, the system is comprised of a device for supplying packages to the holding device. Also, there is a device for picking a package from the holding device that is identified in the order for the purpose of restocking the holding device. The picking device is in communication with the holding device and supplying device. In a preferred embodiment, the contents of each package is a single dosage of medicine.

**22 Claims, 19 Drawing Sheets**



PALM II APPLICATION FILE DATA CODING SHEET    U.S. DEPARTMENT OF COMMERCE—PATENT & TM OFFICE

FORMAT NO. 1

FILING DATE    SPECIAL HANDLING    GROUP ART UNIT    CLASS    SHEETS OF DRAWINGS    ASST.    TOTAL CLAIMS    INDEPENDENT CLAIMS    SMALL ENTITY?    FILING FEE RECEIVED    SECURITY/FOREIGN CASE/LICENSE?

ATTORNEY DOCKET NUMBER

FORMAT NO. 2

FORMAT NO. 8

CONTINUITY CODE    PARENT APPLICATION SERIAL NUMBER    PARENT FILING DATE    STATUS CODE    PARENT PATENT NUMBER

RECORD 8 0 1
RECORD 8 0 2
RECORD 8 0 3
RECORD 8 0 4
RECORD 8 0 5
RECORD 8 0 6
RECORD 8 0 7
RECORD 8 0 8
RECORD 8 0 9
RECORD 8 1 0

☐ MORE ON SUPPLEMENTAL CODING SHEET

FORMAT NO. 9

COUNTRY CODE    PCT/FOREIGN APPLICATION SERIAL NUMBER    FILING DATE

RECORD 9 0 1
RECORD 9 0 2
RECORD 9 0 3
RECORD 9 0 4
RECORD 9 0 5
RECORD 9 0 6
RECORD 9 0 7
RECORD 9 0 8
RECORD 9 0 9
RECORD 9 1 0

FOREIGN PRIORITY CLAIMED?
☐ YES
☐ NO

☐ APPLICATION PAPERS

☐ MORE ON

M0125388

FORM PTO-875
REV. 1-86

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE

**PATENT APPLICATION FEE DETERMINATION RECORD**

SERIAL NO. 469,217

FILING DATE 1-24-90

APPLICANT (FIRST NAMED) McDonald et al

## CLAIMS AS FILED - PART I

| FOR | NO FILED | NO EXTRA | SMALL ENTITY RATE | FEE | OR | OTHER THAN A SMALL ENTITY RATE | FEE |
|-----|----------|----------|------|-----|-----|------|-----|
| BASIC FEE | | | | $ 185 | OR | | $ 370 |
| TOTAL CLAIMS | 23 | -20= 3 | x 6 | $18 | OR | x 12 | $36 |
| INDEP CLAIMS | 6 | -3= 3 | x18 | $134 | OR | x 36 | $116 |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | 60 | | OR | 120 | |
| | | | TOTAL | $239 | OR | TOTAL | $ |

* If the difference in Col 1 is less than zero, enter "0" in Col 2

## CLAIMS AS AMENDED - PART II

| | | (1) CLAIMS REMAINING AFTER AMENDMENT | | (2) HIGHEST NO PREVIOUSLY PAID FOR | (3) PRESENT EXTRA | SMALL ENTITY RATE | ADDIT FEE | OR | OTHER THAN A SMALL ENTITY RATE | ADDIT FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT A | TOTAL | | MINUS | ** | | x 6 | $ | OR | x 12 | $ |
| | INDEP | | MINUS | *** | | x 18 | $ | OR | x 36 | $ |
| | FIRST PRESENTATION OF MULTIPLE DEP CLAIM | | | | | 60 | $ | | 120 | $ |
| | | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ |

| | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDIT FEE | OR | RATE | ADDIT FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT B | TOTAL | | MINUS | ** | | x 6 | $ | OR | x 12 | $ |
| | INDEP | | MINUS | *** | | x 18 | $ | OR | x 36 | $ |
| | FIRST PRESENTATION OF MULTIPLE DEP CLAIM | | | | | 60 | $ | | 120 | $ |
| | | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ |

| | | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDIT FEE | OR | RATE | ADDIT FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| AMENDMENT C | TOTAL | | MINUS | ** | | x 6 | $ | OR | x 12 | $ |
| | INDEP | | MINUS | *** | | x 18 | $ | OR | x 18 | $ |
| | FIRST PRESENTATION OF MULTIPLE DEP CLAIM | | | | | 60 | | | 60 | $ |
| | | | | | | TOTAL ADDIT. FEE | $ | OR | TOTAL | $ |

* If the entry in Col 1 is less than the entry in Col 2 write "0" in Col 3
** If the highest no Previously Paid for in THIS SPACE is less than 20 enter "20"
*** If the highest no Previously Paid for in THIS SPACE is less than 3 enter "3"

M0125389

$\textcircled{1} \Rightarrow 23$ and $36 \Rightarrow$ (storage area with picking means
(and X-Y co-ordinates)
+
picking means (controlled by comp)
+
computer

$\textcircled{24} \Rightarrow 35$

holding means of rods
+
supplying means
+
picking means
+
computer (with database.)

- 40 -

❏ Transfer Disapproved–Forward to Originating A.U. _____    Concurring _____

REASON:                        Nonclasssification issue raised:    Classifier _____
                                                          ❏ Restriction
                                                          ❏ Other

*U.S.GPO-1991-0-281-804/40110

M0125390

# Exhibit E
# Part 2



| UTILITY SERIAL NUMBER | 08/295495 | PATENT DATE NOV 21 1995 | PATENT NUMBER | |
|---|---|---|---|---|

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAM... |
|---|---|---|---|---|---|
| 08/295,495 | 08/25/94 | 414 | 273 | 3107 | Werner |

APPLICANTS  SEAN C. MCDONALD, PITTSBURGH, PA; ELLEN J. HERTZ, CLEMMONS, NC; JAMES A. SMITH, ALLISON PARK, PA; GREGORY TOTO, SANTA CRUZ, CA.

```
**CONTINUING DATA************************yes
  VERIFIED    THIS APPLN IS A CON OF  07/871,832 04/21/92
                WHICH IS A CIP OF  07/469,217 01/24/90 ABN


  **FOREIGN/PCT APPLICATIONS*********** none
  VERIFIED
```

CERTIFICATE
APR 1 6 1996
OF CORRECTION
***** SMALL ENTITY *****

FOREIGN FILING LICENSE GRANTED 10/01/94

| Foreign priority claimed | ☐ yes ☐ no | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|---|
| 35 USC 119 conditions met | ☐ yes ☐ no | | PA | 19 | 24 | 2 | $399.00 | 920015 |
| Verified and Acknowledged | Examiner's Initials | | | | | | | |

ADDRESS  LYNN J. ALSTADT
BUCHANAN INGERSOLL
600 GRANT STREET, 56TH FLOOR
PITTSBURGH, PA  15219

TITLE  AUTOMATED SYSTEM FOR SELECTING PACKAGES FROM A STORAGE AREA

U.S. DEPT. of COMM.—Pat. & TM Office — PTO-436L (rev. 10-78)

| PARTS OF APPLICATION FILED SEPARATELY | | Applications Examiner |
|---|---|---|

| NOTICE OF ALLOWANCE MAILED | | CLAIMS ALLOWED | |
|---|---|---|---|
| MAR 0 7 1995 | Assistant Examiner | Total Claims 22 | Print Claim 1 |

| ISSUE FEE | | DRAWING | | |
|---|---|---|---|---|
| Amount Due | Date Paid | Sheets Drwg. | Figs. Drwg. | Print Fig. |
| 605.00 | 6-9-95 | 19 | 19 | 6 |

FRANK E. WERNER
PRIMARY EXAMINER
GROUP 3100
Primary Examiner

| ISSUE BATCH NUMBER | J 80 |
|---|---|

Label Area

| PREPARED FOR ISSUE |
|---|

WARNING:  The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368.  Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-436A
Rev. 8/92)

(FACE)

MA000056

08/ 295495

PATENT APPLICATION

APPROVED FOR LICENSE ☐

INITIALS _____

|||||||||||||||||||||||
08295495

Date
Entered
or
Counted

CONTENTS

Date
Received
or
Mailed

RECEIVED
OCT 20 1994
GROUP 310

1. Application _____ papers.

| 12 | Lee Arnolt B | Aug 28, 1994 | 4 |
| 13 | Rej 3M | NOV 0 4 1994 | 5 |
| 14 | Arnlt C | Feb 8, 1995 | |
| 15 | Interview Summary | MAR 0 7 1995 | |
| 16 | RTOR 37.2 | MAR 0 7 1995 | 36 |
| 17 | Notice of Outstanding Drawing Requirement | | |
| 18 | 9/12/95   Sheet Drawing 1 sheet est 1 PM 8/21/95 | 8/23/95 |
| 19 | PTO GRANT NOV 21 1995 | |
| 20 | Rej C2C rule 322 | 1/16/96 |
| 21 | | |
| 22 | | |

(FRONT)





| SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| 235 | 385,351 | | |
| 414 | 266, 267 | | |
| | 268, 269 | | |
| | 270, 273 | | |
| | 274, 277 | | |
| | 280, 281 | | |
| | 282, 331) | | |
| | 285 | | |
| 221 | 5,9,15 | | |
| 364 | 478 413.02 | | |
| | 479 | 11/94 | Bw |
| Above search updated | | 3/1/95 | Bw |

| SEARCH NOTES | | |
|---|---|---|
| | Date | Exmr. |
| Search updated and references checked in parent Sns 871832 and 469217 | 11/94 | Bw |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| Above interference searched | | 3/1/95 | Bw |

(RIGHT OUTSIDE)

MA000060

| SERIAL NUMBER | | PATENT DATE | | PATENT NUMBER | |
|---|---|---|---|---|---|
| 07/871,832 | | | | | |

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 07/871,832 | 04/21/92 | 221 414 364 | 273 478 | 2101 3107 2206 | Werner TRAMMELL |

<table>
<tr><td rowspan="3">APPLICANTS</td><td>SEAN C. MCDONALD, PITTSBURGH, PA; ELLEN J. HERTZ, CLEMMONS, NC;<br>JAMES A. SMITH, ALLISON PARK, PA; GREGORY TOTO, SANTA CRUZ, CA.</td></tr>
</table>

```
**CONTINUING DATA**************yes yes 364/478 Trammell
VERIFIED       THIS APPLN IS A CIP OF  07/469,217 01/24/90, now abandoned
    RW
_____

**FOREIGN/PCT APPLICATIONS********** none none
VERIFIED
    RW
```

FOREIGN FILING LICENSE GRANTED 07/08/92       ***** SMALL ENTITY *****

| Foreign priority claimed ☐ yes ☑ no | | AS FILED | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|---|
| 35 USC 119 conditions met ☐ yes ☑ no | | | PA | 19 | 36 | 2 | $570.00 | 920015 |
| Verified and Acknowledged   Examiner's Initials | | | | | | | | |

| ADDRESS | LYNN J. ALSTADT<br>BUCHANAN INGERSOLL PROFESSIONAL CORP.<br>56TH FLOOR, 600 GRANT ST.<br>PITTSBURGH, PA 15219 |
|---|---|

| TITLE | AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA |
|---|---|

U.S. DEPT. of COMM.-Pat. & TM Office — PTO-436L (rev. 10-78)

PARTS OF APPLICATION
FILED SEPARATELY

| NOTICE OF ALLOWANCE MAILED | | PREPARED FOR ISSUE | | CLAIMS ALLOWED | |
|---|---|---|---|---|---|
| | | Assistant Examiner | Docket Clerk | Total Claims | Print Claim |
| **ISSUE FEE** | | | | **DRAWING** | |
| Amount Due | Date Paid | | | Sheets Drwg. | Figs. Drwg. | Print Fig. |
| | | | Primary Examiner | | |
| | | **ISSUE CLASSIFICATION** | | ISSUE BATCH NUMBER | |
| Label Area | | Class | Subclass | | |

Form PTO-436L





Staple Issue Slip Here

| POSITION | INIT | DATE |
|---|---|---|
| CLASSIFIER | | |
| EXAMINER | | |
| TYPIST | | |
| VERIFIER | | |
| CORPS CORR. | | |
| SPEC. HAND | | |
| FILE MAINT. | | |

INDEX OF CLAIMS



## SEARCHED

| Class | Sub | Date | Exmr. |
|---|---|---|---|
| 235 | 385, 381 | | |
| 4/14 | 266, 267 | | |
| | 268, 269 | | |
| | 270, 273 | | |
| | 274, 275 | | |
| | 280, 281 | | |
| | 282, 437 | | |
| 221 | 59, 115 | 9 | |
| 364 | 478, 434 | 2/03 | |
| | 479 | | |
| Above search | | 5/94 | |

## SEARCH NOTES

| | Date | Exmr. |
|---|---|---|
| | | |

## INTERFERENCE SEARCHED

| Class | Sub | Date | Exmr. |
|---|---|---|---|
| | | | |

US005468110A

# United States Patent [19]

## McDonald et al.

[11] Patent Number: **5,468,110**

[45] Date of Patent: **Nov. 21, 1995**

[54] **AUTOMATED SYSTEM FOR SELECTING PACKAGES FROM A STORAGE AREA**

[75] Inventors: Sean C. McDonald, Pittsburgh, Pa.; Ellen J. Hertz, Clemmons, N.C.; James A. Smith, Allison Park, Pa.; Gregory Tuto, Santa Cruz, Calif.

[73] Assignee: Automated Healthcare, Inc., Pittsburgh, Pa.

[21] Appl. No.: 295,495

[22] Filed: Aug. 25, 1994

**Related U.S. Application Data**

[63] Continuation of Ser. No. 871,832, Apr. 21, 1992, abandoned, which is a continuation-in-part of Ser. No. 469,217, Jan. 24, 1990, abandoned.

[51] Int. Cl.⁶ .................................................. B65G 1/04
[52] U.S. Cl. .................. 414/273; 364/478; 414/280; 414/268; 414/281; 414/285
[58] Field of Search ....................... 235/385, 351; 414/266, 267, 268, 269, 270, 273, 274, 277, 280, 281, 282, 331, 285; 221/3, 9, 15; 364/478, 413.02, 479

[56] **References Cited**

**U.S. PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 3,802,580 | 4/1974 | Castaldi | 414/280 X |
| 3,986,612 | 10/1976 | Kamm et al. | 209/111.7 |
| 4,546,901 | 10/1985 | Buttarazzi | 414/280 X |
| 4,651,863 | 3/1987 | Reuter et al. | 414/280 X |
| 4,669,047 | 5/1987 | Chucta | 414/331 X |
| 4,687,390 | 7/1987 | Boeneton et al. | 414/282 |
| 4,786,229 | 11/1988 | Henderson | 414/273 X |
| 4,789,295 | 12/1988 | Boucher, Jr. et al. | 414/280 X |
| 4,792,270 | 12/1988 | Yoshida | 414/272 |
| 4,812,629 | 3/1989 | O'Neil et al. | 414/274 X |
| 4,820,109 | 4/1989 | Win | 414/282 |
| 4,896,024 | 1/1990 | Morello et al. | 414/274 X |
| 5,129,777 | 7/1992 | Pobjonen et al. | 414/280 |

**FOREIGN PATENT DOCUMENTS**

| | | | |
|---|---|---|---|
| 2596299 | 10/1987 | France | |
| 304 | 1/1979 | WIPO | 414/273 |
| 85/00232 | 8/1984 | WIPO | |

Primary Examiner—Frank E. Werner
Attorney, Agent, or Firm—Buchanan Ingersoll; Lynn J. Alstadt

[57] **ABSTRACT**

A system for filling orders, such as prescriptions for patients, comprising a device for holding packages. Each package has the same type of contents being held in a predetermined location by the holding device. Each package has an identity which defines the contents therein. The holding device has a plurality of predetermined locations corresponding to a plurality of different types of contents. Additionally, the system is comprised of a device for supplying packages to the holding device. Also, there is a device for picking a package from the holding device that is identified in the order for the purpose of restocking the holding device. The picking device is in communication with the holding device and supplying device. In a preferred embodiment, the contents of each package is a single dosage of medicine.

**22 Claims, 19 Drawing Sheets**



U.S. Patent    Nov. 21, 1995    Sheet 1 of 19    5,468,110



Figure 1

**U.S. Patent**    Nov. 21, 1995    Sheet 2 of 19    **5,468,110**



Figure 2

U.S. Patent          Nov. 21, 1995          Sheet 3 of 19          5,468,110



Figure 3

MA000068

**U.S. Patent**     Nov. 21, 1995     Sheet 4 of 19     **5,468,110**



Figure 4

MA000069



Figure 5

MA000070



Figure 6

MA000071



Figure 7

FIGURE 8





FIGURE 9

MA000074



FIGURE 10



Figure 11

MA000076



Figure 12

MA000077



Figure 13

MA000078

**U.S. Patent**    Nov. 21, 1995    Sheet 14 of 19    5,468,110



Figure 14

MA000079

U.S. Patent     Nov. 21, 1995     Sheet 15 of 19     5,468,110



U.S. Patent        Nov. 21, 1995        Sheet 16 of 19        5,468,110



FIGURE 16

MA000081

U.S. Patent     Nov. 21, 1995     Sheet 17 of 19     5,468,110



FIGURE 17

U.S. Patent        Nov. 21, 1995        Sheet 18 of 19        5,468,110



FIGURE 18

U.S. Patent     Nov. 21, 1995     Sheet 19 of 19     5,468,110



FIGURE 19

MA000084

5,468,110

| 1 | 2 |

**AUTOMATED SYSTEM FOR SELECTING PACKAGES FROM A STORAGE AREA**

RELATED APPLICATION

This is a continuation of Ser. No. 07/87/832 filed Apr. 21, 1992, now abandoned which is a continuation-in-part of our U.S. patent application Ser. No. 07/469,217 filed Jan. 24, 1990, now abandoned.

FIELD OF THE INVENTION

The present invention relates to an automated system for selecting stored articles. More specifically, the present invention relates to an automated system for filling prescriptions and restocking medicines in a pharmacy.

BACKGROUND OF THE INVENTION

Many industries store products or parts in a storeroom or storage area and repeatedly select some of the stored items to fill orders or for other uses. Such items may range from small electronic components used by a manufacturer of electronic devices to automotive parts, which vary in size, used by service departments of automobile dealerships. Usually one or more people are employed to retrieve the requested items and to restock new and returned items. These individuals may also be required to confirm that the requested items are compatible with some order placed with previously supplied items. If the supplied items are to be billed to a customer or charged to particular internal accounts, the list of items is first written by the requestor, and rewritten or entered into a computer database by the storeroom attendant to create an invoice, supply list or other document. In some instances, further generations of the list are made by installers, users or billing clerks. Such methods have built-in opportunities for mistakes every time a list is rewritten and are less efficient than automated systems. Moreover, as labor costs rise and the size of inventory needed to be stored expands, the conventional storeroom and parts department become more and more expensive.

Some businesses have attempted to control costs by limiting inventory through standardization of parts. But such limits are not possible or desirable in some industries, particularly in a hospital pharmacy.

Currently, in large hospital environments, doctors visit patients in nursing units and write out medication orders for each patient. A patient is typically placed on a certain medication which may require multiple doses of medication be administered over a period of a day. Some medications are administered at certain times of the day and possibly at intervals of several hours. Patients may also request certain medications on an elective basis for disorders such as headaches. These requests are included in the doctor's order that is sent from the nursing unit to the central pharmacy of the hospital.

Once an order is received by the pharmacy, it is checked by registered pharmacists and input into the pharmacy information system. These orders reflect not only orders that are added to a particular patient's treatment, but changes in the medication treatment. The pharmacy information system combines this information with the patient's existing medication schedule and develops a patient medication profile. A fill list is generated from that profile. The fill list is a list of all the medications that must be distributed to all patients for the day. This information is sent to the pharmacy printer where a hard copy is generated. Frequently, that hard copy

or a copy thereof is sent to the billing department so that the medication can be charged to the patient or his insurer.

At this point, the drugs for a particular patient are hand-picked by either a pharmacist or a pharmacy technician and placed in the particular patient's designated box. A registered pharmacist must then check the accuracy of the patient order before it leaves the pharmacy. Individual patient boxes are then loaded into a large cassette and delivered to the nursing unit.

Approximately 30% of the drugs dispensed each day are returned to the pharmacy unused. Since each drug is individually packaged, the drugs must be returned to the pharmacy stock. Patients are then credited for unused medication. This return and crediting process is a very time-consuming task and requires significant amount of pharmacy manpower.

In a typical large pharmacy, up to 35 pharmacists and pharmacy technicians are responsible for all aspects of the unit dose dispensing task. Because this process is done manually, a certain amount of error occurs. Studies have estimated that a half-percent error rate is typical in a large hospital. Since a hospital may dispense over 6,000 doses each day, this error rate leads to a significant number of missed or incorrect doses.

Several companies have tried to automate this process through various approaches to the problem. Medirol utilizes a vending machine approach to dispense the unit dose medications. Each nursing unit must have its own stock of prescription drugs. Nurses key in a patient ID and the drugs for that patient are then dispensed from the vending machine. This system is very expensive because of the necessity of purchasing a machine for each nursing unit. Also, restocking each machine is a very time-consuming task. Implementation of this system requires a complete modification of the current drug dispensing process which many hospitals are reticent to undertake. The system claims no labor-saving advantages from its implementation. This system is covered under U.S. Pat. No. 3,917,045 titled "Drug Dispensing Apparatus" and dated Nov. 11, 1975.

Baxter Travenol offers a dispensing system from Samsung, a Korean company, which dispenses bulk solids into a package which is dispensed to the pharmacist. This system only dispenses the 200 most frequently used solids. A typical hospital pharmacy can contain over 1,500 different medications, many in liquid, syringe or bottle form. These medications cannot be automatically dispensed by this system, but must be manually selected by the pharmacist.

Neither system allows the dispensed medications to be automatically returned to the storage area.

There is a need for an automated system which is able to dispense all dosage forms currently contained in a hospital pharmacy. Medicines should be automatically dispensed by the system per a patient order and placed in individual patient medication boxes for a pharmacist to check. Each drug and each patient box should be individually bar coded so that the accuracy of the dispensing process can be automatically checked by the system. Once drugs are returned to the pharmacy, the system should automatically return each drug to its proper location in inventory and credit the patient's account for the return. One system should also keep a running inventory and notify the user whenever inventory of a particular item drops below a preset level and whether the shelf life of an item has passed. With such a system, a hospital can recognize significant labor savings, as well as savings based on improved accuracy in the dispensing function and better tracking of inventory and expired medications.

5,468,110

**3**

## SUMMARY OF THE INVENTION

We provide an automated method and apparatus for selecting and restocking stored items, which is particularly useful for filling patient medication orders in a hospital pharmacy. The stored items must be packaged to be held in a storage rack. Preferably, each package contains a bar code corresponding to the package contents. The items are arranged in a main storage rack so that like items are in the same location and a predetermined location is provided for every item.

We prefer to provide a second rack or a designated portion of the main storage rack for receipt of new or returned items to be restocked. Such items can be randomly placed on this supply station for transmittal to their respective predetermined locations on the storage rack.

We also provide a means for picking items from and placing items in the storage rack and the supply station. The picking means preferably is comprised of a gripper assembly mounted on a transport vehicle which moves along a track or other controlled route. The gripper assembly preferably has a movable rod or other carrier for holding selected items, at least one vacuum head and associated controls for gripping and moving selected items. We prefer to provide a bar code reader for reading item packages.

We also prefer to provide a conveyor on which boxes, patient medication trays or drawers can be placed. The conveyor is positioned so that the picking means can place selected items into appropriate containers on the conveyor.

We provide a processing unit with associated memory and data entry peripherals. This computer system receives the list of requested items, directs the picking means, checks the items selected and prepares reports. Data can be entered manually through a keyboard or bar code reader or electronically through an RS 232 port. Reports may be printed, displayed on a console or transmitted to a memory or another computer for later use.

Other details and advantages of our method and apparatus will become apparent from the description of the preferred embodiments shown in the drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

In the accompanying drawings, the preferred embodiments of the invention and preferred methods of practicing the invention are illustrated in which:

FIG. 1 is a schematic representation of our present preferred system.

FIG. 2 is a side view of a present preferred package.

FIG. 3 is a perspective view of one present preferred storage rack.

FIG. 4 is a perspective view of a portion of a second preferred storage rack.

FIG. 5 is a perspective view of a portion of a third preferred storage rack.

FIG. 6 is a schematic representation showing the storage rack, conveyor and movable support structure which holds a gripper assembly.

FIG. 7 is a schematic view of a present preferred gripper assembly.

FIG. 8 is a front view of a present preferred gripper assembly.

FIG. 9 is a side view of the gripper assembly of FIG. 7 with the storing rod in a raised and extended position.

**4**

FIG. 10 is a side view of the gripper assembly of FIG. 8 with the storing rod in a lowered and partially retracted position.

FIG. 11 is a diagram showing a preferred vacuum and pressure line for the gripper assembly.

FIG. 12 is a schematic representation of the gripper assembly mounted on a vehicle.

FIG. 13 is a perspective view of a rod with packages thereon connected to a support bar.

FIG. 14 is a schematic representation of a side view of a first rod and a second rod and having packages thereon attached to a portion of the support bar.

FIG. 15 is a schematic overhead view of an alternative system for filling an order.

FIG. 16 is a flowchart of the filling process.

FIG. 17 is a flowchart of the check process.

FIG. 18 is a flowchart of the return process.

FIG. 19 is a flowchart of the restocking process.

## DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring now to the drawings wherein like reference numerals refer to similar or identical parts throughout the several views, and more specifically to FIG. 1 thereof, there is shown a schematic representation of a present preferred system 10 for filling orders, such as prescriptions for patients. The system 10 contains storage racks 12 for handling packages. We prefer to provide at least two storage racks 12 and arrange them parallel to one another. Various storage rack designs can be used and certain present preferred storage racks are shown in FIGS. 3, 4 and 5. In our system, each package preferably contains only one product, although the product may consist of two or more related items, such as nut and bolt. When our system is installed in a hospital pharmacy, each package preferably contains a single dose of medicine.

A present preferred package 14 is illustrated in FIG. 2. Although the package could be a blister card or box, we prefer to use a clear plastic bag having a hole 15 to permit the package to be hung on a rod 30, 48, 65 or 66 shown in FIGS. 3, 6 and 14. Each package preferably has a bar code 16 and a written description 17, which identify the contents of the package. A white area 17a can be created on the clear plastic bag over which the written description 17 can be printed, stamped or even handwritten. The bar code and the written description may include not only the name of the product, but also its quantity, weight, instructions for use and expiration date. We also prefer to position the bar code and label on the package so that there is a large unmarked area 62 through which one can see the contents of the package. FIG. 2 represents a clear plastic bag for a unit dose of medicine. We can use a bag having a perforation line for easy opening or a reclosable bag having an interlocking rib type seal. The perforation line or rib seal is located along line 13. This type of bag is useful in a hospital pharmacy which buys medicines in large or bulk quantities and must repackage the drugs in individual dose packages. Packages 14 can be any desired size. We have used a rectangular package having dimensions indicated by arrows A, B, C and D, wherein A is 3.5 inches, B is 1.0 inch, C is 3.0 inches and D is 0.1875 inches. Alternatively, the package 14 can have A equal 5.0 inches, B equal 1.25 inches, C equal 5.0 inches and D equal 0.1875 inches.

An individual dose of medicine can be manually fed into

5,468,110

5

an automated packaging system 98, as shown in FIG. 1, which automatically seals the package and prints a bar code and typewritten label directly on the package. In a preferred embodiment, we utilize the H-100™ packaging system as manufactured by Automated Packaging Systems of Twinsburg, Ohio. With the addition of the Accu-print™ 100 programmable In-Line Direct Transfer Imprinter, also manufactured by Automated Packaging Systems, a bar code can be printed directly on the medicine package.

A storage rack 12, which may also be used for a supply station, is shown in FIG. 3. This rack is configured to hold packages of the type illustrated in FIG. 2. The rack has a rectangular frame 28, having an open front and back. Running across the back are a plurality of back rod supports 32 from which the rods 30 extend. The frame 28 with rod supports 32 forms an X, Y coordinate system with each rod 30 and medicine packages 14 therein having a unique X, Y coordinate. Packages are placed in the storage rack so that each product is located at a known X, Y coordinate. Since every product is in a known X, Y location, it is possible to direct an automatic picking means to any product location to select a desired item. The packages are segregated within the storage rack so that all packages in any given location have the same contents.

Although we prefer to use racks in which packages are hung on rods, other types of racks can be used for storage racks and supply stations in our system. In FIG. 4, we show the upper portion of a rack having a rectangular frame 21 with an open front and closed back 23. Attached to the back 23 are sets of brackets 25 positioned to hold packages 27. To be held securely in this rack, such packages must be fairly rigid. Blister cards and boxes can be used. If desired, a hole 15 could be provided in the packages to permit them to be carried on a rod.

A top portion of another suitable rack having a rectangular frame 21, open front and closed back 23 is shown in FIG. 5. This rack has a set of shelves 29, which may be inclined toward back 23. A set of dividers 31 separates groups of packages 27.

The racks of FIGS. 3, 4 and 5 have two important common features. First, the packages are held in locations having known X, Y coordinates. Those coordinates could be single X, Y values as may correspond to the position of the package holes 15 or a group of X, Y values defining an entire package. Second, there is sufficient clearance between packages to allow automated picking means to select, grab and replace individual packages.

Referring now to FIGS. 1 and 6, we provide storage racks 12 on either side of a track 42 over which a vehicle 44 may travel. The vehicle may be column-shaped as in FIG. 6. Many types of drive systems could be used to propel the vehicle. For example, one could provide a motor indicated by block 47 to propel wheels (not shown) at the base of the vehicle. Alternatively, one may use a chain or cable running through the track 42 to pull the vehicle to any desired location. Whatever drive system is used should be capable of moving the vehicle to positions along the track which correspond to the X coordinates of the packages within the rack. Thus, computer 24, which controls the drive system, can direct the vehicle 44 to a location in front of the package or packages to be selected.

Packages are selected by a picking means 38, preferably of the type illustrated in FIGS. 7 though 10. The picking means is mounted on column-shaped vehicle 44 in a manner to allow controlled vertical movement along that column. In this manner, the picking means 38 can be positioned at

6

locations along column 44 which correspond to the Y coordinates of packages to be selected. The picking means 38 is controlled by a computer 24, or local area network of computers, having a database. The database has the order to be filled and a record of the predetermined locations 18 of each different product in the storage rack 12. The computer 24 guides the picking means 38 based on information contained in the database, such that the picking means 38 picks a package 14 according to the order to be filled. The picking means 38 can also include means, such as a bar code reader 26 as shown in FIG. 7, for determining the identity 16 of a package 14 in the storage rack 12 or in a supply rack 20 and providing its identity 16 to the computer 24. The computer 24 guides the picking means 38 to select the desired packages and deliver them to a desired location. In the system of FIGS. 1 and 6, the packages are delivered to containers 36 located on conveyor 34. When the system is installed in a hospital pharmacy, the containers 36 are individual patient boxes in which the patient's medication is delivered from the pharmacy to the appropriate floor or nurses' station. The patient boxes preferably are bar coded with a patient identification code. After a patient's prescription is filled and the patient box 36 has all the medicine packages called for in the prescription, a conveyor belt 34 moves the patient box 36 to a check station 80. An operator uses the check station bar code reader 82 to scan the bar code label on the filled patient box 36, see FIG. 15. The patient identification number is taken from the inputted bar code and the prescription of the patient is displayed on the check station screen 84 of the check station console 86 connected to the computer or network of computers 24. The operator then scans individual medicine package bar codes in the patient box 36. The identity of the medicine packages 14 in the patient box 36 is automatically checked for correctness with respect to the patient list on the station screen 84. If the medicine packages 14 in the box 36 are correct, then the patient box is allowed to continue on towards the ultimate destination and the next filled patient box 36 is then checked. If the medicine packages 14 in the patient box 36 are not correct, then it is determined whether the error, whatever that may be, can be corrected. If the correction can be made, then the record on the check station screen 84 is corrected and the procedure for verifying correctness is then repeated. If the problem cannot be corrected, then the patient box 36 can be manually filled or resubmitted to be filled with missing doses by the system and the computer is notified that the patient's prescription has not yet been filled.

In the event that a patient does not take all of the medicine which has been prescribed, unused medicine is returned to the hospital pharmacy in the patient box 36. Typically, patient boxes are transferred in a carrier which contains several patient boxes. This carrier is received at a return station 92. The patient box 36 is first removed from the carrier returned from a nursing unit. An operator uses the return station bar code scanner 91 to scan the bar code on the patient box 36. The nursing unit number and the patient identification number is then parsed from the inputted bar code of the patient box 36. The database is then accessed and the patient dispensing record is retrieved. On the return screen 94, there is displayed for a particular patient at the operator console 96, a list of the medicines ordered and dispensed to the patient. The operator of the return station 92 then scans the identity 16 of the medicine in the patient's box 36 with the return station bar code scanner 91. The medicine packages 14 that are found thereon are verified as being dispensed to the patients. The expiration date of the medicine in the medicine package 14 is then determined. If

MA000087

5,468,110

7

the expiration date of a medicine in the medicine package 14 has passed, then the medicine package is discarded. If the expiration date has not passed, then the returned medicine package 14 is placed in the supply rack 20. If there is more medicine to be returned, the process is then repeated. If there is no more medicine in the patient box 36 to return, then the return station console 96 is checked to verify the correctness of the medicine returned. If the screen is correct, then the return record is accepted and the database is updated. If the screen 94 is incorrect, then the screen is corrected to correspond to the returned medicine packages 14 and the patient box 36. In this manner, the system will have developed a record of all medication given to each patient. That record can be transferred to a hospital billing system and used for billing purposes. The data can also be input into an inventory monitoring system and used to generate reports or orders for new supplies.

We prefer to provide supply racks 20 which serve as a holding area for returned and new products. These racks are comparable to storage racks 12 and are accessed by the picking means 38 in the same manner. However, products are randomly placed in the supply racks either manually or by the picking means. The supply racks 20 are shown in FIG. 1 at a position where they are accessible to the picking means. However, we prefer that the supply rack be movable. Then it could be moved to other convenient locations, such as near packaging system 98 for refilling.

When packages 14 are to be restocked onto the storage racks 12, the supply rack 20 is placed in a predetermined position alongside the storage racks 12. By being placed in a predetermined position, the X and Y coordinates at which packages may have been placed in return racks 20 are known to the computer 24. Picking means 38 is then positioned for a given package in the return rack. The bar code reader 26 on the end of picking means 38 then scans the identity 16 of the package 14 that is about to be picked. The process of picking the returned packages 14 is the same as occurs with respect to the process of obtaining packages 14 from the storage rack 12. The only difference is that the order of the packages 14 and their identity as they are picked is saved in the computer 24. When the picking means is then moved to the storage means 12 the computer knows the identity of the respective medicine package 14 on the picking means 38, which is about to be placed back onto the storage rack 12.

The picking means 38 includes at least one gripper assembly illustrated in FIGS. 7 through 12. As shown in FIG. 12, we prefer to provide a support bracket 41 extending from column 44. This bracket can move along column 44 in a vertical direction. A third actuator 43 is attached to bracket 41. Mounting 39 permits movement along rod 41 and movement at bar 43 in a direction normal to rod 41. A picking means 38, which preferably is the gripper assembly of FIGS. 7 through 10, is mounted to actuator 43 through actuator 45, which permits a 180-degree rotation of the gripper assembly. Actuator 43 permits horizontal movement of picking means 38 in the Z direction.

The gripper assembly is preferably comprised of a housing 49, as shown in FIG. 7 having means for storing medicine packages 14, such as a storing rod 48. Assembly 38 also contains means 50 for obtaining a package 14. The obtaining means 50 is slidingly attached to the housing 49 such that it can move in a Z direction, which is perpendicular to the X, Y directions, to pick a package 14 from a support rod 30 in the storage rack 12 or supply rack 20. Identifying means, for example, the bar code reader 26 shown in FIG. 8, is mounted on housing 49 such that it can identify a package 14 to be picked by the obtaining means 50. The

8

obtaining means 50 preferably includes means for producing a suction, such as a vacuum generator 58 controlled by a vacuum sensor 58a which draws a vacuum through vacuum line 55 and vacuum valve 54. The obtaining means 50 also preferably includes an extension rod 52 in fluidic communication with a pneumatic in/out cylinder 53 and associated valve 59, as shown in FIGS. 8 and 11. The extension rod 52 is slidingly attached with respect to the Y and Z directions to the housing 49. A suction is maintained through the vacuum lines 55 when the vacuum valve 54 is activated to supply air to vacuum generator 48. The obtaining means 50 also can include a suction head 56 connected to the extension rod 52 through which a package is picked with suction. The vacuum sensor 58a will sense when a package is properly positioned on the suction head 56, for example, by detecting air flow therethrough. The suction head 56 and carried package are then moved to the storing means, such as the storing rod 48, to deposit the package thereon. Preferably, the storing means is a storing rod 48 which extends from the housing 49 such that the suction head 56 and the extension rod 52 can deposit a package 14 thereon. The obtaining means 49 is also composed of a cylinder 48A which allows an assembly of both holding rod 48 and pusher plate 57 to move in the Y direction. The holding rod 48 is also attached to a cylinder 48B which allows the storage rod to retract and extend in reference to the obtaining means. The pusher plate 57B is also attached to a cylinder 57A which allows the plate to move in the positive Z direction. This action is necessary to push drugs off of the storage bar 48 during the dump process.

The extension rod 52 can move in the Y and Z directions to place a picked package on the storing rod 48 under the action of up/down cylinder 51 and in/out cylinder 53. Valve 57 activates cylinder 51 to move both the cylinder 53 and the extension rod 52 in the Y direction. Valve 59 activates cylinder 53 to move the extension rod in the Z direction. Valve 54 provides air to the vacuum generator 58 to suction in head 56 sufficient to pick a package from a rod 30 of the support structure 28 and then hold it to the suction head 56. The suction head 56 preferably has two faces 60 and 61 through which suction can be drawn. One face 60 is capable of picking a package from a rod 30 of the storage rack and the other face 61 is capable of picking a package from a storing rod 48 of the picking means 38. As shown in FIG. 2, each package preferably has a face 62. The packages are held by the storing rod 48 and the rods 30 of the support structure 38 such that the face 62 of each package is parallel to the Y axis. The outside face 60 is utilized when a package 14 is being removed from a rod 30 in the supply rack, and the inside face 61 is utilized when a package is being removed from the storing rod 48 of the picking means 38.

In an alternative embodiment, the rods 30 extend from the double rod support bar 64 in sets of two as shown in FIG. 14. A first rod 65 and a second rod 66 of each set point essentially in the Z direction, but approximately 180 degrees apart from each other. This embodiment shown in FIG. 15 includes a first tooling support structure 70, a second tooling support structure 72, a first and of arm tooling 67 and a second end of arm tooling 68 that picks the packages 14. Each tooling support structure has at least one column type vehicle 44 and at least one track 42 to support the column 44. Column 44 moves along the respective tracks 42 to pick a given package 14 from a corresponding support rod 30, or restock a support rod 30 with an associated package 14.

In the operation of the preferred embodiment in a hospital, doctors visit patients in nursing units and write out medication orders for each patient. A patient is typically placed

5,468,110

9

on a certain medication treatment which requires multiple doses of medication over a period of a day. Some medications are administered at certain times of the day and possibly at intervals of several hours. Patients may also request certain medications on an elective basis for disorders such as headaches. These requests are included in the doctor's order that is sent from the nursing unit to the central pharmacy of the hospital. Once an order is received by the pharmacy, it is checked by registered pharmacists and input into the pharmacy information system. These orders reflect not only orders that are added to a particular patient's treatment, but changes in the medication treatment. The pharmacy information system combines this information with the patient's existing medication schedule and develops a patient medication profile. A fill list is generated from that profile. The fill list is a list of all the medications that must be distributed to all patients for the day. This information is sent to the pharmacy printer where a hard copy is generated.

Means for communication between the pharmacy information system and the present system exist by either tapping the serial data print stream of the pharmacy information system or by a direct bi-directional communication link. The relevant information concerning the patient including drug type, dosage and frequency is placed in the database of the system. The database contains information about which drugs are to be dispensed that day to the patient and all drugs that have been dispensed in the past to the patient. Information from the pharmacy information system is received on an ongoing basis throughout the day. New information can be entered into the database at any time. In addition to the fill list, new orders and patient admittance, discharge and transfer information are received and stored.

FIG. 16 is a flowchart with respect to the processing of a patient prescription. A similar method would be followed for retrieving other stored products. The software for processing an order is started as indicated by box 180. Then the steps indicated by boxes 181 thru 202 are followed. Before a box is loaded onto the conveyers, the operator scans the location barcode and the patient barcode on the patient box. The system then checks its database to ensure that that patient is still at that location. If a new patient has been transferred or admitted to that location, the system automatically generates a barcode label with that patient's identification number on it. This label is then manually applied to the patient box and the box is placed on the conveyor. If no patient is registered in the room, the box is placed aside and the operator proceeds with the next patient box to be filled. When the turn comes for the patient box 36 to be filled, it is shuttled into a position on the conveyor 34 such that the gripper assembly 38 can communicate with the box 36 as shown in FIG. 1. A stationary bar code reader 90 reads the bar code on the patient box 36. The patient identification number is then parsed from the bar code input. This causes the fill list for that particular patient to be retrieved from the database as indicated in box 185. The fill list is converted to data consisting of locations and number of picks. At box 187 the data is then downloaded to a robot controller or gantry control program in order for the computer 24 to control the end of arm tooling 38 such that it knows what packages 14 to obtain and place in that patient box 36.

The system is now ready to pick the drugs 188. First, the column-type vehicle 44 goes to the rack where the drug to be selected is stored and stops at the X coordinate of that drug package. The picking means 38 then moves along the column 44 to the Y coordinate of the medicine package to be picked. It is also moved to the proper storage rack 12 which has the desired package 14. These actions may also be

10

performed simultaneously by the system 189.

When the end of gripper assembly 38 is properly positioned, the bar code reader 26 reads 190 the identity 16 on the medicine package 14 in order to confirm that it is the proper medicine package to be picked with respect to the patient's prescription. After such confirmation the suction rod 52 extends in the Z direction by pneumatic cylinder 53 such that the outside suction face 60 contacts the package face 62. Valve 54 activates a suction through the air lines 55 such that a suction drawn through the suction face 60 grabs the medicine package 14 sensor 58a detects when the contact is proper between the suction face 60 and the medicine package 14, as indicated at box 192 of FIG. 16. Then the extension rod 52 retracts from the rod 30 of the support structure 28, pulling the medicine package 14 with it. Once the medicine package 14 is clear of the rod 30, the extension rod 52 positions the medicine package 14 that it has obtained, upon the storing rod 48 as indicated by box 193.

The system now prepares for the next pick. This operation is indicated by box 194 includes several actions. Once the package 14 is on the storage rod 48, the vacuum valve 54 terminates the suction and the medicine package is released from the suction face 60. The vacuum valve 57 then activates the cylinder 51 such that the extension rod 52 (and cylinder 53) are moved in the Y direction so the bottom of the suction head 56 is above the package 14 on the storing rod 48. The extension rod is then moved forward in the Z direction and downward in the Y direction by the respective valves and cylinders to clear the package and position the suction head 56 for the next pick. In an alternative embodiment the storage rod 48 is moved down rather than moving suction head 56 to provide clearance between them when the suction head moves in a Z direction. The computer 24 then notes that the medicine package 14 with the appropriate medicine has been picked.

The final series of operations indicated by boxes 195 thru 201 involves a comparison of the drug identified by the reader as having been picked with the list of drugs to be selected. If an incorrect drug was selected the gripper assembly moves to a reject area, places the incorrect drug there, removes that drug from the list of items selected and is ready to pick more drugs. If the correct drug was selected the system records that fact and is ready to pick more drugs. The process is repeated for all the medicine identified in the patient's prescription until all of the medicine packages 14 needed have been picked.

The gripper assembly containing all desired packages then positions itself so that it is over the patient box 36. The gripper assembly 38 then positions the outside suction face 60 behind the medicine packages on the storing rod 48 that have been collected. Packages can be dropped into the patient box by retracting rod 48 by actuating cylinder 48A to the position shown in FIG. 10. The storage rod 48 is then moved into the negative Z direction so that the suction face no longer holds the packages in place. The cylinder 48B then causes the storage rod 48 to be retracted which will cause the drugs to be dumped into the box.

Alternatively, the suction head may be stroked forward in the Z direction so that all packages 14 are pushed off the storing rod 48 into the patient box 36. Movement of the suction head is accomplished by the vacuum system. Vacuum valve 57 activates the cylinder 51 to retract in the positive Y direction such that the bottom of the suction head 56 is above the tops of the packages 14 on the storing rod 28. Then vacuum valve 59 activates cylinder 53 to retract the

MA000089

5,468,110

11

extension rod 52 in the negative Z direction such that the outer suction face 60 is behind all of the medicine packages 14 on the storing rod 48. Vacuum valve 57 is then activated such that the suction head 56 is dropped back down in the negative Y direction to be behind the packages 14. Finally, vacuum valve 59 is activated such that the extension rod 52 is extended in the positive Z direction and the front suction face 60 pushes all packages 14 off the storing rod 48 into the patient box 36.

In the event that the wrong medicine package 14 was scanned and is picked, or the medicine has expired, then picking means 38 will have placed those packages in a reject or return area, where the medicine package 14 can be disposed. A pharmacy technician will then manually sort the drugs in the reject area, removing expired drugs and placing the others in the supply rack in order that they might be returned to their correct location in the system. The process is then repeated for the next drug on the prescription list that has not yet been obtained.

The flow chart of FIG. 17 is the process of checking the selected packages which have been placed in a patient box. Such checking is performed at the check station. The process begins by calling up the check program indicated by box 105. The bar code on the patient box is scanned 106 and the patient number portion of the bar code is identified 107. The patient number is displayed 108 on the screen at the check station. Then the packages in the patient box are scanned 109. The identification of the packages is compared with the list of drugs that had been ordered for the patient in a verify step 110. If correct packages are in the box, the checking of the box is complete and the system is ready for the next box 111. If the packages in the box do not match the order the system determines if the problem can be corrected 112. If so, the correction is made 113 and the verify step is repeated. If not, the box is dumped 114 and the order is recorded as not filled or the box is resubmitted and the missing medications are filled by the system. For example, should the system determine that an item is missing it may either create a modified list and send the box on with a modified list or it may instruct the picking means to get the missing item.

The return process is shown in the flow chart of FIG. 18. The process starts 115 by calling up the return program. The patient box containing the returned items must be positioned so that the patient box can be scanned 116 for the patient identification number 117 and the nursing unit from which the box was returned. If the box has come from the proper nursing unit the system retrieves the patient dispensing record 120 and displays that record 121 for the operator. Next the packages are scanned 122. The system, preferably verifies 123 that the scanned packages had been sent to the patient making the return. Next the system checks each package 124 to determine if the drug is useful or if it has expired, been recalled or otherwise should not be returned to the supply rack. If no, the package is discarded 125. If yes, the package is returned to the supply rack 126. If more drugs remain in the box the process is repeated 127. If no packages remain, the system may further process the list of returned packages 128 to modify the patient's record, update the system inventory log or display the list of returns for review by the operator.

The process of restocking returned or new packages to the storage rack is diagramed in FIG. 19. These packages are manually placed on a return or supply rack and the program for restocking is called up 130. The program causes the picking means to be positioned 131 so that the gripping 65 assembly can pick packages from the return or supply rack. The bar code on the first package is scanned 132 and the

12

portion of the scanned bar code which identifies the drug is found 133. The system then checks the database 134 for the location in the storage rack which has been designated for the identified product. The system extends the vacuum head 135 to engage the package. Suction is applied 136 and a suction sensor is checked. This should cause the package to be held by the gripper assembly which fact will be confirmed by the sensor 137. The gripper assembly positions the package 138 on the storage rod 48 in the gripper assembly. Then the suction is released and the gripper assembly is ready to place additional packages on the storage rod. If more packages remain on the return or supply rack 140, the process is repeated until all packages are on the storage rod or the storage rod is full. The gripper assembly is then moved to a position 141 in front of the storage rack to properly place the outermost package on the storage rod. That package is grasped 142 using back suction cups 61 (see FIG. 11). The extension rod 52 is retracted in the negative Z direction such that the inside suction face 61 is in contact with the medicine package 14. The sensing means 58 determines whether proper contact is made. Then the extension rod 52 is moved a predetermined distance in the positive Z direction 143 to place the medicine package over a rod 30 of support structure 28. Vacuum valve 54 is then deactivated 144 to stop suction, allowing the medicine package 14 on the suction face 61 to drop away therefrom. The extension rod 52 then moves in the negative Z direction towards the medicine packages 14 on the storing rod 48 to repeat the process. While it moves back to obtain another medicine package 14, the sensor 58 trips when contact is made. The process can be repeated 141 until there are no more medicine packages 14 on the storing rod 48. The computer 24 knows when to stop returning packages since it knew how many packages had been placed on the storing rod 48.

In the event that all drugs to be returned or restocked at a particular storage location are identical the process is some what different. Packages are picked from the supply rack in the method detailed above. The gripper assembly is then moved to a position in front of the storage rack to place the remaining packages on the storage rod. Cylinder 48A causes the assembly of storing rod 48 and pusher plate 57B to move in the negative Z direction. Storage rod 48 is co-linear with a rod 30 of support structure 28. Pusher plate 57B then moves in the positive Z direction pushing all remaining packages on storage rod 48 on to rod 30.

The restocking of the storage racks 12 can be carried out during the evening when packages are not being gathered to fill orders. Alternatively, restocking can be carried out simultaneously with picking if the system 10 has a pair of rods as shown in FIG. 14, a first end of arm tooling 67, second end of arm tooling 68 and a first tooling suncture 70 and a second tooling structure 72 is utilized, as shown in FIG. 15. While, for instance, the first end of arm tooling 67 is picking medicine packages 14 to fill a patient's prescrip tion, the second end of arm tooling 68 can be restocking the second side of the storage area 12.

Although the invention has been described in detail in the foregoing embodiments for the purpose of illustration, it is to be understood that such detail is solely for that purpose and that variations can be made therein by those skilled in the art without departing from the spirit and scope of the invention except as it may be described by the following claims.

We claim:

1. A system for selecting and delivering packages to fill orders comprising:

5,468,110

13

a) a storage area comprised of a plurality of storage area locations each location having package holding means sized and configured to hold a plurality of individual packages each individual package having a machine readable label which identifies a type of package, the packages being held in a manner so that each package can be placed into and removed from the storage area locations and so that the machine readable label on at least one package in a storage location can be read without removing the package from the storage location, each location having a distinct x, y coordinate;

b) automated picking means sized and configured to be able to hold packages, to select packages from the storage area locations and place packages in the storage area locations in accordance with computer controlled instructions, the picking means having a gripper for grasping and moving the packages and having a picking means storage location sized and configured to hold a plurality of packages in a face to face relationship after the plurality of packages have been retrieved from the storage area and prior to delivery of the plurality of packages to a desired destination separate from the picking means;

c) means for moving the automated picking means to selected storage locations;

d) a computer having at least one memory which contains a program for directing the picking means to chosen storage area locations and a database containing at least one x, y coordinate location in the storage area for each package held within the storage area the computer being connected to the automated picking means and the means for moving the automated picking means; and

e) a package reader associated with the picking means and being positioned for reading the machine readable labels on packages located within the storage area, wherein only one type of package is stored in each x, y coordinate location.

2. The system of claim 1 wherein the gripper is a vacuum head.

3. The system of claim 1 also comprising a sensor attached to the picking means for determining when the package is grasped by the gripper.

4. The system of claim 1 wherein the label is a bar code and the reader is a bar code reader.

5. The system of claim 1 wherein the label also contains an expiration date.

6. The system of claim 1 wherein the picking means contains a picking means storage area for holding the plurality of packages selected by the picking means.

7. The system of claim 6 wherein the picking means storage area is comprised of at least one storage rod and holes are provided in the packages to permit the packages to be held on the storage rod.

8. The system of claim 1 also comprising a supply station for receiving new and returned packages, the supply station having a plurality of locations each location having package holding means sized and configured to hold at least one package in a manner so than the package can be placed into

14

and removed from the locations by the automated picking means, each location having a distinct x, y coordinate.

9. The system of claim 8 also comprising means for moving the supply station wherein the supply station is removably positioned adjacent the storage area.

10. The system of claim 1 wherein the package holding means in the storage area is comprised of a plurality of rods and a hole is provided in each package to permit the package to be held on the rods.

11. The system of claim 1 also comprising at least one data transmission port attached to the computer through which a list of packages to be selected can be input and a list of packages selected by the system can be output.

12. The system of claim 1 wherein the memory contains a program for checking comparability of products in packages selected by the picking means with other products listed in the database.

13. The system of claim 1 also comprising a conveyor positioned to receive packages from the picking means.

14. The system of claim 13 also comprising a plurality of containers positioned on the conveyor, the containers being sized and positioned to receive packages from the picking means.

15. The system of claim 14 wherein the containers have machine readable labels.

16. The system of claim 15 wherein the labels are bar codes.

17. The system of claim 14 wherein the labels are bar codes.

18. The system of claim 14 also comprising a check station located adjacent the conveyor, the check station having reading means for reading the machine readable labels.

19. The system of claim 18 wherein the reading means is connected to the computer in a manner to input information from the machine readable labels; the computer having a program for storing the input information in the memory and for comparing the input information to other information contained in the database.

20. A system as described in claim 18 wherein the picking means includes at least one gripper that picks the packages; and a tooling support structure having at least one column to support the tooling and at least one row to support the column such that the tooling means moves along the column as the column moves along the row to pick a given package hanging from a corresponding support rod, said gripper able to turn at least 180° on the column to pick packages fom either the first or from selected storage locations which locations are positioned opposite and facing one another; and means for moving the column with respect to the row, said moving means controlled by the computer and in communication therewith.

21. The system of claim 1 wherein the packages contain individual doses of medicine.

22. The system of claim 1 also comprising a track over which the picking means travels according to directions supplied by the computer also comprising means for moving the picking means over the track.

* * * * *

MA000091

871832

PATENT APPLICATION SERIAL NO._____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

061-345,00
203-160,00
505.00

1 201     505.00 CK 920015

040 RP 04/29/92 07871832

PTO-1556
(5/87)

BAR CODE LABEL

# U.S. PATENT APPLICATION

| SERIAL NUMBER | FILING DATE | CLASS | GROUP ART UNIT |
|---|---|---|---|
| 07/871,832 | 04/21/92 | 221 | 3101 |

**APPLICANT**

SEAN C. MCDONALD, PITTSBURGH, PA; ELLEN J. HERTZ, CLEMMONS, NC; JAMES A. SMITH, ALLISON PARK, PA; GREGORY TOTO, SANTA CRUZ, CA.

```
**CONTINUING DATA********************
VERIFIED     THIS APPLN IS A CIP OF   07/469,217 01/24/90
```

```
**FOREIGN/PCT APPLICATIONS***********
VERIFIED
```

FOREIGN FILING LICENSE GRANTED 07/08/92     ***** SMALL ENTITY *****

| STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS | INDEPENDENT CLAIMS | FILING FEE RECEIVED | ATTORNEY DOCKET NO. |
|---|---|---|---|---|---|
| PA | 19 | 36 | 2 | $ 570.00 | 920015 |

**ADDRESS**

LYNN J. ALSTADT
BUCHANAN INGERSOLL PROFESSIONAL CORP.
56TH FLOOR, 600 GRANT ST.
PITTSBURGH, PA 15219

**TITLE**

AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA

This is to certify that annexed hereto is a true copy from the records of the United States Patent and Trademark Office of the application as filed which is identified above.

By authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

Date                     Certifying Officer

MA000093

THE COMMISSIONER OF PATENTS AND TRADEMARKS          Case Docket No.     920015
Washington, D.C. 20231

Sir:

Transmitted herewith for filing is the patent application of

Inventor:     Sean C. McDonald et al.

For:     AN AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA
         (Cont.-in-part of Serial No. 469,217, filed January 24, 1990)

Enclosed are:

- [X]     19     sheets of drawings
- [ ]     An assignment of the invention
- [ ]     A certified copy of a _____ application
- [ ]     An associate power of attorney.
- [X]     A verified statement to establish small entity status under 37 CFR 1.9 and 37 CFR 1.27.

The filing fee has been calculated as shown below:

|  | (Col. 1) | (Col. 2) | SMALL ENTITY | | | OTHER THAN A SMALL ENTITY | |
|---|---|---|---|---|---|---|---|
| FOR: | NO. FILED | NO. EXTRA | RATE | FEE | OR | RATE | FEE |
| BASIC FEE |  |  |  | $345 | OR |  | $690 |
| TOTAL CLAIMS | 36 - 20 = | 16 | x 10 = | $160 | OR | x 20 = | $ |
| INDEP CLAIMS | 2 - 3 = | 0 | x 36 = | $ | OR | x 72 = | $ |
| [ ] MULTIPLE DEPENDENT CLAIM PRESENTED |  |  | + 110 = | $ | OR | + 220 = | $ |
|  |  |  | TOTAL | $ 505 |  |  | $ |

*If the difference in Col. 1 is less than zero, enter "0" in Col. 2

- [ ]     Please charge my Deposit Account No. 02-4553 the amount of $ _____. A duplicate copy of this sheet is enclosed.
- [X]     A check in the amount of $     505.00     to cover the filing fee is enclosed.
- [X]     The Commissioner is hereby authorized to charge payment of the following fees associated with this communication or credit any overpayment to Deposit Account No. 02-4553. A duplicate copy of this sheet is enclosed.
    - [X]     Any additional filing fees required under 37 CFR 1.16.
    - [ ]     Any patent application processing fees under 37 CFR 1.17.
- [ ]     The Commissioner is hereby authorized to charge payment of the following fees during the pendency of this application or credit any overpayment to Deposit Account No. 02-4553. A duplicate copy of this sheet is enclosed.
    - [ ]     Any patent application processing fees under 37 CFR 1.17.
    - [ ]     The issue fee set in 37 CFR 1.18 at or before mailing of the Notice of Allowance, pursuant to 37 CFR 1.311(b).
    - [ ]     Any filing fees under 37 CFR 1.16 for presentation of extra claims.

Respectfully submitted,

April 21, 1992

Lynn J. Alstadt
Registration No. 29,362
BUCHANAN INGERSOLL PROFESSIONAL CORPORATION
600 Grant Street, 56th Floor
Pittsburgh, PA 15219
(412) 562-1632

*19*

*50500-201-A*

01 871832

Ⓤ 871832

## TITLE

### AN AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA

### Related Application

continuation of Sn 07/871,832 filed 4/21/92, now abandoned which is a

This is a continuation-in-part of our United States, now abandoned

patent application Serial No. 07/469,217 filed January 24, 1990.

### FIELD OF THE INVENTION

10    The present invention relates to an automated system for selecting stored articles. More specifically, the present invention relates to an automated system for filling prescriptions and restocking medicines in a pharmacy.

15            BACKGROUND OF THE INVENTION

            Many industries store products or parts in a storeroom or storage area and repeatedly select some of the stored items to fill orders or for other uses. Such items may range from small
20    electronic components used by a manufacturer of electronic devices to automotive parts, which vary in size, used by service departments of automobile dealerships. Usually one or more people are employed to retrieve the requested items and to restock new and returned items. These individuals may also be
25    required to confirm that the requested items are compatible with

one another and with previously supplied items. If the supplied items are to be billed to a customer or charged to particular internal accounts, the list of items is first written by the requestor, and rewritten or entered into a computer database by

5  the storeroom attendant to create an invoice, supply list or other document. In some instances, further generations of the list are made by installers, users or billing clerks. Such methods have built-in opportunities for mistakes every time a list is rewritten and are less efficient than automated systems.

10 Moreover, as labor costs rise and the size of inventory needed to be stored expands, the conventional storeroom and parts department become more and more expensive.

Some businesses have attempted to control costs by limiting inventory through standardization of parts. But such

15 limits are not possible or desirable in some industries, particularly in a hospital pharmacy.

Currently, in large hospital environments, doctors visit patients in nursing units and write out medication orders for each patient. A patient is typically placed on a certain

20 medication which may require multiple doses of medication be administered over a period of a day. Some medications are administered at certain times of the day and possibly at intervals of several hours. Patients may also request certain medications on an elective basis for disorders such as headaches.

25 These requests are included in the doctor's order that is sent from the nursing unit to the central pharmacy of the hospital.

- 2 -

MA000096

Once an order is received by the pharmacy, it is checked by registered pharmacists and input into the pharmacy information system. These orders reflect not only orders that are added to a particular patient's treatment, but changes in the medication
5   treatment. The pharmacy information system combines this information with the patient's existing medication schedule and develops a patient medication profile. A fill list is generated from that profile. The fill list is a list of all the medications that must be distributed to all patients for the day.
10  This information is sent to the pharmacy printer where a hard copy is generated. Frequently, that hard copy or a copy thereof is sent to the billing department so that the medication can be charged to the patient or his insurer.

At this point, the drugs for a particular patient are
15  hand-picked by either a pharmacist or a pharmacy technician and placed in the particular patient's designated box. A registered pharmacist must then check the accuracy of the patient order before it leaves the pharmacy. Individual patient boxes are then loaded into a large cassette and delivered to the nursing unit.
20  Approximately 30% of the drugs dispensed each day are returned to the pharmacy unused. Since each drug is individually packaged, the drugs must be returned to the pharmacy stock. Patients are then credited for unused medication. This return and crediting process is a very time-consuming task and requires
25  significant amount of pharmacy manpower.

- 3 -

MA000097

In a typical large pharmacy, up to 35 pharmacists and pharmacy technicians are responsible for all aspects of the unit dose dispensing task. Because this process is done manually, a certain amount of error occurs. Studies have estimated that a half-percent error rate is typical in a large hospital. Since a hospital may dispense over 6,000 doses each day, this error rate leads to a significant number of missed or incorrect doses.

Several companies have tried to automate this process through various approaches to the problem. Meditrol utilizes a vending machine approach to dispense the unit dose medications. Each nursing unit must have its own stock of prescription drugs. Nurses key in a patient ID and the drugs for that patient are then dispensed from the vending machine. This system is very expensive because of the necessity of purchasing a machine for each nursing unit. Also, restocking each machine is a very time-consuming task. Implementation of this system requires a complete modification of the current drug dispensing process which many hospitals are reticent to undertake. The system claims no labor-saving advantages from its implementation. This system is covered under United States Patent No. 3,917,045 titled "Drug Dispensing Apparatus" and dated November 11, 1975.

Baxter Travenol offers a dispensing system from Samsung, a Korean company, which dispenses bulk solids into a package which is dispensed to the pharmacist. This system only dispenses the 200 most frequently used solids. A typical hospital pharmacy can contain over 1,500 different medications, many in liquid,

- 4 -

syringe or bottle form.  These medications cannot be automatically dispensed by this system, but must be manually selected by the pharmacist.

Neither system allows the dispensed medications to be

5     automatically returned to the storage area.

There is a need for an automated system which is able to dispense all dosage forms currently contained in a hospital pharmacy.  Medicines should be automatically dispensed by the system per a patient order and placed in individual patient

10     medication boxes for a pharmacist to check.  Each drug and each patient box should be individually bar coded so that the accuracy of the dispensing process can be automatically checked by the system.  Once drugs are returned to the pharmacy, the system should automatically return each drug to its proper location in

15     inventory and credit the patient's account for the return.  One system should also keep a running inventory and notify the user whenever inventory of a particular item drops below a preset level and whether the shelf life of an item has passed.  With such a system, a hospital can recognize significant labor

20     savings, as well as savings based on improved accuracy in the dispensing function and better tracking of inventory and expired medications.

MA000099

## SUMMARY OF THE INVENTION

We provide an automated method and apparatus for selecting and restocking stored items, which is particularly useful for filling patient medication orders in a hospital pharmacy. The stored items must be packaged to be held in a storage rack. Preferably, each package contains a bar code corresponding to the package contents. The items are arranged in a main storage rack so that like items are in the same location and a predetermined location is provided for every item.

We prefer to provide a second rack or a designated portion of the main storage rack for receipt of new or returned items to be restocked. Such items can be randomly placed on this supply station for transmittal to their respective predetermined locations on the storage rack.

We also provide a means for picking items from and placing items in the storage rack and the supply station. The picking means preferably is comprised of a gripper assembly mounted on a transport vehicle which moves along a track or other controlled route. The gripper assembly preferably has a movable rod or other carrier for holding selected items, at least one vacuum head and associated controls for gripping and moving selected items. We prefer to provide a bar code reader for reading item packages.

We also prefer to provide a conveyor on which boxes, patient medication trays or drawers can be placed. The conveyor

- 6 -

is positioned so that the picking means can place selected items into appropriate containers on the conveyor.

We provide a processing unit with associated memory and data entry peripherals. This computer system receives the list
5   of requested items, directs the picking means, checks the items selected and prepares reports. Data can be entered manually through a keyboard or bar code reader or electronically through an RS 232 port. Reports may be printed, displayed on a console or transmitted to a memory or another computer for later use.
10   Other details and advantages of our method and apparatus will become apparent from the description of the preferred embodiments shown in the drawings.

BRIEF DESCRIPTION OF THE DRAWINGS
15

In the accompanying drawings, the preferred embodiments of the invention and preferred methods of practicing the invention are illustrated in which:

Figure 1 is a schematic representation of our present
20   preferred system.

Figure 2 is a side view of a present preferred package.

Figure 3 is a perspective view of one present preferred storage rack.

Figure 4 is a perspective view of a portion of a second
25   preferred storage rack.

- 7 -

Figure 5 is a perspective view of a portion of a third preferred storage rack.

Figure 6 is a schematic representation showing the storage rack, conveyor and movable support structure which holds a gripper assembly.

Figure 7 is a schematic view of a present preferred gripper assembly.

Figure 8 is a front view of a present preferred gripper assembly.

Figure 9 is a side view of the gripper assembly of Figure 7 with the storing rod in a raised and extended position.

Figure 10 is a side view of the gripper assembly of Figure 8 with the storing rod in a lowered and partially retracted position.

Figure 11 is a diagram showing a preferred vacuum and pressure line for the gripper assembly.

Figure 12 is a schematic representation of the gripper assembly mounted on a vehicle.

Figure 13 is a perspective view of a rod with packages thereon connected to a support bar.

Figure 14 is a schematic representation of a side view of a first rod and a second rod and having packages thereon attached to a portion of the support bar.

Figure 15 is a schematic overhead view of an alternative system for filling an order.

Figure 16 is a flowchart of the filling process.

- 8 -

Figure 17 is a flowchart of the check process.

Figure 18 is a flowchart of the return process.

Figure 19 is a flowchart of the restocking process.

5            DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring now to the drawings wherein like reference
numerals refer to similar or identical parts throughout the
several views, and more specifically to Figure 1 thereof, there
10   is shown a schematic representation of a present preferred system
10 for filling orders, such as prescriptions for patients. The
system 10 contains storage racks 12 for handling packages. We
prefer to provide at least two storage racks 12 and arrange them
parallel to one another. Various storage rack designs can be
15   used and certain present preferred storage racks are shown in
Figures 3, 4 and 5. In our system, each package preferably
contains only one product, although the product may consist of
two or more related items, such as nut and bolt. When our system
is installed in a hospital pharmacy, each package preferably
20   contains a single dose of medicine.

A present preferred package 14 is illustrated in
Figure 2. Although the package could be a blister card or box,
we prefer to use a clear plastic bag having a hole 15 to permit
the package to be hung on a rod 30, 48, 65 or 66 shown in Figures
25   3, 6 and 14. Each package preferably has a bar code 16 and a
written description 17, which identify the contents of the

- 9 -

package. A white area 17a can be created on the clear plastic bag over which the written description 17 can be printed, stamped or even handwritten. The bar code and the written description may include not only the name of the product, but also its quantity, weight, instructions for use and expiration date. We also prefer to position the bar code and label on the package so that there is a large unmarked area 62 through which one can see the contents of the package. Figure 2 represents a clear plastic bag for a unit dose of medicine. We can use a bag having a perforation line for easy opening or a recloseable bag having an interlocking rib type seal. The perforation line or rib seal is located along line 13. This type of bag is useful in a hospital pharmacy which buys medicines in large or bulk quantities and must repackage the drugs in individual dose packages. Package 14 can be any desired size. We have used a rectangular package having dimensions indicated by arrows A, B, C and D, wherein A is 3.5 inches, B is 1.0 inch, C is 3.0 inches and D is 0.1875 inches. Alternatively, the package 14 can have A equal 5.0 inches, B equal 1.25 inches, C equal 5.0 inches and D equal 0.1875 inches.

An individual dose of medicine can be manually fed into an automated packaging system 98, as shown in Figure 1, which automatically seals the package and prints a bar code and typewritten label directly on the package. In a preferred embodiment, we utilize the H-100™ packaging system as manufactured by Automated Packaging Systems of Twinsburg, Ohio.

- 10 -

MA000104

With the addition of the Accu-Print™ 100 Programmable In-Line
Direct Transfer Imprinter, also manufactured by Automated
Packaging Systems, a bar code can be printed directly on the
medicine package.

5    A storage rack 12, which may also be used for a supply
station, is shown in Figure 3.  This rack is configured to hold
packages of the type illustrated in Figure 2.  The rack has a
rectangular frame 28, having an open front and back.  Running
across the back are a plurality of back rod supports 32 from
10    which the rods 30 extend.  The frame 28 with rod supports 32
forms an X, Y coordinate system with each rod 30 and medicine
packages 14 therein having a unique X, Y coordinate.  Packages
are placed in the storage rack so that each product is located at
a known X, Y coordinate.  Since every product is in a known X, Y
15    location, it is possible to direct an automatic picking means to
any product location to select a desired item.  The packages are
segregated within the storage rack so that all packages in any
given location have the same contents.

Although we prefer to use racks in which packages are
20    hung on rods, other types of racks can be used for storage racks
and supply stations in our system.  In Figure 4, we show the
upper portion of a rack having a rectangular frame 21 with an
open front and closed back 23.  Attached to the back 23 are sets
of brackets 25 positioned to hold packages 27.  To be held
25    securely in this rack, such packages must be fairly rigid.
Blister cards and boxes can be used.  If desired, a hole 15 could

- 11 -

be provided in the packages to permit them to be carried on a rod.

A top portion of another suitable rack having a rectangular frame 21, open front and closed back 23 is shown in Figure 5. This rack has a set of shelves 29, which may be inclined toward back 23. A set of dividers 31 separates groups of packages 27.

The racks of Figures 3, 4 and 5 have two important common features. First, the packages are held in locations having known X, Y coordinates. Those coordinates could be single X, Y values as may correspond to the position of the package holes 15 or a group of X, Y values defining an entire package. Second, there is sufficient clearance between packages to allow automated picking means to select, grab and replace individual packages.

Referring now to Figures 1 and 6, we provide storage racks 12 on either side of a track 42 over which a vehicle 44 may travel. The vehicle may be column-shaped as in Figure 6. Many types of drive systems could be used to propel the vehicle. For example, one could provide a motor indicated by block 47 to propel wheels (not shown) at the base of the vehicle. Alternatively, one may use a chain or cable running through the track 42 to pull the vehicle to any desired location. Whatever drive system is used should be capable of moving the vehicle to positions along the track which correspond to the X coordinates of the packages within the rack. Thus, computer 24, which

- 12 -

controls the drive system, can direct the vehicle 44 to a
location in front of the package or packages to be selected.

      Packages are selected by a picking means 38, preferably
of the type illustrated in Figures 7 though 10.  The picking
5    means is mounted on column-shaped vehicle 44 in a manner to allow
controlled vertical movement along that column.  In this manner,
the picking means 38 can be positioned at locations along column
44 which correspond to the Y coordinates of packages to be
selected.  The picking means 38 is controlled by a computer 24,
10   or local area network of computers, having a database.  The
database has the order to be filled and a record of the
predetermined locations 18 of each different product in the
storage rack 12.  The computer 24 guides the picking means 38
based on information contained in the database, such that the
15   picking means 38 picks a package 14 according to the order to be
filled.  The picking means 38 can also include means, such as a
bar code reader 26 as shown in Figure 7, for determining the
identity 16 of a package 14 in the storage rack 12 or in a supply
rack 20 and providing its identity 16 to the computer 24.  The
20   computer 24 guides the picking means 38 to select the desired
packages and deliver them to a desired location.  In the system
of Figures 1 and 6, the packages are delivered to containers 36
located on conveyor 34.  When the system is installed in a
hospital pharmacy, the containers 36 are individual patient boxes
25   in which the patient's medication is delivered from the pharmacy
to the appropriate floor or nurses' station.  The patient boxes

- 13 -

MA000107

preferably are bar coded with a patient identification code. After a patient's prescription is filled and the patient box 36 has all the medicine packages called for in the prescription, a conveyor belt 34 moves the patient box 36 to a check station 80.

5   An operator uses the check station bar code reader 82 to scan the bar code label on the filled patient box 36, see Figure 15. The patient identification number is taken from the inputted bar code and the prescription of the patient is displayed on the check station screen 84 of the check station console 86 connected to

10  the computer or network of computers 24. The operator then scans individual medicine package bar codes in the patient box 36. The identity of the medicine packages 14 in the patient box 36 is automatically checked for correctness with respect to the patient list on the station screen 84. If the medicine packages 14 in

15  the box 36 are correct, then the patient box is allowed to continue on towards the ultimate destination and the next filled patient box 36 is then checked. If the medicine packages 14 in the patient box 36 are not correct, then it is determined whether the error, whatever that may be, can be corrected. If the

20  correction can be made, then the record on the check station screen 84 is corrected and the procedure for verifying correctness is then repeated. If the problem cannot be corrected, then the patient box 36 can be manually filled or resubmitted to be filled with missing doses by the system and the

25  computer is notified that the patient's prescription has not yet been filled.

- 14 -

In the event that a patient does not take all of the
medicine which has been prescribed, unused medicine is returned
to the hospital pharmacy in the patient box 36. Typically,
patient boxes are transferred in a carrier which contains several

5    patient boxes. This carrier is received at a return station 92.
The patient box 36 is first removed from the carrier returned
from a nursing unit. An operator uses the return station bar
code scanner 91 to scan the bar code on the patient box 36. The
nursing unit number and the patient identification number is then

10   parsed from the inputted bar code of the patient box 36. The
database is then accessed and the patient dispensing record is
retrieved. On the return screen 94, there is displayed for a
particular patient at the operator console 96, a list of the
medicines ordered and dispensed to the patient. The operator of

15   the return station 92 then scans the identity 16 of the medicine
in the patient's box 36 with the return station bar code scanner
91. The medicine packages 14 that are found thereon are verified
as being dispensed to the patients. The expiration date of the
medicine in the medicine package 14 is then determined. If the

20   expiration date of a medicine in the medicine package 14 has
passed, then the medicine package is discarded. If the
expiration date has not passed, then the returned medicine
package 14 is placed in the supply rack 20. If there is more
medicine to be returned, the process is then repeated. If there

25   is no more medicine in the patient box 36 to return, then the
return station console 96 is checked to verify the correctness of

- 15 -

the medicine returned.  If the screen is correct, then the return record is accepted and the database is updated.  If the screen 94 is incorrect, then the screen is corrected to correspond to the returned medicine packages 14 and the patient box 36.  In this

5    manner, the system will have developed a record of all medication given to each patient.  That record can be transferred to a hospital billing system and used for billing purposes.  The data can also be input into an inventory monitoring system and used to generate reports or orders for new supplies.

10        We prefer to provide supply racks 20 which serve as a holding area for returned and new products.  These racks are comparable to storage racks 12 and are accessed by the picking means 38 in the same manner.  However, products are randomly placed in the supply racks either manually or by the picking

15    means.  The supply racks 20 are shown in Figure 1 at a position where they are accessible to the picking means.  However, we prefer that the supply rack be movable.  Then it could be moved to other convenient locations, such as near packaging system 98 for refilling.

20        When packages 14 are to be restocked onto the storage racks 12, the supply rack 20 is placed in a predetermined position alongside the storage racks 12.  By being placed in a predetermined position, the X and Y coordinates at which packages may have been placed in return racks 20 are known to the computer

25    24.  Picking means 38 is then positioned for a given package in the return rack.  The bar code reader 26 on the end of picking

- 16 -

means 38 then scans the identity 16 of the package 14 that is about to be picked. The process of picking the returned packages 14 is the same as occurs with respect to the process of obtaining packages 14 from the storage rack 12. The only difference is

5   that the order of the packages 14 and their identity as they are picked is saved in the computer 24. When the picking means is then moved to the storage racks 12 the computer knows the identity of the respective medicine package 14 on the picking means 38, which is about to be placed back onto the storage racks

10   12.

The picking means 38 includes at least one gripper assembly illustrated in Figures 7 through 12. As shown in Figure 12, we prefer to provide a support bracket 41 extending from column 44. This bracket can move along column 44 in a vertical

15   direction. A third actuator 43 is attached to bracket 41. Mounting 39 permits movement along rod 41 and movement at bar 43 in a direction normal to rod 41. A picking means 38, which preferably is the gripper assembly of Figures 7 through 10, is mounted to actuator 43 through actuator 45, which permits a

20   180-degree rotation of the gripper assembly. Actuator 43 permits horizontal movement of picking means 38 in the Z direction.

The gripper assembly is preferably comprised of a housing 49, as shown in Figure 7 having means for storing medicine packages 14, such as a storing rod 48. Assembly 38 also

25   contains means 50 for obtaining a package 14. The obtaining means 50 is slidingly attached to the housing 49 such that it can

- 17 -

MA000111

move in a Z direction, which is perpendicular to the X, Y
directions, to pick a package 14 from a support rod 30 in the
storage rack 12 or supply rack 20.  Identifying means, for
example, the bar code reader 26 shown in Figure 8, is mounted on
5    housing 49 such that it can identify a package 14 to be picked by
the obtaining means 50.  The obtaining means 50 preferably
includes means for producing a suction, such as a vacuum
generator 58 controlled by a vacuum sensor 58a which draws a
vaccum through vacuum line 55 and vacuum valve 54.  The obtaining
10   means 50 also preferably includes an extension rod 52 in fluidic
communication with a pneumatic in/out cylinder 53 and associated
valve 59, as shown in Figures 8 and 11.  The extension rod 52 is
slidingly attached with respect to the Y and Z directions to the
housing 49.  A suction is maintained through the vacuum lines 55
15   when the vacuum valve 54 is activated to supply air to vacuum
generator 48.  The obtaining means 50 also can include a suction
head 56 connected to the extension rod 52 through which a package
is picked with suction.  The vacuum sensor 58a will sense when a
package is properly positioned on the suction head 56, for
20   example, by detecting air flow therethrough.  The suction head 56
and carried package are then moved to the storing means, such as
the storing rod 48, to deposit the package thereon.  Preferably,
the storing means is a storing rod 48 which extends from the
housing 49 such that the suction head 56 and the extension rod 52
25   can deposit a package 14 thereon.  The obtaining means 49 is also
composed of a cylinder 48A which allows an assembly of both

MA000112

holding rod 48 and pusher plate 57 to move in the Y direction. The holding rod 48 is also attached to a cylinder 48B which allows the storage rod to retract and extend in reference to the obtaining means.  The pusher plate 57B is also attached to a

5  cylinder 57A which allows the plate to move in the positive Z direction.  This action is necessary to push drugs off of the storage bar 48 during the dump process.

The extension rod 52 can move in the Y and Z directions to place a picked package on the storing rod 48 under the action

10  of up/down cylinder 51 and in/out cylinder 53.  Valve 57 activates cylinder 51 to move both the cylinder 53 and the extension rod 52 in the Y direction.  Valve 59 activates cylinder 53 to move the extension rod in the Z direction.  Valve 54 provides air to the vacuum generator 58 to suction in head 56

15  sufficient to pick a package from a rod 30 of the support structure 28 and then hold it to the suction head 56.  The suction head 56 preferably has two faces 60 and 61 through which suction can be drawn.  One face 60 is capable of picking a package from a rod 30 of the storage rack and the other face 61

20  is capable of picking a package from a storing rod 48 of the picking means 38.  As shown in Figure 2, each package preferably has a face 62.  The packages are held by the storing rod 48 and the rods 30 of the support structure 38 such that the face 62 of each package is parallel to the Y axis.  The outside face 60 is

25  utilized when a package 14 is being removed from a rod 30 in the supply rack, and the inside face 61 is utilized when a package is being removed from the storing rod 48 of the picking means 38.

- 19 -

In an alternative embodiment, the rods 30 extend from the double rod support bar 64 in sets of two as shown in Figure 14. A first rod 65 and a second rod 66 of each set point essentially in the Z direction, but approximately 180 degrees apart from each other. This embodiment shown in Figure 15 includes a first tooling support structure 70, a second tooling support structure 72, a first end of arm tooling 67 and a second end of arm tooling 68 that picks the packages 14. Each tooling support structure has at least one column type vehicle 44 and at least one track 42 to support the column 44. Column 44 moves along the respective tracks 42 to pick a given package 14 from a corresponding support rod 30, or restock a support rod 30 with an associated package 14.

In the operation of the preferred embodiment in a hospital, doctors visit patients in nursing units and write out medication orders for each patient. A patient is typically placed on a certain medication treatment which requires multiple doses of medication over a period of a day. Some medications are administrated at certain times of the day and possibly at intervals of several hours. Patients may also request certain medications on an elective basis for disorders such as headaches. These requests are included in the doctor's order that is sent from the nursing unit to the central pharmacy of the hospital. Once an order is received by the pharmacy, it is checked by registered pharmacists and input into the pharmacy information system. These orders reflect not only orders that are added to a

- 20 -

MA000114

particular patient's treatment, but changes in the medication
treatment.  The pharmacy information system combines this
information with the patient's existing medication schedule and
develops a patient medication profile.  A fill list is generated
5    from that profile.  The fill list is a list of all the
medications that must be distributed to all patients for the day.
This information is sent to the pharmacy printer where a hard
copy is generated.

Means for communication between the pharmacy information
10   system and the present system exist by either tapping the serial
data print stream of the pharmacy information system or by a
direct bi-directional communication link.  The relevant
information concerning the patient including drug type, dosage
and frequency is placed in the database of the system.  The
15   database contains information about which drugs are to be
dispensed that day to the patient and all drugs that have been
dispensed in the past to the patient.  Information from the
pharmacy information system is received on an ongoing basis
throughout the day.  New information can be entered into the
20   database at any time.  In addition to the fill list, new orders
and patient admittance, discharge and transfer information are
received and stored.

Figure 16 is a flowchart with respect to the processing
of a patient prescription.  A similar method would be followed
25   for retrieving other stored products.  The software for
processing an order is started as indicated by box 180.  Then the

- 21 -

steps indicated by boxes 181 thru 202 are followed. Before a box
is loaded onto the conveyers, the operator scans the location
barcode and the patient barcode on the patient box. The system
then checks its database to ensure that that patient is still at

5    that location. If a new patient has been transferred or admitted
to that location, the system automatically generates a barcode
label with that patient's identification number on it. This
label is then manually applied to the patient box and the box is
placed on the conveyor. If no patient is registered in the room,

10    the box is placed aside and the operator proceeds with the next
patient box to be filled. When the turn comes for the patient
box 36 to be filled, it is shuttled into a position on the
conveyor 34 such that the gripper assembly 38 can communicate
with the box 36 as shown in Figure 1. A stationary bar code

15    reader 90 reads the bar code on the patient box 36. The patient
identification number is then parsed from the bar code input.
This causes the fill list for that particular patient to be
retrieved from the database as indicated in box 185. The fill
list is converted to data consisting of locations and number of

20    picks. At box 187 the data is then downloaded to a robot
controller or gantry control program in order for the computer 24
to control the end of arm tooling 38 such that it knows what
packages 14 to obtain and place in the patient box 36.

      The system is now ready to pick the drugs 188. First,

25    the column-type vehicle 44 goes to the rack where the drug to be
selected is stored and stops at the X coordinate of that drug

package. The picking means 38 then moves along the column 44 to the Y coordinate of the medicine package to be picked. It is also turned to the proper storage rack 12 which has the desired package 14. These actions may also be performed simultaneously

5 by the system 189.

When the end of gripper assembly 38 is properly positioned, the bar code reader 26 reads 190 the identity 16 on the medicine package 14 in order to confirm that it is the proper medicine package to be picked with respect to the patient's

10 prescription. After such confirmation the suction rod 52 extends in the Z direction by pneumatic cylinder 53 such that the outside suction face 60 contacts the package face 62. Valve 54 activates a suction through the air lines 55 such that a suction drawn through the suction face 60 grabs the medicine package 14 sensor

15 58a detects when the contact is proper between the suction face 60 and the medicine package 14, as indicated at box 192 of Figure 16. Then the extension rod 52 retracts from the rod 30 of the support structure 28, pulling the medicine package 14 with it. Once the medicine package 14 is clear of the rod 30, the

20 extension rod 52 positions the medicine package 14 that it has obtained, upon the storing rod 48 as indicated by box 193.

The system now prepares for the next pick. This operation is indicated by box 194 includes several actions. Once the package 14 is on the storage rod 48, the vacuum valve 54

25 terminates the suction and the medicine package is released from the suction face 60. The vacuum valve 57 then activates the

- 23 -

cylinder 51 such that the extension rod 52 (and cylinder 53) are moved in the Y direction so the bottom of the suction head 56 is above the package 14 on the storing rod 48. The extension rod is then moved forward in the Z direction and downward in the Y direction by the respective valves and cylinders to clear the package and position the suction head 56 for the next pick. In an alternative embodiment the storage rod 48 is moved down rather than moving suction head up 56 to provide clearance between them when the suction head moves in a Z direction. The computer 24 then notes that the medicine package 14 with the appropriate medicine has been picked.

The final series of operations indicated by boxes 195 thru 202 involves a comparison of the drug identified by the reader as having been picked with the list of drugs to be selected. If an incorrect drug was selected the gripper assembly moves to a reject area, places the incorrect drug there, removes that drug from the list of items selected and is ready to pick more drugs. If the correct drug was selected the system records that fact and is ready to pick more drugs. The process is repeated for all the medicine identified in the patient's prescription until all of the medicine packages 14 needed have been picked.

The gripper assembly containing all desired packages then positions itself so that it is over the patient box 36. The gripper assembly 38 then positions the outside suction face 60 behind the medicine packages on the storing rod 48 that have been

- 24 -

collected.  Packages can be dropped into the patient box by retracting rod 48 by actuating cylinder 48A to the position shown in Figure 10.  The storage rod 48 is then moved into the negative Z direction so that the suction face no longer holds the packages in place.  The cylinder 48B then causes the storage rod 48 to be retracted which will cause the drugs to be dumped into the box.

Alternatively, the suction head may be stroked forward in the Z direction so that all packages 14 are pushed off the storing rod 48 into the patient box 36.  Movement of the suction head is accomplished by the vacuum system.  Vacuum valve 57 activates the cylinder 51 to retract in the positive Y direction such that the bottom of the suction head 56 is above the tops of the packages 14 on the storing rod 28.  Then vacuum valve 59 activates cylinder 53 to retract the extension rod 52 in the negative Z direction such that the outer suction face 60 is behind all of the medicine packages 14 on the storing rod 48.  Vacuum valve 57 is then activated such that the suction head 56 is dropped back down in the negative Y direction to be behind the packages 14.  Finally, vacuum valve 59 is activated such that the extension rod 52 is extended in the positive Z direction and the front suction face 60 pushes all packages 14 off the storing rod 48 into the patient box 36.

In the event that the wrong medicine package 14 was scanned and is picked, or the medicine has expired, then picking means 38 will have placed those packages in a reject or return area, where the medicine package 14 can be disposed.  A pharmacy

- 25 -

technician will then manually sort the drugs in the reject area, removing expired drugs and placing the others in the supply rack in order that they might be returned to their correct location in the system. The process is then repeated for the next drug on

5    the prescription list that has not yet been obtained.

The flow chart of Figure 17 is the process of checking the selected packages which have been placed in a patient box. Such checking is performed at the check station. The process begins by calling up the check program indicated by box 105. The

10    bar code on the patient box is scanned 106 and the patient number portion of the bar code is identified 107. The patient number is displayed 108 on the screen at the check station. Then the packages in the patient box are scanned 109. The identification of the packages is compared with the list of drugs that had been

15    ordered for the patient in a verify step 110. If correct packages are in the box, the checking of the box is complete and the system is ready for the next box 111. If the packages in the box do not match the order the system determines if the problem can be corrected 112. If so, the correction is made 113 and the

20    verify step is repeated. If not, the box is dumped 114 and the order is recorded as not filled or the box is resubmitted and the missing medications are filled by the system. For example, should the system determine that an item is missing it may either create a modified list and send the box on with a modified list

25    or it may instruct the picking means to get the missing item.

- 26 -

The return process is shown in the flow chart of Figure 18. The process starts 115 by calling up the return program. The patient box containing the returned items must be positioned so that the patient box can be scanned 116 for the patient
5   identification number 117 and the nursing unit from which the box was returned. If the box has come from the proper nursing unit the system retrieves the patient dispensing record 120 and displays that record 121 for the operator. Next the packages are scanned 122. The system preferably verifies 123 that the scanned
10  packages had been sent to the patient making the return. Next the system checks each package 124 to determine if the drug is useful or if it has expired, been recalled or otherwise should not be returned to the supply rack. If no, the package is discarded 125. If yes, the package is returned to the supply
15  rack 126. If more drugs remain in the box the process is repeated 127. If no packages remain, the system may further process the list of returned packages 128 to modify the patient's record, update the system inventory log or display the list of returns for review by the operator.
20      The process of restocking returned or new packages to the storage rack is diagramed in Figure 19. These packages are manually placed on a return or supply rack and the program for restocking is called up 130. The program causes the picking means to be positioned 131 so that the gripping assembly can pick
25  packages from the return or supply rack. The bar code on the first package is scanned 132 and the portion of the scanned bar

- 27 -

code which identifies the drug is found 133. The system then checks the database 134 for the location in the storage rack which has been designated for the identified product. The system

5   extends the vacuum head 135 to engage the package. Suction is applied 136 and a suction sensor is checked. This should cause the package to be held by the gripper assembly which fact will be confirmed by the sensor 137. The gripper assembly positions the package 138 on the storage rod 48 in the gripper assembly. Then the suction is released and the gripper assembly is ready to

10  place additional packages on the storage rod. If more packages remain on the return or supply rack 140, the process is repeated until all packages are on the storage rod or the storage rod is full. The gripper assembly is then moved to a position 141 in front of the storage rack to properly place the outermost package

15  on the storage rod. That package is grasped 142 using back suction cups 61 (see Figure 11). The extension rod 52 is retracted in the negative Z direction such that the inside suction face 61 is in contact with the medicine package 14. The sensing means 58 determines whether proper contact is made. Then

20  the extension rod 52 is moved a predetermined distance in the positive Z direction 143 to place the medicine package over a rod 30 of support structure 28. Vacuum valve 54 is then deactivated 144 to stop suction, allowing the medicine package 14 on the suction face 61 to drop away therefrom. The extension rod 52

25  then moves in the negative Z direction towards the medicine packages 14 on the storing rod 48 to repeat the process. While

- 28 -

MA000122

it moves back to obtain another medicine package 14, the sensor
58 trips when contact is made.  The process can be repeated 141
until there are no more medicine packages 14 on the storing rod
48.  The computer 24 knows when to stop returning packages since
5    it knew how many packages had been placed on the storing rod 48.

In the event that all drugs to be returned or restocked
at a particular storage location are identical the process is
some what different.  Packages are picked from the supply rack in
the method detailed above.  The gripper assembly is then moved to
10   a position in front of the storage rack to place the remaining
packages on the storage rod.  Cylinder 48A causes the assembly of
storing rod 48 and pusher plate 57B to move in the negative Z
direction.  Storage rod 48 is co-linear with a rod 30 of support
structure 28.  Pusher plate 57B then moves in the positive Z
15   direction pushing all remaining packages on storage rod 48 on to
rod 30.

The restocking of the storage racks 12 can be carried
out during the evening when packages are not being gathered to
fill orders.  Alternatively, restocking can be carried out
20   simultaneously with picking if the system 10 has a pair of rods
as shown in Figure 14, a first end of arm tooling 67, second end
of arm tooling 68 and a first tooling structure 70 and a second
tooling structure 72 is utilized, as shown in Figure 15.  While,
for instance, the first end of arm tooling 67 is picking medicine
25   packages 14 to fill a patient's prescription, the second end of
arm tooling 68 can be restocking the second side of the

- 29 -

storage area 12.

Although the invention has been described in detail in the foregoing embodiments for the purpose of illustration, it is to be understood that such detail is solely for that purpose and

5   that variations can be made therein by those skilled in the art without departing from the spirit and scope of the invention except as it may be described by the following claims.

- 30 -

MA000124

We claim:

1.  A system for selecting and delivering packages from
a stored area to fill orders comprising:

a)  a storage area comprised of a plurality of locations
each location being sized and configured to hold at
least one package in a manner so that the package
can be placed into and removed from the locations by
automated picking means, each location having a
distinct x, y coordinate;

b)  automated picking means sized and configured to be
able to hold packages, to select packages from
storage area locations and place packages in storage
area locations in accordance with instructions
received from a computer, the picking means having a
gripper for grasping and moving individual packages;

c)  a computer having at least one memory which contains
a program for directing the picking means to chosen
storage area locations and a database containing at
least one x, y coordinate location in the storage
area for each package held within the storage area,
wherein only one type of package is stored in each x, y
coordinate location.

2.  The system of claim 1 wherein the gripper is a
vacuum head.

- 31 -

3.  The system of claim 1 also comprising a sensor attached to the picking means for determining when a package is grasped by the gripper.

4.  The system of claim 1 wherein at least one package has a machine readable label identifying contents of the package and also comprising a package reader attached to the picking means for reading the label.

5.  The system of claim 1 wherein the label is a bar code and the reader is a bar code reader.

6.  The system of claim 1 wherein the label also contains an expiration date.

7.  The system of claim 1 wherein the picking means contains a picking means storage area for holding packages selected by the picking means.

8.  The system of claim 6 wherein the picking means storage area is comprised of at least one storage rod and holes are provided in the packages to permit the packages to be held on the storage rod.

- 32 -

MA000126

9.  The system of claim 1 also comprising a supply station for receiving new and returned packages, the supply station having a plurality of locations each location being sized and configured to hold at least one package in a manner so that the package can be placed into and removed from the locations by automated picking means, each location having a distinct x, y coordinate.

10.  The system of claim 9 wherein the supply station is movable and is sized to be removably positioned adjacent the storage area.

11.  The system of claim 1 wherein the storage area is comprised of a plurality of rods and a hole is provided in each package to permit the package to be held on the rods.

*11*

12.  The system of claim 1 also comprising at least one data transmission port attached to the computer through which a list of packages to be selected can be input and a list of packages selected by the system can be output.

*12*

13.  The system of claim 1 wherein the memory contains a program for checking compatability of products in packages selected by the picking means with other products listed in the database.

MA000127

13. The system of claim 1 also comprising a conveyor positioned to receive packages from the picking means.

14. The system of claim 13 also comprising a plurality of containers positioned on the conveyor, the containers being sized and positioned to receive packages from the picking means.

15. The system of claim 14 wherein the containers have machine readable labels.

16. The system of claim 15 wherein the labels are bar codes.

18. The system of claim 15 wherein each package and each container have machine readable labels.

17. The system of claim 14 wherein the labels are bar codes.

18. The system of claim 14 also comprising a check station located adjacent the conveyor, the check station having reading means for reading the machine readable labels.

19. The system of claim 18 wherein the reading means is connected to the computer in a manner to input information from the machine readable labels; the computer having a program for

MA000128

storing the input information in the memory and for comparing the input information to other information contained in the database.

21. The system of claim 1 wherein the packages contain individual doses of medicine.

22. The system of claim 1 also comprising a track over which the picking means travels according to directions supplied by the computer also comprising means for moving the picking means over the track.

24. A system for selecting and delivering packages from a holding to fill orders comprising:

a) holding means comprised of a frame having a plurality of support rods for holding medicine packages, each rod associated with a given medicine and holding medicine packages with only the same medicine;

b) means for supplying medicine packages to the support rods;

c) means for picking medicine packages from the support rods in accordance with instructions received from a computer, said picking means being able to access the holding means and the supply means;

- 35 -

MA000129

d)  a computer having a database containing the
locations of all packages in the holding means able
to receive orders for packages and able to direct
the means for picking packages.

25.  A system as described in claim 24 wherein the
structure includes a plurality of rod supports from which the
rods extend, said structure with back rod supports form an X, Y
coordinate system with each rod and medicine packages therein
having a unique X and Y coordinate, said picking means disposed
adjacent said structure such that a given medicine package on an
associated rod can be picked by the picking means to fill a
patient's prescription; or a given medicine package in the
supplying means can be picked by the picking means to restock the
associated rod.

26.  A system as described in claim 25 including a
conveyor in communication with the picking means; and patient
prescription boxes which are moved by the conveyor to the picking
means such that the picking means provides the medicine packages
it has picked to fill a given prescription to an associated box.

27.  A system as described in claim 26 wherein the
picking means includes at least one gripper that picks the
medicine packages; and a tooling support structure having at
least one column to support the tooling and at least one row to

- 36 -

MA000130

~~support the column such that the tooling moves~~ along the column
as the column moves along the row to pick a given medicine
package hanging from a corresponding support rod, or restock a
given medicine package on a corresponding support rod; and means
for moving the column with respect to the row, said moving means
controlled by the computer.

28.  A system as described in claim 27 wherein the
tooling is comprised of
     a housing;
     means for storing medicine packages attached to the
housing;
     means for obtaining a medicine package, said
obtaining means slidingly attached to the housing such
that it can move in a Z direction, which is perpendicular
to the X and Y directions, to pick a medicine package
from a support structure when the housing is adjacent to
and aligned with a support rod, and can move in the Z
direction to place a picked package on the storing means;
and
     wherein the identifying means is part of the gripper
such that it can identify a package to be picked by the
obtaining means, each of said packages having an identity
disposed on them which can be read by the identifying
means.

MA000131

29. A system described in claim 28 wherein the identity of each package is a bar code, and the identifying means includes a bar code reader disposed on the obtaining means.

30. A system as described in claim 29 wherein

the obtaining means includes means for producing a suction; a suction rod in fluidic connection with the suction producing means, said suction rod slidingly attached with respect to the Y and Z directions to the housing and maintaining a suction therethrough when the suction producing means is activated;

a suction is connected to the suction rod through which a medicine package is picked with suction; and means for sensing when a package is properly positioned on the suction head such that the package rod is then moved to the storing means and deposits the package thereon.

31. A system as described in claim 30 wherein the storing means is a storing rod which extends from the housing such that the suction head and the suction rod can deposit a package thereon.

32. A system as described in claim 31 wherein the tooling includes valves and pneumatic cylinders for moving the suction rod in the Y and Z direction; and a vacuum pump for

- 38 -

providing suction to the suction rod and support head sufficient
to pick a package from a rod of the support structure and then
hold it to the suction head.

33.  A system as described in claim 32 wherein the
suction head has two faces through which a suction can be drawn,
each face capable of picking a package.

34.  A system as described in claim 33 wherein the two
faces are parallel to each other and are parallel to the x-axis,
and wherein each package has a face and the package are held by
the storing rod and the rods of the support structure such that
the face of each package is parallel to the x-axis.

35.  A system as claimed in claim 24 wherein the rods
extend from the back rod supports in sets of two, with a first
rod and a second rod on each set pointing essentially in a z
direction, which is perpendicular to the X and Y directions, but
approximately 180° apart from each other, and wherein the picking
means includes a first gripper and a second gripper that picks
the medicine packages; and a first and second tooling support
structure each tooling support structure having at least one
column and at least one row to support the column, such that the
first and the second tooling moves along the respective column
and the respective column moves along the respective row of the
first and second tooling support structure, respectively, to pick

- 39 -

~~a given medicine package from a corresponding support rod, or restock a support rod with an associated medicine package.~~

36.  A system as described in claim 20 wherein the picking means includes at least one gripper that picks the packages; and a tooling support structure having at least one column to support the tooling and at least one row to support the column such that the tooling moves along the column as the column moves along the row to pick a given package hanging from a corresponding support rod, said gripper able to turn on the column to pick packages on either the first or second holding means; and

means for moving the column with respect to the row, said moving means controlled by a computer and in communication therewith.

MA000134



871838

## ABSTRACT OF THE DISCLOSURE

A system for filling orders, such as prescriptions for patients, comprising a device for holding packages. Each package

5    has the same type of contents being held in a predetermined location by the holding device. Each package has an identity which defines the contents therein. The holding device has a plurality of predetermined locations corresponding to a plurality of different types of contents. Additionally, the system is

10    comprised of a device for supplying packages to the holding device. Also, there is a device for picking a package from the holding device that is identified in the order for the purpose of restocking the holding device. The picking device is in communication with the holding device and supplying device. In a

15    preferred embodiment, the contents of each package is a single dosage of medicine.

-41-

MA000135

Docket No. 920015

### DECLARATION AND POWER OF ATTORNEY

I, the below named inventor, hereby declare that:

My residence, post office address and citizenship is as stated below next to my respective name

I believe I am the original, first and sole inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled
the specification of which is attached hereto.
I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56(a).

I hereby claim the benefit under Title 35, United States Code, Section 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, Section 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, Section 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing of this application.

| Application Serial No. | Filing Date | Status (Patented, Pending, Abandoned) |
|---|---|---|
| 07/469,217 | 1/24/90 | Pending |
| | | |
| | | |
| | | |
| | | |

I hereby declare that all statements made hereby of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint the following attorney(s) to prosecute this application and to transact all business in the Patent and Trademark Office connected herewith: Lynn J. Alstadt, Reg. No. 29,362; George P. Baier, Reg. No. 26,717; Paul A. Beck, Reg. No. 22,289; Michael L. Dever, Reg. No. 32,216; Gordon Harris, Reg. No. 15,384; George Raynovich, Jr., Reg. No. 19,829 and Alvin E. Ring, Reg. No. 18,697.

Address all telephone calls to     Lynn J. Alstadt
Address all correspondence to     Buchanan Ingersoll Professional Corporation
                                 58th Floor, 600 Grant Street
                                 Pittsburgh, Pennsylvania 15219
                                 (412) 562-1632

*1-00*

Full name of sole or first inventor  Sean C. McDonald
Inventor's Signature  _Sean McDonald_  Date _8/20/92_
Residence _Pittsburgh, Allegheny County, Pennsylvania PA_  Citizenship  USA
Post Office Address _419 South Braddock Avenue, Pittsburgh, Pennsylvania  15221_

Full name of second joint inventor, if any  _Ellen J. Hertz_
Inventor's Signature  _____  Date _____
Residence _Clemmons, Forsyth County, North Carolina_  Citizenship USA
Post Office Address  _4232 Lake Cliff Drive, Clemmons, North Carolina 27012_

*2-00*

Full name of third joint inventor, if any  James A. Smith
Inventor's Signature  _James A. Smith_  Date _4/20/92_
Residence _Allison Park, Allegheny County, Pennsylvania PA_  Citizenship  USA
Post Office Address _3909 Ash Drive, Allison Park, Pennsylvania  15101_

Full name of fourth joint inventor, if any  Gregory Toto
Inventor's Signature  _____  Date _____
Residence _Santa Cruz, Santa Cruz County, California_  Citizenship  USA
Post Office Address  _815B Corcoran Avenue, Santa Cruz, California 95062_

Full name of fifth joint inventor, if any
Inventor's Signature  _____  Date _____
Residence  _____  Citizenship _____
Post Office Address  _____

SP  WPT COE  Continuation-in-Part Declaration—Sub.

MA000137

Applicant or Patentee: _ ~an C. McDonald et al. _

Attorney's Serial or Paten  o:: _____  Docket No.: __920015__

Filed or Issued: _____

AN AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA

VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS
(37 CFR 1.9(f) and 1.27(c)) - SMALL BUSINESS CONCERN

I hereby declare that I am

| | the owner of the small business concern identified below:
|X| an official of the small business concern empowered to act on behalf of the concern identified below:

NAME OF CONCERN __Automated Healthcare, Inc.__

ADDRESS OF CONCERN __261 Kappa Drive__
_____Pittsburgh, Pennsylvania  15238_____

I hereby declare that the above identified small business concern qualified as a small business concern as defined in 13 CFR 121.3-18, and reproduced in 37 CFR 1.9(d), for purposes of paying reduced fees under section 41(a) and (b) of Title 35, United States Code, in that the number of employees of the concern, including those of its affiliates, does not exceed 500 persons.  For purposes of this statement, (1) the number of employees of the business concern is the average over the previous fiscal year of the concern of the persons employed on a full-time, part-time or temporary basis during each of the pay periods of the fiscal year, and (2) concerns are affiliates of each other when either, directly or indirectly, one concern controls or has the power to control the other, or a third party or parties controls or has the power to control both.

I hereby declare that rights under contract or law have been conveyed to and remain with the small business concern identified above with regard to the invention, entitled AN AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA _____ by inventor(s) Sean C. McDonald, ____Ellen J. Hertz, James A. Smith and Gregory Toto____
described in

|X| the specification filed herewith
| | application serial no. _____, filed _____
| | patent no. _____, issued _____

If the rights held by the above-identified small business concern are not exclusive, each individual, concern or organization having rights to the invention is listed below* and no rights to the invention are held by any person, other than the inventor, who could not qualify as a small business concern under 37 CFR 1.9(d) or by any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).  *Note: Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities.  (37 CFR 1.27)

NAME _____

ADDRESS _____
| | Individual      | | Small Business Concern      | | Nonprofit Organization

NAME _____

ADDRESS _____
| | Individual      | | Small Business Concern      | | Nonprofit Organization

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

NAME OF PERSON SIGNING __Sean C. McDonald__

TITLE OF PERSON OTHER THAN OWNER __President__

ADDRESS OF PERSON SIGNING __261 Kappa Drive__

_____Pittsburgh, Pennsylvania  15238_____

SIGNATURE _Sean M. Donald_ _____  DATE _5/20/92_

MA000138



Figure 1

295495

APPROVED
BY
DRAFTSMAN

O.G. FIG.
CLASS | SUBCLASS



Figure 2

MA000140







Figure 3



Figure 4



Figure 5

MA000143







Figure 6

MA000144



| APPROVED BY | O.G. FIG. | |
|---|---|---|
| | CLASS | SUBCLASS |
| DRAFTSMAN | | |

295495



Figure 7

MA000145



FIGURE 8



FIGURE 9

MA000147



QT 871832

FIGURE 10

MA000148



Figure 11

MA000149







Figure 12

MA000150

| APPROVED | O.G. FIG. | |
|---|---|---|
| BY | CLASS | SUBCLASS |
| DRAFTSMAN | | |



295495



Figure 13

MA000151

APPROVED | O.G. FIG.
BY |
DRAFTSMAN | CLASS | SUBCLASS

295495



Figure 14

MA000152



Figure 15

MA000153



Figure 16



Figure 17

07 871832

07 871832



Figure 18

# Exhibit E
# Part 3



Figure 19

07 871832

| CERTIFICATE OF MAILING BY " EXPRESS MAIL " UNDER 37 CFR 1.10 – SEPARATE PAPER – | ATTORNEY'S DOCKET NO. 920015 |
|---|---|

| IN RE APPLICATION OF |
|---|
| Sean C. McDonald et al. |

| SERIAL NUMBER | FILED |
|---|---|
| | |

| FOR AN AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA (CIP of Serial No. 469,217, filed 1/24/90) |
|---|

| GRP. ART UNIT | EXAMINER |
|---|---|
| | |

" Express Mail " mailing label number  B84265991

Date of deposit                April 21, 1992

I hereby certify that this paper or fee is being deposited with

the United States Postal Service " Express Mail Post Office to

Addressee " service under 37 CFR 1.10 on the date indicated above

and is addressed to the  Commissioner of Patents and Trademarks,

Washington, D.C. 20231.

Lynn J. Alstadt

( Typed or printed name of person mailing paper or fee )

( Signature of person mailing paper or fee )

Form PTO-FB-A640 ( 8-83 )          Patent and Trademark Office · U.S. DEPT. of COMMERCE



Figure 1

MA000159



01 871832



Figure 2

MA000160

As Originally Filed

01 871832



Figure 3

MA000161

As Originally Filed

07 871832



Figure 4

MA000162



Figure 5

MA000163



07 871832



Figure 6

MA000164



07 871832



Figure 7

MA000165



FIGURE 8

MA000166



FIGURE 9

MA000167



FIGURE 10

MA000168



Figure 11

MA000169

Print of Drawings
As Originally Filed

07 871832



Figure 12

MA000170



01 871832



Figure 13

MA000171



OT 871832



Figure 14

MA000172



Figure 15

MA000173



07 871832

Figure 16



Figure 17

MA000175



Figure 18

OT 871832



Figure 19

MA000177



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTY DOCKET NO/TITLE |
|---|---|---|---|---|
| 07/871,832 | 04/21/92 | MCDONALD | S | 920015 |

LYNN J. ALSTADT
BUCHANAN INGERSOLL PROFESSIONAL CORP.
56TH FLOOR, 600 GRANT ST.
PITTSBURGH, PA 15219                                    0000

DATE MAILED:    05/11/92

## NOTICE TO FILE MISSING PARTS OF APPLICATION
## FILING DATE GRANTED

A filing date has been granted to this application. However, the following parts are missing.

If all missing parts are filed within the period set below, the total amount owed by applicant as a

☐ large entity, ☑ small entity (verified statement filed), is $ _65_ .

1. ☐  The statutory basic filing fee is: ☐ missing ☐ insufficient. Applicant as a ☐ large entity
     ☐ small entity, must submit $ _____ to complete the basic filing fee and MUST ALSO
     SUBMIT THE SURCHARGE AS INDICATED BELOW.

2. ☐  Additional claim fees of $ _____ as a ☐ large entity ☐ small entity, including any required multiple
     dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional
     claims for which fees are due. NO SURCHARGE IS REQUIRED FOR THIS ITEM.

3. ☐  The oath or declaration:
     ☐ is missing.
     ☐ does not cover items omitted at time of execution.
     An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application
     Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED
     BELOW.

4. ☐  The oath or declaration does not identify the application to which it applies. An oath or declaration in
     compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date
     is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

5. ☐  The signature to the oath or declaration is: ☐ missing; ☐ a reproduction; ☐ by a person other than the
     inventor or a person qualified under 37 CFR 1.42, 1.43, or 1.47. A properly signed oath or declaration in
     compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date
     is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW..

6. ☑  The signature of the following joint inventor(s) is missing from the oath or declaration:
     _E. A. West + D. Teta_ An oath or declaration listing the names of all inventors and signed by
     the omitted inventor(s), identifying this application by the above Application Number and Receipt Date is
     required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

7. ☐  The application was filed in a language other than English. Applicant must file a verified English
     translation of the application and a fee of $30.00 under 37 CFR 1.17(k), unless this fee has already been
     paid. NO SURCHARGE IS RERQUIRED FOR THIS ITEM.

8. ☐  A $50.00 processing fee is required for returned checks. (37 CFR 1.21(m)).

9. ☐  Your filing receipt was mailed in error because check was returned without payment.

10. ☐  Other. _120_
     An Application Number and Filing Date have been assigned to this application. The missing parts and fees
     identified above in items 1 and 3-6 must be timely provided ALONG WITH THE PAYMENT OF A
     SURCHARGE of $~~120.00~~ for large entities or $~~60.00~~ for small entities who have filed a verified statement
     claiming such status. The surcharge is set forth in 37 CFR 1.16(e). Applicant is given ONE MONTH FROM
     THE DATE OF THIS LETTER, OR TWO MONTHS FROM THE FILING DATE of this application,
     WHICHEVER IS LATER, within which to file all missing parts and pay any fees required above to avoid
     abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee
     under the provisions of 37 CFR 1.136(a).

Direct the response to, and any questions about, this notice to ATTENTION: Application Division,
Special Handling Unit.

_A copy of this notice MUST be returned with response._

For: Manager, Application Division
(703) 557-

MA000178



PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of                :

SEAN McDONALD et al.                :    AN AUTOMATED SYSTEM
                                         FOR SELECTING AND
Serial No. 07/871,832               :    DELIVERING PACKAGES FROM
                                         A STORAGE AREA
Filed April 21, 1992                :

L E T T E R

Pittsburgh, Pennsylvania 15219

June 22, 1992

Hon. Commissioner of Patents and Trademarks

    Washington, D.C.  20231

Sir:

        This is in response to the Notice to File Missing Parts
of Application mailed May 11, 1992.  Submitted herewith is an
original supplemental Declaration and Power of Attorney signed by
the four inventors of the above-identified patent application.  A
check in the amount of $65.00 is also enclosed to cover the
surcharge fee.  Any additional fees may be charged against
deposit account No. 02-4553.

                            Respectfully submitted,

I hereby certify that this correspondence is being depo-      BUCHANAN INGERSOLL, P.C.
sited with the United States Postal Service as first
class mail in an envelope addressed to: Commissioner
of Patents and Trademarks, Washington, D.C. 20231,
on                                            By _____
    June 22, 1992                                Lynn J. Alstadt
    _____                    Registration No. 29,362
        Buchanan Ingersoll

                                             Attorneys for Applicants
    (412) 562-1632



Docket No. 920015

### DECLARATION AND POWER OF ATTORNEY

I, the below named inventor, hereby declare that:

My residence, post office address and citizenship is as stated below next to my respective name.

I believe I am the original, first and sole inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled AN AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA, the specification of which was filed on April 21, 1992, and bears Serial No. 07/871,832. I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56(a).

I hereby claim the benefit under Title 35, United States Code, Section 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, Section 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, Section 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing of this application.

| Application Serial No. | Filing Date | Status (Patented, Pending, Abandoned) |
|---|---|---|
| 07/469,217 | 1/24/90 | Abandoned |
| | | |
| | | |
| | | |
| | | |

I hereby declare that all statements made hereby of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint the following attorney(s) to prosecute this application and to transact all business in the Patent and Trademark Office connected herewith: Lynn J. Alstadt, Reg. No. 29,362; George P. Baier, Reg. No. 26,717; Paul A. Beck, Reg. No. 22,288; Michael L. Dever, Reg. No. 32,216; Craig N. Killen, Reg. No. 35,218; George Raynovich, Jr., Reg. No. 19,829 and Alvin E. Ring, Reg. No. 18,697.

Address all telephone calls to  Lynn J. Alstadt
Address all correspondence to  Buchanan Ingersoll Professional Corporation,
                               58th Floor, 600 Grant Street
                               Pittsburgh, Pennsylvania 15219
                               (412) 562-1632

*1·00*

Full name of sole or first inventor  Sean C. McDonald
Inventor's Signature _____  Date 6-19-92
Residence Pittsburgh, Allegheny County, Pennsylvania  *Pa*  Citizenship  USA
Post Office Address 419 South Braddock Avenue, Pittsburgh, Pennsylvania  15221

*2·00*

Full name of second joint inventor, if any  Ellen J. Hertz
Inventor's Signature _____  Date 6-8-92
Residence Clemmons, Forsyth County, North Carolina  *NC*  Citizenship  USA
Post Office Address 4232 Lake Cliff Drive, Clemmons, North Carolina  27012

*3·00*

Full name of third joint inventor, if any  James A. Smith
Inventor's Signature _____  Date 6/19/92
Residence Allison Park, Allegheny County, Pennsylvania  *Pa* Citizenship  USA
Post Office Address 3909 Ash Drive, Allison Park, Pennsylvania  15101

*4·00*

Full name of fourth joint inventor, if any  Gregory Toto
Inventor's Signature _____  Date 6/18/92
Residence Santa Cruz, Santa Cruz County, California  *Ca*  Citizenship  USA
Post Office Address 815B Corcoran Avenue, Santa Cruz, California  95062

Full name of fifth joint inventor, if any _____
Inventor's Signature _____  Date _____
Residence _____  Citizenship _____
Post Office Address _____

RAL_JAB1\JAY&C+P DECLARATION

MA000181

65. -205   A/N

MAIL ROOM
JUN 24 1992

**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| FILING DATE | FIRST NAMED APPLICANT | ATTY DOCKET NO./TITLE |
|---|---|---|

RECEIVED
JUN 30 1992
APPLICATION BRANCH

DATE MAILED:

## NOTICE TO FILE MISSING PARTS OF APPLICATION
## FILING DATE GRANTED

A filing date has been granted to this application. However, the following parts are missing.

If all missing parts are filed within the period set below, the total amount owed by applicant as a

☐ large entity, ☑ small entity (verified statement filed), is $ _____ .

1. ☐   The statutory basic filing fee is: ☐ missing ☐ insufficient. Applicant as a ☐ large entity
☐ small entity, must submit $ _____ to complete the basic filing fee and MUST ALSO
SUBMIT THE SURCHARGE AS INDICATED BELOW.

2. ☐   Additional claim fees of $ _____ as a ☐ large entity ☐ small entity, including any required multiple
dependent claim fee, are required. Applicant must submit the additional claim fees or cancel the additional
claims for which fees are due. NO SURCHARGE IS REQUIRED FOR THIS ITEM.

3. ☐   The oath or declaration:
☐ is missing.
☐ does not cover items omitted at time of execution.
An oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application
Number and Filing Date is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED
BELOW.

4. ☐   The oath or declaration does not identify the application to which it applies. An oath or declaration in
compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date
is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

5. ☐   The signature to the oath or declaration is: ☐ missing; ☐ a reproduction; ☐ by a person other than the
inventor or a person qualified under 37 CFR 1.42, 1.43, or 1.47. A properly signed oath or declaration in
compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Date
is required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW..

6. ☑   The signature of the following joint inventor(s) is missing from the oath or declaration:
_____ An oath or declaration listing the names of all inventors and signed by
the omitted inventor(s), identifying this application by the above Application Number and Receipt Date is
required. A SURCHARGE MUST ALSO BE SUBMITTED AS INDICATED BELOW.

7. ☐   The application was filed in a language other than English. Applicant must file a verified English
translation of the application and a fee of $30.00 under 37 CFR 1.17(k), unless this fee has already been
paid. NO SURCHARGE IS RERQUIRED FOR THIS ITEM.

8. ☐   A $50.00 processing fee is required for returned checks. (37 CFR 1.21(m)).

9. ☐   Your filing receipt was mailed in error because check was returned without payment.

10. ☐   Other. _____

An Application Number and Filing Date have been assigned to this application. The missing parts and fees
identified above in items 1 and 3-6 must be timely provided ALONG WITH THE PAYMENT OF A
SURCHARGE OF $120.00 for large entities or $60.00 for small entities who have filed a verified statement
claiming such status. The surcharge is set forth in 37 CFR 1.16(e). Applicant is given ONE MONTH FROM
THE DATE OF THIS LETTER, OR TWO MONTHS FROM THE FILING DATE of this application,
WHICHEVER IS LATER, within which to file all missing parts and pay any fees required above to avoid
abandonment. Extensions of time may be obtained by filing a petition accompanied by the extension fee
under the provisions of 37 CFR 1.136(a).

Direct the response to, and any questions about, this notice to ATTENTION: Application Division,
Special Handling Unit.

## *A copy of this notice MUST be returned with response.*

For: Manager, Application Division
(703) 557-____

CCN-TH 06/26/92 02871832                    1 205        65.00 CK

MA000182



PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of                    :

SEAN McDONALD et al.                    :    AN AUTOMATED SYSTEM
                                             FOR SELECTING AND
Serial No. 07/871,832                   :    DELIVERING PACKAGES FROM
                                             A STORAGE AREA
Filed April 21, 1992                    :

                                                    RECEIVED

          INFORMATION DISCLOSURE STATEMENT            JUL 2 8 1992
          ─────UNDER 37 C.F.R. §1.56─────
                                                    GROUP 230

                              Pittsburgh, Pennsylvania  15219

                              July 21, 1992

Hon. Commissioner of Patents and Trademarks

     Washington, D.C.  20231

Sir:

     The above-identified patent application is a

continuation-in-part of Serial No. 07/469,217, now abandoned.

Applicants advise the Office that the only pertinent prior art of

which they are aware was cited in the parent application or its

corresponding European counterpart.  A copy of the European

search report and references there cited is enclosed.

                              Respectfully submitted,

                              BUCHANAN INGERSOLL, P.C.

I hereby certify that this correspondence is being depo-
sited with the United States Postal Service as first
class mail in an envelope addressed to: Commissioner
of Patents and Trademarks, Washington, D.C. 20231,
on    July 21, 1992                   By  _____
         Buchanan Ingersoll               Lynn J. Alstadt
                                          Registration No. 29,362

                                          Attorneys for Applicants

     (412) 562-1632

MA000183

SHEET 1 OF 1

| FORM PTO-1449 (Rev. 7-80) | | U.S. Department of Commerce Patent and Trademark Office | | ATTY. DOCKET NO. 920015 | | SERIAL NO. 07/871,382 | |
|---|---|---|---|---|---|---|---|
| LIST OF PRIOR ART CITED BY APPLICANT (Use several sheets if necessary) | | | | APPLICANT Sean McDonald et al. | | | |
| | | | | FILING DATE April 21, 1992 | | GROUP 3107 | |

Part of Paper #4

### U.S. PATENT DOCUMENTS

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| ✓ | AA | 3,986,612 | 10/76 | Kamm et al. | 209 | 111.7 | |
| ✓ | AB | 4,687,390 | 7/87 | Bonneton et al. | 414 | 282 | |
| | AC | | | | | | |
| | AD | | | | RECEIVED | | |
| | AE | | | | | | |
| | AF | | | | JUL 2 8 1992 | | |
| | AG | | | | GROUP 230 | | |
| | AH | | | | | | |
| | AI | | | | | | |
| | AJ | | | | | | |
| | AK | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| ✓ | AL | 2 596 299 | 10/87 | French | — | — | | ✓ |
| ✓ | AM | FR85/00232 | 8/84 | PCT | — | — | ✓ | |
| | AN | | | | | | | |
| | AO | | | | | | | |
| | AP | | | | | | | |

### OTHER PRIOR ART (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| | AR | |
| | AS | |
| | AT | |

| EXAMINER F. E. Werner | DATE CONSIDERED 8/93 |
|---|---|

* EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

| EUROPEAN PATENT OFFICE | OFFICE EUROPEEN DES BREVETS | ✉ P.B.5818 Patentlaan, 2 |
|---|---|---|
| Branch at The Hague Search Division | Département à La Haye Division de la recherche | 2280 HV  RIJSWIJK (ZH) Pays-Bas / Netherlands / Niederlande Telex 31651 (070) 340-20 40 BREVPATENT |

Jones, Michael Raymond
HASELTINE LAKE & CO.
Hazlitt House
28 Southampton Buildings
Chancery Lane
London WC2A 1AT
GRANDE BRETAGNE

HASELTINE LAKE LONDON
ACKNOWLEDGEMENT
REF.
29 JUL 1991
ORIGT. TO
COPY                          26. 07. 91

| Zeichen/Ref./Réf. | Anmeldung Nr /Application No /Demande n° //Patent Nr /Patent /Brevet n° |
|---|---|
| HL42220/000/MRJ | 91300543.5- - |

Anmelder/Applicant/Demandeur/Patentinhaber/Proprietor/Titulaire
AUTOMATED HEALTHCARE, INC.

## COMMUNICATION

The European Patent Office herewith transmits

[X] the European search report

[ ] the declaration under Rule 45 of the European Patent Convention

[ ] the partial European search report under Rule 45 of the European Patent Convention

[ ] the supplementary European search report concerning the international application number

relating to the above-identified European patent application; copies of the documents cited in the search report are enclosed.

The Search Division approved the following items, as submitted by the applicant:

[X] Abstract              [X] Title              [ ] Figure

[ ] The abstract was modified by the Search Division and the definitive text is attached to the present communication.

[✓] The following figure will be published with the abstract, since the Search Division considers that it better characterises the invention than the one indicated by the applicant.

Figure:

[ ] Additional copy(ies) of the documents cited in the European search report.

## REFUND OF THE SEARCH FEE

If applicable under Art.10 of the Rules relating to fees, a separate communication from the Receiving Section on the refund of the search fee will be sent to you later.

| EPO Form 1507 07.90 |
|---|

MA000185



European Patent Office

**EUROPEAN SEARCH REPORT**

Application Number

EP 91 30 0543

### DOCUMENTS CONSIDERED TO BE RELEVANT

| Category | Citation of document with indication, where appropriate, of relevant passages | Relevant to claim | CLASSIFICATION OF THE APPLICATION (Int. Cl.5) |
|---|---|---|---|
| X | US-A-4 678 390  (BONNETON)<br>* Column 6, lines 50-57; column 10, lines 33-47; column 13, lines 46-54; column 16, lines 3-12; figures * | 1,19,20 | B 65 G    1/137 |
| Y | | 2,3,4,5 ,8,18 | |
| A | | 11,12, 21,22, 23 | |
| | --- | | |
| Y | FR-A-2 596 299  (COMPAGNIE GENERALE D'AUTOMATISME CGA-HBS)<br>* Page 6, line 28 - page 13, line 19; figures * | 2,3,4,5 ,8,18 | |
| | --- | | |
| A | US-A-3 986 612  (KAMM)<br>* Column 1, lines 32-46; figures * | 1,22 | |
| X | | 19 | |
| | --- | | |
| A | WO-A-B 601 386  (SOCIETE VYNEX)<br>* Page 11, lines 3-13; figures *<br>----- | 6,21 | TECHNICAL FIELDS SEARCHED (Int. Cl.5)<br><br>B 65 G<br>G 06 F |

The present search report has been drawn up for all claims

| Place of search | Date of completion of the search | Examiner |
|---|---|---|
| THE HAGUE | 26-06-1991 | OSTYN T.J.M. |

CATEGORY OF CITED DOCUMENTS

X : particularly relevant if taken alone
Y : particularly relevant if combined with another document of the same category
A : technological background
O : non-written disclosure
P : intermediate document

T : theory or principle underlying the invention
E : earlier patent document, but published on, or after the filing date
D : document cited in the application
L : document cited for other reasons
--------------------------------------------
& : member of the same patent family, corresponding document

EPO FORM 1503 03.82 (P0401)

## ANNEX TO THE EUROPEAN SEARCH REPORT
## ON EUROPEAN PATENT APPLICATION NO.

EP 91 30 0543

This annex lists the patent family members relating to the patent documents cited in the above-mentioned European search report.
The members are as contained in the European Patent Office EDP file on 17/07/91
The European Patent Office is in no way liable for these particulars which are merely given for the purpose of information.

| Patent document cited in search report | Publication date | Patent family member(s) | | Publication date |
|---|---|---|---|---|
| US-A- 4678390 | 07-07-87 | EP-A,B | 0235488 | 09-09-87 |
| FR-A- 2596299 | 02-10-87 | US-A-<br>US-A- | 4874281<br>4971513 | 17-10-89<br>20-11-90 |
| US-A- 3986612 | 19-10-76 | None | | |
| WO-A- 8601386 | 13-03-86 | FR-A-<br>AU-A-<br>CA-A-<br>DE-A-<br>EP-A,B<br>US-A- | 2569548<br>4775185<br>1240769<br>3562863<br>0192690<br>4797819 | 07-03-86<br>24-03-86<br>16-08-88<br>30-06-88<br>03-09-86<br>10-01-89 |

For more details about this annex : see Official Journal of the European Patent Office, No. 12/82

GP310



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Group Art Unit 3101          :  PATENT APPLICATION

In re application of         :

SEAN MCDONALD ET AL.         :  AN AUTOMATED SYSTEM
                                FOR SELECTING AND
Serial No. 871,832           :  DELIVERING PACKAGES FROM A
                                STORAGE AREA
Filed April 21, 1992         :

### STATUS LETTER

Pittsburgh, Pennsylvania  15219

September 23, 1993

Hon. Commissioner of Patents and Trademarks

     Washington, D. C.  20231

Sir:

     Please advise us of the status of the above-identified

patent application.

                              Respectfully submitted,

                              _Lynn J. Alstadt_
                              Lynn J. Alstadt
                              Registration No. 29,362
                              BUCHANAN INGERSOLL, P.C.
                              56th Floor, 600 Grant Street
                              Pittsburgh, Pennsylvania  15219

(412) 562-1632

Status Letter
Expected date for
action on this application
With action of co|83
Mo_____Yr_____

_____
Examiner

FRANK E. WERNER
PRIMARY EXAMINER



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Sn 07/871832

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|

MCDONALD

EXAMINER
WERNER, F

F1M1/1015

| ART UNIT | PAPER NUMBER |
|---|---|
| 3107 | |

DATE MAILED: 10/15/93

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined     ☐ Responsive to communication filed on _____     ☐ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), ____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I  THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited by Examiner, PTO-892.  2. ☑ Notice re Patent Drawing, PTO-948.
3. ☑ Notice of Art Cited by Applicant, PTO-1449.  4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.  6. ☑ Status Letter (Sept. 28, 1993)

**Part II  SUMMARY OF ACTION**

1. ☑ Claims _1-36_ are pending in the application.
   Of the above, claims _24-35_ are withdrawn from consideration.
2. ☐ Claims _____ have been cancelled.
3. ☐ Claims _____ are allowed.
4. ☑ Claims _1-23 and 36_ are rejected.
5. ☐ Claims _____ are objected to.
6. ☑ Claims _1-36_ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____, has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9-89)

Serial No. 871832                          -2-

Art Unit   317

-PART III-

1.   Restriction to one of the following inventions is required

under 35 U.S.C. § 121:

      I.   Claims 1-23 and 36, drawn to a storage area (with X-Y

coordinates, automated picking means and a computer

subcombination, classified in Class 414, subclass 273.

      II.   Claims 24-35, drawn to a holding means, supply means,

picking means and a computer combination, classified in Class

414, subclass 281.

2.   The inventions are distinct, each from the other because of

the following reasons:

3.   Inventions II and I are related as combination and

subcombination.  Inventions in this relationship are distinct if

it can be shown that (1) the combination as claimed does not

require the particulars of the subcombination as claimed for

patentability, and (2) that the subcombination has utility by

itself or in other combinations.  (M.P.E.P. § 806.05(c)).  In the

instant case, the combination as claimed does not require the

particulars of the subcombination as claimed because at least

base claim 1 (of the Group II invention) can have a non-gripping

support picking means and can have the support rods in a non-X-Y

arrangement.  The subcombination has separate utility such as

being utilized alone or in combinations.

4.   Because these inventions are distinct for the reasons given

Serial No. 871832                                   -3-

Art Unit    317

above and have acquired a separate status in the art as shown by
their different classification, restriction for examination
purposes as indicated is proper.

5.    During a telephone conversation with Mr. Alstadt on Sept.
30, 1993 a provisional election was made with traverse to
prosecute the invention of Group I, claims 1-23 and 36.
Affirmation of this election must be made by applicant in
responding to this Office action.  Claims 24-35 are withdrawn
from further consideration by the Examiner, 37 C.F.R. § 1.142(b),
as being drawn to a non-elected invention.

6.    Applicant is reminded that upon the cancellation of claims
to a non-elected invention, the inventorship must be amended in
compliance with 37 C.F.R. § 1.48(b) if one or more of the
currently named inventors is no longer an inventor of at least
one claim remaining in the application.  Any amendment of
inventorship must be accompanied by a diligently-filed petition
under 37 C.F.R. § 1.48(b) and by the fee required under 37 C.F.R.
§ 1.17(h).

7.    Claims 1-23 and 36 are rejected under 35 U.S.C. § 112,
second paragraph, as being indefinite for failing to particularly
point out and distinctly claim the subject matter which applicant
regards as the invention.

A double inclusion of structure is present re "automated
picking means "(claim 1, line 9), "a computer" (claim 1, line

Serial No. 871832                          -4-

Art Unit   317

15), "storage area locations" (claim 1, lines 11 and 12), "a
package" (claim 3, line 2), "automated picking means" (claim 9,
line 6), and "in memory" (claim 21, line 24). No antecedent
basis exists for "the first or second holding means" (claim 36,
lines 8 and 9). Further, re claim 1, it is not understood what
the storage area locations are structurally comprised of; also,
no means has been claimed to move the picking means; lastly, it
is not clear how the types are distinguished from each other.  Re
claims 9 and 10, no means has been set forth to move the supply
station and it is not clear as to what the supply station is
structurally comprised of.

8.     The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

> A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section
> 102 of this title, if the differences between the subject
> matter sought to be patented and the prior art are such that
> the subject matter as a whole would have been obvious at the
> time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which
> the invention was made.
>
> Subject matter developed by another person, which qualifies
> as prior art only under subsection (f) or (g) of section 102
> of this title, shall not preclude patentability under this
> section where the subject matter and the claimed invention
> were, at the time the invention was made, owned by the same
> person or subject to an obligation of assignment to the same
> person.

9.     This application currently names joint inventors.  In
considering patentability of the claims under 35 U.S.C. § 103,
the examiner presumes that the subject matter of the various
claims was commonly owned at the time any inventions covered

Serial No. 871832                    -5-

Art Unit   317

therein were made absent any evidence to the contrary.  Applicant
is advised of the obligation under 37 C.F.R. § 1.56 to point out
the inventor and invention dates of each claim that was not
commonly owned at the time a later invention was made in order
for the examiner to consider the applicability of potential 35
U.S.C. § 102(f) or (g) prior art under 35 U.S.C. § 103.

10.  Claims 1, 7, 9, 10, 12-14, 22 and 23 are rejected under 35

U.S.C. § 103 as being unpatentable over Morello et al.

Morello et al disclose storage areas 40, automated picking

means 20, 62, etc. on tracks 98 (99) and computer means 16 to

assign the package to X-Y coordinates (column 11, lines 11-17)

and to control the picking means.  It would have been obvious to

have operated the system in the claimed manner.  Re claim 9, note

supply station 22.  It would have been an obvious and

conventional extension of Morello et al's matrix to have included

a matrix supply station.  Re claims 12 & 13, it would have been

obvious to have programmed the computer in the claimed manner, if

desired.  Re claim 14, it would have been obvious to have

included a conveyor to minimize manual intervention.  Re claim

22, it would have been obvious to have handled medicine packages,

if desired.

Re claim 10, the use of a conventional movable supply

station to lend flexibility to the system would have been

obvious.

11.  Claims 3 & 2 are rejected under 35 U.S.C. § 103 as being

unpatentable over Morello et al as applied to claims 1, 7, 9, 10,

12-14, 22 and 23 above, and further in view of Boucher, Jr. et al

Serial No. 871832                              -6-

Art Unit   317

or Pohjonen.  Boucher, Jr. et al (62,64) or Pohjonen et al (Sa)

disclose and render obvious the substitution of a vacuum head.

Re claim 3, Boucher, Jr. el (24,26) teach that it would have been

obvious to have included a sensor for the package.

12.  Claims 4-6 are rejected under 35 U.S.C. § 103 as being

unpatentable over Morello et al as applied to claims 1, 7, 9, 10,

12-14, 22 & 23 above, and further in view of O'Neil et al.

    O'Neil et al (100,102, 97) teach and render obvious the use

of a machine readable label to identify the contents.  That the

reader be conventionally attached to the gripper would have been

obvious.  Re claim 6, it would have been obvious to have included

any relevant information on the label, including an expiration

date.

13.  Claims 8 & 11 are rejected under 35 U.S.C. § 103 as being

unpatentable over Morello et al as applied to claims 1, 7, 9, 10,

12-14, 22 & 23 above, and further in view of the European Patent.

    It would have been obvious to have substituted rods and

holes in the package as taught by the European Patent (1,15,

etc.)

14.  Claim 15 is rejected under 35 U.S.C. § 103 as being

unpatentable over Morello et al as applied to claims 1, 7, 9, 10,

12-14, 22 and 23 above, and further in view of Buttarazzi.

    Buttarazzi (42,21,88,etc.) teach and render obvious the

alternate use of containers (filled by picking means) placed on a

MA000194

Serial No. 871832                          -7-

Art Unit   317

conveyor. The use of conventional plural containers (as claimed) would have been obvious.

15. Claims 16-21 are rejected under 35 U.S.C. § 103 as being unpatentable over Morello et al in view of Buttarazzi as applied to claim 15 above, and further in view of O'Neil et al or Henderson.

Re claim 16, it would have been obvious to have included a machine readable label as taught by O'Neil et al or Henderson (34). The use of a conventional check station (re claims 20 and 21) operating as claimed would have been obvious.

16. Claim 36 is rejected under 35 U.S.C. § 103 as being unpatentable over Morello et al in view of Buttarazzi & O'Neil et al or Henderson as applied to claims 16-21 above, and further in view of the European Patent.

Note the obviousness discussion of the European Patent above. It would have been obvious to have conventionally accessed the rods in the claimed manner.

17. The prior art made of record and not relied upon is considered pertinent to applicant's disclosure.

18. Any inquiry concerning this communication or earlier communications from the examiner should be directed to F.E. Werner whose telephone number is (703) 308-1140.

Any inquiry of a general nature or relating to the status of this application should be directed to the Group receptionist whose telephone number is (703) 308-1113.

Summary:

Serial No. 871832                              -8-

Art Unit    317


     Claims 1-23 and 36 are rejected

     Claims 24-35 are withdrawn

     Rejection-SSP 3 mos.


Werner/oc
October 08, 1993
October 12, 1993

FRANK E. WERNER
PRIMARY EXAMINER  10/93
GROUP 3100

MA000196

PTO FORM 948
(Rev 8-87)

GROUP 3107

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

ATTACHMENT TO PAPER NUMBER
5

APPLICATION NUMBER
821833

## NOTICE OF DRAFTSMAN'S PATENT DRAWING REVIEW

The PTO Draftsman review all originally filed drawings regardless
of whether they were designated as informal or formal.

The drawings filed _____ 4/21/92

A. ☐ are approved.

B. ☒ are objected to under 37 CFR 1.84 for reason(s) checked below. The examiner will require submission of new, corrected drawings at the appropriate time. Corrected drawings must be submitted according to the instructions listed on the back of this Notice.

1. Paper and Ink. 37 CFR 1.84(a)
   ☐ Poor Quality Paper. Must Be White.
   Transparent Paper Not Allowed.
   Sheet(s) _____

2. Size of Sheet and Margins. 37 CFR 1.84(b)
   Acceptable Paper Sizes and Margins

   Paper Size

   | Margin | 8 1/2 by 14 inches | 8 1/2 by 13 inches | DIN size A4 21 by 29.7 cm. |
   |--------|--------|--------|--------|
   | Top | 2 inches | 1 inch | 2.5 cm. |
   | Left | 1/4 inch | 1/4 inch | 2.5 cm. |
   | Right | 1/4 inch | 1/4 inch | 1.5 cm. |
   | Bottom | 1/4 inch | 1/4 inch | 1.0 cm. |

   ☐ Proper Size Paper Required. All
   Sheets Must be Same Size.
   Sheet(s) _____

   ☐ Paper Margins Required.
   Sheet(s) _____
   ☐ Top   ☐ Right
   ☐ Left  ☐ Bottom

3. Character of Lines. 37 CFR 1.84(c)
   ☐ Lines Pale, Rough and Blurred, or
   Jagged. Fig(s) _____

   ☐ Solid Black Shading Not Allowed.
   Fig(s) _____

4. ☐ Photographs Not Approved.

5. Hatching and Shading. 37 CFR 1.84(d)
   ☐ Shade Lines are Required.
   Fig(s) _____

   ☐ Criss-Cross Hatching Not Allowed.
   Fig(s) _____

   ☐ Double Line Hatching Not Allowed.
   Fig(s) _____

   ☐ Parts in Section Must be Hatched
   Properly. Fig(s) _____

6. Reference Characters. 37 CFR 1.84(f)
   ☐ Reference Characters Poor or Rough
   and Blurred. Fig(s) _____

   ☒ Minimum 1/8 inch (3.2 mm.) in height
   is required. Fig(s) 8-20, 16-19

   ☒ Figure Legends Poor or Placed outside of
   Incorrectly. Fig(s) 19   Dwg.

7. Views. 37 CFR 1.84(i) & (j)
   ☐ Figures Must be Numbered Separately.

   ☐ Figures Must Not be Connected
   Fig(s) _____

8. Identification of Drawings. 37 CFR 1.84(l)
   ☐ Extraneous Matter or Copy Machine
   Marks Not Allowed. Fig(s) _____

9. ☐ Changes Not Completed from Prior
   PTO-948 dated _____

☒ Comments:

~ Remove box from around dwgs. Figs 8-10

Telephone inquires concerning this review should be directed to the Chief Draftsman at telephone number (703) 557-6404.

_____ Reviewing Draftsman

2/7/92 Date

PTO Copy

MA000197

TO SEPARATE, H[...] TOP AND BOTTOM EDGES, SNAP–APART AND DISCARD CARBON

| FORM PTO-892<br>(REV. 2-92) | U.S. DEPARTMENT OF COMMERCE<br>PATENT AND TRADEMARK OFFICE | SERIAL NO.<br>07/871832 | GROUP ART UNIT<br>3107 | ATTACHMENT<br>TO<br>PAPER<br>NUMBER | 5 |
|---|---|---|---|---|---|

NOTICE OF REFERENCES CITED

APPLICANT(S)

Sean C. McDonald et al

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| A | | 4 8 9 6 0 2 4 | 1-1990 | Morello et al | 414 | 274 Xr | 10-19-87 |
| B | | 4 7 8 9 2 9 5 | 12-1988 | Boucher, Jr. et al | 414 | 280 xr | |
| C | | 5 1 2 9 7 7 7 | 7-1992 | Pohjonen et al | 414 | 280 | 12-24-90<br>6-30-89 |
| D | | 4 8 1 2 6 2 9 | 3-1989 | O'Neil et al | 414 | 274 Xr | 4-23-87<br>3-6-85 |
| E | | 4 5 4 6 9 0 1 | 10-1985 | Buttaruzzi | 414 | 280 xr | |
| F | | 4 7 8 6 2 2 9 | 11-1988 | Henderson | 414 | 273 xr | |
| G | | 4 7 9 2 2 7 0 | 12-1988 | Yoshida | 414 | 273 | |
| H | | 4 6 6 9 0 4 7 | 5-1987 | Chucta | 414 | 331 xr | |
| I | | 4 8 2 0 1 0 9 | 4-1989 | Witt | 414 | 282 | 4-11-86 |
| J | | 4 6 5 1 8 6 3 | 3-1987 | Rester et al | 414 | 280 xr | |
| K | | 3 8 0 2 5 8 0 | 4-1974 | Castaldi | 414 | 280 xr | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| L | | 3 0 4 | 1-1979 | PCT | — | 414 | 273 | | |
| M | | | | | | | | | |
| N | | | | | | | | | |
| O | | | | | | | | | |
| P | | | | | | | | | |
| Q | | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| R | |
|---|---|
| S | |
| T | |
| U | |

| EXAMINER<br>F. E. Werner | DATE<br>9/93 | |
|---|---|---|

\* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

MA000198

$54-215

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

PATENT

In re application of: Sean McDonald et al

Group No.: 3107

Serial No.: 07/871,832

Examiner: F. Werner

Filed:    April 21, 1992

For:    AN AUTOMATED SYSTEM FOR SELECTING PACKAGES FROM A STORAGE AREA

Commissioner of Patents and Trademarks
Washington, D.C. 20231

PETITION AND FEE FOR EXTENSION OF TIME (37 CFR 1.136(a))

1.  This is a petition for an extension of time for a total period of ___one___ months:
    (check and complete the applicable item below)

    ( x )  to respond to the Office Letter mailed on ___10/15/93___
    (  )  for _____
                                (indicate matter being extended)

2.  A response in connection with the matter for which this extension is requested:

    ( x )  is filed herewith.
    (  )  has been filed.

3.  Applicant is

    ( x )  a small entity -- verified statement:

        (  )  attached.
        ( x )  already filed.

    (  )  other than a small entity.

4.  Calculation of extension fee

| ( x )<br>(  )<br>(  )<br>(  ) | Total months<br>requested<br>one month<br>two months<br>three months<br>four months | Fee for other than<br>small entity<br>$ 110.00<br>$ 360.00<br>$ 840.00<br>$1320.00 | Fee for<br>small entity<br>$ 55.00<br>$ 180.00<br>$ 420.00<br>$ 660.00 |
|---|---|---|---|

$ 55.00

050 KS 02/20/94 07871832                    1 215    5.00 CK

050 KS 02/20/94 07871832    CERTIFICATE OF MAILING (37 CFR 1.8)    1 215    50.00 CK

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being deposited with the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope addressed to the: Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Date: February 15, 1994

Angie F. Beyerl

_(Signature of person mailing paper)_

(Petition and Fee for Extension of Time (37 CFR 1.136(a)) [11-2]—page 1 of 2)

(check and complete the next item, if applicable)

{ }     An extension for _____ has already been secured and the fee paid
        therefore of $_____ is deducted from the total fee due for the
        total months of extension now requested.

                                    Extension fee due with this request $_____

5.  Fee Payment

    { x }   Attached is a check in the sum of $ 55.00 _____
    { }     Charge fee to Account No. 02-4553 and for any additional extension
            fee required or credit for any excess fee paid. A duplicate of this
            petition is attached.

Reg. No.: 29,362

Tel. No.: 412-562-1632

_____
Lynn J. Alstadt
Buchanan Ingersoll Professional Corporation
56th Floor, 600 Grant Street
Pittsburgh, Pennsylvania   15219

FEE APPLIED under 37 CFR 1.136(a)
EXTENSION OF TIME GRANTED
TO 2-15-94
_____
CLERK, GROUP 310

(Petition and Fee for Extension of Time (37 CFR 1.136(a)[11-2]—page 2 of 2)

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Group Art Unit 3107           :    PATENT APPLICATION

Examiner F. Werner          :

In re application of         :    AN AUTOMATED SYSTEM
                                FOR SELECTING PACKAGES
SEAN McDONALD et al.       :    FROM A STORAGE AREA

Serial No. 07/871,832      :

Filed April 21, 1992       :

A M E N D M E N T

Pittsburgh, Pennsylvania 15219

February 15, 1994

Hon. Commissioner of Patents and Trademarks

    Washington, D.C.  20231

Sir:

        Please amend the claims as follows:

          1.  (Amended)  A system for selecting and delivering
packages from a [stored] storage area to fill orders comprising:

        a)  a storage area comprised of a plurality of storage
           area locations each location [being] having package
           holding means sized and configured to hold [at least
           one package] a plurality of individual packages each
           individual package having a machine readable label
           which identifies a type of package, the packages
           being held in a manner so that [the] each package
           can be placed into and removed from the storage area

MA000201

locations [by automated picking means], each
location having a distinct x, y coordinate;

b) automated picking means sized and configured to be
able to hold packages, to select packages from <u>the</u>
storage area locations and place packages in storage
area locations in accordance with <u>computer</u>
<u>controlled</u> instructions [received from a computer],
the picking means having a gripper for grasping and
moving individual packages;

c) <u>means for moving the automated picking means to</u>
<u>selected storage locations;</u>

[c)] <u>d)</u>  a computer having at least one memory which
contains a program for directing the picking means to
chosen storage area locations and a database containing
at least one x, y coordinate location in the storage
area for each package held within the storage area <u>the</u>
<u>computer being connected to the automated picking means</u>
<u>and the means for moving the automated picking means</u>
[,]; <u>and</u>

e) <u>a package reader associated with the picking means</u>
<u>and being positioned for reading the machine</u>
<u>readable labels on packages located within the</u>
<u>storage area.</u>

wherein only one type of package is stored in each x, y
coordinate location.

- 2 -

MA000202

In claim 3, line 2, change "a package" to -- the package --.

6. (Amended)  The system of claim 1 wherein the picking means contains a picking means storage area for holding the plurality of packages selected by the picking means.

8. (Amended)  The system of claim 1 also comprising a supply station for receiving new and returned packages, the supply station having a plurality of locations each location [being] having package holding means sized and configured to hold at least one package in a manner so that the package can be placed into and removed from the locations by the automated picking means, each location having a distinct x, y coordinate.

9. (Amended)  The system of claim 8 also comprising means for moving the supply station wherein the supply station is [movable and is sized to be] removably positioned adjacent the storage area.

10. (Amended)  The system of claim 1 wherein the package holding means in the storage area is comprised of a plurality of rods and a hole is provided in each package to permit the package to be held on the rods.

In claim 21, line 4, before "memory" insert -- the --.

- 3 -

MA000203

Cancel claims 24-35

20. (Amended)  A system as described in claim 18 wherein the picking means includes at least one gripper that picks the packages; and a tooling support structure having at least one column to support the tooling and at least one row to support the column such that the tooling means moves along the column as the column moves along the row to pick a given package hanging from a corresponding support rod, said gripper able to turn at least 180° on the column to pick packages [on either the first or second holding means] from selected storage locations which locations are positioned opposite and facing one another; and

means for moving the column with respect to the row, said moving means controlled by [a] the computer and in communication therewith.

REMARKS

This is in response to the Office Action dated October 15, 1993.  Applicants are submitting herewith a request for a one month extension of time along with the appropriate fee.

In the Office Action the Examiner repeated his requirement for restriction.  Applicants confirm the provisional election of claims 1 thru 23 and 36.  Therefore, claims 24 thru 35 were cancelled.  Applicants also confirm that cancellation of the non-elected claims does not require a change of inventorship of the elected claims.

- 4 -

The Section 112 Rejections

The Examiner rejected claims 1, 3, 9 and 21 under Section 112 because of a perceived double inclusion of structure. Although applicants disagree with this conclusion, they have nevertheless amended the cited portions of these claims so that they can no longer be read to provide such double inclusion.

Claim 36 was amended to cure the antecedent basis problem cited by the Examiner. This amended claim also more clearly recites the movement of the gripper and relative positions of the selected packages.

Claims 1 and 9 have been amended to state that the storage locations or supply station locations have package holding means. As disclosed in the specification, such structure could be shelves or rods. Indeed, amended claim 11 specifies that the package holding means are rods.

New element c) has been added to claim 1 to specify means for moving the automated picking means. This change is in response to the Examiner's suggestion that such means should be included.

Amended claim 1 also specifies that the packages have machine readable labels which identify the type of package. That label could give package contents, expiration dates or other information useful for grouping or distinguishing among packages in the system.

Finally, claim 10 was amended to include means for moving the supply station.

- 5 -

Applicants submit that these amendments overcome the
Section 112 rejections.  Reconsideration of the claims as amended
and withdrawal of the Section 112 rejections are respectfully
requested.

The Section 113 Rejections

The pending claims have been rejected under Section 103
as obvious from United States Patent No. 4,896,024 to Morello
et al. alone or in combination with patents to Boucher, Jr.
et al. or Pohjonen et al. or O'Neil et al. or Buttarazzi or
Henderson or the cited European application.  Applicants have
amended the pending claims to distinguish over these references.
As amended, the claims now require that each storage location be
capable of holding a plurality of packages, that each package
have a machine readable label and that a package reader be
associated with the picking means which reader is positioned for
reading the machine readable labels on packages located within
the storage area.

Morello et al. discloses an apparatus for dispensing and
accepting the return of reusable articles such as videotapes.
The reusable articles each have their own identification code,
such as the 13 digit number illustrated in Figure 13.  The
apparatus has a housing containing a plurality of stationary
locations each location being capable of holding a single
reusable article therein and having its own location code.  A
computer and memory are provided for holding details of the
location codes and article codes and controlling input and output

- 6 -

MA000206

of information into and from the memory. A transfer assembly is
utilized to remove individual articles from selected locations
and return articles to selected locations. A central processing
unit correlates the article identification code with the location
code. As shown in Figures 3, 7, 8 and 9 and described at column
9, line 50 thru column 10, line 37, the system includes a picker
assembly having a platen suitable for receiving the articles.
The platen contains two generally parallel spaced apart plates
mounted to a base plate. The plates define the location into
which the selected article is positioned. A code sensor and
reader is provided below the upper plate to read an article code
on any article positioned above the base plate and between the
two generally parallel plates. The teaching of Morello et al. is
that the transfer assembly be sent to a specific location to
select the desired article. The article is removed from the
location into the picker assembly. There the identification code
of the article is read. The picker assembly then delivers the
article to a pick-up position. The picker assembly can also
receive individual articles which have been placed at the gate
mechanism 22. As disclosed, the picker assembly and the gate
mechanism can handle only a single article at any given point in
time. Similarly each storage location can accommodate a single
article at any given point in time. This system relies upon the
information in memory to direct the picker assembly to a selected
location to find the desired article. When the picker assembly
arrives at that location it cannot read the article

- 7 -

MA000207

identification while the article remains in the storage location. This teaching is quite different from the system of amended claim 1. The claimed storage locations accommodate a plurality of packages and a package reader is positioned to read the package label while the package is in the storage location. Thus, this system does not rely solely upon the information in the computer memory to select articles from storage locations. Articles are removed from storage locations after the reader confirms that the desired article has been found. Consequently, the amount of false picks are substantially minimized. Furthermore, applicants' system is faster, since fewer wrong selections will be made. Both Morello's system and applicants' system can have memory errors or failures. Should there be an error in the memory or a crash, applicants' system can still operate using the package reader to locate desired packages. In contrast, should the Morello et al. system lose the stored information correlating package identification to individual locations, the system is inoperative until the memory has been totally reprogramed.

The Morello reference also does not teach or suggest the following elements of applicants' system: a vacuum head gripper (required by claim 2), a sensor attached to the picking means (claim 3), bar codes (claim 5), expiration dates on labels (claim 6), a storage area in the picking means for holding a plurality of packages (claim 7), storage rods for holding the packages (claims 8 and 11), a supply station which holds a plurality of packages (claim 9) and is movable (claim 10), a program for

- 8 -

MA000208

checking compatibility of selected products (claim 13), a
conveyor to carry selected packages (claim 14) or labeled
containers holding selected packages (claims 16-19), a check
station (claims 20 and 21) medicine packages (claim 22), or a
track and column structure over which the picking means travels
(claims 23 and 26). Consequently, the claims as amended are
patentable over Morello.

O'Neil et al. teaches a method and apparatus for vending
which has a plurality of storage positions that are accessed by a
picking unit directed by a computer and microprocessor memory
system. The picking unit travels over a horizontal bar which can
move up and down on support posts. O'Neil teaches the use of
mechanical fingers on a rotatable table device with a magnetic
means for removing articles from the storage locations. Like
Morello, O'Neil provides a package reader which can only read
packages after they have been removed from the storage location.
The picking unit may deliver the selected article to a removal
location (Figure 1) or a conveyor (Figure 9). O'Neil also
teaches that one article is positioned in each storage location
(see Figure 1). Like Morello, the O'Neil device includes a
return station 18. This station also accommodates only a single
article at any given point in time. O'Neil does not teach or
suggest the elements of applicants' claims 2, 3, 6, 7, 8, 9, 10,
11, 13 and 16 thru 23. Moreover, the bar and post arrangement
used by O'Neil is significantly different from applicants' track
and column system. Whereas, the O'Neil picking means can only

- 9 -

travel in a single plane, applicants' device can move in any x-y-z direction limited only by the track layout which can be any shape. O'Neil can only access one bank of storage locations whereas applicants' unit can access any number of banks of storage locations. Consequently, the O'Neil system is not suitable for many storage and access situations, such as a pharmacy, where hundreds or thousands of different packages are stored and selectively retrieved.

United States Patent No. 4,789,295 to Boucher et al. discloses an article manipulator for robots. That manipulator utilizes two vacuum cups for gripping articles. There is no disclosure of any type of storage locations beyond the positions of articles being held by the vacuum cups. Since it would be impractical to hold a separate article by each suction cup, this reference also teaches that only one article be held by the picking means at any point in time. Boucher's gripper does not include any type of package reader although it does utilize sensors for sensing the position of the article manipulator relative to an article (column 3, lines 3 thru 7). Boucher et al. also does not teach or suggest the elements of applicants' dependent claims 5 thru 23 and 36.

Pohjonen et al. also disclose a load handling method and system which utilizes a suction cup or an electromagnet for engaging articles. This patent teaches that articles are stored in boxes which are placed on and removed from a shelf. There is no teaching of the use of storage locations having x,y

- 10 -

coordinates which locations can receive a plurality of packages that can be separately selected. There is also no teaching of the elements required by claims 4 thru 13 and 15 thru 36.

United States Patent 4,546,901 to Buttarazzi discloses an apparatus for dispensing medication. The particular apparatus is essentially comprised of a plurality of pill dispensing units comprised of shelves containing bins of pills. The pills are individually blister packaged on a strip. The pill strips are withdrawn from the bins by a pair of gripping fingers supported on a carriage and placed on trays. A high speed conveyor transports the pills from the dispensing units to an inspection station. The carriage is mounted for transverse movement on a bar. The bar is attached transverse to a vertical column on which it moves up and down. This structure is very similar to that of O'Neil. Because the pill strips have been positioned in a precise predetermined location in the dispensing units, the dispensing carriage assemblies can be directed in advance to the locations of the desired medication. Like the other references, Buttarazzi does not teach storage locations which hold a plurality of individual packages each of which can be individually removed and replaced. Furthermore, no package reader is utilized by Buttarazzi which reader is positioned for reading machine readable labels on packages located within the storage locations. Buttarazzi also does not disclose a supply station for restocking the storage areas or the elements required by dependent claims 2 thru 14, 16 thru 23 and 36.

- 11 -

MA000211

Henderson discloses a document storage retrieval system including a plurality of containers each having machine readable identifying indicia thereon. The disclosed containers are boxes of documents or ther articles. Each box is stored in a separate location "so that all of the articles or all articles or all of the documents are stored and retrieved as a unit." (Col. 4, lines 50-51). Thus, this system also does not permit storage of a plurality of packages in a single location such that individual packages may be retrieved and replaced. Like Morello and O'Neil each storage location contains only an individual container.

The cited European patent discloses a sorting machine wherein grippers support objects for attachment to a hook or a rail. This system does not rely upon a set of storage locations having distinct x,y coordinates. This reference was cited to show storage of packages on rods and removal of the packages from those rods. The storage system there disclosed is otherwise completely different from applicants' system.

Clearly none of the cited references disclose the claimed system. Taken together the cited prior art does not teach or suggest a system in which a plurality of individually retrievable packages are stored in a single location. The cited retrieval systems also do not have machines for reading machine readable labels on a package while that package is in a storage location. Consequently, amended claim 1 is patentable over the cited references. The remaining claims depend directly or indirectly from claim 1. Therefore, those claims are also

- 12 -

patentable over the cited references. Additionally, there is no teaching or suggestion of a picking means having a storage area which will hold a plurality of articles selected by the picking means as required by claim 7. The prior art also does not teach or suggest a movable supply station which holds a plurality of packages which can be removed by the picking means and placed in storage locations as set forth in claims 9 and 10. None of the prior art systems utilize a program for checking compatibility among products in packages selected by the picking means for a given order (claim 13). The art does not teach the tooling support structure of claim 36 which can pick packages from either a first or second holding means located opposite one another.

For the foregoing reasons, applicants submit that the claims as amended are patentable over the prior art. Reconsideration and allowance of the claims as amended are respectfully requested.

Respectfully submitted,

BUCHANAN INGERSOLL, P.C.

By _____
Lynn J. Alstadt
Registration No. 29,362

Attorneys for Applicant

(412) 562-1632

- 13 -

FORM PTO-1083                                    C   Docket No.: 920015

In re application of: Sean McDonald et al
Serial No.:           07/871,832
Filed:                April 21, 1992

For: AN AUTOMATED SYSTEM FOR SELECTING PACKAGES FROM A STORAGE AREA

THE COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, DC 20231

Sir:

Transmitted herewith is an amendment in the above-identified application.

[X]    Small entity status of this application under 37 CFR 1.9 and 1.27 has been established by a
       verified statement previously submitted.

[ ]    A verified statement to establish small entity status under 37 CFR 1.9 and 1.27 is enclosed.

[X]    No additional fee is required.

The fee has been calculated as shown below:

|  | (Col. 1) | | (Col. 2) | | SMALL ENTITY | | | OTHER THAN A SMALL ENTITY | |
|---|---|---|---|---|---|---|---|---|---|
|  | CLAIMS REMAINING AFTER AMENDMENT | | HIGHEST NO. PREVIOUSLY PAID FOR | PRESENT EXTRA | ADDIT. RATE | ADDIT. FEE | OR | ADDIT. RATE | ADDIT. FEE |
| Total | 24 | MINUS | 36 | 0 | x 11 = | $ | OR | x 22 = | $ |
| Indep | 2 | MINUS | 2 | 0 | x 37 = | $ | OR | x 74 = | $ |
| FIRST PRESENTATION OF MULTIPLE DEP. CLAIM | | | | | + 115= | $ | OR | + 230 = | $ |
|  | | | | | TOTAL ADDIT. FEE | $ ___ | OR | TOTAL | $ |

*     If entry in Col. 1 is less than entry in Col 2, write "0" in Col. 3.
**    If the "Highest No. Previously Paid For" IN THIS SPACE is less than 20, write "20" in this space.
***   If the "Highest No. Previously Paid For" IN THIS SPACE is less than 3, write "3" in this space.

[ ]    Please charge by Deposit Account No. 02-4553 the amount of $ _____.
       A duplicate copy of this sheet is attached.

[ ]    A check in the amount of $ _____ is attached.

[X]    The Commissioner is hereby authorized to charge payment of the following fees associated with
       this communication or credit any overpayment to Deposit Account No. 02-4553. A duplicate
       copy of this sheet is attached.

       [X]    Any filing fees required under 37 CFR 1.16 for the presentation of extra claims.

       [ ]    Any patent application processing fees under 37 CFR 1.17.

Respectfully submitted,

(412) 562-1632

Registration No. 29,362
BUCHANAN INGERSOLL PROFESSIONAL CORPORATION
600 Grant Street, 56th Floor
Pittsburgh, PA 15219

MA000214



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**     Sn 07/871 832
Address:  COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|

|  |
|---|
| EXAMINER |

|  |  |
|---|---|
| ART UNIT | PAPER NUMBER |

DATE MAILED:

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined   ☑ Responsive to communication filed on Feb. 17, 1994   ☑ This action is made final.

A shortened statutory period for response to this action is set to expire _____3_____ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.      2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.          4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.   6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☑ Claims _1 - 23 and 36_____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☑ Claims _24 - 35_____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _1 - 23 and 36_____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
   are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____ has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

PTOL-326 (Rev. 9-89)                          **EXAMINER'S ACTION**

MA000215

Serial No. 871832                          -2-

Art Unit   317

-PART III-

1.    Claims 1-23 and 36 are rejected under 35 U.S.C. § 112,

second paragraph, as being indefinite for failing to particularly

point out and distinctly claim the subject matter which applicant

regards as the invention.

    Re claim 1, "a storage area" (line 3), individual packages"

(line 18) and "storage area locations" (line 15) are a double

inclusion of structure.  Re claim 4, this claim repeats all of

the structure in base claim 1.  Re claim 18, this claim repeats

structure from claim 1, i.e. a package with a machine readable

label.

2.    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

    A patent may not be obtained though the invention is not
    identically disclosed or described as set forth in section
    102 of this title, if the differences between the subject
    matter sought to be patented and the prior art are such that
    the subject matter as a whole would have been obvious at the
    time the invention was made to a person having ordinary
    skill in the art to which said subject matter pertains.
    Patentability shall not be negatived by the manner in which
    the invention was made.

    Subject matter developed by another person, which qualifies
    as prior art only under subsection (f) or (g) of section 102
    of this title, shall not preclude patentability under this
    section where the subject matter and the claimed invention
    were, at the time the invention was made, owned by the same
    person or subject to an obligation of assignment to the same
    person.

3.    This application currently names joint inventors.  In
considering patentability of the claims under 35 U.S.C. § 103,
the examiner presumes that the subject matter of the various
claims was commonly owned at the time any inventions covered

MA000216

Serial No. 871832                                    -3-

Art Unit   317

therein were made absent any evidence to the contrary.  Applicant
is advised of the obligation under 37 C.F.R. § 1.56 to point out
the inventor and invention dates of each claim that was not
commonly owned at the time a later invention was made in order
for the examiner to consider the applicability of potential 35
U.S.C. § 102(f) or (g) prior art under 35 U.S.C. § 103.

4.    Claims 1-7, 9, 10, 12-14, 22 and 23 are rejected under 35

U.S.C. § 103 as being unpatentable over Morello et al in view of

Boucher et al and Chucta.

     Morello et al disclose storage areas 40, automated picking

means 20, 62, etc. on tracks 98 (99) and computer means 16 to

assign the package to X-Y coordinates (column 11, lines 11-17)

and to control the picking means, but do not disclose a gripper

which is disclosed by Boucher et al (62,64) and in view of the

same, it would have been obvious to have substituted a gripper as

taught by Boucher et al as this would have been the substitution

of equivalent handling means productive of no unexpected result.

Morello et al do not disclose the article's bar code being read

prior to transfer from the storage area which is disclosed by

Chucta (194,188,118,etc.) and in view of the same, it would have

been obvious to have read the barcode prior to transfer to guarantee

the correct article's selection prior to transfer as taught by

Chucta.  Re claim 2, Boucher, Jr. et al (62,64) disclose and

render obvious the substitution of a vacuum head.  Re claim 3,

Boucher, Jr. el (24,26) teach that it would have been obvious to

have included a sensor for the package.  Re claim 6, it would

have been obvious to have included any relevant information on

MA000217

Serial No. 871832                           -4-
Art Unit  317

the label including an expiration date.  Re claim 7, the
inclusion of plural packages would have been obvious.  Re claim
9, note supply station 22 of Morello et al.  It would have been
an obvious and conventional extension of Morello et al's matrix
to have included a matrix supply station.  Re claims 12 & 13, it
would have been obvious to have programmed the computer in the
claimed manner, if desired.  Re claim 14, it would have been
obvious to have included a conveyor to minimize manual
intervention.  Re claim 22, it would have been obvious to have
handled medicine packages, if desired.

5.    Claims 8 & 11 are rejected under 35 U.S.C. § 103 as being
unpatentable over Morello et al in view of Boucher et al and
Chucta as applied to claims 1 to 7, 9, 10, 12-14, 22 & 23 above,
and further in view of the European Patent.

      It would have been obvious to have substituted rods and
holes in the package as taught by the European patent (1,15,etc.)

6.  . Claims 15 to 21 are rejected under 35 U.S.C § 103 as being
unpatentable over Morello et al in view of Boucher et al and
Chucta 12-14, 22 and 23 above, and further in view of Buttarazzi.

      Buttarazzi ( 42, 21, 88, etc.) teaches and renders obvious
the alternate use of containers (filled by picking means) placed
on a conveyor.  The use of conventional plural containers (as
claimed) would have been obvious.

      Re claim 16, it would have been obvious to have included a

MA000218

Serial No. 871832                    -5-

Art Unit   317

machine readable label as taught by Chucta (34).  The use of a

conventional check station (re claims 20 and 21) operating as

claimed would have been obvious.

7.    Claim 36 is rejected under 35 U.S.C. § 103 as being

unpatentable over Morello et al in view of Boucher, Jr. et al,

Chucta and as applied to claims 15-21 above, and further in view

of the European Patent.

      Note the obviousness discussion of the European Patent

above.  It would have been obvious to have conventionally

accessed the rods in the claimed manner.

8.    Applicant's arguments filed Feb. 17, 1994 have been fully

considered but they are not deemed to be persuasive.

      Re applicant's "Remarks" on the top of page 8, the same are

not well-taken since the claimed subject matter, not the

specification, is the measure of invention.  Limitations in the

specification cannot be read into the claims for the purpose of

avoiding the prior art.  In re Self, 213 USPQ 1,5 (CCPA 1982); In

re Priest, 199 USPQ 11,15 (CCPA 1978).  Re the "Remarks" on pages

10-12 concerning Boucher, Jr. et al, Buttarazzi and the European

Patent, please note the application of the same in the above

rejections.

9.    THIS ACTION IS MADE FINAL.  Applicant is reminded of the

extension of time policy as set forth in 37 C.F.R. § 1.136(a).

Serial No. 871832                              -6-

Art Unit   317


A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL
ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS
ACTION.  IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS
OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION
IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED
STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE
ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE
PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE
MAILING DATE OF THE ADVISORY ACTION.  IN NO EVENT WILL THE
STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM
THE DATE OF THIS FINAL ACTION.

10.  Any inquiry concerning this communication or earlier
communications from the examiner should be directed to F.E.
Werner whose telephone number is (703) 308-1140.

Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 308-1113.

Summary:

Claims 1-23 and 36 are rejected.

Final Rejection-SSP 3 mos.


FRANK E. WERNER
PRIMARY EXAMINER
GROUP 3100

Werner/oc
May 16, 1994



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 07/87832 | 04/21/92 | Sean C. McDonald et al | 920015 |

| EXAMINER |
|---|
| F. E. Werner |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3107 | 10 |

DATE MAILED:

### EXAMINER INTERVIEW SUMMARY RECORD

All participants (applicant, applicant's representative, PTO personnel):

(1) Mr. Alstadt                                    (3) _____

(2) Exmr. Werner                                   (4) _____

Date of Interview: July 20, 1994

Type: ☐ Telephonic  ☑ Personal (copy is given to ☐ applicant ☑ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes  ☑ No. If yes, brief description: _____

_____

Agreement ☑ was tentatively reached with respect to some or all of the claims in question. ☐ was not reached.

Claims discussed: at least claims 1, 4 and 18

Identification of prior art discussed: the art of record.

_____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: In a continuing application, it was suggested that claim 1 be further amended to include that in a face-to-face relationship, after retrieval from the holding means, more than one package is suspended from the picking means, prior to delivery of the package.

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

☐ 1. It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph below has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1-7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☐ 2. Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action. Applicant is not relieved from providing a separate record of the substance of the interview unless box 1 above is also checked.

Examiner's Signature

PTOL-413 (REV. 2-93)         ORIGINAL FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER

FRANK F. WERNER
PRIMARY EXAMINER  7/20/94
GROUP 3100

MA000221



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Sn 0 7/871832

Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 07/871,832 | 04/21/92 | MCDONALD | B | 920015 |

F1M1/1026

LYNN J. ALSTADT
BUCHANAN INGERSOLL PROFESSIONAL CORP.
56TH FLOOR, 600 GRANT ST.
PITTSBURGH, PA 15219

| WERNER | EXAMINER |
|---|---|
| ART UNIT | PAPER NUMBER |
| 3107 | 11 |

DATE MAILED:    10/26/94

### NOTICE OF ABANDONMENT

This application is abandoned in view of:

1. ~~Applicant's failure to respond to the Office letter, mailed~~ ~~May 25, 1994~~

2. ☑ Applicant's letter of express abandonment which is in compliance with 37 C.F.R. 1.138. ✱

3. ☐ Applicant's failure to timely file the response received _____ within the period set in the Office letter.

4. ☐ Applicant's failure to pay the required issue fee within the statutory period of 3 months from the mailing date of _____ of the Notice of Allowance.

   ☐ The issue fee was received on _____ .

   ☐ The issue fee has not been received in Allowed Files Branch as of _____ .

   In accordance with 35 U.S.C. 151, and under the provisions of 37 C.F.R. 1.316(b), applicant(s) may petition the Commissioner to accept the delayed payment of the issue fee if the delay in payment was unavoidable. The petition must be accompanied by the issue fee, unless it has been previously submitted, in the amount specified by 37 C.F.R. 1.17 (I), and a verified showing as to the causes of the delay.

   If applicant(s) never received the Notice of Allowance, a petition for a new Notice of Allowance and withdrawal of the holding of abandonment may be appropriate in view of Delgar Inc. v. Schuyler, 172 U.S.P.Q. 513.

5. ☐ Applicant's failure to timely correct the drawings and/or submit new or substitute formal drawings by _____ as required in the last Office action.
   ☐ The corrected and/or substitute drawings were received on _____ .

6. ☐ The reason(s) below.

✱ Expressly abandoned in favor of Sn 08/295495 filed 8/25/94

FRANK E. WERNER
PRIMARY EXAMINER 10/94
GROUP 3100

PTO-1432 (REV. 5-85)

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective December 16, 1991

Application or Docket Number: 87/832

### CLAIMS AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE | FEE | OR | OTHER THAN SMALL ENTITY RATE | FEE |
|-----|-------------------------|-------------------------|-------------------|-----|----|-----------------------------|-----|
| BASIC FEE | | | | $ 345.00 | OR | | $ 690.00 |
| TOTAL CLAIMS | 36 | minus 20 = 16 | x $10= | 160 | OR | x $20 = | |
| INDEPENDENT CLAIMS | 2 | minus 3 = | x 36 = | | OR | x 72 = | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | + 110 = | | OR | + 220 = | |
| * If the difference in column 1 is less than zero, enter "0" in column 2 | | | TOTAL | 505 | OR | TOTAL | |

### CLAIMS AS AMENDED - PART II

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|---|---|
| **AMENDMENT A** Total | * | Minus | ** | | = | x $10= | | OR | x $20 = | |
| Independent | * | Minus | *** | | = | x 36 = | | OR | x 72 = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | | + 110 = | | OR | + 220 = | |
| | | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |
| **AMENDMENT B** Total | * | Minus | ** | | = | x $10= | | OR | x $20 = | |
| Independent | * | Minus | *** | | = | x 36 = | | OR | x 72 = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | | + 110 = | | OR | + 220 = | |
| | | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |
| **AMENDMENT C** Total | * | Minus | ** | | = | x $10= | | OR | x $20 = | |
| Independent | * | Minus | *** | | = | x 36 = | | OR | x 72 = | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | | | + 110 = | | OR | + 220 = | |
| | | | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20".
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3".
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

Form PTO-875
(Rev. 12-91)

*U.S. Government Printing Office: 1992 — 308-890    Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

MA000223



MA000224

| BAR CODE LABEL | | U.S. PATENT APPLICATION | |
|---|---|---|---|

| SERIAL NUMBER | FILING DATE | CLASS | GROUP ART UNIT |
|---|---|---|---|
| 08/295,495 | 08/25/94 | 414 | 3107 |

**APPLICANT**

SEAN C. MCDONALD, PITTSBURGH, PA; ELLEN J. HERTZ, CLEMMONS, NC; JAMES A. SMITH, ALLISON PARK, PA; GREGORY TOTO, SANTA CRUZ, CA.

```
**CONTINUING DATA********************
VERIFIED     THIS APPLN IS A CON OF   07/871,832 04/21/92
             WHICH IS A CIP OF   07/469,217 01/24/90 ABN
```
———————

```
**FOREIGN/PCT APPLICATIONS************
VERIFIED
```
———————

FOREIGN FILING LICENSE GRANTED 10/01/94      ***** SMALL ENTITY *****

| STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS | INDEPENDENT CLAIMS | FILING FEE RECEIVED | ATTORNEY DOCKET NO. |
|---|---|---|---|---|---|
| PA | 19 | 24 | 2 | $399.00 | 920015 |

**ADDRESS**

LYNN J. ALSTADT
BUCHANAN INGERSOLL
600 GRANT STREET, 56TH FLOOR
PITTSBURGH, PA  15219

**TITLE**

AUTOMATED SYSTEM FOR SELECTING PACKAGES FROM A STORAGE AREA

This is to certify that annexed hereto is a true copy from the records of the United States Patent and Trademark Office of the application which is identified above.

By authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

Date _____     Certifying Officer _____

#399.00 - 201-4/7wc

295495

| DOCKET NUMBER | ANTICIPATED CLASSIFICATION OF THIS APPLICATION: | | PRIOR APPLICATION: | |
|---|---|---|---|---|
| | CLASS | SUBCLASS | EXAMINER | ART UNIT |
| 920015 | | | Frank E. Werner | 3107 |

Address to:

Commissioner of Patents and Trademarks
Box FWC
Washington, DC. 20231

12/B
10/26/94

This is a Request for filing a ☐ continuation-in-part ☒ continuation ☐ divisional application under 37 CFR 1.62 of prior application Serial No 07/871,832 . filed on April 21, 1992 entitled AN AUTOMATED SYSTEM FOR SELECTING by the following named inventor(s) PACKAGES FROM A STORAGE AREA

| FULL NAME OF INVENTOR | FAMILY NAME | FIRST GIVEN NAME | SECOND GIVEN NAME |
|---|---|---|---|
| | McDonald 1-00 | Sean | C |
| RESIDENCE & CITIZENSHIP | CITY Pittsburgh | STATE OR FOREIGN COUNTRY Pennsylvania | COUNTRY OF CITIZENSHIP United States |
| POST OFFICE ADDRESS | POST OFFICE ADDRESS 405 S. Braddock Ave | CITY Pittsburgh | STATE & ZIP CODE/COUNTRY PA 15221, USA |
| FULL NAME OF INVENTOR | FAMILY NAME Hertz 2-00 | FIRST GIVEN NAME Ellen | SECOND GIVEN NAME J. |
| RESIDENCE & CITIZENSHIP | CITY Clemmons | STATE OR FOREIGN COUNTRY North Carolina | COUNTRY OF CITIZENSHIP United States |
| POST OFFICE ADDRESS | POST OFFICE ADDRESS 4232 Lake Cliff Dr. | CITY Clemmons | STATE & ZIP CODE/COUNTRY NC 27012, USA |
| FULL NAME OF INVENTOR | FAMILY NAME Smith 3-00 | FIRST GIVEN NAME James | SECOND GIVEN NAME A. |
| RESIDENCE & CITIZENSHIP | CITY Allison Park | STATE OR FOREIGN COUNTRY Pennsylvania | COUNTRY OF CITIZENSHIP United States |
| POST OFFICE ADDRESS | POST OFFICE ADDRESS 3909 Ash Dr. | CITY Allison Park | STATE & ZIP CODE/COUNTRY PA 15101, USA |

The above identified prior application in which no payment in the issue fee abandonment of, or termination of proceedings has occurred, is hereby expressly abandoned as of the filing date of this new application. Please use all the contents of the prior application file wrapper, including the drawings, as the basic papers for the new application. (note: 37 CFR 1.60 may be used for applications where the prior application is not to be abandoned.)

1. ☐ Enter the amendment previously filed on _____ under 37 CFR 1.116 but unentered, in the prior application.

2. ☐ A preliminary amendment is enclosed.

The filing fee is calculated on the basis of the claims existing in the prior application as amended at 1 and 2 above.

| Claims | (1) For | (2) Number filed | (3) Number extra | (4) Rate | (5) Calculations |
|---|---|---|---|---|---|
| | Total Claims | 24 - 20 = | 4 | X $ 22 | 201 $88  15.00 |
| | | 09/02/94 UW#050 00295495 | | | |
| | Independent Claims | 2 - 3 = | 0 | X $ 74 | |
| | Multiple Dependent Claims (if applicable) | | | + $ 230 | |
| | | | Basic Fee | | + $ 710 |
| | | | Total of above Calculations = | | $ 798 |
| | Reduction by 1/2 for filing by small entity (note 37 CFR 1.9 1.27 1.28); if applicable, affidavit must be filed also | | | | . $ 399 |
| | | | Total National Fee | | $399 |

3. ☐ The Commissioner is hereby authorized to charge fees under 37 CFR 1.16 and 1.17 which may be required, or credit any overpayment to Deposit Account No. \ 02-4553

4. ☒ A check in the amount of $ 384.00 plus $15.00 is enclosed.

5. ☐ A new oath or declaration is included since ☐ this application is a continuation-in-part which discloses and claims additional matter. ☒ correction of inventorship is being made.

6. ☒ Amend the specification by inserting before the first line the sentence:

This application is a ☐continuation-in-part. ☒continuation. ☐division, of application Serial No. 07/871,832 , filed April 21, 1992

7. ☒ Small entity status is still proper in view of the verified statement filed in the parent application Serial No. 07/871,832 filed on April 21, 1992

8. ☐ Priority of application Serial No. \ Filed on \ in \ is claimed under 35 U.S.C. 119.

9. ☒ The prior application is assigned of record to \Automated Healthcare, Inc.,
\ 261 Kappa Drive, Pittsburgh, Pennsylvania 15238

10. ☒ The power of attorney in the prior application is to: Lynn J. Alstadt, Esq.
\600 Grant Street, Pittsburgh, Pennsylvania 15219

11. ☒ Also enclosed is an Information Disclosure Statement

Address all future communications to: {May only be completed by applicant, or attorney or agent of record}

\ Lynn J. Alstadt, Esq.
\ Buchanan Ingersoll, P.C.
\ 600 Grant Street, 56h Floor
\ Pittsburgh, Pennsylvania 15219

It is understood that secrecy under 35 U.S.C. 122 is hereby waived to the extent that if information or access is available to any one of the applications in the file wrapper of a 37 CFR 1.62 application, be it either this application or a prior application in the same file wrapper, the Patent and Trademark Office may provide similar information or access to all the other applications in the same file wrapper.

August 25, 1994
Date

Signature

☐ inventor(s)
☐ assignee of complete interest
☒ attorney or agent of record
☐ filed under §1.34(a)

MA000227

| FULL NAME OF INVENTOR | FAMILY NAME Toto 4-10 | FIRST GIVEN NAME Gregory | SECOND GIVEN NAME |
|---|---|---|---|
| RESIDENCE & CITIZENSHIP | CITY Santa Cruz | STATE OR FOREIGN COUNTRY California Ca | COUNTRY OF CITIZENSHIP United |
| POST OFFICE ADDRESS | POST OFFICE ADDRESS 815B Corcoran Ave. | CITY Stata Cruz | STATE & ZIP CODE/COUNTRY CA 95062, USA |
| FULL NAME OF INVENTOR | FAMILY NAME | FIRST GIVEN NAME | SECOND GIVEN NAME |
| RESIDENCE & CITIZENSHIP | CITY | STATE OR FOREIGN COUNTRY | COUNTRY OF CITIZENSHIP |
| POST OFFICE ADDRESS | POST OFFICE ADDRESS | CITY | STATE & ZIP CODE/COUNTRY |
| FULL NAME OF INVENTOR | FAMILY NAME | FIRST GIVEN NAME | SECOND GIVEN NAME |
| RESIDENCE & CITIZENSHIP | CITY | STATE OR FOREIGN COUNTRY | COUNTRY OF CITIZENSHIP |
| POST OFFICE ADDRESS | POST OFFICE ADDRESS | CITY | STATE & ZIP CODE/COUNTRY |

MA000228

| CERTIFICATE OF MAILING BY " EXPRESS MAIL " UNDER 37 CFR 1.10 - SEPARATE PAPER - | ATTORNEY'S DOCKET NO. 920015 |
|---|---|

IN RE APPLICATION OF

Sean C. McDonald et al
SERIAL NUMBER                    FILED

FOR AN AUTOMATED SYSTEM FOR SELECTING
PACKAGES FROM A STORAGE AREA

| GRP. ART UNIT | EXAMINER |
|---|---|
| 3107 | Frank E. Werner |

" Express Mail " mailing label number B 188 307 92Y

Date of deposit  August 25, 1994

I hereby certify that this paper or fee is being deposited with

the United States Postal Service " Express Mail Post Office to

Addressee " service under 37 CFR 1.10 on the date indicated above

and is addressed to the Commissioner of Patents and Trademarks,

Washington, D.C. 20231.

Lynn J. Alstadt
( Typed or printed name of person mailing paper or fee )

( Signature of person mailing paper or fee )

Form PTO-FB-A640 ( 8-83 )          Patent and Trademark Office - U.S. DEPT. of COMMERCE

MA000229

08 295495

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Group Art Unit 3107                    ;

Examiner Frank E. Werner              :    AN AUTOMATED SYSTEM
                                           FOR SELECTING PACKAGES
In re application of                  :    FROM A STORAGE AREA

SEAN McDONALD et al.                  :


INFORMATION DISCLOSURE STATEMENT

                              Pittsburgh, Pennsylvania 15219

                              August 25, 1994

Hon. Commissioner of Patents and Trademarks

      Washington, D.C.  20231

Sir:

      The most pertinent prior art known to applicants has
been cited in the parent application Serial No. 07/871,832, filed
April 21, 1992.  Form PTO 1449 listing that prior art is attached
hereto.  Pursuant to 37 C.F.R. 1.98(d) no copy of these
references are submitted herewith.

                              Respectfully submitted,

                              BUCHANAN INGERSOLL, P.C.

                          By _Lynn J. Alstadt_____
                              Lynn J. Alstadt
                              Registration No. 29,362

                              Attorneys for Applicants

      (412) 562-1632

| FORM PTO-1449 (Rev 7-80) | | U.S. Department of Commerce Patent and Trademark Office | | SHEET 1 OF 1 | | |
|---|---|---|---|---|---|---|
| LIST OF PRIOR ART CITED BY APPLICANT (Use several sheets if necessary) | | | ATTY DOCKET NO 920015 | | SERIAL NO | |
| | | | APPLICANT Sean McDonald et al. | | | |
| | | | FILING DATE | | GROUP | |

**U.S. PATENT DOCUMENTS**

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | AA | 3,986,612 | 10/76 | Kamm et al. | 209 | 111.7 | |
| | AB | 4,687,390 | 7/87 | Bonneton et al. | 414 | 282 | |
| | AC | | | | | | |
| | AD | | | | | | |
| | AE | | | | | | |
| | AF | | | | | | |
| | AG | | | | | | |
| | AH | | | | | | |
| | AI | | | | | | |
| | AJ | | | | | | |
| | AK | | | | | | |

**FOREIGN PATENT DOCUMENTS**

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| | AL | 2 596 299 | 10/87 | French | | | | |
| | AM | FR85/00232 | 8/84 | PCT | | | | |
| | AN | | | | | | | |
| | AO | | | | | | | |
| | AP | | | | | | | |

**OTHER PRIOR ART (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | | |
|---|---|---|
| | AR | |
| | AS | |
| | AT | |

| EXAMINER | | DATE CONSIDERED | |
|---|---|---|---|

* EXAMINER: initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

MA000231



$VW$

**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office   $Sn08/295495$
Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/295,495 | 08/25/94 | MCDONALD | |

F1M1/1104

LYNN J. ALSTADT
BUCHANAN INGERSOLL
600 GRANT STREET, 56TH FLOOR
PITTSBURGH, PA 15219

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

| | EXAMINER |
|---|---|
| S–920015 | |
| WERNER, F | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3107 | 73 |

DATE MAILED:   11/04/94

☑ Responsive to communication filed on Feb. 17, 1994   ☐ This action is made final.

A shortened statutory period for response to this action is set to expire _3_ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned.   35 U.S.C. 133

**Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.
2. ☐ Notice re Patent Drawing, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.
4. ☐ Notice of Informal Patent Application, Form PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.
6. ☐ _____

**Part II   SUMMARY OF ACTION**

1. ☑ Claims _1 – 23 and 36_ are pending in the application.

    Of the above, claims _____ are withdrawn from consideration.

2. ☑ Claims _24 – 35_ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims _1 – 23 and 36_ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings
    are ☐ acceptable. ☐ not acceptable (see explanation or Notice re Patent Drawing, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____ has (have) been ☐ approved by the
    examiner. ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed on _____, has been ☐ approved. ☐ disapproved (see explanation).

12. ☐ Acknowledgment is made of the claim for priority under U.S.C. 119. The certified copy has ☐ been received ☐ not been received
    ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in
    accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☑ Other The preamendment of Aug. 25, 1994 has been entered.

**EXAMINER'S ACTION**

PTOL-326 (Rev. 9-89)

Serial No. 295495                                    -2-

Art Unit   317

1.   Claims 1-23 and 36 are rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

Re claim 1, "a storage area" (line 3), individual packages" (line 18) and "storage area locations" (line 15) are a double inclusion of structure.  Re claim 4, this claim repeats all of the structure in base claim 1.  Re claim 18, this claim repeats structure from claim 1, i.e. a package with a machine readable label.

2.   The following is a quotation of 35 U.S.C. § 103 which forms the basis for all obviousness rejections set forth in this Office action:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

> Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

3.   This application currently names joint inventors.  In considering patentability of the claims under 35 U.S.C. § 103, the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary.  Applicant is advised of the obligation under 37 C.F.R. § 1.56 to point out

MA000233

Serial No. 295495                           -3-

Art Unit   317

the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of potential 35 U.S.C. § 102(f) or (g) prior art under 35 U.S.C. § 103.

4.   Claims 1-7, 9, 10, 12-14, 22 and 23 are rejected under 35 U.S.C. § 103 as being unpatentable over Morello et al in view of Boucher et al and Chucta.

Morello et al disclose storage areas 40, automated picking means 20, 62, etc. on tracks 98 (99) and computer means 16 to assign the package to X-Y coordinates (column 11, lines 11-17) and to control the picking means, but do not disclose a gripper which is disclosed by Boucher Jr. et al (62,64) and in view of the same, it would have been obvious to have substituted a gripper as taught by Boucher, et al as this would have been the substitution of equivalent handing means productive of no unexpected result.  Morello et al do not disclose the article's bar code being read prior to transfer from the storage area which is disclosed by Chucta (194,188,118,etc.) and in view of the same, it would have been obvious to have read the bar code prior-to-transfer to guarantee the correct article's selection prior to transfer as taught by Chucta.  Re claim 2, Boucher Jr. et al (62,64) disclose and render obvious the substitution of a vacuum head.  Re claim 3, Boucher,Jr. et al(24,26) teach that it would have been obvious to have included a sensor for the package.   Re claim 6, it would have been obvious to have included any relevant information on the label including an expiration date.  Re claim

Serial No. 295495                                    -4-
Art Unit   317

7, the inclusion of plural packages would have been obvious.  Re
claim 9, note supply station 22 of Morello et al.  It would have
been an obvious and conventional extension of Morello et al's
matrix to have included a matrix supply station.  Re claims 12 &
13, it would have been obvious to have programmed the computer in
the claimed manner, if desired.  Re claim 14, it would have been
obvious to have included a conveyor to minimize manual
intervention.  Re claim 22, it would have been obvious to have
handled medicine packages, if desired.

5.    Claims 8 and 11 are rejected under 35 U.S.C. § 103 as being
unpatentable over Morello et al in view of Boucher and Chucta et
al as applied to claims 1-7, 9, 10, 12-14, 22 and 23 above, and
further in view of the European Patent.

It would have been obvious to have substituted rods and
holes in the package as taught by the European patent
(1,15,etc.).

6.    Claims 15-21 are rejected under 35 U.S.C. § 103 as being
unpatentable over Morello et al in view of Boucher, Jr. et al and
Chucta as applied to claims 1-7, 9, 10, 12-14, 22 and 23 above,
and further in view of Buttarazzi.

Buttarazzi (42, 21, 88, etc.) teaches and renders obvious
the alternate use of containers (filled by picking means) placed
on a conveyor.  The use of conventional plural containers (as
claimed) would have been obvious.

MA000235

Serial No. 295495                              -5-

Art Unit   317

Re claim 16, it would have been obvious to have included a machine readable label as taught by Chucta (34). The use of a conventional check station (re claims 20 and 21) operating as claimed would have been obvious.

7.   Claim 36 is rejected under 35 U.S.C. § 103 as being unpatentable over Morello et al in view of Boucher, Jr. et al and Buttarazzi as applied to claims 15-21 above, and further in view of the European Patent.

Note the obviousness discussion of the European Patent above. It would have been obvious to have conventionally accessed the rods in the claimed manner.

8.   Applicant's arguments filed Feb. 17, 1994 have been fully considered but they are not deemed to be persuasive.

Re applicant's "Remarks" on the top of page 8, the same are not well-taken since the claimed subject matter, not the specification, is the measure of invention. Limitations in the specification cannot be read into the claims for the purpose of avoiding the prior art. In re Self, 213 USPQ 1,5 (CCPA 1982); In re Priest, 199 USPQ 11,15 (CCPA 1978). Re the "Remarks" on pages 10-12 concerning Boucher, Jr. et al, Buttarazzi and the European Patent, please note the application of the same in the above rejections.

9.   Any inquiry concerning this communication or earlier communications from the examiner should be directed to F.E. Werner whose telephone number is (703) 308-1140.

MA000236

Serial No. 295495                          -6-

Art Unit   317


    Any inquiry of a general nature or relating to the status of
this application should be directed to the Group receptionist
whose telephone number is (703) 308-1113.

Summary:

    Claims 1-23 and 36 are rejected.

    Rejection-SSP 3 mos.


                                        FRANK E. WERNER
                                        PRIMARY EXAMINER  11/94
                                        GROUP 3100

Werner/oc
November 03, 1994

MA000237

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Group Art Unit 3107        :    PATENT APPLICATION

Examiner F. Werner       :

In re application of        :    AN AUTOMATED SYSTEM

SEAN McDONALD et al.      :    FOR SELECTING PACKAGES
                                   FROM A STORAGE AREA

Serial No. 08/295,495      :

Filed August 25, 1994      :

**A M E N D M E N T**

Pittsburgh, Pennsylvania 15219

February 6, 1995

Hon. Commissioner of Patents and Trademarks

    Washington, D.C.  20231

Sir:

       Please amend the claims as follows:

       1.   (Amended)   A system for selecting and delivering
packages [from a storage area] to fill orders comprising:

       a)   a storage area comprised of a plurality of storage
           area locations each location having package holding
           means sized and configured to hold a plurality of
           individual packages each individual package having a
           machine readable label which identifies a type of
           package, the packages being held in a manner so that
           each package can be placed into and removed from the
           storage area locations <u>and so that the machine</u>

- 1 -

MA000238

readable label on at least one package in a storage
location can be read without removing the package from
the storage location, each location having a distinct
x, y coordinate;

b) automated picking means sized and configured to be
able to hold packages, to select packages from the
storage area locations and place packages in the
storage area locations in accordance with computer
controlled instructions, the picking means having a
gripper for grasping and moving [individual] the
packages and having a picking means storage location
sized and configured to hold a plurality of packages
in a face to face relationship after the plurality of
packages have been retrieved from the storage area and
prior to delivery of the plurality of packages to a
desired destination separate from the picking means;

c) means for moving the automated picking means to
selected storage locations;

d) a computer having at least one memory which contains
a program for directing the picking means to chosen
storage area locations and a database containing at
least one x, y coordinate location in the storage area
for each package held within the storage area the
computer being connected to the automated picking
means and the means for moving the automated picking
means; and

- 2 -

MA000239

e) a package reader associated with the picking means and being positioned for reading the machine readable labels on packages located within the storage area, wherein only one type of package is stored in each x, y coordinate location.

Cancel claims 4 and 18.

## REMARKS

This is in response to the Office Action dated November 4, 1994.

### The Section 112 Rejections

The Examiner rejected all pending claims under Section 112 because of a perceived double inclusion of structure. Claim 1 has been amended and claims 4 and 18 were cancelled to overcome the problem. Reconsideration of the claims as amended and withdrawal of the Section 112 rejections are, therefore, respectfully requested.

### The Section 103 Rejections

The pending claims have been rejected under Section 103 as obvious from United States Patent No. 4,896,024 to Morello et al. in combination with patents to Boucher, Jr. et al. or Chucta or Buttarazzi or the cited European application. Applicants have amended claim 1 to require that the picking means have a picking means storage location capable of holding a plurality of packages

- 3 -

after those packages have been retrieved from the storage area and prior to delivery to a location separate from the picking means. This change is consistent with the suggestion made by the Examiner in an interview dated July 20, 1994, in the parent application.

Morello et al. discloses an apparatus for dispensing and accepting the return of reusable articles such as videotapes. The apparatus has a housing containing a plurality of stationary locations each location being capable of holding a single reusable article therein and having its own location code. A transfer assembly is utilized to remove individual articles from selected locations and return articles to selected locations. As shown in Figures 3, 7, 8 and 9 and described at column 9, line 50 thru column 10, line 37, the Morello system includes a picker assembly having a platen suitable for receiving a selected article. The platen contains two generally parallel spaced apart plates mounted to a base plate. The plates define the location into which the selected article is positioned. The teaching of Morello et al. is that the transfer assembly be sent to a specific location to select one desired article stored in that location. The article is removed from the location into the picker assembly. There the identification code of the article is read. The picker assembly then delivers the article to a pick-up position. The picker assembly can also receive individual articles which have been placed at the gate mechanism 22. As disclosed, the picker assembly and the gate mechanism can handle only a single article at any given point in time. Similarly each storage location can

- 4 -

MA000241

accommodate a single article at any given point in time.  This system relies upon the information in memory to direct the picker assembly to a selected location to find the desired article.  When the picker assembly arrives at that location it cannot read the article identification while the article remains in the storage location.  This teaching is quite different from the system of amended claim 1.  Both the claimed storage locations and the picking means can accommodate a plurality of packages.  A package reader is positioned to read the package label while the package is in the storage location.  Thus, this system does not rely solely upon the information in the computer memory to select articles from storage locations.  Articles are removed from storage locations after the reader confirms that the desired article has been found.  Consequently, the amount of false picks are substantially minimized.  Furthermore, applicants' system is faster, since fewer wrong selections will be made.  Both Morello's system and applicants' system can have memory errors or failures.  Should there be an error in the memory or a crash, applicants' system can still operate using the package reader to locate desired packages.  In contrast, should the Morello et al. system lose the stored information correlating package identification to individual locations, the system is inoperative until the memory has been totally reprogrammed.

The Morello reference also does not teach or suggest the following elements of applicants' system: a vacuum head gripper (required by claim 2), a sensor attached to the picking means

- 5 -

(claim 3), bar codes (claim 5), expiration dates on labels (claim 6), a storage area in the picking means for holding a plurality of packages (claim 7), storage rods for holding the packages (claims 8 and 11), a supply station which holds a plurality of packages (claim 9) and is movable (claim 10), a program for checking compatibility of selected products (claim 13), a conveyor to carry selected packages (claim 14) or labeled containers holding selected packages (claims 16-19), a check station (claims 20 and 21) medicine packages (claim 22), or a track and column structure over which the picking means travels (claims 23 and 26). Consequently, the claims as amended are patentable over Morello.

Chutca discloses an automated parts supply system in which a computer controlled guided vehicle carries one or more modules holding several trays. Each tray contains several parts. Each module and each tray has a machine readable label. The vehicle is operated by a computer to deliver trays of parts to work stations. A transfer mechanism is provided to remove trays from the module and replace those trays into the module. Thus, this system moves and tracks only trays of parts, not individual parts. Neither the parts nor the trays are stored on the vehicle in a face-to-face relationship. Additionally, only a single container is held at each storage location within the system. In contrast, the system of claim 1 contains storage locations in which a plurality of machine readable labeled packages are kept. Additionally, the selected package of applicants' system are then held in a face-to-face relationship on the picking means. Thus, Chutca in

- 6 -

combination with Morello does not teach or suggest the system of claim 1 as here amended.

United States Patent No. 4,789,295 to Boucher et al. discloses an article manipulator for robots. That manipulator utilizes two vacuum cups for gripping articles. There is no disclosure of any type of storage location beyond the positions of articles being held by the vacuum cups. Since it would be impractical to hold a separate article by each suction cup, this reference also teaches that only one article be held by the picking means at any point in time. Boucher's gripper does not include any type of package reader although it does utilize sensors for sensing the position of the article manipulator relative to an article (column 3, lines 3 thru 7). Boucher et al. also does not teach or suggest the elements of applicants' dependent claims 5 thru 23 and 36.

United States Patent 4,546,901 to Buttarazzi discloses an apparatus for dispensing medication. The particular apparatus is essentially comprised of a plurality of pill dispensing units comprised of shelves containing bins of pills. The pills are individually blister packaged on a strip. The pill strips are withdrawn from the bins by a pair of gripping fingers supported on a carriage and placed on trays. A high speed conveyor transports the pills from the dispensing units to an inspection station. The carriage is mounted for transverse movement on a bar. The bar is attached transverse to a vertical column on which it moves up and down. Because the pill strips have been positioned in a precise

- 7 -

predetermined location in the dispensing units, the dispensing carriage assemblies can be directed in advance to the locations of the desired medication. Like the other references, Buttarazzi does not teach storage locations which hold a plurality of individual packages each of which can be individually removed and replaced. Furthermore, no package reader is utilized by Buttarazzi which reader is positioned for reading machine readable labels on packages located within the storage locations. Buttarazzi also does not disclose a supply station for restocking the storage areas or the elements required by dependent claims 2, 3, 5 thru 14, 16, 17, 19 thru 23 and 36.

The cited European patent discloses a sorting machine wherein grippers support objects for attachment to a hook or a rail. This system does not rely upon a set of storage locations having distinct x,y coordinates. This reference was cited to show storage of packages on rods and removal of the packages from those rods. The storage system there disclosed is otherwise completely different from applicants' system.

Clearly, none of the cited references disclose the claimed system. Taken together the cited prior art does not teach or suggest a system in which a plurality of individually retrievable packages can be stored in a single storage location and in a single picking means storage location. Consequently, amended claim 1 is patentable over the cited references. The remaining claims depend directly or indirectly from claim 1. Therefore, those claims are also patentable over the cited references. The prior art also does

- 8 -

MA000245

not teach or suggest a movable supply station which holds a plurality of packages which can be removed by the picking means and placed in storage locations as set forth in claims 9 and 10. None of the prior art systems utilize a program for checking compatibility among products in packages selected by the picking means for a given order (claim 13). The art does not teach the tooling support structure of claim 36 which can pick packages from either a first or second holding means located opposite one another.

For the foregoing reasons, applicants submit that the claims as amended are patentable over the prior art. Reconsideration and allowance of the claims as amended are respectfully requested.

Respectfully submitted,

BUCHANAN INGERSOLL, P.C.

By ~~Lynn J. Alstadt~~
Lynn J. Alstadt
Registration No. 29,362

Attorneys for Applicant

(412) 562-1632

- 9 -

MA000246

*V W*



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

*SN 08/295495*

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/295,495 | 08/25/94 | MCDONALD | 920015 |

F1M1/0307

LYNN J. ALSTADT
BUCHANAN INGERSOLL
600 GRANT STREET, 56TH FLOOR
PITTSBURGH, PA 15219

| EXAMINER |
|---|
| WERNER, F |

| ART UNIT | PAPER NUMBER |
|---|---|
|  | 15 |

DATE MAILED: 07

**EXAMINER INTERVIEW SUMMARY RECORD**

03/07/95

All participants (applicant, applicant's representative, PTO personnel):

(1) Mr. Alstadt                          (3)

(2) Exmr. Werner                         (4)

Date of Interview  3/3/95

Type: ☑ Telephonic  ☐ Personal (copy is given to ☐ applicant  ☑ applicant's representative).

Exhibit shown or demonstration conducted: ☐ Yes  ☑ No. If yes, brief description: _____

Agreement  ☑ was reached with respect to some or all of the claims in question.  ☐ was not reached.

Claims discussed:  5, 6, 19 and 20

Identification of prior art discussed: _____

Description of the general nature of what was agreed to if an agreement was reached, or any other comments:  It was agreed that claims 5 and 6 be made dependent on claim 1 and that claims 19 and 20 be made dependent on claim 15 and this has been done by the Examiner

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

☑ 1. It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph below has been checked to indicate to the contrary, A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW (e.g., items 1-7 on the reverse side of this form). If a response to the last Office action has already been filed, then applicant is given one month from this interview date to provide a statement of the substance of the interview.

☑ 2. Since the examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action. Applicant is not relieved from providing a separate record of the substance of the interview unless box 1 above is also checked.

PTOL-413 (REV. 2-93)

Examiner's Signature
FRANK E. WERNER
PRIMARY EXAMINER 3/3/95
GROUP 3100

ORIGINAL: FOR INSERTION IN RIGHT HAND FLAP OF FILE WRAPPER

MA000247



*Vw*

*Sn 08/295495*

UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/295,495 | 08/25/94 | MCDONALD | S | 920015 |

F1M1/0307

LYNN J. ALSTADT
BUCHANAN INGERSOLL
600 GRANT STREET, 58TH FLOOR
PITTSBURGH, PA  15219

| WERNER, F. | EXAMINER |
|---|---|

| ART UNIT | PAPER NUMBER |
|---|---|
| 3107 | 16 |

DATE MAILED:    03/07/95

## NOTICE OF ALLOWABILITY

**PART I.**

1. ☑ This communication is responsive to *the amendment of*_____

2. ☑ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☑ The allowed claims are *1-3, 5-17, 19-23 and 36*_____

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [...] been received. [...] not been received. [...] been filed in parent application Serial No. _____ filed on _____.

6. ☐ Note the attached Examiner's Amendment.

7. ☑ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449. *The claims have been allowed because the prior art does not disclose or teach the reading claim in the combination at a storage area with pickup location thereof to arrive at the claimed automated picking means (a claimed) (a computer (as claimed) and a reader... set claims herein in the claimed manner.*

**PART II.**
A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☑ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

   a. ☑ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. 5. CORRECTION IS REQUIRED.

   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.

   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

   d. ☑ Formal drawings are now REQUIRED.

---

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachments:
_ Examiner's Amendment
✓ Examiner Interview Summary Record, PTOL-413
_ Reasons for Allowance
_ Notice of References Cited, PTO-892
_ Information Disclosure Citation, PTO-1449

_ Notice of Informal Application, PTO-152
_ Notice re Patent Drawings, PTO-948
_ Listing of Bonded Draftsmen
_ Other

FRANK E. WERNER
PRIMARY EXAMINER    3/1/95
GROUP 3100

PTOL-37 (REV. 4-89) *

USCOMM-DC 89-3788

MA000248



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

```
                                    F1M170307
      LYNN J. ALSTADT
      BUCHANAN INGERSOLL
      600 GRANT STREET, 56TH FLOOR
      PITTSBURGH, PA  15219
```

**NOTICE OF ALLOWANCE
AND ISSUE FEE DUE**

☐ Note attached communication from the Examiner
☐ This notice is issued in view of applicant's communication filed _____

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| 08/295,495 | 08/25/94 | 022 | WERNER, F   3102 | 03/07/95 |

| First Named Applicant | MCDONALD,  SEAN, C. |
|---|---|

TITLE OF
INVENTION   AUTOMATED SYSTEM FOR SELECTING PACKAGES FROM A STORAGE AREA

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 920015 | 414-273.000 | J50 | UTILITY | YES | $605.00 | 06/07/95 |

**THE APPLICATION IDENTIFIES ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.**

**THE ISSUE FEE MUST BE PAID WITHIN THREE MONTHS FROM THE MAILING DATE OF THIS NOTICE OR THIS
APPLICATION SHALL BE REGARDED AS ABANDONED.  THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

**HOW TO RESPOND TO THIS NOTICE:**

I. Review the SMALL ENTITY Status shown above.
If the SMALL ENTITY is shown as YES, verify your
current SMALL ENTITY status:

  A. If the status is changed, pay twice the amount of the
FEE DUE shown above and notify the patent and
Trademark Office of the change in status, or
  B. If the Status is the same, pay the FEE DUE shown
above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with,
pay of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.
Even if the ISSUE FEE has already been paid by charge to deposit account, Part B should be completed and returned.
If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number.
Please direct all communication prior to issuance to Box ISSUE FEE unless advised to contrary.

*IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of
maintenance fees.  It is patentee's responsibility to ensure timely payment of maintenance
fees when due.*

PTOL-85 (REV. 12-93) (0851-0033)          PATENT AND TRADEMARK OFFICE COPY

MA000249

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Group Art Unit 3107              :  PATENT

Examiner F. Werner              :

In re application of            :

SEAN MCDONALD ET AL.            :  AUTOMATED SYSTEM FOR
                                   SELECTING PACKAGES FROM
Serial No. 08/295,495          :  A STORAGE AREA

Filed August 25, 1994          :

Allowed March 7, 1995          :

                        L E T T E R

                              Pittsburgh, Pennsylvania 15219

                              August 21, 1995

Hon. Commissioner of Patents and Trademarks

        Washington, D. C.  20231

        Attention:  Brenda Moore - Drawing Processing Branch

Sir:

        This is in response to the Notice of Outstanding

Drawing Requirement of August 16, 1995 indicating that the

requirement for formal drawings (Form PTOL-37) attached to the

official Notice of Allowance of March 7, 1995 has not been

satisfied.

        We are enclosing herewith a copy of our letter of

April 25, 1995 enclosing seven (7) sheets of formal drawings and

MA000250

a copy of the postcard received and stamped by the Mail Room on April 27, 1995.

In view of the fact that the drawings were obviously misplaced or lost by the Patent and Trademark Office, we are enclosing herewith the seven (7) sheets of formal drawings containing Figures 8 thru 10 and 16 thru 19 for entry into the above-entitled application.

Please substitute these drawings for the drawings originally filed with the application. A copy of the Notice of Draftsperson's Patent Drawing Review (Form 948) is also enclosed which objects to the original drawings filed with the application. These drawings overcome the objections.

Entry of the formal drawings is respectfully requested.

Respectfully submitted,

Lynn J. Alstadt
Registration No. 29,362
BUCHANAN INGERSOLL, P.C.
600 Grant Street, 56th Floor
Pittsburgh, PA 15219
(412) 562-1632

-2-

MA000251

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Group Art Unit 3107            :        PATENT

Examiner F. Werner             :

In re application of           :    AUTOMATED SYSTEM FOR
                                    SELECTING PACKAGES FROM
SEAN MCDONALD et al.           :    A STORAGE AREA

Serial No. 08/295,495          :

Filed August 25, 1994          :

Allowed March 7, 1995          :

<u>L E T T E R</u>

Pittsburgh, Pennsylvania 15219

April 25, 1995

Hon. Commissioner of Patents and Trademarks

    Washington, D.C.  20231

Sir:

        Enclosed herewith are seven sheets of formal drawings
containing Figures 8 thru 10 and 16 thru 19 for entry into the
above-titled application.    Please substitute these drawings for
the drawings originally filed with the application.    A copy of
the Notice of Draftperson's Patent Drawing Review (Form 948) is
also enclosed which objects to the original drawings filed with
the application.    These drawings overcome the objections.

Entry of the formal drawings is respectfully requested.

Respectfully submitted,

BUCHANAN INGERSOLL, P.C.

By _Lynn J. Alstadt_
Lynn J. Alstadt
Registration No. 29,362

(412) 562-1632

Attorneys for Applicants

-2-

MA000253

895495

FIGURE 8





FIGURE 9

MA000255



295495

FIGURE 10





FIGURE 16



FIGURE 17



FIGURE 18



FIGURE 19

295495

The dating stamp of the Patent Office on this card will be taken as an indication that the accompanying paper was filed.

Applicant(s) McDonald et al.

Ser. No. 08/295,495

Paper dated April 25, 1995

Atty's File No. 940688/1ja

Letter

7 sheets of formal drawings

A copy of draft-person's patent drawing review



MA000261

PTO FORM 948
(Rev 8-91)

GROUP 3107

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

ATTACHMENT TO PAPER NUMBER

S

APPLICATION NUMBER

09/

## NOTICE OF DRAFTSMAN'S PATENT DRAWING REVIEW

The PTO Draftsmen review all originally filed drawings regardless
of whether they were designated as informal or formal.

The drawings filed _____ 9/21/02

A. ☐ are approved.

B. ☒ are objected to under 37 CFR 1.84 for reason(s) checked below. The applicant will require submission of new, corrected drawings at the appropriate time. Corrected drawings must be submitted according to the instructions listed on the back of this Notice.

1. Paper and Ink. 37 CFR 1.84(a)
   ☐ Poor Quality Paper. Must be White.
   Transparent Paper Not Allowed.
   Sheet(s) _____

2. Size of Sheet and Margins. 37 CFR 1.84(b)
   Acceptable Paper Sizes and Margins

   Paper Size

   | Margin | 8 1/2 by 14 inches | 8 1/2 by 13 inches | DIN size A4 21 by 29.7 cm |
   |--------|--------|--------|--------|
   | Top | 2 inches | 1 inch | 2.5 cm |
   | Left | 1/4 inch | 1/4 inch | 2.5 cm |
   | Right | 1/4 inch | 1/4 inch | 1.5 cm |
   | Bottom | 1/4 inch | 1/4 inch | 1.0 cm |

   ☐ Proper Size Paper Required. All
   Sheets Must be Same Size.
   Sheet(s) _____

   ☐ Proper Margins Required.
   Sheet(s) _____
   ☐ Top      ☐ Right
   ☐ Left     ☐ Bottom

3. Character of Lines. 37 CFR 1.84(c)
   ☐ Lines Pale, Rough and Blurred, or
   Jagged. Fig(s) _____

   ☐ Solid Black Shading Not Allowed.
   Fig(s) _____

   ☐ Photographs Not Approved.

5. Hatching and Shading. 37 CFR 1.84(d)
   ☐ Shade Lines are Required.
   Fig(s) _____

   ☐ Criss-Cross Hatching Not Allowed
   Fig(s) _____

   ☐ Double Line Hatching Not Allowed.
   Fig(s) _____

   ☐ Parts in Section Must be Hatched
   Properly. Fig(s) _____

6. Reference Characters. 37 CFR 1.84(f)
   ☐ Reference Characters Poor or Rough
   and Blurred. Fig(s) _____

   ☒ Minimum 1/8 inch (3.2 mm.) in height
   is required. Fig(s) 8-14, 16-17

   ☒ Figure Legends Poor or Placed
   Incorrectly. Fig(s) 10

7. Views. 37 CFR 1.84(i) & (j)
   ☐ Figures Must be Numbered Separately.

   ☐ Figures Must Not be Connected
   Fig(s) _____

8. Identification of Drawings. 37 CFR 1.84(l)
   ☐ Extraneous Matter or Copy Machine
   Marks Not Allowed. Fig(s) _____

9. ☐ Changes Not Completed from Prior
   PTO-948 dated _____

☒ Comments:

- Remove box from informal Dwg. Fig 8-10

Telephone inquiries concerning this review should be directed to the Chief Draftsman at the phone number (703) 557-9480.

_____
Reviewing Draftsman

2/9/03
Date

Applicant's Copy

605-242

PART B—ISSUE FEE TRANSMITTAL

*MAILING INSTRUCTIONS:* This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advance orders and notification of maintenance fees will be mailed to addressee entered in Block 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block 3 below; or (b) providing the PTO with a separate "FEE ADDRESS" for maintenance fee notifications with the payment of Issue Fee or thereafter. See reverse for Certificate of Mailing.

| 1. CORRESPONDENCE ADDRESS | 2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change) |
|---|---|
| F1M1/0307 | INVENTOR'S NAME |
| | Street Address |
| LYNN J. ALSTADT | City, State and ZIP Code |
| BUCHANAN INGERSOLL | CO-INVENTOR'S NAME |
| 600 GRANT STREET, 56TH FLOOR | Street Address |
| PITTSBURGH, PA 15219 | City, State and ZIP Code |
| | ☐ Check if additional changes are on reverse side |

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | | DATE MAILED |
|---|---|---|---|---|---|
| 08/295,495 | 08/25/94 | 022 | WERNER, F | 3107 | 03/07/95 |

First Named Applicant: MCDONALD, SEAN C.

TITLE OF INVENTION: AUTOMATED SYSTEM FOR SELECTING PACKAGES FROM A STORAGE AREA

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 3  920015 | 414-273.000 | J50 | UTILITY | YES | $605.00 | 06/07/95 |

| 3. Correspondence address change (Complete only if there is a change) | 4. For printing on the patent front page, list the names of not more than 3 registered patent attorneys or agents OR, alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed. |
|---|---|
| | 1 Buchanan Ingersoll |
| | 2 Lynn J. Alstadt |
| 160 KJ 07/06/95 08295495 | 3 _____ |

DO NOT USE THIS SPACE

1 242      605.00 CK

5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT (print or type)

(1) NAME OF ASSIGNEE:
Automated Healthcare, Inc.
(2) ADDRESS: (CITY & STATE OR COUNTRY)
Pittsburgh, PA

A. ☐ This application is NOT assigned.
☒ Assignment previously submitted to the Patent and Trademark Office.
☐ Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS.

PLEASE NOTE: Unless an assignee is identified in Block 5, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

6a. The following fees are enclosed:
☒ Issue Fee      ☐ Advance Order - # of Copies _____
6b. The following fees should be charged to:
DEPOSIT ACCOUNT NUMBER _02-4553_
(ENCLOSE PART C)
☐ Issue Fee      ☐ Advance Order - # of Copies _____
☒ Any Deficiencies in Enclosed Fees

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.

(AUTHORIZED SIGNATURE)      (Date) 7/06/95

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

**TRANSMIT THIS FORM WITH FEE-CERTIFICATE OF MAILING ON REVERSE**

PTOL-85B (REV.12-93)(0651-0033)

MA000263

**Certificate of Mailing**

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to:

Box ISSUE FEE
Commissioner of Patents and Trademarks
Washington, D.C. 20231

on __June 7, 1995__
                             (Date)

Vicki Cremonese
(Name of person making deposit)

_____
(Signature)

_____June 7, 1995_____
(Date)

Note: If this certificate of mailing is used, it can only be used to transmit the Issue Fee. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing.

Burden Hour Statement: This form is estimated to take .2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Office of Information Systems, Patent and Trademark Office, Washington, D.C. 20231, and to the Office of Information and Regulatory Affairs, Office of Management and Budget, (Project 0651-0033), Washington, D.C. 20503. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner of Patents and Trademarks, Box Issue Fee, Washington, DC 20231.

/ERSE PTOL-85B (REV. 12-93)(0651-0033)

MA000264



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address : COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/295,495 | 08/23/94 | MCDONALD | S | 920015 |

```
                                    4102/0816        WERNER EXAMINER
    LYNN J. ALSTADT
    BUCHANAN INGERSOLL
    600 GRANT STREET, 56TH FLOOR        ART UNIT    PAPER NUMBER
    PITTSBURGH, PA  15219
                                        3107          17
                                    DATE MAILED:
                                                    08/16/95
```

### NOTICE OF OUTSTANDING DRAWING REQUIREMENT

Office records indicate that the requirement for

[X] formal drawings
[ ] drawing corrections
[ ]  _____

which was made in the form PTOL-37

[X] attached to the Notice of Allowance and Issue Fee Due mailed     *3/7/95*

[ ] mailed  _____

has not been satisfied. As set forth in the form PTOL-37 and form PTO-1474, required drawing corrections must have been made by a bonded draftsman or new drawings submitted during the three month statutory period set for payment of the issue fee. The *three* month period for payment of the issue fee is a statutory requirement (35 USC 151) and cannot be extended. However, drawing corrections and new formal drawings will be accepted as timely filed through the end of a *six* month statutory period (35 USC 133), provided a request for extension of time and the correct fee in accordance with 37 CFR 1.136(a) is submitted before the end of the six month period. The required fees are set forth in 37 CFR 1.17(a), (b), and (c). If the requirements are not satisfied within the statutory period, this application will be abandoned.

**Brenda Moore**
**Drawing Processing Branch**
**703-305-8428**

Drafting Branch
Office of Publications

FORM PTOL-429 (4-83)



PTO UTILITY GRANT
Paper Number 19

The Commissioner of Patents
and Trademarks

*Has received an application for a patent
for a new and useful invention. The title
and description of the invention are en-
closed. The requirements of law have
been complied with, and it has been de-
termined that a patent on the invention
shall be granted under the law.*

*Therefore, this*

United States Patent

*Grants to the person or persons having
title to this patent the right to exclude
others from making, using or selling the
invention throughout the United States
of America for the term of seventeen
years from the date of this patent, sub-
ject to the payment of maintenance fees
as provided by law.*

*Commissioner of Patents and Trademarks*

*Attest*

The United States of America

PTO-1584

(RIGHT INSIDE)



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Group Art Unit 3107                    : PATENT APPLICATION

In re application of                   :

SEAN C. MCDONALD ET AL.                : AUTOMATED SYSTEM FOR
                                         SELECTING PACKAGES FROM
Serial No. 295,495                     : A STORAGE AREA

Filed August 25, 1994                  :

Patent No. 5,468,110                   :

Issued November 21, 1995               :

## LETTER

Pittsburgh, Pennsylvania 15219
January 8, 1996

Hon. Commissioner of Patents and Trademarks
    Washington, D. C.  20231

Sir:

    Applicant requests that a Certificate of Correction be issued to correct the errors which are indicated on the attached form for Certificate of Correction.

Respectfully submitted,

Lynn J. Alstadt
Registration No. 29,362
BUCHANAN INGERSOLL, P.C.
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA  15219
(412) 562-1632

APPROVED

MAR 1 9 1996

MA000267

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO. : 5,468,110
DATED : November 21, 1995
INVENTOR(S) : SEAN C. McDONALD, ELLEN J. HERTZ, JAMES A. SMITH, GREGORY TOTO

It is certified that error appears in the above-indentified patent and that said Letters Patent is hereby corrected as shown below:

Column 1, line 6, change "07/87/832" to —07/871,832—.

Column 14, lines 47-48, claim 20, delete "[on either the first or".

MAILING ADDRESS OF SENDER: Lynn J. Alstadt
BUCHANAN INGERSOLL, P.C.
301 Grant Street, 20th Floor
Pittsburgh, PA  15219

PATENT NO. 5,468,110

No. of add'l copies
@ 50¢ per page

FORM PTO 1050 (Rev. 2-93)

MA000268

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO. : 5,468,110

DATED     : November 21, 1995

INVENTOR(S) : SEAN C. McDONALD, ELLEN J. HERTZ, JAMES A. SMITH, GREGORY TOTO

It is certified that error appears in the above-indentified patent and that said Letters Patent is hereby corrected as shown below:

Column 1, line 6, change "07/87/832" to --07/871,832--.

Column 14, lines 47-48, claim 20, delete "[on either the first or".

Signed and Sealed this

Sixteenth Day of April, 1996

*Bruce Lehman*

BRUCE LEHMAN

*Attest:*

*Attesting Officer*                     *Commissioner of Patents and Trademarks*

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 1992

Application or Docket Number: 295,495

| FOR | NUMBER FILED | NUMBER EXTRA | RATE | FEE | RATE | FEE |
|---|---|---|---|---|---|---|
| BASIC FEE | | | $355.00 | | x$22= | $710.00 |
| TOTAL CLAIMS | 24 | minus 20 = 4 | x$11= | 04 | x$22= | |
| INDEPENDENT CLAIMS | 2 | minus 3 = | x 37= | | x 74= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | +115= | | +230= | |
| | | | TOTAL | 359 | TOTAL | |

* If the difference in column 1 is less than zero, enter "0" in column 2

**CLAIMS AS AMENDED - PART II**

**AMENDMENT A**

| | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDI-TIONAL FEE | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|
| Total | 22 | Minus | 24 | x$11= | | x$22= | |
| Independent | 1 | Minus | 3 | x 37= | | x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +115= | | +239= | |
| | | | | TOTAL ADDIT. FEE | | TOTAL ADDIT. FEE | |

**AMENDMENT B**

| | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDI-TIONAL FEE | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|
| Total | | Minus | | x$11= | | x$22= | |
| Independent | | Minus | | x 37= | | x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +115= | | +230= | |
| | | | | TOTAL ADDIT. FEE | | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | CLAIMS REMAINING AFTER AMENDMENT | HIGHEST NUMBER PREVIOUSLY PAID FOR | PRESENT EXTRA | RATE | ADDI-TIONAL FEE | RATE | ADDI-TIONAL FEE |
|---|---|---|---|---|---|---|---|
| Total | 20 | Minus | | x$11= | | x$22= | |
| Independent | | Minus | | x 37= | | x 74= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +115= | | +230= | |
| | | | | TOTAL ADDIT. FEE | | TOTAL ADDIT. FEE | |

* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
*** If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev. 10-92)

Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

MA000270





Figure 1





Figure 11

MA000273



MA000274

# EXHIBIT I

5593267

| Class | Subclass | ISSUE CLASSIFICATION |
|---|---|---|
| 414 | 273 | |

| UTILITY SERIAL NUMBER | PATENT DATE | PATENT NUMBER |
|---|---|---|
| 08/452646 | | 5593267 |

| SERIAL NUMBER | FILING DATE | CLASS | SUBCLASS | GROUP ART UNIT | EXAMINER |
|---|---|---|---|---|---|
| 08/452,646 | 05/25/95 RULE 60 | 414 | 273 | 3107 | |

APPLICANTS: SEAN C. MCDONALD, PITTSBURGH, PA; ELLEN J. HERTZ, CLEMMONS, NC; JAMES A. SMITH, ALLISON PARK, PA; GREGORY TOTO, SANTA CRUZ, CA.

**CONTINUING DATA*************************** Yes
VERIFIED
THIS APPLN IS A DIV OF 08/295,485 08/25/94, now Patent No.5468110
WHICH IS A CON OF 07/871,832 04/21/92, now abandoned
WHICH IS A CIP OF 07/483,217 01/24/90 ABN

**FOREIGN/PCT APPLICATIONS*********** None
VERIFIED

***** SMALL ENTITY *****

| Foreign priority claimed 35 USC 119 conditions met | ☐ yes ☑ no | AS FILED → | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
|---|---|---|---|---|---|---|---|---|
| Verified and Acknowledged | Examiner's initials | | PA | 19 | 12 | 1 | $385.00 | 050441 |

ADDRESS:
LYNN J. ALSTADT
BUCHANAN INGERSOLL, P.C.
20th Floor
GRANT STREET 301
PITTSBURGH PA 15219-1410

**ISSUE FEE IN FILE**

TITLE: AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA

U.S. DEPT. OF COMM./ PAT. & TM—PTO-436L (Rev.12-

| PARTS OF APPLICATION FILED SEPARATELY | | Applications Examiner |
|---|---|---|

| NOTICE OF ALLOWANCE MAILED | | CLAIMS ALLOWED | |
|---|---|---|---|
| JUN 6 1996 | | Total Claims | Print Claim |
| | Assistant Examiner | 11 | 1 |

| ISSUE FEE | | DRAWING | | |
|---|---|---|---|---|
| Amount Due | Date Paid | Sheets Drwg. | Figs. Drwg. | Print Fig. |
| $625.00 | 9/5/96 | 19 | 19 | 6 |
| | FRANK E. WERNER PRIMARY EXAMINER GROUP 3100 Primary Examiner | ISSUE BATCH NUMBER | A72 | |

| | PREPARED FOR ISSUE | |

Label Area

WARNING: The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-436A (Rev. 8/92)

(FACE)

MA000275

PATENT APPLICATION

08/452646

08452646

APPROVED FOR LICENSE ☐

JUN 1-5-95 17

INITIALS

GROUP

08/452646

Date
Entered
or
Counted

# CONTENTS

Date
Received
or
Mailed

| | | |
|---|---|---|
| 1. | Application 19 dwg papers. | |
| 2. | Info Disc State | May 25, 1995 |
| 3. | Rej 3M | AUG 2 1 1995   87 |
| 4. | Change of Address | Aug 7, 1995 |
| 5. | Amdt (Yp 11-21-95) | Nov 24 1995 |
| 6. | Letter | Nov 26 1995 |
| 7. | Final Rej 3M | MAR 18 1996   5/4 |
| 43 KSM 8. | Amdt B (RE) | May 22, 1996 |
| 9/4/96 9. | RCE 37 | JUN 6 1996  4/6 |
| 10. | [illegible] 10 [illegible] | 9/6/96 |
| 11. | Notice of Drawing Requirement | 9/6/96 |
| 10/8/96 12. | [illegible] 6  2 | 10/7/96 |
| 13. | PTO Grant JAN 1 4 1997 | |
| 14. | | |
| 15. | | |
| 16. | | |
| 17. | | |
| 18. | | |
| 19. | | |
| 20. | | |
| 21. | | |
| 22. | | |
| 23. | | |
| 24. | | |
| 25. | | |
| 26. | | |
| 27. | | |
| 28. | | |
| 29. | | |
| 30. | | |
| 31. | | |
| 32. | | |

(FRONT)

MA000276

*U.S. GOVERNMENT PRINTING OFFICE: 1994-365-311

| PATENT NUMBER | ORIGINAL CLASSIFICATION | |
|---|---|---|
| | CLASS | SUBCLASS |
| | 414 | 273 |

| APPLICATION SERIAL NUMBER | CROSS REFERENCE(S) | | |
|---|---|---|---|
| 08/452 646 | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | |
| APPLICANT'S NAME (PLEASE PRINT) | 414 | 280 | |
| Sean C. McDonald et al | | | |

IF REISSUE, ORIGINAL PATENT NUMBER

| INTERNATIONAL CLASSIFICATION |
|---|
| B 65 G    001/04 |

| GROUP ART UNIT | ASSISTANT EXAMINER (PLEASE STAMP OR PRINT FULL NAME) |
|---|---|
| 3107 | PRIMARY EXAMINER (PLEASE STAMP OR PRINT FULL NAME) |
| | FRANK E. WERNER |

PTO-270
(REV. 5-91)

ISSUE CLASSIFICATION SLIP

PRIMARY EXAMINER
GROUP 3100

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

| Claim | | Date | | | | | |
|---|---|---|---|---|---|---|---|
| Final | Original | | | | | | |
| | 1 | | | | | | |
| | 2 | | | | | | |
| | 3 | | | | | | |
| | 4 | | | | | | |
| | 5 | | | | | | |
| | 6 | | | | | | |
| | 7 | | | | | | |
| | 8 | | | | | | |
| | 9 | | | | | | |
| | 10 | | | | | | |
| | 11 | | | | | | |
| | 12 | | | | | | |
| | 13 | | | | | | |
| | 14 | | | | | | |
| | 15 | | | | | | |
| | 16 | | | | | | |
| | 17 | | | | | | |
| | 18 | | | | | | |
| | 19 | | | | | | |
| | 20 | | | | | | |
| | 21 | | | | | | |
| | 22 | | | | | | |
| | 23 | | | | | | |
| 1 | 24 | ✓ | ✓ | = | | | |
| | 25 | ✓ | 0 | | | | |
| 2 | 26 | ✓ | ✓ | = | | | |
| 3 | 27 | ✓ | ✓ | = | | | |
| 4 | 28 | ✓ | ✓ | = | | | |
| 5 | 29 | ✓ | ✓ | = | | | |
| 6 | 30 | ✓ | ✗ | = | | | |
| 8 | 31 | ✓ | ✗ | = | | | |
| 9 | 32 | ✓ | ✗ | = | | | |
| 7 | 33 | ✓ | ✗ | = | | | |
| 6 | 34 | ✓ | ✗ | = | | | |
| 5 | 35 | ✓ | ✗ | | | | |
| | 36 | | | | | | |
| | 37 | | | | | | |
| | 38 | | | | | | |
| | 39 | | | | | | |
| | 40 | | | | | | |
| | 41 | | | | | | |
| | 42 | | | | | | |
| | 43 | | | | | | |
| | 44 | | | | | | |
| | 45 | | | | | | |
| | 46 | | | | | | |
| | 47 | | | | | | |
| | 48 | | | | | | |
| | 49 | | | | | | |
| | 50 | | | | | | |

| Claim | | Date | | | | | |
|---|---|---|---|---|---|---|---|
| Final | Original | | | | | | |
| | 51 | | | | | | |
| | 52 | | | | | | |
| | 53 | | | | | | |
| | 54 | | | | | | |
| | 55 | | | | | | |
| | 56 | | | | | | |
| | 57 | | | | | | |
| | 58 | | | | | | |
| | 59 | | | | | | |
| | 60 | | | | | | |
| | 61 | | | | | | |
| | 62 | | | | | | |
| | 63 | | | | | | |
| | 64 | | | | | | |
| | 65 | | | | | | |
| | 66 | | | | | | |
| | 67 | | | | | | |
| | 68 | | | | | | |
| | 69 | | | | | | |
| | 70 | | | | | | |
| | 71 | | | | | | |
| | 72 | | | | | | |
| | 73 | | | | | | |
| | 74 | | | | | | |
| | 75 | | | | | | |
| | 76 | | | | | | |
| | 77 | | | | | | |
| | 78 | | | | | | |
| | 79 | | | | | | |
| | 80 | | | | | | |
| | 81 | | | | | | |
| | 82 | | | | | | |
| | 83 | | | | | | |
| | 84 | | | | | | |
| | 85 | | | | | | |
| | 86 | | | | | | |
| | 87 | | | | | | |
| | 88 | | | | | | |
| | 89 | | | | | | |
| | 90 | | | | | | |
| | 91 | | | | | | |
| | 92 | | | | | | |
| | 93 | | | | | | |
| | 94 | | | | | | |
| | 95 | | | | | | |
| | 96 | | | | | | |
| | 97 | | | | | | |
| | 98 | | | | | | |
| | 99 | | | | | | |
| | 100 | | | | | | |

SYMBOLS
- ✓ ............. Rejected
- = ............. Allowed
- – (Through numeral) Canceled
- + ............. Restricted
- N ............. Non-elected
- I ............. Interference
- A ............. Appeal
- O ............. Objected

(LEFT INSIDE)

MA000277

| POSITION | ID NO. | DATE |
|---|---|---|
| CLASSIFIER | 31 | 6/16/95 |
| EXAMINER | 340 | 6.21.95 |
| TYPIST | 323 | 6/21 |
| VERIFIER | | |
| CORPS CORR. | | |
| SPEC. HAND | | |
| FILE MAINT. | | |
| DRAFTING | | |

## INDEX OF CLAIMS

| Claim | | Date | | | |
|---|---|---|---|---|---|
| Final | Original | | | | |
| | 1 | | | | |
| | 2 | | | | |
| | 3 | | | | |
| | 4 | | | | |
| | 5 | | | | |
| | 6 | | | | |
| | 7 | | | | |
| | 8 | | | | |
| | 9 | | | | |
| | 10 | | | | |
| | 11 | | | | |
| | 12 | | | | |
| | 13 | | | | |
| | 14 | | | | |
| | 15 | | | | |
| | 16 | | | | |
| | 17 | | | | |
| | 18 | | | | |
| | 19 | | | | |
| | 20 | | | | |
| | 21 | | | | |
| | 22 | | | | |
| | 23 | | | | |
| | 24 | | | | |
| | 25 | | | | |
| | 26 | | | | |
| | 27 | | | | |
| | 28 | | | | |
| | 29 | | | | |
| | 30 | | | | |
| | 31 | | | | |
| | 32 | | | | |
| | 33 | | | | |
| | 34 | | | | |
| | 35 | | | | |
| | 36 | | | | |
| | 37 | | | | |
| | 38 | | | | |
| | 39 | | | | |
| | 40 | | | | |
| | 41 | | | | |
| | 42 | | | | |
| | 43 | | | | |
| | 44 | | | | |
| | 45 | | | | |
| | 46 | | | | |
| | 47 | | | | |
| | 48 | | | | |
| | 49 | | | | |
| | 50 | | | | |

| Claim | | Date | | | |
|---|---|---|---|---|---|
| Final | Original | | | | |
| | 51 | | | | |
| | 52 | | | | |
| | 53 | | | | |
| | 54 | | | | |
| | 55 | | | | |
| | 56 | | | | |
| | 57 | | | | |
| | 58 | | | | |
| | 59 | | | | |
| | 60 | | | | |
| | 61 | | | | |
| | 62 | | | | |
| | 63 | | | | |
| | 64 | | | | |
| | 65 | | | | |
| | 66 | | | | |
| | 67 | | | | |
| | 68 | | | | |
| | 69 | | | | |
| | 70 | | | | |
| | 71 | | | | |
| | 72 | | | | |
| | 73 | | | | |
| | 74 | | | | |
| | 75 | | | | |
| | 76 | | | | |
| | 77 | | | | |
| | 78 | | | | |
| | 79 | | | | |
| | 80 | | | | |
| | 81 | | | | |
| | 82 | | | | |
| | 83 | | | | |
| | 84 | | | | |
| | 85 | | | | |
| | 86 | | | | |
| | 87 | | | | |
| | 88 | | | | |
| | 89 | | | | |
| | 90 | | | | |
| | 91 | | | | |
| | 92 | | | | |
| | 93 | | | | |
| | 94 | | | | |
| | 95 | | | | |
| | 96 | | | | |
| | 97 | | | | |
| | 98 | | | | |
| | 99 | | | | |
| | 100 | | | | |

SYMBOLS
√ ............ Rejected
= ............ Allowed
– (Through numeral) ...... Canceled
÷ ............ Restricted
N ............ Non-elected
I ............ Interference
A ............ Appeal
O ............ Objected

(LEFT INSIDE)

MA000278



| SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| 235 | 385,351 | | |
| 414 | 246,267 | | |
| | 268,269 | | |
| | 270,273 | | |
| | 274,276 | | |
| | 277,280 | | |
| | 281,282 | | |
| | 285,331 | | |
| 221 | 3,5,9,15 | | |
| 364 | 478,411.02 | | |
| | 479 | 8/85 | RW |
| Above search updated | | 2/96 | RW |
| Above search updated | | 6/96 | RW |
| | | | |

| SEARCH NOTES | | |
|---|---|---|
| | Date | Exmr. |
| Search updated and references checked in parent SN's 295495 871853 and 464217 others listed in parent SN | 8/85 | RW |

| INTERFERENCE SEARCHED | | | |
|---|---|---|---|
| Class | Sub. | Date | Exmr. |
| Above interference searched | | 6/96 | RW |

(RIGHT OUTSIDE)

MA000279

US005593267A

# United States Patent [19]

## McDonald et al.

[11] Patent Number: 5,593,267

[45] Date of Patent: Jan. 14, 1997

[54] **AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA**

[75] Inventors: **Sean C. McDonald**, Pittsburgh, Pa.; **Ellen J. Hertz**, Clemmons, N.C.; **James A. Smith**, Allison Park, Pa.; **Gregory Toto**, Santa Cruz, Calif.

[73] Assignee: **Automated Healthcare, Inc.**, Pittsburgh, Pa.

[21] Appl. No.: **452,646**

[22] Filed: **May 25, 1995**

### Related U.S. Application Data

[62] Division of Ser. No. 295,495, Aug. 25, 1994, Pat. No. 5,468,110, which is a continuation of Ser. No. 871,832, Apr. 21, 1992, abandoned, which is a continuation-in-part of Ser. No. 469,217, Jan. 24, 1990, abandoned.

[51] Int. Cl.⁶ ............................................. B65G 1/04
[52] U.S. Cl. .......................... 414/273; 414/280
[58] Field of Search ........................ 235/385, 351; 414/266, 267, 268, 269, 270, 273, 274, 276, 277, 280, 281, 282, 285, 331; 221/3, 5, 9, 15; 364/478, 413.02, 479

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,802,580 | 4/1974 | Castaldi | 414/280 |
| 3,986,612 | 10/1976 | Kamm et al. | 209/111.7 |
| 4,546,901 | 10/1985 | Buttarazzi | 414/280 |
| 4,651,863 | 3/1987 | Reuter et al. | 414/280 |
| 4,669,047 | 5/1987 | Chucta | 414/331 |
| 4,678,390 | 7/1987 | Bonneton et al. | 414/282 |
| 4,786,229 | 11/1988 | Henderson | 414/273 |
| 4,789,295 | 12/1988 | Boucher, Jr. et al. | 414/280 |
| 4,792,270 | 12/1988 | Yoshida | 414/273 |
| 4,812,629 | 3/1989 | O'Neil et al. | 414/274 |
| 4,820,109 | 4/1989 | Wirt | 414/282 |
| 4,896,024 | 1/1990 | Morello et al. | 414/274 |
| 5,129,777 | 7/1992 | Pohjonen et al. | 414/280 |

#### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 304 | 1/1979 | European Pat. Off. | 414/273 |
| 2396299 | 10/1987 | France . | |
| 8500232 | 8/1984 | WIPO . | |

*Primary Examiner*—Frank E. Werner
*Attorney, Agent, or Firm*—Buchanan Ingersoll, P.C.; Lynn J. Alstadt

[57] **ABSTRACT**

A system for filling orders, such as prescriptions for patients, comprising a device for holding packages. Each package has the same type of contents being held in a predetermined location by the holding device. Each package has an identity which defines the contents therein. The holding device has a plurality of predetermined locations corresponding to a plurality of different types of contents. Additionally, the system is comprised of a device for supplying packages to the holding device. Also, there is a device for picking a package from the holding device that is identified in the order for the purpose of restocking the holding device. The picking device is in communication with the holding device and supplying device. In a preferred embodiment, the contents of each package is a single dosage of medicine.

**11 Claims, 19 Drawing Sheets**





Fig.1.

MA000281

**U.S. Patent**     Jan. 14, 1997     Sheet 2 of 19     5,593,267

FIGURE 2



MA000282



FIGURE 3

MA000283



Figure 4

MA000284



Figure 5



Figure 6

MA000286



FIGURE 7

MA000287

**U.S. Patent**     Jan. 14, 1997     Sheet 8 of 19     **5,593,267**

FIGURE 8





FIGURE 9

MA000289



FIGURE 10

MA000290



*Figure 11*



Figure 12

MA000292



Figure 13



Figure 14

MA000294



*Figure 15*

U.S. Patent          Jan. 14, 1997          Sheet 16 of 19          5,593,267

FIGURE 16



FIGURE 17



FIGURE 18

FIGURE 19

5,593,267

1

## AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA

### Related Application

This application is a division of Ser. No. 08/295,495 filed Aug. 25, 1994, now U.S. Pat. No. 5,468,110 which is a continuation of Ser. No. 07/871,832, filed Apr. 21, 1992, now abandoned which is a continuation-in-part of our U.S. patent application Ser. No. 07/469,217 filed Jan. 24, 1990, now abandoned.

### FIELD OF THE INVENTION

The present invention relates to an automated system for selecting stored articles. More specifically, the present invention relates to an automated system for filling prescriptions and restocking medicines in a pharmacy.

### BACKGROUND OF THE INVENTION

Many industries store products or parts in a storeroom or storage area and repeatedly select some of the stored items to fill orders or for other uses. Such items may range from small electronic components used by a manufacturer of electronic devices to automotive parts, which vary in size, used by service departments of automobile dealerships. Usually one or more people are employed to retrieve the requested items and to restock new and returned items. These individuals may also be required to confirm that the requested items are compatible with one another and with previously supplied items. If the supplied items are to be billed to a customer or charged to particular internal accounts, the list of items is first written by the requester, and rewritten or entered into a computer database by the storeroom attendant to create an invoice, supply list or other document. In some instances, further generations of the list are made by installers, users or billing clerks. Such methods have built-in opportunities for mistakes every time a list is rewritten and are less efficient than automated systems. Moreover, as labor costs rise and the size of inventory needed to be stored expands, the conventional storeroom and parts department become more and more expensive.

Some businesses have attempted to control costs by limiting inventory through standardization of parts. But such limits are not possible or desirable in some industries, particularly in a hospital pharmacy.

Currently, in large hospital environments, doctors visit patients in nursing units and write out medication orders for each patient. A patient is typically placed on a certain medication which may require multiple doses of medication he administered over a period of a day. Some medications are administered at certain times of the day and possibly at intervals of several hours. Patients may also request certain medications on an elective basis for disorders such as headaches. These requests are included in the doctor's order that is sent from the nursing unit to the central pharmacy of the hospital.

Once an order is received by the pharmacy, it is checked by registered pharmacists and input into the pharmacy information system. These orders reflect not only orders that are added to a particular patient's treatment, but changes in the medication treatment. The pharmacy information system combines this information with the patient's existing medication schedule and develops a patient medication profile. A fill list is generated from that profile. The fill list is a list of all the medications that must be distributed to all patients for

2

the day. This information is sent to the pharmacy printer where a hard copy is generated. Frequently, that hard copy or a copy thereof is sent to the billing department so that the medication can be charged to the patient or his insurer.

At this point, the drugs for a particular patient are hand-picked by either a pharmacist or a pharmacy technician and placed in the particular patient's designated box. A registered pharmacist must then check the accuracy of the patient order before it leaves the pharmacy. Individual patient boxes are then loaded into a large cassette and delivered to the nursing unit.

Approximately 30% of the drugs dispensed each day are returned to the pharmacy unused. Since each drug is individually packaged, the drugs must be returned to the pharmacy stock. Patients are then credited for unused medication. This return and crediting process is a very time-consuming task and requires significant amount of pharmacy manpower.

In a typical large pharmacy, up to 35 pharmacists and pharmacy technicians are responsible for all aspects of the unit dose dispensing task. Because this process is done manually, a certain amount of error occurs. Studies have estimated that a half-percent error rate is typical in a large hospital. Since a hospital may dispense over 6,000 doses each day, this error rate leads to a significant number of missed or incorrect doses.

Several companies have tried to automate this process through various approaches to the problem. Meditrol utilizes a vending machine approach to dispense the unit dose medications. Each nursing unit must have its own stock of prescription drugs. Nurses key in a patient ID and the drugs for that patient are then dispensed from the vending machine. This system is very expensive because of the necessity of purchasing a machine for each nursing unit. Also, restocking each machine is a very time-consuming task. Implementation of this system requires a complete modification of the current drug dispensing process which many hospitals are reticent to undertake. The system claims no labor-saving advantages from its implementation. This system is covered under U.S. Pat. No. 3,917,045 titled "Drug Dispensing Apparatus" and dated Nov. 11, 1975.

Baxter Travenol offers a dispensing system from Sam-sung, a Korean company, which dispenses bulk solids into a package which is dispensed to the pharmacist. This system only dispenses the 200 most frequently used solids. A typical hospital pharmacy can contain over 1,500 different medications, many in liquid, syringe or bottle form. These medications cannot be automatically dispensed by this system, but must be manually selected by the pharmacist.

Neither system allows the dispensed medications to be automatically returned to the storage area.

There is a need for an automated system which is able to dispense all dosage forms currently contained in a hospital pharmacy. Medicines should be automatically dispensed by the system per a patient order and placed in individual patient medication boxes for a pharmacist to check. Each drug and each patient box should be individually bar coded so that the accuracy of the dispensing process can be automatically checked by the system. Once drugs are returned to the pharmacy, the system should automatically return each drug to its proper location in inventory and credit the patient's account for the return. One system should also keep a running inventory and notify the user whenever inventory of a particular item drops below a preset level and whether the shelf life of an item has passed. With such a system, a hospital can recognize significant labor savings, as

5,593,267

3

well as savings based on improved accuracy in the dispensing function and better tracking of inventory and expired medications.

## SUMMARY OF THE INVENTION

We provide an automated method and apparatus for selecting and restocking stored items, which is particularly useful for filling patient medication orders in a hospital pharmacy. The stored items must be packaged to be held in a storage rack. Preferably, each package contains a bar code corresponding to the package contents. The items are arranged in a main storage rack so that like items are in the same location and a predetermined location is provided for every item.

We prefer to provide a second rack or a designated portion of the main storage rack for receipt of new or returned items to be restocked. Such items can be randomly placed on this supply station for transmittal to their respective predetermined locations on the storage rack.

We also provide a means for picking items from and placing items in the storage rack and the supply station. The picking means preferably is comprised of a gripper assembly mounted on a transport vehicle which moves along a track or other controlled route. The gripper assembly preferably has a movable rod or other carrier for holding selected items, at least one vacuum head and associated controls for gripping and moving selected items. We prefer to provide a bar code reader for reading item packages.

We also prefer to provide a conveyor on which boxes, patient medication trays or drawers can be placed. The conveyor is positioned so that the picking means can place selected items into appropriate containers on the conveyor.

We provide a processing unit with associated memory and data entry peripherals. This computer system receives the list of requested items, directs the picking means, checks the items selected and prepares reports. Data can be entered manually through a keyboard or bar code reader or electronically through an RS 232 port. Reports may be printed, displayed on a console or transmitted to a memory or another computer for later use.

Other details and advantages of our method and apparatus will become apparent from the description of the preferred embodiments shown in the drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

In the accompanying drawings, the preferred embodiments of the invention and preferred methods of practicing the invention are illustrated in which:

FIG. 1 is a schematic representation of our present preferred system.

FIG. 2 is a side view of a present preferred package.

FIG. 3 is a perspective view of one present preferred storage rack.

FIG. 4 is a perspective view of a portion of a second preferred storage rack.

FIG. 5 is a perspective view of a portion of a third preferred storage rack.

FIG. 6 is a schematic representation showing the storage rack, conveyor and movable support structure which holds a gripper assembly.

FIG. 7 is a schematic view of a present preferred gripper assembly.

4

FIG. 8 is a front view of a present preferred gripper assembly.

FIG. 9 is a side view of the gripper assembly of FIG. 7 with the storing rod in a raised and extended position.

FIG. 10 is a side view of the gripper assembly of FIG. 8 with the storing rod in a lowered and partially retracted position.

FIG. 11 is a diagram showing a preferred vacuum and pressure line for the gripper assembly.

FIG. 12 is a schematic representation of the gripper assembly mounted on a vehicle.

FIG. 13 is a perspective view of a rod with packages thereon connected to a support bar.

FIG. 14 is a schematic representation of a side view of a first rod and a second rod and having packages thereon attached to a portion of the support bar.

FIG. 15 is a schematic overhead view of an alternative system for filling an order.

FIG. 16 is a flowchart of the filling process.

FIG. 17 is a flowchart of the check process.

FIG. 18 is a flowchart of the return process.

FIG. 19 is a flowchart of the restocking process.

## DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring now to the drawings wherein like reference numerals refer to similar or identical parts throughout the several views, and more specifically to FIG. 1 thereof, there is shown a schematic representation of a present preferred system 10 for filling orders, such as prescriptions for patients. The system 10 contains storage racks 12 for handling packages. We prefer to provide at least two storage racks 12 and arrange them parallel to one another. Various storage rack designs can be used and certain present preferred storage racks are shown in FIGS. 3, 4 and 5. In our system, each package preferably contains only one product, although the product may consist of two or more related items, such as nut and bolt. When our system is installed in a hospital pharmacy, each package preferably contains a single dose of medicine.

A present preferred package 14 is illustrated in FIG. 2. Although the package could be a blister card or box, we prefer to use a clear plastic bag having a hole 15 to permit the package to be hung on a rod 30, 48, 65 or 66 shown in FIGS. 3, 6 and 14. Each package preferably has a bar code 16 and a written description 17, which identify the contents of the package. A white area 17a can be created on the clear plastic bag over which the written description 17 can be printed, stamped or even handwritten. The bar code and the written description may include not only the name of the product, but also its quantity, weight, instructions for use and expiration date. We also prefer to position the bar code and label on the package so that there is a large unmarked area 62 through which one can see the contents of the package. FIG. 2 represents a clear plastic bag for a unit dose of medicine. We can use a bag having a perforation line for easy opening or a reclosable bag having an interlocking rib type seal. The perforation line or rib seal is located along line 13. This type of bag is useful in a hospital pharmacy which buys medicines in large or bulk quantities and must repackage the drugs in individual dose packages. Package 14 can be any desired size. We have used a rectangular package having dimensions indicated by arrows A, B, C and D, wherein A is 3.5 inches, B is 1.0 inch, C is 3.0 inches and

5,593,267

5

D is 0.1875 inches. Alternatively, the package 14 can have A equal 5.0 inches, B equal 1.25 inches, C equal 5.0 inches and D equal 0.1875 inches.

An individual dose of medicine can be manually fed into an automated packaging system 98, as shown in FIG. 1, which automatically seals the package and prints a bar code and type-written label directly on the package. In a preferred embodiment, we utilize the H-100™ packaging system as manufactured by Automated Packaging Systems of Twinsburg, Ohio. With the addition of the Accu-Print™ 100 Programmable In-Line Direct Transfer Imprinter, also manufactured by Automated Packaging Systems, a bar code can be printed directly on the medicine package.

A storage rack 12, which may also be used for a supply station, is shown in FIG. 3. This rack is configured to hold packages of the type illustrated in FIG. 2. The rack has a rectangular frame 28, having an open front and back. Running across the back are a plurality of back rod supports 32 from which the rods 30 extend. The frame 28 with rod supports 32 forms an X, Y coordinate system with each rod 30 and medicine packages 14 therein having a unique X, Y coordinate. Packages are placed in the storage rack so that each product is located at a known X, Y coordinate. Since every product is in a known X, Y location, it is possible to direct an automatic picking means to any product location to select a desired item. The packages are segregated within the storage rack so that all packages in any given location have the same contents.

Although we prefer to use racks in which packages are hung on rods, other types of racks can be used for storage racks and supply stations in our system. In FIG. 4, we show the upper portion of a rack having a rectangular frame 21 with an open front and closed back 23. Attached to the back 23 are sets of brackets 25 positioned to hold packages 27. To be held securely in this rack, such packages must be fairly rigid. Blister cards and boxes can be used. If desired, a hole 15 could be provided in the packages to permit them to be carried on a rod.

A top portion of another suitable rack having a rectangular frame 21, open front and closed back 23 is shown in FIG. 5. This rack has a set of shelves 29, which may be inclined toward back 23. A set of dividers 31 separates groups of packages 27.

The racks of FIGS. 3, 4 and 5 have two important common features. First, the packages are held in locations having known X, Y coordinates. Those coordinates could be single X, Y values as may correspond to the position of the package holes 15 or a group of X, Y values defining an entire package. Second, there is sufficient clearance between packages to allow automated picking means to select, grab and replace individual packages.

Referring now to FIGS. 1 and 6, we provide storage racks 12 on either side of a track 42 over which a vehicle 44 may travel. The vehicle may be column-shaped as in FIG. 6. Many types of drive systems could be used to propel the vehicle. For example, one could provide a motor indicated by block 47 to propel wheels (not shown) at the base of the vehicle. Alternatively, one may use a chain or cable running through the track 42 to pull the vehicle to any desired location. Whatever drive system is used should be capable of moving the vehicle to positions along the track which correspond to the X coordinates of the packages within the rack. Thus, computer 24, which controls the drive system, can direct the vehicle 44 to a location in front of the package or packages to be selected.

Packages are selected by a picking means 38, preferably of the type illustrated in FIGS. 7 though 10. The picking

6

means is mounted on column-shaped vehicle 44 in a manner to allow controlled vertical movement along that column. In this manner, the picking means 38 can be positioned at locations along column 44 which correspond to the Y coordinates of packages to be selected. The picking means 38 is controlled by a computer 24, or local area network of computers, having a database. The database has the order to be filled and a record of the predetermined locations 18 of each different product in the storage rack 12. The computer 24 guides the picking means 38 based on information contained in the database, such that the picking means 38 picks a package 14 according to the order to be filled. The picking means 38 can also include means, such as a bar code reader 26 as shown in FIG. 7, for determining the identity 16 of a package 14 in the storage rack 12 or in a supply rack 20 and providing its identity 16 to the computer 24. The computer 24 guides the picking means 38 to select the desired packages and deliver them to a desired location. In the system of FIGS. 1 and 6, the packages are delivered to containers 36 located on conveyor 34. When the system is installed in a hospital pharmacy, the containers 36 are individual patient boxes in which the patient's medication is delivered from the pharmacy to the appropriate floor or nurses' station. The patient boxes preferably are bar coded with a patient identification code. After a patient's prescription is filled and the patient box 36 has all the medicine packages called for in the prescription, a conveyor belt 34 moves the patient box 36 to a check station 80. An operator uses the check station bar code reader 82 to scan the bar code label on the filled patient box 36; see FIG. 15. The patient identification number is taken from the inputted bar code and the prescription of the patient is displayed on the check station screen 84 of the check station console 86 connected to the computer or network of computers 24. The operator then scans individual medicine package bar codes in the patient box 36. The identity of the medicine packages 14 in the patient box 36 is automatically checked for correctness with respect to the patient list on the station screen 84. If the medicine packages 14 in the box 36 are correct, then the patient box is allowed to continue on towards the ultimate destination and the next filled patient box 36 is then checked. If the medicine packages 14 in the patient box 36 are not correct, then it is determined whether the error, whatever that may be, can be corrected. If the correction can be made, then the record on the check station screen 84 is corrected and the procedure for verifying correctness is then repeated. If the problem cannot be corrected, then the patient box 36 can be manually filled or resubmitted to be filled with missing doses by the system and the computer is notified that the patient's prescription has not yet been filled.

In the event that a patient does not take all of the medicine which has been prescribed, unused medicine is returned to the hospital pharmacy in the patient box 36. Typically, patient boxes are transferred in a carrier which contains several patient boxes. This carrier is received at a return station 92. The patient box 36 is first removed from the carrier returned from a nursing unit. An operator uses the return station bar code scanner 91 to scan the bar code on the patient box 36. The nursing unit number and the patient identification number is then parsed from the inputted bar code of the patient box 36. The database is then accessed and the patient dispensing record is retrieved. On the return screen 94, there is displayed for a particular patient at the operator console 96, a list of the medicines ordered and dispensed to the patient. The operator of the return station 92 then scans the identity 16 of the medicine in the patient's box 36 with the return station bar code scanner 91. The

5,593,267

7

medicine packages 14 that are found thereon are verified as being dispensed to the patients. The expiration date of the medicine in the medicine package 14 is then determined. If the expiration date of a medicine in the medicine package 14 has passed, then the medicine package is discarded. If the expiration date has not passed, then the returned medicine package 14 is placed in the supply rack 20. If there is more medicine to be returned, the process is then repeated. If there is no more medicine in the patient box 36 to return, then the return station console 96 is checked to verify the correctness of the medicine returned. If the screen is correct, then the return record is accepted and the database is updated. If the screen 94 is incorrect, then the screen is corrected to correspond to the returned medicine packages 14 and the patient box 36. In this manner, the system will have developed a record of all medication given to each patient. That record can be transferred to a hospital billing system and used for billing purposes. The data can also be input into an inventory monitoring system and used to generate reports or orders for new supplies.

We prefer to provide supply racks 20 which serve as a holding area for returned and new products. These racks are comparable to storage racks 12 and are accessed by the picking means 38 in the same manner. However, products are randomly placed in the supply racks either manually or by the picking means. The supply racks 20 are shown in FIG. 1 at a position where they are accessible to the picking means. However, we prefer that the supply rack be movable. Then it could be moved to other convenient locations, such as near packaging system 98 for refilling.

When packages 14 are to be restocked onto the storage racks 12, the supply rack 20 is placed in a predetermined position alongside the storage racks 12. By being placed in a predetermined position, the X and Y coordinates at which packages may have been placed in return racks 20 are known to the computer 24. Picking means 38 is then positioned for a given package in the return rack. The bar code reader 26 on the end of picking means 38 then scans the identity 16 of the package 14 that is about to be picked. The process of picking the returned packages 14 is the same as occurs with respect to the process of obtaining packages 14 from the storage rack 12. The only difference is that the order of the packages 14 and their identity as they are picked is saved in the computer 24. When the picking means is then moved to the storage racks 12 the computer knows the identity of the respective medicine package 14 on the picking means 38, which is about to be placed back onto the storage racks 12.

The picking means 38 includes at least one gripper assembly illustrated in FIGS. 7 through 12. As shown in FIG. 12, we prefer to provide a support bracket 41 extending from column 44. This bracket can move along column 44 in a vertical direction. A third actuator 43 is attached to bracket 41. Mounting 39 permits movement along rod 41 and movement at bar 43 in a direction normal to rod 41. A picking means 38, which preferably is the gripper assembly of FIGS. 7 through 10, is mounted to actuator 43 through actuator 45, which permits a 180-degree rotation of the gripper assembly. Actuator 43 permits horizontal movement of the picking means 38 in the Z direction.

The gripper assembly is preferably comprised of a housing 49, as shown in FIG. 7 having means for obtaining medicine packages 14, such as a storing rod 48. Assembly 38 also contains means 50 for obtaining a package 14. The obtaining means 50 is slidingly attached to the housing 49 such that it can move in a Z direction, which is perpendicular to the X, Y directions, to pick a package 14 from a support rod 30 in the storage rack 12 or supply rack 20. Identifying

8

means, for example, the bar code reader 26 shown in FIG. 8, is mounted on housing 49 such that it can identify a package 14 to be picked by the obtaining means 50. The obtaining means 50 preferably includes means for producing a suction, such as a vacuum generator 58 controlled by a vacuum sensor 58a which draws a vacuum through vacuum line 55 and vacuum valve 54. The obtaining means 50 also preferably includes an extension rod 52 in fluidic communication with a pneumatic in/out cylinder 53 and associated valve 59, as shown in FIGS. 8 and 11. The extension rod 52 is slidingly attached with respect to the Y and Z directions by means of cylinder 53. A suction is maintained through the vacuum lines 55 when the vacuum valve 54 is activated to supply air to vacuum generator 48. The obtaining means 50 also can include a suction head 56 connected to the extension rod 52 through which a package is picked with suction. The vacuum sensor 58a will sense when a package is properly positioned on the suction head 56, for example, by detecting air flow therethrough. The suction head 56 and carried package are then moved to the storing means, such as the storing rod 48, to deposit the package thereon. Preferably, the storing means is a storing rod 48 which extends from the housing 49 such that the suction head 56 and the extension rod 52 can deposit a package 14 thereon. The obtaining means 49 is also composed of a cylinder 48A which allows an assembly of both holding rod 48 and pusher plate 57 to move in the Y direction. The holding rod 48 is also attached to a cylinder 48B which allows the storage rod to retract and extend in reference to the obtaining means. The pusher plate 57B is also attached to a cylinder 57A which allows the plate to move in the positive Z direction. This action is necessary to push drugs off of the storage bar 48 during the dump process.

The extension rod 52 can move in the Y and Z directions to place a picked package on the storing rod 48 under the action of up/down cylinder 51 and in/out cylinder 53. Valve 57 activates cylinder 51 to move both the cylinder 53 and the extension rod 52 in the Y direction. Valve 59 activates cylinder 53 to move the extension rod in the Z direction. Valve 54 provides air to the vacuum generator 58 so suction in head 56 sufficient to pick a package from a rod 30 of the support structure 28 and then hold it to the suction head 56. The suction head 56 preferably has two faces 60 and 61 through which suction can be drawn. One face 60 is capable of picking a package from a rod 30 of the storage rack and the other face 61 is capable of picking a package from a storing rod 48 of the picking means 38. As shown in FIG. 2, each package preferably has a face 62. The packages are held by the storing rod 48 and the rods 30 of the support structure 38 such that the face 62 of each package is parallel to the Y axis. The outside face 60 is utilized when a package 14 is being removed from a rod 30 in the supply rack, and the inside face 61 is utilized when a package is being removed from the storing rod 48 of the picking means 38.

In an alternative embodiment, the rods 30 extend from the double rod support bar 64 in sets of two as shown in FIG. 14. A first rod 65 and a second rod 66 of each set point essentially in the Z direction, but approximately 180 degrees apart from each other. This embodiment shown in FIG. 15 includes a first tooling support structure 70, a second tooling support structure 72, a first end of arm tooling 67 and a second end of arm tooling 68 that picks the packages 14. Each tooling support structure has at least one column type vehicle 44 and at least one track 42 to support the column 44. Column 44 moves along the respective tracks 42 to pick a given package 14 from a corresponding support rod 30, or restock a support rod 30 with an associated package 14.

5,593,267

9

In the operation of the preferred embodiment in a hospital, doctors visit patients in nursing units and write out medication orders for each patient. A patient is typically placed on a certain medication treatment which requires multiple doses of medication over a period of a day. Some medications are administered at certain times of the day and possibly at intervals of several hours. Patients may also request certain medications on an elective basis for disorders such as headaches. These requests are included in the doctor's order that is sent from the nursing unit to the central pharmacy of the hospital. Once an order is received by the pharmacy, it is checked by registered pharmacists and input into the pharmacy information system. These orders reflect not only orders that are added to a particular patient's treatment, but changes in the medication treatment. The pharmacy information system combines this information with the patient's existing medication schedule and develops a patient medication profile. A fill list is generated from that profile. The fill list is a list of all the medications that must be distributed to all patients for the day. This information is sent to the pharmacy printer where a hard copy is generated.

Means for communication between the pharmacy information system and the present system exist by either tapping the serial data print stream of the pharmacy information system or by a direct bi-directional communication link. The relevant information concerning the patient including drug type, dosage and frequency is placed in the database of the system. The database contains information about which drugs are to be dispensed that day to the patient and all drugs that have been dispensed in the past to the patient. Information from the pharmacy information system is received on an ongoing basis throughout the day. New information can be entered into the database at any time. In addition to the fill list, new orders and patient admittance, discharge and transfer information are received and stored.

FIG. 16 is a flowchart with respect to the processing of a patient prescription. A similar method would be followed for retrieving other stored products. The software for processing an order is started as indicated by box 180. Then the steps indicated by boxes 181 thru 202 are followed. Before a box is loaded onto the conveyors, the operator scans the location barcode and the patient barcode on the patient box. The system then checks its database to ensure that that patient is still at that location. If a new patient has been transferred or admitted to that location, the system automatically generates a barcode label with that patient's identification number on it. This label is then manually applied to the patient box and the box is placed on the conveyor. If no patient is registered in the room, the box is placed aside and the operator proceeds with the next patient box to be filled. When the turn comes for the patient box 36 to be filled, it is shuttled into a position on the conveyor 34 such that the gripper assembly 38 can communicate with the box 36 as shown in FIG. 1. A stationary bar code reader 90 reads the bar code on the patient box 36. The patient identification number is then parsed from the bar code input. This causes the fill list for that particular patient to be retrieved from the database as indicated in box 185. The fill list is converted to data consisting of locations and number of picks. At box 187 the data is then downloaded to a robot controller or gantry control program in order for the computer 24 to control the end of arm tooling 38 such that it knows what packages 14 to obtain and place in the patient box 36.

The system is now ready to pick drugs 188. First, the column-type vehicle 44 goes to the rack where the drug to be selected is stored and stops at the X coordinate of that drug package. The picking means 38 then moves along the

10

column 44 to the Y coordinate of the medicine package to be picked. It is also turned to the proper storage rack 12 which has the desired package 14. These actions may also be performed simultaneously as indicated by the system 189.

When the end of gripper assembly 38 is properly positioned, the bar code reader 26 reads 190 the identity 16 on the medicine package 14 in order to confirm that it is the proper medicine package to be picked with respect to the patient's prescription. After such confirmation the suction rod 52 extends in the Z direction by pneumatic cylinder 53 such that the outside suction face 60 contacts the package face 62. Valve 54 activates a suction through the air lines 55 such that a suction drawn through the suction face 60 grabs the medicine package 14 sensor 58a detects when the contact is proper between the suction face 60 and the medicine package 14, as indicated at box 192 of FIG. 16. Then the extension rod 52 retracts from the rod 30 of the support structure 28, pulling the medicine package 14 with it. Once the medicine package 14 is clear of the rod 30, the extension rod 52 positions the medicine package 14 that it has obtained, upon the storing rod 48 as indicated by box 193.

The system now prepares for the next pick. This operation is indicated by box 194 includes several actions. Once the package 14 is on the storage rod 48, the vacuum valve 54 terminates the suction and the medicine package is released from the suction face 60. The vacuum valve 57 then activates the cylinder 51 such that the extension rod 52 (and cylinder 53) are moved in the Y direction so the bottom of the suction head 56 is above the package 14 on the storing rod 48. The extension rod is then moved forward in the Z direction and downward in the Y direction by the respective valves and cylinders to clear the package and position the suction head 56 for the next pick. In an alternative embodiment the storage rod 48 is moved down rather than moving suction head up 56 to provide clearance between them when the suction head moves in a Z direction. The computer 24 then notes that the medicine package 14 with the appropriate medicine has been picked.

The final series of operations indicated by boxes 195 thru 202 involves a comparison of the drug identified by the reader as having been picked with the list of drugs to be selected. If an incorrect drug was selected the gripper assembly moves to a reject area, places the incorrect drug there, removes that drug from the list of items selected and is ready to pick more drugs. If the correct drug was selected the system records that fact and is ready to pick more drugs. The process is repeated for all the medicine identified in the patient's prescription until all of the medicine packages 14 needed have been picked.

The gripper assembly containing all desired packages then positions itself so that it is over the patient box 36. The gripper assembly 38 then positions the outside suction face 60 behind the medicine packages on the storing rod 48 that have been collected. Packages can be dropped into the patient box by retracting rod 48 by actuating cylinder 48A to the position shown in FIG. 10. The storage rod 48 is then moved into the negative Z direction so that the suction face no longer holds the packages in place. The cylinder 48B then causes the storage rod 48 to be retracted which will cause the drugs to be dumped into the box.

Alternatively, the suction head may be stroked forward in the Z direction so that all packages 14 are pushed off the storing rod 48 into the patient box 36. Movement of the suction head is accomplished by the vacuum system. Vacuum valve 57 activates the cylinder 51 to retract in the

5,593,267

11

positive Y direction such that the bottom of the suction head 56 is above the tops of the packages 14 on the storing rod 28. Then vacuum valve 59 activates cylinder 53 to retract the extension rod 52 in the negative Z direction such that the outer suction face 60 is behind all of the medicine packages 14 on the storing rod 48. Vacuum valve 57 is then activated such that the suction head 56 is dropped back down in the negative Y direction to be behind the packages 14. Finally, vacuum valve 59 is activated such that the extension rod 52 is extended in the positive Z direction and the front suction face 60 pushes all packages 14 off the storing rod 48 into the patient box 36.

In the event that the wrong medicine package 14 was scanned and is picked, or the medicine has expired, then picking means 38 will have placed those packages in a reject or return area, where the medicine package 14 can be disposed. A pharmacy technician will then manually sort the drugs in the reject area, removing expired drugs and placing the others in the supply rack in order that they might be returned to their correct location in the system. The process is then repeated for the next drug on the prescription list that has not yet been obtained.

The flow chart of FIG. 17 is the process of checking the selected packages which have been placed in a patient box. Such checking is performed at the check station. The process begins by calling up the check program indicated by box 105. The bar code on the patient box is scanned 106 and the patient number portion of the bar code is identified 107. The patient number is displayed 108 on the screen at the check station. Then the packages in the patient box are scanned 109. The identification of the packages is compared with the list of drugs that had been ordered for the patient in a verify step 110. If correct packages are in the box, the checking of the box is complete and the system is ready for the next box 111. If the packages in the box do not match the order the system determines if the problem can be corrected 112. If so, the correction is made 113 and the verify step is repeated. If not, the box is dumped 114 and the order is recorded as not filled or the box is resubmitted and the missing medications are filled by the system. For example, should the system determine that an item is missing it may either create a modified list and send the box on with a modified list or it may instruct the picking means to get the missing item.

The return process is shown in the flow chart of FIG. 18. The process starts 115 by calling up the return program. The patient box containing the returned items must be positioned so that the patient box can be scanned 116 for the patient identification number 117 and the nursing unit from which the box was returned. If the box has come from the proper nursing unit the system retrieves the patient dispensing record 120 and displays that record 121 for the operator. Next the packages are scanned 122. The system preferably verifies 123 that the scanned packages had been sent to the patient making the return. Next the system checks each package 124 to determine if the drug is useful or if it has expired, been recalled or otherwise should not be returned to the supply rack. If no, the package is discarded 125. If yes, the package is returned to the supply rack 126. If more drugs remain in the box the process is repeated 127. If no packages remain, the system may further process the list of returned packages 128 to modify the patient's record, update the system inventory log or display the list of returns for review by the operator.

The process of restocking returned or new packages to the storage rack is diagramed in FIG. 19. These packages are manually placed on a return or supply rack and the program for restocking is called up 130. The program causes the

12

picking means to be positioned 131 so that the gripping assembly can pick packages from the return or supply rack. The bar code on the first package is scanned 132 and the portion of the scanned bar code which identifies the drug is found 133. The system then checks the database 134 for the location in the storage rack which has been designated for the identified product. The system extends the vacuum head 135 to engage the package. Suction is applied 136 and a suction sensor is checked. This should cause the package to be held by the gripper assembly which fact will be confirmed by the sensor 137. The gripper assembly positions the package 138 on the storage rod 48 in the gripper assembly. Then the suction is released and the gripper assembly is ready to place additional packages on the storage rod. If more packages remain on the return or supply rack 140, the process is repeated until all packages are on the storage rod or the storage rod is full. The gripper assembly is then moved to a position 141 in front of the storage rack to properly place the outermost package on the storage rod. That package is grasped 142 using back suction cups 61 (see FIG. 31). The extension rod 52 is retracted in the negative Z direction such that the inside suction face 61 is in contact with the medicine package 14. The sensing means 58 determines whether proper contact is made. Then the extension rod 52 is moved a predetermined distance in the positive Z direction 143 to place the medicine package over a rod 30 of support structure 28. Vacuum valve 54 is then deactivated 144 to stop suction, allowing the medicine package 14 on the suction face 61 to drop away therefrom. The extension rod 52 then moves in the negative Z direction towards the medicine packages 14 on the storing rod 48 to repeat the process. While it moves back to obtain another medicine package 14 the sensor 58 trips when contact is made. The process can be repeated 141 until there are no more medicine packages 14 on the storing rod 48. The computer 24 knows when to stop returning packages since it knew how many packages had been placed on the storing rod 48.

In the event that all drugs to be returned or restocked at a particular storage location are identical the process is some what different. Packages are picked from the supply rack in the method detailed above. The gripper assembly is then moved to a position in front of the storage rack to place the remaining packages on the storage rod. Cylinder 48A causes the assembly of storing rod 48 and pusher plate 57B to move in the negative Z direction. Storage rod 48 is co-linear with a rod 30 of support structure 28. Pusher plate 57B then moves in the positive Z direction pushing all remaining packages on storage rod 48 on to rod 30.

The restocking of the storage racks 12 can be carried out during the evening when packages are not being gathered to fill orders. Alternatively, restocking can be carried out simultaneously with picking if the system 10 has a pair of rods as shown in FIG. 14, a first end of arm tooling 67, second end of arm tooling 68 and a first tooling structure 70 and a second tooling structure 72 is utilized, as shown in FIG. 15. While, for instance, the first end of arm tooling 67 is picking medicine packages 14 to fill a patient's prescription the second end of arm tooling 68 can be restocking the second side of the storage area 12.

Although the invention has been described in detail in the foregoing embodiments for the purpose of illustration, it is to be understood that such detail is solely for that purpose and that variations can be made therein by those skilled in the art without departing from the spirit and scope of the invention except as it may be described by the following claims.

5,593,267

13

We claim:

1. A system for selecting and delivering medicine packages from a holding means to fill orders comprising:

a) holding means comprised of a frame having a plurality of support rods each support rod sized for holding a plurality of medicine packages, each rod associated with a given medicine and holding medicine packages with only the same medicine each support rod having a distinct X, Y coordinate location;

b) means for picking medicine packages from the support rods in accordance with instructions received from a computer, said picking means being able to access the holding means; the picking means capable of holding a plurality of medicine packages which have been picked from the holding means;

c) a computer having a database containing an X, Y coordinate location for all packages in the holding means, the computer able to receive orders for packages and able to direct the means for picking packages; and

d) a supply structure having a plurality of supply support rods which extend from said structure to form an X, Y coordinate system, with each supply support rod and medicine package thereon having a unique X and Y coordinate, said picking means disposed to have access to said structure such that a given medicine can be picked by the picking means to fill a patient's prescription, or a given medicine package in the supply structure can be picked by the picking means to restock an associated rod in the holding means.

2. A system as described in claim 1 including a conveyor in communication with the picking means; and patient prescription boxes which are moved by the conveyor to the picking means such that the picking means provides the medicine packages it has picked to fill a given prescription to an associated box.

3. A system as described in claim 1 wherein the picking means includes at least one gripper that picks the medicine packages; and a tooling support structure having at least one column supporting the column such that the picking means moves along the column as the column moves along the row to pick a given medicine package hanging from a corresponding support rod, or restock a given medicine package on a corresponding support rod; and means for moving the column with respect to the row, said moving means controlled by the computer.

4. A system as described in claim 3 wherein the picking means is comprised of:

a housing;

means for storing a plurality of medicine packages attached to the housing;

means for obtaining a medicine package, said obtaining means slidingly attached to the housing such that it can move in a Z direction, which is perpendicular to the X and Y directions, to pick a medicine package from a support rod when the housing is adjacent to and aligned

14

with a support rod, and can move in the Z direction to place a picked package on the storing means; and

identifying means attached to the at least one gripper such that it can identify a package to be picked by the obtaining means, each of said packages having an identity disposed on them which can be read by the identifying means.

5. A system described in claim 4 wherein the identity of each package is a bar code, and the identifying means includes a bar code reader disposed on the obtaining means.

6. A system as claimed in claim 1 wherein the support rods extend from back rod supports within the frame in sets of two, with a first rod and a second rod on each set pointing essentially in a Z direction which is perpendicular to the X and Y directions, but approximately 180° apart from each other.

7. A system for selecting and delivering packages from a holding means to fill orders comprising:

a) holding means comprised of a frame having a plurality of support rods for holding packages each support rod having a distinct X, Y coordinate location and holding a plurality of packages, all of those packages on each support rod having similar contents;

b) picking means for picking packages from the support rods in accordance with instructions received from a computer, the picking means being able to access the holding means and having

a housing;

means for storing packages attached to the housing;

means for producing a suction;

a suction rod in fluid connection with the suction producing means, said suction rod slidingly attached with respect to the Y and Z directions to the housing and maintaining a suction therethrough when the suction producing means is activated by which a medicine package is picked with suction; and

means for sensing when a package is properly positioned such that the package rod is then moved to the storing means and deposits the package thereon.

8. A system as described in claim 7 wherein the storing means is a storing rod which extends from the housing such that the suction head and the suction rod can deposit a package thereon.

9. A system as described in claim 8 wherein the tooling includes valves and pneumatic cylinders for moving the suction rod in the Y and Z direction; and a vacuum pump for providing suction to the suction rod and support head sufficient to pick a package from a rod of the support structure and then hold it to the suction head.

10. A system as described in claim 9 wherein the suction head has two faces through which a suction can be drawn, each face capable of picking a package.

11. A system as described in claim 10 wherein the two faces are parallel to each other and are parallel to the x-axis, and wherein each package has a face and the package are held by the storing rod and the rods of the support structure such that the face of each package is parallel to the x-axis.

* * * * *

MA000306

PATENT APPLICATION SERIAL NO. 09/452646

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

280 SB 06/12/95 08452646                    1 201    365.00 CK 950441

PTO-1556
(5/87)

BAR CODE LABEL

## U.S. PATENT APPLICATION

| SERIAL NUMBER | FILING DATE | CLASS | GROUP ART UNIT |
|---|---|---|---|
| 08/452,646 | 05/25/95 RULE 60 | 414 | 3107 |

APPLICANT

SEAN C. MCDONALD, PITTSBURGH, PA; ELLEN J. HERTZ, CLEMMONS, NC; JAMES A. SMITH, ALLISON PARK, PA; GREGORY TOTO, SANTA CRUZ, CA.

```
**CONTINUING DATA*******************
     VERIFIED      THIS APPLN IS A DIV OF  08/295,495 08/25/94
                   WHICH IS A CON OF  07/871,832 04/21/92
                   WHICH IS A CIP OF  07/469,217 01/24/90 ABN
```

```
**FOREIGN/PCT APPLICATIONS***********
     VERIFIED
```

***** SMALL ENTITY *****

| STATE OR COUNTRY | SHEETS DRAWING | TOTAL CLAIMS | INDEPENDENT CLAIMS | FILING FEE RECEIVED | ATTORNEY DOCKET NO. |
|---|---|---|---|---|---|
| PA | 19 | 12 | 1 | $365.00 | 950441 |

ADDRESS

LYNN J ALSTADT
BUCHANAN INGERSOLL
56TH FLOOR
600 GRANT STREET
PITTSBURGH PA 15219

TITLE

AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA

This is to certify that annexed hereto is a true copy from the records of the United States Patent and Trademark Office of the application which is identified above.

By authority of the
COMMISSIONER OF PATENTS AND TRADEMARKS

Date                              Certifying Officer

MA000308

*19*

*365.00  201  A*

*08/452646*
*V. Williams*
*4-12-95*

## TITLE

## AN AUTOMATED SYSTEM FOR SELECTING
## AND DELIVERING PACKAGES FROM A STORAGE AREA

## Related Application

This application is a division of Sn 08/295495 filed 8/25/94, now Pat No. 5468110 which is a continuation of Sn 07/871892X now abandoned which ~~This~~ is a continuation-in-part of our United States patent application Serial No. 07/469,217 filed January 24, 1990, now abandoned.

## FIELD OF THE INVENTION

10      The present invention relates to an automated system for selecting stored articles.  More specifically, the present invention relates to an automated system for filling prescriptions and restocking medicines in a pharmacy.

15      ## BACKGROUND OF THE INVENTION

        Many industries store products or parts in a storeroom or storage area and repeatedly select some of the stored items to fill orders or for other uses.  Such items may range from small

20      electronic components used by a manufacturer of electronic devices to automotive parts, which vary in size, used by service departments of automobile dealerships.  Usually one or more people are employed to retrieve the requested items and to restock new and returned items.  These individuals may also be

25      required to confirm that the requested items are compatible with

*2*

MA000309

one another and with previously supplied items.  If the supplied
items are to be billed to a customer or charged to particular
internal accounts, the list of items is first written by the
requestor, and rewritten or entered into a computer database by
5   the storeroom attendant to create an invoice, supply list or
other document.  In some instances, further generations of the
list are made by installers, users or billing clerks.  Such
methods have built-in opportunities for mistakes every time a
list is rewritten and are less efficient than automated systems.
10   Moreover, as labor costs rise and the size of inventory needed to
be stored expands, the conventional storeroom and parts
department become more and more expensive.

Some businesses have attempted to control costs by
limiting inventory through standardization of parts.  But such
15   limits are not possible or desirable in some industries,
particularly in a hospital pharmacy.

Currently, in large hospital environments, doctors visit
patients in nursing units and write out medication orders for
each patient.  A patient is typically placed on a certain
20   medication which may require multiple doses of medication be
administered over a period of a day.  Some medications are
administered at certain times of the day and possibly at
intervals of several hours.  Patients may also request certain
medications on an elective basis for disorders such as headaches.
25   These requests are included in the doctor's order that is sent
from the nursing unit to the central pharmacy of the hospital.

- 2 -

Once an order is received by the pharmacy, it is checked by registered pharmacists and input into the pharmacy information system. These orders reflect not only orders that are added to a particular patient's treatment, but changes in the medication

5    treatment. The pharmacy information system combines this information with the patient's existing medication schedule and develops a patient medication profile. A fill list is generated from that profile. The fill list is a list of all the medications that must be distributed to all patients for the day.

10   This information is sent to the pharmacy printer where a hard copy is generated. Frequently, that hard copy or a copy thereof is sent to the billing department so that the medication can be charged to the patient or his insurer.

At this point, the drugs for a particular patient are

15   hand-picked by either a pharmacist or a pharmacy technician and placed in the particular patient's designated box. A registered pharmacist must then check the accuracy of the patient order before it leaves the pharmacy. Individual patient boxes are then loaded into a large cassette and delivered to the nursing unit.

20   Approximately 30% of the drugs dispensed each day are returned to the pharmacy unused. Since each drug is individually packaged, the drugs must be returned to the pharmacy stock. Patients are then credited for unused medication. This return and crediting process is a very time-consuming task and requires

25   significant amount of pharmacy manpower.

- 3 -

In a typical large pharmacy, up to 35 pharmacists and pharmacy technicians are responsible for all aspects of the unit dose dispensing task. Because this process is done manually, a certain amount of error occurs. Studies have estimated that a half-percent error rate is typical in a large hospital. Since a hospital may dispense over 6,000 doses each day, this error rate leads to a significant number of missed or incorrect doses.

Several companies have tried to automate this process through various approaches to the problem. Meditrol utilizes a vending machine approach to dispense the unit dose medications. Each nursing unit must have its own stock of prescription drugs. Nurses key in a patient ID and the drugs for that patient are then dispensed from the vending machine. This system is very expensive because of the necessity of purchasing a machine for each nursing unit. Also, restocking each machine is a very time-consuming task. Implementation of this system requires a complete modification of the current drug dispensing process which many hospitals are reticent to undertake. The system claims no labor-saving advantages from its implementation. This system is covered under United States Patent No. 3,917,045 titled "Drug Dispensing Apparatus" and dated November 11, 1975.

Baxter Travenol offers a dispensing system from Samsung, a Korean company, which dispenses bulk solids into a package which is dispensed to the pharmacist. This system only dispenses the 200 most frequently used solids. A typical hospital pharmacy can contain over 1,500 different medications, many in liquid,

- 4 -

syringe or bottle form. These medications cannot be automatically dispensed by this system, but must be manually selected by the pharmacist.

5      Neither system allows the dispensed medications to be automatically returned to the storage area.

     There is a need for an automated system which is able to dispense all dosage forms currently contained in a hospital pharmacy. Medicines should be automatically dispensed by the system per a patient order and placed in individual patient 10   medication boxes for a pharmacist to check. Each drug and each patient box should be individually bar coded so that the accuracy of the dispensing process can be automatically checked by the system. Once drugs are returned to the pharmacy, the system should automatically return each drug to its proper location in 15   inventory and credit the patient's account for the return. One system should also keep a running inventory and notify the user whenever inventory of a particular item drops below a preset level and whether the shelf life of an item has passed. With such a system, a hospital can recognize significant labor 20   savings, as well as savings based on improved accuracy in the dispensing function and better tracking of inventory and expired medications.

– 5 –

MA000313

## SUMMARY OF THE INVENTION

We provide an automated method and apparatus for selecting and restocking stored items, which is particularly useful for filling patient medication orders in a hospital pharmacy. The stored items must be packaged to be held in a storage rack. Preferably, each package contains a bar code corresponding to the package contents. The items are arranged in a main storage rack so that like items are in the same location and a predetermined location is provided for every item.

We prefer to provide a second rack or a designated portion of the main storage rack for receipt of new or returned items to be restocked. Such items can be randomly placed on this supply station for transmittal to their respective predetermined locations on the storage rack.

We also provide a means for picking items from and placing items in the storage rack and the supply station. The picking means preferably is comprised of a gripper assembly mounted on a transport vehicle which moves along a track or other controlled route. The gripper assembly preferably has a movable rod or other carrier for holding selected items, at least one vacuum head and associated controls for gripping and moving selected items. We prefer to provide a bar code reader for reading item packages.

We also prefer to provide a conveyor on which boxes, patient medication trays or drawers can be placed. The conveyor

- 6 -

MA000314

is positioned so that the picking means can place selected items
into appropriate containers on the conveyor.

We provide a processing unit with associated memory and
data entry peripherals.  This computer system receives the list
5    of requested items, directs the picking means, checks the items
selected and prepares reports.  Data can be entered manually
through a keyboard or bar code reader or electronically through
an RS 232 port.  Reports may be printed, displayed on a console
or transmitted to a memory or another computer for later use.

10    Other details and advantages of our method and apparatus
will become apparent from the description of the preferred
embodiments shown in the drawings.


## BRIEF DESCRIPTION OF THE DRAWINGS

15

In the accompanying drawings, the preferred embodiments
of the invention and preferred methods of practicing the
invention are illustrated in which:

Figure 1 is a schematic representation of our present
20    preferred system.

Figure 2 is a side view of a present preferred package.

Figure 3 is a perspective view of one present preferred
storage rack.

Figure 4 is a perspective view of a portion of a second
25    preferred storage rack.

- 7 -

Figure 5 is a perspective view of a portion of a third preferred storage rack.

Figure 6 is a schematic representation showing the storage rack, conveyor and movable support structure which holds a gripper assembly.

Figure 7 is a schematic view of a present preferred gripper assembly.

Figure 8 is a front view of a present preferred gripper assembly.

Figure 9 is a side view of the gripper assembly of Figure 7 with the storing rod in a raised and extended position.

Figure 10 is a side view of the gripper assembly of Figure 8 with the storing rod in a lowered and partially retracted position.

Figure 11 is a diagram showing a preferred vacuum and pressure line for the gripper assembly.

Figure 12 is a schematic representation of the gripper assembly mounted on a vehicle.

Figure 13 is a perspective view of a rod with packages thereon connected to a support bar.

Figure 14 is a schematic representation of a side view of a first rod and a second rod and having packages thereon attached to a portion of the support bar.

Figure 15 is a schematic overhead view of an alternative system for filling an order.

Figure 16 is a flowchart of the filling process.

- 8 -

Figure 17 is a flowchart of the check process.

Figure 18 is a flowchart of the return process.

Figure 19 is a flowchart of the restocking process.

5               <u>DESCRIPTION OF THE PREFERRED EMBODIMENT</u>

Referring now to the drawings wherein like reference numerals refer to similar or identical parts throughout the several views, and more specifically to Figure 1 thereof, there

10  is shown a schematic representation of a present preferred system 10 for filling orders, such as prescriptions for patients. The system 10 contains storage racks 12 for handling packages. We prefer to provide at least two storage racks 12 and arrange them parallel to one another. Various storage rack designs can be

15  used and certain present preferred storage racks are shown in Figures 3, 4 and 5. In our system, each package preferably contains only one product, although the product may consist of two or more related items, such as nut and bolt. When our system is installed in a hospital pharmacy, each package preferably

20  contains a single dose of medicine.

A present preferred package 14 is illustrated in Figure 2. Although the package could be a blister card or box, we prefer to use a clear plastic bag having a hole 15 to permit the package to be hung on a rod 30, 48, 65 or 66 shown in Figures

25  3, 6 and 14. Each package preferably has a bar code 16 and a written description 17, which identify the contents of the

\|Ü

- 9 -

package. A white area 17a can be created on the clear plastic
bag over which the written description 17 can be printed, stamped
or even handwritten. The bar code and the written description
may include not only the name of the product, but also its

5    quantity, weight, instructions for use and expiration date. We
also prefer to position the bar code and label on the package so
that there is a large unmarked area 62 through which one can see
the contents of the package. Figure 2 represents a clear plastic
bag for a unit dose of medicine. We can use a bag having a

10   perforation line for easy opening or a recloseable bag having an
interlocking rib type seal. The perforation line or rib seal is
located along line 13. This type of bag is useful in a hospital
pharmacy which buys medicines in large or bulk quantities and
must repackage the drugs in individual dose packages. Package 14

15   can be any desired size. We have used a rectangular package
having dimensions indicated by arrows A, B, C and D, wherein A is
3.5 inches, B is 1.0 inch, C is 3.0 inches and D is 0.1875
inches. Alternatively, the package 14 can have A equal 5.0
inches, B equal 1.25 inches, C equal 5.0 inches and D equal

20   0.1875 inches.

An individual dose of medicine can be manually fed into
an automated packaging system 98, as shown in Figure 1, which
automatically seals the package and prints a bar code and
typewritten label directly on the package. In a preferred

25   embodiment, we utilize the H-100™ packaging system as
manufactured by Automated Packaging Systems of Twinsburg, Ohio.

- 10 -

With the addition of the Accu-Print™ 100 Programmable In-Line Direct Transfer Imprinter, also manufactured by Automated Packaging Systems, a bar code can be printed directly on the medicine package.

5      A storage rack 12, which may also be used for a supply station, is shown in Figure 3. This rack is configured to hold packages of the type illustrated in Figure 2. The rack has a rectangular frame 28, having an open front and back. Running across the back are a plurality of back rod supports 32 from

10     which the rods 30 extend. The frame 28 with rod supports 32 forms an X, Y coordinate system with each rod 30 and medicine packages 14 therein having a unique X, Y coordinate. Packages are placed in the storage rack so that each product is located at a known X, Y coordinate. Since every product is in a known X, Y

15     location, it is possible to direct an automatic picking means to any product location to select a desired item. The packages are segregated within the storage rack so that all packages in any given location have the same contents.

Although we prefer to use racks in which packages are

20     hung on rods, other types of racks can be used for storage racks and supply stations in our system. In Figure 4, we show the upper portion of a rack having a rectangular frame 21 with an open front and closed back 23. Attached to the back 23 are sets of brackets 25 positioned to hold packages 27. To be held

25     securely in this rack, such packages must be fairly rigid. Blister cards and boxes can be used. If desired, a hole 15 could

- 11 -

be provided in the packages to permit them to be carried on a rod.

A top portion of another suitable rack having a rectangular frame 21, open front and closed back 23 is shown in Figure 5. This rack has a set of shelves 29, which may be inclined toward back 23. A set of dividers 31 separates groups of packages 27.

The racks of Figures 3, 4 and 5 have two important common features. First, the packages are held in locations having known X, Y coordinates. Those coordinates could be single X, Y values as may correspond to the position of the package holes 15 or a group of X, Y values defining an entire package. Second, there is sufficient clearance between packages to allow automated picking means to select, grab and replace individual packages.

Referring now to Figures 1 and 6, we provide storage racks 12 on either side of a track 42 over which a vehicle 44 may travel. The vehicle may be column-shaped as in Figure 6. Many types of drive systems could be used to propel the vehicle. For example, one could provide a motor indicated by block 47 to propel wheels (not shown) at the base of the vehicle. Alternatively, one may use a chain or cable running through the track 42 to pull the vehicle to any desired location. Whatever drive system is used should be capable of moving the vehicle to positions along the track which correspond to the X coordinates of the packages within the rack. Thus, computer 24, which



- 12 -

MA000320

controls the drive system, can direct the vehicle 44 to a
location in front of the package or packages to be selected.

Packages are selected by a picking means 38, preferably
of the type illustrated in Figures 7 though 10. The picking
5    means is mounted on column-shaped vehicle 44 in a manner to allow
controlled vertical movement along that column. In this manner,
the picking means 38 can be positioned at locations along column
44 which correspond to the Y coordinates of packages to be
selected. The picking means 38 is controlled by a computer 24,
10    or local area network of computers, having a database. The
database has the order to be filled and a record of the
predetermined locations 18 of each different product in the
storage rack 12. The computer 24 guides the picking means 38
based on information contained in the database, such that the
15    picking means 38 picks a package 14 according to the order to be
filled. The picking means 38 can also include means, such as a
bar code reader 26 as shown in Figure 7, for determining the
identity 16 of a package 14 in the storage rack 12 or in a supply
rack 20 and providing its identity 16 to the computer 24. The
20    computer 24 guides the picking means 38 to select the desired
packages and deliver them to a desired location. In the system
of Figures 1 and 6, the packages are delivered to containers 36
located on conveyor 34. When the system is installed in a
hospital pharmacy, the containers 36 are individual patient boxes
25    in which the patient's medication is delivered from the pharmacy
to the appropriate floor or nurses' station. The patient boxes

14

- 13 -

preferably are bar coded with a patient identification code. After a patient's prescription is filled and the patient box 36 has all the medicine packages called for in the prescription, a conveyor belt 34 moves the patient box 36 to a check station 80.

5 An operator uses the check station bar code reader 82 to scan the bar code label on the filled patient box 36, see Figure 15. The patient identification number is taken from the inputted bar code and the prescription of the patient is displayed on the check station screen 84 of the check station console 86 connected to

10 the computer or network of computers 24. The operator then scans individual medicine package bar codes in the patient box 36. The identity of the medicine packages 14 in the patient box 36 is automatically checked for correctness with respect to the patient list on the station screen 84. If the medicine packages 14 in

15 the box 36 are correct, then the patient box is allowed to continue on towards the ultimate destination and the next filled patient box 36 is then checked. If the medicine packages 14 in the patient box 36 are not correct, then it is determined whether the error, whatever that may be, can be corrected. If the

20 correction can be made, then the record on the check station screen 84 is corrected and the procedure for verifying correctness is then repeated. If the problem cannot be corrected, then the patient box 36 can be manually filled or resubmitted to be filled with missing doses by the system and the

25 computer is notified that the patient's prescription has not yet been filled.

- 14 -

In the event that a patient does not take all of the medicine which has been prescribed, unused medicine is returned to the hospital pharmacy in the patient box 36. Typically, patient boxes are transferred in a carrier which contains several

5    patient boxes. This carrier is received at a return station 92. The patient box 36 is first removed from the carrier returned from a nursing unit. An operator uses the return station bar code scanner 91 to scan the bar code on the patient box 36. The nursing unit number and the patient identification number is then

10   parsed from the inputted bar code of the patient box 36. The database is then accessed and the patient dispensing record is retrieved. On the return screen 94, there is displayed for a particular patient at the operator console 96, a list of the medicines ordered and dispensed to the patient. The operator of

15   the return station 92 then scans the identity 16 of the medicine in the patient's box 36 with the return station bar code scanner 91. The medicine packages 14 that are found thereon are verified as being dispensed to the patients. The expiration date of the medicine in the medicine package 14 is then determined. If the

20   expiration date of a medicine in the medicine package 14 has passed, then the medicine package is discarded. If the expiration date has not passed, then the returned medicine package 14 is placed in the supply rack 20. If there is more medicine to be returned, the process is then repeated. If there

25   is no more medicine in the patient box 36 to return, then the return station console 96 is checked to verify the correctness of

- 15 -

MA000323

the medicine returned. If the screen is correct, then the return record is accepted and the database is updated. If the screen 94 is incorrect, then the screen is corrected to correspond to the returned medicine packages 14 and the patient box 36. In this manner, the system will have developed a record of all medication given to each patient. That record can be transferred to a hospital billing system and used for billing purposes. The data can also be input into an inventory monitoring system and used to generate reports or orders for new supplies.

We prefer to provide supply racks 20 which serve as a holding area for returned and new products. These racks are comparable to storage racks 12 and are accessed by the picking means 38 in the same manner. However, products are randomly placed in the supply racks either manually or by the picking means. The supply racks 20 are shown in Figure 1 at a position where they are accessible to the picking means. However, we prefer that the supply rack be movable. Then it could be moved to other convenient locations, such as near packaging system 98 for refilling.

When packages 14 are to be restocked onto the storage racks 12, the supply rack 20 is placed in a predetermined position alongside the storage racks 12. By being placed in a predetermined position, the X and Y coordinates at which packages may have been placed in return racks 20 are known to the computer 24. Picking means 38 is then positioned for a given package in the return rack. The bar code reader 26 on the end of picking

- 16 -

means 38 then scans the identity 16 of the package 14 that is about to be picked. The process of picking the returned packages 14 is the same as occurs with respect to the process of obtaining packages 14 from the storage rack 12. The only difference is

5   that the order of the packages 14 and their identity as they are picked is saved in the computer 24. When the picking means is then moved to the storage racks 12 the computer knows the identity of the respective medicine package 14 on the picking means 38, which is about to be placed back onto the storage racks

10  12.

The picking means 38 includes at least one gripper assembly illustrated in Figures 7 through 12. As shown in Figure 12, we prefer to provide a support bracket 41 extending from column 44. This bracket can move along column 44 in a vertical

15  direction. A third actuator 43 is attached to bracket 41. Mounting 39 permits movement along rod 41 and movement at bar 43 in a direction normal to rod 41. A picking means 38, which preferably is the gripper assembly of Figures 7 through 10, is mounted to actuator 43 through actuator 45, which permits a

20  180-degree rotation of the gripper assembly. Actuator 43 permits horizontal movement of picking means 38 in the Z direction.

The gripper assembly is preferably comprised of a housing 49, as shown in Figure 7 having means for storing medicine packages 14, such as a storing rod 48. Assembly 38 also

25  contains means 50 for obtaining a package 14. The obtaining means 50 is slidingly attached to the housing 49 such that it can



- 17 -

move in a Z direction, which is perpendicular to the X, Y directions, to pick a package 14 from a support rod 30 in the storage rack 12 or supply rack 20. Identifying means, for example, the bar code reader 26 shown in Figure 8, is mounted on

5    housing 49 such that it can identify a package 14 to be picked by the obtaining means 50. The obtaining means 50 preferably includes means for producing a suction, such as a vacuum generator 58 controlled by a vacuum sensor 58a which draws a vaccum through vacuum line 55 and vacuum valve 54. The obtaining

10   means 50 also preferably includes an extension rod 52 in fluidic communication with a pneumatic in/out cylinder 53 and associated valve 59, as shown in Figures 8 and 11. The extension rod 52 is slidingly attached with respect to the Y and Z directions to the housing 49. A suction is maintained through the vacuum lines 55

15   when the vacuum valve 54 is activated to supply air to vacuum generator 48. The obtaining means 50 also can include a suction head 56 connected to the extension rod 52 through which a package is picked with suction. The vacuum sensor 58a will sense when a package is properly positioned on the suction head 56, for

20   example, by detecting air flow therethrough. The suction head 56 and carried package are then moved to the storing means, such as the storing rod 48, to deposit the package thereon. Preferably, the storing means is a storing rod 48 which extends from the housing 49 such that the suction head 56 and the extension rod 52

25   can deposit a package 14 thereon. The obtaining means 49 is also composed of a cylinder 48A which allows an assembly of both



- 18 -

holding rod 48 and pusher plate 57 to move in the Y direction. The holding rod 48 is also attached to a cylinder 48B which allows the storage rod to retract and extend in reference to the obtaining means. The pusher plate 57B is also attached to a

5 cylinder 57A which allows the plate to move in the positive Z direction. This action is necessary to push drugs off of the storage bar 48 during the dump process.

The extension rod 52 can move in the Y and Z directions to place a picked package on the storing rod 48 under the action

10 of up/down cylinder 51 and in/out cylinder 53. Valve 57 activates cylinder 51 to move both the cylinder 53 and the extension rod 52 in the Y direction. Valve 59 activates cylinder 53 to move the extension rod in the Z direction. Valve 54 provides air to the vacuum generator 58 to suction in head 56

15 sufficient to pick a package from a rod 30 of the support structure 28 and then hold it to the suction head 56. The suction head 56 preferably has two faces 60 and 61 through which suction can be drawn. One face 60 is capable of picking a package from a rod 30 of the storage rack and the other face 61

20 is capable of picking a package from a storing rod 48 of the picking means 38. As shown in Figure 2, each package preferably has a face 62. The packages are held by the storing rod 48 and the rods 30 of the support structure 38 such that the face 62 of each package is parallel to the Y axis. The outside face 60 is

25 utilized when a package 14 is being removed from a rod 30 in the supply rack, and the inside face 61 is utilized when a package is being removed from the storing rod 48 of the picking means 38.

- 19 -

In an alternative embodiment, the rods 30 extend from the double rod support bar 64 in sets of two as shown in Figure 14. A first rod 65 and a second rod 66 of each set point essentially in the Z direction, but approximately 180 degrees apart from each other. This embodiment shown in Figure 15 includes a first tooling support structure 70, a second tooling support structure 72, a first end of arm tooling 67 and a second end of arm tooling 68 that picks the packages 14. Each tooling support structure has at least one column type vehicle 44 and at least one track 42 to support the column 44. Column 44 moves along the respective tracks 42 to pick a given package 14 from a corresponding support rod 30, or restock a support rod 30 with an associated package 14.

In the operation of the preferred embodiment in a hospital, doctors visit patients in nursing units and write out medication orders for each patient. A patient is typically placed on a certain medication treatment which requires multiple doses of medication over a period of a day. Some medications are administrated at certain times of the day and possibly at intervals of several hours. Patients may also request certain medications on an elective basis for disorders such as headaches. These requests are included in the doctor's order that is sent from the nursing unit to the central pharmacy of the hospital. Once an order is received by the pharmacy, it is checked by registered pharmacists and input into the pharmacy information system. These orders reflect not only orders that are added to a

particular patient's treatment, but changes in the medication
treatment.  The pharmacy information system combines this
information with the patient's existing medication schedule and
develops a patient medication profile.  A fill list is generated

5    from that profile.  The fill list is a list of all the
medications that must be distributed to all patients for the day.
This information is sent to the pharmacy printer where a hard
copy is generated.

Means for communication between the pharmacy information

10    system and the present system exist by either tapping the serial
data print stream of the pharmacy information system or by a
direct bi-directional communication link.  The relevant
information concerning the patient including drug type, dosage
and frequency is placed in the database of the system.  The

15    database contains information about which drugs are to be
dispensed that day to the patient and all drugs that have been
dispensed in the past to the patient.  Information from the
pharmacy information system is received on an ongoing basis
throughout the day.  New information can be entered into the

20    database at any time.  In addition to the fill list, new orders
and patient admittance, discharge and transfer information are
received and stored.

Figure 16 is a flowchart with respect to the processing
of a patient prescription.  A similar method would be followed

25    for retrieving other stored products.  The software for
processing an order is started as indicated by box 180.  Then the

- 21 -

MA000329

steps indicated by boxes 181 thru 202 are followed. Before a box is loaded onto the conveyers, the operator scans the location barcode and the patient barcode on the patient box. The system then checks its database to ensure that that patient is still at that location. If a new patient has been transferred or admitted to that location, the system automatically generates a barcode label with that patient's identification number on it. This label is then manually applied to the patient box and the box is placed on the conveyor. If no patient is registered in the room, the box is placed aside and the operator proceeds with the next patient box to be filled. When the turn comes for the patient box 36 to be filled, it is shuttled into a position on the conveyor 34 such that the gripper assembly 38 can communicate with the box 36 as shown in Figure 1. A stationary bar code reader 90 reads the bar code on the patient box 36. The patient identification number is then parsed from the bar code input. This causes the fill list for that particular patient to be retrieved from the database as indicated in box 185. The fill list is converted to data consisting of locations and number of picks. At box 187 the data is then downloaded to a robot controller or gantry control program in order for the computer 24 to control the end of arm tooling 38 such that it knows what packages 14 to obtain and place in the patient box 36.

The system is now ready to pick the drugs 188. First, the column-type vehicle 44 goes to the rack where the drug to be selected is stored and stops at the X coordinate of that drug

- 22 -

package. The picking means 38 then moves along the column 44 to the Y coordinate of the medicine package to be picked. It is also turned to the proper storage rack 12 which has the desired package 14. These actions may also be performed simultaneously

5    by the system 189.

When the end of gripper assembly 38 is properly positioned, the bar code reader 26 reads 190 the identity 16 on the medicine package 14 in order to confirm that it is the proper medicine package to be picked with respect to the patient's

10    prescription. After such confirmation the suction rod 52 extends in the Z direction by pneumatic cylinder 53 such that the outside suction face 60 contacts the package face 62. Valve 54 activates a suction through the air lines 55 such that a suction drawn through the suction face 60 grabs the medicine package 14 sensor

15    58a detects when the contact is proper between the suction face 60 and the medicine package 14, as indicated at box 192 of Figure 16. Then the extension rod 52 retracts from the rod 30 of the support structure 28, pulling the medicine package 14 with it. Once the medicine package 14 is clear of the rod 30, the

20    extension rod 52 positions the medicine package 14 that it has obtained, upon the storing rod 48 as indicated by box 193.

The system now prepares for the next pick. This operation is indicated by box 194 includes several actions. Once the package 14 is on the storage rod 48, the vacuum valve 54

25    terminates the suction and the medicine package is released from the suction face 60. The vacuum valve 57 then activates the

- 23 -

MA000331

cylinder 51 such that the extension rod 52 (and cylinder 53) are moved in the Y direction so the bottom of the suction head 56 is above the package 14 on the storing rod 48. The extension rod is then moved forward in the Z direction and downward in the Y direction by the respective valves and cylinders to clear the package and position the suction head 56 for the next pick. In an alternative embodiment the storage rod 48 is moved down rather than moving suction head up 56 to provide clearance between them when the suction head moves in a Z direction. The computer 24 then notes that the medicine package 14 with the appropriate medicine has been picked.

The final series of operations indicated by boxes 195 thru 202 involves a comparison of the drug identified by the reader as having been picked with the list of drugs to be selected. If an incorrect drug was selected the gripper assembly moves to a reject area, places the incorrect drug there, removes that drug from the list of items selected and is ready to pick more drugs. If the correct drug was selected the system records that fact and is ready to pick more drugs. The process is repeated for all the medicine identified in the patient's prescription until all of the medicine packages 14 needed have been picked.

The gripper assembly containing all desired packages then positions itself so that it is over the patient box 36. The gripper assembly 38 then positions the outside suction face 60 behind the medicine packages on the storing rod 48 that have been



- 24 -

collected.  Packages can be dropped into the patient box by
retracting rod 48 by actuating cylinder 48A to the position shown
in Figure 10.  The storage rod 48 is then moved into the negative
Z direction so that the suction face no longer holds the packages
5    in place.  The cylinder 48B then causes the storage rod 48 to be
retracted which will cause the drugs to be dumped into the box.

Alternatively, the suction head may be stroked forward
in the Z direction so that all packages 14 are pushed off the
storing rod 48 into the patient box 36.  Movement of the suction
10   head is accomplished by the vacuum system.  Vacuum valve 57
activates the cylinder 51 to retract in the positive Y direction
such that the bottom of the suction head 56 is above the tops of
the packages 14 on the storing rod 28.  Then vacuum valve 59
activates cylinder 53 to retract the extension rod 52 in the
15   negative Z direction such that the outer suction face 60 is
behind all of the medicine packages 14 on the storing rod 48.
Vacuum valve 57 is then activated such that the suction head 56
is dropped back down in the negative Y direction to be behind the
packages 14.  Finally, vacuum valve 59 is activated such that the
20   extension rod 52 is extended in the positive Z direction and the
front suction face 60 pushes all packages 14 off the storing rod
48 into the patient box 36.

In the event that the wrong medicine package 14 was
scanned and is picked, or the medicine has expired, then picking
25   means 38 will have placed those packages in a reject or return
area, where the medicine package 14 can be disposed.  A pharmacy

- 25 -

technician will then manually sort the drugs in the reject area,
removing expired drugs and placing the others in the supply rack
in order that they might be returned to their correct location in
the system. The process is then repeated for the next drug on
5    the prescription list that has not yet been obtained.

The flow chart of Figure 17 is the process of checking
the selected packages which have been placed in a patient box.
Such checking is performed at the check station. The process
begins by calling up the check program indicated by box 105. The
10   bar code on the patient box is scanned 106 and the patient number
portion of the bar code is identified 107. The patient number is
displayed 108 on the screen at the check station. Then the
packages in the patient box are scanned 109. The identification
of the packages is compared with the list of drugs that had been
15   ordered for the patient in a verify step 110. If correct
packages are in the box, the checking of the box is complete and
the system is ready for the next box 111. If the packages in the
box do not match the order the system determines if the problem
can be corrected 112. If so, the correction is made 113 and the
20   verify step is repeated. If not, the box is dumped 114 and the
order is recorded as not filled or the box is resubmitted and the
missing medications are filled by the system. For example,
should the system determine that an item is missing it may either
create a modified list and send the box on with a modified list
25   or it may instruct the picking means to get the missing item.



- 26 -

The return process is shown in the flow chart of Figure 18. The process starts 115 by calling up the return program. The patient box containing the returned items must be positioned so that the patient box can be scanned 116 for the patient

5    identification number 117 and the nursing unit from which the box was returned. If the box has come from the proper nursing unit the system retrieves the patient dispensing record 120 and displays that record 121 for the operator. Next the packages are scanned 122. The system preferably verifies 123 that the scanned

10   packages had been sent to the patient making the return. Next the system checks each package 124 to determine if the drug is useful or if it has expired, been recalled or otherwise should not be returned to the supply rack. If no, the package is discarded 125. If yes, the package is returned to the supply

15   rack 126. If more drugs remain in the box the process is repeated 127. If no packages remain, the system may further process the list of returned packages 128 to modify the patient's record, update the system inventory log or display the list of returns for review by the operator.

20   The process of restocking returned or new packages to the storage rack is diagramed in Figure 19. These packages are manually placed on a return or supply rack and the program for restocking is called up 130. The program causes the picking means to be positioned 131 so that the gripping assembly can pick

25   packages from the return or supply rack. The bar code on the first package is scanned 132 and the portion of the scanned bar

- 27 -

MA000335

code which identifies the drug is found 133. The system then checks the database 134 for the location in the storage rack which has been designated for the identified product. The system extends the vacuum head 135 to engage the package. Suction is

5    applied 136 and a suction sensor is checked. This should cause the package to be held by the gripper assembly which fact will be confirmed by the sensor 137. The gripper assembly positions the package 138 on the storage rod 48 in the gripper assembly. Then the suction is released and the gripper assembly is ready to

10   place additional packages on the storage rod. If more packages remain on the return or supply rack 140, the process is repeated until all packages are on the storage rod or the storage rod is full. The gripper assembly is then moved to a position 141 in front of the storage rack to properly place the outermost package

15   on the storage rod. That package is grasped 142 using back suction cups 61 (see Figure 11). The extension rod 52 is retracted in the negative Z direction such that the inside suction face 61 is in contact with the medicine package 14. The sensing means 58 determines whether proper contact is made. Then

20   the extension rod 52 is moved a predetermined distance in the positive Z direction 143 to place the medicine package over a rod 30 of support structure 28. Vacuum valve 54 is then deactivated 144 to stop suction, allowing the medicine package 14 on the suction face 61 to drop away therefrom. The extension rod 52

25   then moves in the negative Z direction towards the medicine packages 14 on the storing rod 48 to repeat the process. While

- 28 -

it moves back to obtain another medicine package 14, the sensor
58 trips when contact is made. The process can be repeated
until there are no more medicine packages 14 on the storing rod
48. The computer 24 knows when to stop returning packages since
5   it knew how many packages had been placed on the storing rod 48.

     In the event that all drugs to be returned or restocked
at a particular storage location are identical the process is
some what different. Packages are picked from the supply rack in
the method detailed above. The gripper assembly is then moved to
10  a position in front of the storage rack to place the remaining
packages on the storage rod. Cylinder 48A causes the assembly of
storing rod 48 and pusher plate 57B to move in the negative Z
direction. Storage rod 48 is co-linear with a rod 30 of support
structure 28. Pusher plate 57B then moves in the positive Z
15  direction pushing all remaining packages on storage rod 48 on to
rod 30.

     The restocking of the storage racks 12 can be carried
out during the evening when packages are not being gathered to
fill orders. Alternatively, restocking can be carried out
20  simultaneously with picking if the system 10 has a pair of rods
as shown in Figure 14, a first end of arm tooling 67, second end
of arm tooling 68 and a first tooling structure 70 and a second
tooling structure 72 is utilized, as shown in Figure 15. While,
for instance, the first end of arm tooling 67 is picking medicine
25  packages 14 to fill a patient's prescription, the second end of
arm tooling 68 can be restocking the second side of the

- 29 -

MA000337

storage area 12.

Although the invention has been described in detail in the foregoing embodiments for the purpose of illustration, it is to be understood that such detail is solely for that purpose and that variations can be made therein by those skilled in the art without departing from the spirit and scope of the invention except as it may be described by the following claims.

- 30 -

We claim:

    1.  A system for selecting and delivering packages from a stored area to fill orders comprising:

        a)  a storage area comprised of a plurality of locations each location being sized and configured to hold at least one package in a manner so that the package can be placed into and removed from the locations by automated picking means, each location having a distinct x, y coordinate;

        b)  automated picking means sized and configured to be able to hold packages, to select packages from storage area locations and place packages in storage area locations in accordance with instructions received from a computer, the picking means having a gripper for grasping and moving individual packages;

        c)  a computer having at least one memory which contains a program for directing the picking means to chosen storage area locations and a database containing at least one x, y coordinate location in the storage area for each package held within the storage area, wherein only one type of package is stored in each x, y coordinate location.

    2.  The system of claim 1 wherein the gripper is a vacuum head.

MA000339

3.  The system of claim 1 also comprising a sensor attached to the picking means for determining when a package is grasped by the gripper.

4.  The system of claim 1 wherein at least one package has a machine readable label identifying contents of the package and also comprising a package reader attached to the picking means for reading the label.

5.  The system of claim 4 wherein the label is a bar code and the reader is a bar code reader.

6.  The system of claim 4 wherein the label also contains an expiration date.

7.  The system of claim 1 wherein the picking means contains a picking means storage area for holding packages selected by the picking means.

8.  The system of claim 7 wherein the picking means storage area is comprised of at least one storage rod and holes are provided in the packages to permit the packages to be held on the storage rod.

- 32 -

MA000340

9. The system of claim 1 also comprising a supply station for receiving new and returned packages, the supply station having a plurality of locations each location being sized and configured to hold at least one package in a manner so that the package can be placed into and removed from the locations by automated picking means, each location having a distinct x, y coordinate.

10. The system of claim 9 wherein the supply station is movable and is sized to be removably positioned adjacent the storage area.

11. The system of claim 1 wherein the storage area is comprised of a plurality of rods and a hole is provided in each package to permit the package to be held on the rods.

12. The system of claim 1 also comprising at least one data transmission port attached to the computer through which a list of packages to be selected can be input and a list of packages selected by the system can be output.

13. The system of claim 1 wherein the memory contains a program for checking compatability of products in packages selected by the picking means with other products listed in the database.

MA000341

14.  The system of claim 1 also comprising a conveyor positioned to receive packages from the picking means.

15.  The system of claim 14 also comprising a plurality of containers positioned on the conveyor, the containers being sized and positioned to receive packages from the picking means.

16.  The system of claim 15 wherein the containers have machine readable labels.

17.  The system of claim 16 wherein the labels are bar codes.

18.  The system of claim 15 wherein each package and each container have machine readable labels.

19.  The system of claim 18 wherein the labels are bar codes.

20.  The system of claim 18 also comprising a check station located adjacent the conveyor, the check station having reading means for reading the machine readable labels.

21.  The system of claim 20 wherein the reading means is connected to the computer in a manner to input information from the machine readable labels; the computer having a program for

- 34 -

MA000342

storing the input information in memory and for comparing the
input information to other information contained in the database.

22.  The system of claim 1 wherein the packages contain
individual doses of medicine.

23.  The system of claim 1 also comprising a track over
which the picking means travels according to directions supplied
by the computer also comprising means for moving the picking
means over the track.

24.  A system for selecting and delivering packages from
a holding to fill orders comprising:

a)  holding means comprised of a frame having a
plurality of support rods for holding medicine
packages, each rod associated with a given medicine
and holding medicine packages with only the same
medicine;

b)  means for supplying medicine packages to the support
rods;

c)  means for picking medicine packages from the support
rods in accordance with instructions received from a
computer, said picking means being able to access
the holding means and the supply means;

- 35 -

d)    a computer having a database containing the
      locations of all packages in the holding means able
      to receive orders for packages and able to direct
      the means for picking packages.

25.   A system as described in claim 24 wherein the
structure includes a plurality of rod supports from which the
rods extend, said structure with back rod supports form an X, Y
coordinate system with each rod and medicine packages therein
having a unique X and Y coordinate, said picking means disposed
adjacent said structure such that a given medicine package on an
associated rod can be picked by the picking means to fill a
patient's prescription; or a given medicine package in the
supplying means can be picked by the picking means to restock the
associated rod.

26.   A system as described in claim 25 including a
conveyor in communication with the picking means; and patient
prescription boxes which are moved by the conveyor to the picking
means such that the picking means provides the medicine packages
it has picked to fill a given prescription to an associated box.

27.   A system as described in claim 26 wherein the
picking means includes at least one gripper that picks the
medicine packages; and a tooling support structure having at
least one column to support the tooling and at least one row to

- 36 -

support the column such that the tooling moves along the column as the column moves along the row to pick a given medicine package hanging from a corresponding support rod, or restock a given medicine package on a corresponding support rod; and means for moving the column with respect to the row, said moving means controlled by the computer.

28.  A system as described in claim 27 wherein the tooling is comprised of

a housing;

means for storing medicine packages attached to the housing;

means for obtaining a medicine package, said obtaining means slidingly attached to the housing such that it can move in a Z direction, which is perpendicular to the X and Y directions, to pick a medicine package from a support structure when the housing is adjacent to and aligned with a support rod, and can move in the Z direction to place a picked package on the storing means; and

wherein the identifying means is part of the gripper such that it can identify a package to be picked by the obtaining means, each of said packages having an identity disposed on them which can be read by the identifying means.

- 37 -

MA000345

29. A system described in claim 28 wherein the identity of each package is a bar code, and the identifying means includes a bar code reader disposed on the obtaining means.

30. A system as described in claim 29 wherein the obtaining means includes means for producing a suction; a suction rod in fluidic connection with the suction producing means, said suction rod slidingly attached with respect to the Y and Z directions to the housing and maintaining a suction therethrough when the suction producing means is activated;

a suction is connected to the suction rod through which a medicine package is picked with suction; and means for sensing when a package is properly positioned on the suction head such that the package rod is then moved to the storing means and deposits the package thereon.

31. A system as described in claim 30 wherein the storing means is a storing rod which extends from the housing such that the suction head and the suction rod can deposit a package thereon.

32. A system as described in claim 31 wherein the tooling includes valves and pneumatic cylinders for moving the suction rod in the Y and Z direction; and a vacuum pump for

MA000346

providing suction to the suction rod and support head sufficient to pick a package from a rod of the support structure and then hold it to the suction head.

33. A system as described in claim 32 wherein the suction head has two faces through which a suction can be drawn, each face capable of picking a package.

34. A system as described in claim 33 wherein the two faces are parallel to each other and are parallel to the x-axis, and wherein each package has a face and the package are held by the storing rod and the rods of the support structure such that the face of each package is parallel to the x-axis.

35. A system as claimed in claim 24 wherein the rods extend from the back rod supports in sets of two, with a first rod and a second rod on each set pointing essentially in a 2 direction, which is perpendicular to the X and Y directions, but approximately 180° apart from each other, and wherein the picking means includes a first gripper and a second gripper that picks the medicine packages; and a first and second tooling support structure, each tooling support structure having at least one column and at least one row to support the column, such that the first and the second tooling moves along the respective column and the respective column moves along the respective row of the first and second tooling support structure, respectively, to pick

- 39 -

a given medicine package from a corresponding support rod, or
restock a support rod with an associated medicine package.

36.  A system as described in claim 20 wherein the
picking means includes at least one gripper that picks the
packages; and a tooling support structure having at least one
column to support the tooling and at least one row to support the
column such that the tooling moves along the column as the column
moves along the row to pick a given package hanging from a
corresponding support rod, said gripper able to turn on the
column to pick packages on either the first or second holding
means; and

means for moving the column with respect to the row, said
moving means controlled by a computer and in communication
therewith.

- 40 -

MA000348

08452646



ABSTRACT OF THE DISCLOSURE

A system for filling orders, such as prescriptions for patients, comprising a device for holding packages. Each package

5   has the same type of contents being held in a predetermined location by the holding device. Each package has an identity which defines the contents therein. The holding device has a plurality of predetermined locations corresponding to a plurality of different types of contents. Additionally, the system is

10  comprised of a device for supplying packages to the holding device. Also, there is a device for picking a package from the holding device that is identified in the order for the purpose of restocking the holding device. The picking device is in communication with the holding device and supplying device. In a

15  preferred embodiment, the contents of each package is a single dosage of medicine.

-41-

MA000349

Docket No. <u>920015</u>

### DECLARATION AND POWER OF ATTORNEY

I, the below named inventor, hereby declare that:

My residence, post office address and citizenship is as stated below next to my respective name.

I believe I am the original, first and sole inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled AN AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA, the specification of which was filed on April 21, 1992, and bears Serial No. 07/871,832.
I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims.

I acknowledge the duty to disclose information which is material to the examination of this application in accordance with Title 37, Code of Federal Regulations, Section 1.56(a).

I hereby claim the benefit under Title 35, United States Code, Section 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, Section 112, I acknowledge the duty to disclose material information as defined in Title 37, Code of Federal Regulations, Section 1.56(a) which occurred between the filing date of the prior application and the national or PCT international filing of this application.

| <u>Application Serial No.</u> | <u>Filing Date</u> | Status<br>(Patented, Pending, Abandoned) |
|---|---|---|
| 07/469,217 | 1/24/90 | Abandoned |
| | | |
| | | |
| | | |
| | | |

I hereby declare that all statements made hereby of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

I hereby appoint the following attorney(s) to prosecute this application and to transact all business in the Patent and Trademark Office connected herewith: Lynn J. Alstadt, Reg. No. 29,362; George P. Baier, Reg. No. 26,717; Paul A. Beck, Reg. No. 22,289; Michael L. Dever, Reg. No. 32,216; Craig N. Killen, Reg. No. 35,218; George Raynovich, Jr., Reg. No. 19,829 and Alvin E. Ring, Reg. No. 18,697.

Address all telephone calls to  Lynn J. Alstadt
Address all correspondence to   Buchanan Ingersoll Professional Corporation,
                                56th Floor, 600 Grant Street
                                Pittsburgh, Pennsylvania 15219
                                (412) 562-1632

MA000350

1. Full name of sole or first inventor  Sean C. McDonald
Inventor's Signature _____  Date 6-19-92
Residence  Pittsburgh, Allegheny County, Pennsylvania  PA  Citizenship  USA
Post Office Address  419 South Braddock Avenue, Pittsburgh, Pennsylvania  15221

2. Full name of second joint inventor, if any  Ellen J. Hertz
Inventor's Signature _____  Date 6-8-92
Residence  Clemmons, Forsyth County, North Carolina  NC  Citizenship  USA
Post Office Address  4232 Lake Cliff Drive, Clemmons, North Carolina  27012

3. Full name of third joint inventor, if any  James A. Smith
Inventor's Signature _____  Date 6/19/92
Residence  Allison Park, Allegheny County, Pennsylvania  PA  Citizenship  USA
Post Office Address  3909 Ash Drive, Allison Park, Pennsylvania  15101

4. Full name of fourth joint inventor, if any  Gregory Toto
Inventor's Signature _____  Date 6/18/92
Residence  Santa Cruz, Santa Cruz County, California  CA  Citizenship  USA
Post Office Address  815B Corcoran Avenue, Santa Cruz, California  95062

Full name of fifth joint inventor, if any _____
Inventor's Signature _____  Date _____
Residence _____  Citizenship _____
Post Office Address _____

PA\JA61\WATS\C-1 P DECLARATION

MA000351

Applicant or Patentee: ___Sean C. McDonald et al._____

Attorney's Serial or Patent _____    Docket No.: ___920015_____

Filed or Issued: _____

___AN AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA___

VERIFIED STATEMENT (DECLARATION) CLAIMING SMALL ENTITY STATUS
(37 CFR 1.9(f) and 1.27(c)) - SMALL BUSINESS CONCERN

I hereby declare that I am

□ the owner of the small business concern identified below:

☒ an official of the small business concern empowered to act on behalf of the concern identified below:

NAME OF CONCERN    Automated Healthcare, Inc.

ADDRESS OF CONCERN    261 Kappa Drive

___Pittsburgh, Pennsylvania 15238___

I hereby declare that the above identified small business concern qualifies as a small business concern as defined in 13 CFR 121.3-18, and reproduced in 37 CFR 1.9(d), for purposes of paying reduced fees under section 41(a) and (b) of Title 35, United States Code, in that the number of employees of the concern, including those of its affiliates, does not exceed 500 persons. For purposes of this statement, (1) the number of employees of the business concern is the average over the previous fiscal year of the concern of the persons employed on a full-time, part-time or temporary basis during each of the pay periods of the fiscal year, and (2) concerns are affiliates of each other when either, directly or indirectly, one concern controls or has the power to control the other, or a third party or parties controls or has the power to control both.

I hereby declare that rights under contract or law have been conveyed to and remain with the small business concern identified above with regard to the invention, entitled AN AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA_____ by inventor(s) Sean C. McDonald __Ellen J. Hertz, James A. Smith and Gregory Toto_____ described in

☒ the specification filed herewith
□ application serial no. _____, filed _____
□ patent no. _____, issued _____.

If the rights held by the above-identified small business concern are not exclusive, each individual, concern or organization having rights to the invention is listed below* and no rights to the invention are held by any person, other than the inventor, who could not qualify as a small business concern under 37 CFR 1.9(d) or by any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e). *Note: Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

NAME _____

ADDRESS _____
□ Individual        □ Small Business Concern        □ Nonprofit Organization

NAME _____

ADDRESS _____
□ Individual        □ Small Business Concern        □ Nonprofit Organization

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate. (37 CFR 1.28(b))

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

NAME OF PERSON SIGNING    Sean C. McDonald

TITLE OF PERSON OTHER THAN OWNER    President

ADDRESS OF PERSON SIGNING    261 Kappa Drive

___Pittsburgh, Pennsylvania 15238___

SIGNATURE _Sean McDonald_____    DATE 4/20/92

MA000352

| CERTIFICATE OF MAILING BY " EXPRESS MAIL " UNDER 37 CFR 1.10 - SEPARATE PAPER - | ATTORNEY'S DOCKET NO. 950441 |
|---|---|

| IN RE APPLICATION OF Sean McDonald et al. | |
|---|---|
| SERIAL NUMBER | FILED May 25, 1995 |
| FOR AN AUTOMATED SYSTEM FOR SELECTING PACKAGES FROM A STORAGE AREA | |
| GRP. ART UNIT | EXAMINER |

" Express Mail " mailing label number  B 84267047

Date of deposit   May 25, 1995

I hereby certify that this paper or fee is being deposited with

the United States Postal Service " Express Mail Post Office to

Addressee " service under 37 CFR 1.10 on the date indicated above

and is addressed to the Commissioner of Patents and Trademarks,

Washington, D.C. 20231.

Lynn J. Alstadt, Esq.
( Typed or printed name of person mailing paper or fee )

( Signature of person mailing paper or fee )

Patent and Trademark Office - U.S. DEPT of COMMERCE



Figure 1

MA000354

08/452646



Figure 2

09/452646



Figure 3

MA000356

08/452646



Figure 4

MA000357

08/452646



Figure 5

MA000358

W/452646



Figure 6

MA000359

06/452646



Figure 7

MA000360

09/452646

FIGURE 8



MA000361



FIGURE 9

09/452646



FIGURE 10

MA000363

08/452646



Figure 11

08/452646



Figure 12

MA000365

09/452646





Figure 13

09/452646





Figure 14

MA000367

09/452646



Figure 15

MA000368

09/452646

FIGURE 16



09/452646

FIGURE 17



09/452646

FIGURE 18



08/452646



FIGURE 19

PRINT OF DRAWINGS
AS ORIGINALLY FILED

09/452646



Figure 1

PRINT OF DRAWINGS
AS ORIGINALLY FILED

09/452646



Figure 2

PRINT OF DRAWINGS
AS ORIGINALLY FILED

09/452646



Figure 3

PRINT OF DRAWINGS
AS ORIGINALLY FILED

01/452646



Figure 4

MA000376

PRINT OF DRAWINGS
AS ORIGINALLY FILED

09/452646



Figure 5

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08/452646



Figure 6

PRINT OF DRAWINGS
AS ORIGINALLY FILED

09./452646



Figure 7

MA000379

PRINT OF DRAWINGS
AS ORIGINALLY FILED

09./452646

FIGURE 8



PRINT OF DRAWINGS
AS ORIGINALLY FILED

09/452646



FIGURE 9

PRINT OF DRAWINGS
AS ORIGINALLY FILED

07/452646



FIGURE 10

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08/452646



Figure 11

PRINT OF DRAWINGS
AS ORIGINALLY FILED

09/452646



Figure 12

MA000384

PRINT OF DRAWINGS
AS ORIGINALLY FILED

09/452646



Figure 13

MA000385

PRINT OF DRAWINGS
AS ORIGINALLY FILED

09 /452646



Figure 14

PRINT OF DRAWINGS
AS ORIGINALLY FILED

09/452646



Figure 15

MA000387

PRINT OF DRAWINGS
AS ORIGINALLY FILED

08/452646



FIGURE 16

PRINT OF DRAWINGS
AS ORIGINALLY FILED

09/452646

FIGURE 17



PRINT OF DRAWINGS
AS ORIGINALLY FILED

09/452646

FIGURE 18



PRINT OF DRAWINGS
AS ORIGINALLY FILED

09/452646



FIGURE 19

PATENT

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Group Art Unit 3107                          :

Examiner Frank E. Werner                     :    AN AUTOMATED SYSTEM
                                                  FOR SELECTING PACKAGES
In re application of  08/452646              :    FROM A STORAGE AREA

SEAN McDONALD et al.                         :         3107

INFORMATION DISCLOSURE STATEMENT

Pittsburgh, Pennsylvania 15219

May 25, 1995

Hon. Commissioner of Patents and Trademarks

    Washington, D.C.  20231

Sir:

      The most pertinent prior art known to applicants has
been cited in the parent application Serial No. 07/871,832, filed
April 21, 1992.  Form PTO 1449 listing that prior art is attached
hereto.  Pursuant to 37 C.F.R. 1.98(d) no copy of these
references are submitted herewith.

      Respectfully submitted,

      BUCHANAN INGERSOLL, P.C.

      By

      Lynn J. Alstadt
      Registration No. 29,362

      Attorneys for Applicants

    (412) 562-1632

SHEET: 1 of 2

| FORM PTO-1449 (Rev. 7-80) | U.S. Department of Commerce Patent and Trademark Office | ATTY DOCKET NO 950441 | SERIAL NO 08/452646 |
|---|---|---|---|

LIST OF PRIOR ART CITED BY APPLICANT

(Use several sheets if necessary)

APPLICANT
Sean McDonald et al.

| FILING DATE | GROUP |
|---|---|
| 5-25-95 | 3107  # |

Part of paper

**U.S. PATENT DOCUMENTS**

| *EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| RW | AA | 4,896,024 | 1/90 | Morello et al. | 414 | 274 | |
| RW | AB | 4,789,295 | 12/88 | Boucher, Jr., et al. | 414 | 280 | |
| RW | AC | 5,129,777 | 7/92 | Pohjonen et al. | 414 | 280 | |
| RW | AD | 4,812,629 | 3/89 | O'Neil et al. | 414 | 274 | |
| RW | AE | 4,546,901 | 10/85 | Butarazzi | 414 | 280 | |
| RW | AF | 4,786,229 | 11/88 | Henderson | 414 | 273 | |
| RW | AG | 4,792,270 | 12/88 | Yoshida | 414 | 273 | |
| RW | AH | 4,669,047 | 5/87 | Chucta | 414 | 331 | |
| RW | AI | 4,820,109 | 4/89 | Witt | 414 | 282 | |
| RW | AJ | 4,651,863 | 3/87 | Reuter et al. | 414 | 280 | |
| RW | AK | 3,802,580 | 4/74 | Castaldi | 414 | 280 | |

**FOREIGN PATENT DOCUMENTS**

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| RW | AL | 304 | 1/79 | PCT | 414 | 273 | ✓ | |
| | AM | | | | | | | |
| | AN | | | | | | | |
| | AO | | | | | | | |
| | AP | | | | | | | |

**OTHER PRIOR ART (Including Author, Title, Date, Pertinent Pages, Etc.)**

| | | |
|---|---|---|
| | AR | |
| | AS | |
| | AT | |

| EXAMINER R.E. Werner | DATE CONSIDERED 8/95 |
|---|---|

* EXAMINER: Initial if reference considered, whether or not citation is in conformance with PEP 609. Draw line through question if not in conformance and not considered. Include copy of this form with next communication to applicant.

MA000393

SHEET 2 OF 2

FORM PTO-1449
(Rev. 7-80)

U.S. Department of Commerce
Patent and Trademark Office

LIST OF PRIOR ART CITED BY APPLICANT

(Use several sheets if necessary)

| ATTY DOCKET NO | SERIAL NO |
|---|---|
| 950441 | 08/452646 |

APPLICANT
Sean McDonald et al.

| FILING DATE | GROUP |
|---|---|
| 5-25-95 | 3107 |

### U.S. PATENT DOCUMENTS

| EXAMINER INITIAL | | DOCUMENT NUMBER | DATE | NAME | CLASS | SUBCLASS | IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| RW | AA | 3,986,612 | 10/76 | Kamm et al. | 209 | 111.7 | |
| PW | AB | 4,678,390 | 7/87 | Bonneton et al. | 414 | 282 | |
| | AC | | | | | | |
| | AD | | | | | | |
| | AE | | | | | | |
| | AF | | | | | | |
| | AG | | | | | | |
| | AH | | | | | | |
| | AI | | | | | | |
| | AJ | | | | | | |
| | AK | | | | | | |

### FOREIGN PATENT DOCUMENTS

| | | DOCUMENT NUMBER | DATE | COUNTRY | CLASS | SUBCLASS | TRANSLATION YES | NO |
|---|---|---|---|---|---|---|---|---|
| PW | AL | 2 596 299 | 10/87 | French | — | — | | ✓ |
| RW | AM | FR85/00232 | 8/84 | PCT | — | — | ✓ | |
| | AN | | | | | | | |
| | AO | | | | | | | |
| | AP | | | | | | | |

### OTHER PRIOR ART (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| | AR | |
| | AS | |
| | AT | |

| EXAMINER | DATE CONSIDERED |
|---|---|
| F.E. Werner | 8/95 |

EXAMINER: Initial if reference considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

MA000394

414-273        AU 314    47901

EP 0000304
JAN 1979

HOTC- ★        Q35            A2971B/02  ★EP ----- 304
**Sorting machine for e.g. small hardware kits - has reader delivering
signals to logic control circuits which route items between transfer
and receiving rails**
    HOTCHKISS-BRANDT    05.07.77-FR-020658
    *P43    (10.01.79) B07c-03/08 B65g-47/61*
D/S: DT, GB, SW,

The sorting machine has a storage rail which receives ob-
jects from work stations, suspension hooks being driven
by a transfer device. A gripper supports each object for
attachment to a hook, an unhooking device disengaging
each gripper from its hook so that the objects can be at-
tached to respective receiving rails.
    The hooks and receiving rails are pref. mounted at dif-
ferent levels, a guide element maintaining the grippers in
position during transfer. The machine pref. includes a
reader which is responsive to index markings on the ob-
jects to control their transfer to the receiving rails.
    The machine may be used to sort high turnover hard-
ware items, partic. those consisting of several small
components. It may also be adopted for use in an automa-
tic document retrieval system.
16.6.78 as 400023 (25pp934).
ISR: DT1265044; DT1251236; FR2040483; FR1541475;
FR1334995; US3572546; US2998136.

MA000395



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Sn08/452646

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 08/452,646 | 05/25/95 | MCDONALD | S | 950441 |

F1M1/0821

| EXAMINER |
|---|
| WERNER |

LYNN J ALSTADT
BUCHANAN INGERSOLL
56TH FLOOR
600 GRANT STREET
PITTSBURGH PA  15219

| ART UNIT | PAPER NUMBER |
|---|---|
| 3107 | 3 |

DATE MAILED:    08/21/95

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☑ This application has been examined    ☐ Responsive to communication filed on _____    ☐ This action is made final.

A shortened statutory period for response to this action is set to expire __3__ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I  THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☑ Notice of References Cited by Examiner, PTO-892.    2. ☑ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☑ Notice of Art Cited by Applicant, PTO-1449.    4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II  SUMMARY OF ACTION**

1. ☑ Claims __24-35__ _____ are pending in the application.

    Of the above, claims _____ are withdrawn from consideration.

2. ☑ Claims __1-23 and 36__ _____ have been cancelled.

3. ☐ Claims _____ are allowed.

4. ☑ Claims __24-35__ _____ are rejected.

5. ☐ Claims _____ are objected to.

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

Serial Number: 08/452,646                                           Page 2

Art Unit: 3107

-Part III-

1.    The fee calculation sheet and file wrapper indicates 12
claims (apparently claims 24-35) are present in the application.
An apparent preamendment cancelling claims 1-23 and 36 (which
were prosecuted in parent application SN 08/295495) has been
misplaced.  If the above is correct, Applicants cooperation in
ratifying the cancellation of claims 1-23 and 36 would be
appreciated.

2.    Claims 24-35 are rejected under 35 U.S.C. § 112, second
paragraph, as being indefinite for failing to particularly point
out and distinctly claim the subject matter which applicant
regards as the invention.

       Re claim 24, it is not understood how the packages" (line 1)
relate to the "medicine packages" (lines 4 and 5, etc.); further,
no antecedent basis exists for "the location" (lines 14 and 15);
lastly, an improper inference is created that the supply means
supplies the rod when in point of disclosure, the rods are
supplied from the supplying means by means of the picking means.
Re claim 27, no antecedent basis exists for "tooling" (line 4).
Re claim 35, no antecedent basis exists for "the back rod
supports".

3.    The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

       A patent may not be obtained though the invention is not
       identically disclosed or described as set forth in section

102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

Subject matter developed by another person, which qualifies as prior art only under subsection (f) or (g) of section 102 of this title, shall not preclude patentability under this section where the subject matter and the claimed invention were, at the time the invention was made, owned by the same person or subject to an obligation of assignment to the same person.

4.    This application currently names joint inventors.  In considering patentability of the claims under 35 U.S.C. § 103, the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary.  Applicant is advised of the obligation under 37 C.F.R. § 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of potential 35 U.S.C. § 102(f) or (g) prior art under 35 U.S.C. § 103.

5.    Claims 24, 25 and 35 are rejected under 35 U.S.C. § 103 as being unpatentable over Morello et al in view of the European Patent (,304).

Morello et al disclose storage areas 40, automated picking means 20, 62, etc. on tracks 98 (99), supplying means 22 and computer means 26 to assign the package to X-Y coordinates (column 11, lines 11-17) and to control the picking means, but do not disclose support rods which is disclosed by the European Patent (, 304) (15, etc.) and in view of the same, it would have been obvious to have substituted holding means as taught by the European Patent (, 304) as this would have been the substitution

MA000398

Serial Number: 08/452,646                                    Page 4
Art Unit: 3107

of equivalent holding means productive of no unexpected result.
The handling of conventional medicine packages (as claimed) would
have been obvious to one skilled in the art.  Re claim 35, it
would have been obvious to have conventionally formed the rods
and gripper (as claimed) depending on the intended application.
6.    Claims 26 to 29 are rejected under 35 U.S.C. § 103 as being
unpatentable over Morello et al in view of the European Patent (,
304) as applied to claims 24, 25 and 35 above, and further in
view of Buttarazzi.

      Buttarazzi (42, 21, 88, etc.) teaches and renders obvious
the alternate use of containers (filled by picking means) placed
on a conveyor.  The use of conventional plural containers (as
claimed) would have been obvious.  Re claims 28 and 29, the use
of conventional identifying means (such as a bar code in claim
29) would have been obvious.
7.    Any inquiry concerning this communication or earlier
communications from the examiner should be directed to F.E.
Werner whose telephone number is (703) 308-1140.  The examiner
can normally be reached on Tuesday-Friday from 6:30 AM to 5:00
PM.

Serial Number: 08/452,646                                    Page 5

Art Unit: 3107

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Mr. Huppert, can be reached on (703) 308-1107.  The fax phone number for this Group is (703) 305-7687.

    Any inquiry of a general nature or relating to the status of this application or proceeding should be directed to the Group receptionist whose telephone number is (703) 308-1113.

    Summary:

        Claims 24-35 are rejected.

        Rejection-SSP 3 mos.

Werner/mm
August 08, 1995

FRANK E. WERNER    8/9/95
PRIMARY EXAMINER
GROUP 3100

Form PTO 948 (Rev. 10-94)          U.S. DEPARTMENT OF COMMERCE - Patent and Trademark Office          Application No. 452λ℀℮

## NOTICE OF DRAFTSPERSON'S PATENT DRAWING REVIEW

PTO Draftspersons review all originally filed drawings regardless of whether they are designated as formal or informal. Additionally, patent Examiners will review the drawings for compliance with the regulations. Direct telephone inquiries concerning this review to the Drawing Review Branch, 703-305-8404.

The drawings filed (insert date) 5/25/95 are
__ A. not objected to by the Draftsperson under 37 CFR 1.84 or 1.152.
__ B. objected to by the Draftsperson under 37 CFR 1.84 or 1.152 as indicated below. The Examiner will require submission of new, corrected drawings when necessary. Corrected drawings must be submitted according to the instructions on the back of this Notice.

1. DRAWINGS. 37 CFR 1.84(a): Acceptable categories of drawings:
   Black ink. Color.
   __ Not black solid lines. Fig(s)_____
   __ Color drawings are not acceptable until petition is granted.
   Fig(s)_____
2. PHOTOGRAPHS. 37 CFR 1.84(b)
   __ Photographs are not acceptable until petition is granted.
   __ Photographs not properly mounted (must use brystal board or photographic double-weight paper). Fig(s)_____
   __ Poor quality (half-tone). Fig(s)_____
3. GRAPHIC FORMS. 37 CFR 1.84 (d)
   __ Chemical or mathematical formula not labeled as separate figure.
   Fig(s)_____
   __ Group of waveforms not presented as a single figure, using common vertical axis with time extending along horizontal axis.
   Fig(s)_____
   __ Individuals waveform not identified with a separate letter designation adjacent to the vertical axis. Fig(s)_____
4. TYPE OF PAPER. 37 CFR 1.84(e)
   __ Paper not flexible, strong, white, smooth, nonshiny, and durable.
   Sheet(s)_____
   __ Erasures, alterations, overwritings, interlineations, cracks, creases, and folds copy machine marks not accepted. Fig(s)_____
   __ Mylar, velum paper is not acceptable (too thin). Fig(s)_____
5. SIZE OF PAPER. 37 CFR 1.84(f): Acceptable sizes:
   __ 21.6 cm. by 35.6 cm. (8 1/2 by 14 inches)
   __ 21.6 cm. by 33.1 cm. (8 1/2 by 13 inches)
   __ 21.6 cm. by 27.9 cm. (8 1/2 by 11 inches)
   __ 21.0 cm. by 29.7 cm. (DIN size A4)
   __ All drawing sheets not the same size. Sheet(s)_____
   __ Drawing sheet not an acceptable size. Sheet(s)_____
6. MARGINS. 37 CFR 1.84(g): Acceptable margins:

Paper size

| | 21.6 cm. X 35.6 cm. 21.6 cm X 33.1 cm 21.6 cm. X 27.9 cm. 21.0 cm. X 29.7 cm. (8 1/2 X 14 inches) (8 1/2 X 13 inches) (8 1/2 X 11 inches) (DIN Size A4) | | | |
|---|---|---|---|---|
| T 5.1 cm. (2") | 2.5 cm. (1") | 2.5 cm. (1") | 2.5cm. |
| L .64 cm. (1/4") | .64 cm. (1/4") | 2.5 cm. (1/4") | 2.5 cm. |
| R .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. (1/4") | 1.5 cm. |
| B .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. (1/4") | 1.0 cm. |

   Margins do not conform to chart above.
   Sheet(s)_____ 1-3(6) 7, 11, 15-19
   __ Top (T)__ Left (L)__ Right (R)__ Bottom (B)
7. VIEWS. 37 CFR 1.84(h)
   REMINDER: Specification may require revision to correspond to drawing changes.
   __ All views not grouped together. Fig(s)_____
   __ Views connected by projection lines or lead lines.
   Fig(s)_____
   __ Partial views. 37 CFR 1.84(h) 2

   __ View and enlarged view not labled separately or properly.
   Fig(s)_____
   __ Sectional views. 37 CFR 1.84 (h) 3
   __ Hatching not indicated for sectional portions of an object.
   Fig(s)_____
   __ Cross section not drawn same as view with parts in cross section with regularly spaced parallel oblique strokes. Fig(s)_____
8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)
   __ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned so that the top becomes the right side, except for graphs. Fig(s)_____
9. SCALE. 37 CFR 1.84(i)
   __ Scale not large enough to show mechanism with crowding when drawing is reduced in size to two-thirds in reproduction.
   Fig(s)_____
   __ Indication such as "actual size" or scale 1/2" not permitted.
   Fig(s)_____
10. CHARACTER OF LINES, NUMBERS, & LETTERS. 37 CFR 1.84(l)
   __ Lines, numbers & letters not uniformly thick and well defined, clean, durable, and black (except for color drawings).
   Fig(s) 6
11. SHADING. 37 CFR 1.84(m)
   __ Solid black shading areas not permitted.
   Fig(s) 15
   __ Shade lines, pale, rough and blurred. Fig(s)_____
12. NUMBERS, LETTERS, & REFERENCE CHARACTERS. 37 CFR 1.84(p)
   __ Numbers and reference characters not plain and legible. 37 CFR 1.84(p)(l) Fig(s)_____
   __ Numbers and reference characters not oriented in same direction as the view. 37 CFR 1.84(p)(l) Fig(s)_____
   __ English alphabet not used. 37 CFR 1.84(p)(2)
   Fig(s)_____
   __ Numbers, letters, and reference characters do not measure at least .32 cm. (1/8 inch) in height. 37 CFR(p)(3)
   Fig(s)_____
13. LEAD LINES. 37 CFR 1.84(q)
   __ Lead lines cross each other. Fig(s)_____
   __ Lead lines missing. Fig(s)_____
14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.84(t)
   __ Sheets not numbered consecutively, and in Arabic numerals, beginning with number 1. Sheet(s)_____
15. NUMBER OF VIEWS. 37 CFR 1.84(u)
   __ Views not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig(s)_____
   __ View numbers not preceded by the abbreviation Fig.
   Fig(s)_____
16. CORRECTIONS. 37 CFR 1.84(w)
   __ Corrections not made from prior PTO-948.
   Fig(s)_____
17. DESIGN DRAWING. 37 CFR 1.152
   __ Surface shading shown not appropriate. Fig(s)_____
   __ Solid black shading not used for color contrast.
   Fig(s)_____

COMMENTS:

ATTACHMENT TO PAPER NO. 3          REVIEWER _____

PTO Copy

MA000401

TO SEPARATE, HOLD TOP AND BOTTOM EDGES, SNAP-APART AND DISCARD CARBON

| FORM PTO-892 (REV. 2-92) | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 08/452646 | GROUP ART UNIT 3107 | ATTACHMENT TO PAPER NUMBER 3 |
|---|---|---|---|---|
| | NOTICE OF REFERENCES CITED | APPLICANT(S) Sean C, McDonald et al | | |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | | | | | | |
| | B | | | | | | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUB-CLASS | PERTINENT SHTS. DWG | PP. SPEC. |
|---|---|---|---|---|---|---|---|---|---|
| | L | 3 0 4 | 1-1979 | European | — | 414 | 273 | | |
| | M | | | | | | | | |
| | N | | | | | | | | |
| | O | | | | | | | | |
| | P | | | | | | | | |
| | Q | | | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| | R | |
| | S | |
| | T | |
| | U | |

| EXAMINER F.E. Werner | DATE 8/95 | |
|---|---|---|

* A copy of this reference is not being furnished with this office action.
(See Manual of Patent Examining Procedure, section 707.05 (a).)

MA000402

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

```
In re application of              :
MCDONALD, S.                      :
Application No.  08/452,646       :     Art Group_____
Filing Date  05/25/95            :
                                  :     August 1, 1995
                                  :
```

Short Title: AN AUTOMATED SYSTEM FOR SELECTING PACKAGES FROM A STORAGE

```
                  --------------------------
                       CHANGE OF ADDRESS
                  --------------------------
```

Hon. Commissioner of Patents and Trademarks
        Washington, D. C.

        Please note that effective September 1, 1995, the
attorney's address will be changed from 600 Grant Street,
Pittsburgh, Pa. to:

```
                                    Buchanan Ingersoll P.C.
*******************
*                 *                 One Oxford Centre
*   NEW ADDRESS   *
*                 *                 20th Floor
*******************
                                    301 Grant Street

                                    Pittsburgh, Pa.

                                    15219-1410
```

Please address all correspondence to us at the new address.
        The telephone numbers for our attorney(s) remains
unchanged, and the general telephone number is 412 562-8800
if you need any further information.

                        Respectfully submitted,

                        Buchanan Ingersoll
                        BUCHANAN INGERSOLL, P.C.


atty. docket 950441                                    move-usapp

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

MAIL ROOM
NOV 24 1995
PAT. & TRADEMARK OFF.

Group Art Unit 3107                                :    PATENT

Examiner F. Werner                                 :

In re application of                               :    AN AUTOMATED SYSTEM FOR
                                                        SELECTING AND DELIVERING
SEAN C. McDONALD et al.                            :    PACKAGES FROM A STORAGE
                                                        AREA
Serial No. 08/452,616                              :

Filed May 25, 1995                                 :

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on

**A M E N D M E N T**

Nov 21, 1995

Pittsburgh, Pennsylvania 15219

November 21, 1995

Hon. Commissioner of Patents and Trademarks

Washington, D.C. 20231

Sir:

Please amend the claims as follows:

24. (Amended) A system for selecting and delivering medicine packages from a holding means to fill orders comprising:

a) a holding means comprised of a frame having a plurality of support rods each support rod sized for holding a plurality of medicine packages, each rod associated with a given medicine and holding medicine packages with only the same medicine each support rod having a distinct X, Y coordinate location;

b)  [means for supplying medicine packages to the support rods;

c)] means for picking medicine packages from the support rods in accordance with instructions received from a computer, said picking means being able to access the holding means [and the supply means]; the picking means capable of holding a plurality of medicine packages which have been picked from the holding means; and

c [d]) a computer having a database containing an X, Y coordinate location [the locations of] for all packages in the holding means, the computer able to receive orders for packages and able to direct the means for picking packages.

25.  (Amended)  A system as described in claim 24 also comprising a supply [wherein the] structure [including] having a plurality of [rod supports from which the rods extend,] supply support rods which extend from said structure [with back rod supports] to form an X, Y coordinate system, with each supply support rod and medicine package [therein] thereon having a unique X and Y coordinate, said picking means disposed [adjacent] to have access to said structure such that a given medicine package on an associated supply support rod can be picked by the picking means to fill a patient's prescription; or a given medicine package in the [supplying means] supply structure can be picked by the picking means to restock [the] an associated rod in the holding means.

In claim 26, line 1, change "claim 25" to -- claim 24 --.

27.  (Amended)  A system as described in claim [26] 24 wherein the picking means includes at least one gripper that picks the medicine packages; and a tooling support structure having at least one column [to support] supporting the column such that the [tooling]

-2-





picking means moves along the column as the column moves along the row to pick a given

medicine package hanging from a corresponding support rod, or restock a given medicine

package on a corresponding support rod; and means for moving the column with respect to the

row, said moving means controlled by the computer.

4 28. (Amended) A system as described in claim 27 ³ wherein the [tooling] picking

means is comprised of:

a housing;

means for storing a plurality of medicine packages attached to the housing;

means for obtaining a medicine package, said obtaining means slidingly attached

to the housing such that it can move in a Z direction, which is perpendicular to the X and Y

directions, to pick a medicine package from a support [structure] rod when the housing is

adjacent to and aligned with a support rod, and can move in the Z direction to place a picked

package on the storing means; and

[wherein the] identifying means [is part of] attached to the at least one gripper

such that it can identify a package to be picked by the obtaining means, each of said packages

having an identity disposed on them which can be read by the identifying means.

7 30. (Amended) A system [as described in claim 29 wherein] for selecting and

delivering packages from a holding means to fill orders comprising:

a) holding means comprised of a frame having a plurality of support rods for

o—ɔ holding packages each support rod having a distinct X, Y coordinate location and holding a

plurality of packages, all of those packages on each support rod having similar contents;

-3-



b) picking means for picking packages from the support rods in accordance with instructions received from a computer, the picking means being able to access the holding means and having

a housing;

means for storing packages attached to the housing;

[the obtaining means includes] means for producing a suction;

a suction rod in fluid connection with the suction producing means, said suction rod slidingly attached with respect to the Y and Z directions to the housing and maintaining a suction therethrough when the suction producing means is activated[; a suction is connected to the suction rod through] by which a medicine package is picked with suction; and

means for sensing when a package is properly positioned [on the suction head] such that the package rod is then moved to the storing means and deposits the package thereon.

38. (Amended)  A system as claimed in claim 21 wherein the support rods extend from [the] back rod supports within the frame in sets of two, with a first rod and a second rod on each set pointing essentially in a Z direction, which is perpendicular to the X and Y directions, but approximately 180° apart from each other[, and wherein the picking means includes a first gripper and a second gripper that picks the medicine packages; and a first and second tooling support structure, each tooling support structure having at least one column and at least one row to support the column, such that the first and the second tooling moves along the respective column and the respective column moves along the respective row of the first and second tooling

-4-

MA000407

support structure, respectively, to pick a given medicine package from a corresponding support

rod, or restock a support rod with an associated medicine package].

## REMARKS

This is in response to the Office Action dated August 21, 1995. Applicants

confirm that claims 1 thru 23 and 36 were cancelled when the application was filed.

### The Section 112 Rejections

The Examiner rejected all pending claims under Section 112 citing specific

problems with claims 24, 27 and 25. Claim 24, 27 and 35 have been amended to overcome the

stated problems. Reconsideration of the claims as amended and withdrawal of the Section 112

rejections are, therefore, respectfully requested.

### The Section 103 Rejections

The pending claims have been rejected under Section 103 as obvious from United

States Patent No. 4,896,024 to Morello et al. in combination with European Patent Application

304 and Buttarazzi United States Patent No. 4,546,901. Applicants have amended claim 24 to

require that each support rod be able to hold a plurality of packages and that the picking means

be capable of holding a plurality of packages after those packages have been retrieved from the

holding means.

-5-

Morello et al. discloses an apparatus for dispensing and accepting the return of reusable articles such as videotapes. The apparatus has a housing containing a plurality of stationary locations each location being capable of holding a single reusable article therein and having its own location code. A transfer assembly is utilized to remove individual articles from selected locations and return articles to selected locations. As shown in Figures 3, 7, 8 and 9 and described at column 9, line 50 thru column 10, line 37, the Morello system includes a picker assembly having a platen suitable for receiving one selected article. The platen contains two, generally parallel, spaced apart plates mounted to a base plate. The plates define the location into which the selected article is positioned. The teaching of Morello et al. is that the transfer assembly be sent to a specific location to select one directed article stored in that location. The article is removed from the location into the picker assembly. There the identification code of the article is read. The picker assembly then delivers the article to a pick-up location. The picker assembly can also receive individual articles which have been placed at the gate mechanism 22. As disclosed, the picker assembly and the gate mechanism can handle only a single article at any given point in time. Similarly each location can accommodate a single article at any given point in time. Storage of many articles at a single location as well as selecting multiple packages before delivery is not taught or suggested by Morello. The Examiner has recognized that Morello also does not teach or suggest the use of support rods to hold the videotape packages.

The Examiner argues that those skilled in the art would use the rods of the cited European patent in the Morello system. However, if such a combination were made one would have a system that stored single packages at distinct locations on rods. Yet, the amended claims

-6-

MA000409

require a plurality of packages be held on each rod and also that the picking means be capable of holding a plurality of packages. This combination is not taught or suggested by the cited combination. Furthermore, these references do not teach or suggest storing similar packages of medicine on a single rod in an automated system. Since none of the other references teach or suggest the system of amended claim 24, the claimed system is patentable over the prior art. Claims 25 thru 29 depend directly or indirectly from claim 24 and, therefore, are also patentable.

Claim 30 has been rewritten in independent form. The Examiner did not cite any art against this claim. Hence, it is patentable over the prior art. Claims 31 thru 34 depend from patentable claim 30 and are, therefore, patentable.

Reconsideration and allowance of the claims as amended are respectfully requested.

Respectfully submitted,

BUCHANAN INGERSOLL, P.C.

By _____
Lynn J. Alstadt
Registration No. 29,362

Attorney for Applicants

(412) 562-1632

-7-

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| Group Art Unit 3107 | : | PATENT |
| Examiner F. Werner | : | |
| In re application of | : | AN AUTOMATED SYSTEM FOR SELECTING AND DELIVERING |
| SEAN C. McDONALD et al. | : | PACKAGES FROM A STORAGE AREA |
| Serial No. 08/452,646 | : | |
| Filed May 25, 1995 | : | |

<u>**L E T T E R**</u>

Pittsburgh, Pennsylvania 15219

November 22, 1995

Hon. Commissioner of Patents and Trademarks

    Washington, D.C. 20231

Sir:

        An Amendment was mailed to the Patent and Trademark Office on November 21,

1995, for the above-identified patent application.  Unfortunately, the serial number listed in the

identification of the application was incorrect.  We are, therefore, enclosing a revised page

bearing the correct Serial No. 08/452,646.

I hereby certify that this correspondence is being deposited with the United States Postal Service as first class mail in an envelope addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, on *11-22-95*

It is respectfully requested that this revised page be substituted for the page bearing the incorrect Serial No. 08/452,656.

Respectfully submitted,

BUCHANAN INGERSOLL, P.C.

By _____
Lynn J. Alstadt
Registration No. 29,362

Attorney for Applicants

(412) 562-1632

MA000412



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Sn 08/452-6

yv

| SERIAL NUMBER | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/452,646 | 05/25/95 | MCDONALD | S    950441 |

|  |  |
|---|---|
| | EXAMINER |
| F1M1/0318 | WERNER.F |
| | ART UNIT | PAPER NUMBER |

BUCHANAN INGERSOLL P.C.
ONE OXFORD CENTRE
20TH FLOOR
301 GRANT STREET
PITTSBURGH, PA. 15219-1410

ART UNIT    3107    PAPER NUMBER 7

DATE MAILED:    03/18/96

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

☐ This application has been examined    ☑ Responsive to communication filed on _Nov. 24, 1995_    ☑ This action is made final.

A shortened statutory period for response to this action is set to expire ___3___ month(s), _____ days from the date of this letter.
Failure to respond within the period for response will cause the application to become abandoned. 35 U.S.C. 133

**Part I    THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:**

1. ☐ Notice of References Cited by Examiner, PTO-892.    2. ☐ Notice of Draftsman's Patent Drawing Review, PTO-948.
3. ☐ Notice of Art Cited by Applicant, PTO-1449.    4. ☐ Notice of Informal Patent Application, PTO-152.
5. ☐ Information on How to Effect Drawing Changes, PTO-1474.    6. ☐ _____

**Part II    SUMMARY OF ACTION**

1. ☑ Claims _24 - 35_ _____ are pending in the application.

   Of the above, claims _____ are withdrawn from consideration.

2. ☑ Claims _1-23 and 36_ _____ have been cancelled.

3. ☑ Claims _30-34_ _____ are allowed.

4. ☑ Claims _26-29 and 24, 35_ _____ are rejected.

5. ☑ Claims _25_ _____ are objected to. 15

6. ☐ Claims _____ are subject to restriction or election requirement.

7. ☐ This application has been filed with informal drawings under 37 C.F.R. 1.85 which are acceptable for examination purposes.

8. ☐ Formal drawings are required in response to this Office action.

9. ☐ The corrected or substitute drawings have been received on _____. Under 37 C.F.R. 1.84 these drawings are ☐ acceptable; ☐ not acceptable (see explanation or Notice of Draftsman's Patent Drawing Review, PTO-948).

10. ☐ The proposed additional or substitute sheet(s) of drawings, filed on _____, has (have) been ☐ approved by the examiner; ☐ disapproved by the examiner (see explanation).

11. ☐ The proposed drawing correction, filed _____, has been ☐ approved; ☐ disapproved (see explanation).

12. ☐ Acknowledgement is made of the claim for priority under 35 U.S.C. 119. The certified copy has ☐ been received ☐ not been received ☐ been filed in parent application, serial no. _____; filed on _____.

13. ☐ Since this application appears to be in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under Ex parte Quayle, 1935 C.D. 11; 453 O.G. 213.

14. ☐ Other

**EXAMINER'S ACTION**

PTOL-326 (Rev. 2/93)

MA000413

Serial Number: 08/452,646                                         Page 2
Art Unit: 3107

-Part III-

1.   Claims 24-35 are rejected under 35 U.S.C. § 103 as being

unpatentable over .

     Re at least base claim 24, it is not clear whether the picking

means holds the packages at the same time or at a different time.

2.   The following is a quotation of 35 U.S.C. § 103 which forms
the basis for all obviousness rejections set forth in this Office
action:

     A patent may not be obtained though the invention is not
     identically disclosed or described as set forth in section 102
     of this title, if the differences between the subject matter
     sought to be patented and the prior art are such that the
     subject matter as a whole would have been obvious at the time
     the invention was made to a person having ordinary skill in
     the art to which said subject matter pertains.  Patentability
     shall not be negatived by the manner in which the invention
     was made.

     Subject matter developed by another person, which qualifies as
     prior art only under subsection (f) or (g) of section 102 of
     this title, shall not preclude patentability under this
     section where the subject matter and the claimed invention
     were, at the time the invention was made, owned by the same
     person or subject to an obligation of assignment to the same
     person.

3.   This application currently names joint inventors.   In
considering patentability of the claims under 35 U.S.C. § 103, the
examiner presumes that the subject matter of the various claims was
commonly owned at the time any inventions covered therein were made
absent any evidence to the contrary.  Applicant is advised of the
obligation under 37 C.F.R. § 1.56 to point out the inventor and
invention dates of each claim that was not commonly owned at the
time a later invention was made in order for the examiner to
consider the applicability of potential 35 U.S.C. § 102(f) or (g)
prior art under 35 U.S.C. § 103.

4.   Claims 24, and 35 are rejected under 35 U.S.C. § 103 as being

unpatentable over Morello et al in view of the European Patent,

(,304).

     Morello et al disclose storage areas 40, automated picking

MA000414

Serial Number: 08/452,646                                              Page 3
Art Unit: 3107

means 20, 63, etc. on tracks 98 (99), supplying means 22 and
computer means 26 to assign the package to X-Y coordinates (column
11, lines 11-17) and to control the picking means, but do not
disclose support rods which is disclosed by the European Patent
(,304) (15, etc.) and in view of the same, it would have been
obvious to have substituted holding means as taught by the European
Patent (,304) as this would have been the substitution of
equivalent holding means productive of no unexpected result. When
storing articles on a rod, it would have been obvious to have
collected a plurality of articles by the picking means as taught by
the European Patent (,304) (15, 20, 21, etc.). The handling of
conventional medicine packages (as claimed) would have been obvious
to one skilled in the art. Re claim 35, it would have been obvious
to have conventionally formed the rods and gripper (as claimed)
depending on the intended application.

4. Claims 26 to 29 are rejected under 35 U.S.C. § 103 as being
unpatentable over Morello et al in view of the European Patent
(,304) as applied to claims 24, and 35 above, and further in view
of Buttarazzi.

Buttarazzi (42, 21, 88, etc.) teaches and renders obvious the
alternate use of containers (filled by picking means) placed one
conveyor. The use of conventional plural containers (as claimed)
would have been obvious. Re claims 28 and 29, the use of
conventional identifying means (such as a bar code in claim 29)
would have been obvious.

Serial Number: 08/452,646                                        Page 4
Art Unit: 3107

5.    Claim 25 is objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims.

6.    Applicant's arguments filed Nov. 24, 1995 have been fully considered but they are not deemed to be persuasive.

Re applicants' "Remarks" on pages 6 and 7, please note the above rejections.

7.    **THIS ACTION IS MADE FINAL.**    Applicant is reminded of the extension of time policy as set forth in 37 C.F.R. § 1.136(a).

A SHORTENED STATUTORY PERIOD FOR RESPONSE TO THIS FINAL ACTION IS SET TO EXPIRE THREE MONTHS FROM THE DATE OF THIS ACTION. IN THE EVENT A FIRST RESPONSE IS FILED WITHIN TWO MONTHS OF THE MAILING DATE OF THIS FINAL ACTION AND THE ADVISORY ACTION IS NOT MAILED UNTIL AFTER THE END OF THE THREE-MONTH SHORTENED STATUTORY PERIOD, THEN THE SHORTENED STATUTORY PERIOD WILL EXPIRE ON THE DATE THE ADVISORY ACTION IS MAILED, AND ANY EXTENSION FEE PURSUANT TO 37 C.F.R. § 1.136(a) WILL BE CALCULATED FROM THE MAILING DATE OF THE ADVISORY ACTION. IN NO EVENT WILL THE STATUTORY PERIOD FOR RESPONSE EXPIRE LATER THAN SIX MONTHS FROM THE DATE OF THIS FINAL ACTION.

MA000416

Serial Number: 08/452,646                                          Page 5
Art Unit: 3107

8.    Any inquiry concerning this communication should be directed

to F. E. Werner at telephone number (703) 308-1140.

Summary:

        Claims 24, 26-29 and 35 are rejected.

        Claims 30-34 are allowed.

        Claims 25 is objected to

        Final Rejection-SSP 3mos.

Werner/oc
March 04, 1996

                                        FRANK E. WERNER
                                        PRIMARY EXAMINER 3|96
                                        GROUP 3100



3107

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Group Art Unit 3107                    :          PATENT

Examiner F. Werner                     :

In re application of                   :    AN AUTOMATED SYSTEM FOR
                                            SELECTING AND DELIVERING
SEAN C. McDONALD et al.                :    PACKAGES FROM A STORAGE
                                            AREA
Serial No. 08/452,646                  :

Filed May 25, 1995                     :

I hereby certify that this correspondence is being
deposited with the United States Postal Service as first
class mail in an envelope addressed to: Commissioner
of Patents and Trademarks, Washington, D.C. 20231,
on

_May 20 1996_
         Buchanan Ingersoll

**A M E N D M E N T**

Pittsburgh, Pennsylvania 15219

May 20, 1996

Hon. Commissioner of Patents and Trademarks

   Washington, D.C.  20231

Sir:

                    Please amend the claims as follows:

                    24. (Twice Amended)  A system for selecting and delivering medicine packages

from a holding means to fill orders comprising:

                    a)  a holding means comprised of a frame having a plurality of support rods each

support rod sized for holding a plurality of medicine packages, each rod associated with a given

medicine and holding medicine packages with only the same medicine each support rod having a

distinct X, Y coordinate location;

b) means for picking medicine packages from the support rods in accordance with instructions received from a computer, said picking means being able to access the holding means; the picking means capable of holding a plurality of medicine packages which have been picked from the holding means; [and]

c) a computer having a database containing an X, Y coordinate location for all packages in the holding means, the computer able to receive orders for packages and able to direct the means for picking packages; and



d) a supply structure having a plurality of supply support rods which extend from said structure to form an X, Y coordinate system, with each supply support rod and medicine package thereon having a unique X and Y coordinate, said picking means disposed to have access to said structure such that a given medicine package on an associated supply support rod can be picked by the picking means to fill a patient's prescription or a given medicine package in the supply structure can be picked by the picking means to restock an associated rod in the holding means.

Cancel claim 25.

<u>REMARKS</u>

This is in response to the Office Action dated March 18, 1996. By this Amendment applicants have amended claim 24 to include the subject matter of claim 25 and cancelled claim 25.

-2-

MA000419

In the Office Action the Examiner allowed claims 30 thru 34 and said claim 25 would be allowable if rewritten in independent form. The present amendment does this. Therefore, claim 24 as amended is allowable. Claims 26, 27, 28, 29 and 35 depend directly or indirectly from claim 24. Consequently, these claims are allowable.

Reconsideration and allowance of the claims as amended are respectfully requested.

Respectfully submitted,

BUCHANAN INGERSOLL, P.C.

By _Lynn J. Alstadt_

Lynn J. Alstadt
Registration No. 29,362

Attorney for Applicants

(412) 562-1632

-3-

MA000420



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

Sn 08/452646

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| | | MCDONALD | 950441 |

31M1/0606

| WERNER, F | EXAMINER |
|---|---|

| ART UNIT | PAPER NUMBER |
|---|---|
| 3107 | 9 |

06/06/96

DATE MAILED:

## NOTICE OF ALLOWABILITY

### PART I.

1. ☑ This communication is responsive to *the amendment of May 22, 1996*

2. ☑ All the claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice Of Allowance And Issue Fee Due or other appropriate communication will be sent in due course.

3. ☑ The allowed claims are *24 and 26-35*

4. ☐ The drawings filed on _____ are acceptable.

5. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119. The certified copy has [_] been received. [_] not been received. [_] been filed in parent application Serial No. _____ filed on _____

6. ☐ Note the attached Examiner's Amendment.

7. ☐ Note the attached Examiner Interview Summary Record, PTOL-413.

8. ☐ Note the attached Examiner's Statement of Reasons for Allowance.

9. ☐ Note the attached NOTICE OF REFERENCES CITED, PTO-892.

10. ☐ Note the attached INFORMATION DISCLOSURE CITATION, PTO-1449.

11. ☑ *The claims have been allowed because the prior art does not disclose or teach the ~application thereof to some of the claimed combination of the claimed holding means, picking means, computer and supply structure, claim 24 and holding means, picking means*

### PART II.

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE THREE MONTHS FROM THE "DATE MAILED" indicated on this form. Failure to timely comply will result in the ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

1. ☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

2. ☑ APPLICANT MUST MAKE THE DRAWING CHANGES INDICATED BELOW IN THE MANNER SET FORTH ON THE REVERSE SIDE OF THIS PAPER.

   a. ☑ Drawing informalities are indicated on the NOTICE RE PATENT DRAWINGS, PTO-948, attached hereto or to Paper No. ___3___. CORRECTION IS REQUIRED.

   b. ☐ The proposed drawing correction filed on _____ has been approved by the examiner. CORRECTION IS REQUIRED.

   c. ☐ Approved drawing corrections are described by the examiner in the attached EXAMINER'S AMENDMENT. CORRECTION IS REQUIRED.

   d. ☑ Formal drawings are now REQUIRED.

---

Any response to this letter should include in the upper right hand corner, the following information from the NOTICE OF ALLOWANCE AND ISSUE FEE DUE: ISSUE BATCH NUMBER, DATE OF THE NOTICE OF ALLOWANCE, AND SERIAL NUMBER.

Attachments:
- Examiner's Amendment
- Examiner Interview Summary Record, PTOL-413
- Reasons for Allowance
- Notice of References Cited, PTO-892
- Information Disclosure Citation, PTO-1449
- Notice of Informal Application, PTO-152
- Notice re Patent Drawings, PTO-948
- Listing of Bonded Draftsmen
- Other

FRANK E. WERNER
PRIMARY EXAMINER    6/96
GROUP 3100

PTOL-37 (REV. 4-89) *



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

Address: Box ISSUE FEE
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

☐ Note attached communication from the Examiner

☐ This notice is issued in view of applicant's communication filed _____

SUCHMAN INGERSOLL, P.C.
ONE OXFORD CENTRE
20TH FLOOR
301 GRANT STREET
PITTSBURGH PA 15219-1410

**NOTICE OF ALLOWANCE
AND ISSUE FEE DUE**

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| 08/492,645 | 06/20/95 | 011 | WERNER, T | 3107 | 06/04/96 |

First Named Applicant: McDONALD, BRIAN C.

TITLE OF INVENTION: AUTOMATED SYSTEM FOR SELECTING AND DELIVERING PACKAGES FROM A STORAGE AREA

| | ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|---|
| 3 | 650111 | 014-005.000 | 072 | UTILITY | 04 | 1,285.00 | 09/04/96 |

**THE APPLICATION IDENTIFIES ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT. *PROSECUTION ON THE MERITS IS CLOSED.***

**THE ISSUE FEE MUST BE PAID WITHIN *THREE MONTHS* FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. THIS STATUTORY PERIOD CANNOT BE EXTENDED.**

**HOW TO RESPOND TO THIS NOTICE:**

I. Review the SMALL ENTITY Status shown above.
If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

   A. If the status is changed, pay twice the amount of the FEE DUE shown above and notify the Patent and Trademark Office of the change in status, or
   B. If the Status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:
A. Pay FEE DUE shown above, or
B. File verified statement of Small Entity Status before, or with, pay of 1/2 the FEE DUE shown above.

II. Part B of this notice should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE. Even if the ISSUE FEE has already been paid by charge to deposit account, Part B should be completed and returned. If you are charging the ISSUE FEE to your deposit account, Part C of this notice should also be completed and returned.

III. All communications regarding this application must give series code (or filing date), serial number and batch number. Please direct all communication prior to issuance to Box ISSUE FEE unless advised to contrary.

***IMPORTANT REMINDER: Patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.***

PTOL-85 (REV. 12-93) (0851-0033)

4. PATENT AND TRADEMARK OFFICE COPY

PART B—ISSUE FEE TRANSMITTAL

242-625①

**ING INSTRUCTIONS:** This form should be used for transmitting the ISSUE FEE. Blocks 2 through 6 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advance orders and notification of maintenance fees will be mailed to addressee entered in Block 1 unless you direct otherwise, by: (a) specifying a new correspondence address in Block 3 below; or (b) providing the PTO with a separate "FEE ADDRESS" for maintenance fee notifications with the payment of Issue Fee or thereafter. See reverse for Certificate of Mailing.

| 1. CORRESPONDENCE ADDRESS | 2. INVENTOR(S) ADDRESS CHANGE (Complete only if there is a change) |
|---|---|
| RTC | INVENTOR'S NAME _____ RECEIVED Publishing Division |
| 31M1/0606 | Street Address |
|  | City, State and ZIP Code    SEP 9 1996 |
|  | CO-INVENTOR'S NAME |
|  | Street Address    GP |
| 1410 | City, State and ZIP Code |
|  | ☐ Check if additional changes are on reverse side |

| SERIES CODE/SERIAL NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| 03-452-646 |  | 011    WERNER, F | 3107    08/06/96 |  |

First Named Applicant    WERNER, F

TITLE OF INVENTION ... SELECTING AND DELIVERING PACKAGES FROM A STORAGE ...

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| 3 |  | 072 | UTILITY | YES | $625.00 | 09/06/96 |

| 3. Correspondence address change (Complete only if there is a change) | 4. For printing on the patent front page, set the names of not more than 3 registered patent attorneys or agents OR, alternatively, the name of a firm having as a member a registered attorney or agent. If no name is listed, no name will be printed. | 1 Buchanan Ingersoll, P. |
|---|---|---|
|  |  | 2 Lynn J. Alstadt |
|  |  | 3 _____ |

DO NOT USE THIS SPACE

5. ASSIGNMENT DATA TO BE PRINTED ON THE PATENT (print or type)

(1) NAME OF ASSIGNEE:
Automated Healthcare, Inc.

(2) ADDRESS: (CITY & STATE OR COUNTRY)
Pittsburgh, PA

A. ☐ This application is NOT assigned.

☒ Assignment previously submitted to the Patent and Trademark Office.

☐ Assignment is being submitted under separate cover. Assignments should be directed to Box ASSIGNMENTS.

*PLEASE NOTE:* Unless an assignee is identified in Block 5, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

6a. The following fees are enclosed:
☒ Issue Fee    ☐ Advance Order - # of Copies _____
6b. The following fees should be charged to:
DEPOSIT ACCOUNT NUMBER    02-4553
(ENCLOSE PART C)
☐ Issue Fee    ☐ Advance Order - # of Copies _____
☒ Any Deficiencies in Enclosed Fees

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.

(Authorized Signature)    9/5/96

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

**1. TRANSMIT THIS FORM WITH FEE-CERTIFICATE OF MAILING ON REVERSE**

PTOL-85B (REV.12-93)(0651-0033)

MA000423

**Certificate of Mailing**

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to:

Box ISSUE FEE
Commissioner of Patents and Trademarks
Washington, D.C. 20231

on _____September 5, 1996_____

_____(Date)

_____Vicki Cremonese_____
(Name of person making deposit)

_____
(Signature)

_____
(Date)

Note: If this certificate of mailing is used, it can only be used to transmit the Issue Fee. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing.

Burden Hour Statement: This form is estimated to take .2 hours to complete. Time will vary depending upon the needs of the individual case. Any comments on the amount of time you are required to complete this form should be sent to the Office of Information Systems, Patent and Trademark Office, Washington, D.C. 20231, and to the Office of Information and Regulatory Affairs, Office of Management and Budget, (Project 0651-0033), Washington, D.C. 20503. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND TO: Commissioner of Patents and Trademarks, Box Issue Fee, Washington, DC 20231.

REVERSE PTOL-85B (REV. 12-93)(0651-0033)

MA000424

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| Group Art Unit 3107 | : | PATENT |
| Examiner F. Werner | : | |
| In re application of | : | **AN AUTOMATED SYSTEM** |
| | | **FOR SELECTING AND** |
| Sean C. McDonald | : | **DELIVERING PACKAGES** |
| | | **FROM A STORAGE AREA** |
| Serial No. 08/452,646 | : | |
| Filed May 25, 1995 | : | |
| Allowed June 6, 1996 | : | |

## L E T T E R

Pittsburgh, Pennsylvania  15219

September 5, 1996

Hon. Commissioner of Patents and Trademarks

    Washington, D.C.  20231

Sir:

      Please substitute the enclosed ten (10) sheets of drawings for those originally filed

with the application.  Entry of these drawings overcomes the objections to Figures 1 thru 3, 5, 6,

7, 10, 11, 15 and 19.  The remaining drawings were approved.

      A copy of the Draftsman's Rejection Sheet is enclosed.  Entry of these drawings

overcomes all of the objections there listed.

      Respectfully submitted,

      BUCHANAN INGERSOLL, P.C.

      By *Lynn J. Alstadt*
          Lynn J. Alstadt
          Registration No. 29,362

(412) 562-1632

MA000425



*Fig.1.*

MA000426



FIGURE 2

MA000427



FIGURE 3



*Figure 5*



Figure 6



FIGURE 7

MA000431



FIGURE 10

MA000432



Figure 11



*Figure 15*

MA000434



FIGURE 19



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/452,646 | 05/25/95 | MCDONALD          S | 956441 |

```
┌                          ┐
       4102/0911
  BUCHANAN INGERSOLL P.C.
  ONE OXFORD CENTRE
  20TH FLOOR
  301 GRANT STREET
  PITTSBURGH, PA. 15219-1410
└                          ┘
```

| | EXAMINER |
|---|---|
| | WERNER |
| ART UNIT | PAPER NUMBER |
| 3107 | |

DATE MAILED:   09/11/96

## NOTICE OF DRAWING REQUIREMENTS

☑ Corrected/substituted drawings for the above-identified application, received in the PTO on ___9-6-96___, are still considered informal for the reason(s) identified on the attached Form PTO-948.

☐ Applicant has the time remaining in the response period set in the Notice of Allowability or Notice of Drawing Requirements mailed _____ to overcome the objections raised in the attached Form PTO-948. This response period may be extended under the provisions of 37 CFR 1.136 (a) by filing the appropriate request and fee before the end of the six month statutory period for response.

☑ The PTO delayed in reviewing the corrected drawings. Applicant is given ONE month time limit from the date of this letter to provide corrected drawings. NO EXTENSION OF THIS TIME LIMIT MAY BE GRANTED UNDER EITHER 37 CFR 1.136(a) or (b). See MPEP 714.03. However, the response period set in the Notice of Allowability or Notice of Drawing Requirements mailed ___6-6-96___ may be extended under the provisions of 37 CFR 1.136(a) by filing the appropriate request and fee before the end of the six month statutory period for response.

☐ The PTO delayed in reviewing the corrected drawings. Applicant is given ONE month time limit from the date of this letter to provide corrected drawings. NO EXTENSION OF THIS TIME LIMIT MAY BE GRANTED UNDER EITHER 37 CFR 1.136(a) or (b). See MPEP 714.03

☑ ATTACHMENT: PTO-948

FORM PTOL-455 (REV. 8-95)

PATENT AND TRADEMARK OFFICE

___9-11-96___
DATE

Form PTO 948 (Rev. 10-94)        U.S. DEPARTMENT OF COMMERCE - Patent and Trademark Office    Application No. 08/452,646

## NOTICE OF DRAFTSPERSON'S PATENT DRAWING REVIEW

PTO Draftpersons review all originally filed drawings regardless of whether they are designated as formal or informal. Additionally, patent Examiners will review the drawings for compliance with the regulations. Direct telephone inquiries concerning this review to the Drawing Review Branch, 703-305-8404.

The drawings filed (insert date) **9-6-96** are
A. ____ not objected to by the Draftsperson under 37 CFR 1.84 or 1.152.
B. ____ objected to by the Draftsperson under 37 CFR 1.84 or 1.152 as indicated below. The Examiner will require submission of new, corrected drawings when necessary. Corrected drawings must be submitted according to the instructions on the back of this Notice.

1. DRAWINGS. 37 CFR 1.84(a): Acceptable categories of drawings;
Black ink. Color;
____ Not black solid lines. Fig(s)_____
____ Color drawings are not acceptable until petition is granted.
Fig(s)_____
2. PHOTOGRAPHS. 37 CFR 1.84(b)
____ Photographs are not acceptable until petition is granted.
Fig(s)_____
____ Photographs not properly mounted (must use bristol board or photographic double-weight paper). Fig(s)_____
____ Poor quality (half-tone). Fig(s)_____
3. GRAPHIC FORMS. 37 CFR 1.84 (d)
____ Chemical or mathematical formula not labeled as separate figure.
Fig(s)_____
____ Group of waveforms not presented as a single figure, using common vertical axis with time extending along horizontal axis.
Fig(s)_____
____ Individual waveform not identified with a separate letter designation adjacent to the vertical axis. Fig(s)_____
4. TYPE OF PAPER. 37 CFR 1.84(e)
____ Paper not flexible, strong, white, smooth, nonshiny, and durable.
Sheet(s)_____
____ Erasures, alterations, overwritings, interlineations, cracks, creases, and folds copy machine marks not accepted. Fig(s)_____
____ Mylar, velum paper is not acceptable (too thin). Fig(s)_____
5. SIZE OF PAPER. 37 CFR 1.84(f): Acceptable sizes:
21.6 cm. by 35.6 cm. (8 1/2 by 14 inches)
21.6 cm. by 33.1 cm. (8 1/2 by 13 inches)
21.6 cm. by 27.9 cm. (8 1/2 by 11 inches)
21.0 cm. by 29.7 cm. (DIN size A4)
____ All drawing sheets not the same size. Sheet(s)_____
____ Drawing sheet not an acceptable size. Sheet(s)_____
6. MARGINS. 37 CFR 1.84(g): Acceptable margins:

| Paper size | | | |
|---|---|---|---|
| 21.6 cm. X 35.6 cm. | 21.6 cm. X 33.1 cm. | 21.6 cm. X 27.9 cm. | 21.0 cm. X 29.7 cm. |
| (8 1/2 X 14 inches) | (8 1/2 X 13 inches) | (8 1/2 X 11 inches) | (DIN Size A4) |
| T 5.1 cm. (2") | 2.5 cm. (1") | 2.5 cm. (1") | 2.5 cm. |
| L .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. |
| R .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. (1/4") | 1.5 cm. |
| B .64 cm. (1/4") | .64 cm. (1/4") | .64 cm. (1/4") | 1.0 cm. |

Margins do not conform to chart above.
Sheet(s) FIG 1D / 16 - 1B
____ Top (T) ____ Left (L) ____ Right (R) ____ Bottom (B)

7. VIEWS. 37 CFR 1.84(h)
REMINDER: Specification may require revision to correspond to drawing changes.
____ All views not grouped together. Fig(s)_____
____ Views connected by projection lines or lead lines.
Fig(s)_____
____ Partial views. 37 CFR 1.84(h) 2

____ View and enlarged view not labled separately or properly.
Fig(s)_____
____ Sectional views. 37 CFR 1.84 (h) 3
____ Hatching not indicated for sectional portions of an object.
Fig(s)_____
____ Cross section not drawn same as view with parts in cross section with regularly spaced parallel oblique strokes. Fig(s)_____
8. ARRANGEMENT OF VIEWS. 37 CFR 1.84(i)
____ Words do not appear on a horizontal, left-to-right fashion when page is either upright or turned so that the top becomes the right side, except for graphs. Fig(s)_____
9. SCALE. 37 CFR 1.84(k)
____ Scale not large enough to show mechanism with crowding when drawing is reduced in size to two-thirds in reproduction.
Fig(s)_____
____ Indication such as "actual size" or scale 1/2" not permitted.
Fig(s)_____
10. CHARACTER OF LINES, NUMBERS, & LETTERS. 37 CFR 1.84(l)
____ Lines, numbers & letters not uniformly thick and well defined, clean, durable, and black (except for color drawings).
Fig(s)_____
11. SHADING. 37 CFR 1.84(m)
____ Solid black shading areas not permitted.
Fig(s)_____
____ Shade lines, pale, rough and blurred. Fig(s)_____
12. NUMBERS, LETTERS, & REFERENCE CHARACTERS. 37 CFR 1.84(p)
____ Numbers and reference characters not plain and legible. 37 CFR 1.84(p)(l) Fig(s)_____
____ Numbers and reference characters not oriented in same direction as the view. 37 CFR 1.84(p)(l) Fig(s)_____
____ English alphabet not used. 37 CFR 1.84(p)(2) Fig(s)_____
✓ Numbers, letters, and reference characters do not measure at least .32 cm. (1/8 inch) in height. 37 CFR(p)(3)
Fig(s) 2
13. LEAD LINES. 37 CFR 1.84(q)
____ Lead lines cross each other. Fig(s)_____
____ Lead lines missing. Fig(s)_____
14. NUMBERING OF SHEETS OF DRAWINGS. 37 CFR 1.84(t)
____ Sheets not numbered consecutively, and in Arabic numerals, beginning with number 1. Sheet(s)_____
15. NUMBER OF VIEWS. 37 CFR 1.84(u)
____ Views not numbered consecutively, and in Arabic numerals, beginning with number 1. Fig(s)_____
____ View numbers not preceded by the abbreviation Fig.
Fig(s)_____
16. CORRECTIONS. 37 CFR 1.84(w)
✓ Corrections not made from prior PTO-948.
Fig(s) 1a - 1D
17. DESIGN DRAWING. 37 CFR 1.152
____ Surface shading shown not appropriate. Fig(s)_____
____ Solid black shading not used for color contrast.
Fig(s)_____

COMMENTS:




ATTACHMENT TO PAPER NO. ____        REVIEWER J. Chase        DATE 9-11-96
PTO-C

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Group Art Unit 3107                    :            PATENT

Examiner F. Werner                     :

In re application of                   :        AN AUTOMATED SYSTEM
                                                FOR SELECTING AND
Sean C. McDonald                       :        DELIVERING PACKAGES
                                                FROM A STORAGE AREA.
Serial No. 08/452,646                  :

Filed May 25, 1995                     :

Allowed June 6, 1996                   :

<b>L E T T E R</b>

Pittsburgh, Pennsylvania 15219

October 4, 1996

Hon. Commissioner of Patents and Trademarks

    Washington, D.C. 20231

Sir:

        Please substitute the enclosed six (6) sheets of drawings containing Figures 2, 10,

16, 17, 18 and 19 for those filed on September 9, 1996. These drawings are believed to

overcome the objections raised by the Official Draftsman to the figures previously submitted.

        A copy of the Draftsman's Objections is also enclosed.

                        Respectfully submitted,

                        BUCHANAN INGERSOLL, P.C.

                        By

                        Lynn J. Alstadt
                        Registration No. 29,362

(412) 562-1632

MA000438

FIGURE 2





FIGURE 10



FIGURE 16

MA000441



FIGURE 17



FIGURE 18



FIGURE 19



The United States of America

PTO UTILITY GRANT
Paper Number _13_

**The Commissioner of Patents and Trademarks**

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

**United States Patent**

*Grants to the person(s) having title to this patent the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States of America or importing the invention into the United States of America for the term set forth below, subject to the payment of maintenance fees as provided by law.*

*If this application was filed prior to June 8, 1995, the term of this patent is the longer of seventeen years from the date of grant of this patent or twenty years from the earliest effective U.S. filing date of the application, subject to any statutory extension.*

*If this application was filed on or after June 8, 1995, the term of this patent is twenty years from the earliest effective U.S. filing date of the application, subject to any statutory extension.*

*Bruce Lehman*
Commissioner of Patents and Trademarks

*Attest*

Form PTO-1584 (Rev. 5/96)

{RIGHT INSIDE}

MA000445



**MULTIPLE DEPENDENT CLAIM**
**FEE CALCULATION SHEET**
*(FOR USE WITH FORM PTO-875)*

| SERIAL NO. | FILING DATE |
|---|---|
| APPLICANT(S) | |

**CLAIMS**

| CLAIMS | AS FILED | | AFTER 1st AMENDMENT | | AFTER 2nd AMENDMENT | |
|---|---|---|---|---|---|---|
| | IND. | DEP. | IND. | DEP. | IND. | DEP. |
| 1 | | | | | | |
| 2 | | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| 7 | | | | | | |
| 8 | | | | | | |
| 9 | | | | | | |
| 10 | | | | | | |
| 11 | | | | | | |
| 12 | | | | | | |
| 13 | | | | | | |
| 14 | | | | | | |
| 15 | | | | | | |
| 16 | | | | | | |
| 17 | | | | | | |
| 18 | | | | | | |
| 19 | | | | | | |
| 20 | | | | | | |
| 21 | | | | | | |
| 22 | | | | | | |
| 23 | | | | | | |
| 24 | | | | | | |
| 25 | | | | | | |
| 26 | | | | | | |
| 27 | | | | | | |
| 28 | | | | | | |
| 29 | | | | | | |
| 30 | | | | | | |
| 31 | | | | | | |
| 32 | | | | | | |
| 33 | | | | | | |
| 34 | | | | | | |
| 35 | | | | | | |
| 36 | | | | | | |
| 37 | | | | | | |
| 38 | | | | | | |
| 39 | | | | | | |
| 40 | | | | | | |
| 41 | | | | | | |
| 42 | | | | | | |
| 43 | | | | | | |
| 44 | | | | | | |
| 45 | | | | | | |
| 46 | | | | | | |
| 47 | | | | | | |
| 48 | | | | | | |
| 49 | | | | | | |
| 50 | | | | | | |
| TOTAL IND. | | | | | | |
| TOTAL DEP. | | | | | | |
| TOTAL CLAIMS | | | | | | |

| CLAIMS | * | | * | | * | |
|---|---|---|---|---|---|---|
| | IND. | DEP. | IND. | DEP. | IND. | DEP. |
| 51 | | | | | | |
| 52 | | | | | | |
| 53 | | | | | | |
| 54 | | | | | | |
| 55 | | | | | | |
| 56 | | | | | | |
| 57 | | | | | | |
| 58 | | | | | | |
| 59 | | | | | | |
| 60 | | | | | | |
| 61 | | | | | | |
| 62 | | | | | | |
| 63 | | | | | | |
| 64 | | | | | | |
| 65 | | | | | | |
| 66 | | | | | | |
| 67 | | | | | | |
| 68 | | | | | | |
| 69 | | | | | | |
| 70 | | | | | | |
| 71 | | | | | | |
| 72 | | | | | | |
| 73 | | | | | | |
| 74 | | | | | | |
| 75 | | | | | | |
| 76 | | | | | | |
| 77 | | | | | | |
| 78 | | | | | | |
| 79 | | | | | | |
| 80 | | | | | | |
| 81 | | | | | | |
| 82 | | | | | | |
| 83 | | | | | | |
| 84 | | | | | | |
| 85 | | | | | | |
| 86 | | | | | | |
| 87 | | | | | | |
| 88 | | | | | | |
| 89 | | | | | | |
| 90 | | | | | | |
| 91 | | | | | | |
| 92 | | | | | | |
| 93 | | | | | | |
| 94 | | | | | | |
| 95 | | | | | | |
| 96 | | | | | | |
| 97 | | | | | | |
| 98 | | | | | | |
| 99 | | | | | | |
| 100 | | | | | | |
| TOTAL IND. | | | | | | |
| TOTAL DEP. | | | | | | |
| TOTAL CLAIMS | | | | | | |

PTO-1360 (3-78)

*MAY BE USED FOR ADDITIONAL CLAIMS OR AMENDMENTS

U.S. DEPARTMENT of COMMERCE
Patent and Trademark Office

MA000447

