IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MCKESSON AUTOMATION, INC., )
)
       Plaintiff, )
)
v. ) Civ. No. 06-028-SLR
)
SWISSLOG ITALIA S.P.A. and )
TRANSLOGIC CORPORATION, )
)
       Defendants. )

Neal C. Belgam, Esquire of Proctor Heyman LLP, Wilmington, Delaware; Christine S. Azar, Esquire of Blank Rome LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Blair M. Jacobs, Esquire, Charles J. Hawkins, Esquire, Christina A. Ondrick, Esquire, and Christopher L. May, Esquire of McDermott Will & Emery.

Julia Heaney, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Alfred R. Fabricant, Esquire, Lawrence C. Drucker, Esquire, Richard LaCava, Esquire, and Bryan N. DeMatteo, Esquire of Dickstein Shapiro LLP.

**MEMORANDUM OPINION**

Dated: January 12, 2012
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Plaintiff McKesson Automation, Inc. ("McKesson" or "plaintiff") is the owner of U.S. Patent Nos. 5,468,110 ("the '110 patent") and 5,593,267 ("the '267 patent") (collectively, "the patents in suit"). The patents in suit claim automated systems for selecting and delivering packages to fill orders, such as patient prescriptions. ('110 patent, col. 3:7-10; '267 patent, col. 3:7-10) In its complaint for patent infringement, filed January 13, 2006, McKesson asserts that defendants Swisslog Italia S.p.A. ("Swisslog Italia") and Translogic Corporation ("Translogic") (collectively, "Swisslog" or "defendants") infringe the patents in suit through the manufacture and sale of the PillPick Automated Drug Management System ("the PillPick System"). (D.I. 1 at ¶ 13)

A six day jury trial commenced on March 21, 2011. (D.I. 622) The jury was tasked with deciding: 1) whether McKesson had proven, by a preponderance of the evidence, that defendants' product, the PillPick System, infringed asserted claims in the patents in suit; and 2) whether defendants had proven, by clear and convincing evidence, that the patents in suit were invalid. (Id.) The jury found that the patents were valid but were not infringed; the court entered judgment in accordance with the jury's verdict. (D.I. 637)

On April 28, 2011, plaintiff filed two post-trial motions: 1) a renewed motion for judgment as a matter of law on the issue of infringement (under Fed. R. Civ. P. 50(b))[1]

---

[1] After the presentation of evidence, but prior to the the verdict being rendered, plaintiff filed three motions for judgment as a matter of law - two on validity and one on infringement. (D.I. 626; 629; 630) These motions are moot and/or waived to the extent that they were not addressed in plaintiff's subsequently filed post-trial motions, i.e., D.I. 641 and 642.

(D.I. 642); and 2) a motion for a new trial (under Fed. R. Civ. P. 59(a)) or, alternatively, a motion to alter or amend the judgment (under Fed. R. Civ. P. 59(e)) (D.I. 641). For the reasons that follow, the court denies both of plaintiff's motions.[2]

## II. BACKGROUND

### A. The Parties

McKesson is a Pennsylvania corporation with its principal place of business in Cranberry Township, Pennsylvania. (D.I. 1 at ¶ 1) McKesson designs, manufactures, markets and sells, inter alia, automated inpatient medication and supply management systems. (Id.)

Swisslog Italia is an entity formed under the laws of the nation of Italy, having its principal place of business in Maranello, Italy. (D.I. 47 at ¶ 2) Translogic, a Swisslog Italia subsidiary, is a Delaware corporation with its principal place of business in Denver, Colorado. (D.I. 48 at ¶ 3) Swisslog engages in, inter alia, the manufacture,

---

[2] Also at issue is defendants' motion for leave to file a sur-reply to McKesson's post-trial motions for a new trial and to alter or amend judgment. (D.I. 654) In that motion, defendants claim that plaintiff's reply brief contained two new arguments. (Id. at 1) The first allegedly new argument relates to Dr. McCarthy's (defendants' expert) trial testimony being inconsistent with his expert opinion. (Id.) The court finds that this is a new argument, not contained in plaintiff's opening brief. In accordance with local rule 7.1.3(c)(2), the court will not entertain it. LG Display Co., Ltd. v. AU Optronics Corp., Civ. Nos. 09-726; 07-357, 2010 WL 5463305, at *4 (D. Del. December 29, 2010). Plaintiff's opening brief specifically set forth two bases on which Dr. McCarthy's trial testimony was inconsistent: 1) plaintiff believed it was inconsistent with the court's claim construction; and 2) plaintiff believed it was inconsistent as between his infringement and invalidity analyses. (D.I. 644 at 9-20) As this was the focus of the opening brief, the court will not allow plaintiff to argue a new position in its reply brief. The second allegedly new argument relates to the way in which plaintiff has framed the dispute about the construction of the term "storage area location." (D.I. 654 at 2) Because the court finds that plaintiff has not argued anything new in its reply brief (i.e., plaintiff is framing the issue in a consistent manner), the court denies defendants' motion to file a sur-reply.

2

sale, distribution and installation of automated storage systems for medications.

## B. The Technology At Issue

### 1. The patents in suit

The patents in suit claim an automated system for retrieving packages containing medication to fill prescription orders in a pharmacy. ('110 patent, col. 1:13-16; '267 patent, col. 1:15-18) The patents in suit share identical specifications, differing only by the claimed subject matter. Independent claim 1 of the '110 patent, and independent claims 1 and 7 of the '267 patent, are representative of the inventions.

The '110 patent, entitled "Automated System for Selecting Packages from a Storage Area," issued from a chain of continuation applications on November 21, 1995 and lists Automated Healthcare, Inc. ("AHI") as the assignee.[3] Claim 1 is the sole independent claim and provides for:

A system for selecting and delivering packages to fill orders comprising:

> a) a storage area comprised of a plurality of storage area locations each location having package holding means sized and configured to hold a plurality of individual packages each individual package having a machine readable label which identifies a type of package, the packages being held in a manner so that each package can be placed into and removed from the storage area locations and so that the machine readable label on at least one package in a storage location can be read without removing the package from the storage location, each location having a distinct x, y coordinate;
>
> b) automated picking means sized and configured to be able to hold packages, to select packages from the storage area locations and place packages in the storage area locations in accordance with computer controlled instructions, the picking means having a gripper for grasping and moving the packages and having a picking means storage location sized and configured to hold a plurality of packages

---

[3] McKesson subsequently acquired AHI.

3

in a face to face relationship after the plurality of packages have been retrieved from the storage area and prior to delivery of the plurality of packages to a desired destination separate from the picking means;

c) means for moving the automated picking means to selected storage locations;

d) a computer having at least one memory which contains a program for directing the picking means to chosen storage area locations and a database containing at least one x, y coordinate location in the storage area for each package held within the storage area the computer being connected to the automated picking means and the means for moving the automated picking means; and

e) a package reader associated with the picking means and being positioned for reading the machine readable labels on packages located within the storage area, wherein only one type of package is stored in each x, y coordinate location.

The '267 patent, entitled "Automated System for Selecting and Delivering Packages from a Storage Area," issued to AHI on January 14, 1997. The '267 patent has 11 claims; only claims 1 and 7 are independent. Exemplary claim 1 discloses:

A system for selecting and delivering medicine packages from a holding means to fill orders comprising:

a) holding means comprised of a frame having a plurality of support rods each support rod sized for holding a plurality of medicine packages, each rod associated with a given medicine and holding medicine packages with only the same medicine each support rod having a distinct X, Y coordinate location;

b) means for picking medicine packages from the support rods in accordance with instructions received from a computer, said picking means being able to access the holding means; the picking means capable of holding a plurality of medicine packages which have been picked from the holding means;

c) a computer having a database containing an X, Y coordinate location for all packages in the holding means, the computer able to receive orders for packages and able to direct the means for picking packages; and

4

d) a supply structure having a plurality of supply support rods which extend from said structure to form an X, Y coordinate system, with each supply support rod and medicine package thereon having a unique X and Y coordinate, said picking means disposed to have access to said structure such that a given medicine package on an associated supply support rod can be picked by the picking means to fill a patient's prescription, or a given medicine package in the supply structure can be picked by the picking means to restock an associated rod in the holding means.

Claim 7 discloses an embodiment employing a suction rod as the picking means:

> A system for selecting and delivering packages from a holding means to fill orders comprising:
>
> a) holding means comprised of a frame having a plurality of support rods for holding packages each support rod having a distinct X, Y coordinate location and holding a plurality of packages, all of those packages on each support rod having similar contents;
>
> b) picking means for picking packages from the support rods in accordance with instructions received from a computer, the picking means being able to access the holding means and having
>
> > a housing;
> >
> > means for storing packages attached to the housing;
> >
> > means for producing a suction;
> >
> > a suction rod in fluid connection with the suction producing means, said suction rod slidingly attached with respect to the Y and Z directions to the housing and maintaining a suction therethrough when the suction producing means is activated by which a medicine package is picked with suction; and
> >
> > means for sensing when a package is properly positioned such that the package rod is then moved to the storing means and deposits
> > the package thereon.

### 2. The accused PillPick System

Defendants' PillPick System is an automated system that, in response to the

manual entry of prescription information via computer interface, automatically retrieves and dispenses unit-dose medications from a hospital pharmacy to fill patient prescriptions. (D.I. 664 at 406-29; PTX 44; PTX 1136) At its most basic level, the PillPick System includes three pieces of equipment: (1) a device that automatically creates unit-dose packages of medications from bulk medication canisters ("the PillPicker"); (2) an area for storing, retrieving and restocking the unit-dose packages ("the DrugNest");[4] and (3) optional dispensing machines for organizing unit-dose packages retrieved from the DrugNest into parcels for distribution to patients (either "the PickRing assembly" or "the FillBox assembly"). (*Id.*)

Once the PillPicker creates a unit-dose package pursuant to the desired specifications, a robot positioned at the loading ends of the DrugNest ("the SinglePill Robot") retrieves packages from the PillPicker and places the packages in the DrugNest for storage. (*Id.*) The DrugNest includes a storage area having a matrix of up to 20 rotatable pin conveyors. (*Id.*) Each pin is capable of holding up to three rows of 74 storage area locations, each storage area location having a support rod to hold unit-dose packages (created by the PillPicker) of the same medication. (*Id.*) The rods can be rotated, through movement of the rotatable conveyor, to bring the rod designated for a particular type of medication towards the front or back ("the loading ends") of the DrugNest. (*Id.*) The SinglePill Robot subsequently travels horizontally and/or vertically within the plane of the loading ends to the designated rod and loads the package onto the rod. (*Id.*)

---

[4] The configuration of the DrugNest was the focus at trial and, thus, is also the focus in post-trial motions.

6

The SinglePill Robot also acts to retrieve unit-dose packages from the DrugNest to fill a patient's prescription. A command prompt entered via computer interface causes the rotatable conveyor to move the rod carrying the desired medication to the loading ends of the DrugNest. (*Id.*) The SinglePill Robot travels within the plane of the loading ends to the designated rod and retrieves the specified unit-dose package. (*Id.*) This process repeats until each medication that comprises the patient's prescription is retrieved. (*Id.*) Once the SinglePill Robot has retrieved all of the requested medications, it rotates 180 degrees, orienting so that the collected unit-dose packages face away from the DrugNest. (*Id.*) The unit-dose packages are then either dispensed directly by the SinglePill Robot, or packaged into parcels by the PickRing and/or the FillBox. (*Id.*)



7

### 3. Claim Construction

In a May 18, 2010 memorandum opinion, the court construed several disputed claim terms. (D.I. 571 at 18-25) The terms relevant to plaintiff's post-trial motions include "x,y coordinate"[5] and "storage area location."

Plaintiff argued that the term "x,y coordinate" meant: "one or more points that designates the position of a package where the picking means selects, grabs and replaces packages" (D.I. 310 at 14; D.I. 571 at 19); defendants objected to this construction, arguing that the court should construe "x,y coordinate" in accordance with its "ubiquitous mathematical meaning, to wit, 'a location identifier 'X,Y,' in which X designates a position of the location along an X-Axis and Y designates a position of the location along a Y-Axis.'" (D.I. 571 at 19) Ultimately, the court rejected both positions and concluded: "[W]ith respect to the '110 patent, the court construes 'x,y coordinate' to mean 'one or more points that designates a position in the package holding means.' With respect to the '267 patent, the court construes 'x,y coordinate' to mean 'one or more points that designates a position in the holding means or supply structure.'" (*Id.* at 19-21)

The court opted not to construe the term "storage area location." In declining to construe the term, the court explained that, "the explicit detail provided by claim 1 defines the precise nature of a 'storage area location,' and belies any need for further

---

[5] This disputed limitation appears in a variety of forms; however, the parties and the court agreed that one construction should apply to all instances. (D.I. 571) Claims 1 and 7 of the '267 patent describes this limitation as "x, y coordinate location" and "x and y coordinate." Claims 1 and 8 of the '110 patent refer to "x,y coordinate" and "x,y coordinate location." The court refers to each of these instances through the use of "x,y coordinate."

8

construction." (D.I. 571 at 22-23)

## III. STANDARDS OF REVIEW

### A. Renewed Motion for Judgment as a Matter of Law

To prevail on a renewed motion for judgment as a matter of law ("JMOL") following a jury trial, the moving party "'must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusions implied [by] the jury's verdict cannot in law be supported by those findings.'" *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1348 (Fed. Cir. 1998) (quoting *Perkin-Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed. Cir. 1984)). "'Substantial'" evidence is such relevant evidence from the record taken as a whole as might be acceptable by a reasonable mind as adequate to support the finding under review." *Perkin-Elmer Corp.*, 732 F.2d at 893. In assessing the sufficiency of the evidence, the court must give the non-moving party, "as [the] verdict winner, the benefit of all logical inferences that could be drawn from the evidence presented, resolve all conflicts in the evidence in his favor, and in general, view the record in the light most favorable to him." *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1348 (3d Cir. 1991); *Perkin-Elmer Corp.*, 732 F.2d at 893. The court may not determine the credibility of the witnesses nor "substitute its choice for that of the jury between conflicting elements of the evidence." *Perkin-Elmer Corp.*, 732 F.2d at 893. In sum, the court must determine whether the evidence reasonably supports the jury's verdict. *See Dawn Equip. Co. v. Kentucky Farms Inc.*, 140 F.3d 1009, 1014 (Fed. Cir. 1998).

### B. Motion for a New Trial or To Alter or Amend the Judgment

9

> Federal Rule of Civil Procedure 59(a) provides, in pertinent part:
>
> A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Fed. R. Civ. P. 59(a). The decision to grant or deny a new trial is within the sound discretion of the trial court and, unlike the standard for determining judgment as a matter of law, the court need not view the evidence in the light most favorable to the verdict winner. *See Allied Chem. Corp. v. Darflon, Inc.*, 449 U.S. 33, 36 (1980); *Olefins Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282 (1993); *LifeScan Inc. v. Home Diagnostics, Inc.*, 103 F. Supp.2d 345, 350 (D. Del. 2000) (citations omitted). *See also* 9A Wright & Miller, *Federal Practice and Procedure* § 2531 (2d ed. 1994) ("On a motion for new trial the court may consider the credibility of witnesses and the weight of the evidence."). Among the most common reasons for granting a new trial are: (1) the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) newly-discovered evidence exists that would likely alter the outcome of the trial; (3) improper conduct by an attorney or the court unfairly influenced the verdict; or (4) the jury's verdict was facially inconsistent. *See Zarow-Smith v. N.J. Transit Rail Operations*, 953 F. Supp. 581, 584-85 (D.N.J. 1997) (citations omitted). The court must proceed cautiously, mindful that it should not simply substitute its own judgment of the facts and the credibility of the witnesses for those of the jury. Rather, the court should grant a new trial on the basis that the verdict was against the weight of the evidence only where a miscarriage of justice would result if the verdict were to stand. *See Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352

(3rd Cir. 1991); *EEOC v. State of Del. Dep't of Health and Soc. Servs.*, 865 F.2d 1408, 1413 (3rd Cir. 1989).

A motion to alter or amend judgment under Fed. R. Civ. P. 59(e) is "a device to relitigate the original issue decided by the district court, and [it is] used to allege legal error." *United States v. Fiorelli,* 337 F.3d 282, 288 (3rd Cir. 2003). In order to prevail on a Rule 59(e) motion, the moving party must show one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Cafe v. Quinteros,* 176 F.3d 669, 677 (3rd Cir. 1999).

## IV. DISCUSSION

### A. Renewed JMOL

Plaintiff sets forth one argument with respect to why JMOL is appropriate. Plaintiff argues that since no reasonable jury could conclude that the PillPick System does not satisfy the "distinct x,y coordinate" limitation set forth in the patents, it is entitled to JMOL.[6] (D.I. 643 at 1-2) The crux of plaintiff's argument is that defendants' expert (Dr. McCarthy) re-construed the term "x,y coordinate location " and, had defendants' expert analyzed the term in a manner consistent with the court's claim construction, the jury would have found that the PillPick system had distinct x,y

---

[6] Plaintiff believes this is the only basis on which defendants' noninfringement defense rested, thereby making it the only issue relevant to the infringement analysis. (D.I. 643 at 1-2) While defendants ultimately make alternative arguments as to why the PillPick System does not infringe (and thus why JMOL is inapplicable) (D.I. 647 at 4; 16-20), the court will not address these arguments since it does not find plaintiff's original contention persuasive.

11

coordinate locations and, thus, infringed (*Id.* at 4-11)

As discussed, the court construed the term "x,y coordinate" to mean "one or more points that designates a position in the package holding means" ('110 patent) and "one or more points that designates a position in the holding means or supply structure" ('267 patent). According to plaintiff, the court's claim construction requires that x,y coordinates be centered on the picking plane where packages are placed and/or retrieved; in other words, the only relevant area of consideration when discussing x,y coordinates is the area at the front of the DrugNest (i.e., the area accessible to the picking means). (*Id.* at 4-6) In support of this interpretation, plaintiff looked to the court's May 18, 2010 memorandum opinion and noted that the court had stated: 1) the "x,y plane exists in certain locations and not others;" 2) the coordinate system is "anchored by the various means for holding the packages;" and 3) "the claims themselves are replete with language requiring accessibility of packages to the picking means." (*Id.* at 4-5) Based on these observations, plaintiff argues that x,y coordinates are centered on the picking plane and can exist nowhere else. (*Id.* at 6) Plaintiff contends that defendants' expert re-construed the term x,y coordinate location to mean data only, thereby divorcing the term from a physical location on the picking plane. (*Id.* at 9)

The court concludes that plaintiff has misconstrued the court's opinion and reads in a limitation that is not present in the court's construction or the claims. The court specifically rejected plaintiff's construction of x,y coordinate as "one or more points that designates the position of a package **where the picking means selects, grabs and**

**replaces packages**." (D.I. 571 at 19-21) (emphasis added) The court anchored x,y coordinate locations to package holding means, but did not say that package holding means needed to be facing the picking mechanism. While the court noted that packages needed to be accessible, it did not say that they needed to be **immediately** accessible; and while the court acknowledged that x,y coordinates exist in some locations and not others, it did so in order to explain why defendants' construction was too abstract. Plaintiff's contention that an x,y coordinate must be a physical location on the picking plane is not required by the court's construction. Under the court's construction, an x,y coordinate location is tied to the means for holding packages, no matter where those means exist. And this makes sense when one reads the claims. In the '267 patent, the claims require that each support rod that holds medication packages have a distinct x,y coordinate. In the '110 patent, storage area locations each contain a package holding means, and these storage area locations (which contain the package holding means) must each have distinct x,y coordinates. Thus, in both patents, the x,y coordinate is tied to the means for holding medication packages.

Defendants' expert's interpretation of the term x,y coordinate - as points of data that designate a position - was consistent with the parties' understanding of the term and the court's construction. During the March 25, 2010 *Markman* hearing, the court asked plaintiff's counsel the following question: "So basically [an] x,y coordinate is just transient data that the computer stores to allow the picking means to find whatever it is looking for?" (D.I. 670 at 9). Plaintiff agreed, noting that: "I think that that, at a high level, is a fair description of what we have going on here." (*Id.*) Plaintiff made clear that

13

its only real concern with respect to this term was the issue of accessability, i.e., the belief that x,y coordinates are only relevant with respect to the picking plane. (*Id.* at 8-9) As discussed, the court's construction was not so limited. The x,y coordinates are anchored to the package holding means without regard to whether the holding means is immediately accessible to the picking means (i.e., in the picking plane). In other words, they are data points that are tied to, i.e., designate, positions in the package holdings means (or supply structure or holding means) wherever those means exist.[7]

With this construction in mind, a reasonable jury could have concluded that the PillPick System does not infringe because it does not have "distinct" x,y coordinate locations. The DrugNest contains rotatable conveyors that have multiple rods on which medications are stored, and these conveyors rotate the rods to the front or back of the DrugNest for either medication pickup or deposit. With this configuration, a reasonable jury could conclude that the PillPick System did not infringe because each rod (i.e., package holding means) on a conveyor shares a designated x,y coordinate; the rods on a given conveyor are differentiated by their z coordinates but all share the same x,y coordinates. Defendants' expert explained this point to the jury. (D.I. 666 at 801-24)

### B. Motion for a New Trial

Plaintiff set forth two reasons why it believes a new trial is warranted. First, plaintiff argues that the court had a duty to construe the term "storage area location" and the court's failure to do so resulted in a miscarriage of justice. (D.I. 644 at 4)

---

[7] The claims themselves, which obviously guided the court's construction, specifically discuss databases containing x,y coordinate locations. ('110 patent, col. 13; '267 patent, col. 13)

14

Second, plaintiff argues that defendants' expert, Dr. McCarthy, provided impermissible testimony at trial regarding the term "x,y coordinate." (*Id.* at 9)

### 1. Construction of the term "storage area location"

Plaintiff bases its motion for a new trial on the case *O2 Micro International Limited v. Beyond Innovation Technology Company, Limited*, 521 F.3d 1351 (Fed. Cir. 2008). In *O2 Micro*, the Federal Circuit was tasked with determining whether the trial court erred by not construing the term "only if." *Id.* While the parties agreed that the term had a common meaning, they disputed the scope of that claim term. *Id.* at 1361. The district court refused to construe the term, explaining that the term "'needs no construction' because it 'has a well-understood definition capable of application by both the jury and this court." *Id.* at 1357.

In its analysis, the Federal Circuit reiterated that claim construction is a matter of law for the court to decide and not an issue properly placed before the jury. *Id.* at 1360. The Federal Circuit went on to hold that a court will be required to construe a claim term when: 1) the term has more than one "ordinary" meaning; or 2) the ordinary meaning does not resolve the parties' dispute. *Id.* at 1361. The Federal Circuit eventually concluded that the ordinary meaning of this term did not resolve the parties' dispute. *Id.* Because this legal issue was unresolved and argued to the jury, the Federal Circuit remanded the case for a new trial. *Id.* at 1362.

Based upon the *O2 Micro* holding and the court's decision with respect to the term "storage area location," plaintiff asserts that a new trial is necessary. In plaintiff's own words:

15

> A new trial is necessary here because . . . the Court declined to construe the term "storage area location" . . . As a result, the Court permitted the parties at trial to argue the scope of the claim term . . . to the jury, thereby delegating to the jury the duty of choosing between the parties' proposed meaning, and determining whether the scope of the term "storage area location" required the claimed storage area location to be within the picking plane [McKesson's position] or whether it could exist anywhere within the storage area [Swisslog's position].

(D.I. 644 at 4-5)[8]

Defendants initially respond by arguing that plaintiff's proposed construction - "a place in the storage area accessible to the picking means where the packages are held" - would not have affected the scope of the claim. (D.I. 648 at 5) As defendants explain, "regardless of whether the Court construed 'storage area locations' to be 'accessible to the picking means,' the scope of the claim[] nevertheless included that requirement." (*Id.*) The court agrees.

As plaintiff points out, however, the accessibility requirement "was **not** the dispute that necessitated construction of [the term storage area location]. Instead, the parties' dispute focused on whether the claimed storage area location must be within the picking plane, or whether it could exist anywhere in the storage area." (D.I. 651 at 2-3) (emphasis in original) In other words, "the parties agreed that the claim language required that storage area locations be accessible to the picking means but that agreement did **not** resolve the crucial dispute between the parties - whether a 'storage area location' was required to be a location within the picking plane (as urged by

---

[8] Plaintiff does not argue that there was not evidence to support the jury's verdict. Plaintiff is simply claiming that, by not construing the term, the parties' experts were able to argue different meanings to the jury and, thus, the jury was free to decide the meaning of the term during their deliberations.

16

[plaintiff]), or could exist anywhere in the storage area and rotate into the picking plane (as urged by [defendants]." (*Id.*) (emphasis in original)

While plaintiff correctly characterizes the dispute, the court nevertheless finds plaintiff's argument - that construction was required - to be unpersuasive. First, the court notes that plaintiff's proposed construction would not have resolved the issue as it is now characterized by the plaintiff. While plaintiff's proposed construction requires storage area locations to be accessible to the picking means, it does not require that they all be immediately accessible (i.e., always within the picking plane). A jury reading plaintiff's proposed construction would not be required to find that a storage area location existed only in the picking plane; the language simply does not convey that desired limitation.

Second, the court emphasizes, as it did during its May 18, 2010 opinion, that "the specific detail provided by claim 1 defines the precise nature of a 'storage area location' and belies the need for further construction." (D.I. 571 at 23) Significantly, there is no temporal limitation with respect to immediate accessibility in the claim and it would be inconsistent to say otherwise. The claim, instead, refers to "selected" and "chosen" storage area locations when discussing where the picking means must go to place or retrieve packages. ('110 patent, col. 13:24-29) In other words, when the claim requires immediate accessibility, it makes that clear by referring to "selected" and "chosen" storage area locations. For this reason, the court declined to adopt plaintiff's construction and instead concluded that the detail in claim one defines the precise

17

nature of the claim.[9]

### 2. Defendants' expert testimony

Plaintiff argues that Dr. McCarthy's expert testimony (at trial) on the term x,y coordinate was: 1) inconsistent with the court's construction; and 2) inconsistent as between his invalidity and infringement analyses. (D.I. 644 at 9-20) On these bases, plaintiff argues a new trial is warranted. (Id.) Because the first issue was argued and addressed in the context of plaintiff's JMOL motion, the court will address it no further. With respect to plaintiff's second argument, the court finds that Dr. McCarthy's testimony was, on the whole, consistent as between his infringement and invalidity analyses.

At trial, Dr. McCarthy explained that he interpreted x,y coordinates to be points of data that designate a position. (D.I. 666 at 802) In doing so, he distinguished his interpretation from Dr. Book's (plaintiff's expert) interpretation that x,y coordinates are physical positions within the picking plane. (D.I. 665 at 472-86) Plaintiff argues that Dr. McCarthy, during his invalidity analysis, adopted the position that x,y coordinates are physical positions on the picking plane. (D.I. 644 at 17-18) Specifically, plaintiff points to Dr. McCarthy's testimony on two prior art references - the Castaldi reference and the AHI Business plans - and argues that he adopted the physical point interpretation when discussing whether the limitation was met. (Id. at 18-19) However, as defendants point

---

[9] With this in mind, the court suggests that, even if it was error not to construe the term, it was harmless error since the jury interpreted the term in accordance with the court's understanding (i.e., the jury did not construe the term in the restrictive fashion advocated by plaintiff).

18

out, the "truncated portion[s]" of the transcript provided by plaintiff fail to provide the whole picture. (D.I. 648 at 15-18) When Dr. McCarthy's invalidity testimony is read in context, he distinguishes between his interpretation (data points) and the interpretation of Dr. Book (physical points). (D.I. 648 at 16-18, citing the relevant transcript pages). On the whole, Dr. McCarthy consistently explained that x,y coordinates meant data points that designate a position; portions of the transcript quoted out of context do not change this.

## V. CONCLUSION

For the reasons discussed above, the court denies plaintiff's motion. An appropriate order shall issue.